**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------- x
JAMES CONTANT, *et al.*,            :

                                :

              *Plaintiffs*,      :    No. 17 Civ. 3139 (LGS)

                                :

                                :    [related to No. 13 Civ. 7789 (LGS)]

v.                               :

                                :    ORAL ARGUMENT REQUESTED

BANK OF AMERICA          :
CORPORATION, *et al.*,        :

                                :

              *Defendants*.     :
------------------------------------------------------- x

# FOREIGN DEFENDANTS' MEMORANDUM OF LAW
# IN SUPPORT OF THEIR MOTION
# TO DISMISS FOR LACK OF PERSONAL JURISDICTION

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................ 1

FACTUAL BACKGROUND .................................................................... 4

LEGAL STANDARD ............................................................................... 8

ARGUMENT ............................................................................................ 9

I.   GENERAL PERSONAL JURISDICTION IS LACKING IN THIS
     FORUM. ........................................................................................... 10

II.  SPECIFIC PERSONAL JURISDICTION IS LACKING IN THIS
     FORUM ON THESE NAMED PLAINTIFFS' CLAIMS. ................... 11

     A.   A "Purposeful Availment" Theory Fails Because Plaintiffs Do Not
          Allege In-Forum Transactions By Their Intermediaries Giving
          Rise To Their Claims. .............................................................. 13

     B.   The "Effects" Test Fails Because Plaintiffs Do Not Allege That
          The Foreign Defendants Intentionally Targeted This Forum. ................. 18

     C.   The Conspiracy Alleged In *FOREX* Cannot Sustain Vicarious
          Specific Jurisdiction Over The Foreign Defendants. ............................... 20

III. THE FOREIGN DEFENDANTS HAVE NOT CONSENTED TO
     JURISDICTION. ............................................................................... 21

CONCLUSION ...................................................................................... 22

# TABLE OF AUTHORITIES

<u>Page</u>

**Cases**

*7 W. 57th St. Realty Co. v. Citigroup, Inc.*,
No. 13 Civ. 981, 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ......................9, 18, 20, 21, 22

*Beach v. Citigroup Alt. Invs. LLC*,
No. 12 Civ. 7717 (PKC), 2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) ....................................9

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007)..................................................................................................12

*BNSF Ry. Co. v. Tyrrell*,
137 S. Ct. 1549 (2017).........................................................................................................10

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,
137 S. Ct. 1773 (2017)..................................................................................2, 9, 12, 13, 17

*Brown v. Lockheed Martin Corp.*,
814 F.3d 619 (2d Cir. 2016).................................................................................10, 11, 22

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)...........................................................................................................15, 21

*Calder v. Jones*,
465 U.S. 783 (1984)...........................................................................................................12, 19

*Chevron Corp. v. Naranjo*,
667 F.3d 232 (2d Cir. 2012).................................................................................................9

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014)....................................................................................................1, 10, 11

*In re Foreign Exchange Benchmark Rates Antitrust Litig.*,
No. 13 Civ. 7789 (LGS),
2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016) .......................................1, 3, 8, 9, 10, 11, 17, 18

*FrontPoint Asian Event Driven Fund, Ltd. v. Citibank, N.A.*,
No. 16-cv-5263, 4/27/2017 Tr. 19–20, 24 (S.D.N.Y.)...........................................................20

*Galope v. Deutsche Bank Nat'l Tr. Co.*,
No. 12-00323, 2014 WL 8662645 (C.D. Cal. Nov. 14, 2014), *aff'd*, 666 Fed.
App'x 671 (9th Cir. Dec. 14, 2016).....................................................................................20

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)........................................................................................10, 11, 12, 18

*Gucci Am., Inc. v. Weixing Li*,
768 F.3d 122 (2d Cir. 2014).......................................................................................9, 10, 11

*Hanson v. Denckla*,
357 U.S. 235 (1958).............................................................................................................15

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977)........................................................................................................6

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)...................................................................................................9, 11

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984)...................................................................................................8, 18

*Klinghoffer v. S.N.C. Achille Lauro*,
    937 F.2d 44 (2d Cir. 1991)...........................................................................................22

*Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
    No. 12 Civ. 3419, 2017 WL 1113080 (S.D.N.Y. Mar. 10, 2017) ....................................20, 21

*Laydon v. Mizuho Bank, Ltd.*,
    No. 12 Civ. 3419, 2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) ....................................20, 22

*Leasco Data Processing Equip. Corp. v. Maxwell*,
    468 F.2d 1326 (2d Cir. 1972)........................................................................................21

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    No. 11 MDL 2262, 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ...........................10, 20, 22

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    No. 11 MDL 2262, 2016 WL 1558504 (S.D.N.Y. Apr. 14, 2016)........................................21

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    No. 11 MDL 2262, 2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016)...................2, 12, 15, 18, 21

*Livnat v. Palestinian Auth.*,
    851 F.3d 45 (D.C. Cir. 2017) .........................................................................................9

*O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on Sept. 11, 2001)*,
    714 F.3d 659 (2d Cir. 2013).................................................................................4, 8, 12, 13

*Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*,
    484 U.S. 97 (1987).........................................................................................................9

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
    720 F.3d 490 (2d Cir. 2013)...........................................................................................9

*In re Papst Licensing GMBH & Co. KG Litig.*,
    590 F. Supp. 2d 94 (D.D.C. 2008) ...............................................................................22

*Peay v. BellSouth Med. Assistance Plan*,
    205 F.3d 1206 (10th Cir. 2000) .....................................................................................10

*In re Platinum & Palladium Fix Antitrust Litig.*,
    No. 14 Civ. 9391, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) .............................18, 20, 21

*Republic of Panama v. BCCI Holdings (Lux.) S.A.*,
    119 F.3d 935 (11th Cir. 1997) ......................................................................................10

*Rush v. Savchuk*,
    444 U.S. 320 (1980).................................................................................................8, 11

*Selman v. Harvard Med. Sch.*,
    494 F. Supp. 603 (S.D.N.Y. 1980)..................................................................9

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976)...................................................................................16

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)............................................................................16

*Sullivan v. Barclays PLC*,
    13 Civ. 2811, 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017)...............................20

*United States v. 51 Pieces of Real Prop., Roswell, New Mexico*,
    17 F.3d 1306 (10th Cir. 1994) ..................................................................22

*United States v. Bestfoods*,
    524 U.S. 51 (1998)...................................................................................18

*United States v. Rosenblatt*,
    554 F.2d 36 (2d Cir. 1977)........................................................................21

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014).........................................................2, 8, 11, 12, 14, 15, 20, 21

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016)..........................2, 3, 11, 12, 13, 14, 15, 18, 19, 20

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980).................................................................................16

**Statutes**

Clayton Act, 15 U.S.C. § 22 ............................................................................9

New York Banking Law §§ 200(3) and 200-b .................................................22

## PRELIMINARY STATEMENT

Plaintiffs allege in their Consolidated Amended Complaint ("CAC" or "Complaint") that they engaged in unidentified foreign exchange ("FX") spot transactions with unnamed "FX brokers" or FX retail dealers (together "intermediaries") at unspecified locations.[1]  Plaintiffs further allege that those unidentified intermediaries transacted in "FX Instruments" with various Defendants (also at unspecified locations), the value of which is allegedly determined based on FX benchmarks and rates calculated in the United Kingdom and in continental Europe.  Plaintiffs claim that—because of the same foreign-centered conduct depicted in the pleadings and preliminarily approved settlements in *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789 (LGS) ("*FOREX*")—the unnamed intermediaries paid Defendants supracompetitive prices.  Additionally, the Complaint asserts that the intermediaries then "passed on" those "overcharges" to the Plaintiffs.  The Foreign Defendants[2] now respectfully move this Court to dismiss the claims against them for lack of personal jurisdiction.

*First*, no Foreign Defendant is subject to general personal jurisdiction in this Court because each is incorporated and headquartered overseas.  *See FOREX*, 2016 WL 1268267, at *3–4 (S.D.N.Y. Mar. 31, 2016); App. at A-1–6; *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014).

---

[1]    The CAC (ECF 84) incorrectly refers to "FX brokers" (*see, e.g.*, CAC ¶¶ 10–20) and "retail foreign exchange dealers" (CAC ¶¶ 77, 149) as though those categories of intermediaries were equivalent.  The differences between the categories are explained in the separate motion to dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), supported by a separate memorandum of law, which is being filed today by all Defendants (the "Joint Rule 12(b)(6) Memo").  For purposes of this motion under Rule 12(b)(2), those differences are inconsequential.

[2]    The "Foreign Defendants" moving to dismiss under Fed. R. Civ. P. 12(b)(2) are:  The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU"), Barclays Bank PLC ("Barclays"), HSBC Holdings plc and HSBC Bank plc (together, "HSBC"), The Royal Bank of Scotland Group plc ("RBS"), Société Générale, Standard Chartered Bank, and UBS AG ("UBS").  This motion also is supported by the accompanying declarations of Elizabeth Hyon, Nicola S. Black, Mark Chambers, Gavin A. Francis, William Gougherty, John Connors, Dominick R. Sabella, Dominique Bourrinet, and Barbara McAll.  For the Court's convenience, the Foreign Defendants submit the Appendix herein, which summarizes the operative jurisdictional facts set forth in the declarations.

*Second*, this Court lacks specific jurisdiction over the Foreign Defendants. The Complaint fails to allege *any* sufficient facts connecting purposeful, in-forum activity of the Foreign Defendants with either (i) the allegations underlying the named Plaintiffs' claims, or (ii) the "wrongs for which the [P]laintiffs here seek redress." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 342 (2d Cir. 2016). Plaintiffs have thus failed to meet their burden to establish specific personal jurisdiction by showing that the asserted claims "arise from the [Foreign] [D]efendants' purposeful contacts with the forum." *Id.* at 343. "What is needed—and what is missing here—is a connection between the forum and the specific claims at issue," such as pertinent communications, transactions, or injuries within the forum. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1781 (2017) ("*BMS*"). Notably, the Complaint does not identify any of the purported intermediaries from which Plaintiffs allegedly purchased FX Instruments; nor does it identify *which* FX Instruments the intermediaries purportedly transacted in; nor even where or *when* the intermediaries purportedly undertook such transactions. Indeed, the Complaint does not identify even a single transaction in which an intermediary purchased (or sold) FX Instruments from (or to) any Foreign Defendants in New York or anywhere else in the United States. The only locations specified in the Complaint— those where named Plaintiffs *currently* reside—are locations that as a matter of law have no bearing on the Court's specific jurisdiction over the Foreign Defendants.[3]

The Complaint tries to skirt these critical deficiencies by relying on this Court's decision in *FOREX* addressing Rule 12(b)(2) motions by BTMU, Société Générale, and Standard

---

[3]   *See Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014) ("The proper question [for specific jurisdiction] is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262, 2016 WL 7378980, at *8 (S.D.N.Y. Dec. 20, 2016) ("*LIBOR VI*") ("[S]pecific jurisdiction requires no less than a 'but for' connection between the defendant's forum-directed activities and the claim." (some quotation marks omitted)).

Chartered plc.  In *FOREX*, this Court found sufficient an averment of specific jurisdiction over two banks (among the Foreign Defendants here),[4] because the *FOREX* plaintiffs alleged that they were directly injured by a conspiracy in the FX spot market, and the *FOREX* plaintiffs included nonconclusory allegations indicating that the defendant banks had routinely entered into FX spot trades within the forum.  2016 WL 1268267, at *5–6.  But, unlike *FOREX*, this case is not about FX spot sales to customers in the United States in general—it is about alleged sales by Defendants to the *intermediaries* described in the Complaint, coupled with the intermediaries' sales to Plaintiffs.  Plaintiffs make no attempt to connect the Foreign Defendants' conduct to the claims underlying *this* litigation in *this* forum.

Unlike in *FOREX*, the allegations that the Foreign Defendants trade FX products in New York are inconsequential here.  The particular "wrongs for which the [P]laintiffs . . . seek redress" involve transactions between Plaintiffs' unidentified intermediaries and Plaintiffs—transactions that occurred after those intermediaries purportedly transacted with certain Defendants.  *Waldman*, 835 F.3d at 342.  And, even though Plaintiffs are uniquely positioned with knowledge of the locations of the intermediaries, the Complaint fails to allege any nonconclusory factual matter indicating that the transactions between the intermediaries and the Foreign Defendants occurred *in New York or anywhere else in the United States*.

Indeed, the Foreign Defendants include foreign parent holding companies that do not have *any* FX trading operations, either in the United States or elsewhere,[5] and which are therefore similar to the one defendant this Court previously dismissed in *FOREX*.  2016 WL 1268267, at *7 (Standard Chartered plc).  As to the remaining Foreign Defendants, Plaintiffs do

---

[4]    Namely, BTMU and Société Générale.  *See FOREX*, 2016 WL 1268267, at *4–6.

[5]    Foreign Defendants HSBC Holdings plc and The Royal Bank of Scotland Group plc are foreign parent holding companies that do not operate FX trading businesses, in New York or elsewhere.

not allege any specific transactions in FX products with intermediaries centered in New York or even in the United States.  Thus, the relationship (if any) between the remaining Foreign Defendants, this case, and this District bears little resemblance to the one in *FOREX*, where personal jurisdiction over the asserted FX spot market manipulation claims hinged on the relevant domestic FX spot market transactions two of the banks conducted.

Nor can Plaintiffs establish personal jurisdiction over Foreign Defendants by contending that the alleged conspiracy to fix FX prices, centered overseas, had an "effect" on the intermediaries in this forum.  The Complaint fails to allege that any Foreign Defendant directed any action into this forum causing such an effect.  At most, the Complaint merely alleges "foreseeable" effects from out-of-forum operations—which are "insufficient for the purpose of establishing specific personal jurisdiction."  *O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 659, 674 (2d Cir. 2013).

Accordingly, this Court should dismiss the Complaint as to the Foreign Defendants for lack of personal jurisdiction.

## FACTUAL BACKGROUND

**1. Plaintiffs' Transactions.**  Plaintiffs currently reside in New York, Arizona, California, Florida, Illinois, Massachusetts, Minnesota, and North Carolina.  CAC ¶¶ 10–20.  Plaintiffs—including Plaintiff James Contant, the purported New York resident—allegedly "engaged in FX spot transactions . . . directly with an [intermediary] where the [intermediary] transacted those FX Instruments directly with Defendants," and those unidentified intermediaries allegedly then "paid artificially inflated prices for FX Instruments purchased directly from Defendants and Defendants' co-conspirators, and passed on those overcharges" to Plaintiffs.  CAC ¶¶ 10–20.  The Complaint acknowledges that the "FX market is the *global* financial market in which currencies are traded."  (CAC ¶ 59 (emphasis added)).  The Complaint does not allege

where on the globe any transactions between any Foreign Defendant and the intermediaries (or between the intermediaries and any Plaintiff) occurred.  Moreover, the Complaint does not describe the location, the date, or the allegedly "inflated price" or "overcharge" of any transaction between any intermediaries and any Defendant preceding a downstream or "indirect" transaction between that intermediary and any Plaintiff.

Instead of pleading nonconclusory facts describing the transactions, Plaintiffs describe supposed generalized "scenarios" involving their unidentified intermediaries—allegedly, members of the Direct Settlement Class in *FOREX*[6]—and Defendants (as an undifferentiated group).  The Complaint alleges, for example, that "all sixteen Defendants" were "liquidity providers" that supplied "bid-ask quotes for FX spot transactions" to "one or more [intermediaries] with whom Plaintiffs and members of the proposed Classes transacted."  CAC ¶¶ 149–50.  The Complaint focuses on two fixes, in particular: the "WM/Reuters Closing Spot Rates (the 'WM/Reuters Fix' or '4:00 p.m. Fix'), which are set at 4:00 p.m. London time (11:00 a.m. New York time)," CAC ¶¶ 85–88, and the "European Central Bank ('ECB') reference rate," including the ECB rate set at 1:15 p.m. London time.  CAC ¶¶ 89–90.  Plaintiffs omit that the "conspiracy alleged herein," purportedly "facilitated" by "close . . . ties among FX traders," was allegedly centered *overseas*, not in the United States.  *Compare* CAC ¶ 62 *with FOREX*, Third

---

[6]    The preliminarily approved *FOREX* Direct Settlement Class covers "[a]ll Persons who . . . entered into an FX Instrument directly with a Defendant, . . . where such Persons were *either* [(1)] domiciled in the United States *or* . . . [(2)] if domiciled outside the United States . . . transacted FX Instruments in the United States."  CAC ¶ 40 n.4 (emphases added).  Because the two enumerated branches are distinct, an intermediary "domiciled in the United States" that transacted FX Instruments with a Foreign Defendant may assert membership in the Direct Settlement Class *without* having transacted those instruments "in the United States."

Plaintiffs define an FX Instrument to mean "any FX spot transaction, forward, swap, future, option, or any other FX transaction or instrument the trading or settlement value of which is related in any way to any FX rates."  CAC ¶ 1 n.2.  The "FX rates" at issue are the Fixes determined in the United Kingdom and in continental Europe, which are "widely recognized as benchmark rates in the FX market," and which "play a crucial role in FX trading and in the pricing of *all* FX Instruments."  CAC ¶ 84 (emphasis added).

Amended Complaint ("TAC") ¶ 118, ECF No. 619 (June 3, 2016) (alleging existence of "small and close-knit group of [FX] traders" overseas) (emphasis added)).[7]

Plaintiffs seek only injunctive relief for alleged violations of the Sherman Act, and assert damages claims under "state *Illinois Brick* repealer statutes and related state consumer protection statutes" based on the prices "passed on" to them as purported "indirect purchasers" of FX Instruments.  CAC ¶¶ 6, 10–20, 148, 150, 204.[8]  That is, Plaintiffs seek "to recover the overcharge damages that were *directly passed on* to them by" their purportedly overcharged intermediaries.  CAC ¶ 148 (emphasis added).  Plaintiffs rely on the "same FX manipulation conspiracy" depicted in the *FOREX* operative pleading and preliminarily approved settlement agreements.  CAC ¶ 176.  But Plaintiffs cite no allegations in *FOREX*—including in any government enforcement actions on which the *FOREX* pleadings depended—that the Foreign Defendants transacted with Plaintiffs' unidentified intermediaries in New York or elsewhere in the United States.  Nor do Plaintiffs present nonconclusory allegations that the Foreign Defendants' alleged participation in the "FX manipulation conspiracy" included conduct targeting Plaintiffs, or their intermediaries, in New York or the United States.

**2. Foreign Defendants.**  The Foreign Defendants, or their affiliates, are among the defendants in *FOREX.*  The Foreign Defendants' declarations supporting this motion confirm that they are incorporated and maintain their headquarters overseas.  *See* App. A-1–6.  According

---

[7]    Plaintiffs cannot simply duplicate the allegations of the *FOREX* complaint—asserting that the actions are "seeking damages for the *same* FX manipulation conspiracy," CAC ¶ 176 (emphasis added)—yet omit only those allegations which are inconvenient for purposes of their claims.  *See also* CAC ¶¶ 40–48 & n.4 (connecting class definitions to "Direct Settlement Class" subject to preliminarily approved settlement agreements in *FOREX*); CAC ¶¶ 170–75 (summarizing "Direct Purchaser Litigation And Settlements" in *FOREX*).

[8]    *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), held that the federal antitrust laws do not permit damages claims by indirect purchasers who paid an increased price because their suppliers had been subjected to an alleged price-fixing conspiracy.  Solely for purposes of *this* motion, the Foreign Defendants take no position on the availability of the state *Illinois Brick* "repealer" statutes invoked:  As explained in the Joint Rule 12(b)(6) Memo, Plaintiffs are not "indirect purchasers" as that term is properly understood in antitrust law.

to those declarations and Plaintiffs' allegations:  BTMU is incorporated in Japan and headquartered in Tokyo.  CAC ¶ 22; *see* Sabella Decl. ¶ 2.  Barclays, HSBC Holdings plc and HSBC Bank plc, and Standard Chartered Bank are each incorporated in the United Kingdom and headquartered in London.  CAC ¶¶ 23, 29, 35; *see* Hyon Decl. ¶¶ 4–6; Chambers Decl. ¶¶ 3–4; Black Decl. ¶¶ 3–4; McAll Decl. ¶¶ 2–3.  RBS is incorporated in the United Kingdom and headquartered in Edinburgh.  CAC ¶ 33; *see* Gougherty Decl. ¶ 3.  Société Générale is a limited liability company incorporated in France and headquartered in Paris.  CAC ¶ 34; *see* Bourrinet Decl. ¶ 2.  UBS is incorporated and headquartered in Switzerland.  CAC ¶ 36; *see* Connors Decl. ¶ 3.

The Complaint alleges that three of the Foreign Defendants (BTMU, Société Générale, and Standard Chartered Bank) maintain New York branches that conducted FX spot market transactions, CAC ¶¶ 22, 34, 35, but does *not* allege that Plaintiffs' intermediaries engaged in FX spot market transactions with or through those New York branches.  The Complaint also refers to the general banking activities of subsidiaries or affiliates of other Foreign Defendants (Barclays, HSBC, RBS, and UBS) without alleging a basis for imputing the conduct of those subsidiaries or affiliates to the respective Foreign Defendants.  CAC ¶¶ 23, 29, 33, 36.  Additionally, the Complaint defines groups of entities collectively while largely omitting individual allegations against specific entities:  For example, Paragraph 228(c) refers to the New York offices of various Foreign Defendants or their affiliates, yet (again) without alleging that Plaintiffs' intermediaries transacted with the Foreign Defendants at those locations.  CAC ¶ 228(c).[9]

---

[9]    *See also* CAC ¶ 29 (identifying five separate HSBC entities, including the foreign HSBC entities challenging personal jurisdiction, "collectively" as "HSBC"); CAC ¶¶ 92, 101, 108(h), 110–11, 114, 132–33, 152, 158, 166, 164, 166, 179, 191, 194 (referring only to "HSBC" collectively without specifying which HSBC entity is alleged to have engaged in what conduct).  The Complaint's allegations as to BTMU reveal a similar failure to distinguish between corporate affiliates and subsidiaries.  The Complaint alleges that New York is the "traditional hub" for

**3.  Other Allegations Of Personal Jurisdiction.**  The Complaint asserts undifferentiated personal jurisdiction "over each Defendant," alleging that "Defendants' collusive and manipulative acts took place, in substantial part, in New York"; they "continuously and systematically transacted FX in this District"; and their alleged conspiracy "was directed at, and had the intended effect of, causing injury to persons . . . in this District."  CAC ¶ 8.

## LEGAL STANDARD

Plaintiffs here "bear[] the burden of showing that the court has jurisdiction over the [D]efendant[s]."  *FOREX*, 2016 WL 1268267, at *1.  Under Rule 12(b)(2), "[e]ach defendant's contacts with the forum State must be assessed individually," *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984), and allegations against defendants *as a group* are insufficient, *Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980).  That defendant-specific analysis is mandatory even when measuring personal jurisdiction over a group of affiliated entities.  *See, e.g.*, *Walden*, 134 S. Ct. at 1122–23.  Plaintiffs bear the burden of alleging "facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  *O'Neill*, 714 F.3d at 673 (citation and internal quotation marks omitted).  When deciding a Rule 12(b)(2) motion, "[c]ourts will not . . . resolve 'argumentative inferences in the plaintiff's favor,' or 'accept as true a legal conclusion couched as a factual allegation.'"  *FOREX*, 2016 WL 1268267, at *1 (quoting *O'Neill*, 714 F.3d at 673).  Importantly, in an action brought as a class action, "personal jurisdiction is based on a defendant's contacts with the forum state and actions giving

---

BTMU's FX trading.  CAC ¶ 22.  That allegation is copied verbatim from the Third Amended *FOREX* Complaint. *See* TAC ¶ 48.  While Plaintiffs here provide no support for their assertion, the *FOREX* TAC cited in support an article that actually relates to the intention of the Mitsubishi UFJ Financial Group (BTMU's *parent*) to hire "currency and interest-rate derivatives traders globally," and quotes an employee as stating "[o]ur traditional hubs for this trading business"—*i.e.*, currency and interest-rate derivatives trading—"have been in New York, London, Singapore and Hong Kong."  TAC ¶ 48 & n.9, citing Sigeru Sato & Takako Taniguchi, *Forex, fixed-income traders: Mitsubishi UFJ is hiring* (April 23, 2013), *available at* http://m.futuresmag.com/2012/04/23/forex-fixed-income-traders-mitsubishi-ufj-hiring.

rise to the *named plaintiffs'* causes of action.  Contacts with unnamed class members may not be used as a jurisdictional basis, especially before a class has been certified." *Beach v. Citigroup Alt. Invs. LLC*, No. 12 Civ. 7717 (PKC), 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014) (emphasis added) (citing *Selman v. Harvard Med. Sch.*, 494 F. Supp. 603, 613 n.6 (S.D.N.Y. 1980)).

## ARGUMENT

The critical question here is "whether . . . the exercise of personal jurisdiction would violate constitutional due process." *FOREX*, 2016 WL 1268267, at *1.  The answer—as with the previous complaint filed by the same counsel—is yes.  The Foreign Defendants are not subject to general or specific personal jurisdiction in this forum as to these Plaintiffs' claims, which arise from their alleged "indirect" purchases of FX instruments through unidentified intermediaries. Nor have any Foreign Defendants consented to the exercise of such jurisdiction.  Personal jurisdiction over the claims in the Complaint is therefore unavailable because it would "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).[10]

---

[10]   Because the Complaint fails to allege any transactions by Plaintiffs' intermediaries involving Foreign Defendants anywhere in the United States, there is no need to examine the constitutionality of the so-called "nationwide contacts" approach here. *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 142 n.21 (2d Cir. 2014); *see BMS*, 137 S. Ct. at 1783–84 (again reserving question, citing *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 102 n.5 (1987)); *cf. FOREX*, 2016 WL 1268267, at *3 n.2, 5 n.3 (relying on "contacts throughout the United States" where that approach was *not* "dispute[d]").  The nationwide service of process provision in the Clayton Act, 15 U.S.C. § 22, is not available here, because the Complaint does not allege any valid federal claim under the Clayton Act.  Indeed, Plaintiffs have not alleged a continuing violation of federal law conferring any standing to seek an injunction, and damages under the Clayton Act are concededly unavailable under *Illinois Brick*. Moreover, even if damages were available under the state laws invoked in the Complaint (and they are not, as explained in the Joint Rule 12(b)(6) Memo), the Clayton Act cannot function as a vehicle for exercising specific personal jurisdiction over the Foreign Defendants on claims under those *state* laws. *See ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 n.6 (2d Cir. 2013); *Chevron Corp. v. Naranjo*, 667 F.3d 232, 246 n.17 (2d Cir. 2012); *see 7 W. 57th St. Realty Co. v. Citigroup, Inc.*, No. 13 Civ. 981, 2015 WL 1514539, at *7 n.2 (S.D.N.Y. Mar. 31, 2015) (inadequately pleaded RICO and antitrust claims invalidate reliance on corresponding statutory "nationwide personal jurisdiction provisions").

In any event, even if there were a need to reach the constitutional question, *Daimler* compels the rejection of the "nationwide contacts" approach as inadequate under due process. *See Livnat v. Palestinian Auth.*, 851 F.3d 45, 55

I.      **GENERAL PERSONAL JURISDICTION IS LACKING IN THIS FORUM.**

As this Court has already recognized, *see FOREX*, 2016 WL 1268267, at *3–4, general

jurisdiction is appropriate "only when the corporation's affiliations with the State in which suit is

brought are so constant and pervasive 'as to render [it] essentially at home in the forum State,'"

*Daimler*, 134 S. Ct. at 751 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S.

915, 919 (2011)).  "The 'paradigm' forums in which a corporate defendant is 'at home,' . . . are

the corporation's place of incorporation and its principal place of business," and those are the

forums where the corporate defendant is subject to personal jurisdiction for claims that arise

outside the forums.  *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler*,

134 S. Ct. at 760); *see Gucci*, 768 F.3d at 135.  The correct inquiry is thus whether a defendant's

contacts with the forum "shift the company's primary place of business (or place of

incorporation) away from" its home country.  *Brown v. Lockheed Martin Corp.*, 814 F.3d 619,

629 (2d Cir. 2016).  This Complaint is devoid of any allegation that would support such general

jurisdiction over the Foreign Defendants in New York or anywhere else in the United States.[11]

None of the Foreign Defendants is incorporated in or has its principal place of business in New

York or anywhere else in the United States.  *See* App.  Instead, the Foreign Defendants are

incorporated and maintain headquarters in the United Kingdom, France, Switzerland, or Japan.

Although the Complaint refers to the existence of New York branches of some of the Foreign

---

n.6 (D.C. Cir. 2017) (noting that some courts have reasoned that "under the Fifth Amendment, even if the defendant has sufficient nationwide contacts, a plaintiff must additionally justify jurisdiction in the particular state") (citing *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1211 (10th Cir. 2000); *Republic of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 947 (11th Cir. 1997)).

[11]    This Court has already concluded that BTMU, Société Générale, and Standard Chartered Bank are not subject to general jurisdiction.  They are not "'essentially at home' in this country."  *FOREX*, 2016 WL 1268267, at *3. Another court in this District recently applied *Daimler* and *Gucci* and held "without hesitation" that certain global banks—including Barclays and RBS—were not subject to general jurisdiction in New York or Virginia.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262, 2015 WL 6243526, at *26 (S.D.N.Y. Oct. 20, 2015) ("*LIBOR IV*").

Defendants, *e.g.*, CAC ¶ 22 (BTMU), ¶ 34 (Société Générale), ¶ 35 (Standard Chartered), neither New York nor anywhere else in the United States is the principal place of any of the Foreign Defendants' business.  The Foreign Defendants thus are not "at home" or "centered" in—and hence are not subject to jurisdiction in—New York or anywhere else in the United States for claims unrelated to their contacts with the forum.  *See Waldman*, 835 F.3d at 333–34; *Gucci*, 768 F.3d at 135.  Plaintiffs have not come close to meeting their burden to show otherwise.  Additionally, nothing in the Complaint would support classifying this action as a "truly 'exceptional' case" warranting exercise of general personal jurisdiction outside of *Daimler*'s rule.  *FOREX*, 2016 WL 1268267, at *3 (quoting *Brown*, 814 F.3d at 627).[12]

## II.   SPECIFIC PERSONAL JURISDICTION IS LACKING IN THIS FORUM ON THESE NAMED PLAINTIFFS' CLAIMS.

Specific jurisdiction "depends on in-state activity that '*gave rise to the episode-in-suit*.'" *Waldman*, 835 F.3d at 331 (quoting *Goodyear*, 564 U.S. at 923) (in turn quoting *Int'l Shoe*, 326 U.S. at 317) (emphasis in original).  Thus, for a court to exercise specific jurisdiction over a defendant, "the defendant's *suit-related* conduct must create *a substantial connection with the forum State*," "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State," and the contacts must be "with the forum State itself, not . . . with persons who reside there." *Walden*, 134 S. Ct. at 1121–22 (first emphasis added) (citation omitted); *see*

---

[12]   Nor may general jurisdiction over Foreign Defendants Barclays, HSBC, RBS, and UBS be established through alleged conduct of their U.S.-based subsidiaries or affiliates.  CAC ¶ 23 (Barclays); ¶ 29 (HSBC); ¶ 33 (RBS);  ¶ 36 (UBS).  The Complaint does not allege conduct specific to U.S.-based subsidiaries or affiliates of the Foreign Defendants.  Nor does it "provide sufficient facts . . . in support of a veil-piercing or alter ego analysis." *FOREX*, 2016 WL 1268267, at *7.  Allegations about a subsidiary or affiliate say nothing about the parent corporation for purposes of personal jurisdiction. *Rush*, 444 U.S. at 331–32.  Indeed, *Daimler* rejected an agency-based personal jurisdiction theory that would "subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate."  134 S. Ct. at 760.  It is of no consequence whether in-state activities of a subsidiary or affiliate are "important" to the parent corporation, because "[a]nything a corporation does through an independent contractor, subsidiary, or distributor is presumably something" that is "important" to the parent corporation, and "such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* at 759, 761.

*Waldman*, 835 F.3d at 335.  "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  *BMS*, 137 S. Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919) (internal quotation marks and brackets omitted)).  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  *Id.* at 1781.

The "proper question" here "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  *Walden*, 134 S. Ct. at 1125.  "[N]o less than a 'but for' connection between the defendant's forum-directed activities and the claim" is required for specific jurisdiction.  *LIBOR VI*, 2016 WL 7378980, at *8 (internal quotations and citations omitted); *see Walden*, 134 S. Ct. at 1124 ("reputational injury caused by the defendants'" conduct in key specific jurisdiction precedent, *Calder v. Jones*, 465 U.S. 783 (1984), "would not have occurred *but for* the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens" (emphasis added)); *Waldman*, 835 F.3d at 341 ("Courts typically require that the plaintiff show some sort of *causal relationship* between a defendant's [forum] contacts and the episode in suit." (internal quotation marks omitted) (emphasis added)).

Exercise of specific personal jurisdiction may be valid "where the defendant has purposefully avail[ed] itself of the privilege of conducting activities within the forum State . . . such that [the defendant] should reasonably anticipate being haled into court there."  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242–43 (2d Cir. 2007) (internal quotations and citations omitted).  Alternatively, under the "effects" test in *Calder*, alleged tortious actions outside of the forum may suffice only when they were "expressly aimed" at the forum and the claims in suit

12

arose out of those actions. *O'Neill*, 714 F.3d at 674. Under that test, the "fact that harm in the forum is foreseeable . . . is insufficient" to confer jurisdiction based on in-forum effects of out-of-forum conduct. *Id*. Plaintiffs here fail under either of those theories of specific jurisdiction.

    **A.**    **A "Purposeful Availment" Theory Fails Because Plaintiffs Do Not Allege In-Forum Transactions By Their Intermediaries Giving Rise To Their Claims.**

        **1.**    **The purported misconduct toward the unidentified intermediaries is not alleged to have occurred within this forum.**

The Complaint fails to allege that the Foreign Defendants (i) transacted in FX Instruments with the intermediaries, or even (ii) communicated with the intermediaries, in New York or elsewhere in the United States. Plaintiffs thus have not plead that any contacts the Foreign Defendants had with the forum were the "but for" cause of Plaintiffs' claims. Accordingly, the Foreign Defendants "are not subject to specific personal jurisdiction based on a 'purposeful availment' theory because the [P]laintiffs' claims do not arise from the defendants' activity in the forum." *See Waldman*, 835 F.3d at 343.

The Supreme Court's recent decision in *BMS* clarified this requirement. The Court held there that nonresident plaintiffs who neither purchased nor ingested a company's blood thinning drug in California could not sue the company in California state court for claims based on the allegedly harmful effects of the drug, even though the company conducted research on other drugs in California, had five laboratories in California, and contracted with a California company to distribute the drug nationally. *See* 137 S. Ct. at 1778, 1781, 1783. The Court found that specific jurisdiction was lacking because the plaintiffs in *BMS* could not establish an "adequate link" between the forum and their claims. *See id.* at 1781–82. Merely pointing to forum contacts that were not alleged to have caused the asserted injuries was insufficient: "What is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Id.* at 1781.

13

*Waldman* likewise provides important guidance.  There, the Second Circuit applied *Walden* in overturning, for lack of personal jurisdiction, a jury verdict finding defendant Palestinian organizations liable under the Anti-Terrorism Act, 18 U.S.C. § 2333(a), for six attacks committed "in and around" Jerusalem by nonparties affiliated with those organizations. *Id*. at 335.  Although one organization maintained an office in the forum for lobbying the U.S. government, that did not establish purposeful availment, where the *plaintiffs' claims* did not arise from either "the defendants' purposeful contacts with the forum" or "any activity by the defendants in this forum."  *Id.* at 343.  The Second Circuit—in applying for the first time *Walden*'s instruction that a "defendant's suit-related conduct must create a substantial connection with the forum State," 134 S. Ct. at 1121—thus interpreted "suit-related conduct" to mean conduct "that could have subjected [the defendant] to liability" in the case before it, *Waldman*, 835 F.3d at 335.  The Court found no such conduct within the United States.  *Id.*; *see id.* at 337.

Here, the Complaint is similarly devoid of factual allegations connecting the "episode[s]-in-suit" underlying Plaintiffs' purported "indirect purchaser" claims to the Foreign Defendants' "minimum contacts" with the forum.  By failing to allege transactions or communications in the forum between the Foreign Defendants and the unidentified intermediaries, the Complaint is absent of any allegation of conduct in New York, or elsewhere in the United States, by the Foreign Defendants that "could have subjected" them "to liability" in this case.  Again, the Complaint does not describe the location of any *actual* transactions in which Plaintiffs' unidentified intermediaries purchased FX Instruments from the Foreign Defendants.  (The only locations described are the states and counties in which Plaintiffs *currently* reside, CAC ¶¶ 10–20, which is inadequate.  *See Walden*, 134 S. Ct. at 1125.  Nor does the Complaint identify a single communication in this forum leading to any actual transaction between Plaintiffs and their

unidentified intermediaries.  Further, the Complaint does not allege *when* or *where* such transactions occurred (if at all), by *which* intermediaries and *which* Foreign Defendants, or for *which* FX Instruments.

Moreover, Plaintiffs fail to plead that any of alleged the transactions between these unidentified intermediaries and the Foreign Defendants involved the manipulation that was the subject of the claims in *FOREX*.  And the Complaint's allegations that the unidentified intermediaries are "members of the Direct Settlement Class" preliminarily approved in *FOREX* (CAC ¶¶ 148, 204) also do not establish that the Foreign Defendants transacted or communicated with the intermediaries "within the forum," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), let alone that the Foreign Defendants imposed any "overcharge" on the intermediaries within the forum.  *See supra*, note 6.  Additionally, Plaintiffs' emphasis on their status as purported "indirect purchasers" contradicts any purposeful availment theory.  The freestanding choices by Plaintiffs and their intermediaries on what prices to pay (or charge) break the causal chain, for jurisdictional purposes, between the Foreign Defendants' forum-directed activities and the episodes-in-suit underlying Plaintiffs' claims.  *See LIBOR VI*, 2016 WL 7378980, at *8 ("any allegations of forum-related contacts that 'relate to' the antitrust conspiracy but that are not causally connected to actual LIBOR submissions are jurisdictionally insufficient"); *Walden*, 134 S. Ct. at 1124; *see also Waldman*, 835 F.3d at 335, 337, 341.

The Foreign Defendants and Plaintiffs are connected only through the unidentified intermediaries. The salient jurisdictional details of that connection are completely unpled. Subjecting the Foreign Defendants to liability for independent actions by those intermediaries in unknown locations would not provide the Foreign Defendants "fair warning that a particular activity may subject [them] to the jurisdiction of" a forum in which they are not at home.  *Burger*

*King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citation omitted; brackets in original); *see World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (requiring jurisdictional rules to afford "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit").[13]  And, of course, to the extent *unnamed* members of the putative "Nationwide" and "State" classes allegedly transacted in FX Instruments purchased from intermediaries who in turn transacted with the Foreign Defendants within the forum (CAC ¶¶ 40–48 & n.4), such allegations about *unnamed* class members cannot establish specific jurisdiction.[14]

### 2.  This Court's *FOREX* decision does not relieve these Plaintiffs of their burden to adequately plead specific jurisdiction.

Refusing to describe the locations of their unidentified intermediaries' transactions with the Foreign Defendants, Plaintiffs instead seek to circumvent the requirements of specific jurisdiction by explicitly relying on this Court's March 2016 Rule 12(b)(2) decision in *FOREX*. CAC ¶¶ 22, 34–35.  But there is a fundamental and dispositive distinction:  In *FOREX*, this Court concluded that the operative complaint sufficiently connected the plaintiffs' allegations— namely, direct injury to the plaintiffs resulting from a conspiracy in the FX spot market—with two defendant banks that had routinely entered into FX spot trading transactions in New York.

---

[13]   The "fair warning" requirement of Due Process applies with particular force as to those Plaintiffs who, based solely on their current residence in states *outside* New York, have asserted claims under the statutes of those states (CAC ¶¶ 11–20), but *without* alleging facts concerning the intermediary transactions sufficient to link them to this forum (and to the state of residence of each non-New York Plaintiff).  At the very least, each Plaintiff (including the sole New York plaintiff here) should be required, in any subsequent complaint, to identify each of their counterparty intermediaries by name and location, and to provide information connecting those identified intermediaries to each Foreign Defendant, so that the Foreign Defendants can properly assess and defend against Plaintiffs' jurisdictional allegations.

[14]   That is, Plaintiffs cannot assert injury based on those unknown persons not before the Court.  Article III of the U.S. Constitution compels focusing on the named plaintiffs, who alone have standing to sue based on the alleged injuries of nonparties, including unnamed members of the putative class.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)).

*See FOREX*, 2016 WL 1268267, at *5.  Additionally, the *FOREX* plaintiffs were able to

"supplement[]" those allegations with information from federal financial regulatory filings

quantifying the "gross notional outstanding *spot FX* contracts" reported for the New York

branches of the banks.  *Id.* at *6 (emphasis added).

By contrast here:  The linchpin of the Plaintiffs' purported claims is the alleged

"overcharges" their intermediaries paid in purchasing FX Instruments in the FX spot market,

which those intermediaries "directly passed on to" Plaintiffs in what has been called the *retail*

market.  CAC ¶¶ 10–20, 107, 148, 150, 204.  But the Complaint offers nothing showing that any

Foreign Defendant sold any FX Instruments to any of Plaintiffs' intermediaries in New York, or

elsewhere in the United States.[15]  Again, Plaintiffs have failed to plead nonconclusory facts

showing that any of the Foreign Defendants engaged in transactions with the intermediaries in

New York or the United States (let alone transactions at "supracompetitive prices," CAC ¶ 150,

or otherwise manipulated.

There is a clear difference between predicating personal jurisdiction over FX spot-market

manipulation claims on *in-forum* FX spot transactions, as in *FOREX*, and Plaintiffs' bid here to

extend personal jurisdiction over their "indirect" claims *without* alleging that any Foreign

Defendant engaged in any transaction in this forum with Plaintiffs' intermediaries—the *sine qua*

*non* of Plaintiffs' claims.  *See, e.g.*, *BMS*, 137 S. Ct. at 1781.

Notably, this Court also concluded in *FOREX* that personal jurisdiction is lacking over

defendants that do not "engage in FX activity in the United States or even operate or maintain

offices here."  *See* 2016 WL 1268267, at *4, 7 (dismissing Standard Chartered plc).  All claims

---

[15]   Moreover, as explained in the Joint Rule 12(b)(6) Memo, the Complaint lacks nonconclusory factual matter showing that the Defendants' conduct in the spot market was the proximate cause of the Plaintiffs' purported injuries in the so-called "retail" market.

here against HSBC Holdings plc and RBS should be dismissed on exactly the same rationale: They are foreign parent holding companies without foreign exchange trading operations, not banks, and therefore they cannot have sold FX Instruments to anyone in New York or anywhere else in the United States.  Indeed, HSBC Holdings plc, HSBC Bank plc, and RBS do not even have any offices or operations in New York or anywhere else in the United States.  *See* App. Additionally, to the extent Plaintiffs are relying on FX trading conduct by subsidiaries or affiliates of the Foreign Defendants—as is the case with the claims against Barclays, HSBC, RBS, and UBS—the Complaint contains no allegations sufficient to disregard traditional principles of corporate separateness previously described by this Court, and Plaintiffs supply no justification for subjecting any parent company to personal jurisdiction.[16]

B.   **The "Effects" Test Fails Because Plaintiffs Do Not Allege That The Foreign Defendants Intentionally Targeted This Forum.**

The Complaint also fails to allege adequately specific personal jurisdiction over Plaintiffs' claims through the "effects" test for out-of-forum conduct.  Under this test, "the defendant must 'expressly aim[ ]' his conduct at" the forum, *Waldman*, 835 F.3d at 337 (citation omitted), which means Plaintiffs must "plead facts demonstrating that the [misconduct alleged] *was done with the express aim* of causing an effect in New York" and that the claims in suit arose out of those actions, *7 W. 57th St.*, 2015 WL 1514539, at *11 (emphasis added).

---

[16]   "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *FOREX*, 2016 WL 1268267, at *7 (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)); *see Keeton*, 465 U.S. at 781 n.13.  Accordingly, "[f]or plaintiffs to establish personal jurisdiction through the activity of banks' subsidiaries and affiliates, plaintiffs must first show a 'merging [of] parent and subsidiary for jurisdictional purposes[, which] requires an inquiry comparable to the corporate law question of piercing the corporate veil.'" *LIBOR VI*, 2016 WL 7378980, at *10 (quoting *Goodyear*, 564 U.S. at 930) (internal quotation marks omitted) (alterations in original); *see In re Platinum & Palladium Fix Antitrust Litig.*, No. 14 Civ. 9391, 2017 WL 1169626, at *45–48 (S.D.N.Y. Mar. 28, 2017) (rejecting personal jurisdiction allegations seeking to "disregard[]" defendant's "corporate form").

Here, Plaintiffs simply have not asserted that the Foreign Defendants' actions were expressly aimed at New York or the United States.[17]   The Complaint does not allege that the Foreign Defendants acted with the required "calculat[ion] to cause injury" in New York or, for that matter, anywhere else in the United States.  *See Calder*, 465 U.S. at 791.  Consider, again, *Waldman*:  There, the alleged tortious acts occurred outside the United States and targeted "people from all over the world," and the alleged misconduct "continuously hit Americans."  835 F.3d at 337–38, 340 (internal quotation marks omitted).  But even there, the Second Circuit refused to conclude that "the United States is the focal point of the torts alleged" without nonspeculative allegations describing the defendants' calculation to cause injury *in the forum*. *Id.* at 340.  Targeting U.S. citizens overseas and intending to influence "United States policy to favor the defendants' political goals" did not convince the Court of Appeals that the defendants' *tortious* acts purposely targeted the *forum*.  *Id.* at 337.

Here, the Complaint attempts, at best, to impose liability based on tortious acts that occurred outside the United States and allegedly affected Plaintiffs' unidentified intermediaries. *See, e.g.*, CAC ¶¶ 80–90.  But the geographic center, or "focal point," of the alleged misconduct was the United Kingdom and continental Europe, not New York or the United States.  Plaintiffs trace their purported injuries, after all, to the "same FX manipulation conspiracy" depicted in the *FOREX* operative pleading and preliminarily approved settlement agreements, which concentrated on the WM/Reuters Fix rates "set at 4:00 p.m. London time," CAC ¶¶ 85–88, 176,

---

[17]   This Court in *FOREX* explicitly relied on pleaded "examples of each New Defendants' participation in the alleged conspiracy (albeit in chatrooms whose participants' locations are presently unknown)," to conclude that two of the Foreign Defendants' suit-related conduct had effects expressly aimed inside this forum.  2016 WL 1268267, at *6 (BTMU and Société Générale).  Plaintiffs here, by contrast, fail to provide examples of *any* in-forum communications connecting any Foreign Defendant to the intermediary transactions allegedly underlying Plaintiffs' claims.

and the "European Central Bank . . . reference rate," CAC ¶¶ 89–90; *see* CAC ¶ 176; *compare* CAC ¶ 62 *with FOREX* TAC ¶ 118.  Thus, as in *Waldman*, allegations of misconduct centered outside New York and outside the United States simply cannot satisfy Plaintiffs' obligation to establish specific jurisdiction *in this forum*.[18]

Furthermore, "mere knowledge" does not meet the "express aim" requirement.  *See Waldman*, 835 F.3d at 338; *Laydon*, 2017 WL 1113080, at *4.  Nor may the "effects" test be watered down to permit specific jurisdiction to attach based only on the location where the named Plaintiffs currently reside (however specified by state and county).  After all, "[d]ue process requires that a defendant be haled into court in a forum State based on *his own* affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Waldman*, 835 F.3d at 339 (indirectly quoting *Walden*, 134 S. Ct. at 1123) (emphasis added) (alteration in original).

### C.    The Conspiracy Alleged In *FOREX* Cannot Sustain Vicarious Specific Jurisdiction Over The Foreign Defendants.

The Complaint does not plead any basis for subjecting the Foreign Defendants to personal jurisdiction vicariously through the alleged in-forum conduct of other Defendants.  Bald recitation of language of conspiracy cannot suffice to show specific jurisdiction.  *See, e.g.*, CAC ¶¶ 8, 147–50.  Fatally, in addition to omitting allegations of in-forum transactions by Plaintiffs' intermediaries involving the Foreign Defendants, the Complaint omits allegations that any such

---

[18]    And other courts in this District have reached similar conclusions in recent Rule 12(b)(2) decisions after *FOREX* concerning alleged manipulation of international financial benchmarks.  *Platinum & Palladium Fix*, 2017 WL 1169626, at *44–45; *Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 12 Civ. 3419, 2017 WL 1113080, at *4–6 (S.D.N.Y. Mar. 10, 2017); *Sullivan v. Barclays PLC*, 13 Civ. 2811, 2017 WL 685570, at *45 (S.D.N.Y. Feb. 21, 2017); *accord FrontPoint Asian Event Driven Fund, Ltd. v. Citibank, N.A.*, No. 16-cv-5263, 4/27/2017 Tr. 19–20, 24 (S.D.N.Y.), attached as Exhibit 10 to Stock Decl.; *7 W. 57th St.*, 2015 WL 1514539, at *11; *LIBOR IV*, 2015 WL 6243526, at *32; *Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 3419, 2015 WL 1515358, at *3 (S.D.N.Y. Mar. 31, 2015); *Galope v. Deutsche Bank Nat'l Tr. Co.*, No. 12-00323, 2014 WL 8662645, at *3–4 (C.D. Cal. Nov. 14, 2014), *aff'd*, 666 Fed. App'x 671 (9th Cir. Dec. 14, 2016).

transactions were within "the scope of the conspiratorial agreement" alleged in *FOREX. See LIBOR VI*, 2016 WL 7378980, at *4 (citing *United States v. Rosenblatt*, 554 F.2d 36, 39 (2d Cir. 1977) (internal quotation marks omitted)); *see also Platinum & Palladium Fix*, 2017 WL 1169626, at *49 (rejecting conclusory effort to invoke conspiracy jurisdiction); *accord Laydon*, 2017 WL 1113080, at *5–6; *7 W. 57th St.*, 2015 WL 1514539, at *12–13.

In any event, although the availability "of the conspiracy theory of personal jurisdiction is unsettled in this Circuit," *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262, 2016 WL 1558504, at *9 n.8 (S.D.N.Y. Apr. 14, 2016), personal jurisdiction "must arise out of contacts that the 'defendant *himself*' creates with the forum State," *Walden*, 134 S. Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475) (emphasis in original); *see Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1343 (2d Cir. 1972) . That means personal jurisdiction consistent with the Due Process Clause cannot be obtained over the Foreign Defendants based on the alleged conduct of other Defendants. *Cf. LIBOR VI*, 2016 WL 7378980, at *12 (declining to opine "as to whether conspiracy jurisdiction survives as a doctrine after" *Walden*).[19]

## III. THE FOREIGN DEFENDANTS HAVE NOT CONSENTED TO JURISDICTION.

Also missing from the Complaint are allegations establishing that any of the Foreign Defendants consented to this Court's jurisdiction over Plaintiffs' suit. Even if Plaintiffs were to advance a "consent" argument with respect to certain Foreign Defendants based on the allegations in government agency proceedings (CAC ¶¶ 151–75), such an argument would fail on at least two grounds.[20] *First*, the resolutions and plea agreements cannot embody consent to

---

[19]   For example, the Due Process Clause forecloses exercise of specific personal jurisdiction over BTMU. In addition to their other pleading failures, Plaintiffs do not allege that they purchased FX Instruments from *any* intermediary who *ever* purchased an FX instrument from BTMU. *See* CAC ¶¶10–20.

[20]   Several of the Foreign Defendants—including RBS, BTMU, Société Générale, and Standard Chartered Bank— were not named parties in any of the government enforcement resolutions cited in the Complaint.

personal jurisdiction as to Plaintiffs' claims, because those documents did not describe in-forum transactions by Plaintiffs' intermediaries—which are unnamed even in the Complaint itself—involving any of *the Foreign Defendants*.  Nor is it alleged that any government agency has asserted that the Foreign Defendants overcharged any of Plaintiffs' intermediaries in pricing FX Instruments.  *Second*, the resolutions and plea agreements cannot embody consent to *this Court's* exercise of personal jurisdiction over *Plaintiffs' claims*.  "A party's consent to jurisdiction in one case," the Second Circuit has explained, "extends to that case alone.  It in no way opens that party up to other lawsuits in the same jurisdiction in which consent was given, where the party does not consent and no other jurisdictional basis is available."  *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir. 1991) (cited in *Laydon*, 2015 WL 1515358, at \*5 n.10); *see In re Papst Licensing GMBH & Co. KG Litig.*, 590 F. Supp. 2d 94, 100–01 (D.D.C. 2008).  The principle applies with equal force when the prior case is a "related" criminal proceeding.  *United States v. 51 Pieces of Real Prop., Roswell, New Mexico*, 17 F.3d 1306, 1313 (10th Cir. 1994).[21]

## CONCLUSION

The Court should dismiss the Complaint for lack of personal jurisdiction as to the Foreign Defendants.

---

[21]   Furthermore, consent here cannot be derived from the alleged maintenance by certain Foreign Defendants of New York branches registered with or licensed by the New York Department of Financial Services.  CAC ¶ 22 (BTMU); ¶ 23 (Barclays Bank PLC); ¶ 34 (Société Générale); ¶ 35 (Standard Chartered Bank).  Any consent to jurisdiction provided by the pertinent statute, New York Banking Law § 200(3), is expressly limited to suits "arising out of a transaction" with the Foreign Bank's New York agency or branch, and is not a basis for the exercise of general jurisdiction.  *See 7 W. 57th St.*, 2015 WL 1514539 at \*11; *LIBOR IV*, 2015 WL 6243526 at \*26–27; *see also Brown*, 814 F.3d at 623 (general jurisdiction unavailable based on Connecticut business registration statutes).  Thus, in *FOREX*, after addressing arguments of constructive consent to personal jurisdiction under New York Banking Law §§ 200(3) and 200-b, this Court concluded that BTMU, Société Générale, and Standard Chartered Bank had "not broadly consented in a way that would encompass the claims in [that] case" and "any consent to jurisdiction by virtue of the New Defendants' registration with the NYDFS is not general jurisdiction over all claims."  2016 WL 1268267, at \*2.  (Barclays Bank PLC was not before the Court on that Rule 12(b)(2) motion in *FOREX*.)  Specific jurisdiction is also unavailing here, as explained, because allegations of spot FX activity through the New York branches named here do not imply that such activity involved the intermediaries with which Plaintiffs allegedly transacted.

Dated:   New York, New York
         August 11, 2017

SULLIVAN & CROMWELL LLP

By: /s/ Matthew A. Schwartz
Matthew A. Schwartz
David H. Braff
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
schwartzmatthew@sullcrom.com
braffd@sullcrom.com

*Attorneys for Foreign Defendant*
*Barclays Bank PLC*


DAVIS POLK & WARDWELL LLP

By:  /s/ Joel M. Cohen
Joel M. Cohen
Melissa C. King
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
joel.cohen@davispolk.com
melissa.king@davispolk.com

*Attorneys for Foreign Defendant*
*The Royal Bank of Scotland Group plc*

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Eric J. Stock
Eric J. Stock
Indraneel Sur
200 Park Avenue
New York, New York 10166
Telephone:  (212) 351-4000
estock@gibsondunn.com
isur@gibsondunn.com

D. Jarrett Arp
Melanie L. Katsur
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone:  (202) 955-8500
jarp@gibsondunn.com
mkatsur@gibsondunn.com

*Attorneys for Foreign Defendant*
*UBS AG*

LINKLATERS LLP

By:  /s/ James R. Warnot, Jr
James R. Warnot, Jr.
Adam S. Lurie
Patrick C. Ashby
1345 Avenue of the Americas
New York, New York 10105
Telephone:  (212) 903-9000
james.warnot@linklaters.com
adam.lurie@linklaters.com
patrick.ashby@linklaters.com

***Attorneys for Foreign Defendant***
***Société Générale***


PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP

By:  /s/ Kenneth A. Gallo
Kenneth A. Gallo
Michael E. Gertzman
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
kgallo@paulweiss.com
mgertzman@paulweiss.com

***Attorneys for Foreign Defendant The***
***Bank of Tokyo-Mitsubishi UFJ, Ltd.***

LOCKE LORD LLP

By:  /s/ Gregory T. Casamento
Gregory T. Casamento
3 World Financial Center
New York, New York 10281
Telephone:  (212) 812-8325
gcasamento@lockelord.com

Roger B. Cowie
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201-6776
Telephone:  (214) 740-8000
rcowie@lockelord.com

J. Matthew Goodin
Julia C. Webb
111 S. Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 443-0472
jmgoodin@lockelord.com
jwebb@lockelord.com

***Attorneys for Foreign Defendants***
***HSBC Holdings plc and HSBC Bank plc***


SIDLEY AUSTIN LLP

By:  /s/ Andrew W. Stern
Andrew W. Stern
Alan M. Unger
Nicholas P. Crowell
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 839-5300
astern@sidley.com
aunger@sidley.com w
ncrowell@sidley.com

***Attorneys for Foreign Defendant***
***Standard Chartered Bank***