UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------- x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. |
| v. | : | Filed: |
| THE ROYAL BANK OF SCOTLAND PLC, | : | Violation: 15 U.S.C. § 1 |
| Defendant. | : | |

------------------------------------------------------------- x

## PLEA AGREEMENT

The United States of America and The Royal Bank of Scotland plc ("defendant"), a financial services public limited company organized and existing under the laws of the United Kingdom, hereby enter into the following Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."):

## RIGHTS OF DEFENDANT

1. The defendant understands its rights:

    (a) to be represented by an attorney;

    (b) to be charged by Indictment;

    (c) as a public limited company organized and existing under the laws of the United Kingdom, to decline to accept service of the Summons in this case, and to contest the jurisdiction of the United States to prosecute this case against it in the United States District Court for the District of Connecticut, and to contest venue in that District;

    (d) to plead not guilty to any criminal charge brought against it;

1

no known evidence of ineffective assistance of counsel or prosecutorial misconduct. Pursuant to Fed. R. Crim. P. 7(b), the defendant will waive indictment and plead guilty to a one-count Information to be filed in the United States District Court for the District of Connecticut. The Information will charge that the defendant and its co-conspirators entered into and engaged in a combination and conspiracy to fix, stabilize, maintain, increase or decrease the price of, and rig bids and offers for, the euro/U.S. dollar ("EUR/USD") currency pair exchanged in the foreign currency exchange spot market ("FX Spot Market"), which began at least as early as December 2007 and continued until at least January 2013, by agreeing to eliminate competition in the purchase and sale of the EUR/USD currency pair in the United States and elsewhere, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. The Information will further charge that the defendant knowingly joined and participated in the conspiracy from at least as early as December 2007 until at least April 2010.

3. The defendant will plead guilty to the criminal charge described in Paragraph 2 above pursuant to the terms of this Plea Agreement and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below.

### FACTUAL BASIS FOR OFFENSE CHARGED

4. Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts:

> (a) For purposes of this Plea Agreement, the "Relevant Period" is that period from at least as early as December 2007 and continuing until at least January 2013.
>
> (b) The FX Spot Market is a global market in which participants buy and sell currencies. In the FX Spot Market, currencies are traded against one another in pairs.

The EUR/USD currency pair is the most traded currency pair by volume, with a worldwide trading volume that can exceed $500 billion per day, in a market involving the exchange of currencies valued at approximately $2 trillion a day during the Relevant Period.

(c)     The FX Spot Market is an over-the-counter market and, as such, is decentralized and requires financial institutions to act as dealers willing to buy or sell a currency.  Dealers, also known throughout the FX Spot Market as market makers, therefore play a critical role in ensuring the continued functioning of the market.

(d)     During the Relevant Period, the defendant and certain of its Related Entities, as defined in Paragraph 14 of this Plea Agreement, employing more than 5,000 individuals worldwide, acted as a dealer, in the United States and elsewhere, for currency traded in the FX Spot Market.

(e)     A dealer in the FX Spot Market quotes prices at which the dealer stands ready to buy or sell the currency.  These price quotes are expressed as units of a given currency, known as the "counter" currency, which would be required to purchase one unit of a "base" currency, which is often the U.S. dollar and so reflects an "exchange rate" between the currencies.  Dealers generally provide price quotes to four decimal points, with the final digit known as a "percentage in point" or "pip."  A dealer may provide price quotes to potential customers in the form of a "bid/ask spread," which represents the difference between the price at which the dealer is willing to buy the currency from the customer (the "bid") and the price at which the dealer is willing to sell the currency to the customer (the "ask").  A dealer may quote a spread, or may provide just the bid to a

potential customer inquiring about selling currency or just the ask to a potential customer inquiring about buying currency.

(f)     A customer wishing to trade currency may transact with a dealer by placing an order through the dealer's internal, proprietary electronic trading platform or by contacting the dealer's salesperson to obtain a quote.  When a customer accepts a dealer's quote, that dealer now bears the risk for any change in the currency's price that may occur before the dealer is able to trade with other dealers in the "interdealer market" to fill the order by buying the currency the dealer has agreed to sell to the customer, or by selling the currency the dealer has agreed to buy from the customer.  A dealer may also take and execute orders from customers such as "fix orders," which are orders to trade at a subsequently determined "fix rate."  When a dealer accepts a fix order from a customer, the dealer agrees to fill the order at a rate to be determined at a subsequent fix time based on trading in the interdealer market.  Two such "fixes" used to determine a fix rate are the European Central Bank fix, which occurs each trading day at 2:15 PM (CET) and the World Markets/Reuters fix, which occurs each trading day at 4:00 PM (GMT).

(g)     During the Relevant Period, the defendant and its corporate co-conspirators, which were also financial services firms acting as dealers in the FX Spot Market, entered into and engaged in a conspiracy to fix, stabilize, maintain, increase or decrease the price of, and rig bids and offers for, the EUR/USD currency pair exchanged in the FX Spot Market by agreeing to eliminate competition in the purchase and sale of the EUR/USD currency pair in the United States and elsewhere. The defendant, through

one of its EUR/USD traders, participated in the conspiracy from at least as early as December 2007 and continuing until at least April 2010.

(h) In furtherance of the conspiracy, the defendant and its co-conspirators engaged in communications, including near daily conversations, some of which were in code, in an exclusive electronic chat room, which chat room participants, as well as others in the FX Spot Market, referred to as "The Cartel" or "The Mafia." Participation in this electronic chat room was limited to specific EUR/USD traders, each of whom was employed, at certain times, by a co-conspirator dealer in the FX Spot Market. The defendant participated in this electronic chat room through one of its EUR/USD traders from December 2007 until April 2010.

(i) The defendant and its co-conspirators carried out the conspiracy to eliminate competition in the purchase and sale of the EUR/USD currency pair by various means and methods including, in certain instances, by: (i) coordinating the trading of the EUR/USD currency pair in connection with European Central Bank and World Markets/Reuters benchmark currency "fixes" which occurred at 2:15 PM (CET) and 4:00 PM (GMT) each trading day; and (ii) refraining from certain trading behavior, by withholding bids and offers, when one conspirator held an open risk position, so that the price of the currency traded would not move in a direction adverse to the conspirator with an open risk position.

(j) During the Relevant Period, the defendant and its co-conspirators purchased and sold substantial quantities of the EUR/USD currency pair in a continuous and uninterrupted flow of interstate and U.S. import trade and commerce to customers

and counterparties located in U.S. states other than the U.S. states or foreign countries in which the defendant agreed to purchase or sell these currencies.  The business activities of the defendant and its co-conspirators in connection with the purchase and sale of the EUR/USD currency pair, were the subject of this conspiracy and were within the flow of, and substantially affected, interstate and U.S. import trade and commerce.  The conspiracy had a direct effect on trade and commerce within the United States, as well as on U.S. import trade and commerce, and was carried out, in part, within the United States.

  (k) Acts in furtherance of the charged offense were carried out within the District of Connecticut and elsewhere.

## ELEMENTS OF THE OFFENSE

5. The elements of the charged offense are that:

  (a) the conspiracy described in the Information existed at or about the time alleged;

  (b) the defendant knowingly became a member of the conspiracy; and

  (c) the conspiracy described in the Information either substantially affected interstate and U.S. import commerce in goods or services or occurred within the flow of interstate and U.S. import commerce in goods and services.

## POSSIBLE MAXIMUM SENTENCE

6. The defendant understands that the statutory maximum penalty which may be imposed against it upon conviction for a violation of Section One of the Sherman Antitrust Act is a fine in an amount equal to the greatest of: