UNITED STATES OF AMERICA
Before the
COMMODITY FUTURES TRADING COMMISSION

RECEIVED CFTC

Office of Proceedings
Proceedings Clerk
**11:59 pm, Nov 11, 2014**

| | |
|---|---|
| In the Matter of:<br><br>HSBC Bank plc,<br><br>           Respondent. | )<br>)<br>)<br>)<br>)    CFTC Docket No. 15 – 07<br>)<br>)<br>)<br>)<br>) |

**ORDER INSTITUTING PROCEEDINGS PURSUANT TO
SECTIONS 6(c)(4)(A) AND 6(d) OF THE COMMODITY EXCHANGE ACT,
MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS**

**I.**

The Commodity Futures Trading Commission ("Commission") has reason to believe that HSBC Bank plc ("Respondent" or "HSBC") has violated the Commodity Exchange Act (the "Act") and Commission Regulations ("Regulations"). Therefore, the Commission deems it appropriate and in the public interest that public administrative proceedings be, and hereby are, instituted to determine whether Respondent engaged in the violations set forth herein, and to determine whether any order shall be issued imposing remedial sanctions.

**II.**

In anticipation of the institution of an administrative proceeding, Respondent has submitted an Offer of Settlement ("Offer"), which the Commission has determined to accept. Without admitting or denying the findings or conclusions herein, Respondent herein consents to the entry, and acknowledges service of, this Order Instituting Proceedings Pursuant to Sections 6(c)(4)(A) and 6(d) of the Commodity Exchange Act, Making Findings, and Imposing Remedial Sanctions ("Order").[1]

---

[1] Respondent consents to the entry of this Order and to the use of these findings in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party; provided, however, that Respondent does not consent to the use of the Offer, or the findings or conclusions in this Order, as the sole basis for any other proceeding brought by the Commission, other than in a proceeding in bankruptcy or to enforce the terms of this Order. Nor does Respondent consent to the use of the Offer or this Order, or the findings or conclusions in this Order consented to in the Offer, by any other party in any other proceeding. Neither the Offer nor the Order confers any rights to any party other than the Commission and HSBC.

### III.

The Commission finds the following:

A. **Summary**

From 2009 through mid-2012 ("Relevant Period"), HSBC, by and through certain foreign exchange desk traders ("FX traders"), at times, sought to benefit its own trading positions or those of certain FX traders at other banks by attempting to manipulate, and aiding and abetting other banks in their attempts to manipulate certain FX benchmark rates, principally the World Market/Reuters Closing Spot Rates ("WM/R Rates").

The WM/R Rates are the most widely referenced FX benchmark rates in the United States and globally. The WM/R Rates are used to establish the relative values of different currencies, and reflect the rates at which one currency is exchanged for another currency. Most of the WM/R Rates at issue here are set or fixed based on trading activity of market participants, including HSBC and other banks, at various times throughout the day. The most widely used WM/R Rate is set or fixed at 4 p.m. London time ("4 p.m. WM/R fix").

FX benchmark rates, including the WM/R Rates, are used to price a variety of transactions including foreign exchange swaps, cross currency swaps, spot transactions, forwards, options, futures, and other financial derivative instruments. The most actively traded currency pairs are the Euro/U.S. Dollar (EUR/USD), U.S. Dollar/Japanese Yen (USD/YEN), and British Pound Sterling/U.S. Dollar (GBP/USD). Accordingly, the integrity of the WM/R Rates and other FX benchmark rates is critical to the integrity of the markets in the United States and around the world.

At times, during the Relevant Period, certain FX traders at HSBC coordinated their trading with FX traders at other banks to attempt to manipulate certain FX benchmark rates, including the 4 p.m. WM/R fix, to their benefit. These FX traders at HSBC and other banks used private electronic chat rooms to communicate and plan their attempts to manipulate the FX benchmark rates for certain currency pairs.[2] Certain FX traders at HSBC regularly participated in numerous private chat rooms. At times, in certain chat rooms, HSBC FX traders disclosed confidential customer order information and trading positions, altered trading positions to accommodate the interests of the collective group, and agreed on trading strategies as part of an effort by the group to attempt to manipulate certain FX benchmark rates, in some cases downward and in some cases upward.

HSBC FX traders' attempts to manipulate certain FX benchmark rates related principally to the GBP/USD currency pair. The wrongful conduct involved primarily two traders on the London G10 FX trading desk. This conduct occurred at times over the course of the Relevant Period without detection by HSBC, in part, because of internal controls and supervisory failures

---

[2] Some FX traders involved in certain chat rooms at issue herein were responsible for managing their respective banks' FX desks.

2

- processes for the periodic but routine review of written and oral communications of any traders, supervisors and others who are involved in the fixing of any FX benchmark rate with the review being documented and documentation being maintained for a period of three years; and

- continue to implement its system for reporting, handling and investigating any suspected misconduct or questionable, unusual or unlawful activity relating to the fixing of any FX benchmark rate with escalation to compliance and legal and with reporting of material matters to the executive management of HSBC, the Commission and other appropriate regulators; the Respondent shall maintain the record basis of the handling of each such matter for a period of three years.

c. Within 120 days of the entry of this Order, the Respondent shall make a report to the Commission, through the Division, concerning its remediation efforts, prior to and since the entry of this Order. Within 365 days of entry of this Order, Respondent shall submit a report to the Commission, through the Division, explaining how it has complied with the undertakings set forth herein. The report shall contain a certification from a representative of the Respondent's Executive Management, after consultation with the Respondent's chief compliance officer(s), that Respondent has complied with the undertakings set-forth above, and that it has established policies, procedures, and controls to satisfy the undertakings set-forth in the Order.

2. COOPERATION WITH THE COMMISSION

In this action, and in any investigation or other action instituted by the Commission, related to the subject matter of this action, Respondent shall cooperate fully and expeditiously with the Commission, including the Division, As part of such cooperation, Respondent agrees to the following for a period of three (3) years from the date of the entry of this Order, or until all related investigations and litigations in which the Commission, including the Division, is a party, are concluded, including through the appellate review process, whichever period is longer:

1. Preserve all records relating to the subject matter of this proceeding, including, but not limited to, audio files, electronic mail, other documented communications, and trading records;

2. Comply fully, promptly, completely, and truthfully with all inquiries and requests for non-privileged information or documents;

3. Provide authentication of documents and other evidentiary material;

18

    4. Provide copies of non-privileged documents within HSBC's possession, custody or control;

    5. Subject to applicable laws and regulations, HSBC will make its best efforts to produce any current (as of the time of the request) officer, director, employee, or agent of HSBC, regardless of the individual's location, and at such location that minimizes Commission travel expenditures, to provide assistance at any trial, proceeding, or Commission investigation related to the subject matter of this proceeding, including, but not limited to, requests for testimony, depositions, and/or interviews, and to encourage them to testify completely and truthfully in any such proceeding, trial, or investigation; and

    6. Subject to applicable laws and regulations, HSBC will make its best efforts to assist in locating and contacting any prior (as of the time of the request) officer, director, employee or agent of HSBC.

Respondent also agrees that it will not undertake any act that would limit its ability to cooperate fully with the Commission. HSBC will designate an agent located in the United States of America to receive all requests for information pursuant to these Undertakings, and shall provide notice regarding the identity of such Agent to the Division upon entry of this Order. Should HSBC seek to change the designated agent to receive such requests, notice of such intention shall be given to the Division fourteen (14) days before it occurs. Any person designated to receive such request shall be located in the United States of America.

3.     PROHIBITED OR CONFLICTING UNDERTAKINGS

Should the Undertakings herein be prohibited by, or be contrary to the provisions of any obligations imposed on Respondent by any presently existing, or hereinafter enacted or promulgated laws, regulations, regulatory mandates, or the rules or definitions issued by a Benchmark Publisher, then Respondent shall promptly transmit notice to the Commission (through the Division) of such prohibition or conflict, and shall meet and confer in good faith with the Commission (through the Division) to reach an agreement regarding possible modifications to the Undertakings herein sufficient to resolve such inconsistent obligations. In the interim, Respondent will abide by the obligations imposed by the law, regulations, regulatory mandates and Benchmark Publishers' rules and definitions. Nothing in these Undertakings shall limit, restrict or narrow any obligations pursuant to the Act or the Commission's Regulations promulgated