**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMES CONTANT, SANDRA LAVENDER, VICTOR HERNANDEZ, MARTIN-HAN TRAN, FX PRIMUS LTD., CARLOS GONZALEZ, UGNIUS MATKUS, CHARLES G. HITCHCOCK III, JERRY JACOBSON, TINA PORTER, AND PAUL VERMILLION on behalf of themselves and all others similarly situated, | Case No. 1:17-cv-03139-LGS [rel. 13-cv-7789-LGS] ECF CASE |
| Plaintiffs, | |
| v. | |
| BANK OF AMERICA CORPORATION, *et al.*, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT .................................................................................................................................... 2

I.      THE LACK OF PLEADED FACTS SHOWING THAT DEFENDANTS'
        CONDUCT PROXIMATELY CAUSED PLAINTIFFS' ALLEGED INJURY
        DOOMS ALL OF PLAINTIFFS' CAUSES OF ACTION ............................................... 2

II.     PLAINTIFFS' INABILITY TO SATISFY THE *AGC* "EFFICIENT
        ENFORCER" FACTORS DEFEATS PLAINTIFFS' CLAIMS UNDER THE
        FEDERAL, ARIZONA, CALIFORNIA, ILLINOIS, NEW YORK, AND NORTH
        CAROLINA ANTITRUST STATUTES .......................................................................... 5

        A.      Contrary to Plaintiffs' Assertion, the *AGC* "Efficient Enforcer" Factors
                Apply to Indirect Purchaser Claims Under Certain States' Antitrust Laws ........... 5

        B.      Plaintiffs Have Not Pleaded Facts to Show That They Meet the *AGC*
                Factors ................................................................................................................... 8

III.    PLAINTIFFS' OPPOSITION IDENTIFIES NO PLEADED FACTS SHOWING
        THAT DEFENDANTS MAY, CONSISTENT WITH DUE PROCESS, BE
        SUBJECT TO SUIT UNDER ARIZONA, CALIFORNIA, FLORIDA,
        ILLINOIS, MASSACHUSETTS, MINNESOTA, AND NORTH CAROLINA
        STATE LAWS ................................................................................................................. 8

IV.     OTHER FATAL FLAWS PLAGUE PLAINTIFFS' STATE LAW CLAIMS ................. 9

        A.      North Carolina Antitrust Law Exempts Pervasively Regulated Conduct .............. 9

        B.      The Florida and Illinois Statutes Exempt Regulated Banks ................................ 10

        C.      Plaintiffs Are Not Consumers Under the Florida Consumer Protection
                Law ...................................................................................................................... 11

        D.      Plaintiffs Have Not Engaged in Consumer Transactions in Massachusetts ......... 11

        E.      The Illinois Antitrust Act Precludes Class Actions ............................................ 12

        F.      The North Carolina, California and Massachusetts Acts Require
                Pleadings of Intrastate Conduct and Injury ........................................................ 12

V.      PLAINTIFFS HAVE NOT REMEDIED THE LACK OF PLEADED FACTS
        SHOWING THEIR ENTITLEMENT TO INJUNCTIVE RELIEF ............................... 13

VI.    ALTERNATIVELY, PLAINTIFFS' CLAIMS SHOULD BE ENJOINED AS TO
*FOREX* SETTLING DEFENDANTS AND CONSOLIDATED AS TO THE
NON-SETTLING DEFENDANT .................................................................................. 13

VII.    LEAVE TO AMEND SHOULD BE DENIED .............................................................. 14

CONCLUSION ....................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Hague*,
  449 U.S. 302 (1981) ...................................................................................................9

*In re Aluminum Warehousing Antitrust Litigation*,
  833 F.3d 151 (2d Cir. 2016)...............................................................................2, 4, 5

*In re Asacol Antitrust Litigation*,
  No. 15-cv-12730-DJC, 2016 WL 4083333 (D. Mass. July 20, 2016) ............................13

*Associated General Contractors of California, Inc. v. California State Council of Carpenters*,
  459 U.S. 519 (1983) ...................................................................................................1

*AT&T Mobility LLC v. AU Optronics Corp*,
  707 F.3d 1106 (9th Cir. 2013)....................................................................................9

*In re Automotive Parts Antitrust Litigation*,
  Nos. 2:12-cv-00202, 2:12-cv-00203, 2014 WL 2993753 (E.D. Mich. July 3, 2014) .......12

*Axiom Investment Advisors, LLC ex rel. Gildor Management, LLC v. Deutsche Bank AG*,
  234 F. Supp. 3d 526 (S.D.N.Y. 2017) .........................................................................11

*Bache Halsey Stuart, Inc. v. Hunsucker*,
  248 S.E. 2d 567 (N.C. 1978).......................................................................................9

*Bunker's Glass Co. v. Pilkington PLC*,
  75 P.3d 99 (Ariz. 2003) .............................................................................................6

*Carroll v. Lowes Home Centers, Inc.*,
  No. 12-23996-CIV, 2014 WL 1928669 (S.D. Fla. May 6, 2014) ...................................11

*In re Cast Iron Soil Pipe & Fittings Antitrust Litigation*,
  No. 1:14-md-2508, 2015 WL 5166014 (E.D. Tenn. June 24, 2015)...............................12

*Clayworth v. Pfizer, Inc.*,
  233 P.3d 1066 (Cal. 2010) ..........................................................................................7

*County of Cook v. Philip Morris, Inc.*,
  817 N.E.2d 1039 (Ill. App. Ct. 2004) ...........................................................................7

*Crowell v. Morgan, Stanley, Dean Witter Services Co.*,
  87 F. Supp. 2d 1287 (S.D. Fla. 2000) .........................................................................11

*In re Digital Music Antitrust Litigation*,
  812 F. Supp. 2d 390 (S.D.N.Y. 2011) .....................................................................5, 12

*In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*,
    516 F. Supp. 2d 1072 (N.D. Cal. 2007)................................................................5

*In re Flash Memory Antitrust Litigation*,
    643 F. Supp. 2d 1133 (N.D. Cal. 2009)..............................................................7

*Frullo v. Landenberger*,
    814 N.E.2d 1105 (Mass. App. Ct. 2004)...........................................................11

*Gelboim v. Bank of America Corp.*,
    823 F.3d 759 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 814 (2017).................5, 8

*Hagy ex rel. Estate of Worley v. Advance Auto Parts, Inc.*,
    3:15-CV-509-RJC-DCK, 2016 WL 5661530 (W.D.N.C. Sept. 28, 2016).......10

*HAJMM Co. v. House of Raeford Farms, Inc.*,
    403 S.E.2d 483 (N.C. 1991)..............................................................................10

*Ho v. Visa U.S.A. Inc.*,
    3 Misc. 3d 1105(A) (Sup. Ct. N.Y. Cty. 2004), *aff'd*, 16 A.D.3d 256
    (1st Dep't 2005)...................................................................................................7

*Hyde v. Abbott Laboratories, Inc.*,
    473 S.E.2d 680 (N.C. Ct. App. 1996).................................................................8

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977)............................................................................................4

*Luscher v. Bayer AG*,
    No. CV 2004-014835, 2005 WL 6959406 (Ariz. Super. Ct. Sept. 16, 2005)....6

*Minshall v. TD Evergreen*,
    No. 8:05-CV-1232-T-26TGW, 2005 WL 8145046 (M.D. Fla. Aug. 4, 2005)...11

*Nardolilli v. Bank of America Corp.*,
    No. 12-81312-CIV, 2013 WL 12154541 (S.D. Fla. Dec. 5, 2013)...................11

*In re Nexium (Esomeprazole) Antitrust Litigation*,
    968 F. Supp. 2d 367 (D. Mass. 2013)...............................................................12

*Nypl v. JPMorgan Chase & Co.*,
    No. 15 Civ. 9300 (LGS), 2017 WL 1133446 (S.D.N.Y. Mar. 24, 2017)...........8

*Nypl v. JPMorgan Chase & Co.*,
    No. 15 Civ. 9300 (LGS), 2017 WL 3309759 (S.D.N.Y. Aug. 3, 2017)............4

*Pare v. Northborough Capital Partners, LLC*,
    89 F. Supp. 3d 192 (D. Mass. 2015).................................................................12

*In re Refrigerant Compressors Antitrust Litigation*,
  No. 2:09-md-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013) .............................12

*Regions Bank v. Legal Outsource PA*,
  No. 2:14-cv-476-FtM-29MRM, 2015 WL 7777516 (M.D. Fla. Dec. 3, 2015)...............10

*Retirement Board of the Policeman's Annuity & Benefit Fund of Chicago ex rel.*
  *Policeman's Annuity & Benefit Fund of Chicago v. FXCM Inc.*,
  No. 15-CV-3599 (KMW), 2016 WL 4435243 (S.D.N.Y. Aug. 18, 2016),
  *vacated on other grounds*, 693 F. App'x 77 (2d Cir. 2017) ...........................................14

*Rogers v. Cisco Systems, Inc.*,
  268 F. Supp. 2d 1305 (N.D. Fla. 2003) ........................................................................11

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013).............................................................................................3

*Salveson v. JPMorgan Chase & Co.*,
  166 F. Supp. 3d 242 (E.D.N.Y. 2016), *aff'd*, 663 F. App'x 71 (2d Cir. 2016),
  *cert. denied*, 137 S. Ct. 1826 (2017)...........................................................................6, 7

*Schoenefeld v. New York*,
  748 F.3d 464 (2d Cir. 2014).........................................................................................6, 7

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
  559 U.S. 393 (2010) .......................................................................................................12

*Sideshow, Inc. v. Mammoth Records, Inc.*,
  751 F. Supp. 78 (E.D.N.C. 1990) ..................................................................................10

*Skinner v. E.F. Hutton & Co.*,
  333 S.E.2d 236 (N.C. 1985)............................................................................................9

*Sovereign Bonds Exchange LLC v. Federal Republic of Germany*,
  899 F. Supp. 2d 1304 (S.D. Fla. 2010), *aff'd sub nom. World Holdings,*
  *LLC v. Federal Republic of Germany*, 701 F.3d 641 (11th Cir. 2012) ...........................11

*Supreme Auto Transportation LLC v. Arcelor Mittal*,
  238 F. Supp. 3d 1032 (N.D. Ill. 2017) ........................................................................5, 6

*Teague v. Bayer AG*,
  671 S.E.2d 550 (N.C. Ct. App. 2009)..........................................................................7, 8

*United Food & Commercial Workers Local 1776 & Participating Employers*
  *Health & Welfare Fund v. Teikoku Pharma USA, Inc.*,
  74 F. Supp. 3d 1052 (N.D. Cal. 2014) ..........................................................................12

*In re Wellbutrin XL Antitrust Litigation*,
    756 F. Supp. 2d 670 (E.D. Pa. 2010) ........................................................................ 12

**<u>Statutes</u>**

Ariz. Rev. Stat. Ann. § 44-1415 A (2013) ..................................................................... 13

## PRELIMINARY STATEMENT

Despite the elevated rhetoric of their opposition ("Opp."), plaintiffs do not dispute that proximate cause is a fundamental element of each and every claim in this case. Yet plaintiffs' opposition fails to explain how the complaint plausibly pleads that defendants' alleged conduct in the FX spot market proximately caused plaintiffs (self-described "indirect purchasers" who admittedly have not transacted with any defendant) to pay increased prices in the retail FX investor market. The central theory of plaintiffs' case is that plaintiffs bought FX Instruments from retail FX dealers that bought FX Instruments from defendants. But plaintiffs' opposition does not identify a single non-conclusory allegation that plausibly shows that the retail FX dealers sold to plaintiffs the <u>same</u> FX Instruments that those dealers allegedly obtained from defendants. Nor could it, because FX Instruments are currency and currency is completely fungible. And nothing in plaintiffs' opposition addresses the likelihood that retail FX dealers obtained the currency they sold to plaintiffs from sources other than defendants, including other FX market participants and the retail dealers' own pre-existing inventories. Plaintiffs' opposition attempts to hide this deficiency by relying on alleged manipulation of spot FX benchmarks to establish proximate cause, but it identifies no allegation plausibly suggesting any direct relationship between those benchmark rates and the prices that plaintiffs allegedly paid. Plaintiffs' failure to identify any well-pleaded factual allegations that, if true, would show that defendants' conduct proximately caused them any injuries defeats the entire complaint.

Plaintiffs' failure to identify well-pleaded facts showing that they meet the "efficient enforcer" factors set forth in *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"), similarly dooms their federal claim, as well as their claims under the Arizona, California, Illinois, New York, and North Carolina antitrust laws, which incorporate those factors. Plaintiffs also fail to identify well-pleaded facts es-

tablishing that defendants may, consistent with due process, be subjected to suit under the state laws of Arizona, California, Florida, Illinois, Massachusetts, Minnesota, or North Carolina.  And plaintiffs fail to redress the other fatal deficiencies specific to certain of their state law claims; they either ignore relevant legal authority or dismiss it as not from the state's highest court, unpublished, or, in plaintiffs' view, erroneously decided.  Finally, plaintiffs' opposition makes no serious effort to justify injunctive relief by identifying well-pleaded facts showing that defendants' purported conduct continues.  This action should be dismissed in its entirety with prejudice.

## ARGUMENT

I.     **THE LACK OF PLEADED FACTS SHOWING THAT DEFENDANTS' CONDUCT PROXIMATELY CAUSED PLAINTIFFS' ALLEGED INJURY DOOMS ALL OF PLAINTIFFS' CAUSES OF ACTION**

Plaintiffs do not—and cannot—dispute that their complaint fails to state a claim for relief unless it pleads facts plausibly showing that defendants' conduct proximately caused their purported injuries.  *See, e.g.*, *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 163 (2d Cir. 2016) (affirming dismissal with prejudice of all claims because "each statute that the defendants allegedly violated requires that the violation proximately cause the claimed injury").  Yet, plaintiffs' opposition relies principally on the facially inadequate and conclusory assertion that "[d]efendants sold FX Instruments at supracompetitive prices to [retail FX dealers], and those [retail FX dealers] resold the same FX Instruments to [p]laintiffs."  (Opp. at 10.)

In their opposition, plaintiffs do not deny that the FX Instruments they purchased were currencies, and this acknowledgement is fatal to plaintiffs' entire action.  Because currency is fungible, the currencies that plaintiffs allegedly acquired from retail FX dealers could have come from numerous sources other than defendants.  Nothing in plaintiffs' opposition establishes that the complaint plausibly pleads that retail FX dealers sold to plaintiffs or members of the putative class the same currency units or pairs that those retail FX dealers allegedly bought from defend-

2

ants.[1]

The Second Circuit's discussion of proximate cause in *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013), is instructive. That litigation involved allegations under the Anti-Terrorism Act that UBS had transferred to Iran funds that, in turn, financed terrorist activity by Hizbollah and Hamas. The district court granted UBS's motion to dismiss "principally . . . because the Complaint did not plausibly allege that plaintiffs' injuries were proximately caused by UBS's conduct." *Id.* at 85. The Second Circuit affirmed, holding that it "cannot agree that the Complaint sufficiently alleges proximate cause" as to UBS because, among other things, the Complaint "does not allege that U.S. currency UBS transferred to Iran was given to Hizbollah or Hamas." *Id.* at 97. The Second Circuit also made clear that conclusory allegations—like the kind employed by plaintiffs here—will not suffice, holding that the complaint's "conclusory allegations . . . do not meet *Twombly*'s plausibility standard with respect to the need for a proximate causal relationship between the cash transferred by UBS to Iran and the terrorist attacks by Hizbollah and Hamas that injured plaintiffs." *Id.* Here, plaintiffs cite no well-pleaded facts showing how any of their particular currency purchases from a retail FX dealer could conceivably be traced to that dealer's particular purchases of the same currency from a defendant, rather than from non-defendant sources of liquidity (which plaintiffs do not dispute are legion) or from the retail dealer's own pre-existing currency inventory.

Plaintiffs have not, therefore, shown themselves to be, as they proclaim, "indirect purchasers" from defendants. Unlike a traditional indirect purchaser case, this case does not involve the traceable movement of a tangible good (like cement blocks) down the chain of distribution.

---

[1]   Plaintiffs do not dispute that they have not even alleged that they purchased <u>any</u> FX Instruments from <u>any</u> retail FX dealer or broker who <u>ever</u> transacted with defendant The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU") (Def. Br. at 4 n.2.) Similarly, nowhere in their complaint or opposition brief do plaintiffs identify a specific communication involving a BTMU employee.

*See Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  Plaintiffs here allege that they purchased currency from a retail FX dealer that independently dealt with a defendant, but they cannot plausibly allege a proximate connection between their currency transactions in the retail FX market and any antecedent transaction between their retail FX dealer and one of the defendants.  In fact, while plaintiffs now suggest otherwise (Opp. at 10), the complaint does not even plead an antecedent transaction with a defendant; instead, it alleges that consumers place orders with retail FX dealers who <u>subsequently</u> look "upstream" for liquidity from a variety of providers.  (CAC ¶ 149.)

Plaintiffs cannot cure their failure to plead proximate cause by artificially limiting their putative class to FX investors who transacted with retail FX dealers who transacted at some unspecified juncture with defendants.  (Opp. at 11.)  Even as limited, plaintiffs and the members of their putative class allege no facts to trace the currency they purportedly bought from retail FX dealers to defendants, rather than to the myriad other sources of liquidity that plaintiffs do not dispute exist.  Accordingly, defendants' alleged conduct cannot have proximately caused plaintiffs' purported injuries.

Plaintiffs' reliance (Opp. at 9, 10, 22) on their conclusory contention that defendants' alleged manipulation of spot FX benchmark rates had unspecified effects, however indirect, "throughout" all FX transactions (CAC ¶ 79) is inadequate even to establish plausible "but-for" causation and falls far short of satisfying the more demanding requirement of proximate causation.  *See*, *e.g.*, *Aluminum Warehousing*, 833 F.3d at 162 (affirming dismissal, and explaining that controlling law requires a "'proximate cause' test," not a "'but-for'" test).  Proximate cause requires that "the harm alleged has a <u>sufficiently close connection</u> to the conduct the statute prohibits."  *Nypl v. JPMorgan Chase & Co.*, No. 15 Civ. 9300 (LGS), 2017 WL 3309759, at *5

(S.D.N.Y. Aug. 3, 2017) ("*Nypl II*") (emphasis added) (citation omitted).  If anything less than proximate cause were sufficient, it "would limitlessly increase the universe of potential plaintiffs."  *Aluminum Warehousing*, 833 F.3d at 162; *see also Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 779 (2d Cir. 2016) (expressing concern that failure to adequately scrutinize causation would "vastly extend the potential scope of antitrust liability in myriad markets where derivative instruments have proliferated"), *cert. denied*, 137 S. Ct. 814 (2017).[2]

That concern is especially acute in markets for fully fungible products like currency. Here, plaintiffs' conclusory allegations of causation plainly cannot withstand scrutiny.  Plaintiffs' opposition identifies no allegations that plaintiffs <u>ever</u> purchased currency instruments at a price that bears <u>any</u> relationship whatsoever to a spot FX benchmark price.  On the issue of proximate cause alone, the entirety of the complaint should be dismissed.

## II. PLAINTIFFS' INABILITY TO SATISFY THE *AGC* "EFFICIENT ENFORCER" FACTORS DEFEATS PLAINTIFFS' CLAIMS UNDER THE FEDERAL, ARIZONA, CALIFORNIA, ILLINOIS, NEW YORK, AND NORTH CAROLINA ANTITRUST STATUTES

### A. Contrary to Plaintiffs' Assertion, the *AGC* "Efficient Enforcer" Factors Apply to Indirect Purchaser Claims Under Certain States' Antitrust Laws

Plaintiffs are mistaken when they contend that the "efficient enforcer" factors that the Supreme Court articulated in *AGC* do not apply to "indirect purchaser" claims under Arizona, California, Illinois, New York, and North Carolina law.  (Opp. at 15.)  Proclaiming oneself to be an indirect purchaser does not automatically confer antitrust standing in those states.  Rather, even true indirect purchasers (which plaintiffs are not) must <u>also</u> plead facts satisfying the analytically distinct efficient enforcer test.  *See, e.g., In re Dynamic Random Access Memory (DRAM)*

---

[2]   *See also Supreme Auto Transp. LLC v. Arcelor Mittal*, 238 F. Supp. 3d 1032, 1040 (N.D. Ill. 2017) (finding the allegations were "implausible" and "conclusory assertions" unsupported by factual allegations that did not explain "the role of interceding parties" or the "basis to infer a link"); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 401-02 (S.D.N.Y. 2011) (rejecting plaintiffs' allegations that the supracompetitive prices paid by plaintiffs flowed from defendants' conspiracy as conclusory and "*ipse dixit*").

*Antitrust Litig.*, 516 F. Supp. 2d 1072, 1095 (N.D. Cal. 2007) (concluding that plaintiffs "must still satisfy [antitrust standing] with reference to the multi-factor test set forth in *AGC*" for indirect purchaser claims under California's Cartwright Act and other states' antitrust statutes (including Arizona and North Carolina)).[3]  As defendants previously showed (Def. Br. at 17 n.13), courts have repeatedly applied the *AGC* factors to indirect purchaser antitrust claims, including under Arizona, California, Illinois, New York, and North Carolina law.  This Court should do likewise.

    <u>Arizona.</u>  Plaintiffs improperly disregard the only Arizona state court decision that has addressed the application of *AGC*'s efficient enforcer factors to indirect purchaser claims under the Arizona Antitrust Act ("AAA"), and that held that these factors <u>do</u> apply.  *Luscher v. Bayer AG*, No. CV 2004-014835, 2005 WL 6959406, at *1-2 (Ariz. Super. Ct. Sept. 16, 2005).  Plaintiffs' reliance on an earlier case, *Bunker's Glass Co. v. Pilkington PLC*, 75 P.3d 99 (Ariz. 2003), in which a majority of the Arizona Supreme Court did not even mention *AGC*, and on several out-of-circuit cases that plaintiffs contend "have repeatedly held that the *AGC* factors do not apply to indirect purchaser claims under the AAA" (Opp. at 15-16), is misplaced.  In the absence of clear authority from Arizona's Supreme Court, this Court should follow the lower court opinion that is directly on point.  *See Schoenefeld v. New York*, 748 F.3d 464, 469 (2d Cir. 2014) ("[T]he absence of authority from [a state's] highest court does not provide us license to disregard lower court rulings nor to analyze the question as though we were presented with a blank slate.").

    <u>California.</u>  Plaintiffs' opposition simply ignores the recent decision in *Salveson v. JPMorgan Chase & Co.*, 166 F. Supp. 3d 242, 257-58 & n.7 (E.D.N.Y. 2016), *aff'd*, 663 F.

---

[3]   *See Supreme Auto Transp.*, 238 F. Supp. 3d at 1038 ("The *Illinois Brick* direct-purchaser doctrine and the *AGC* direct-injury doctrine 'are analytically distinct.'") (citations omitted).

App'x 71 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1826 (2017), in which a court within the Second Circuit applied the *AGC* factors to the plaintiffs' Cartwright Act claim, holding that, notwithstanding the decision in *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066 (Cal. 2010), "there is no California law contrary to the state appellate court's application of the *AGC* factors . . . .  The decision of both an intermediary court and the Ninth Circuit remain the best predictor of the state's highest court's action on the issue." *Salveson*, 166 F. Supp. 3d at 258.  Similarly, *In re Flash Memory Antitrust Litigation*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009), a case on which plaintiffs themselves rely, applied *AGC* to a Cartwright Act claim because "at least one of [California's] intermediate appellate courts has applied these factors."  *Id.* at 1151.

Illinois.  Plaintiffs essentially concede (Opp. at 19) that the Illinois appellate court in *County of Cook v. Philip Morris, Inc.*, 817 N.E.2d 1039 (Ill. App. Ct. 2004), applied *AGC* to claims under the Illinois Antitrust Act ("IAA").  And plaintiffs' effort to limit *Philip Morris* to a discussion of only two *AGC* factors—"directness and duplicative damages"—is mistaken.  The *Philip Morris* court also analyzed the speculative nature of indirect damages.  *Id.* at 1046-47.

New York.  The only New York state court decision that appears to have addressed the applicability of *AGC* to indirect purchaser suits under the Donnelly Act denied standing to an indirect purchaser.  *See Ho v. Visa U.S.A. Inc.*, 3 Misc. 3d 1105(A) (Sup. Ct. N.Y. Cty. 2004), *aff'd*, 16 A.D.3d 256 (1st Dep't 2005).  Plaintiffs' response—that, absent a clear directive from New York's legislature or highest court that *AGC* applies to indirect purchaser claims, this Court should disregard *Ho* (Opp. at 18-19)—controverts Second Circuit law.  *Schoenefeld*, 748 F.3d at 469.

North Carolina.  Plaintiffs' reliance on *Teague v. Bayer AG*, 671 S.E.2d 550, 557 (N.C. Ct. App. 2009), to claim that *AGC* does not apply to North Carolina claims (Opp. at 17) ignores

the several courts that have concluded that *Teague*'s "dubious" and "difficult-to-follow" analysis does not alter the expectation that North Carolina's highest court <u>would</u> apply *AGC* to indirect purchaser claims.  (Def. Br. at 17 n.13.)  Indeed, even *Teague* itself considered at least some of the *AGC* factors in analyzing indirect purchaser standing.  *See, e.g.*, 671 S.E.2d at 558.[4]

### B.    Plaintiffs Have Not Pleaded Facts to Show That They Meet the AGC Factors

As defendants previously showed (Def. Br. at 16-21), plaintiffs cannot satisfy the *AGC* efficient enforcer factors because they cannot trace the currency they purchased in their FX trades to defendants or allege facts to show that defendants' conduct proximately caused plaintiffs' alleged injuries.  Plaintiffs' pleadings here are akin to those that this Court dismissed in *Nypl v. JPMorgan Chase & Co.*, No. 15 Civ. 9300 (LGS), 2017 WL 1133446 (S.D.N.Y. Mar. 24, 2017) ("*Nypl I*"), where the plaintiffs did not plead <u>any</u> facts proximately tying their injury to the alleged manipulation of the WM/Reuters benchmarks.  As in *Nypl I*, plaintiffs' conclusory pleadings here show that there are "more direct victims of the alleged conspiracy to manipulate prices," and, given plaintiffs' "lack of allegations regarding how prices in the end-user market are determined," any alleged damages "would necessarily be 'highly speculative.'"  *Id.* at *7 (citing *Gelboim*, 823 F.3d at 780).  Plaintiffs' complaint, like the *Nypl I* complaint, should be dismissed.

### III.    PLAINTIFFS' OPPOSITION IDENTIFIES NO PLEADED FACTS SHOWING THAT DEFENDANTS MAY, CONSISTENT WITH DUE PROCESS, BE SUBJECT TO SUIT UNDER ARIZONA, CALIFORNIA, FLORIDA, ILLINOIS, MASSACHUSETTS, MINNESOTA, AND NORTH CAROLINA STATE LAWS

Plaintiffs concede, as they must (Opp. at 24), that due process requires a court to dismiss a state law claim where a plaintiff fails to plead facts that, if true, would show that the state has a

---

[4]    Plaintiffs' reliance on *Hyde v. Abbott Laboratories, Inc.*, 473 S.E.2d 680 (N.C. Ct. App. 1996), is similarly misguided.  *Hyde* does not even refer to *AGC*.  It simply holds that North Carolina law allows indirect purchaser suits.  473 S.E.2d at 683-88.  The court did not address the separate question of *AGC*'s applicability.

"significant contact or significant aggregation of contacts, creating state interests, with the parties and the occurrence or transaction." *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1111 (9th Cir. 2013) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981)). The only fact that plaintiffs allege about contacts in Arizona, California, Florida, Illinois, Massachusetts, Minnesota, or North Carolina is that a named plaintiff <u>currently</u> lives in each of those states. The opposition does not identify any well-pleaded facts showing that plaintiffs suffered injury in any of those states. Unlike the plaintiffs in *Nypl II*, who supported their California statutory claim with an averment that they purchased currency directly from a defendant bank at a physical branch in San Francisco, plaintiffs here allege neither where nor from whom they purchased their currency instruments. Plaintiffs' argument that defendants' alleged conspiracy "was directed nationwide and had effects on each state at issue," or that the Court may "presume" that the plaintiffs purchased their currency in their states of residency (Opp. at 25), does not satisfy due process. (Def. Br. at 21-24 (collecting cases).) Plaintiffs' failure to plead facts showing that defendants' conduct was directed at, or that injury occurred in, Arizona, California, Florida, Illinois, Massachusetts, Minnesota, or North Carolina compels dismissal of those state law claims.

IV.   **OTHER FATAL FLAWS PLAGUE PLAINTIFFS' STATE LAW CLAIMS**

   A.   ***North Carolina Antitrust Law Exempts Pervasively Regulated Conduct***

   Plaintiffs erroneously argue that NCUTPA's exemption for regulated conduct applies only in the context of activities regulated by North Carolina (not federal) law, and then only where North Carolina's regulatory scheme provides an "alternate private right of action." (Opp. at 29-30.) Numerous courts have held that a concurrent state regulatory scheme is not required, and that an overlapping federal scheme is sufficient to exempt activity from NCUTPA's scope. *Skinner v. E.F. Hutton & Co.*, 333 S.E.2d 236, 241 (N.C. 1985) (exemption applies because of a "'pervasive' federal scheme for regulating" securities transactions); *Bache Halsey Stuart, Inc. v.*

9

*Hunsucker*, 284 S.E.2d 567, 570 (N.C. 1978) (exemption applies because of a "pervasive federal regulatory scheme" for commodities); *Hagy ex rel. Estate of Worley v. Advance Auto Parts, Inc.*, 3:15-CV-509-RJC-DCK, 2016 WL 5661530 (W.D.N.C. Sept. 28, 2016) (exemption applies because of extensive federal Medicare regulations); *Sideshow, Inc. v. Mammoth Records, Inc.*, 751 F. Supp. 78, 81 (E.D.N.C. 1990) (exemption applies because the Lanham Act "demonstrates a pervasive federal scheme in regulating trademarks").  Likewise, the exemption has never required that a particular class of plaintiffs retain an "extensive remedy" under "state laws and regulations."  (Opp. at 30.)  The deciding question is not whether plaintiffs have a particular remedy, but rather whether application of NCUTPA exposes a defendant's regulated conduct to "overlapping supervision, enforcement, and liability."  *HAJMM Co. v. House of Raeford Farms, Inc.*, 403 S.E.2d 483, 493 (N.C. 1991).  In this case, the more than $11 billion in regulatory fines imposed against certain defendants for the FX spot market conduct alleged in the complaint shows that the exemption provided by North Carolina law plainly applies.

### B.      The Florida and Illinois Statutes Exempt Regulated Banks

Plaintiffs rely on a <u>minority</u> of courts in arguing that FDUTPA and analogous IAA exemptions for regulated banks do not apply when the challenged conduct is not subject to regulation by a federal banking regulatory body or the defendant acts as a "dealer" rather than a bank. (Opp. at 26-27.)  The <u>majority</u> view is that a regulated bank is <u>entirely</u> exempt from application of FDUTPA.  *See Regions Bank v. Legal Outsource PA*, No. 2:14-cv-476-FtM-29MRM, 2015 WL 7777516, at *5 (M.D. Fla. Dec. 3, 2015) (stating that "the majority of Florida courts" hold that "being regulated by a federal agency is sufficient in and of itself to be exempt under Fla. Stat. § 501.212(4)(c)," without regard to whether "the activity at issue is subject to the federal

regulatory authority").[5]  And the large fines imposed by federal agencies for the alleged conduct again defy plaintiffs' claim that banks' conduct as "dealers" is free of federal oversight.

### C.    Plaintiffs Are Not Consumers Under the Florida Consumer Protection Law

Contrary to plaintiffs' argument (Opp. at 28-29), FDUTPA's definition of consumer does not include FX traders like plaintiffs.  Plaintiffs do not dispute that, to qualify as a consumer under FDUTPA, a plaintiff must consume a good or service.  *See Carroll v. Lowes Home Ctrs., Inc.*, No. 12-23996-CIV, 2014 WL 1928669, at *4 (S.D. Fla. May 6, 2014).  And this Court has held that FX trading is not consumer-oriented conduct because, like securities, "FX is traded 'as investments, not as goods to be "consumed" or "used."'"  *Axiom Inv. Advisors, LLC ex rel. Gildor Mgmt., LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 537 (S.D.N.Y. 2017) (citation omitted); *accord Crowell v. Morgan, Stanley, Dean Witter Services Co.*, 87 F. Supp. 2d 1287, 1294-95 (S.D. Fla. 2000) (dismissing FDUTPA claim, holding that FDUTPA does not apply to the sale of securities).[6]  FX traders like plaintiffs simply are not consumers under FDUTPA.

### D.    Plaintiffs Have Not Engaged in Consumer Transactions in Massachusetts

Similarly, plaintiffs fail to state a claim under Section 9 of the MCPA.  The dispositive issue is not whether plaintiff Hitchcock is an individual but whether his FX transactions were made for "purely personal reasons."  *See Frullo v. Landenberger*, 814 N.E.2d 1105, 1112 (Mass. App. Ct. 2004) (stating that "any transaction in which the plaintiff is motivated by business considerations gives rise to claims only under [Section 11]," not Section 9, of the MCPA).  Plain-

---

[5]    *See also Nardolilli v. Bank of Am. Corp.*, No. 12-81312-CIV, 2013 WL 12154541, at *3 (S.D. Fla. Dec. 5, 2013) (dismissing FDUTPA claim because "FDUTPA unambiguously excludes banks"); *Sovereign Bonds Exch. LLC v. Fed. Republic of Ger.*, 899 F. Supp. 2d 1304, 1315-16 (S.D. Fla. 2010) (dismissing FDUTPA claim because defendant banks "are subject to federal regulation"), *aff'd sub nom. World Holdings, LLC v. Fed. Republic of Ger.*, 701 F.3d 641 (11th Cir. 2012).  No case law has been found construing what plaintiffs call IAA's "analogous" provision.  (Opp. at 27.)

[6]    *See also Minshall v. TD Evergreen*, No. 8:05-CV-1232-T-26TGW, 2005 WL 8145046, at *1 (M.D. Fla. Aug. 4, 2005) (FDUTPA does not apply to securities transactions); *Rogers v. Cisco Sys., Inc.*, 268 F. Supp. 2d 1305, 1316 (N.D. Fla. 2003) (same).

tiffs' failure to plead facts showing that they engaged in FX trading purely for personal use requires dismissal of plaintiffs' claim under Section 9 of the MCPA.

### E.   The Illinois Antitrust Act Precludes Class Actions

Contrary to plaintiffs' contention (Opp. at 33-34), the statutory bar in the IAA on antitrust class actions by indirect purchasers is "intertwined with Illinois substantive rights and remedies" and is not simply procedural.  *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 677 (E.D. Pa. 2010).  The bar, enacted as part of the substantive IAA, applies only to the state antitrust statute and serves to reduce the risk of duplicative recoveries.  *In re Digital Music*, 812 F. Supp. 2d at 415-16.  Federal courts have repeatedly held that the IAA bars Illinois indirect purchaser class actions, even after the decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010) (cited at Opp. at 33-34).[7]

### F.   The North Carolina, California, and Massachusetts Acts Require Pleadings of Intrastate Conduct and Injury

Neither of the cases on which plaintiffs rely (Opp. at 32-33) abrogates the need for plaintiffs to plead facts showing intrastate conduct and injury to support their claims under NCUDTPA, California's UCL, and the MCPA.  *See In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2013 WL 1431756, at *18-19 (E.D. Mich. April 9, 2013) (holding that plaintiffs failed to show required "substantial" instate injury where plaintiffs did not allege any wrongful conduct in North Carolina); *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, No. 1:14-md-2508, 2015 WL 5166014, at *31 (E.D. Tenn. June 24, 2015) (UCL claim could proceed where plaintiffs were located, and allegedly injured, in California); *Pare v. Northborough Capital Partners, LLC*, 89 F. Supp. 3d 192, 193 (D. Mass. 2015) ("[A]n action brought under § 11 [of

---

[7]   *See United Food & Commercial Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1083-84 (N.D. Cal. 2014); *In re Auto. Parts Antitrust Litig.*, Nos. 2:12-cv-00202, 2:12-cv-00203, 2014 WL 2993753, at *17 (E.D. Mich. July 3, 2014); *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 408-09 (D. Mass. 2013).

the MCPA] must allege unfair practices that occur 'primarily and substantially within the Commonwealth.'" (citation omitted)).  Having failed to allege intrastate injury (as discussed in Section III above)—much less defendants' intrastate <u>conduct</u>—plaintiffs have not stated a claim under these statutes.[8]

## V.    PLAINTIFFS HAVE NOT REMEDIED THE LACK OF PLEADED FACTS SHOWING THEIR ENTITLEMENT TO INJUNCTIVE RELIEF

Plaintiffs' unsubstantiated and conclusory assertion that defendants "have not been sufficiently enjoined" by the past and ongoing government resolutions and investigations (Opp. at 35) fails to establish ongoing misconduct, let alone a plausible threat of future harm.  Plaintiffs' counsel even conceded to this Court more than a year ago that a federal claim "may no longer be necessary," as "it appears the conduct has been circumscribed" by various enforcement actions. (*Baker*, ECF No. 62, Oct. 5, 2016 Hearing Tr. at 4:21-5:5.)  Plaintiffs have alleged no facts plausibly establishing an ongoing or recurring conspiracy, let alone an ongoing or recurring injury, that would entitle them to the extraordinary remedy of injunctive relief.

## VI.   ALTERNATIVELY, PLAINTIFFS' CLAIMS SHOULD BE ENJOINED AS TO *FOREX* SETTLING DEFENDANTS AND CONSOLIDATED AS TO THE NON-SETTLING DEFENDANT

As defendants previously explained (Def. Br. at 33-35), to the extent that plaintiffs have pleaded that the FX dealers from which plaintiffs allegedly purchased currency were brokers that purchased currency from defendants on plaintiffs' behalf in return for a fee (CAC ¶ 149), plaintiffs (and not their brokers) are members of the settlement class and the putative litigation class in *FOREX*, and are enjoined from bringing this action.  To argue that they did not transact with

---

[8]    Plaintiffs concede (Opp. at 34) that they did not serve their complaint on the state attorney general "simultaneously with the filing of the pleading."  Ariz. Rev. Stat. Ann. § 44-1415 A (2013).  They ask this Court to overlook that failure because they have since made that service.  But statutory notice requirements should not be lightly disregarded because they serve to discourage "forum shopping and the inequitable administration of laws."  *In re Asacol Antitrust Litig.*, No. 15-cv-12730-DJC, 2016 WL 4083333, at *15 (D. Mass. July 20, 2016).

brokers acting as agents, plaintiffs rely on a litigation against retail broker FXCM (Opp. at 7-8), but that case does not help them.  There, FXCM employed an acknowledged "agency model."[9] Accordingly, FXCM's customers, and not FXCM itself, were direct purchasers from a liquidity provider with which FXCM traded.  Because FXCM was the largest retail FX dealer in 2012 (Def. Br. at 7 n.4), plaintiffs who transacted through FXCM likely are members of both the settlement and the putative litigation classes in *FOREX*.  As to them—and any similarly situated members of the putative class of purported retail purchasers in this case—this action should be stayed for Settling Defendants and consolidated with *FOREX* for the Non-Settling Defendant.

## VII.   LEAVE TO AMEND SHOULD BE DENIED

Plaintiffs' request for leave to amend should be denied for failure to comply with Rule III.C.2 of this Court's Individual Rules and Procedures for Civil Cases.  That rule provides each plaintiff with an opportunity to amend its complaint twenty-one days after a motion to dismiss is filed, but clearly admonishes that, "[i]f the plaintiff elects not to amend its complaint, no further opportunity to amend will be granted."  Because plaintiffs elected not to amend their complaint—itself the latest in their series of abortive attempts to plead an "indirect purchaser" FX case—after defendants' motion to dismiss, their belated request to amend should be denied.

## CONCLUSION

For the foregoing reasons and the reasons set forth in defendants' moving brief, defendants' motion to dismiss plaintiffs' complaint with prejudice should be GRANTED.

---

[9]   *Retirement Bd. of the Policeman's Annuity & Benefit Fund of Chicago ex rel. Policeman's Annuity & Benefit Fund of Chicago v. FXCM Inc.*, No. 15-CV-3599 (KMW), 2016 WL 4435243, at *2 (S.D.N.Y. Aug. 18, 2016) (citation omitted), *vacated on other grounds*, 693 F. App'x 77 (2d Cir. 2017).

Dated:  October 24, 2017

Respectfully submitted,

SULLIVAN & CROMWELL LLP

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ Matthew A. Schwartz
Matthew A. Schwartz
David H. Braff
Yvonne S. Quinn
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
schwartzmatthew@sullcrom.com
braffd@sullcrom.com
quinny@sullcrom.com

By: /s/ Boris Bershteyn
Peter E. Greene
Boris Bershteyn
Peter S. Julian
Tansy Woan
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
peter.greene@skadden.com
boris.bershteyn@skadden.com
peter.julian@skadden.com
tansy.woan@skadden.com

*Attorneys for Defendant Barclays Bank PLC and Barclays Capital Inc.*

*Attorneys for Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.*

SHEARMAN & STERLING LLP

DAVIS POLK & WARDWELL LLP

By: /s/ Adam S. Hakki
Adam S. Hakki
Richard F. Schwed
Jeffrey J. Resetarits
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
ahakki@shearman.com
rschwed@shearman.com
jeffrey.resetarits@shearman.com

By: /s/ Joel M. Cohen
Joel M. Cohen
Melissa C. King
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
joel.cohen@davispolk.com
melissa.king@davispolk.com

*Attorneys for Defendants Bank of America Corporation, Bank of America, N.A. and Merrill Lynch, Pierce, Fenner & Smith Incorporated*

*Attorneys for Defendants The Royal Bank of Scotland Group plc and RBS Securities Inc.*

ALLEN & OVERY LLP

By: /s/ David C. Esseks

David C. Esseks
Laura R. Hall
Rebecca Delfiner
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
david.esseks@allenovery.com
laura.hall@allenovery.com
rebecca.delfiner@allenovery.com

John Terzaken
1101 New York Avenue
Washington, D.C. 20005
Telephone: (202) 683-3800
john.terzaken@allenovery.com

*Attorneys for Defendants BNP Paribas, BNP
Paribas North America, Inc., BNP Paribas
Securities Corp., and BNP Paribas Prime
Brokerage, Inc.*

LOCKE LORD LLP

By: /s/ Gregory T. Casamento

Gregory T. Casamento
3 World Financial Center
New York, New York 10281
Telephone: (212) 812-8325
gcasamento@lockelord.com

Roger B. Cowie
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Telephone: (214) 740-8000
rcowie@lockelord.com

J. Matthew Goodin
Julia C. Webb
111 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 443-0700
jmgoodin@lockelord.com
jwebb@lockelord.com

*Attorneys for Defendants HSBC Holdings plc,
HSBC Bank plc, HSBC North America
Holdings, Inc., HSBC Bank USA, N.A., and
HSBC Securities (USA) Inc.*

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

By: /s/ Thomas J. Moloney
Thomas J. Moloney
George S. Cary
Sue S. Guan
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
tmoloney@cgsh.com
gcary@cgsh.com
sguan@cgsh.com

*Attorneys for Defendants The Goldman
Sachs Group, Inc. and Goldman Sachs &
Co. LLC*

GIBSON, DUNN &
CRUTCHER LLP

By: /s/ Eric J. Stock
Eric J. Stock
Indraneel Sur
200 Park Avenue, 48th Floor
New York, New York 10166
Telephone: (212) 351-4000
estock@gibsondunn.com
isur@gibsondunn.com

D. Jarrett Arp
Melanie L. Katsur
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
jarp@gibsondunn.com
mkatsur@gibsondunn.com

*Attorneys for Defendants UBS AG, UBS Group
AG, and UBS Securities, LLC*

17

COVINGTON & BURLING LLP

By: /s/ Andrew A. Ruffino
Andrew A. Ruffino
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 841-1000
aruffino@cov.com

Alan M. Wiseman
Thomas A. Isaacson
Andrew D. Lazerow
Jamie A. Heine
One CityCenter
850 Tenth Street N.W.
Washington, D.C. 20001
Telephone: (202) 662-6000
awiseman@cov.com
tisaacson@cov.com
alazerow@cov.com
jheine@cov.com

*Attorneys for Defendants Citibank, N.A.,
Citigroup Inc., Citicorp and Citigroup Global
Markets Inc.*

CAHILL GORDON & REINDEL LLP

By: /s/ David G. Januszewski
David G. Januszewski
Herbert S. Washer
Elai Katz
Jason M. Hall
80 Pine Street
New York, New York 10005
Telephone: (212) 701-3000
djanuszewski@cahill.com
hwasher@cahill.com
ekatz@cahill.com
jhall@cahill.com

*Attorneys for Defendants Credit Suisse Group
AG, Credit Suisse AG, and Credit Suisse
Securities (USA) LLC*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By: /s/ Kenneth A. Gallo
Kenneth A. Gallo
Michael E. Gertzman
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
kgallo@paulweiss.com
mgertzman@paulweiss.com

*Attorneys for Defendant The Bank of Tokyo-
Mitsubishi UFJ, Ltd.*

WACHTELL, LIPTON, ROSEN & KATZ

By: /s/ Jonathan Moses
Jonathan Moses
Bradley R. Wilson
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
JMMoses@wlrk.com
BRWilson@wlrk.com

*Attorneys for Defendants Morgan Stanley,
Morgan Stanley & Co., LLC, and Morgan
Stanley & Co. International PLC*

KIRKLAND & ELLIS LLP

By: /s/ Robert Khuzami
Robert Khuzami
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
robert.khuzami@kirkland.com

G. Patrick Montgomery (*pro hac vice*)
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Telephone: (202) 879-5000
patrick.montgomery@kirkland.com

LATHAM & WATKINS LLP

By: /s/ Joseph Serino, Jr.
Joseph Serino, Jr.
885 Third Avenue
New York, New York 10022
joseph.serino@lw.com
Telephone: (212) 906-1717

*Attorneys for Defendant Deutsche Bank AG
and Deutsche Bank Securities Inc.*

LINKLATERS LLP

By: /s/ James R. Warnot, Jr.
James R. Warnot, Jr.
Adam S. Lurie
Patrick C. Ashby
1345 Avenue of the Americas
New York, New York 10105
Telephone: (212) 903-9000
james.warnot@linklaters.com
adam.lurie@linklaters.com
patrick.ashby@linklaters.com

*Attorneys for Defendant Société Générale*

MOORE AND VAN ALLEN PLLC

By: /s/ James P. McLoughlin, Jr.
James P. McLoughlin, Jr.
Mark A. Nebrig
Joshua D. Lanning
Moore and Van Allen PLLC
100 N. Tryon Street, Suite 4700
Charlotte, North Carolina 28202
Telephone: (704) 331-1000
jimmcloughlin@mvalaw.com
marknebrig@mvalaw.com
joshlanning@mvalaw.com

*Attorneys for Defendant RBC Capital Markets,
LLC*

SIDLEY AUSTIN LLP

By: /s/ Andrew W. Stern
Andrew W. Stern
Alan M. Unger
Nicholas P. Crowell
787 Seventh Avenue
New York, New York 10019
astern@sidley.com
aunger@sidley.com
ncrowell@sidley.com
Telephone: (212) 839-5300


*Attorneys for Defendant Standard Chartered
Bank*

20