**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------- x

JAMES CONTANT, *et al.*,            :

                                  :

              *Plaintiffs*,     :   No. 17 Civ. 3139 (LGS)

                                  :

                                  :   [related to No. 13 Civ. 7789 (LGS)]

v.                                  :

                                  :   ORAL ARGUMENT REQUESTED

BANK OF AMERICA             :

CORPORATION, *et al.*,       :

                                  :

             *Defendants*.    :

------------------------------------------------------- x

 

**FOREIGN DEFENDANTS' REPLY**
**IN SUPPORT OF THEIR MOTION**
**TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ........................................................................................................... 2

    A.    Plaintiffs Failed To Meet Their Burden To Allege Specific Jurisdiction. ............. 2

    B.    The Conspiracy Allegations Do Not Sustain Personal Jurisdiction...................... 7

    C.    The Foreign Defendants Have Not Consented To Jurisdiction Here. ................... 8

    D.    There Is No Basis For Jurisdictional Discovery From The Foreign
        Defendants. ......................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*,
 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ..................................................................2, 4

*In re Aluminum Warehousing Antitrust Litig.*,
 90 F. Supp. 3d 219 (S.D.N.Y. 2015)..............................................................................7, 10

*Beacon Enters., Inc. v. Menzies*,
 715 F.2d 757 (2d Cir. 1983)..................................................................................................7

*Bertha Bldg. Corp. v. Nat'l Theatres Corp.*,
 248 F.2d 833 (2d Cir. 1957)..................................................................................................8

*Best Van Lines, Inc. v. Walker*,
 490 F.3d 239 (2d Cir. 2007)............................................................................................4, 10

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,
 137 S. Ct. 1773 (2017) ("*BMS*") ...........................................................................1, 2, 3, 4, 5

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985)..........................................................................................................2, 3

*Calder v. Jones*,
 465 U.S. 783 (1984)..........................................................................................................3, 7

*City of Los Angeles v. Lyons*,
 461 U.S. 95 (1983)................................................................................................................6

*Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-
 Exploración Y Producción*,
 832 F.3d 92 (2d Cir. 2016)....................................................................................................9

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
 74 F. Supp. 3d 581 (S.D.N.Y. 2015).....................................................................................3

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
 No. 13 Civ. 7789 (LGS), 2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016)
 ("*FOREX*")....................................................................................................................1, 3, 4, 6

*FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*,
 No. 16 Civ. 5263, 2017 WL 3600425 (S.D.N.Y. Aug. 18, 2017) ................................2, 4, 5, 7

*Gerber v. Riordan*,
 649 F.3d 514 (6th Cir. 2011) ................................................................................................9

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)............................................................................................7

*Jazini v. Nissan Motor Co.*,
    148 F.3d 181 (2d Cir. 1998)............................................................................10

*Klinghoffer v. S.N.C. Achille Lauro*,
    937 F.2d 44 (2d Cir. 1991)................................................................................9

*Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
    No. 12 Civ. 3419, 2017 WL 1113080 (S.D.N.Y. Mar. 10, 2017) ...................2, 7, 10

*Leasco Data Processing Equip. Corp. v. Maxwell*,
    468 F.2d 1326 (2d Cir. 1972)............................................................................8

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    No. 11 MDL 2262, 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015)
    ("*LIBOR IV*") .................................................................................................2

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    No. 11 MDL 2262, 2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016)
    ("*LIBOR VI*") ..............................................................................................2, 8

*O'Neill v. Asat Tr. Reg. (In re Terrorist Attacks on Sept. 11, 2001)*,
    714 F.3d 659 (2d Cir. 2013)............................................................................3, 4

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*,
    484 U.S. 97 (1987)............................................................................................3

*In re Platinum & Palladium Fix Antitrust Litig.*,
    No. 14 Civ. 9391, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017)
    ("*Platinum Fix*") .................................................................................2, 4, 7, 8, 10

*Ramasamy v. Essar Global Ltd.*,
    825 F. Supp. 2d 466 (S.D.N.Y. 2011)................................................................9

*Sanders v. Grenadier Realty, Inc.*,
    367 F. App'x 173 (2d Cir. 2010) .....................................................................10

*Sullivan v. Barclays PLC*,
    No. 13 Civ. 2811, 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) ......................2, 4, 7

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014)...............................................................................1, 2, 3, 4

*Waldman v. PLO*,
    835 F.3d 317 (2d Cir. 2016)............................................................................3, 4, 7

## PRELIMINARY STATEMENT

Plaintiffs' opposition, like their Complaint, does not identify a single FX Instrument transaction between the intermediaries from whom Plaintiffs allegedly purchased FX Instruments and *any* of the eight Foreign Defendants, in New York or anywhere else in the United States.[1] Indeed, Plaintiffs do not even describe a single communication concerning any such transactions. Plaintiffs have therefore failed to meet their burden to make a *prima facie* showing of "suit-related conduct" by the Foreign Defendants that "create[s] a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).[2]

Specific jurisdiction requires a focus on the "specific claims at issue." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1781 (2017) ("*BMS*"). In this case the "specific claims at issue" arise from purported transactions between Plaintiffs and their anonymous intermediaries (third parties to this purported class action), following prior, alleged (but unidentified) transactions between the intermediaries and the Foreign Defendants. The intermediary transactions give rise to the "very controversy" in this action, and Plaintiffs' failure to provide nonconclusory allegations about the Foreign Defendants' involvement in the intermediary transactions, upon which Plaintiffs' claims are based, warrants dismissal of the claims for lack of personal jurisdiction. *Id.* at 1780.

---

[1] Terms defined in the Rule 12(b)(2) memorandum, Dkt. 107 (Aug. 11, 2017) ("Mem."), have the same meaning herein, including "Complaint," Dkt. 84 (June 30, 2017). "Opp." refers to Plaintiffs' Rule 12(b)(2) opposition, Dkt. 115 (Sept. 27, 2017). "Jt. Mem." refers to the Rule 12(b)(6) memorandum, Dkt. 104 (Aug. 11, 2017).

[2] Plaintiffs concede through silence that they have not alleged any facts to support general jurisdiction over the Foreign Defendants. Moreover, Plaintiffs do not address, let alone refute, the arguments made by the foreign holding company defendants (The Royal Bank of Scotland Group plc and HSBC Holdings plc) that do not have any FX trading operations, either in the United States or elsewhere. Plaintiffs have failed to distinguish these defendants from the similarly situated holding company defendant that this Court dismissed in *FOREX. See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789 (LGS), 2016 WL 1268267, at *7 (S.D.N.Y. Mar. 31, 2016) (Standard Chartered plc). Moreover, as the exhibits in support of Plaintiffs' Rule 12(b)(2) opposition make clear, neither The Royal Bank of Scotland Group plc nor HSBC Holdings plc are parties in the government enforcement actions cited in the Complaint. *See e.g.*, Dkts. 116-10, 116-12.

1

Plaintiffs cannot satisfy their jurisdictional burden by parroting assertions about FX spot market transactions that gave rise to the claims brought by direct purchasers in *FOREX*, who were U.S. entities or who entered into at least one FX transaction within the United States.  "[A] defendant's relationship with a . . . third party, standing alone, is . . . insufficient" for jurisdiction, even where those third parties can properly bring claims in the forum against the same defendants.  *Id.* at 1781 (quoting *Walden*, 134 S. Ct. at 1123).  The Court should therefore follow the numerous recent decisions in this District that have dismissed foreign defendants from financial benchmark cases under Rule 12(b)(2) and dismiss Plaintiffs' claims here.[3]  Those decisions confirm that in-forum activities unconnected to the asserted claims do not constitute "purposeful availment," and that activities centered overseas, including activities allegedly manipulating benchmarks set overseas, do not constitute conduct "expressly aimed" at the United States.

## ARGUMENT

### A. Plaintiffs Failed To Meet Their Burden To Allege Specific Jurisdiction.

#### 1. *FOREX* Did Not Address Purported "Indirect" Purchaser Claims.

The named Plaintiffs cannot deny that they must show "no less than a 'but for' connection between [each] defendant's forum-directed activities and the claim[s]" asserted *in this action.  See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262, 2016 WL 7378980, at *8 (S.D.N.Y. Dec. 20, 2016) ("*LIBOR VI*"); Mem. 2 n.3, 12.[4]  Plaintiffs must

---

[3] *See, e.g.*, *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16 Civ. 5263, 2017 WL 3600425, at *5, 9 (S.D.N.Y. Aug. 18, 2017); *In re Platinum & Palladium Fix Antitrust Litig.*, No. 14 Civ. 9391, 2017 WL 1169626, at *44–49 (S.D.N.Y. Mar. 28, 2017) ("*Platinum Fix*"); *Laydon v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 12 Civ. 3419, 2017 WL 1113080, at *3–5 (S.D.N.Y. Mar. 10, 2017); *Sullivan v. Barclays PLC*, No. 13 Civ. 2811, 2017 WL 685570, at *44–48 (S.D.N.Y. Feb. 21, 2017); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262, 2015 WL 6243526, at *28, 30, 32 (S.D.N.Y. Oct. 20, 2015) ("*LIBOR IV*"); *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, 2015 WL 1514539, at *10 (S.D.N.Y. Mar. 31, 2015).

[4] *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479–80 (1985) (sustaining jurisdiction in Florida over claim for breach of "a contract which had a substantial connection with that State," when out-of-state defendant's

2

focus on the "connection between the forum *and the specific claims at issue.*"  *BMS*, 137 S. Ct. at 1781 (emphasis added).  Those are the claims arising from "the episode[s]-in-suit" in this action.  *See Waldman v. PLO*, 835 F.3d 317, 331 (2d Cir. 2016).  And Plaintiffs can only meet their burden to establish specific jurisdiction through "nonconclusory allegations."  *See O'Neill v. Asat Tr. Reg. (In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 659, 677 (2d Cir. 2013).[5]

Contrary to Plaintiffs' contention (Opp. 1–2, 13–15), this Court's Rule 12(b)(2) decision in *FOREX* does not establish that Plaintiffs have met that burden in *this* action.  Mem. 16–18.  The "episode[s]-in-suit" in *FOREX* were the *FOREX* Plaintiffs' FX "spot and outright forward transactions," *directly* undertaken with Defendants.  *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581, 586 (S.D.N.Y. 2015).  The operative *FOREX* complaint, this Court concluded, connected the alleged injuries from those direct transactions with two foreign banks that, among other things, had allegedly entered into FX spot trading transactions in New York.  *See FOREX*, 2016 WL 1268267, at *5–6.  This Court also cited the *FOREX* plaintiffs' assertions that the two foreign banks "each had, within the United States, tens of billions of dollars' worth of FX Instruments outstanding each day, including, undoubtedly, transactions with members of the proposed Classes during the Class Period."  *Id.* at *6 (citation and internal

---

"refusal to make the contractually required payments in" Florida and other alleged breaches "*caused* foreseeable injuries" to plaintiff in Florida) (citation omitted and emphasis altered); *Walden*, 134 S. Ct. at 1124 ("reputational injury caused by the defendants" in *Calder v. Jones*, 465 U.S. 783 (1984), "would not have occurred *but for* the fact that the defendants wrote an article for publication in California" (emphasis added)).

[5]  Due process requires that specific jurisdiction concentrate on "the specific claims at issue," and contrary to Plaintiffs' contention (Opp. 15–16), *BMS* does not confine that requirement to state court cases.  *BMS* left unresolved whether "a federal court could exercise personal jurisdiction, consistent with the Fifth Amendment, based on an aggregation of the defendant's contacts with the Nation as a whole, rather than on its contacts with the State in which the federal court sits."  *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 102–03 & n.5 (1987) (cited in *BMS*, 137 S. Ct. at 1784).  *BMS* thus exposes the error in the contention (Opp. 12 n.13) that binding precedent has upheld the "nationwide contacts" approach.  Not so.  In any event, the "nationwide contacts" question is not presented here.  Mem. 9 n.10.  Plaintiffs have not, for example, alleged that *their* intermediaries transacted or communicated with the Foreign Defendants in Illinois or California rather than New York.  The Complaint lacks any nonconclusory allegations of any such transactions or communications *anywhere* in the United States.

quotation marks omitted). "Taken as a whole," this Court found that the operative *FOREX* pleading described "suit-related conduct that either took place in the United States, or had effects expressly aimed inside the country *due to* the [two foreign banks'] substantial FX businesses here." *Id.* (emphasis added).[6]

But the named Plaintiffs here cannot rely on the same "totality of the circumstances" to establish personal jurisdiction over this action. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007). Unlike the *FOREX* plaintiffs, the named Plaintiffs here concede that they did not directly transact with any Defendants. And Plaintiffs provide no nonconclusory allegations concerning the transactions by their own purported intermediaries and the Foreign Defendants from which the Court can conclude that "suit-related conduct that either took place in the United States, or had effects expressly aimed inside the country *due to* the [Foreign Defendants'] substantial FX businesses here." *FOREX*, 2016 WL 1268267, at *6 (emphasis added); *see O'Neill*, 714 F.3d at 677.[7] The named Plaintiffs here presumably possess trading records with the names and locations of their own intermediaries—information that the Defendants do not have. So Plaintiffs' refusal to provide their intermediaries' identities, locations, and other

---

[6] This Court in *FOREX* did not hold that transactions within the United States, standing alone, sufficed to confer specific jurisdiction, but rather that they sufficed, when considered *in combination* with the other "nonconclusory allegations" in the *FOREX* complaint, to confer specific jurisdiction. *O'Neill*, 714 F.3d at 677. The Court thus examined the transactions, not in isolation, but as part of "the relationship among the defendant, the forum, and the litigation." *See Walden*, 134 S. Ct. at 1121. The "relationship" here is different. For example, for all that appears from the Complaint, the purported intermediary transactions in the United States were nothing more than a small fraction of FX spot market activities overall. Moreover, transactions within the United States not alleged to be "within the scope" of the alleged conspiracy would not support specific jurisdiction. *See* Point B., *infra*.

[7] A Foreign Defendant's "presence" in the United States "is irrelevant because continuous presence in the forum does not confer specific jurisdiction unless its presence involves 'suit related conduct.'" *Platinum Fix*, 2017 WL 1169626, at *44 (citing *Waldman*, 835 F.3d at 335, and *7 W. 57th St.*, 2015 WL 1514539, at *10); *Sullivan*, 2017 WL 685570, at *45 ("an assortment of U.S. ties related to UBS's presence in the broader financial services industry" not "suit related conduct"); *FrontPoint*, 2017 WL 3600425, at *5–7 (foreign banks' trading with in-forum counterparties of financial instruments whose value was derived from benchmark allegedly manipulated not "suit related conduct"); *see also BMS*, 137 S. Ct. at 1781 (specific jurisdiction cannot be based on "defendant's unconnected activities in the [forum]").

transaction information is a strategic choice.  Rule 12(b)(2) dismissal is the proper consequence

of that choice.  *See, e.g.*, *FrontPoint*, 2017 WL 3600425, at *6 (dismissing under Rule 12(b)(2)

where plaintiffs "[did] not identify *any* specific trades . . . that are alleged to have been collusive,

nor [did] they identify which Foreign Defendants were parties to such transactions") (emphasis

in original).

### 2.  Plaintiffs Fail The "Purposeful Availment" Test.

Plaintiffs nevertheless contend that they have shown specific jurisdiction by copying

block quotations from government enforcement actions and regulatory filings about the FX spot

market, and about overseas-centered benchmarks in that market (the London-based WM/Reuters

Fix and the Frankfurt-based European Central Bank rate).  Opp. 3–9.  But, again, those

enforcement actions and regulatory filings do *not* describe even a *single* FX transaction, or a

single communication concerning such a transaction, within New York or elsewhere in the

United States, between *any Foreign Defendant* and *any named Plaintiff's intermediary*.[8]

Plaintiffs' insistence that "the New York Plaintiff and proposed New York Class

members purchased FX Instruments indirectly from Defendants . . . *while residing in New York*"

is unavailing.  Opp. 13 (citing CAC ¶ 228) (emphasis added).  *First*, this contention disregards

that, to meet their burden, Plaintiffs must concentrate on the "specific claims at issue," which are

the claims of the *named* Plaintiffs, not unnamed members of any putative class.  The purported

transactions of absent putative class members are of no consequence in the Rule 12(b)(2)

inquiry.  Mem. 8–9, 16 & n.14;  *see also BMS*, 137 S. Ct. at 1780–81.  The Complaint nowhere

provides nonconclusory allegations that any *named* Plaintiff's intermediary transacted or even

---

[8] Plaintiffs concede through silence that they do not allege transacting with *any* intermediary who *ever* transacted or even communicated with The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU").  Mem. 21 n.19.

communicated in the United States—let alone in this forum—with any Foreign Defendant, other than through impermissible legal conclusions "couched as" factual allegations. *See FOREX*, 2016 WL 1268267, at *1. *Second*, contrary to the assertion that the "New York Plaintiff . . . purchased FX Instruments . . . *while residing in* New York," neither the Complaint nor any factual matter in the opposition shows that the relevant trading activity—with unnamed intermediaries—occurred in New York or even elsewhere in the United States. The Complaint alleges only that the named New York Plaintiff "is . . . a resident of" New York. CAC ¶ 10. That is not sufficient.

Contrary to Plaintiffs' further contention (Opp. 14), the *FOREX* settlement agreements cannot support specific jurisdiction over the Foreign Defendants in this action. The allegation that the intermediaries are members of the Direct Settlement Class is merely conclusory, and does not establish that the claims by Plaintiffs in this action are based on transactions in one or more FX Instruments between Foreign Defendants and the intermediaries in this forum. That is especially so because the Direct Settlement Class encompasses transactions *outside* the United States by class members domiciled *in* the United States. Mem. 5 n.6, 15. The *FOREX* settlement agreements thus cannot compensate for Plaintiffs' failure to provide nonconclusory allegations of transactions or communications, within New York or elsewhere in the United States, between *any Foreign Defendant* and *any named Plaintiff's intermediary*.

Furthermore, exercise of jurisdiction over Plaintiffs' state law claims is not warranted through "pendent" jurisdiction, which requires a valid federal statutory basis for nationwide service of process. Opp. 18. Plaintiffs have no valid federal claim activating the "nationwide service of process" provision in the Clayton Act. Rather, the federal claim for injunctive relief— devoid of a "real or immediate threat" of injury, *see City of Los Angeles v. Lyons*, 461 U.S. 95,

6

102, 111–12 (1983)—fails for lack of any standing.  Mem. 9 n.10.  Contrary to Plaintiffs'

contention (Opp. 10 n.11, 19 n.19), New York law is also unavailing:  The long-arm statute

Plaintiffs invoke, § 302 of the New York Civil Practice Law and Rules, cannot authorize

exercise of personal jurisdiction beyond constitutional limits.  *See Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011).  In any event, § 302 does not apply, as it is

not alleged that the Foreign Defendants transacted in New York with the intermediaries.  *See,*

*e.g.*, *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 763–64 (2d Cir. 1983).

### 3.  Plaintiffs Fail The "Effects" Test.

Plaintiffs offer nothing that shows a causal connection between harm to any named

Plaintiff and any Foreign Defendants' "*intentional*, and allegedly tortious, actions . . . expressly

aimed" at the forum from overseas.  *Calder*, 465 U.S. at 789 (emphasis added).  Even if such

harm were "foreseeable," that would be "insufficient."  *Platinum Fix*, 2017 WL 1169626, at *42

(quoting *Waldman*, 835 F.3d at 339).  For that reason, courts "have held that general allegations

of price manipulation abroad alone do not establish that a foreign defendant expressly aimed its

conduct at" the United States.  *Id.* at *45.[9]  The same is true here.  Of course, the "presence of

U.S. victims alone" cannot "make out jurisdiction."  *Sullivan*, 2017 WL 685570, at *44.

### B.  The Conspiracy Allegations Do Not Sustain Personal Jurisdiction.

Plaintiffs further err in contending that jurisdiction attaches vicariously to the Foreign

Defendants based on "the acts of co-conspirators."  Opp. 17.  The so-called "conspiracy

jurisdiction" doctrine as asserted by Plaintiffs is neither consistent with Second Circuit precedent

nor compatible with due process.  Mem. 21.  In any event, even assuming that "a separate and

---

[9]  *See FrontPoint*, 2017 WL 3600425, at *7 ("[A]bsent allegation that defendant's conduct was expressly aimed at the United States, the fact 'that Defendants' alleged manipulation of the Fix Price had harmful effects on U.S.-based exchanges is insufficient' to confer personal jurisdiction.") (quoting *Platinum Fix*, 2017 WL 1169626, at *44); *see also Laydon*, 2017 WL 1113080, at *4 (dismissing where pleading contained "no facts to suggest that [foreign bank] expressly aimed the effects of their alleged manipulative conduct at the United States").

certainly nebulous 'conspiracy jurisdiction' doctrine" could be reconciled with due process (*In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015)), Plaintiffs have not met the elements of that doctrine through nonconclusory allegations.

To begin with, Plaintiffs ignore *Leasco Data Processing Equipment Corp. v. Maxwell*, under which the "mere presence of one conspirator . . . does not confer personal jurisdiction over another alleged conspirator," at least absent allegations (missing here) of a partnership with a "general supervision" relationship between them.[10]

Nor have Plaintiffs shown that transactions in FX instruments in the United States between any Defendant and Plaintiffs' intermediaries—critical to personal jurisdiction even under their argument—were "within the scope of" the alleged FX spot market collusion centered in the United Kingdom (CAC ¶¶ 85–88, 176) and continental Europe (CAC ¶¶ 89–90, 176). *See LIBOR VI*, 2016 WL 7378980, at *8, 12 (internal quotation marks omitted); Mem. 20–21. For all that appears from the Complaint, the alleged sale of FX instruments to the named Plaintiffs' intermediaries was not necessary to the alleged manipulation of the FX spot market benchmarks at issue. So even if there were an agreement concerning the overseas-centered benchmarks (as alleged in *FOREX*), that would not imply that there was an agreement concerning the transactions within the United States with the named Plaintiffs' intermediaries.

### C. The Foreign Defendants Have Not Consented To Jurisdiction Here.

Contrary to Plaintiffs' contention (Opp. 19–21), consent to jurisdiction over this action cannot be inferred from the proceedings or the settlement agreements in *FOREX*.[11] Consent as to

---

[10]  468 F.2d 1326, 1343 (2d Cir. 1972) (Friendly, C.J.), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010); *Bertha Bldg. Corp. v. Nat'l Theatres Corp.*, 248 F.2d 833, 836 (2d Cir. 1957); *see* Mem. 21; *see also Platinum Fix*, 2017 WL 1169626, at *48 (conspiracy jurisdiction under New York law requires, *inter alia*, that "the co-conspirators acting in New York acted at the direction or under the control or at the request of or on behalf of the out-of-state defendant") (quotation marks omitted).

[11]  The *FOREX* Preliminary Approval Order provides that "[p]ending final determination of whether the settlements

*FOREX* is "in no way" consent as to this action.  *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir. 1991); Mem. 22.  Nor did the Foreign Defendants forfeit any defense here by joining the *alternative* Rule 12(b)(6) argument that "if [P]laintiffs [in this action] indeed purchased . . . through brokers," then Plaintiffs are *FOREX* settlement class members, requiring a stay of this action pending resolution of *FOREX*.  Jt. Mem. 33–35.  It was *Plaintiffs'* inconsistent description of the alleged intermediaries as both brokers *and* dealers that necessitated the alternative stay request.  *See id.* at 8–9.

    In any event, a stay request "signals only that a defendant wishes to postpone the court's disposition of a case," without seeking a merits ruling, and hence cannot support forfeiture of a jurisdictional defense.  *Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011); *see Ramasamy v. Essar Global Ltd.*, 825 F. Supp. 2d 466, 467 n.1 (S.D.N.Y. 2011) (moving for stay did not waive personal jurisdiction defense).[12]  Under Plaintiffs' erroneous approach, any request to stay an action in aid of a settlement would forfeit the Rule 12(b)(2) defense, forcing defendants to fully litigate personal jurisdiction at the outset and request a stay to facilitate the broader settlement only *after* a decision on jurisdiction.  No precedent requires such a wasteful result.

---

set forth in the Settlement Agreements should be approved, each Class Plaintiff and each Class Member . . . shall be *enjoined from prosecuting* in any forum any Released Claim against any of the Released Parties . . . ."  *FOREX*, Dkt. 536 ¶ 21 (Dec. 15, 2015) (emphasis added); *see, e.g.*, *FOREX*, Dkt. 481-2 ¶ 22 (Oct. 22, 2015) (parallel provision in settlement agreement).  Here, Plaintiffs' forfeiture contention relies on a misunderstanding of a different paragraph of each settlement agreement.  *See, e.g.*, *FOREX*, Dkt. 481-2 ¶ 16(j) (parties "hereby irrevocably submit to the exclusive jurisdiction of [this Court], for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement . . . .").  Plaintiffs' inherently contradictory position (Opp. 20 n.20) appears to be that (1) this action *is* an "action . . . relating to . . . the applicability of" the settlement agreements so as to fall within the "exclusive jurisdiction" of this Court, but that (2) this action *is not* correctly "enjoined."  Those propositions obviously contradict one another.

[12]  *Cf. Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción*, 832 F.3d 92, 102 (2d Cir. 2016) (no waiver or forfeiture where defendant does not create "reasonable expectation that it will defend . . . *on the merits*" or "cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking") (quotation marks omitted) (emphasis added).

### D. There Is No Basis For Jurisdictional Discovery From The Foreign Defendants.

Contrary to Plaintiffs' contention, there is no justification for jurisdictional discovery here from the Foreign Defendants. Opp. 23–24. Courts have held that "[w]here a plaintiff does not make a *prima facie* showing that personal jurisdiction exists, a district court is 'well within its discretion in declining to permit [jurisdictional] discovery.'" *Platinum Fix*, 2017 WL 1169626, at *50; *Best Van Lines*, 490 F.3d at 255; *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998). Plaintiffs have not made that *prima facie* showing. *See Laydon*, 2017 WL 1113080, at *8; *accord Aluminum Warehousing*, 90 F. Supp. 3d at 239–40.

Plaintiffs' perfunctory assertion that they will seek leave to amend (Opp. 23–24) flatly ignores Rule III.C.2 of this Court's Individual Rules and Procedures for Civil Cases. In response to the Rule 12 motions, Plaintiffs "elect[ed] not to amend [the] [C]omplaint," and so, under Rule III.C.2, they have relinquished the "opportunity" for amendment under Rule 15(a)(1)(B). Furthermore, the Complaint here is the third filed by Plaintiffs' counsel (including *Baker v. Bank of Am. Corp.*, No. 16 Civ. 7512), and it is the third to omit *prima facie* allegations of personal jurisdiction over the Foreign Defendants. *Cf. Sanders v. Grenadier Realty, Inc.*, 367 F. App'x 173, 176–77 (2d Cir. 2010) (affirming denial of leave to amend in part because "plaintiffs were afforded two opportunities to amend before their complaint was dismissed").

Dated:   New York, New York                    Respectfully submitted,
            October 24, 2017

SULLIVAN & CROMWELL LLP                 GIBSON, DUNN & CRUTCHER LLP

By: /s/ Matthew A. Schwartz              By: /s/ Eric J. Stock
Matthew A. Schwartz                      Eric J. Stock
David H. Braff                           Indraneel Sur
125 Broad Street                         200 Park Avenue
New York, New York 10004                 New York, New York 10166
Telephone:  (212) 558-4000               Telephone:  (212) 351-4000
schwartzmatthew@sullcrom.com             estock@gibsondunn.com
braffd@sullcrom.com                      isur@gibsondunn.com

***Attorneys for Foreign Defendant***
***Barclays Bank PLC***                  D. Jarrett Arp
                                         Melanie L. Katsur
                                         1050 Connecticut Avenue, N.W.
                                         Washington, D.C.  20036
DAVIS POLK & WARDWELL LLP                Telephone:  (202) 955-8500
                                         jarp@gibsondunn.com
By:  /s/ Joel M. Cohen                   mkatsur@gibsondunn.com
Joel M. Cohen
Melissa C. King                          ***Attorneys for Foreign Defendant***
450 Lexington Avenue                     ***UBS AG***
New York, New York 10017
Telephone:  (212) 450-4000
joel.cohen@davispolk.com
melissa.king@davispolk.com

***Attorneys for Foreign Defendant***
***The Royal Bank of Scotland Group plc***

LINKLATERS LLP

By:  /s/ James R. Warnot, Jr.
James R. Warnot, Jr.
Adam S. Lurie
Patrick C. Ashby
1345 Avenue of the Americas
New York, New York 10105
Telephone:  (212) 903-9000
james.warnot@linklaters.com
adam.lurie@linklaters.com
patrick.ashby@linklaters.com

***Attorneys for Foreign Defendant
Société Générale***

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP

By:  /s/ Kenneth A. Gallo
Kenneth A. Gallo
Michael E. Gertzman
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
kgallo@paulweiss.com
mgertzman@paulweiss.com

***Attorneys for Foreign Defendant The
Bank of Tokyo-Mitsubishi UFJ, Ltd.***

LOCKE LORD LLP

By:  /s/ Gregory T. Casamento
Gregory T. Casamento
3 World Financial Center
New York, New York 10281
Telephone:  (212) 812-8325
gcasamento@lockelord.com

Roger B. Cowie
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201-6776
Telephone:  (214) 740-8000
rcowie@lockelord.com

J. Matthew Goodin
Julia C. Webb
111 S. Wacker Drive
Chicago, Illinois 60606
Telephone:  (312) 443-0472
jmgoodin@lockelord.com
jwebb@lockelord.com

***Attorneys for Foreign Defendants
HSBC Holdings plc and HSBC Bank plc***

SIDLEY AUSTIN LLP

By:  /s/ Andrew W. Stern
Andrew W. Stern
Alan M. Unger
Nicholas P. Crowell
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 839-5300
astern@sidley.com
aunger@sidley.com
ncrowell@sidley.com

***Attorneys for Foreign Defendant
Standard Chartered Bank***