# EXHIBIT A

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/17/12
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BLD PRODUCTIONS, LLC,

                Plaintiff,

v.

REMOTE PRODUCTIONS, INC.,

                Defendant.

ECF CASE

ORDER

10 Civ. 2625 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        This action relates to an agreement concerning the production of an April 10, 2001 Aretha Franklin concert ("the Concert") and the commercial distribution of recordings of that concert. Plaintiff BLD Productions LLC ("BLD") has moved for leave to file a Third Amended Complaint.

        In a March 31, 2011 Memorandum Opinion and Order ("Opinion & Order"), this Court granted Defendant Viacom's motion to dismiss in its entirety, and granted Defendant Remote Productions, Inc.'s ("RPI") motion to dismiss BLD's claims for breach of oral contract, breach of the implied obligation of good faith and fair dealing, and promissory estoppel.[1] (Dkt No. 25) As to BLD's written contract claim, this Court found that the parties' agreement did not require RPI to supply master recordings of the Concert, and accordingly dismissed the claim to the extent it is premised on RPI's failure to do so. This Court also dismissed as time-barred BLD's written contract claim to the extent it is premised on RPI's failure to engage a distributor. This Court denied RPI's motion to dismiss BLD's written contract claim to the extent that it is based on RPI's

---

[1] Familiarity with the Opinion & Order is presumed.

alleged failure to provide an accounting and pay any royalties due. (Id.)

BLD now seeks leave to file a Third Amended Complaint in order to address the deficiencies noted in the Opinion & Order. In the proposed Third Amended Complaint ("TAC"), BLD amends its claims against RPI for breach of written contract and breach of the implied covenant of good faith and fair dealing and abandons all other claims. For the foregoing reasons, BLD's motion for leave to file a Third Amended Complaint will be denied.

## BACKGROUND

On April 10, 2001, Aretha Franklin performed a concert at Radio City Music Hall entitled "VH-1 Divas Live: The One and Only Aretha Franklin – A Benefit Concert for the VH-1 Save the Music Foundation." (TAC, ¶¶ 1, 23) Franklin granted certain rights to BLD concerning the Concert, including rights regarding video and audio recordings of the Concert. (Second Amended Complaint ("SAC"), Ex. A (Agreement), ¶¶ 1(d)(ii), 7(b)(i))[2] The parties' written agreement concerning these matters ("the Agreement") is "Dated as of March 8, 2001."[3] (Id.; Ex. A (Agreement))

The Agreement sets forth the obligations of each party regarding the Concert. BLD agrees to make Franklin available for the Concert, and to "deliver all rights owned and/or controlled by the Artist necessary for RPI to perform its obligations and exercise its rights. . . ." (SAC, Ex. A (Agreement), ¶ 20(b)(ii)) Among other things, RPI is required to engage guest artists and production personnel, and secure production equipment and a venue for the Concert. (Id. ¶ 1) The Agreement states that "RPI shall be the owner

---

[2] The Court cites an exhibit to the SAC because the Agreement as attached to the proposed TAC has no exhibit number or letter.
[3] No other date appears on the Agreement. (SAC, Ex. A (Agreement))

2

of all right, title and interest in and to the Concert and the Program [embodying the Concert] (and all rights therein) subject to the terms of this Agreement. . . ." (Id. ¶ 3(a)) The Agreement also grants RPI "the exclusive right and authority to solicit, negotiate, and execute [sic] a distributor (the "Distributor") to manufacture, distribute, advertise and promote . . . Phonorecords [of the Concert] in any audio or audio-visual format or configuration." (Id. ¶ 6) The Agreement does not require RPI to supply master recordings of the Concert to BLD. (Opinion & Order at 12)

To date, RPI has not engaged a distributor. BLD claims that, in failing to engage a distributor, RPI has violated the Agreement. (TAC ¶¶ 81-84) In the Opinion & Order, this Court found that BLD had adequately pleaded that the Agreement required RPI to engage a distributor, even though no provision of the Agreement expressly imposes such an obligation. (Opinion & Order at 12-15) The Court concluded, however, that this claim is time-barred. (Id. at 15-17)

I. **STANDARD FOR GRANTING LEAVE TO AMEND**

Under the Federal Rules of Civil Procedure, leave to amend should be "freely give[n] . . . when justice so requires." FED.R.CIV.P. 15(a)(2). District courts "ha[ve] broad discretion to decide whether to grant leave to amend." Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000). "The Supreme Court has . . . interpreted Rule 15 to permit . . . amendments only when (1) the party seeking the amendment has not unduly delayed, (2) when the party is not acting in bad faith or with a dilatory motive, (3) when the opposing party will not be unduly prejudiced by the amendment, and (4) when the amendment is not futile." Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc., 148

3

F.Supp.2d 321, 326 (S.D.N.Y. 2001) citing Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000).

Where a claim has been dismissed as time-barred, a court may allow a plaintiff to amend the complaint to add facts demonstrating that the claim is timely. Jaffe v. Capital One Bank, 09 cv. 4106 (PGG), 2010 WL 691639 at *11 (S.D.N.Y. March 10, 2010) (following dismissal, permitting plaintiff to amend complaint to include later violations which would render claim timely); Cashman v. Montefiore Med. Ctr., No. 92 Cv. 4551(PKL), 1993 WL 227700 at *1 (S.D.N.Y. June 21, 1993) (permitting plaintiff to amend complaint to include a last day of treatment that would make claim timely under the continuous treatment doctrine).

A court may properly deny leave to amend in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2007) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); see also Murdaugh v. City of New York, No. 10 Civ. 7218 (HB), 2011 WL 1991450 at *2 (S.D.N.Y. May 19, 2011) ("Although under Rule 15(a) of the Federal Rules of Civil Procedure leave to amend complaints should be 'freely given,' leave to amend need not be granted where the proposed amendment is futile." (citations omitted)).

"[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." Hayden v. Cnty of Nassau, 180 F.3d 42, 53 (2d Cir. 1999). An amendment is futile where it is legally insufficient on its face such that the amended

claim could not survive a motion to dismiss. Lucente v. IBM Corp., 310 F.3d 243, 258 (2d Cir. 2002). A claim can only withstand a Rule 12(b)(6) motion, of course, if it contains sufficient facts to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

A court may also deny leave to amend when the proposed amendment is made in bad faith, as evidenced by contradictions between the proposed amendment and prior versions of the complaint. Kant v. Columbia Univ., No. 08 Civ. 7476 (PGG), 2010 WL 807442 at *7, (S.D.N.Y. Mar. 9, 2010) (citing Wallace v. New York City Dep't of Corrections, No. 95 Civ. 4404 (SJ), 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996) (where a plaintiff "blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss," and "directly contradicts the facts set forth in his original complaint [in his amended complaint]," the "court accepts the facts as described in the original complaint as true")).

## II. ANALYSIS

### A. Breach of Written Contract

BLD bases its claim for breach of written contract on RPI's failure to "exert reasonable, necessary efforts to identify and engage a distributor." (TAC ¶ 83) BLD argues that new facts show that because neither party intended to be bound without both parties' signatures, "distribution was not possible" (TAC ¶ 80) – and therefore no breach could have occurred – before RPI signed the Agreement "in or about 2005." (Id. ¶ 28)

In the Opinion & Order, this Court found that while it is plausible that the Agreement obligated RPI to engage a distributor, BLD's written contract claim accrued

5

in 2001 and was therefore barred by the six year statute of limitations.[4] (Opinion & Order at 15-21) "A cause of action for breach of contract ordinarily accrues and the limitations period begins to run upon breach." Guilbert v. Gardner, 480 F.3d 140, 149 (2d Cir. 2007) (citing Ely-Cruikshank Co. v. Bank of Montreal, 599 N.Y.S. 2d 501 (1993)).

This Court found that any breach of an obligation to engage a distributor occurred, and the claim accordingly accrued, in 2001:

> "Where a contract does not specify a date or time for performance, New York law implies a reasonable time period." Guilbert, 480 F.3d at 149 (citing Schmidt v. McKay, 555 F.2d 30, 35 (2d Cir. 1977); RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC., 156 F. App'x 349, 351 (2d Cir. 2005) ("When a contract does not supply a time for performance, it must be done within a 'reasonable time.'" (quoting Smith Barney Harris Upham & Co. v. Liechtensteinische Landesbank, 866 F. Supp. 114, 117 (S.D.N.Y. 1994)); Lituchy v. Guinan Lithographic Co., 60 A.D.2d 622 (2d Dept. 1977)).
> . . . .
>
> As discussed above, assuming arguendo that RPI had an obligation under the Agreement to engage a distributor, the Agreement does not provide when that obligation must be performed. Under such circumstances, "New York law implies a reasonable time period." Guilbert, 480 F.3d at 149 (citing Schmidt v. McKay, 555 F.2d 30, 35 (2d Cir. 1977); Lituchy v. Guinan Lithographic Co., 60 A.D.2d 622 (2d Dept. 1977)). Given that the SAC pleads that RPI had an obligation to "promptly" select a distributor (SAC, ¶ 37), this Court concludes that BLD's breach claim accrued in 2001.
>
> BLD has pleaded no facts suggesting that application of the continuing or successive breach doctrine is appropriate here. BLD alleges that RPI had an obligation to secure a distributor and was required to do so "promptly" after the Agreement was entered into in March 2001. If RPI committed a breach in not engaging a distributor, it was a one-time breach and the breach claim accrued in 2001.

(Opinion & Order at 21)

---

[4] Under CPLR § 213(2), "an action upon a contractual obligation or liability, express or implied," "must be commenced within six years." CPLR § 213(2).

In an attempt to bring its claims within the statute of limitations, BLD adds new factual allegations in the proposed TAC that directly contradict allegations in the SAC as to when a binding written contract was formed. In particular – in support of its argument that no written contract claim accrued until after RPI signed the Agreement "in or about 2005" (TAC ¶ 52) – BLD now asserts that it "made . . . clear to RPI that it did not consider the agreement binding without a signature, but rather only an agreement to agree." (TAC ¶ 29)

BLD has also omitted language in the SAC in which it asserted that RPI was contractually obligated to engage a distributor "promptly" after the Concert. (SAC ¶ 37; TAC ¶¶ 39, 40, 50) Indeed, the entire thrust of the SAC is that RPI was contractually obligated to engage a distributor "promptly" after the Concert. For example, in the SAC, BLD asserts that "well before the written Agreement was finalized, the parties agreed that defendants would have the exclusive right and obligation to engage a distributor." (SAC ¶ 33; Id. ¶¶ 63, 64) BLD likewise asserted that it "repeatedly contacted defendants and made it clear that, even though the written Agreement had not yet been signed, defendants needed promptly to select a distributor," citing a 2001 letter request. (Id. ¶ 37 & Ex. C (Nov. 30, 2001 Tofanelli Ltr)) BLD also asserted in the SAC that "[d]espite [RPI's] insistence on exclusive distribution rights <u>and their clear obligations under the Agreement</u>, defendants not only failed to identify and engage a distributor on their own, but also ignored BLD's suggestions regarding distributors that were interested in the Concert recordings." (SAC ¶ 40) (emphasis added) In an effort to evade the statute of limitations, BLD now omits most of these allegations, including the "promptly" language and the 2001 letter request, and insists that RPI had no obligation to engage a distributor

"promptly" after the Concert, because the parties allegedly never intended to be bound absent written execution of the Agreement. (TAC ¶ 29)

These two accounts are incompatible, however. Either RPI was contractually obligated to engage a distributor "promptly" after the Concert or it did not have such an obligation. In now contradicting its prior assertions in the SAC as to when a binding written agreement between the parties existed, BLD has acted in bad faith. BLD's bad faith requires that its motion to file a TAC be denied. See Kant, 2010 WL 807442 at *7.[5]

Finally, BLD attempts to bring its claim within the statute of limitations by citing deposition testimony in which an RPI employee asserts that RPI would not "move forward without a signed agreement with BLD." (TAC ¶ 42) The cited testimony begs the question, however. Whether or not RPI was willing to engage a distributor in the absence of a fully executed agreement is irrelevant to whether it was already contractually bound to do so.

---

[5] Even if BLD had not acted in bad faith, its conclusory statements about its subjective intent are insufficient. "To discern . . . intent a court must look to the words and deeds [of the parties] which constitute objective signs in a given set of circumstances." McElroy v. Gemark Alloy Refining Corp., 592 F.Supp.2d 508, 518 (S.D.N.Y. 2008) (citing Winston v. Mediafare Entertainment Corp., 777 F.2d 78, 80-81 (2d Cir. 1985)). The Second Circuit has directed courts to consider several factors in determining whether parties intended to be bound in the absence of a fully executed agreement: (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing. Subjective evidence of intent is generally not considered. See Adjustrite Sys. Inc. v. GAB Business Servs. Inc., 145 F.3d 543, 549 (2d Cir. 1998); Rule v. Brine, Inc., 85 F.3d 1002, 1010 (2d Cir.1996). Instead, "[w]hat matters are the parties' expressed intentions, the words and deeds which constitute objective signs in a given set of circumstances." R.G. Grp. v. Horn & Hardart Co., 751 F.2d 69, 74 (2d Cir. 1984). BLD has not offered any such evidence of its alleged intent not to be bound absent a fully executed agreement.

In sum, BLD cannot defeat RPI's statute of limitations argument by deleting earlier factual assertions and adding contradictory new allegations. BLD's motion for leave to amend its written contract claim will be denied.

### B. Implied Obligation of Good Faith and Fair Dealing

The proposed TAC also sets forth an amended claim for "breach of [the] implied obligation of good faith and fair dealing." (TAC ¶¶ 86-95) "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also plead." ARI & Co. v. Regent Int'l Corp., 273 F.Supp.2d 518, 522 (S.D.N.Y. 2003). (Opinion & Order at 25-27) Where, as here, a plaintiff asserts both express and implied contract claims, the plaintiff "must allege an implied duty that is consistent with the express contractual terms, but base its implied covenant theory on allegations that are distinct from the factual predicate for its contract claims." JPMorgan Chase Bank, N.A. v. IDW Grp., LLC, No. 08 Civ. 9116, 2009 WL 321222, at *5, 2009 U.S. Dist. LEXIS 9207, at *16 (S.D.N.Y. Feb. 9, 2009) ("While independent obligations beyond those stated in the contract will not be inferred, a plaintiff adequately states an implied covenant claim by alleging conduct that subverts the contract's purpose without violating its express terms."). Causes of action for breach of contract and breach of the covenant of good faith and fair dealing may stand together only "where the defendant engages in conduct that injures or frustrates the other party's right to receive the fruits of the contractual bargain." Ambac Assur. Corp. v. DLJ Mortgage. Capital Inc., 31 Misc.3d 1208, at *12 (Sup. Ct. N.Y. Cty. 2011) (citing Frydman v. Credit Suisse First Boston Corp., 272 A.D.2d 236 (1st Dept. 2000).

9

In the Opinion & Order, this Court found that BLD's claim for breach of the obligation of good faith and fair dealing was "based on the same conduct underlying its breach of contract claims – RPI's failure to retain a distributor." (Opinion & Order at 25) In the proposed TAC, BLD alleges that RPI breached its duty of good faith and fair dealing by (1) "temporarily losing the master tapes or by falsely stating that it had misplaced them[]" (TAC ¶ 87), and (2) "misrepresent[ing] whether other artists who performed at the Concert [were] amenable to distribution of Concert recordings." (Id. ¶ 92) BLD claims that in addition to failing to engage a distributor, these actions by RPI prevented any distribution deal from being finalized (id. ¶ 90) and prevented BLD from "properly evaluat[ing] whether to aggressively pursue distribution."[6] (Id. ¶ 94) BLD argues that these acts give rise to a separate claim for breach of the covenant of good faith and fair dealing.[7]

As discussed above, this Court has found that the Agreement was in place as of 2001. In the Opinion & Order, this Court ruled that while the Agreement did not explicitly require RPI to engage a distributor, its exclusivity language might reasonably be read to impose an "'implicit agreement' that a party would use reasonable efforts to bring about profits," given that the Agreement grants exclusive distribution rights to RPI and neither party has anything to gain from the Agreement if either fails to perform. (Opinion & Order at 12-13)

---

[6] The SAC contains similar allegations, albeit in different words. ("Defendants proffered these false excuses to forestall plaintiff from asserting its rights and interposing claims, and to frustrate and obstruct plaintiff's efforts to arrange for the manufacture, distribution, and marketing of the recordings.") (SAC ¶ 81)

[7] BLD asks, in the alternative, for reconsideration of the Court's Opinion & Order on this point. (Pltf. Br. at 12) BLD has filed no motion for reconsideration, however, nor has BLD attempted to meet the standard for reconsideration. Therefore, this Court will not reconsider the Opinion & Order.

BLD's good faith and fair dealing claim is founded on the same factual allegations as its breach of contract claim – all aimed at demonstrating that RPI failed to use reasonable efforts to bring about profits. BLD's claims that RPI failed to engage a distributor, misrepresented artist demands, lost the master tapes, or misrepresented that it had lost the tapes, all relate to whether RPI employed reasonable efforts to follow through on its obligations under the Agreement.

Because BLD's good faith and fair dealing claim is based on the same conduct underlying its breach of contract claim, it cannot proceed. Even if BLD's good faith and fair dealing claim was not duplicative of its breach of contract claim, BLD has not pleaded facts sufficient to show that the alleged breaches of this covenant actually occurred.[8] Accordingly, the proposed amendment of this claim would be futile.

---

[8] BLD has not demonstrated either that RPI had an obligation to provide master tapes to BLD or that RPI lost the master tapes. As to the first issue, the Agreement does not require RPI to provide the recordings to BLD, nor does it allow BLD to pursue distribution of the tapes itself. (Opinion & Order at 12; SAC Ex. A (Agreement)) ¶ 6) "The obligation of good faith cannot be used to create independent obligations beyond those agreed upon and stated in the express language of the contract." Wolff v. Rare Medium, Inc., 171 F.Supp.2d 354, 359 (S.D.N.Y. 2001).

Even if RPI were obligated to provide the master tapes to BLD, BLD has stated only that it sought a copy of the tapes from RPI and no copy was provided. (TAC ¶¶ 60-64) BLD alleges that RPI "notably was silent as to whether it had located the master tapes," and BLD therefore "reasonably surmised" that RPI had lost the tapes. (Id. ¶¶ 65-66) To the contrary, the exhibits to the TAC indicate that RPI represented that it would "forward copies of the tapes" when it determined "whether [it wanted] to move forward with this project." (Id. Ex. at 56 (May 12, 2006 Wilson email)) This statement is consistent with the undisputed fact that RPI had exclusive rights to distribution under the Agreement. (SAC Ex. A (Agreement)) ¶ 6; TAC ¶ 31)

11

## CONCLUSION

For the reasons stated above, Plaintiff's motion for leave to file a Third Amended Complaint is denied. The Clerk of the Court is directed to terminate the motion (Docket No. 29).

Dated: New York, New York
January 17, 2012

SO ORDERED.

*Paul R. Gardephe* (signature)

Paul G. Gardephe
United States District Judge