# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES CONTANT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, *et al.*,<br><br>Defendants. | Civil Action No. 17-cv-3139-LGS<br><br>(related to No. 13-cv-7789-LGS) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH CITIGROUP INC., CITIBANK, N.A., CITICORP, AND CITIGROUP GLOBAL MARKETS INC.**

## **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................... 1

II. PROCEDURAL HISTORY...................................................................... 2

III. OVERVIEW OF THE SETTLEMENT NEGOTIATIONS AND SETTLEMENT
TERMS ................................................................................................ 4

IV. THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS
COURT TO GRANT PRELIMINARY APPROVAL ......................................... 7

    A.  Legal Standards for Preliminary Approval ...................................................7

    B.  The Proposed Settlement is Entitled to a Presumption of Fairness .........................8

        1.  The Complexity, Expense, and Likely Duration of the Litigation ........... 10

        2.  The Reaction of the Class to the Settlement ............................................ 11

        3.  The Stage of the Proceedings.................................................................... 11

        4.  The Risks of Establishing Liability and Damages .................................... 13

        5.  The Risks of Maintaining the Class Action Through Trial....................... 14

        6.  The Ability of Defendants to Withstand a Greater Judgment................... 15

        7.  The Reasonableness of the Settlement in Light of the Best Possible
Recovery and the Attendant Risks of Litigation....................................... 15

V.  CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ........ 17

    A.  Plaintiffs Satisfy the Rule 23(a) Requirements.....................................................18

        1.  Numerosity................................................................................................ 18

        2.  Commonality............................................................................................. 18

        3.  Typicality .................................................................................................. 20

        4.  Adequacy .................................................................................................. 20

    B.  Plaintiffs Satisfy the Rule 23(b)(3) Requirements.................................................21

        1.  Predominance............................................................................................ 21

        2.  Superiority................................................................................................. 22

    C.  The Court Should Appoint Class Counsel as Settlement Class Counsel...............24

VI. PLAINTIFFS WILL FILE A SEPARATE MOTION FOR APPROVAL OF A
NOTICE PLAN AND PLAN OF DISTRIBUTION ........................................... 24

VII. CONCLUSION..................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Dairy Farmers of Am., Inc.*,
  No. 09-cv-230, 2011 WL 1706778 (D. Vt. May 4, 2011)...................................................... 8

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ....................................................................................... 18, 22, 23

*Associated Gen. Contractors v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983) ........................................................................................................ 3

*Atwood v. Intercept Pharm., Inc.*,
  299 F.R.D. 414 (S.D.N.Y. 2014) ................................................................................... 20

*Authors Guild v. Google, Inc.*,
  No. 05-cv-8136-DC, 2009 WL 4434586 (S.D.N.Y. Dec. l, 2009) ......................................... 9

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
  No. 07-cv-2207-JGK, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) .................................. 14

*Cardiology Assocs., P.C. Pension Plan v. Nat'l Intergroup, Inc.*,
  No. 85-cv-3048-JMW, 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987)...................................... 14

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007)........................................................................................... 20

*Cohen v. J.P. Morgan Chase & Co.*,
  262 F.R.D. 153 (E.D.N.Y. 2009) ................................................................................... 18

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013).......................................................................................................... 14

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995).............................................................................................. 18

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974).................................................................................. *passim*

*Fleisher v. Phoenix Life Ins. Co.*,
  No. 11-cv-8405-CM, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) .................................. 8

*Goldberger v. Integrated Res.*,
  209 F.3d 43 (2d Cir. 2000)............................................................................................... 9

*In re AOL Time Warner, Inc. Securities and "ERISA" Litig.*,
  No. 02-cv-5575-SWK, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ....................... 11, 12, 16

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000).............................................................................. 8

*In re Bear Stearns Cos.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ............................................................................ 16

ii

*In re Citigroup, Inc.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) ........................................................................................ 15

*In re Currency Conversion Fee Antitrust Litig.*,
   No. 01-MD-1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ........................................ 7

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
   No. 13-cv-07789-LGS, 2015 WL 9952596 (S.D.N.Y. Dec. 15, 2015)............................... 25

*In re IMAX Sec. Litig.*,
   272 F.R.D. 138 (S.D.N.Y. 2010) ........................................................................................ 20

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................................. 11, 15, 16

*In re Initial Pub. Offering Sec. Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005) ........................................................................................ 10

*In re Initial Pub. Offering Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006).................................................................................................. 22

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11-MD-2262-NRB, 2014 WL 6851096 (S.D.N.Y. Dec. 2, 2014) .......................... 8, 10

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11-MD-2262-NRB, 2016 WL 2851333 (S.D.N.Y. May 13, 2016) ............................. 19

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11-MD-2262-NRB, 2016 WL 7625708 (S.D.N.Y. Dec. 21, 2016) ............................. 7

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003) ................................................................................. 17

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ...................................................................................... 9, 10

*In re Master Key Antitrust Litig.*,
   70 F.R.D. 23 (D. Conn. 1975).............................................................................................. 22

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ............................................................................................ 9

*In re NASDAQ Mkt.-Makers Antitrust Litig.* ("*NASDAQ I*"),
   169 F.R.D. 493 (S.D.N.Y. 1996) .................................................................................... 19, 22

*In re NASDAQ Mkt.-Makers Antitrust Litig.* ("*NASDAQ II*"),
   176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................................ 2, 7

*In re NASDAQ Mkt.-Makers Antitrust Litig.* ("*NASDAQ III*"),
   187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................................... 14, 16

*In re Packaged Ice Antitrust Litig.*,
   No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) .................................... 17

*In re PaineWebber Pshps. Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................................ 8, 9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   986 F. Supp. 2d 207 (E.D.N.Y. 2013)................................................................... 11, 13

*In re Platinum and Palladium Commodities Litig.*,
   No. 10-cv-3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ........................................ 7

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
   584 F. Supp. 2d 697 (M.D. Pa. 2008) .......................................................................... 15

*In re Stock Exchs. Options Trading Antitrust Litig.*,,
   No. 99-cv-0962-RCC, 2005 WL 1635158 (S.D.N.Y. July 8, 2005).................................. 7

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................................................... 10

*In re Visa Check/Mastermoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)........................................................................................ 22

*In re Vitamin C Antitrust Litig.*,
   No. 06-MD-1738-BMC, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ............................ 10

*Johnson v. Nextel Communs. Inc.*,
   780 F.3d 128 (2d Cir. 2015)................................................................................ 19, 22

*Labbate-D'Alauro v. GC Servs. Ltd. Pshp.*,
   168 F.R.D. 451 (E.D.N.Y. 1996) ................................................................................ 20

*Langan v. Johnson & Johnson Consumer Cos.*,
   No. 13-cv-1470 (JAM), 2017 WL 985640 (D. Conn. Mar. 13, 2017).............................. 21

*Larsen v. JBC Legal Grp., P.C.*,
   235 F.R.D. 191 (E.D.N.Y. 2006) ................................................................................ 21

*Menkes v. Stolt-Nielsen S.A.*,
   270 F.R.D. 80 (D. Conn. 2010)..................................................................................... 8

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*,
   No. 08-cv-42-JG, 2013 WL 4525323 (E.D.N.Y. Aug. 27, 2013).................................... 25

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006) .................................................................................. 11

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) .............................................................................................. 21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005).......................................................................................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).................................................................................................. 18

**Statutes**

Fed. R. Civ. P. 23 ................................................................................................................... *passim*

# I.   **INTRODUCTION**

Plaintiffs James Contant, Sandra Lavender, Victor Hernandez, Martin-Han Tran, FX Primus Ltd., Carlos Gonzalez, Ugnius Matkus, Charles G. Hitchcock III, Jerry Jacobson, Tina Porter, and Paul Vermillion (collectively, "Plaintiffs") respectfully submit this memorandum in support of their motion for preliminary approval of a settlement between themselves and the proposed Classes and Defendants Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc. (collectively, "Citigroup") in the above-captioned Action. If approved, the proposed Settlement Agreement (the "Settlement"), consisting of a $9,950,000 payment and a commitment by Citigroup to provide significant cooperation to Plaintiffs, offers valuable relief to the Classes, and resolves this complex case against Citigroup.[1] Citigroup's pledged cooperation is particularly valuable to Plaintiffs and the proposed Classes at this early stage in the litigation. Plaintiffs' claims asserted against the remaining fifteen Defendants (the "Non-Settling Defendants") are not released by the Settlement and are being vigorously pursued by Plaintiffs.[2] Under the doctrine of joint and several liability, all Class Members' transactions, including transactions involving FX Instruments that were indirectly purchased from Citigroup, remain in the case for the purpose of determining damages against the Non-Settling Defendants.

Having overseen the related action *In Re Foreign Exch. Benchmark Antitrust Litig.*, No. 13-cv-7789-LGS ("*FOREX*") over the past five years, this Court thoroughly understands the

---

[1] The Settlement is attached as Ex. A to the Declaration of Michael Dell'Angelo in Support of Plaintiffs' Motion for Preliminary Approval ("Dell'Angelo Decl.").

[2] The Non-Settling Defendants are Bank of America Corporation; Bank of America, N.A.; Merrill Lynch, Pierce, Fenner & Smith Inc.; The Bank of Tokyo Mitsubishi UFJ Ltd.; Barclays Bank PLC; Barclays Capital Inc.; BNP Paribas Group; BNP Paribas North America, Inc.; BNP Paribas Securities Corp.; BNP Paribas Prime Brokerage, Inc.; Credit Suisse Group AG; Credit Suisse AG; Credit Suisse Securities (USA) LLC; Deutsche Bank AG; Deutsche Bank Securities Inc.; The Goldman Sachs Group, Inc.; Goldman, Sachs & Co.; HSBC Bank PLC; HSBC North America Holdings, Inc.; HSBC Bank USA, N.A.; HSBC Securities (USA) Inc.; JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A.; Morgan Stanley; Morgan Stanley & Co., LLC; Morgan Stanley & Co. International PLC; RBC Capital Markets LLC; The Royal Bank of Scotland PLC; RBS Securities Inc.; Société Générale S.A.; Standard Chartered Bank; UBS AG; UBS Group AG; and UBS Securities LLC.

complexities in this case. In addition to those factual complexities, Plaintiffs face procedural hurdles that further complicate this matter. While Plaintiffs firmly believe the Court will grant Plaintiffs' pending Motion for Leave to File a Second Consolidated Class Action Complaint, the Non-Settling Defendants will likely file motions to dismiss for failure to state a claim and for lack of personal jurisdiction. Again, while Plaintiffs believe that they will prevail on these motions, Plaintiffs face the additional hurdles of class certification, summary judgment, and trial. Yet, despite these significant challenges, Plaintiffs have secured meaningful relief for the Classes by settling with Citigroup.

At the preliminary approval stage, the Court need only determine if, on its face, the proposed settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard" or, put another way, the Court is to make sure that the settlement is within the range of possible approval. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ II*"). As demonstrated below, the proposed Settlement is an excellent result for the Class, is fair, reasonable and adequate, and warrants preliminary approval under Rule 23(e). Accordingly, Plaintiffs respectfully request that the Court enter an order (i) granting preliminary approval of the proposed Settlement; (ii) certifying the proposed Classes for settlement purposes; and (iii) appointing Berger & Montague, P.C. as Settlement Class Counsel.

## II.   <u>PROCEDURAL HISTORY</u>

Plaintiffs filed the above-captioned Action on April 28, 2017. ECF No. 1. On June 26, 2017, the parties filed a stipulation to consolidate the instant action with *Lavender, et al. v. Bank of America Corp., et al.*, No. 17-cv-4392, which alleged similar claims to *Contant*, but by different Plaintiffs with different state-law claims. ECF No. 83. Thereafter, on June 30, 2017,

Plaintiffs filed the First Consolidated Class Complaint ("CCAC"), consolidating the claims of the *Contant* and *Lavender* Plaintiffs. ECF No. 84.

On August 11, 2017, all Defendants filed a Joint Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF Nos. 103-04, and Defendants Barclays Bank PLC, HSBC Bank PLC, HSBC Holdings PLC, Royal Bank of Scotland Group PLC, Societe Generale S.A., Standard Chartered Bank, The Bank of Tokyo Mitsubishi UFJ Ltd., and UBS AG filed a Motion to Dismiss for Lack of Personal Jurisdiction. ECF Nos. 105-107. On March 15, 2018, the Court granted Defendants' Rule 12(b)(6) motion, holding that the CCAC did not plausibly allege: (a) proximate cause, which is required for Plaintiffs' state-law claims as well as for antitrust standing and facts sufficient to satisfy the factors applicable under *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983), for the state law claims to which the Court determined those factors apply; (b) that Plaintiffs transacted and thus were injured in their home states, which is required to satisfy due process for Plaintiffs' state-law claims; and (c) a threat of future harm, which is required for Article III standing to bring an injunctive relief claim under the Sherman Act. ECF No. 136. In the same Order, the Court denied the 12(b)(1) Motion as moot. *Id.* The Court further ordered that Plaintiffs could file a motion for leave to file a proposed amended complaint. *Id.* Plaintiffs filed their Motion for Leave to File a Second Consolidated Class Action Complaint ("SCCAC") on April 5, 2018, addressing—and, Plaintiffs believe, satisfying—each of the issues identified by the Court through the addition of substantial detailed allegations and, in part, by incorporating statistical analyses of FX trading data and prices during the applicable class period. ECF Nos. 138, 139. That motion is now fully briefed and pending. *See* ECF Nos. 138, 139, 144, 146.

III.   **OVERVIEW OF THE SETTLEMENT NEGOTIATIONS AND SETTLEMENT TERMS**

Starting in December 2017, Plaintiffs engaged in extensive settlement discussions with Citigroup. Following the Parties' initial settlement discussion on December 22, 2017, the Parties engaged in further and extensive settlement discussions. Throughout those discussions, Class Counsel consulted with an industry expert, Dr. Carol Osler, to assist in evaluating the volume of retail FX transactions relative to the volume of spot FX transactions as a whole. After numerous negotiating sessions and counterproposals, the general elements of a settlement were reached in February 2018, at which point the parties started exchanging draft settlement agreements. The parties continued to engage in discussions and continued to exchange draft settlement agreements over the next several months. *See* Dell'Angelo Decl. at ¶¶ 9-10.

On August 2, 2018, after more than seven months of negotiations, the Parties reached a final agreement and executed the Settlement. At all times, the Parties vigorously negotiated their respective positions at arm's length. Plaintiffs were well-aware of the facts and issues concerning liability and damages, pending appeals and their relative strengths and weaknesses of each side's litigation position. Dell'Angelo Decl. at ¶ 9.

The Settlement is on behalf of eight statewide Classes defined as:

**New York Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in New York and/or while domiciled in New York, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator.

**Arizona Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in Arizona and/or while domiciled in Arizona, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator.

**California Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in California and/or while

domiciled in California, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator.

**Florida Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in Florida and/or while domiciled in Florida, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator.

**Illinois Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in Illinois and/or while domiciled in Illinois, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator.

**Massachusetts Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in Massachusetts and/or while domiciled in Massachusetts, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator.

**Minnesota Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in Minnesota and/or while domiciled in Minnesota, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator.

**North Carolina Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in North Carolina and/or while domiciled in North Carolina, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator.

Settlement at III, ¶¶ (a)(i)-(viii).[3] The "Class Period" is defined as the period of December 1,

2007 through the date the Court preliminarily approves the Settlement Agreement. Settlement at

---

[3] Excluded from each Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the each Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

II, ¶ (n). "FX Instrument" and "Direct Settlement Class" are defined in the Settlement as set forth in the Settlement at II, ¶¶ (bb) and (s), respectively.

The Settlement also obligates Citigroup to provide extensive cooperation with Plaintiffs, both to effectuate the terms of the Settlement and to assist Plaintiffs in the continued litigation against the Non-Settling Defendants. Settlement at XIV. The cooperation falls into four categories: attorney proffers, production of documents and data, authentication of documents, and providing witnesses to testify at trial. First, beginning within thirty days of the entry of a court order granting Preliminary Approval, Citigroup's Counsel will meet with Class Counsel at a mutually agreeable time and place to provide an attorney proffer concerning the facts and circumstances alleged in Plaintiffs' Complaint, including Citigroup's understanding of the expected testimony of former or current Citigroup employees. *Id.* at XIV, ¶ (c)(ii). Second, the Settlement requires Citigroup to provide Plaintiffs with all documents and transactional data that Citigroup has already produced in *FOREX*, as well as additional documents and data relevant to Plaintiffs' claims concerning retail FX transactions. *Id.* at XIV, ¶ (c)(iii). Third, Citigroup will provide declarations to authenticate documents that Plaintiffs may seek to introduce as evidence in this Action. *Id.* at XIV, ¶ (c)(vi). Finally, Citigroup is required to make witnesses available to testify at trial. *Id.*

In exchange for Citigroup's consideration, the Released Parties shall be released of any and all manner of claims "arising from or relating in any way to any conduct alleged or that could have been alleged in and arising from the factual predicate of the Action." *Id.* at II, ¶ (mm). The full text of the release provisions is set forth in the Settlement Agreement. *See* Settlement at II, at ¶ (mm).

## IV.   THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL

### A.   Legal Standards for Preliminary Approval

"Rule 23(e) requires court approval of a class action settlement." *In re Currency Conversion Fee Antitrust Litig.*, No. 01-MD-1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006). A court assesses a proposed class action settlement to determine whether it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "Preliminary approval is generally the first step in a two-step process before a class action settlement is approved." *In re Stock Exchs. Options Trading Antitrust Litig.,* No. 99-cv-0962-RCC, 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005). "In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice," and "[o]nce preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *NASDAQ II*, 176 F.R.D. at 102. "Because of the two-step process, a grant of preliminary approval is 'at most a determination that there is what might be termed "probable cause" to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-MD-2262-NRB, 2016 WL 7625708, at *2 (S.D.N.Y. Dec. 21, 2016) (citation omitted).

In conducting a preliminary approval inquiry, a court considers both the "'negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness.'" *In re Platinum and Palladium Commodities Litig.*, No. 10-cv-3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014). Preliminary approval is appropriate where the settlement "'is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious

deficiencies . . , and where the settlement appears to fall within the range of possible approval.'" *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010). Substantive factors favoring preliminary approval include whether the settlement provides "intangible benefits, including cooperation against non-settling defendants," *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-MD-2262-NRB, 2014 WL 6851096, at *2 (S.D.N.Y. Dec. 2, 2014), and grants the plaintiffs repose in the face of complex, uncertain litigation. *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 198 (S.D.N.Y. 2005).

Finally, while "[t]he decision to grant or deny such approval lies squarely within the discretion of the trial court," *In re PaineWebber Ltd. Pships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997), courts in this District recognize that "there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions," *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405-CM, 2015 WL 10847814, at *4 (S.D.N.Y. Sept. 9, 2015) (citation omitted). Settlements usually "advance the public interest because they minimize the expense of litigation, avoid the expenditure of judicial resources, and ensure injured parties' recoveries without the time, expense, and inconvenience of litigation." *Allen v. Dairy Farmers of Am., Inc.*, No. 09-cv-230, 2011 WL 1706778, at *2 (D. Vt. May 4, 2011). As demonstrated below, the proposed Settlement merits preliminary approval because it is both procedurally and substantively fair.

### B.   <u>The Proposed Settlement is Entitled to a Presumption of Fairness</u>

Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000). Moreover, in such circumstances, "'great weight' is accorded to

the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *PaineWebber*, 171 F.R.D. at 125.

Both of these aspects are present here. Class Counsel have the requisite class action and antitrust experience to lead this litigation on behalf the proposed Class, and Citigroup is represented by highly experienced and sophisticated counsel. The negotiations took place over the course of more than seven months, were at arm's-length, and Plaintiffs' counsel's negotiations were informed by the assistance of an industry expert, Dr. Carol Osler. *See* Dell'Angelo Decl. at ¶¶ 9-10. Therefore, the Settlement is entitled to "a strong initial presumption that the compromise is fair and reasonable." *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *see also*, Settlement at XVI, at ¶ (a).

While it is unnecessary to undertake "a full fairness analysis" at the preliminary approval stage, *Authors Guild v. Google, Inc*., No. 05-cv-8136-DC, 2009 WL 4434586, at * 1 (S.D.N.Y. Dec. l, 2009), courts often look to the nine factors announced in *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc*., 209 F.3d 43 (2d Cir. 2000), at the preliminary approval stage (the "*Grinnell* factors"). The *Grinnell* factors are as follows:

> (l) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted).

Not every factor must weigh in favor of settlement; rather, "the court should consider the totality of these factors in light of the particular circumstances." *In re Marsh ERISA Litig.*, 265

F.R.D. 128, 138 (S.D.N.Y. 2010) (citations and internal quotations omitted). As explained below, application of the *Grinnell* factors weighs in favor of this Court granting preliminary approval of the Settlement.[4]

For the reasons set forth below, each of the applicable *Grinnell* factors supports preliminary approval of the Settlement.

### 1.    The Complexity, Expense, and Likely Duration of the Litigation

Numerous courts have recognized that "'[f]ederal antitrust cases are complicated, lengthy, . . . , bitterly fought,' as well as costly." *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738-BMC, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012). Having overseen the related action *FOREX* over the past five years, this Court is well aware of the complexities and potential lengthiness of this case. Defendants' motions to dismiss may be followed by a lengthy discovery process, discovery and *Daubert* motions, a class certification motion, and summary judgment motions. If the Court denies Plaintiffs' pending motion to file the SCCAC, or if class certification is denied, Plaintiffs may subsequently appeal, which would add to the duration and expenses of the litigation.

Class Counsel have already incurred significant expenses, and given the large number of Defendants and the extensive timespan involved, the costs of continuing to litigate this Action will likely be substantial. *See generally In re Telik, Inc. Secs. Litig.*, 576 F. Supp. 2d 570, 577 (S.D.N.Y. 2008) ("The costs and duration of . . . conducting merits . . . discovery, conducting expert discovery, litigating a motion for summary judgment, preparing for trial, conducting the

---

[4] *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2014 WL 6851096, at *2 ("In this instance, we grant the motion for preliminary approval, as there are enough factors to suggest that the Proposed Settlement is viable. First, the Proposed Settlement is the result of arm's-length negotiations between counsel who have been involved in this litigation from the outset. Second, it is reasonable to expect that the [Plaintiffs] will benefit considerably from Barclays's cooperation in producing evidence to use against the many non-settling defendants. Third, to win an award without settling, the Plaintiffs must prove a factually complex case with genuine legal uncertainties.") (citation omitted).

trial itself, filing post-trial motions, and pursuing any appeals would vastly exceed the substantial time and money already spent."). Finally, the trial of this action after completion of discovery and other pretrial motions would be lengthy and difficult. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 222 (E.D.N.Y. 2013). "The losing parties would likely appeal any adverse jury verdicts, thereby extending the duration of litigation." *Payment Card Interchange Fee & Merch. Disc.*, 986 F. Supp. 2d at 222.

In short, because this Action is extremely complex and will require significant time and expense to litigate, the first *Grinnell* factor weighs in favor of granting preliminary approval.

### 2.      The Reaction of the Class to the Settlement

Because notice has yet to be provided to potential Class Members, courts generally do not consider this *Grinnell* factor at the preliminary approval stage. *See, e.g.*, *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006) ("Clearly, some of the[] [*Grinnell*] factors, particularly the reaction of the class to the settlement, are impossible to weigh prior to notice and a hearing."). Although analysis of this factor is premature, each of the representative Class Plaintiffs supports approval of this Settlement. Dell'Angelo Decl. at ¶ 11. In the event that objections are received after notice is disseminated, Class Counsel will address them in connection with the motion for final approval of the Settlement.

### 3.      The Stage of the Proceedings

"The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc. Securities and "ERISA" Litig.*, No. 02-cv-5575-SWK, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). Discovery need not be fully complete, or even underway, before a settlement can be approved. *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) ("The threshold necessary to render the decisions of

counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."). Rather, it is enough for the Parties to "have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the settlement." *AOL Time Warner*, 2006 WL 903236, at *10. Indeed, this Court previously granted preliminary approval to class settlements in *FOREX* despite the fact that merits discovery had not yet begun. *FOREX*, ECF No. 536.

A number of facts demonstrate that this *Grinnell* factor supports preliminary approval. First, in drafting the CCAC and proposed SCCAC, Class Counsel extensively investigated the alleged conspiracy and its effects, including reviewing all publicly available news articles, press releases and other reports; researching the applicable law with respect to the claims asserted in the Action and the potential defenses; and consulting with leading experts on the FX market. Dell'Angelo Decl. at ¶ 10. Second, although this Action has not yet reached the discovery stage, Class Counsel have been attending depositions that are ongoing in *FOREX*. Dell'Angelo Decl. at ¶ 12. The information gleaned from those depositions, as well as from the pleadings, motions, and court orders in *FOREX*, have helped Class Counsel to more accurately assess the potential damages at issue in this Action as well as the risks and likely defenses that Plaintiffs will face going forward. Third, Plaintiffs have undertaken extensive factual and legal analyses of the ample public reports and documents made available through the numerous governmental investigations into Defendants' FX-related conduct. Dell'Angelo Decl. at ¶ 12. Fourth, Plaintiffs engaged an economic expert as well as several statisticians to better understand the FX market and the potential harm inflicted on the Classes. Dell'Angelo Decl. at ¶ 10. Fifth, the settlement negotiations were accompanied by frank discussions of the relative strengths and weaknesses of the Parties' claims and defenses. Dell'Angelo Decl. at ¶ 9. The understanding gained through

these various endeavors have provided Plaintiffs with a comprehensive understanding of the relative strengths and weaknesses of their case that has enabled Plaintiffs to negotiate a settlement believed to be an excellent result for the Classes. *Id.* Therefore, the third *Grinnell* factor supports preliminary approval of the Settlement.

### 4.      The Risks of Establishing Liability and Damages

'"In assessing the Settlement, the Court should balance the benefits afforded the Class, including the *immediacy* and *certainty* of a recovery, against the continuing risks of litigation.'" *Payment Card Fee & Merch. Disc.*, 986 F. Supp. 2d at 222 (emphasis in original). Here, Plaintiffs face significant risks to proving liability due to, among other things, the complexity of the subject matter and the fact that Defendants can afford to litigate indefinitely.

Significantly, on March 15, 2018, less than a month after the Parties entered into a binding Memorandum of Understanding outlining the terms of the Settlement, the Court granted the Defendants' motion to dismiss the CCAC, while also granting leave for Plaintiffs to file a proposed SCCAC with an accompanying memorandum in support. ECF No. 136. Although Plaintiffs fully expect the Court to grant them leave to file the SCCAC, Plaintiffs still face the risks that one or more of the proposed Classes will not be certified, some or all of their claims will be dismissed on summary judgment, or Defendants will prevail at trial.

That Citigroup and the Non-Settling Defendants have significant financial resources to litigate this Action creates additional risk. Defendants are represented by some of the best law firms in the United States. Absent settlement, Citigroup could vigorously contest its liability and damages. Moreover, the Court has already granted a motion to dismiss Plaintiffs' claims— highlighting the risk of even having the opportunity to prove liability and damages. Assuming that Plaintiffs can establish Citigroup's liability at trial, "[t]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no

damages, or only negligible damages, at trial, or on appeal." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 ("*NASDAQ III*"). In sum, "[t]here is a substantial risk that the plaintiff might not be able to establish liability at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away." *Cardiology Assocs., P.C. Pension Plan v. Nat'l Intergroup, Inc.*, No. 85-cv-3048-JMW, 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987). Therefore, this factor strongly supports granting preliminary approval.

### 5.     The Risks of Maintaining the Class Action Through Trial

As discussed above, Plaintiffs will need to overcome numerous hurdles before the Action proceeds to trial, including, most immediately, obtaining a Court order permitting Plaintiffs to file the SCCAC, and defeating Defendants' motions to dismiss the SCCAC. Following the pleading stage and discovery, Plaintiffs will be required to succeed in their motion for class certification, and to defeat any *Daubert* motions and motions for summary judgment from Defendants. Even if class certification is granted, Defendants may later seek to decertify the Classes or modify the Class definitions prior to trial. *See Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07-cv-2207-JGK, 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) ("There is no assurance of obtaining class certification through trial, because a court can re-evaluate the appropriateness of certification at anytime during the proceedings."). Interlocutory appeals would add further uncertainty to the Action. *See, e.g.*, *Comcast Corp. v. Behrend*, 569 U.S. 27, 29 (2013) (reversing class certification in an antitrust case at an interlocutory stage based on an inadequate damages model). A jury verdict in favor of either side would likely be followed by appeals. Accordingly, the fifth *Grinnell* factor weighs in favor of preliminary approval.

### 6.    <u>The Ability of Defendants to Withstand a Greater Judgment</u>

There is no evidence that Citigroup could not withstand a greater judgment than provided for by the Settlement. However, courts consistently hold that the ability of Defendants to pay more than the Settlement amount is not a sufficient reason by itself to decline preliminary approval of a Settlement. *See In re IMAX Secs. Litig.*, 283 F.R.D. at 191 ("[T]his factor, standing alone, is not sufficient to preclude a finding of substantive fairness where the other factors weigh heavily in favor of approving a settlement."); *In re Citigroup Inc.*, 296 F.R.D. 147, 157 (approving a settlement with Citigroup, despite the fact that "Citigroup could likely withstand a greater judgment"). Moreover, "the benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment." *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008). Citigroup's cooperation obligations include, subject to Court orders and applicable law, producing transactional data, producing all documents previously turned over to U.S. and European governmental bodies investigating misconduct in the FX market, providing information and witnesses to authenticate documents, and providing witnesses for interviews, depositions, and trial testimony relating to the existence, scope, and implementation of the conspiracy. Settlement at XIV, at ¶ (c)(ii)-(vii).

Given the extent of the cooperation to be provided by Citigroup, the fact that the Settlement has been secured so early in the case, and that the Settlement amount provides a substantial benefit to the Classes, this factor weighs in favor of preliminary approval.

### 7.    <u>The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation</u>

The last two *Grinnell* factors "recognize[] the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to

completion." *Wal-Mart Stores*, 396 F.3d at 119 (citation omitted). In applying these factors, "[t]he adequacy of the amount achieved in settlement may not be judged 'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *In re IMAX Secs. Litig.*, 283 F.R.D. at 191 (citation omitted; *see also NASDAQ III*, 187 F.R.D. at 478 ("Ultimately, the exact amount of damages need not be adjudicated for purposes of settlement approval."). Consequently, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2. Continuing this litigation against Citigroup would, as stated above, leave Plaintiffs with no guarantee of securing any recovery. These risks are arguably dispositive for the final two *Grinnell* factors. *See In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) ("[T]he propriety of a given settlement amount is a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery (or reduced recovery).").

In contrast, the Settlement provides the Classes cash compensation ($9.95 million) and substantial cooperation. Settlement at X, at ¶ (b), XIV, at ¶¶ (a)-(c). The fact that the cash component will be paid in the near future further weighs in favor of approval. *See AOL Time Warner*, 2006 WL 903236, at *13 (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery"). Particularly at this stage in the litigation, Citigroup's cooperation is very valuable to the Classes. Citigroup will provide attorney proffers, transactional data, documents and testimony that will assist Plaintiffs in their continued litigation against the non-settling Defendants. Settlement at XIV, at ¶ (c)(ii)-(vi). The Citigroup cooperation provisions strongly weigh in favor of preliminary approval.

16

Moreover, the Citigroup Settlement is the first settlement in this Action—often referred to as an "icebreaker settlement"—whereas several Defendants had already entered into settlement agreements when the parties in *FOREX* announced their Citigroup settlement. Such settlements add value because they can "'break the ice' and bring other defendants to the point of serious negotiations." *Linerboard*, 292 F. Supp. 2d at 643. And whereas the Settlement here was reached prior to the Court ruling on Defendants' motions to dismiss, the *FOREX* Citigroup settlement was finalized months after the Court had denied all motions to dismiss. *FOREX* ECF Nos. 242, 479. Furthermore, while not easily quantifiable, the Settlement's cooperation provisions are likewise extremely valuable to Plaintiffs and the proposed Classes. Citigroup's cooperation obligations begin immediately after the Court grants preliminary approval. Settlement at XIV, at ¶ (a). The cooperation provisions of the Settlement should also be considered when determining whether the Settlement is within the range of reasonableness.[5] The fact that Citigroup's cooperation comes relatively early in the case greatly enhances its value to the proposed Classes. It will also assist Plaintiffs in prosecuting the Action against the Non-Settling Defendants. In sum, each of the relevant *Grinnell* factors weighs in favor of this Court granting preliminary approval.

## V.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

In accordance with the Settlement, Plaintiffs respectfully request that the Court certify the New York, Arizona, California, Florida, Illinois, Massachusetts, Minnesota, and North Carolina Classes defined above for settlement purposes.

---

[5] *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) ("The provision of [cooperation] is a substantial benefit to the classes and strongly militates toward approval of the Settlement Agreement."); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *10 (E.D. Mich. Feb. 22, 2011) (cooperation "has already been beneficial to the Plaintiffs in their continued prosecution of their claims against the non-settling Defendants").

Certification of a settlement class is appropriate where that class meets all of the requirements of Rule 23(a) as well as one of the requirements of Rule 23(b). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997). When certification of a settlement class is sought, "courts must take a liberal rather than a restrictive approach." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 158 (E.D.N.Y. 2009). For the reasons set forth below, all requirements for certification of the Settlement Classes are readily satisfied here.

### A.   <u>Plaintiffs Satisfy the Rule 23(a) Requirements</u>

In *Amchem*, the Supreme Court set forth the parameters of the Rule 23(a) inquiry:

> Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical . . . of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

521 U.S. at 613.

### 1.   <u>Numerosity</u>

Numerosity is presumed where a class consists of 40 or more members. *See generally Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs' Counsel estimate that there at least hundreds, more likely thousands, of Class Members in each Class. Dell'Angelo Decl. at ¶ 13. Accordingly, the numerosity requirement is easily met here.

### 2.   <u>Commonality</u>

To satisfy commonality, Class Members' claims must depend on a common contention that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "'Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a

common question."' *Johnson v. Nextel Communs Inc.*, 780 F.3d 128, 137-38 (2d Cir. 2015) (citation omitted). It thus "is not the law" that "a common question must be common to every class member." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-MD-2262-NRB, 2016 WL 2851333, at *1 (S.D.N.Y. May 13, 2016) (citing *Johnson*, 780 F.3d at 137).

Here, the overarching question is whether Defendants conspired to fix prices in the FX market. "Proof of the alleged conspiracy is the heart of this case, and is crucial to the claims of all members of the class. Each of the putative class members has a common interest in proving the existence, scope, effectiveness and impact of that conspiracy, as well as the appropriate injunctive and monetary relief to remedy the injury caused by the conspiracy." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 510 (S.D.N.Y. 1996) ("*NASDAQ I*"). Thus, the commonality requirement is satisfied on the basis of that common question alone. Additionally, Plaintiffs' claims present numerous other common issues of law and fact, including: the identities of the participants of the alleged conspiracy; the duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy; whether the alleged conduct of Defendants and their co-conspirators caused injury to Plaintiffs and the members of the Classes; the effects of the alleged conspiracy on the prices of FX Instruments sold during the Class Period; the appropriate measure of damages to Plaintiffs and the Classes; whether Plaintiffs and the members of the Classes had any reason to know or suspect the conspiracy, or any means to discover the conspiracy; whether Defendants and their co-conspirators fraudulently concealed the existence of the conspiracy from Plaintiffs and the members of the Classes; and the appropriate injunctive and related equitable relief for the Classes. Thus, the commonality requirement is satisfied.

### 3.     <u>Typicality</u>

"Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007) (citation and internal quotations omitted). Small differences do not defeat typicality, "[r]ather, a plaintiff fails to meet Rule 23(a)'s typicality requirement if its claims are 'subject to unique defenses which threaten to become the focus of the litigation.'" *In re IMAX Secs. Litig.*, 272 F.R.D. 138, 147 (S.D.N.Y. 2010) (citation omitted).

Plaintiffs and the Class Members all assert the same antitrust claim that arises from the Defendants' unlawful conspiracy to manipulate prices on FX Instruments, and the injury resulting from that conduct. For each Class, the proposed Class Representative's claims are the same as the claims of all members of their respective Class. To the extent that differences exist as to the facts relevant to the claim of each Class Member or the damages suffered by each potential Class Member, such disparities do not preclude a finding of typicality. *See Labbate-D'Alauro v. GC Servs. Ltd. Pship.*, 168 F.R.D. 451, 456-57 (E.D.N.Y. 1996). Thus, the typicality requirement is satisfied.

### 4.     <u>Adequacy</u>

"'The adequacy requirement is satisfied where: (l) there is no conflict between the proposed lead plaintiff and the members of the class; (2) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) class counsel is qualified, experienced, and generally able to conduct the litigation.'" *Atwood v. Intercept Pharm., Inc.*, 299 F.R.D. 414, 416-17 (S.D.N.Y. 2014) (citation omitted). "A conflict 'between named parties and the class they seek to represent' will be sufficient to defeat class certification

20

only if the conflict is 'fundamental.'" *Langan v. Johnson & Johnson Consumer Cos.*, No. 13-cv-1470-JAM, 2017 WL 985640, at *12 (D. Conn. Mar. 13, 2017) (citation omitted). No fundamental conflict exists between the Class Representatives and members of the Classes here because the Class Representatives hold the same damages claims as the members of the Classes that they seek to represent. Plaintiffs have already effectively represented the interests of the proposed Classes by selecting qualified Class Counsel, and by regularly communicating with Class Counsel regarding developments in the litigation and the terms of the Settlement. Neither Plaintiffs nor Class Counsel have any interests antagonistic to those of the proposed Classes. Therefore, the adequacy of representation requirement is satisfied.

### B.      Plaintiffs Satisfy the Rule 23(b)(3) Requirements

In addition to satisfying all of the criteria of Rule 23(a), a party seeking class certification must also satisfy one of the requirements of Rule 23(b). *See Larsen v. JBC Legal Grp., P.C.*, 235 F.R.D. 191, 196 (E.D.N.Y. 2006). Certification of a class under Rule 23(b)(3) requires that: (i) common issues predominate over individual issues; and (ii) the class action mechanism be superior to other methods of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). For the reasons described below, both requirements are met here.

#### 1.      Predominance

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (citation omitted). "In short, the

question for certifying a Rule 23(b)(3) class is whether 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof' and whether 'these particular issues are more substantial than the issues subject only to individualized proof.'" *Johnson*, 780 F.3d at 139 (citation omitted).

The common questions discussed above, namely the question of whether Defendants conspired to manipulate FX prices in violation of the antitrust laws, overwhelmingly predominate any individual issues that may arise in this Action. Plaintiffs' antitrust claims are identical to the claims of the members of their respective Classes, and their claims will succeed or fail based on the same theories of liability, causation, impact, and damages. It is well-established that "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001), *overruled on other grounds by In re Initial Pub. Offering Sec. Litig.*, 471 F. 3d 24, 42 (2d Cir. 2006).

Therefore, the predominance requirement is clearly met for the Settlement Classes.[6]

### 2.   Superiority

Rule 23(b)(3) identifies four factors to be considered in determining whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy":

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

---

[6] *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."); *NASDAQ I*, 169 F.R.D. at 518 ("Since a single conspiracy is alleged, the relevant proof of this will not vary among class members, and clearly presents a common question fundamental to all class members."); *In re Master Key Antitrust Litig.*, 70 F.R.D. 23, 26 (D. Conn. 1975) (characterizing question of the existence of a conspiracy as "the central and common element of these cases").

Fed. R. Civ. P. 23(b)(3)(A)-(D). Importantly, courts considering motions to certify settlement classes need not consider the fourth factor.[7]

All three of the relevant superiority factors weigh in favor of granting preliminary approval here. The interests of members of the Classes in individually controlling the prosecution of separate actions are minimal because the costs and expenses of individual actions, when weighed against the individual recoveries potentially obtainable, would be prohibitive.

With respect to the second factor, although *FOREX* concerns the same price-fixing Conspiracy as this Action, there are no other suits pending against Defendants that include the claims of members of the Classes or any other indirect purchasers of FX Instruments. Regarding the third factor, Plaintiffs have shown a desire to focus the litigation in this Court by filing the action in the Southern District of New York and by designating this case as related to *FOREX*, thereby allowing the Court to oversee both related actions. The Court is thoroughly familiar with the facts and legal issues of the case, having presided over *FOREX* for more than five years and having overseen Defendants' motions to dismiss and Plaintiffs' motion to file an amended complaint in this Action. Finally, as noted above, courts certifying a settlement class do not need to consider the fourth superiority factor, which focuses on the manageability of a class action. Therefore, all three relevant factors favor a finding that a class action is superior to other methods of adjudicating the claims of the Class Members. Accordingly, the superiority requirement is satisfied and Plaintiffs have satisfied the requirements for certification of the proposed Settlement Classes.

---

[7] *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial.").

C.     **The Court Should Appoint Class Counsel as Settlement Class Counsel**

Under Rule 23(g), a court that certifies a class must appoint class counsel who is charged with fairly and adequately representing the interests of the class. *See* Fed. R. Civ. P. 23(g)(l). In determining class counsel, the Court must consider: (l) the work undertaken by counsel in identifying or investigating the potential claims; (2) counsel's experience in handling class actions, other complex litigation, and similar claims; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(l)(A). Plaintiffs' Counsel, Berger & Montague, P.C., readily meet these requirements. Berger & Montague, P.C. initiated this litigation along with its co-counsel, McCulley McCluer PLLC, Peiffer Wolf Carr & Kane APLC, and Schneider Wallace Cottrell Konecky Wotkyns LLP.[8] As set forth in detail in their firm resume (Dell'Angelo Decl. Ex. B), Berger & Montague, P.C. is widely recognized as among the country's top antitrust litigation firms, having practiced in the field for more than three decades, and led some of the most successful antitrust cases of all time. Accordingly, Plaintiffs respectfully request that Berger & Montague, P.C. be appointed as Settlement Class Counsel.

VI.     **PLAINTIFFS WILL FILE A SEPARATE MOTION FOR APPROVAL OF A NOTICE PLAN AND PLAN OF DISTRIBUTION**

Plaintiffs are committed to the distribution of the Net Settlement Fund in a reasonable and equitable fashion to members of the Classes.[9] However, because discovery in this Action has not yet begun, Plaintiffs have not yet received the necessary data and customer lists that

---

[8] Co-counsel McCulley McCluer PLLC, Peiffer Wolf Carr & Kane APLC, and Schneider Wallace Cottrell Konecky Wotkyns LLP also each have extensive experience litigating antitrust class actions. *See* Dell'Angelo Dec. Ex. C (McCulley McCluer PLLC resume); *Id.* Ex. D (Peiffer Wolf Carr & Kane APLC resume); *Id.* Ex. E (Schneider Wallace Cottrell Konecky Wotkyns LLP resume).

[9] "Net Settlement Fund" is defined in the Settlement as the balance of the Settlement Fund, net of any Court-approved administrative and notice expenses, attorneys' fees and expenses, and tax expenses. Settlement at X, at ¶ (c)(iv).

Plaintiffs presently believe will be required to determine the identities and relevant transactions of the members of the Classes, all of which are necessary for Class Counsel to develop a Notice Plan and Plan of Distribution. Moreover, in the event that Plaintiffs reach settlement agreements with additional Defendants at a later date, a single distribution of all settlement funds will be much more efficient and less costly than issuing notice and distributing funds for each individual settlement.

As such, Plaintiffs respectfully propose to file a separate Motion for Approval of the Plan of Distribution and Form and Manner of Notice of the Settlement Agreement at a later date. At that time, Class Counsel will recommend to the Court a proposed Plan of Distribution and Notice Plan. Plaintiffs anticipate filing this motion as soon as practicable after receiving the information from Defendants and third-party Retail Foreign Exchange Dealers.

As a practical matter, that means the notice and claim form that will issue to Class Members will include a description of the case, the terms of the settlement, and the mechanism and plan of distribution, sufficient for Class Members to intelligently and meaningfully participate, object, opt out, or otherwise comment on the settlement while avoiding confusion caused by multiple rounds of notice. Other courts have permitted this course of action in similarly complex cases, including this Court following the initial settlement in *FOREX*.[10] Plaintiffs respectfully request that the Court approve the same procedure here.

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request the Court grant their motion for preliminary approval of the Settlement.

---

[10] *See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2015 WL 9952596, at *3 (preliminarily approving a settlement with a separate notice procedure nearly identical to the procedure proposed here); *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-cv-42-JG, 2013 WL 4525323, at *5 (E.D.N.Y. Aug. 27, 2013) (preliminarily approving the first ten partial settlements prior to formulating or proposing any plan of distribution).

Dated: August 21, 2018      Respectfully submitted,

              /s/ Michael Dell'Angelo
              Michael Dell'Angelo
              Joshua T. Ripley
              **BERGER & MONTAGUE, P.C.**
              1622 Locust Street
              Philadelphia, PA 19103
              Tel: (215) 875-3000
              Fax: (215) 875-4604
              mdellangelo@bm.net
              jripley@bm.net

              Garrett W. Wotkyns
              **SCHNEIDER WALLACE COTTRELL**
              **KONECKY WOTKYNS LLP**
              8501 North Scottsdale Road, Suite 270
              Scottsdale, AZ 85253
              Tel: (480) 428-0142
              Fax: (866) 505-8036
              gwotkyns@schneiderwallace.com

              Joseph C. Peiffer
              **PEIFFER ROSCA WOLF ABDULLAH**
              **CARR & KANE LLP**
              201 St. Charles Ave. Suite 4610
              New Orleans, LA 70170
              Tel: (504) 523-2434
              Fax: (504) 523-2464
              jpeiffer@prwlegal.com

              R. Bryant McCulley
              Stuart McCluer
              **MCCULLEY MCCLUER PLLC**
              1022 Carolina Boulevard, Suite 300
              Charleston, SC 29451
              Tel: (855) 467-0451
              Fax: (662) 368-1506
              bmcculley@mcculleymccluer.com
              smccluer@mcculleymccluer.com

              *Counsel for Plaintiffs and the Proposed Classes*