SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408
*Execution Copy*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES CONTANT, SANDRA LAVENDER, VICTOR HERNANDEZ, MARTIN-HAN TRAN, FX PRIMUS LTD., CARLOS GONZALEZ, UGNIUS MATKUS, CHARLES G. HITCHCOCK III, JERRY JACOBSON, TINA PORTER, and PAUL VERMILLION, on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A.; MERRILL LYNCH, PIERCE, FENNER & SMITH INC.; THE BANK OF TOKYO MITSUBISHI UFJ LTD.; BARCLAYS BANK PLC; BARCLAYS CAPITAL INC.; BNP PARIBAS GROUP; BNP PARIBAS NORTH AMERICA, INC.; BNP PARIBAS SECURITIES CORP.; BNP PARIBAS PRIME BROKERAGE, INC.; CITIGROUP INC.; CITIBANK, N.A.; CITICORP; CITIGROUP GLOBAL MARKETS INC.; CREDIT SUISSE GROUP AG; CREDIT SUISSE AG; CREDIT SUISSE SECURITIES (USA) LLC; DEUTSCHE BANK AG; DEUTSCHE BANK SECURITIES INC.; THE GOLDMAN SACHS GROUP, INC.; GOLDMAN, SACHS & CO.; HSBC HOLDINGS PLC; HSBC BANK PLC; HSBC NORTH AMERICA HOLDINGS, INC.; HSBC BANK USA, N.A.; HSBC SECURITIES (USA) INC.; JPMORGAN CHASE & CO.; JPMORGAN CHASE BANK, N.A.; MORGAN STANLEY; MORGAN STANLEY & CO., LLC; MORGAN STANLEY & CO. INTERNATIONAL PLC; RBC CAPITAL MARKETS LLC; ROYAL BANK OF SCOTLAND GROUP PLC; RBS SECURITIES INC.; SOCIÉTÉ GÉNÉRALE S.A.; STANDARD CHARTERED BANK; UBS AG; UBS GROUP AG; and UBS SECURITIES LLC;<br>Defendants. | Civil Action No. 1:17-cv-03139-LGS<br><br><br>STIPULATION AND AGREEMENT OF SETTLEMENT WITH CITIGROUP INC., CITIBANK, N.A., CITICORP, AND CITIGROUP GLOBAL MARKETS INC. |

**SETTLEMENT COMMUNICATION**
**SUBJECT TO FEDERAL RULE OF EVIDENCE 408**
*Execution Copy*

## I.    <u>RECITALS</u>

This Stipulation and Agreement of Settlement ("Settlement Agreement") is made and entered into on August 2, 2018 ("Execution Date"), between Class Plaintiffs (as defined herein) for themselves individually and on behalf of each Class Member in the Action (as defined herein), and Defendants Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc. (collectively, "Citigroup"), by and through Class Counsel and Citigroup's Counsel. This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims, upon and subject to the terms and conditions hereof.

WHEREAS, on June 30, 2017, Class Plaintiffs filed the Consolidated Amended Class Action Complaint;

WHEREAS, Class Plaintiffs are prosecuting the Action on their own behalf and on behalf of the Classes against Defendants, including Citigroup;

WHEREAS, Class Plaintiffs have alleged, among other things, that Citigroup participated in an unlawful conspiracy to restrain trade, pursuant to which Citigroup and its alleged co-conspirators, including the other Defendants, as well as unnamed co-conspirators, agreed, among other things, to fix prices in the foreign exchange ("FX") market in violation of the Sherman Act, 15 U.S.C. §1, *et seq.* and the antitrust and consumer protection laws of New York, Arizona, California, Florida, Illinois, Massachusetts, Minnesota, and North Carolina;

WHEREAS, Class Plaintiffs have contended that they and the Classes are entitled to actual damages, treble damages, and injunctive relief for loss or damage, and threatened loss or damage, as a result of violations of the laws as alleged in the Consolidated Amended Class Action Complaint, arising from Citigroup's (and the other Defendants') alleged conduct;

SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408
*Execution Copy*

WHEREAS, Citigroup has denied and continues to deny each and all of the claims and allegations of wrongdoing made by Class Plaintiffs in the Action and all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action;

WHEREAS, on March 5, 2018, Class Counsel and Citigroup's Counsel executed a Binding Memorandum of Understanding agreeing to the settlement terms as set forth in detail below;

WHEREAS, Class Plaintiffs, for themselves individually and on behalf of each Class Member, and Citigroup agree that neither this Settlement Agreement nor any statement made in negotiation thereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Citigroup or of the truth of any of the claims or allegations alleged in the Action;

WHEREAS, Class Counsel concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the Action, the legal and factual defenses thereto, and the applicable law, that: (1) it is in the best interests of the Classes to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein, including the value of the Settlement Amount to be paid by Citigroup under this Settlement Agreement and the cooperation to be provided to Class Plaintiffs by Citigroup under this Settlement Agreement, are obtained for the Classes; and (2) the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate and in the best interests of the Classes;

WHEREAS, Citigroup, while continuing to deny that it is liable for the claims asserted against it in the Action, has nevertheless agreed to enter into this Settlement Agreement to avoid the further risk, expense, inconvenience, and distraction of burdensome and protracted litigation,

SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408
*Execution Copy*

and thereby to put fully to rest this controversy, to avoid the risks inherent in complex litigation, and to obtain complete dismissal of the Consolidated Class Action Complaint as to Citigroup and a release of claims as set forth herein;

WHEREAS, this Settlement Agreement is the product of arm's-length negotiations between Class Counsel and Citigroup's Counsel, and this Settlement Agreement embodies all of the terms and conditions of the settlement agreed upon between Citigroup and Class Plaintiffs, both for themselves individually and on behalf of the Classes;

NOW, THEREFORE, in consideration of the covenants, terms, and releases in this Settlement Agreement, it is agreed, by and among Class Plaintiffs (for themselves individually and on behalf of the Classes and each member thereof) and Citigroup, by and through Class Counsel and Citigroup's Counsel, that, subject to the approval of the Court, the Action be settled, compromised, and dismissed with prejudice as to Citigroup and the other Released Parties only, without costs, except as stated herein, and releases be extended, as set forth in this Settlement Agreement.

## II.  <u>DEFINITIONS</u>

As used in this Settlement Agreement, the following capitalized terms have the meanings specified below:

(a)      "Action" means *Contant et al. v. Bank of America Corporation, et al.*, No. 1:17-cv-03139-LGS, which is currently pending in the United States District Court for the Southern District of New York, including all actions consolidated thereunder or that may be consolidated thereunder in the future.

(b)      "Alternative Judgment" means a Final Judgment and Order of Dismissal entered by the Court but in a form other than as proposed by Class Counsel and Citigroup.

SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408
*Execution Copy*

(c)      "Arizona Plaintiff" means Plaintiff Sandra Lavender.

(d)      "Authorized Claimant" means any Class Member who will be entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Distribution approved by the Court in accordance with the terms of the Settlement Agreement.

(e)      "California Plaintiffs" means Plaintiffs Victor Hernandez and Martin-Han Tran.

(f)      "Citigroup" means Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc.

(g)      "Citigroup's Claims" means claims that any Released Party may have against a Releasing Party or Class Counsel relating to the institution, prosecution, or settlement of the Action, except for claims to enforce any of the terms of this Settlement Agreement.

(h)      "Citigroup's Counsel" means Covington & Burling LLP.

(i)      "Claims Administrator" means the third party to be retained by Class Counsel and approved by the Court to manage and administer the process by which each member of a Class is notified of and paid pursuant to this Settlement Agreement.

(j)      "Classes" means, collectively, the "New York Class," "Arizona Class," "California Class," "Florida Class," "Illinois Class," "Massachusetts Class," "Minnesota Class," and "North Carolina Class".

(k)      "Class Counsel" means Berger & Montague, P.C., McCulley McCluer PLLC, Peiffer Rosca Wolf Abdullah Carr & Kane LLP, and Schneider Wallace Cottrell Konecky Wotkyns LLP.

(l)      "Class Member" means a Person who is a member of one of the Classes, as defined in paragraph II(j).

(m)     "Class Notice" means the notice plan created in consultation with the Claims Administrator to comply with the requirements of Fed. R. Civ. P. 23(c).

(n)     "Class Period" means the period of December 1, 2007 through the date the Court preliminarily approves the Settlement Agreement (inclusive).

(o)     "Class Plaintiffs" means James Contant, Sandra Lavender, Victor Hernandez, Martin-Han Tran, FX Primus Ltd., Carlos Gonzalez, Ugnius Matkus, Charles G. Hitchcock III, Jerry Jacobson, Tina Porter, and Paul Vermillion.

(p)     "Consolidated Class Action Complaint" or "CCAC" means the Consolidated Class Action Complaint filed in the Action on June 30, 2017 at ECF No. 84.

(q)     "Court" means the United States District Court for the Southern District of New York.

(r)     "Defendants" means Bank of America Corporation, Bank of America, N.A., and Merrill Lynch, Pierce, Fenner & Smith Inc. ("Bank of America"); Bank of Tokyo-Mitsubishi UFJ Ltd. ("BTMU"); Barclays Bank PLC and Barclays Capital Inc. ("Barclays"); BNP Paribas Group, BNP Paribas North America Inc., BNP Paribas Securities Corp., and BNP Prime Brokerage, Inc. ("BNP Paribas"); Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc. ("Citigroup"); Credit Suisse Group AG, Credit Suisse AG, and Credit Suisse Securities (USA) LLC ("Credit Suisse"); Deutsche Bank AG and Deutsche Bank Securities Inc. ("Deutsche Bank"); The Goldman Sachs Group, Inc. and Goldman, Sachs & Co. ("Goldman Sachs"); HSBC Holdings PLC, HSBC Bank PLC, HSBC North America Holdings Inc., HSBC Bank USA, N.A., and HSBC Securities (USA) Inc. ("HSBC"); JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. ("JPMorgan"); Morgan Stanley, Morgan Stanley & Co. LLC, and Morgan Stanley & Co. International plc ("Morgan Stanley"); RBC Capital Markets, LLC ("RBC");The Royal Bank of

SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408
*Execution Copy*

Scotland Group PLC and RBS Securities Inc. ("RBS"); Société Générale S.A. ("SocGen");

Standard Chartered Bank ("Standard Chartered"); and UBS AG, UBS Group AG, and UBS

Securities LLC ("UBS"); and any other Person or Persons who are named as defendants in the

Action at any time up to and including the date a Preliminary Approval Order is entered.

(s)     "Direct Settlement Class" refers to the class of direct purchasers who purchased an

FX Instrument directly from one or more Defendants or co-conspirators, which was granted

preliminarily class certification for settlement purposes in *FOREX*, ECF No. 536. The order

granting preliminary class certification, *id*., defines the Direct Settlement Class as (capitalized

terms below have the meanings specified in Citigroup's *FOREX* settlement, *FOREX* ECF No. 481-

3):

> All Persons who, between January 1, 2003 and the date of the Preliminary Approval Order,
> entered into an FX Instrument directly with a Defendant, a direct or indirect parent,
> subsidiary, or division of a Defendant, a Released Party, or co-conspirator where such
> Persons were either domiciled in the United States or its territories or, if domiciled outside
> the United States or its territories, transacted FX Instruments in the United States or its
> territories. Specifically excluded from the Direct Settlement Class are Defendants;
> Released Parties; co-conspirators; the officers, directors, or employees of any Defendant,
> Released Party, or co-conspirator; any entity in which any Defendant, Released Party, or
> co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign
> of any Defendant, Released Party, or co-conspirator and any person acting on their behalf;
> provided, however, that Investment Vehicles shall not be excluded from the definition of
> the Direct Settlement Class. Also excluded from the Direct Settlement Class are any
> judicial officer presiding over this action and the members of his/her immediate family and
> judicial staff, and any juror assigned to this Action.

(t)     "Escrow Agent" means Huntington National Bank.

(u)     "ESI" means electronically stored information in the same form as was produced

to the plaintiffs in *FOREX*.

(v)     "Execution Date" means the date of the execution of this Settlement Agreement

by counsel for all Parties thereto.

(w)    "Fairness Hearing" means the hearing to be held by the Court to determine whether the settlement set forth in this Settlement Agreement shall receive final approval pursuant to Fed. R. Civ. P. 23.

(x)    "Final Judgment and Order of Dismissal" means the order of the Court finally approving the settlement set forth in this Settlement Agreement and dismissing with prejudice the claims of Class Plaintiffs and Class Members against Citigroup.  The Final Judgment and Order of Dismissal shall become final when: (i) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (ii) an appeal has been filed and the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired. For purposes of this paragraph, an appeal includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other proceedings of like kind.

(y)    "Florida Plaintiffs" means Plaintiffs FX Primus Ltd. and Carlos Gonzalez.

(z)    "*FOREX*" means *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 1:13-cv-07789-LGS, which is currently pending in the United States District Court for the Southern District of New York.

(aa)    "FX Benchmark Rates" means (i) the WM/Reuters fixing rates, including the 4:00 p.m. London closing spot rate; (ii) the European Central Bank ("ECB") FX reference rates, including the ECB rate set at 1:15 p.m. London time; (iii) the Chicago Mercantile Exchange ("CME") daily settlement rates, including the rate set at 2:00 p.m. Central Time; and (iv) any other FX benchmark, fixing, or reference rate.

(bb)    "FX Instrument" means any FX spot, forward, swap, future, option, or any other FX transaction or instrument the trading or settlement value of which is related in any way to FX rates.

(cc)    "FX Trading" means the trading of FX Instruments, regardless of the manner in which such trading occurs or is undertaken, or a decision to withhold bids and offers with respect to FX Instruments.

(dd)    "Illinois Plaintiff" means Plaintiff Ugnius Matkus.

(ee)    "Massachusetts Plaintiff" means Plaintiff Charles G. Hitchcock III.

(ff)    "Minnesota Plaintiff" means Plaintiff Jerry Jacobson.

(gg)    "New York Plaintiff" means Plaintiff James Contant.

(hh)    "North Carolina Plaintiffs" means Plaintiffs Tina Porter and Paul Vermillion.

(ii)    "Parties" means Citigroup and Class Plaintiffs.

(jj)    "Person" means an individual or entity, and his, her, or its spouses, heirs, predecessors, successors, representatives, or assignees.

(kk)    "Plan of Distribution" means a plan or formula of allocation of the Net Settlement Fund whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of expenses of notice and administration of the settlement, taxes, and tax expenses, and such attorneys' fees, costs, expenses, interest, and other expenses as may be awarded by the Court. At a time and in a manner determined by the Court, Class Counsel shall submit for Court approval a Plan of Distribution for each of the Classes that will provide for the distribution of the applicable Net Settlement Fund.  Each Plan of Distribution shall be devised and implemented with the assistance of the Claims Administrator.

SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408
*Execution Copy*

(ll)    "Preliminary Approval Order" means an order of the Court that preliminarily approves the settlement set forth in this Settlement Agreement.

(mm)   "Released Claims" means any and all manner of claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, arising from or relating in any way to any conduct alleged or that could have been alleged in and arising from the factual predicate of the Action, or any amended complaint or pleading therein, from the beginning of time until the Effective Date, which shall be deemed to include but not be limited to all claims relating to: (i) communications related to FX Instruments, FX Trading, or FX Benchmark Rates, between a Released Party and any other FX dealer or any other participant in the conspiracy alleged in the Action through chat rooms, instant messages, email, or other means; (ii) agreements, arrangements, or understandings related to FX Instruments, FX Trading, or FX Benchmark Rates, between a Released Party and any other FX dealer or any other participant in the conspiracy alleged in the Action through chat rooms, instant messages, email, or other means; (iii) the sharing or exchange of customer information between a Released Party and any other FX dealer or any other participant in the conspiracy alleged in the Action— including but not limited to customer identity, trading patterns, transactions, net positions or orders, stop losses or barrier options, pricing, or spreads related to FX Instruments, FX Trading, or FX Benchmark Rates; (iv) the establishment, calculation, manipulation, or use of the

WM/Reuters fixing rates, including the 4:00 p.m. London closing spot rates, and trading that may impact such rates; (v) the establishment, calculation, manipulation, or use of the European Central Bank FX reference rates, including the ECB rate set at 1:15 p.m. London time; (vi) the establishment, calculation, manipulation, or use of the CME daily settlement rates; (vii) the establishment, calculation, or use of any other FX benchmarks, including benchmark fixing rates, benchmark settlement rates, or benchmark reference rates; (viii) the establishment, calculation, communication, manipulation, or use of the price, spread, or rate of any FX Instrument; and (ix) the exchange of customer information or confidential information in the possession of Citigroup. With respect to any and all Released Claims, the Parties stipulate and agree that, by operation of the Final Judgment and Order of Dismissal, upon the Effective Date, Releasing Parties shall have expressly waived and Class Members shall be deemed to have waived the provisions, rights, and benefits of Cal. Civ. Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

and any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542.

(nn)    "Released Party" or "Released Parties" means Citigroup and each of their past, present, and future, direct and indirect parents (including holding companies), subsidiaries, affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), divisions, predecessors, successors, and each of their respective officers,

directors, employees, agents, attorneys, legal or other representatives, trustees, heirs, executors, administrators, advisors, and assigns.  Released Parties do not include any of the other Defendants.

(oo)    "Releasing Parties" means individually and collectively Class Plaintiffs and each Class Member, on behalf of themselves and any of their respective past, present or future officers, directors, stockholders, agents, employees, legal or other representatives, partners, associates, trustees, beneficiaries, parents, subsidiaries, divisions, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, and assigns, whether or not they object to the settlement set forth in this Settlement Agreement, and whether or not they make a claim for payment from the Net Settlement Fund.

(pp)     "Settlement Agreement" means this Stipulation and Agreement of Settlement.

(qq)    "Settlement Amount" means $9,950,000.

III.    <u>**SETTLEMENT CLASSES**</u>

(a)    The Parties hereby stipulate solely for settlement purposes that the requirements of Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3) are satisfied, and subject to Court approval, the following settlement classes shall be certified as to Citigroup:

(i)    **New York Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in New York and/or while domiciled in New York, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the New York Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or

co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the New York Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

(ii)     **Arizona Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in Arizona and/or while domiciled in Arizona, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the Arizona Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the Arizona Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

(iii)     **California Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in California and/or while domiciled in California, by entering into an FX Instrument with a member of

the Direct Settlement Class, where the Direct Settlement Class member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the California Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the California Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

(iv)     **Florida Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in Florida and/or while domiciled in Florida, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the Florida Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the Florida Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser

were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

(v)     **Illinois Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in Illinois and/or while domiciled in Illinois, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the Illinois Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the Illinois Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

(vi)     **Massachusetts Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in Massachusetts and/or while domiciled in Massachusetts, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the Massachusetts Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or

co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the Massachusetts Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

(vii)   **Minnesota Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in Minnesota and/or while domiciled in Minnesota, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the Minnesota Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the Minnesota Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

(viii)   **North Carolina Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in North

Carolina and/or while domiciled in North Carolina, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the North Carolina Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the North Carolina Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

(b)     The Parties' agreement as to certification of the Classes is solely for purposes of effectuating a settlement and for no other purpose. Citigroup retains all of its objections, arguments, and defenses with respect to class certification, and reserves all rights to contest class certification, if the settlement set forth in this Settlement Agreement does not receive the Court's final approval, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the settlement set forth in this Settlement Agreement otherwise fails to become effective.  The Parties acknowledge that there has been no stipulation to any classes or certification of any classes for any purpose other than effectuating the settlement, and that if the settlement set forth in this Settlement Agreement does not receive the Court's final approval, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the settlement set forth in this Settlement

Agreement otherwise fails to become effective, this agreement as to certification of the Classes becomes null and void *ab initio*, and this Settlement Agreement or any other settlement-related statement may not be cited regarding certification of the Classes, or in support of an argument for certifying a class for any purpose related to this or any other proceeding.

## IV.   GOOD FAITH EFFORTS TO EFFECTUATE THIS SETTLEMENT AGREEMENT

The Parties agree to cooperate with one another in good faith to effectuate and implement the terms and conditions of this Settlement Agreement and to exercise their reasonable best efforts to accomplish the terms of this Settlement Agreement. This includes Citigroup serving notice on those entities required to receive notice pursuant to 28 U.S.C. §1715. In the event that the Parties are required under this Settlement Agreement to have a mediator resolve a dispute, the Parties shall agree upon a mediator.

## V.   PRELIMINARY APPROVAL

(a)   Within the later of ninety (90) days following the Execution Date or sixty (60) days after the receipt of the data required by paragraph V(c), page 19, or such later date agreed to by the Parties, Class Counsel shall submit to the Court, and Citigroup shall not oppose, a motion requesting entry of the Preliminary Approval Order. That motion shall:

(i)   seek certification of the Classes solely for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3);

(ii)   request preliminary approval of the settlement set forth in this Settlement Agreement as fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23;

(iii)   seek the appointment of New York Plaintiff as representative of the New York Class, California Plaintiffs as representatives of the California Class, Florida Plaintiffs as representatives of the Florida Class, Illinois Plaintiff as representative of the

Illinois Class, Massachusetts Plaintiff as representative of the Massachusetts Class, Minnesota Plaintiff as representative of the Minnesota Class, North Carolina Plaintiffs as representatives of the North Carolina Class, and Class Counsel as interim Lead Class Counsel for all Classes pursuant to Fed. R. Civ. P. 23(g);

(iv)    explain that Class Plaintiffs will submit a separate application, seeking approval of the form, and method of dissemination, of notice to the Classes, which shall apprise each member of a Class of his, her, or its right to exclude themselves from, or object to, the settlement;

(v)    seek appointment of a Claims Administrator;

(vi)    seek appointment of an Escrow Agent;

(vii)    stay all proceedings in the Action against Citigroup until the Court renders a final decision on approval of the settlement set forth in this Settlement Agreement; and

(viii)    attach a proposed form of order, which includes such provisions as are typical in such orders, including: (1) setting a date for the Fairness Hearing, and (2) a provision that, if final approval of the settlement is not obtained, the settlement is null and void, and the Parties will revert to their positions *ex ante* without prejudice to their rights, claims, or defenses.

(b)    Class Counsel, in consultation with the Claims Administrator, shall develop a Class Notice to apprise each member of a Class of his, her, or its right to exclude themselves from, or object to, the settlement.

(c)    Citigroup shall, at its own expense and as reasonably available to Citigroup and permissible by law, supply to Class Counsel in electronic format, or other such form as may be reasonably requested by Class Counsel and/or the Claims Administrator the names and contact

information of CitiFX Pulse Customers who, based on their current or former contact information, may be members of the Classes. Any information provided pursuant to this provision shall be covered by the protective order in effect in the Action, or, if no protective order is in effect, shall nevertheless be maintained as confidential. Moreover, any information provided pursuant to this provision shall be used solely the purposes of developing the motion for preliminary approval, developing the plan of allocation and distribution, developing and effectuating notice, administering and verifying claims, and prosecuting the Action, and for no other purposes whatsoever.

(d)     If preliminary approval of the Settlement Agreement is entered by the Court, Class Plaintiffs shall seek, and Citigroup shall support, entry of a Final Judgment and Order of Dismissal that:

(i)     certifies the Classes pursuant to Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3) solely for the purpose of the settlement;

(ii)     approves finally the settlement set forth in this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to Class Members within the meaning of Fed. R. Civ. P. 23 and directing its consummation according to its terms;

(iii)     finds that the Class Notice constituted due, adequate, and sufficient notice of the settlement set forth in this Settlement Agreement and the Fairness Hearing and meets the requirements of due process and the Federal Rules of Civil Procedure;

(iv)     directs that, as to the Released Parties, the Action shall be dismissed with prejudice and, except as provided for in this Settlement Agreement, without costs. Such dismissal shall not affect, in any way, the right of Class Plaintiffs or Class Members to pursue claims, if any, outside the scope of the Released Claims;

(v)     orders that the Releasing Parties are permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims against any Released Party;

(vi)    retains with the Court exclusive jurisdiction over the settlement and this Settlement Agreement, including the administration and consummation of the settlement; and

(vii)   determines under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directs that the judgment of dismissal as to Citigroup shall be final and entered forthwith.

## VI.   EFFECTIVE DATE OF SETTLEMENT

(a)     The "Effective Date" of Settlement shall be the date when all of the following events shall have occurred and shall be conditioned on the occurrence of all of the following events:

(i)     Citigroup's contributions to the Settlement Fund have been made pursuant to this Settlement Agreement;

(ii)    entry of the Preliminary Approval Order;

(iii)   entry of an order approving Class Notice;

(iv)    final approval by the Court of the settlement set forth in this Settlement Agreement, following Class Notice and the Fairness Hearing;

(v)     no Party has exercised his, her, or its rights to terminate this Settlement Agreement;

(vi)    entry by the Court of a Final Judgment and Order of Dismissal, and the Final Judgment and Order of Dismissal becomes final, or, in the event that the Court enters an

SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408
*Execution Copy*

Alternative Judgment and neither Class Plaintiffs nor Citigroup elects to terminate this Settlement Agreement, such Alternative Judgment becomes final.

(b)    Notwithstanding any other provision herein, any proceeding or order, or motion for reconsideration, appeal, petition for a writ of certiorari or its equivalent, pertaining solely to any Plan of Distribution and/or Fee and Expense Application, shall not in any way delay or preclude the Effective Date.

## VII.    **CLAIMS ADMINISTRATOR**

(a)    Pursuant to the Preliminary Approval Order, and subject to Court approval, Class Counsel, working with Citigroup's Counsel, shall engage a qualified Claims Administrator to assist with the settlement claims process as set forth herein.

(b)    The Claims Administrator shall, in consultation with Class Counsel: (i) effectuate the notice plan approved by the Court, (ii) administer and calculate the claims submitted by Class Members, and (iii) oversee distribution of the Net Settlement Fund to Authorized Claimants in accordance with the Plan of Distribution.  The Claims Administrator shall also be responsible, within five (5) business days of the deadline set by the Court for the filing of requests for exclusion, for supplying to Class Counsel and Citigroup's Counsel a complete list of Persons who have timely requested exclusion from the Classes. The Claims Administrator shall also supply Class Counsel and Citigroup's Counsel information it possesses relating to the calculation of the likely percentage of the Net Settlement Fund that the Persons who timely submitted requests for exclusion would have received had they not opted out of the Classes, including but not limited to the total volume of FX Trading within the Classes and by those who have requested exclusion from the Classes, the volume of FX Trading within the Classes and by those who requested exclusion from the Classes adjusted for discounts and multipliers applicable under the Plan of Distribution, and the

estimated recovery of those who requested exclusion had they remained in the Classes, to the extent such information is available. Citigroup shall have the right, at its own expense, to request information from the Claims Administrator to conduct a reasonable audit of all such information.

## VIII.   SCOPE AND EFFECT OF SETTLEMENT

(a)      The obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition of: (i) the Action against Citigroup; (ii) any and all Released Claims as against all Released Parties; and (iii) any and all of Citigroup's Claims as against all Releasing Parties.

(b)      Upon the Effective Date of settlement, each of the Releasing Parties: (i) shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal, shall have, fully, finally, and forever waived, released, relinquished, and discharged (1) all Released Claims against the Released Parties, regardless of whether such Releasing Party executes and delivers a proof of claim and release form, and (2) any rights to the protections afforded under California Civil Code § 1542 and/or any other similar, comparable, or equivalent laws; (ii) shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties; and (iii) agrees and covenants not to sue any of the Released Parties on the basis of any Released Claims or to assist any third party in commencing or maintaining any suit against any Released Party related in any way to any Released Claims.

(c)      Upon the Effective Date of settlement, each of the Released Parties: (i) shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have fully, finally, and forever released and discharged (1) Class Plaintiffs, Class Counsel, and each and all Class Members from each and every one of the Citigroup's Claims, and (2) any rights to the protections afforded under California Civil Code § 1542 and/or any other similar, comparable, or equivalent laws; (ii) shall forever be enjoined from prosecuting any of Citigroup's Claims; and

(iii) agrees and covenants not to sue on the basis of any of Citigroup's Claims, or to assist any third party in commencing or maintaining any such suit related to any of Citigroup's Claims.

(d)     The releases provided in this Settlement Agreement shall become effective immediately upon occurrence of the Effective Date without the need for any further action, notice, condition, or event.

(e)     As an express and material condition of this Settlement Agreement, the Court shall enter an order, in the Final Judgment and Order of Dismissal or otherwise, to the extent not prohibited by law, barring claims by any Person against the Released Parties for contribution or indemnification (however denominated) for all or a portion of any amounts paid or awarded in the Action by way of settlement, judgment, or otherwise.

(f)     If Class Plaintiffs reach one or more other settlements with other defendants in this Action (the "Other Settlements") prior to the dissemination of notice to members of the Classes concerning this settlement, the class definition, release, and termination provisions applied to the Citigroup shall be no less favorable than the corresponding provisions applicable to one or more of the Other Settlements.

## IX.    FEE AND EXPENSE APPLICATION

(a)     Class Counsel will submit an application or applications (the "Fee and Expense Application") to the Court for an award from the Settlement Fund of: (i) attorneys' fees; (ii) reimbursement of litigation expenses, plus interest, incurred in connection with the prosecution of the Action; and/or (iii) service awards for Class Plaintiffs in conjunction with their representation of the Classes. Citigroup will take no position regarding the Fee and Expense Application. Attorneys' fees, expenses, and interest as are awarded by the Court ("Fee and Expense Award")

to Class Counsel shall be paid from the Settlement Fund to Class Counsel on the date that is five

(5) business days following the Effective Date.

(b)     Notwithstanding any other provision of this Settlement Agreement to the contrary,

the Fee and Expense Application shall be considered by the Court separate and apart from its

consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or

proceeding relating to the Fee and Expense Application, or any appeal of any order relating thereto

or reversal or modification thereof, shall not operate to terminate or cancel this Settlement

Agreement or the settlement of the Action, or affect the finality or binding nature of any of the

releases granted hereunder. The Released Parties shall have no responsibility for, and no liability

whatsoever with respect to, any payment of attorneys' fees or expenses to Class Lead

Counsel.

## X.     THE SETTLEMENT FUND

(a)     The "Settlement Fund" shall be established as an escrow account to be maintained

and administered by the Escrow Agent, subject to approval by the Court. The Settlement Fund

shall be administered pursuant to this Settlement Agreement and subject to the Court's continuing

supervision and control. No monies shall be paid from the Settlement Fund without the specific

authorization of Class Counsel. Counsel for the Parties agree to cooperate, in good faith, to form

an appropriate escrow agreement in conformance with this Settlement Agreement.

(b)     Citigroup shall cause the Settlement Amount payment of $9,950,000 to be

transferred to the Escrow Agent within fifteen (15) business days following entry of the

Preliminary Approval Order, provided that within ten (10) days following entry of the Preliminary

Approval Order, Class Counsel shall provide Citigroup with such information as Citigroup may

require to complete the wire transfer. These funds, together with any interest earned thereon, shall

SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408
*Execution Copy*

constitute the Settlement Fund. Class Counsel may pay from the Settlement Fund, without further approval from Citigroup or the Court, the costs and expenses reasonably and actually incurred up to the sum of $100,000 in connection with preparing and distributing Class Notice and the administration of the settlement, including, without limitation, locating members of the Class, soliciting Class Members' claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, and processing proof of claim and release forms. All costs and expenses incurred in connection with providing Class Notice and the administration of the settlement in excess of $100,000 shall be paid from the Settlement Fund, subject to approval from the Court.

(c)     In the event that the court does not grant final approval, then the Settlement Amount, plus any accrued interest, shall be returned to Citigroup, less the amounts expended to give notice up to $100,000.

(a)     The Settlement Fund shall be invested exclusively in accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either: (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC"); or (b) secured by instruments backed by the full faith and credit of the United States Government. The proceeds of these accounts shall be reinvested in similar instruments at their then-current market rates as they mature. All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund.

(b)     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time

26

as such funds shall be distributed pursuant to this Settlement Agreement and the Plan of Distribution approved by the Court.

(c)     The Settlement Fund shall be applied as follows:

(i)     to pay the Fee and Expense Award, if and to the extent allowed by the Court;

(ii)     to pay all the costs and expenses reasonably and actually incurred in connection with providing Class Notice and the administration of the settlement, including, without limitation, locating members of the Classes, soliciting Class Members' claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, and processing proof of claim and release forms;

(iii)     to pay the Taxes and tax expenses described in paragraph (e) hereof;

(iv)     to pay any other Court-approved fees and expenses; and

(v)     to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Authorized Claimants for each Class as allowed by the Court pursuant to the Class Distribution Order.

(d)     With the object of reducing the costs of Class Notice, Class Counsel shall use their reasonable best efforts to coordinate the provision of Class Notice pertaining to this Settlement Agreement with the provision of notice for any Other Settlements that may be reached.

(e)     As set forth above, Citigroup shall be responsible for paying the total Settlement Amount of $9,950,000. Citigroup shall have no responsibility for any other costs, including, as further detailed in this Settlement Agreement, any attorneys' fees and expenses or any Taxes or tax-related costs relating to the Settlement Fund, but all such fees, expenses, and costs shall be paid from the Settlement Fund, as approved by the Court.

SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408
*Execution Copy*

## XI.    ADMINISTRATION OF THE SETTLEMENT

(a)    The Parties shall work together to select a Claims Administrator for Class Notice, allocation, distribution of funds, and other settlement administration responsibilities.  All fees and costs associated with Class Notice, allocation, distribution of funds, and other settlement administration costs incurred by the Claims Administrator shall be paid out of the Settlement Fund.

(b)    Any Class Member who does not submit a valid proof of claim and release form will not be entitled to receive any of the proceeds from the Net Settlement Fund, but will otherwise be bound by all of the terms of this Settlement Agreement and the settlement, including the terms of the Final Judgment and Order of Dismissal to be entered in the Action and the releases provided for herein, and will be barred from bringing any action or proceeding against the Released Parties concerning the Released Claims.

(c)    The Claims Administrator shall process this settlement based upon proofs of claim submitted in connection with the settlement, and, after entry of the Class Distribution Order, distribute the Net Settlement Fund in accordance with the Class Distribution Order. Except for their obligation to fund the settlement or cause it to be funded as detailed in this Settlement Agreement, Citigroup shall have no liability, obligation, or responsibility for the administration of the settlement or disbursement of the Net Settlement Fund. Class Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive what Class Counsel reasonably deems to be formal or technical defects in any proofs of claim submitted, including, without limitation, failure to submit a document by the submission deadline, in the interests of achieving substantial justice.

(d)    For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(i)        Each Class Member, at a time determined by the Court, shall be required to submit a proof of claim and release form (as shall be approved by the Court) which, *inter alia*, releases all Released Claims against all Released Parties, is signed under penalty of perjury by an authorized Person, and is supported by such documents or proof as Class Counsel and the Claims Administrator, in their discretion, may deem acceptable;

(ii)       All proofs of claim must be submitted by the date specified in the Preliminary Approval Order and the Notice Order, unless such period is extended by order of the Court. Any Class Member who fails to submit a proof of claim and release form by such date shall be forever barred from receiving any payment pursuant to this Settlement Agreement (unless, by order of the Court, a later submitted proof of claim and release form by such Class Member is approved), but shall in all other respects be bound by all of the terms of this Settlement Agreement and the settlement, including the terms of the Final Judgment and Order of Dismissal to be entered in the Action and the releases provided for herein, and will be barred from bringing any action or proceeding against the Released Parties concerning the Released Claims. Provided that it is received before the motion for the Class Distribution Order is filed, a proof of claim and release form shall be deemed to have been submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases, the proof of claim and release form shall be deemed to have been submitted when actually received by the Claims Administrator. Notwithstanding the foregoing, Class Counsel shall have the discretion, but not the obligation, to accept late-submitted claims for processing by the Claims Administrator so long as distribution of the

SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408
*Execution Copy*

proceeds of Settlement Funds is not materially delayed. Class Counsel shall have no liability for failing to accept any late-submitted claims;

(iii)    Each proof of claim and release form shall be submitted to and reviewed by the Claims Administrator who shall determine whether the proof of claim and release form is in accordance with this Settlement Agreement and any applicable orders of the Court, and the extent, if any, to which each claim shall be allowed, subject to review by the Court. The Claims Administrator will review each approved proof of claim and release form and determine, in accordance with the Plan of Distribution, the amount to be distributed to that claimant. The Released Parties shall not have any role in, or responsibility or liability to any Person for, the solicitation, review, or evaluation of proofs of claim;

(iv)    Proofs of claim that do not meet the submission requirements may be rejected. Prior to rejection of a proof of claim and release form, the Claims Administrator shall communicate with the claimant in order to remedy the curable deficiencies in the proofs of claim submitted. The Claims Administrator shall notify, in a timely fashion and in writing, all claimants whose proofs of claim it proposes to reject, in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected may seek review by the Court as provided below;

(v)    If any claimant whose claim has been rejected, in whole or in part, desires to contest such rejection, the claimant must, within twenty (20) days after the date of mailing of the notice required above, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation. If a dispute concerning a claim cannot be otherwise resolved, Class Counsel shall thereafter present the request for review to the Court; and

SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408
*Execution Copy*

(vi)    The administrative determinations of the Claims Administrator accepting and rejecting claims shall be presented to the Court, on notice to Citigroup's Counsel, for approval by the Court in the Class Distribution Order.

(e)    Each claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim, and the claim will be subject to investigation and discovery pursuant to the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that claimant's status as a Class Member and the validity and amount of the claimant's claim. No discovery shall be allowed to be directed to Citigroup or any of the Released Parties, and no discovery shall be allowed on the merits of the Action or settlement in connection with processing of the proofs of claim.

(f)    Payment pursuant to this Settlement Agreement and the Plan of Distribution shall be deemed final and conclusive against all Class Members. All Class Members whose claims are not approved shall be barred from any participation in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Settlement Agreement and the settlement, including the terms of the Final Judgment and Order of Dismissal to be entered in the Action and the releases provided for herein, and will be barred from bringing any action or proceeding against the Released Parties concerning the Released Claims.

(g)    All proceedings with respect to the administration, processing, and determination of claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court.

(h)    The Net Settlement Fund shall be distributed by the Claims Administrator to, or for the account of, Authorized Claimants, as the case may be, only after the Effective Date and after:

SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408
*Execution Copy*

(i) all timely claims have been processed and evaluated by the Claims Administrator, and, where requested, by the Settlement Administrator, and all claimants whose claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to be heard concerning such rejection or disallowance; (ii) all timely objections with respect to all rejected or disallowed claims have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired; (iii) all matters with respect to the Fee and Expense Application have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired; and (iv) all fees and costs of administration have been paid.

(i)     Class Counsel will apply to the Court for an order (the "Class Distribution Order") approving the Claims Administrator's determinations concerning the acceptance and rejection of the claims submitted herein and approving any fees and expenses not previously applied for, including the fees and expenses of the Claims Administrator, and, if the Effective Date has occurred, directing payment of the Net Settlement Fund to or for the account of Authorized Claimants, as the case may be.

(j)     Class Plaintiffs and Class Members shall look solely to the Settlement Fund as full, final, and complete satisfaction of all Released Claims. Except as set forth herein, Citigroup shall have no obligation under this Settlement Agreement or the settlement to pay or cause to be paid any amount of money, and Citigroup shall have no obligation to pay or reimburse any fees, expenses, costs, liability, losses, Taxes, or damages whatsoever alleged or incurred by Class Plaintiffs, by any Class Member, or by any Releasing Parties, including but not limited to by their attorneys, experts, advisors, agents, or representatives, with respect to the Action and Released Claims. Class Plaintiffs and Class Members acknowledge that as of the Effective Date, the releases

given herein shall become effective immediately by operation of the Final Judgment and Order of Dismissal and shall be permanent, absolute, and unconditional.

(k)     Citigroup shall not have a reversionary interest in the Net Settlement Fund. If there is a balance remaining in the Net Settlement Fund after six (6) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), or reasonably soon thereafter, the Claims Administrator shall, if logistically feasible and economically justifiable, reallocate such balances among Authorized Claimants in an equitable fashion. These redistributions shall be repeated until the remaining balance in the Net Settlement Fund is *de minimis* and such remaining balance shall be donated to an appropriate 501(c)(3) non-profit organization selected by Class Counsel, subject to Court approval.

## XII.   <u>TAXES</u>

(a)     The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation §1.468B-1, and agree not to take any position for Tax purposes inconsistent therewith. The Settlement Fund, less any amounts incurred for notice, administration, and/or Taxes (as defined below), plus any accrued interest thereon, shall be returned to Citigroup, as provided in paragraph XIII(c), if the settlement does not become effective for any reason, including by reason of a termination of this Settlement Agreement pursuant to paragraphs XIII(a) or XIII(b).

(b)     For the purpose of § 468B of the Code and the Treasury regulations thereunder, Class Counsel shall be designated as the "administrator" of the Settlement Fund. Class Counsel shall timely and properly file all income, informational, and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)). Such returns shall be consistent with this paragraph XII and in all

SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408
*Execution Copy*

events shall reflect that all Taxes (as defined below) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

(c)      All: (i) taxes or other similar imposts or charges (including any estimated taxes, interest, penalties, or additions to tax) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1 (or any relevant equivalent for state tax purposes); and (ii) other taxes or tax expenses imposed on or in connection with the Settlement Fund (collectively "Taxes"), shall promptly be paid out of the Settlement Fund by the Escrow Agent without prior order from the Court. The Escrow Agent shall also be obligated to, and shall be responsible for, withholding from distribution to Class Members any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes. The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

(d)      Neither the Parties nor their counsel shall have any responsibility for or liability whatsoever with respect to: (i) any act, omission, or determination of the Escrow Agent, Claims Administrator, or Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement Fund or otherwise; (ii) the Plan of Distribution; (iii) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (iv) any losses suffered by, or fluctuations in the value of, the Settlement Fund; or (v) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns. The Escrow

Agent shall indemnify and hold harmless the Parties out of the Settlement Fund from and against any claims, liabilities, or losses relating to the matters addressed in the preceding sentence.

## XIII.   <u>TERMINATION OF SETTLEMENT</u>

(a)      This settlement is contingent upon Court approval.  If the Court fails approve the settlement in any material respect, the settlement will be subject to termination by the party adversely affected by such failure. Notwithstanding this paragraph, the Court's determination as to the Fee and Expense Application and/or any Plan of Distribution, or any determination on appeal from any such order, shall not provide grounds for termination of this Settlement Agreement or settlement.

(b)      As set forth in VII(b) above, the Claims Administrator shall provide Class Counsel and Citigroup's Counsel a list of those persons, if any, who have filed a request to be excluded from the Classes, together with all such requests for exclusion, within five (5) business days of the deadline set by the Court for the filing of requests for exclusion.  Simultaneously herewith, the Parties are executing a supplemental agreement setting forth an opt-out threshold which provides Citigroup with the right to terminate the Settlement Agreement if the Persons requesting exclusion would have been eligible to receive, but for their exclusion, a material percentage of distributions from the Net Settlement Fund.  The Parties will keep the terms of the supplemental agreement confidential, except if compelled by judicial process to disclose the supplemental agreement.

(c)      Except as otherwise provided herein, in the event the Settlement Agreement is terminated in accordance herewith, is vacated, is not approved, or the Effective Date fails to occur for any reason, then the Parties to this Settlement Agreement shall be deemed to have reverted to their respective status in the Action as of March 5, 2018, and, except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement and any

related orders had not been entered, and any portion of the Settlement Fund previously paid by or on behalf of Citigroup, together with any interest earned thereon (and, if applicable, re-payment of any Fee and Expense Award, less Taxes due, if any, with respect to such income, and less costs of administration and notice actually incurred and paid or payable from the Settlement Fund (not to exceed $100,000 without the prior approval of the Court)) shall be returned to Citigroup within ten (10) business days from the date of the event causing such termination. At the request of Citigroup's Counsel, the Escrow Agent shall apply for any tax refund owed on the Settlement Fund and pay the proceeds to Citigroup.

(d)       No Party hereto or its counsel shall directly, or indirectly, solicit or encourage any Person to request exclusion from the Class.

## XIV.   CONFIRMATORY DISCOVERY AND COOPERATION OBLIGATIONS

(a)       In consideration for the dismissal of Class Plaintiffs' and the Class Members' claims against Citigroup in the Action and the release of the Released Claims, subject to any order from the Court, Citigroup agrees to provide reasonable cooperation, including confirmatory discovery, as provided below, to the benefit of Class Plaintiffs and the Class Members, relating to all forms and types of Released Claims, provided, however, that Citigroup's obligations with respect to cooperation, including the timing and substance of cooperation, shall be subject to such limitations as are ordered by the Court.

(b)       All cooperation and confirmatory discovery shall be coordinated in such a manner so that all unnecessary duplication and expense is avoided. Citigroup's cooperation obligations shall apply only to Releasing Parties who act with, by or through Class Counsel pursuant to this Settlement Agreement. Notwithstanding any other provision in this Settlement Agreement, with respect to the production of documents set forth in this section, Citigroup will produce such

documents only to the extent not prohibited by any order of the Court, or any law, regulation, policy, or other rule of any governmental body protecting disclosure.  In addition, Citigroup may assert, where applicable, the work-product doctrine, the attorney-client privilege, the common interest privilege, the joint defense privilege, the bank regulatory or examination privilege, obligations under applicable data privacy or bank secrecy laws or regulations, and/or any other applicable privilege or protection with respect to any documents, interviews, declarations and/or affidavits, depositions, testimony, material, and/or information requested under this Settlement Agreement. Notwithstanding the foregoing, Citigroup shall not withhold any documents and ESI from Class Plaintiffs that were produced by Citigroup to the plaintiffs in *FOREX*.  For any documents withheld from production of documents to Class Plaintiffs pursuant to this Settlement Agreement, if directed by a mediator, Citigroup shall create a privilege log describing withheld documents in sufficient detail so as to explain the nature of the privilege asserted or the basis of any law, regulation, policy, or other rule of any governmental body protecting disclosure of such documents. This privilege log shall be produced to Class Plaintiffs only upon direction of a mediator if a dispute arises, and after production of the privilege log, the Parties will make a good faith effort to resolve the dispute. In the event of a disagreement between Citigroup and Class Counsel regarding a claim of privilege or work product, the Parties will seek resolution of such disputes from a mediator, with Citigroup retaining the right to seek a ruling from the Court with respect to the applicability of privilege or work product. If any document protected by the attorney-client privilege, attorney work-product doctrine, the common interest doctrine, the joint defense privilege, the bank regulatory or examination privilege, and/or any other applicable privilege or protection, or by any law, regulation, policy, or other rule of any governmental body protecting disclosure of such documents is accidentally or inadvertently produced, the document shall

**SETTLEMENT COMMUNICATION**
**SUBJECT TO FEDERAL RULE OF EVIDENCE 408**
*Execution Copy*

promptly be returned to Citigroup, and its production shall in no way be construed to have waived any privilege or protection attached to such document. The confidentiality of any documents, declarations, affidavits, deposition testimony, and information provided to Class Plaintiffs pursuant to this provision shall be covered by the protective order in effect in the Action, or if no protective order is in effect, any such documents, declarations, affidavits, deposition testimony, and information shall be maintained as confidential and available only to Class Counsel and Citigroup's Counsel. None of the cooperation provisions are intended to, nor do they, waive any applicable privilege or protection. Citigroup's Counsel will meet with Class Counsel as is reasonably necessary to discuss any applicable domestic or foreign privilege or protection. The information provided by Citigroup's Counsel in connection with oral presentations may be utilized by Class Plaintiffs or Class Counsel to assist in the prosecution of the Action or any action related to any Released Claim, but not for the prosecution of any action or proceeding against any Released Party nor for any other purpose whatsoever. The Parties expressly agree that any use of the information provided in connection with the confirmatory discovery and cooperation obligations, including without limitation oral presentations, may be used directly or indirectly by Class Plaintiffs or Class Counsel solely in connection with the prosecution of the Action or any action related to any Released Claim, but not for the prosecution of any action or proceeding against any Released Party nor for any other purpose whatsoever. Such information may not be used in connection with the prosecution of any claims that are not Released Claims.

(c)     Subject to the foregoing paragraph, Citigroup will provide Class Plaintiffs and Class Members the following cooperation and confirmatory discovery but in all events limited to the subject matter of the Released Claims:

(i)      **Preliminary Approval:** Citigroup shall cooperate in connection with Class Counsel's preparation of the motion for preliminary approval and any related documents.

(ii)      **Proffer:** Beginning within thirty (30) days of the entry of the Preliminary Approval Order and following a request by Class Counsel, Citigroup's Counsel will meet with Class Counsel at a mutually agreeable time and place to provide an attorney proffer concerning the facts and circumstances alleged in the CCAC, which shall include, if requested by Class Plaintiffs, Citigroup's understanding of the expected testimony of former or current Citigroup employees concerning the facts and circumstances alleged in the CCAC.

(iii)      **Production of Transaction Data:** As soon as possible after the Execution Date, Citigroup shall produce to Plaintiffs the transactional data produced to counsel for the plaintiffs in *In Re Foreign Exchange Benchmark Antitrust Litigation*, Case No. 1:13-cv-07789 (S.D.N.Y.) ("FOREX"). *See In Re Foreign Exchange Benchmark Antitrust Litigation*, Case No. 1:13-cv-07789 ECF No. 481-1 at 42-52 (S.D.N.Y. Oct. 22, 2015). Citigroup will meet and confer with Plaintiffs about reasonably available additional data relevant to Plaintiffs' claims, including but not limited to transactional data in the possession, custody, or control of Citigroup from CitiFX Pulse relating to the Classes.

(iv)      **Production of Documents Produced to Governmental Bodies:** Within fifteen (15) business days after the Execution Date, Citigroup shall produce to Plaintiffs all documents and ESI that Citigroup produced to regulators that have been produced pursuant to Citigroup's settlement agreement in *FOREX* and all documents and ESI that have been produced to counsel for the plaintiffs in *FOREX* pursuant to Citigroup's settlement agreement in that action.

(v)      **Production of Additional Documents:** After the entry of the Preliminary Approval Order, while the Action or any action related to any Released Claims remains pending, at Class Counsel's written request and explanation, Citigroup will confer with Class Counsel in good faith concerning reasonable requests for the production of additional documents.

(vi)      **Cooperation Regarding Authentication:** With respect to any production of documents arising from Citigroup's obligations under this Settlement Agreement, Citigroup will cooperate in providing declarations to authenticate documents Plaintiffs may seek to introduce as evidence at proceedings in this matter. Citigroup shall also comply in good faith with its obligations to make witnesses available to testify at trial pursuant to any valid trial subpoenas issued by the Class Plaintiffs in accordance with the requirements of Rule 45 of the Federal Rules of Civil Procedure and any other applicable rules or orders.

(vii)      **Continuation, Scope, and Termination of Citigroup's Obligation:** Citigroup's obligations to cooperate under the Settlement Agreement are continuing until and shall terminate upon the earlier of: (X) the date when final judgment has been rendered, with no remaining rights of appeal, in the Action against all Defendants; or (Y) four (4) years after the Court enters the Preliminary Approval Order.

(d)      In the event of a disagreement between Citigroup and Class Counsel with respect to this paragraph, the Parties will seek resolution from a mediator if necessary.

## XV.   RESERVATION OF CLASS MEMBERS' RIGHTS AGAINST OTHER DEFENDANTS

All rights of any Class Member against other former, current, or future defendants or coconspirators, or any other Person other than the Released Parties, with respect to any of the Released Claims are specifically reserved by Class Plaintiffs and the Class Members. The

SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408
*Execution Copy*

purchase, sale, and trading of FX Instruments by Citigroup shall, to the extent permitted and/or authorized by law, remain in the case against the other current or future defendants in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against the other former, current, or future defendants in the Action or any other Persons other than the Released Parties.

## XVI.   <u>MISCELLANEOUS</u>

(a)      The Parties to this Settlement Agreement intend the settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Class Plaintiffs and/or any Class Member against the Released Parties with respect to the Action and the Released Claims. Accordingly, Class Plaintiffs and Citigroup agree not to assert in any judicial proceeding that the Action was brought by Class Plaintiffs or defended by Citigroup in bad faith or without a reasonable basis. The Parties further agree not to assert in any judicial proceeding that any Party violated Fed. R. Civ. P. 11. The Parties agree that the amount paid and the other terms of the settlement were negotiated at arm's-length in good faith by the Parties, and reflect a settlement that was reached voluntarily after extensive negotiations between experienced legal counsel.

(b)      The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

(c)      The administration and consummation of the settlement as embodied in this Settlement Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders relating to the Fee and Expense Application, the Plan of Distribution, and enforcing the terms of this Settlement Agreement.

SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408
*Execution Copy*

(d)     For the purpose of construing or interpreting this Settlement Agreement, Class Plaintiffs and Citigroup agree that it is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

(e)     This Settlement Agreement shall constitute the entire agreement between Class Plaintiffs and Citigroup pertaining to the settlement of the Action against Citigroup and supersedes any and all prior and contemporaneous undertakings of Class Plaintiffs and Citigroup in connection therewith. All terms of this Settlement Agreement are contractual and not mere recitals. The terms of this Settlement Agreement are and shall be binding upon each of the Parties hereto, their heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, and upon all other Persons claiming any interest in the subject matter hereto through any of the Parties hereto including any Class Members.

(f)     This Settlement Agreement may be modified or amended only by a writing executed by Class Plaintiffs, through Class Counsel, and Citigroup, through Citigroup's Counsel, subject (if after preliminary or final approval by the Court) to approval by the Court. Amendments and modifications may be made without notice to the Classes unless notice is required by law or by the Court.

(g)     Nothing in this Settlement Agreement constitutes an admission by Citigroup as to the merits of the allegations made in the Action, the validity of any defenses that could be asserted by Citigroup, or the appropriateness of certification of any class other than the Classes under Fed. R. Civ. P. 23 solely for settlement purposes. This Settlement Agreement is without prejudice to the rights of Citigroup to: (i) challenge the Court's certification of any class, including any of the Classes, in the Action should the Settlement Agreement not be approved or implemented for any

**SETTLEMENT COMMUNICATION**
**SUBJECT TO FEDERAL RULE OF EVIDENCE 408**
*Execution Copy*

reason; and/or (ii) oppose any certification or request for certification in any other proposed or certified class action.

(h)     All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of New York without regard to its choice-of-law principles.

(i)     Except as provided herein, Citigroup, Class Plaintiffs, their respective counsel, and the Class Members hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York, for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein.

(j)     This Settlement Agreement makes no determination as to which Class Members are entitled to distribution of the Settlement Fund, or as to the formula for determining the amounts to be distributed.

(k)     The proposed Plan of Distribution is not a necessary term of this Settlement Agreement and it is not a condition of this Settlement Agreement that any particular Plan of Distribution be approved. The Released Parties will take no position with respect to the proposed Plan of Distribution or such Plan of Distribution as may be approved by the Court. The Plan of Distribution is a matter separate and apart from the settlement between the Parties and any decision by the Court concerning a particular Plan of Distribution shall not affect the validity or finality of the proposed settlement, including the scope of the release.

(l)     This Settlement Agreement may be executed in counterparts by Class Plaintiffs and Citigroup, and a facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

(m)     Class Plaintiffs and Citigroup acknowledge that they have been represented by counsel and have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so. Therefore, Class Plaintiffs and Citigroup and their respective counsel agree that they will not seek to set aside any part of this Settlement Agreement on the grounds of mistake. Moreover, Class Plaintiffs and Citigroup and their respective counsel understand, agree, and expressly assume the risk that any fact may turn out hereinafter to be other than, different from, or contrary to the facts now known to them or believed by them to be true, and further agree that this Settlement Agreement shall be effective in all respects notwithstanding and shall not be subject to termination, modification, or rescission by reason of any such difference in facts.

(n)     Each of the undersigned attorneys represents that he is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement, subject to Court approval; and the undersigned Class Counsel represent that they are authorized to execute this Settlement Agreement on behalf of Class Plaintiffs. Each of the undersigned attorneys shall use their best efforts to effectuate this Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of the date first herein written above.

*On behalf of Class Plaintiffs and the Classes:*

DATED: _____, 2018

_____
Todd Schneider
Schneider Wallace Cottrell Konecky Wotkyns LLP
*Counsel for Plaintiffs*

SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408

*Execution Copy*

DATED: **August 2**, 2018

_____
Michael Dell'Angelo
Berger & Montague, P.C.
*Counsel for Plaintiffs*

DATED: _____, 2018

_____
Joseph Peiffer
Peiffer Rosca Wolf Abdullah
Carr & Kane, APLC
*Counsel for Plaintiffs*

DATED: *August 3*, 2018

_____
R. Bryant McCulley
McCulley McCluer PLLC
*Counsel for Plaintiffs*

*On behalf of Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc.:*

DATED: *August 2*, 2018

_____
Andrew Lazerow
Covington & Burling LLP
*Counsel for Citi Defendants*

SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408

*Execution Copy*

DATED: **August 2**, 2018  _____
Michael Dell'Angelo
Berger & Montague, P.C.
*Counsel for Plaintiffs*

DATED: **August 2**, 2018  _____
Joseph Peiffer
Peiffer Rosca Wolf Abdullah
Carr & Kane, APLC
*Counsel for Plaintiffs*

DATED: _____, 2018  _____
R. Bryant McCulley
McCulley McCluer PLLC
*Counsel for Plaintiffs*

*On behalf of Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc.:*

DATED: _August 2_, 2018  _____
Andrew Lazerow
Covington & Burling LLP
*Counsel for Citi Defendants*