1818 Market Street    |    Philadelphia, PA 19103    |    Phone: 215/875-3000    |    Fax: 215/875-4604    |    www.bergermontague.com



**VIA ECF**
Honorable Lorna G. Schofield
United States District Judge
Thurgood Marshall U.S. Courthouse,
40 Foley Square
New York, New York 10007

      RE:    *Contant, et al. v. Bank of America Corporation, et al.*, No. 17-cv-3139

Dear Judge Schofield:

      Counsel for Plaintiffs in the above-referenced action ("Plaintiffs") respectfully submit this letter in response to the Court's order dated September 12, 2018. ECF No. 160.

      The federally regulated bank exemption of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") states that FDUTPA "does not apply to . . . Banks, credit unions, and savings and loan associations regulated by federal agencies." Fla. Stat. § 501.212 (the "FDUTPA exemption").[1] The legislative history of FDUTPA, Florida's statutory definition of a "bank," and courts interpreting FDUTPA's exemption them confirm that the exemption only applies to national banks regulated by a federal banking regulator, a category into which only the three National Bank Defendants fall.[2] The remaining Defendant entities do not qualify for the FDUTPA exemption.[3] The text of the statute makes clear that FDUTPA "shall be construed liberally to promote" the policy of protecting "the consuming public . . . from those who engage

---

[1] Florida courts hold that even when an entity is a federally chartered bank that is regulated by a federal banking agency, in order for the FDUTPA exemption to apply, the conduct at issue must be subject to regulation by a federal banking regulatory body. *See* ECF No. 117 at 26-28 at 26-28 (citing cases). However, because only Defendants Bank of America, N.A.; HSBC Bank USA, N.A.; and JPMorgan Chase Bank, N.A. (collectively, the "National Bank Defendants") are "banks" under the FDUTPA, the analysis of which Defendants' activities, if any, are subject to which regulators is unnecessary.

[2] *See* Memorandum of Law in Support of Defendants' Motion to Dismiss, ECF No. 104 (the "MTD Brief") at 26 n.17 (conceding that only those Defendants are national banks regulated by the Office of the Comptroller of the Currency ("OCC")). Five additional Defendant entities— JPMorgan Chase & Co., Bank of America Corporation, Morgan Stanley, The Goldman Sachs Group, Inc., and HSBC North America Holdings Inc. (collectively, the "Bank Holding Company Defendants")— are regulated by another federal banking regulator, the Federal Reserve. *See* Federal Reserve National Information Center, *Holding Companies with Assets Greater Than $10 Billion*, available at https://www.ffiec.gov/nicpubweb/nicweb/ HCSGreaterThan10B.aspx (last visited Sep. 20, 2018). Defendants incorrectly represented in their MTD Brief that a number of other Defendants are "regulated by" the Federal Reserve because they are "supervised" by or have previously submitted documents to the Federal Reserve. *See* MTD Brief at 26 n.17. Supervision is not the same as regulation. As the Federal Reserve explains, "[r]egulation and supervision are distinct, but complementary, activities." *See* The Federal Reserve System, *Purposes and Functions* (2016), *available at* https://www.federalreserve.gov/aboutthefed/ files/ pf_complete.pdf (last visited Sep. 20, 2018), at 74. Regardless, because those entities are not "banks" within the meaning of FDUTPA, they not exempt.

[3] The question of whether a particular entity is a regulated bank within the meaning of the FDUTPA exemption is a fact-specific inquiry that must be conducted for each of the 34 Defendant entities. The fact that one Defendant is a national bank does not mean that the subsidiary and affiliated entities of that Defendant entity are also national banks. *See, e.g.*, *Office of the Attorney Gen., Dep't of Legal Affairs v. Commerce Commercial Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. Dist. Ct. App. 2007) ("It is quite a leap . . . to suggest that, just because an entity is a *subsidiary* of a bank, it is necessarily exempt from [FDUTPA]." (emphasis in original)).

in unfair methods of competition," *Mack v. Bristol-Myers Squibb Co.*, 673 So. 2d 100, 103 (Fla. Dist. Ct. App. 1996) (quoting Fla. Stat. § 501.202), and the Court should reject Defendants' attempts to expand the exemption to cover entities that are neither banks nor regulated by federal banking regulators.

FDUTPA, as enacted in 1973, exempted banks and savings and loan associations regulated by the *state* banking regulator.[4] In 1979, the Florida legislature added the federal bank exemption, amending FDUTPA to exempt certain federally regulated banks and savings and loan associations.[5] Florida law provides that "[t]he term 'bank' means a bank holding company . . . or a bank or trust company ***incorporated and doing business under the laws of the United States*** (including laws relating to the District of Columbia), of any state, or of any territory, ***a substantial part of the business of which consists of receiving deposits and making loans and discounts or of exercising fiduciary powers similar to those permitted to national banks under authority of the Comptroller of the Currency*** . . ." Fla. Stat. § 220.62(1) (emphasis added). That definition encompasses both state-chartered banks, which fall under the state bank FDUTPA exemption, Fla. Stat. § 501.212(4)(b), and federally-chartered, or "national banks," covered by the parallel federal bank exemption, Fla. Stat. § 501.212(4)(c). The definition excludes entities that are not incorporated in the U.S., which disqualifies a number of Defendants.[6] Florida laws explicitly distinguish "banks" from "investment companies." *See* Fla. Stat. § 663.065.[7] Therefore, any Defendant that does not meet the Florida statutory definition of "bank" is not exempt from FDUTPA. Here, only the National Bank Defendants meet that definition.

The overwhelming majority of Florida courts interpreting the FDUTPA exemption have limited it to national banks. For example, in *Brown v. Capital One Bank (USA), N.A.*, the court interpreted FDUTPA's reference to federally regulated banks to mean "national banks," and cited Black's Law Dictionary for the proposition that "national banks" are limited to entities that "use the term 'national,' 'national bank,' or 'national association' as part of [their] name[s]." No. 15-cv-60590, 2015 WL 12712062, at *2 (S.D. Fla. June 19, 2015) (citation omitted).[8]

---

[4] *See* Ron Tennyson, *The Deceptive and Unfair Trade Practices Act: A New Approach To Trade Regulation in Florida*, 2 FLA. ST. U. L. REV. 223 (1974), at 223, 232.

[5] FLORIDA HOUSE OF REPRESENTATIVES COMMITTEE ON COMMERCE, STAFF SUMMARY AND ANALYSIS, HB 625 & 1352 (1979), *available at* http://fall.fsulawrc.com/collection/FL_leg_hist/leg_hist_Laws_of_FL_79-386.pdf https://ir.law.fsu.edu/cgi/viewcontent.cgi?article=1732&context=lr (last visited Sep. 20, 2018).

[6] The definition of "bank" under Fla. Stat. § 220.62 also includes international banking corporations operating in Florida pursuant to Chapter 663 of Florida's banking laws. *See* Fla. Stat. § 220.62(1). No Defendant fits the definition and they have not argued otherwise. The Defendants incorporated outside of the U.S. are Bank of Tokyo-Mitsubishi UFJ Ltd.; BNP Paribas Group; Credit Suisse Group AG; Credit Suisse AG; Deutsche Bank AG; HSBC Holdings PLC; HSBC Bank PLC; Morgan Stanley & Co. International plc; The Royal Bank of Scotland Group PLC; Société Générale S.A.; Standard Chartered Bank; UBS AG; and UBS Group AG. *See* Consolidated Class Action Complaint, ECF No. 84, at 11-17.

[7] *See* 1978 Florida Laws c. 78-299. Importantly, when FDUTPA was passed in 1973, and when the federal bank exemption was added in 1979, banks and bank holding companies were prohibited from engaging in investment activities under the Glass-Steagall Act of 1932. *See, e.g.*, *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 29 (2007). Those prohibitions remained until the passage of the 1999 Gramm-Leach-Bliley Act, which allowed financial companies to simultaneously engage in banking and investment operations. *Id*. The 1979 Florida legislature that adopted the FDUTPA exemption therefore could not have interpreted "bank" to include entities that engaged in investment operations because federal law prohibited such an arrangement. Accordingly, the legislative history of FDUTPA confirms that the federal bank exemption was intended to be limited to national banks, which excludes all Defendants other than the three National Bank Defendants.

[8] *See also Bowen v. Wells Fargo Bank, N.A.*, No. 11-cv-91, 2011 WL 3627320, at *6 (M.D. Fla. Aug. 17, 2011) ("Wells Fargo states that it is a national bank, however the status of Wells Fargo as an FDIC insured bank cannot be

Defendants concede that only the National Bank Defendants "use the term 'national,' 'national bank,' or 'national association' as part of [their] name[s]," *Brown*, 2015 WL 12712062, at *2, and that the remaining Defendants do not. *See* MTD Brief at 26 n.17. Accordingly, the FDUTPA exemption does not apply to the remaining Defendants.[9] Indeed, Defendants have admitted that at least some Defendant entities are not "bank[s] regulated by at least one federal agency" as required to qualify for the FDUTPA exemption. *See* MTD Brief at 26. Although Defendants did not specify which entities are not banks and which are not regulated by at least one federal agency, it is clear that not all Defendants are subject to the exemption. For the reasons set forth herein, only the National Bank Defendants meet the statutory requirements of the exemption.

Finally, although Florida's statutory definition of "bank" includes a provision for "bank holding companies," the definition requires that such companies devote "a substantial part of the[ir] business" to commercial banking activities like "receiving deposits and making loans" to qualify as "banks." Fla. Stat. § 220.62(1). No Bank Holding Company Defendant appears to meet this definition. Although a definitive factual determination of whether any of the Bank Holding Company Defendants meet that requirement would require information that Defendants will produce in discovery, it appears from Defendants' own financial filings that they are primarily engaged in investment activities rather than commercial banking operations.[10]

In conclusion, applying the FDUTPA exemption to the non-National Bank Defendants would confer sweeping immunity from any FDUTPA claim on any financial company that simply labels itself a "bank" and is subject to the regulations or oversight of any federal agency, regardless of whether the entity falls within Florida's statutory definition of a bank or within the intended statutory meaning. Adopting such a rule would be unprecedented and in any event is not the result that the Florida legislature intended. With the exception of the National Bank Defendants, Defendants are not "banks" as defined by Florida law. A number of Defendants are not even incorporated in the U.S., as required under Florida law to qualify as a bank. Therefore, if the Court is inclined to resolve this issue at the pleading stage,[11] it should find that the FDUTPA exemption applies only to the National Bank Defendants. The Court should decline to apply the exemption to any other Defendant that is not a federally regulated bank within the meaning of the statute.

---

determined by a review of the allegations in the [complaint] alone."); *Porciello v. Bank of Am., N.A.*, No. 14-cv-1511, 2015 WL 899942, at *8 (M.D. Fla. Mar. 3, 2015) (noting that the exemption applies to "National banks").

[9] All of the FDUTPA cases cited by Defendants in the MTD Brief involved claims against national bank defendants that were regulated by the OCC and the FDIC. *See* MTD Brief at 25-26 (citing cases).

[10] *See* Morgan Stanley, Annual Report (Form 10-K), at 35 (Feb. 27, 2018) (indicating zero net revenues from commercial banking in 2017); The Goldman Sachs Group, Inc, Annual Report (Form 10-K), at 183 (Feb. 23, 2018) (same); JPMorgan Chase & Co., Annual Report (Form 10-K), at 56 (Feb. 27, 2018) (commercial banking accounted for less than 10% of total net revenues in 2017); Bank of America Corporation, Annual Report (Form 10-K), at 21, 31 (Feb. 22, 2018) (commercial banking accounted for a minority of total net revenues in 2017). Plaintiffs were unable to locate similar business records for HSBC North America Holdings Inc. and will therefore need to obtain that information in discovery.

[11] Because the determination of which entities are national banks regulated by federal banking authorities requires extensive factual inquiry beyond the pleadings, courts faced with this issue at the pleading stage typically hold that the determination of whether a particular entity falls within the FDUTPA exemption is "better addressed on a more fully developed record." *Christie v. Bank of Am., N.A.*, No. 13-cv-1371, 2014 WL 5285987, at *4 (M.D. Fla. Oct. 15, 2014) (holding that issue of whether defendant was a regulated bank exempted under FDUTPA could not be resolved through a motion to dismiss); *see also Renfrow v. First Mortg. Am., Inc.*, No. 08-cv-80233, 2011 WL 2416247, at *1 (S.D. Fla. June 13, 2011) (same); *Bowen*, 2011 WL 3627320, at *6 (same); *Acciard v. Whitney*, No. 07-cv-476, 2008 WL 5120898, at *5 (M.D. Fla. Dec. 4, 2008) (same).

Dated:  September 21, 2018	Respectfully submitted,

*/s/ Michael Dell'Angelo*
Michael Dell'Angelo
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-3000

*Counsel for Plaintiffs and the Proposed Classes*

4