November 8, 2018

The Honorable Lorna G. Schofield
United States District Court
for the Southern District of New York
40 Foley Square
New York, NY 10007

      RE:  *Contant, et al. v. Bank of America Corporation, et al.*, 1:17-cv-03139

Dear Judge Schofield:

      Pursuant to the Court's October 29, 2018 Order in the above-captioned action, the parties jointly submit this letter and enclosed Proposed Civil Case Management Plan and Scheduling Order.

**(1)     A brief description of any (i) motions that any party seeks or intends to file, including the principal legal and other grounds in support of and opposition to the motion, (ii) pending motions and (iii) other applications that are expected to be made at the status conference;**

      <u>Joint Statement</u>:  The parties agree to a proposed schedule for Plaintiffs' filing of a Second Consolidated Class Action Complaint ("SCCAC") consistent with the Court's Order dated October 25, 2018 and for any Rule 12 motion in response to the SCCAC, as set forth in section 14 of the proposed case management order.  The parties also agree that the stay of discovery currently in place pursuant to the Court's August 8, 2017 Order, ECF No. 102, should be lifted as to Plaintiffs and the Defendants who do not file a motion pursuant to Rule 12 in response to the SCCAC ("Non-Moving Defendants"), and that Non-Moving Defendants shall produce all documents and recordings produced in discovery to plaintiffs in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-cv-7789 ("*FOREX*"), subject to a protective order substantially in the form entered in *FOREX*, as the parties may agree and submit to the Court for signing, as well as transactional data for spot FX Instrument transactions between Defendants and entities identified by Plaintiffs as retail foreign exchange dealers.[1]

      <u>Plaintiffs' Statement</u>: As in *Nypl*, Defendants should be ordered to produce the documents and recordings that they have already produced in *FOREX* within 30 days from the entry of a protective order as discussed above. As set forth in Paragraph 8(b) of the proposed Case Management Order, Defendants should also produce, within 30 days from the entry of a protective order, documents identifying all entities eligible for membership in the *FOREX* direct settlement class.

      Plaintiffs anticipate that they will serve document requests that are specifically related to this Action, as well as interrogatories, requests for admission, and subpoenas for the productions of documents by third parties, when and as authorized by this Court. Defendants in Paragraph

---

[1] The parties will meet and confer on the timing and format for the production of transactional data. With respect to any production in *FOREX* that occurred pursuant to the Hague Convention on the Taking of Evidence Abroad, the parties propose that in the interests of efficiency, those productions should be produced to Plaintiffs in this Action by the plaintiffs in *FOREX*. The parties will jointly propose a Court order to that effect.

8(b) of the Proposed Case Management Order ask the Court to allow them to take full discovery of all Plaintiffs but suggest that Defendants should not be required to produce any discovery materials other than the documents that have already been produced in *FOREX* and the limited data production described above. This Action will require substantial discovery beyond that which has already taken place in *FOREX*, including but not limited to requests for Defendant documents specific to this Action that were not produced in *FOREX*, deposition testimony concerning Defendants' sales to retail foreign exchange dealers, and transactional data productions from both Defendants and third parties. Defendants acknowledge in their Statement below that discovery materials related to the spot FX Instruments that are at issue in the SCCAC include documents and data that were "not previously searched, reviewed or produced" and will therefore not be included in any prior *FOREX* productions.

Additionally, because the entities eligible for membership in the *FOREX* direct settlement class include the entities that purchased FX Instruments from Defendants and resold those FX Instruments to Plaintiffs and members of the proposed Classes here, the identities of those settlement class members are highly relevant to this Action. Paradoxically, Defendants note in footnote 3 below that "it is incumbent upon plaintiffs" to identify all *FOREX* settlement class members with whom members of the proposed Classes transacted, but Defendants refuse to provide the documents necessary for Plaintiffs to do so. Allowing Defendants to take full discovery of Plaintiffs while severely limiting Plaintiffs' ability to take necessary discovery of Defendants would prejudice Plaintiffs and needlessly delay the litigation, and Defendants' requests to do so should be denied.

Defendants' Statement:  Defendants do not oppose lifting the discovery stay with respect to Non-Moving Defendants, but note that discovery from certain Defendants remains subject to restrictions at the request of the U.S. Department of Justice.  *See FOREX*, ECF No. 1121. Defendants further agree that (1) Non-Moving Defendants shall produce all documents and recordings, excluding transactional data, produced in discovery to plaintiffs in *FOREX*; and (2) Plaintiffs' and Defendants' production of documents pursuant to this Order shall be subject to a protective order, substantially in the form entered in FOREX, as the parties may agree and submit to the Court for signing. The Non-Moving Defendants shall produce all documents in (1) above within the later of (i) 30 days from the entry of the protective order contemplated in (2) or (ii) January 11, 2019.

The Defendants do not agree to the production of all documents and transactional data related to spot FX Instruments as alleged in the SCCAC at this time, as doing so would require production of documents and data not previously searched, reviewed or produced, and because the request for such documents will be capable of being substantially narrowed upon identification by Plaintiffs of the Retail Dealers with whom they and the putative class members transacted.

**(2)    A brief description of any discovery that has already taken place, and any discovery that is likely to be admissible under the Federal Rules of Evidence and material to proof of claims and defenses raised in the pleadings. (This is narrower than the general scope of discovery stated in Rule 26(b)(1));**

Plaintiffs' Statement: In light of the pending stay of discovery (*Contant* ECF No. 102), Plaintiffs have not engaged in any discovery specific to this case. Although Plaintiffs attended and received exhibits for certain depositions pursuant to the Court's August 8, 2017 Order permitting Plaintiffs to participate in discovery on a limited basis in conjunction with *FOREX*

(*Contant* ECF No. 102), Plaintiffs were not authorized to ask questions or to participate substantively in any way.

Plaintiffs agree that depositions of Defendant witnesses should be coordinated with the *FOREX* and *Nypl* actions. However, pursuant to the Court's Order dated August 8, 2017, Plaintiffs have been barred from taking witness testimony relating to issues in the *Contant* case or receiving documents for all depositions that have already taken place in those actions, *see* ECF No. 102, and Plaintiffs have not had the opportunity to prepare for the depositions that are currently scheduled to take place in the upcoming weeks. If Plaintiffs do not obtain all relevant documents sufficiently in advance of future depositions—including documents relevant to this Action that were not produced in *FOREX*—Plaintiffs will not be able to meaningfully participate. Accordingly, subject to a review of the existing transcripts, Plaintiffs may conduct their own separate depositions of Defendant witnesses whose depositions in the *FOREX* action took place without Plaintiffs in this Action being allowed to participate, as well as depositions of any Defendant witness for which relevant documents are produced to Plaintiffs in this Action after their *FOREX* deposition has already taken place.

As noted by Defendants below, significant third-party discovery will also likely be necessary, including discovery of confidential transactional data. As noted in Plaintiffs' Statement in Section 1 above, Defendants' suggestion that Plaintiffs should be barred from receiving taking any discovery beyond what has already been produced in *FOREX* and the limited data production described above "until Plaintiffs have received and reviewed" the *FOREX* documents would needlessly delay the litigation and should be rejected. If Defendants wish to make the discovery process more efficient and avoid duplicative discovery, they could provide Plaintiffs with a high-level description of the categories, time periods, custodians, and sources that are included in the *FOREX* productions; doing so would enable Plaintiffs to craft supplemental discovery requests for materials that are relevant to this Action that were not included in the *FOREX* productions without the need to conduct a linear review of the more than 1.3 million documents contained in those productions.

<u>Defendants' Statement</u>:  Defendants have not engaged in any discovery specific to this case. To avoid duplication, Defendants ask that depositions of their current and former employees be coordinated with the *FOREX* and *Nypl* actions, and possibly also with the FX opt-out action filed on November 7, 2018 (*Allianz et al. v. Bank of America Corp. et al.*, No. 18-cv-10364). Defendants do not object to Plaintiffs participating in certain depositions scheduled in *FOREX*[2] and any depositions that may be scheduled in *Nypl*, but ask that any repeat deposition of a witness previously deposed in *FOREX* be permitted only upon a showing of prejudice from Plaintiffs' inability to participate in the prior deposition. Defendants do not object to Plaintiffs accessing deposition transcripts and the exhibits thereto for depositions previously conducted in *FOREX*.

Discovery of Plaintiffs is expected to include, at a minimum, identification of Retail Dealers with whom members of the putative class transacted and where named Plaintiffs resided at the time of each transaction, production of all trading records and all communications with

---

[2] Defendants are willing to meet and confer with Plaintiffs and counsel for witnesses with respect to any upcoming depositions in *FOREX* that have been scheduled pursuant to the Hague Convention on the Taking of Evidence Abroad, but Defendants reserve their right to require Plaintiffs to follow Hague Convention procedures to obtain or participate in depositions of these witnesses.

Retail Dealers, and all materials relied upon by Dr. Carol L. Osler in preparing the report submitted in connection with Plaintiffs' motion for leave to amend.

Discovery of third parties will also be essential.  Once Plaintiffs have identified the Retail Dealers from which putative class members purchased spot FX Instruments (which Defendants believe Plaintiffs should do promptly), discovery of those entities is necessary to determine whether their pricing is consistent with the allegations in the SCCAC and Dr. Osler's report, and whether those entities have the records necessary to trace transactions as asserted by Plaintiffs.

Defendants believe that additional discovery of Defendants beyond that agreed to in Section 1, above, is premature until Plaintiffs have received and reviewed the substantial number of documents already produced in discovery to plaintiffs in *FOREX*.  After Plaintiffs have done so, Defendants propose to meet and confer on additional discovery demands, if any, and the time it might take to substantially complete them.

Defendants cannot identify all members of the *FOREX* settlement class, as class membership has been ascertained by class counsel in that case on the basis not only of the data provided by Defendants but also on the basis of data submitted to them directly by putative class members.  Moreover, Defendants believe that identification of all settlement class members is beyond the scope of this action and unnecessary.  The Court found that proximate causation and standing could be established only with respect to persons, like named Plaintiffs, who entered into transactions with Retail Dealers.  To the extent Plaintiffs seek to identify Retail Dealers with whom absent class members traded, Plaintiffs can do so independently. Plaintiffs have retained Dr. Osler as a purported expert in Retail Dealers and, as stated in the proposed case management order, intend to retain other experts regarding the retail market.[3]

**(3)    A computation of each category of damages claimed, see Fed. R. Civ. P. 26(a)(1)(A)(iii);**

Plaintiffs' Statement:    Plaintiffs seek damages under the antitrust and consumer protection laws of New York, Arizona, California, Illinois, Florida, Massachusetts, Minnesota, and North Carolina in the form of anticompetitive overcharges incurred as a result of Defendants' illegal conduct in inflating retail foreign exchange dealer to Class member FX Instrument transactions. *See* Proposed SCCAC (ECF No. 139-1) at 5-6. The calculations of Plaintiffs' damages will require both fact discovery—including substantial transactional data from Defendants and third parties—and expert discovery. Therefore, Plaintiffs are not able to provide an estimated computation of damages prior to the completion of discovery.

**(4)    A statement describing the status of any settlement discussions and whether the parties would like a settlement conference; and**

Joint Statement:  Plaintiffs have reached a settlement with Defendant Citigroup and a preliminary approval hearing is scheduled with the Court for November 15, 2018.  Pursuant to

---

[3] The Court found that the putative class in the proposed SCCAC is limited "to those [plaintiffs] who purchased indirectly from a Defendant through a Retail Dealer," and specifically interpreted the "Direct Settlement Class" defined by plaintiffs to be "the Retail Dealers who were plaintiffs and class members in FOREX." (ECF No. 166, at 10.)  Thus, it is incumbent upon plaintiffs to identify the universe of Retail Dealers with whom the putative class allegedly transacted so Defendants can then determine which, if any, Retail Dealers transacted with Defendants and the scope of discovery, if any, into such transactions, to the extent such discovery is not already encompassed in the discovery to be produced pursuant to Section 1, *supra*.

the Court's October 29, 2018 Order (ECF No. 167), Plaintiffs have conferred to discuss the possibility of settlement with all Defendants.  The parties do not request a settlement conference at this time.

**(5)     Any other information that the parties believe may assist this Court in resolving the action.**

Plaintiffs' Statement: Plaintiffs believe that full discovery of Defendants and third parties is essential to the preparation of their motion for class certification, to properly respond to Defendants' motions for summary judgment, and for trial. Plaintiffs are cognizant that discovery as to certain Defendants remains subject to restrictions at the request of the U.S. Department of Justice. *See FOREX*, ECF No. 1121. Plaintiffs are also aware of need to coordinate discovery with the pending *Nypl* action. Therefore, Plaintiffs believe that the Court should enter a Scheduling Order similar to that entered in *Nypl* that provides flexibility and allows the parties to complete full discovery before engaging in class certification for which there is no schedule in *Nypl*. Plaintiffs believe that Defendants' proposal requiring Plaintiffs to file their class certification motion prior to the completion of both fact and expert discovery would be highly prejudicial.

Several factors animate the need for flexibility and a carefully crafted schedule for summary judgment and class certification that follow the completion of fact discovery. First, the Defendants in *FOREX* have produced more than 1.3 million pages of documents[4] that Plaintiffs here have not yet received and will need to review in order to approach parity with the Defendants' longstanding familiarity with those documents. Second, while Plaintiffs have been authorized to attend but not participate in a subset of the depositions taken in *FOREX*, Plaintiffs could not and did not attend depositions that preceded the Court's August 8, 2017 Order. *See Contant* ECF No. 102. Thus, Plaintiffs will need to assess whether additional discovery of previously deposed witnesses will be necessary to prove their case. Third, Plaintiffs are on the cusp of filing their SCCAC. While the SCCAC was prepared in conjunction with an expert, Plaintiffs anticipate that they will require additional experts and substantial expert analysis which, in turn, will require analysis of Defendants' forthcoming document production, the transactional data Plaintiffs have requested but which Defendants refuse to produce, productions of third-party documents and data and a determination of additional documents and data that Plaintiffs' experts may require. To the extent that the Court sets periodic status conferences regarding discovery, such conferences should include the scheduling of both party and third-party discovery.

Plaintiffs are cognizant that in *Nypl* the Court declined to adopt any party's proposed schedule for expert discovery and summary judgment and that neither the parties nor the Court addressed deadlines for class certification. *See Nypl* ECF No. 231. However, if the Court is inclined to establish dates for expert matters, class certification and dispositive motions at this time, Plaintiffs' propose the schedule set forth in Paragraph 12(d) of the proposed Case Management Order. . Plaintiffs' proposed schedule is keyed to the completion of fact discovery as set forth in Paragraph 8(a) and accounts for the partial stay of discovery related to the DOJ action. As of November 5, 2018, the DOJ's position remains that plaintiffs in actions related to *FOREX* should be subject to discovery limitations. *See Nypl* ECF No. 358.

---

[4] *See FOREX* ECF No. 773 at 2.

**Defendants' Statement:**  As the Court's October 25, 2018 Opinion and Order recognizes, Plaintiffs' claims are premised on allegations and the report of Dr. Carol L. Osler about how Retail Dealers from whom members of the putative class purchased spot FX Instruments (*i.e.*, the exchange of the value of one currency for another in roughly real time) sourced and priced that currency.  *See* Opinion and Order (ECF No. 166) at 9-11 (relying on limitation of class definition to those who purchased from a Retail Dealer that is a member of the Direct Settlement Class and on the record-keeping requirements for Retail Dealers to find that Plaintiffs adequately plead proximate cause and standing). Indeed, as the Court noted, Plaintiffs' claims are limited to a putative class that bought or sold spot FX Instruments with Retail Dealers in transactions "directly traceable" to Defendants. Discovery from the third-party Retail Dealers with whom members of the putative class dealt will therefore be critical to Plaintiffs' ability to satisfy the requirements of Rule 23 with respect to each of the proposed classes, not to mention to Plaintiffs' substantive claims.

Defendants believe that Plaintiffs' class certification motion is particularly vulnerable for this and other reasons. To facilitate an early class certification motion, Defendants therefore propose that the parties promptly begin to conduct third-party discovery from and about the Retail Dealers, their pricing mechanisms, and Plaintiffs' trades with them.  At the outset, Plaintiffs must identify the Retail Dealers from which putative class members purchased spot FX Instruments during the proposed Class Period.  Plaintiffs have agreed to do so in their initial disclosures, but have not yet responded to Defendants' request that Plaintiffs identify these Retail Dealers promptly.  This will permit Defendants (and Plaintiffs) to seek third-party discovery from the Retail Dealers about their business models and their transaction records, to the extent they still exist, from 2007-2013.  Defendants are prepared to produce transaction data about their spot FX Instrument transactions with the Retail Dealers identified by Plaintiffs during the Class Period as part of this phase.

Without knowing, for example, the number of Retail Dealers from which third-party discovery will be necessary or the extent of motion practice required to complete such third-party discovery, Defendants agree with Plaintiffs that it would not be reasonable to establish a full discovery and motion schedule at this time because, among other reasons, Defendants cannot predict the time that such third-party discovery will take.  Defendants suggest that the parties should have periodic status conferences with the Court to discuss the progress of the third-party discovery and, on the May 13, 2019 date proposed in the Case Management Order, the scheduling of Plaintiffs' motion for class certification, a potential dispositive motion by Defendants and/or further fact and expert discovery (including a schedule for expert reports). The issues in dispute are likely to be narrowed by that time, and Defendants have no objection to Plaintiffs continuing to participate in depositions in *FOREX* and *Nypl* in the interim.

Defendants again respectfully note the FX opt-out Complaint filed yesterday evening in *Allianz et al. v. Bank of America Corp. et al.*, No. 18-cv-10364, on November 7, 2018, and respectfully request additional time to consider how best to coordinate that matter with this.

Dated: November 8, 2018                                    Respectfully submitted,

For Plaintiffs:

  BERGER MONTAGUE PC                          SCHNEIDER WALLACE COTTRELL
                                                               KONECKY WOTKYNS LLP

  /s/ Michael Dell'Angelo

Michael Dell'Angelo
Joshua T. Ripley
1818 Market St, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
mdellangelo@bm.net
jripley@bm.net

Garrett W. Wotkyns
8501 North Scottsdale Road, Suite 270
Scottsdale, AZ 85253
Tel: (480) 428-0142
Fax: (866) 505-8036
gwotkyns@schneiderwallace.com

MCCULLEY MCCLUER PLLC

R. Bryant McCulley
Stuart McCluer
1022 Carolina Boulevard, Suite 300
Charleston, SC 29451
Tel: (855) 467-0451
Fax: (662) 368-1506
bmcculley@mcculleymccluer.com
smccluer@mcculleymccluer.com

PEIFFER WOLF CARR & KANE, APLC

Joseph C. Peiffer
201 St. Charles Ave. Suite 4610
New Orleans, LA 70170
Tel: (504) 523-2434
Fax: (504) 523-2464
jpeiffer@pwcklegal.com

For Defendants:

SULLIVAN & CROMWELL LLP

By: /s/ Matthew A. Schwartz
Matthew A. Schwartz
David H. Braff
Yvonne S. Quinn
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
schwartzmatthew@sullcrom.com
braffd@sullcrom.com
quinny@sullcrom.com

*Attorneys for Defendant Barclays Bank PLC and
Barclays Capital Inc.*

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
By: /s/ Boris Bershteyn
Peter E. Greene
Boris Bershteyn
Peter S. Julian
Tansy Woan
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
peter.greene@skadden.com
boris.bershteyn@skadden.com
peter.julian@skadden.com
tansy.woan@skadden.com

*Attorneys for Defendants JPMorgan Chase & Co.
and JPMorgan Chase Bank, N.A.*

SHEARMAN & STERLING LLP
By: /s/ Adam S. Hakki
Adam S. Hakki
Richard F. Schwed
Jeffrey J. Resetarits
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000

DAVIS POLK & WARDWELL LLP
By: /s/ Joel M. Cohen
Joel M. Cohen
Alyssa B. Gomez
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
joel.cohen@davispolk.com

ahakki@shearman.com
rschwed@shearman.com
jeffrey.resetarits@shearman.com

*Attorneys for Defendants Bank of America
Corporation, Bank of America, N.A. and
Merrill Lynch, Pierce, Fenner & Smith
Incorporated*

alyssa.gomez@davispolk.com

*Attorneys for Defendants The Royal Bank of
Scotland Group plc and RBS Securities Inc.*

ALLEN & OVERY LLP

By: /s/ David C. Esseks

David C. Esseks
Laura R. Hall
Rebecca Delfiner
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
david.esseks@allenovery.com
laura.hall@allenovery.com
rebecca.delfiner@allenovery.com

*Attorneys for Defendants BNP Paribas, BNP
Paribas North America, Inc., BNP Paribas
Securities Corp., and BNP Paribas Prime
Brokerage, Inc.*

LOCKE LORD LLP

By: /s/ Gregory T. Casamento

Gregory T. Casamento
3 World Financial Center
New York, New York 10281
Telephone: (212) 812-8325
gcasamento@lockelord.com

Roger B. Cowie
2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Telephone: (214) 740-8000
rcowie@lockelord.com

J. Matthew Goodin
Julia C. Webb
111 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 443-0700
jmgoodin@lockelord.com
jwebb@lockelord.com

*Attorneys for Defendants HSBC Bank plc, HSBC
North America
Holdings, Inc., HSBC Bank USA, N.A., and HSBC
Securities (USA) Inc.*

MOORE AND VAN ALLEN PLLC

By: /s/ James P. McLoughlin, Jr.
James P. McLoughlin, Jr.
Mark A. Nebrig
Joshua D. Lanning
Moore and Van Allen PLLC
100 N. Tryon Street, Suite 4700
Charlotte, North Carolina 28202
Telephone: (704) 331-1000
jimmcloughlin@mvalaw.com

marknebrig@mvalaw.com
joshlanning@mvalaw.com

*Attorneys for Defendant RBC Capital Markets,*
*LLC*

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

By: /s/ Thomas J. Moloney
Thomas J. Moloney
George S. Cary
Sue S. Guan
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
tmoloney@cgsh.com
gcary@cgsh.com
sguan@cgsh.com

*Attorneys for Defendants The Goldman*
*Sachs Group, Inc. and Goldman Sachs &*
*Co. LLC*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By: /s/ Kenneth A. Gallo
Kenneth A. Gallo
Michael E. Gertzman
Maxwell A.H. Kosman
Anand Sithian
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
kgallo@paulweiss.com
mgertzman@paulweiss.com
mkosman@paulweiss.com
asithian@paulweiss.com

GIBSON, DUNN &
CRUTCHER LLP

By: /s/ Eric J. Stock
Eric J. Stock
Indraneel Sur
200 Park Avenue, 48th Floor
New York, New York 10166
Telephone: (212) 351-4000
estock@gibsondunn.com
isur@gibsondunn.com

D. Jarrett Arp
Melanie L. Katsur
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
jarp@gibsondunn.com mkatsur@gibsondunn.com

*Attorneys for Defendants UBS AG, UBS Group*
*AG, and UBS Securities, LLC*

CAHILL GORDON & REINDEL LLP

By: /s/ David G. Januszewski
David G. Januszewski
Herbert S. Washer
Elai Katz
Jason M. Hall
80 Pine Street
New York, New York 10005
Telephone: (212) 701-3000
djanuszewski@cahill.com
hwasher@cahill.com
ekatz@cahill.com
jhall@cahill.com

*Attorneys for Defendant MUFG Bank, Ltd.* (f/k/a
*The Bank of Tokyo-Mitsubishi UFJ, Ltd.*)

SIDLEY AUSTIN LLP
By: /s/ Andrew W. Stern
Andrew W. Stern
Alan M. Unger
Nicholas P. Crowell
787 Seventh Avenue
New York, New York 10019
astern@sidley.com
aunger@sidley.com
ncrowell@sidley.com
Telephone: (212) 839-5300
*Attorneys for Defendant Standard Chartered Bank*

KIRKLAND & ELLIS LLP

By: /s/ G. Patrick Montgomery
G. Patrick Montgomery (*pro hac vice*)
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Telephone: (202) 879-5000
patrick.montgomery@kirkland.com

LATHAM & WATKINS LLP

By: /s/ Joseph Serino, Jr.
Joseph Serino, Jr.
885 Third Avenue
New York, New York 10022
joseph.serino@lw.com
Telephone: (212) 906-1717

*Attorneys for Defendant Deutsche Bank AG and
Deutsche Bank Securities Inc.*

*Attorneys for Defendants Credit Suisse Group AG,
Credit Suisse AG, and Credit Suisse
Securities (USA) LLC*

WACHTELL, LIPTON, ROSEN & KATZ
By: /s/ Jonathan Moses
Jonathan Moses
Bradley R. Wilson
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
JMMoses@wlrk.com
BRWilson@wlrk.com

*Attorneys for Defendants Morgan Stanley,
Morgan Stanley & Co., LLC, and Morgan Stanley
& Co. International PLC*

LINKLATERS LLP

By: /s/ James R. Warnot, Jr.
James R. Warnot, Jr.
Adam S. Lurie
Patrick C. Ashby
1345 Avenue of the Americas
New York, New York 10105
Telephone: (212) 903-9000
james.warnot@linklaters.com
adam.lurie@linklaters.com
patrick.ashby@linklaters.com

*Attorneys for Defendant Société Générale*