December 4, 2018

**VIA ECF**
Honorable Lorna G. Schofield, United States District Judge
Thurgood Marshall U.S. Courthouse, 40 Foley Square
New York, New York 10007

      RE:    *Contant, et al. v. Bank of Am. Corp., et al.*, No. 17 Civ. 3139

Dear Judge Schofield:

      The undersigned Foreign Defendants intend to move to dismiss the Second Amended Complaint (Doc. 183) ("SAC") under Rule 12(b)(2) for lack of personal jurisdiction and submit this pre-motion letter per the Court's direction at the November 15 conference and § III.C.2 of the Court's Individual Practices.[1] The motion is due by December 20, 2018 under the Case Management Order. This Court has previously decided Rule 12(b)(2) motions in related actions. *See In re Foreign Exch. Benchmark Rates Antitrust Litig.* ("*FOREX*"), No. 13 Civ. 7789, 2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016), and *Nypl v. JPMorgan Chase & Co.*, No. 15 Civ. 9300, 2018 WL 1472506 (S.D.N.Y. Mar. 22, 2018). But this action presents a different question, because (i) the role of Retail Foreign Exchange Dealers ("RFEDs") here breaks the causal relationship between Foreign Defendants' alleged forum-directed FX conduct and Plaintiffs' alleged transactions and injuries, and (ii) Foreign Defendants' nationwide contacts are not relevant where, as here, the action asserts only state-law claims. Nor is there conspiracy jurisdiction here.[2] Plaintiffs have therefore failed to adequately allege personal jurisdiction over Foreign Defendants.

      While Defendants have repeatedly requested that the named Plaintiffs specify the RFEDs with which they purportedly transacted to allow evaluation of personal jurisdiction, Plaintiffs have refused to do so. Plaintiffs should provide those identities in response to this pre-motion letter. Indeed, up to this point Plaintiffs have alleged nothing to indicate that Foreign Defendants transacted in the U.S. at all (much less New York) with any RFEDs that sold to the named Plaintiffs. Plaintiffs cannot cure that deficiency by alleging subsequent sales by RFEDs to Plaintiffs in New York, because personal jurisdiction must be based on each *defendant's* contacts with the relevant jurisdiction, not the *plaintiffs'* contacts with the RFEDs.

      **I. There is no causal connection alleged between Foreign Defendants' in-forum conduct and the named Plaintiffs' alleged injuries.** In *Nypl*, this Court held that the complaint's "allegations of a conspiracy in the FX spot market, combined with its allegations of the linkage between benchmark and retail rates, suffice" to establish a *prima facie* case of specific jurisdiction over Foreign Defendants in that action. 2018 WL 1472506, at *6; *see also FOREX*, 2016 WL 1268267, at *4–6. But here, there are multiple critical distinctions from those cases.

      Crucially, Plaintiffs do not allege they transacted with any Defendants. The critical role of the RFEDs as intervening actors eliminates any direct connection between Foreign Defendants' forum contacts and the episodes-in-suit, and sets this case apart from *FOREX* and *Nypl*, where

---

[1] This Court denied as moot the previous Rule 12(b)(2) motion when the Court dismissed the prior complaint under Rule 12(b)(6). Doc. 136 at 19 (Mar. 15, 2018). The SAC does not cure the deficiencies previously identified.

[2] The SAC also cannot support general jurisdiction over Foreign Defendants because no Foreign Defendant is incorporated in or has its principal place of business in New York. *FOREX*, 2016 WL 1268267, at *3-4.

plaintiffs alleged they transacted with defendants directly in the U.S. The *FOREX* operative complaint, for example, alleged injuries from Foreign Defendants' ***direct*** transactions in FX instruments with alleged class members in the U.S. Similarly, in *Nypl*, the plaintiffs averred that they "purchased price-fixed foreign currency from Defendants" ***directly*** at prices Defendants derived from manipulated rates. *Nypl*, 2018 WL 1472506, at *6. Here, in contrast, the RFEDs' independent choices interrupt the "causal relationship" between Foreign Defendants' alleged forum-directed conduct and Plaintiffs' alleged transactions and injuries. That is, the SAC fails to allege that the transactions of the named Plaintiffs—who reside in eight different states and did not transact with any Foreign Defendant—arise from Foreign Defendants' purposeful contacts with New York. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 84 (2d Cir. 2018).

Significantly, the SAC contains no allegations that the RFEDs with which ***named*** Plaintiffs transacted are based in the U.S., much less New York. *See Beach v. Citigroup Alt. Invs. LLC*, No. 12 Civ. 7717, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014). "[P]ersonal jurisdiction is based on a defendant's contacts with the forum state and actions giving rise to the ***named*** plaintiffs' causes of action. Contacts with unnamed class members may not be used as a jurisdictional basis, especially before a class has been certified." *Id.* (emphasis added) (internal citations omitted). Indeed, on November 21, 2018, Plaintiffs provided their "initial listing of retail FX dealers" whose transactions are purportedly at issue in this action, and that listing includes entities with no apparent presence in the U.S., such as "FOREX Club LLC." *See* Forex Club Group, *Group Structure And Geography*, *at* https://www.fxclub.com/group (last visited Dec. 3, 2018).[3]

The SAC alleges nothing to show that Foreign Defendants transacted or communicated with the named Plaintiffs' RFEDs in New York, as opposed to London or another foreign location. That is, if the named Plaintiffs' counterparty RFEDs all transacted from outside the forum—a likely possibility that is consistent with the allegations in the SAC—then the alleged link between Foreign Defendants' conduct and the RFEDs' own alleged purchase of FX spot instruments directly from Foreign Defendants would have occurred completely outside this forum. *See Tarsavage v. Citic Tr. Co.*, 3 F. Supp. 3d 137, 148 (S.D.N.Y. 2014) (dismissing under Rule 12(b)(2) where allegations were "equally consistent" with a circumstance in which court lacked personal jurisdiction). Even assuming an RFED chose subsequently to transact from outside New York—for example, from London—with the sole New York-based named Plaintiff, that would not suffice to establish personal jurisdiction because "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *See Walden v. Fiore*, 571 U.S. 227, 284 (2014).

Predicating jurisdiction in this forum on the independent, "unilateral" business decisions of the RFEDs to sell to New York consumers—where those RFEDs are not alleged to have been under the control of Foreign Defendants—violates due process because it would not "allow[] potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit" (*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)), and would "offend traditional notions of fair play and

---

[3]    And even if certain RFEDs did have a presence in the U.S. (or New York)—which Plaintiffs do not allege—that still does not imply that either Foreign Defendants' or Plaintiffs' transactions with those RFEDs occurred here.

substantial justice" (*Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)).  Given the absence of allegations that Foreign Defendants transacted in New York (or indeed anywhere in the U.S.) with the RFEDs with which named Plaintiffs transacted, Plaintiffs have not adequately linked their transactions to any "activity" by Foreign Defendants "or an occurrence" caused by Foreign Defendants "that takes place in the forum State." *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1781 (2017) ("*BMS*"); *see Walden*, 517 U.S. at 284 (relationship among a defendant, the forum, and the litigation "must arise out of contacts that the defendant *himself* creates with the forum State") (internal quotation marks omitted).  Moreover, a group of plaintiffs cannot establish personal jurisdiction over a defendant by relying on the "mere fact that *other* plaintiffs" (i.e., *FOREX* and *Nypl* plaintiffs) bringing claims "similar to those brought by" the first group can establish personal jurisdiction over the defendant.  *See BMS*, 137 S. Ct. at 1781.  The episodes-in-suit here are significantly different from those in *FOREX* and *Nypl*, and Plaintiffs' allegations lack an "adequate link" to the forum that would establish personal jurisdiction over Foreign Defendants.  *Id.*  "What is needed—and what is missing here—is a connection between the forum and the specific claims at issue."  *Id.*

Further, *FOREX* and *Nypl* raise federal antitrust claims, and those plaintiffs had a colorable argument for invocation of so-called "nationwide service of process" under the Clayton Act, but there is *no* federal antitrust claim here.  The SAC only asserts state law claims without alleging the causal connection between those claims and Foreign Defendants' forum contacts.  And even if the SAC could be construed to link Foreign Defendants' conduct to the sole New York-based Plaintiff, it lacks allegations showing a "connection between the forum and the specific claims at issue" as to the named Plaintiffs based in other States (Arizona, California, Illinois, Florida, Massachusetts, Minnesota, and North Carolina).  *See id.*; *see also Daniel v. Tootsie Roll Indus., LLC*, No. 17 Civ. 7541, 2018 WL 3650015, at *8 (S.D.N.Y. Aug. 1, 2018); *Famular v. Whirlpool Corp.*, No. 16 Civ. 944, 2017 WL 2470844, at *6–7 (S.D.N.Y. June 6, 2017).

**II.  There is no conspiracy jurisdiction here.**  Plaintiffs also cannot rely on a conspiracy jurisdiction theory for at least two reasons.  *First*, the SAC does not contain the minimum allegations required for that theory—namely, "that (1) a conspiracy existed; (2) Foreign Defendants participated in the conspiracy; and (3) a co-conspirator's **overt acts in furtherance of the conspiracy** had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state."  *Schwab*, 883 F.3d at 87 (emphasis added).  There is no allegation that there was a transaction between *any* Defendant (foreign or domestic) and one of the **named Plaintiffs'** RFEDs that was in this forum and "in furtherance of" the alleged conspiracy, which was centered abroad—as confirmed by allegations that the FX traders involved "were part of a geographically and socially concentrated group" (SAC ¶ 62) in "the Essex countryside just northeast of London's financial district" (*FOREX* 6/3/2016 Compl. ¶ 118 (Doc. 619)).  The SAC does not allege that any New York-based Defendant, by agreement with any Foreign Defendant, transacted with any RFED, in New York or abroad.  *Second*, Plaintiffs have failed to allege adequately that any Foreign Defendant exercised direction and control over alleged co-conspirators' in-forum, suit-related acts, which they must for the assertion of conspiracy jurisdiction to satisfy due process.  The "mere presence of one conspirator . . . does not confer personal jurisdiction over another alleged conspirator," at least absent allegations of a partnership with a "general supervision" relationship between them.  *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1343 (2d Cir. 1972) (Friendly, J.), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010).  The SAC alleges no such relationship among any Defendants.

Respectfully submitted,

| | |
|---|---|
| SULLIVAN & CROMWELL LLP | GIBSON, DUNN & CRUTCHER LLP |
| By: /s/ Matthew A. Schwartz<br>Matthew A. Schwartz<br>David H. Braff<br>125 Broad Street<br>New York, New York  10004<br>Telephone:  (212) 558-4000<br>schwartzmatthew@sullcrom.com<br>braffd@sullcrom.com<br><br>***Attorneys for Foreign Defendant***<br>***Barclays Bank PLC*** | By: /s/ Eric J. Stock<br>Eric J. Stock<br>Indraneel Sur<br>200 Park Avenue<br>New York, New York  10166<br>Telephone:  (212) 351-4000<br>estock@gibsondunn.com<br>isur@gibsondunn.com<br><br>D. Jarrett Arp<br>Melanie L. Katsur<br>1050 Connecticut Avenue, N.W.<br>Washington, D.C.  20036<br>Telephone:  (202) 955-8500<br>jarp@gibsondunn.com<br>mkatsur@gibsondunn.com |
| DAVIS POLK & WARDWELL LLP | |
| By:  /s/ Paul S. Mishkin<br>Paul S. Mishkin<br>Melissa C. King<br>Maude Paquin<br>450 Lexington Avenue<br>New York, New York  10017<br>Telephone:  (212) 450-4000<br>paul.mishkin@davispolk.com<br>melissa.king@davispolk.com<br>maude.paquin@davispolk.com<br><br>***Attorneys for Foreign Defendant***<br>***The Royal Bank of Scotland plc*** | ***Attorneys for Foreign Defendant***<br>***UBS AG***<br><br>CAHILL GORDON & REINDEL LLP<br><br>By:  /s/ David G. Januszewski<br>David G. Januszewski<br>Herbert S. Washer<br>Elai Katz<br>Jason M. Hall<br>80 Pine Street<br>New York, New York 10005<br>Telephone:  (212) 701-3000<br>djanuszewski@cahill.com<br>hwasher@cahill.com<br>ekatz@cahill.com<br>jhall@cahill.com<br><br>***Attorneys for Foreign Defendant***<br>***Credit Suisse Group AG*** |

| | |
|---|---|
| LINKLATERS LLP | LOCKE LORD LLP |
| By: /s/ James R. Warnot, Jr. | By: /s/ Gregory T. Casamento |
| James R. Warnot, Jr. | Gregory T. Casamento |
| Adam S. Lurie | 3 World Financial Center |
| Patrick C. Ashby | New York, New York  10281 |
| 1345 Avenue of the Americas | Telephone:  (212) 812-8325 |
| New York, New York  10105 | gcasamento@lockelord.com |
| Telephone:  (212) 903-9000 | |
| james.warnot@linklaters.com | Roger B. Cowie |
| adam.lurie@linklaters.com | 2200 Ross Avenue, Suite 2800 |
| patrick.ashby@linklaters.com | Dallas, Texas  75201-6776 |
| | Telephone:  (214) 740-8000 |
| *Attorneys for Foreign Defendant Société Générale* | rcowie@lockelord.com |
| | J. Matthew Goodin |
| | Julia C. Webb |
| PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP | 111 S. Wacker Drive |
| | Chicago, Illinois  60606 |
| | Telephone:  (312) 443-0472 |
| By: /s/ Kenneth A. Gallo | jmgoodin@lockelord.com |
| Kenneth A. Gallo | jwebb@lockelord.com |
| Michael E. Gertzman | |
| Anand Sithian | *Attorneys for Foreign Defendant HSBC Bank plc* |
| Maxwell A.H. Kosman | |
| 1285 Avenue of the Americas | |
| New York, New York  10019 | |
| Telephone:  (212) 373-3000 | SIDLEY AUSTIN LLP |
| kgallo@paulweiss.com | |
| mgertzman@paulweiss.com | By: /s/ Andrew W. Stern |
| asithian@paulweiss.com | Andrew W. Stern |
| mkosman@paulweiss.com | Alan M. Unger |
| | Nicholas P. Crowell |
| *Attorneys for Foreign Defendant MUFG Bank, Ltd. (f/k/a The Bank of Tokyo-Mitsubishi UFJ, Ltd.)* | 787 Seventh Avenue |
| | New York, New York  10019 |
| | Telephone:  (212) 839-5300 |
| | astern@sidley.com |
| | aunger@sidley.com |
| | ncrowell@sidley.com |
| | |
| | *Attorneys for Foreign Defendant Standard Chartered Bank* |

ALLEN & OVERY LLP

By: /s/ David C. Esseks
David C. Esseks
Laura R. Hall
Rebecca Delfiner
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
david.esseks@allenovery.com
laura.hall@allenovery.com
rebecca.delfiner@allenovery.com

***Attorneys for Foreign Defendant
BNP Paribas Group***