December 11, 2018

**VIA ECF**
Honorable Lorna G. Schofield, United States District Judge
Thurgood Marshall U.S. Courthouse, 40 Foley Square
New York, NY 10007

      Re:     *Contant et al. v. Bank of Am. Corp. et al.*, **No. 17 Civ. 3139**

Dear Judge Schofield:

      Plaintiffs respectfully submit this letter pursuant to § III.C.2 of the Court's Individual Practices in response to the Foreign Defendants' December 4, 2018 letter, ECF No. 187 ("Foreign Defendants' Letter"), regarding their intent to move to dismiss Plaintiffs' Second Consolidated Class Action Complaint ("SCCAC") pursuant to Fed. R. Civ. P. 12(b)(2).

      At the November 15, 2018 Initial Conference, the Court instructed Defendants to consult the Court's prior rulings on personal jurisdiction in determining whether to file a Rule 12(b)(2) motion in this Action in order to "save us all a lot of hopefully unnecessary motion practice." *See* ECF No. 181 (Nov. 15, 2018 Hearing Transcript), at 17:10-18. The substance of the Foreign Defendants' Letter makes clear that they have not done so. The Foreign Defendants fail to distinguish the Court's prior rulings denying Defendants' 12(b)(2) motions in *FOREX* and *Nypl* from their anticipated motions in this Action. Accordingly, their Rule 12(b)(2) motion should be denied for the same reasons that the Court previously denied substantially similar motions in *FOREX* and *Nypl*.[1]

      Four of the Foreign Defendants previously failed to evade the Court's jurisdiction by raising substantially similar arguments to those raised in their Letter here. *See In re Foreign Exch. Benchmark Rates Antitrust Litig.* ("*FOREX*"), No. 13-cv-7789-LGS, 2016 WL 1268267, at *1 (S.D.N.Y. Mar. 31, 2016) (rejecting 12(b)(2) motion filed by The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU") and Société Générale, and granting leave to add Standard Chartered Bank as a Defendant); *Nypl v. JPMorgan Chase & Co.*, No. 15-cv-9300-LGS, 2018 WL 1472506, at *1 (S.D.N.Y. Mar. 22, 2018) (rejecting 12(b)(2) motion filed by The Royal Bank of Scotland plc, UBS AG, and Barclays PLC). The remaining four Foreign Defendants—Barclays Bank PLC, BNP Paribas Group, Credit Suisse Group AG, and Standard Chartered Bank—did not contest personal jurisdiction in *FOREX* and are not named as defendants in *Nypl*. As counsel for Plaintiffs stated at

---

[1] Foreign Defendants suggest that Plaintiffs should informally produce the identities of the retail foreign exchange dealers ("RFEDs") with which Plaintiffs transacted in advance of the Foreign Defendants' anticipated Rule 12(b)(2) motion. However, doing so is inconsistent with Plaintiffs' obligations under the Civil Case Management Plan ("CMO"). *See* ECF No. 176 at ¶¶ 7, 8. All Defendants acknowledged in the parties' November 8, 2018 Joint Letter, ECF No. 170, that the identities of those RFEDs would be produced in the discovery process, *id.* at 3 ("Discovery of Plaintiffs is expected to include, at a minimum, identification of Retail Dealers with whom members of the putative class transacted . . ."), and the CMO provides that discovery is stayed as to all Defendants that file a Rule 12(b)(2) motion. *See* ECF No. 176 at ¶ 8(b). If the Court were to deviate from the CMO and allow jurisdictional discovery of Plaintiffs, it should likewise allow jurisdictional discovery of the Foreign Defendants. However, even if discovery were allowed to proceed with respect to the Foreign Defendants, such information is unnecessary to resolve their motion. The Foreign Defendants acknowledge that "personal jurisdiction must be based on each *defendant's* contacts with the relevant jurisdiction, not the *plaintiffs'* contacts with the RFEDs." Foreign Defendants' Letter at 1 (emphasis in original). The identities of the RFEDs with which Plaintiffs transacted are therefore irrelevant to Foreign Defendants' anticipated Rule 12(b)(2) motion and need not be considered at this stage.

1

the Initial Conference, Plaintiffs carefully reviewed the Court's prior personal jurisdiction rulings in *Nypl* and *FOREX* and, guided by those rulings, did not name foreign entities that this Court dismissed on jurisdictional grounds in those actions. ECF No. 181 at 17:19-22.

The Foreign Defendants' Letter previews three arguments in support of their forthcoming Rule 12(b)(2) motion. First, Foreign Defendants claim that "[t]here is no causal connection alleged between Foreign Defendants' in-forum conduct" and Plaintiffs' injuries. Foreign Defendants' Letter at 1. Second, although Foreign Defendants admit that courts in the Second Circuit recognize the doctrine of conspiracy jurisdiction, they claim that the requirements for that doctrine are not met. *Id.* at 3. Third, Foreign Defendants claim that the Court's prior personal jurisdiction opinions in *FOREX* and *Nypl* are distinguishable because unlike in those cases, Plaintiffs in this Action do not raise federal antitrust claims. *Id*. All three arguments fail.

## I. The Court Has Already Rejected Defendants' Argument That the SCCAC Fails to Allege a Causal Connection Between Defendants' Conduct and Plaintiffs' Injuries

The Foreign Defendants' argument that the SCCAC fails to allege a causal connection between the alleged conspiracy and Plaintiffs' injuries mirrors their argument regarding proximate cause that the Court expressly rejected in the October 25, 2018 Order granting leave to file the SCCAC. *Compare* Foreign Defendants' Letter at 2 (arguing that "the RFEDs' independent choices interrupt the 'causal relationship' between Foreign Defendants' alleged forum-directed conduct and Plaintiffs' alleged transactions and injuries"), *with Contant v. Bank of Am. Corp.*, No. 17-cv-3139-LGS, 2018 WL 5292126, at *5-6 (S.D.N.Y. Oct. 25, 2018) (holding that "the Proposed Complaint alleges that Plaintiffs' losses were proximately caused by, and flowed directly from, Defendants' misconduct" and that "because FX benchmarks constitute the predominant component of FX retail prices, a direct link connects the alleged anticompetitive conduct and Plaintiffs' injury."). As the Foreign Defendants themselves acknowledge, personal jurisdiction is about the ***Defendants'*** conduct. *See* Foreign Defendants' Letter at 1. Accordingly, the locations of the RFEDs that purchased FX Instruments—as well as the locations of the Plaintiffs and Class members that purchased FX Instruments indirectly from Defendants—are irrelevant for purposes of determining whether this Court has personal jurisdiction over the Foreign Defendants here. The Foreign Defendants' conduct at issue here is ***the same*** as their conduct at issue in *Nypl* and *FOREX*,[2] and the Court has personal jurisdiction over Foreign Defendants for the same reasons articulated in the Court's rulings in those cases.[3] The SCCAC alleges that the conspiracy was directed at New York, *id.* at ¶¶ 8, 263, and contains ample allegations of in-forum conspiratorial conduct by both Foreign and Non-Foreign Defendants. *See, e.g.*, *id.* at ¶¶ 8, 113, 191, 208, 212, 214, 234. Accordingly, personal jurisdiction is proper here for the same reasons set forth in the

---

[2] *See* SCCAC at ¶ 3; *Nypl v. JP Morgan Chase & Co.*, No. 15-cv-9300-LGS, 2016 WL 3211440, at *1 (S.D.N.Y. June 8, 2016).

[3] *See FOREX*, 2016 WL 1268267, at *4 ("Plaintiffs have made a prima facie showing of specific jurisdiction over BTMU and Société Générale because the allegations in the SAC, together with evidence of the extent of these two Defendants' FX operations in the United States, give rise to the reasonable inference that they participated in the alleged conspiracy in the United States or participated elsewhere with the aim to cause harm in the United States."); *Nypl*, 2018 WL 1472506, at *4 ("Plaintiffs have made a prima facie showing of specific jurisdiction over BPLC, RBS plc and UBS AG because the allegations in the [complaint] give rise to the reasonable inference that they participated in the alleged conspiracy in the United States or participated elsewhere with the aim to cause harm in the United States.").

2

Court's prior orders denying Defendants' 12(b)(2) motions. *See Nypl*, 2018 WL 1472506, at *6; *FOREX*, 2016 WL 1268267, at *4.

## II. Foreign Defendants are Subject to Personal Jurisdiction Under the Doctrine of Conspiracy Jurisdiction

As Foreign Defendants acknowledge, conspiracy jurisdiction applies if Plaintiffs plausibly allege that "(1) a conspiracy existed; (2) Foreign Defendants participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." *Id.* at 3 (citing *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 84 (2d Cir. 2018)). The Court has already held in the Order granting leave to file the SCCAC that the first two elements are met. *Contant*, No. 2018 WL 5292126, at *15 (holding that the SCCAC plausibly alleges a conspiracy with respect to all Defendants, including Foreign Defendants). Given the Court's prior 12(b)(2) rulings, as well as the numerous examples of Defendants' in-forum conspiratorial conduct alleged in the SCCAC, Defendants cannot credibly dispute that the third element is also satisfied.

As noted above, the SCCAC includes ample allegations of in-forum conduct by numerous Defendants in furtherance of the conspiracy, and the Court has already held in *FOREX* and *Nypl* that such conduct was sufficient to subject numerous Defendants to personal jurisdiction. *See FOREX*, 2016 WL 1268267, at *1; *Nypl*, 2018 WL 1472506, at *1. For example, Barclays Bank PLC, one of the Foreign Defendants seeking to file a 12(b)(2) motion here, agreed to a consent order issued by the New York State Department of Financial Services ("NYDFS") in which it specifically admitted that **the New York branch of Barclays Bank PLC** "engaged in manipulative conduct and attempted to manipulate benchmark foreign exchange ('FX') rates around the world, during at least 2008 through 2012" and "conspired with other banks in order to coordinate trading, attempt to manipulate exchange rates, or coordinate bid/ask spreads charged." *See* SCCAC at ¶ 191; Consent Order, *available at* https://dfs.ny.gov/about/ea/ea151117.pdf (last visited Dec. 11, 2018). That admission alone would be sufficient for the Court to subject Barclays Bank PLC to specific jurisdiction, and under the doctrine of conspiracy jurisdiction, all other Foreign Defendants are subject to personal jurisdiction as co-conspirators based on those same contacts. Accordingly, the requirements for conspiracy jurisdiction are satisfied, and Foreign Defendants are subject to personal jurisdiction on the basis of the collusive actions of their co-conspirator Defendants that took place in New York or were directed at New York.

## III. The Fact That Plaintiffs Do Not Assert Federal Antitrust Claims is Irrelevant to the Personal Jurisdiction Analysis

Finally, Foreign Defendants suggest that the Court's prior 12(b)(2) rulings in *FOREX* and *Nypl* are distinguishable because those actions allege "federal antitrust claims, and those plaintiffs had a colorable argument for invocation of so-called 'nationwide service of process' under the Clayton Act, but there is no federal antitrust claim here." Foreign Defendants' Letter at 3. At best, that argument is a red herring. In denying Defendants' Rule 12(b)(2) motions in *FOREX* and *Nypl*, the Court did not rely on statutory personal jurisdiction under the Clayton Act. *See FOREX*, 2016 WL 1268267, at *1 (denying 12(b)(2) motion without referencing "nationwide service of process" under the Clayton Act); *Nypl*, 2018 WL 1472506, at *1 (same). Accordingly, the fact that *FOREX* and *Nypl* involved federal antitrust claims does not render the Court's 12(b)(2) rulings in those cases any less persuasive here.

3

Respectfully submitted,

/s/ Michael Dell'Angelo
Michael Dell'Angelo
**BERGER MONTAGUE P.C.**
1818 Market St, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
mdellangelo@bm.net

*Counsel for Plaintiffs*

4