January 31, 2019

**VIA ECF**
Honorable Lorna G. Schofield
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square New York, New York 10007

RE:     *Contant, et al. v. Bank of America Corporation, et al.*, No. 17-cv-3139;

Dear Judge Schofield:

Counsel for Plaintiffs in the above-referenced action ("Plaintiffs") respectfully submit this letter to inform the Court of a recent development relevant to Defendants' pending Motion to Dismiss the Complaint for Lack of Personal Jurisdiction (ECF No. 197).

On January 29, 2019, the day after Plaintiffs filed their Opposition to Foreign Defendants' Motion to Dismiss the Second Amended Complaint for Lack of Personal Jurisdiction, ECF No. 219 ("Plaintiffs' Memorandum"), the New York Department of Financial Services ("NYDFS") announced that Defendant Standard Chartered Bank and the Standard Chartered Bank "New York Branch" had entered into a consent decree in which Standard Chartered Bank agreed to pay a fine of $40 million for its participation in a conspiracy with other banks to manipulate prices in FX markets from 2007 to 2013. *See In the Matter of Standard Chartered Bank and Standard Chartered Bank, New York Branch*, January 29, 2019 Consent Order, available at https://www.dfs.ny.gov/about/ea/ea190129_standard_chartered.pdf (last accessed Jan. 31, 2019) (the "NYDFS Consent Order").[1] As with all of Defendants' other plea agreements and consent decrees, the Court may take judicial notice of the NYDFS Consent Order. *See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581, 588 n.4 (S.D.N.Y. 2015).

Standard Chartered Bank, along with the other moving Foreign Defendants, argued in the Memorandum of Law in Support of Their Motion to Dismiss the Second Amended Complaint for Lack of Personal Jurisdiction (ECF No. 198) that this Court lacks personal jurisdiction in part because Plaintiffs' Second Consolidated Class Action Complaint ("SCCAC") fails to allege that the Foreign Defendants engaged in anticompetitive acts that "were expressly aimed at New York." ECF No. 198 at 21. However, in addition to those acts detailed in the SCCAC and referenced in Plaintiffs' Memorandum, the NYDFS Consent Order describes substantial additional acts in furtherance of the same conspiracy alleged in the SCCAC by Standard Chartered Bank both within New York and directed at New York. For example, the NYDFS found that:

- "Standard Chartered traders based at the New York Branch and in other major trading hubs" engaged in conduct including "coordinating trading and spreads with colleagues at Standard Chartered and other international banks to disadvantage customers," "seeking to

---

[1] Pursuant to this Court's Local Rule I.B.1 limiting letters to the Court to two pages including exhibits, Plaintiffs did not attach a copy of the Consent Order to this letter. If it would convenience the Court, Plaintiffs will submit a copy of the Consent Order upon request.

manipulate submission-based and trading-based benchmarks," and "engaging in non-competitive agreements among traders on prices and spreads offered on a variety of FX-related products . . . repeatedly during the period from approximately 2007 through 2013."  NYDFS Consent Order, ¶¶ 3-4.

- "For the period of approximately September 2007 and April 2014, Standard Chartered traders based in New York joined traders at other international dealers in a chat room called 'Old Gits.' . . . The Old Gits chat room was formed among these traders (among other reasons) to coordinate trading, share confidential information and otherwise attempt improperly to affect FX prices. Long-time participants in Old Gits included at least three traders employed by Standard Chartered. . . . [A] New York-based Standard Chartered trader . . . referred to the group as *"mafia"*; another member called the Old Gits group *"a cartel," "like OPEC but poorer." Id.* at ¶¶ 14-16 (emphasis in original). Members of the "Old Gits" included a trader that worked for Foreign Defendants Barclays and BNP Paribas.[2] In September 2011, a "New York-based Standard Chartered trader . . . solicited specific information" from other "Old Gits" chat room participants on their quotes for trades involving Indian rupees. *Id*. at ¶ 26.

- "In November 2009, a New York-based Standard Chartered trader . . . led the organization of a scheme where major dealers . . .  agreed to quote inflated spreads to any outside party seeking to do business with this small group of dealers. The dealers involved communicated in a chat room known as 'Butter the Comedian.'" *Id.* at ¶ 33. Members of the "Butter the Comedian" chat group included a trader that worked for Defendant Deutsche Bank. *Id.* at ¶ 35 n.7.

- In a January 2011 chat room with traders at other banks, "a New York-based Standard Chartered trader . . . share[d] stop loss orders with traders at other banks . . . to benefit from similar information shared by the other traders." *Id.* at ¶ 49.

- The supervisor "who oversaw the G10 trading desk at Standard Chartered's New York Branch . . . regularly participated in chatrooms where widespread and improper information-sharing occurred, but without ever[] taking any appropriate action." *Id.* at ¶ 26.

Accordingly, the NYDFS Consent Order further supports the denial of Foreign Defendants' Motion to Dismiss.

Respectfully submitted,

/s/ Michael Dell'Angelo
Michael Dell'Angelo
**BERGER MONTAGUE PC**
1818 Market St, Suite 3600
Philadelphia, PA 19103

---

[2] *See id.* at 6 n.3 (noting that Jason Katz was a member of the group); SCCAC ¶ 195 (noting that Katz previously worked for Barclays and BNP Paribas).

Tel: (215) 875-3000
Fax: (215) 875-4604
mdellangelo@bm.net

*Counsel for Plaintiffs*