**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- X
JAMES CONTANT, *et al.*,                                  :
                                                          :
                                      Plaintiffs,         :        17 Civ. 3139 (LGS)
                                                          :
— against —                                               :        [Rel. 13 Civ. 7789 (LGS)]
                                                          :
BANK OF AMERICA CORPORATION, *et al.*,                    :        ORAL ARGUMENT REQUESTED
                                                          :
                                      Defendants.         :
---------------------------------------------------------- X


# FOREIGN DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
# TO DISMISS THE SECOND AMENDED COMPLAINT
# FOR LACK OF PERSONAL JURISDICTION

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    A.    Plaintiffs Fail To Meet Their Burden To Allege Specific Jurisdiction .................. 2

        1.    The Foreign Holding Company Should Be Dismissed From The Case .................................................................................................... 2

        2.    *FOREX* And *Nypl* Do Not Control Because They Did Not Address Purported "Indirect" Purchaser Claims Under State Law ......................... 2

        3.    Plaintiffs Fail The "Purposeful Availment" And "Effects" Tests ............. 4

    B.    The Conspiracy Allegations Do Not Sustain Personal Jurisdiction ...................... 7

    C.    The Rule 12(b)(2) Defense Is Preserved As To All Foreign Defendants .............. 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allgaier v. Peterson*,
  No. 13 Civ. 5112, 2015 WL 5459808 (S.D.N.Y. Aug. 13, 2015) ........................................................ 10

*Beach v. Citigroup Alt. Invs. LLC*,
  No. 12 Civ. 7717, 2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) .......................................................... 8

*Bertha Bldg. Corp. v. Nat'l Theatres Corp.*,
  248 F.2d 833 (2d Cir. 1957) ............................................................................................................. 9

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*,
  137 S. Ct. 1773 (2017) ................................................................................................................ 1, 2

*Calder v. Jones*,
  465 U.S. 783 (1984) .................................................................................................................... 2, 7

*Charles Schwab Corp. v. Bank of Am. Corp.*,
  883 F.3d 68 (2d Cir. 2018) ............................................................................................ 1, 2, 4, 6, 8, 9

*Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-
  Exploración Y Producción*,
  832 F.3d 92 (2d Cir. 2016) ............................................................................................................. 10

*Curtis Publ'g Co. v. Butts*,
  388 U.S. 130 (1967) ....................................................................................................................... 10

*Daniel v. Tootsie Roll Indus., LLC*,
  No. 17 Civ. 7541, 2018 WL 3650015 (S.D.N.Y. Aug. 1, 2018) ....................................................... 5

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
  No. 13 Civ. 7789 (LGS),
  74 F. Supp. 3d 581 (S.D.N.Y. 2015) ................................................................................................ 3

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
  No. 13 Civ. 7789 (LGS),
  2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016) ......................................................................... 2, 3, 4

*Hack v. Stang*,
  No. 13 Civ. 5713, 2014 WL 4652596 (S.D.N.Y. Sept. 18, 2014) ..................................................... 10

*Hawknet, Ltd. v. Overseas Shipping Agencies*,
  590 F.3d 87 (2d Cir. 2009) .............................................................................................................. 10

*LaCourte v. JPMorgan Chase & Co.*,
  No. 12 Civ. 9453, 2013 WL 4830935 (S.D.N.Y. Sept. 4, 2013) ...................................................... 9

*Leasco Data Processing Equipment Corp. v. Maxwell*,
  468 F.2d 1326 (2d Cir. 1972), *abrogated on other grounds by Morrison v. Nat'l
  Australia Bank Ltd.*, 561 U.S. 247 (2010) .............................................................................. 9

*Nypl v. JPMorgan Chase & Co.*,
  No. 15 Civ. 9300 (LGS),
  2018 WL 1472506 (S.D.N.Y. Mar. 22, 2018) ................................................................... 2, 4

*In re Platinum & Palladium Fix Antitrust Litig.*,
  No. 14 Civ. 9391, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) ...................................... 7, 9

*Selman v. Harvard Med. Sch.*,
  494 F. Supp. 603 (S.D.N.Y. 1980) .......................................................................................... 9

*Sunward Elecs., Inc. v. McDonald*,
  362 F.3d 17 (2d Cir. 2004) ...................................................................................................... 8

*Walden v. Fiore*,
  571 U.S. 277 (2014) ........................................................................................................... 2, 5

*Waldman v. Palestine Liberation Org.*,
  835 F.3d 317 (2d Cir. 2016) .................................................................................................... 7

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition fails to show that the Complaint sufficiently alleges a *prima facie* basis for exercise of specific jurisdiction over Foreign Defendants.[1]

The Opposition, like the Complaint, does not establish any link between Plaintiffs' specific claims and this New York forum. They do not identify a single transaction between any RFED from which any named Plaintiff allegedly purchased an FX Instrument and *any* Foreign Defendant anywhere in the United States, let alone in New York. Nor do Plaintiffs even describe a single communication in New York concerning any such transaction. And although Plaintiffs attempt to rely on statements by government agencies about the occurrence of "manipulative conduct" in New York, Plaintiffs offer no non-conclusory allegations connecting that alleged conduct to actual injury to any named Plaintiff, through an RFED. Accordingly, Plaintiffs have once again failed to meet their Rule 12(b)(2) burden.

Plaintiffs "did not transact with Defendants and had no relationship with them." Order, Dkt. 166 at 13 (Oct. 25, 2018). And having thus distinguished their claims from those in *FOREX* and *Nypl*, Plaintiffs cannot rely on those cases to confer specific jurisdiction, which requires a focus on the "specific claims at issue." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1781 (2017) ("*BMS*"); *see Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) (plaintiffs must "establish the court's jurisdiction with respect to *each* claim asserted" (internal quotation marks omitted; emphasis added)). Here—unlike *FOREX* or

---

[1] Terms defined in the Rule 12(b)(2) memorandum, Dkt. 198 (Dec. 20, 2018) ("Mem."), have the same meaning herein, including "Complaint" or "SAC," Dkt. 183 (Nov. 28, 2018). "Opp." refers to Plaintiffs' Rule 12(b)(2) opposition, Dkt. 219 (Jan. 28, 2019). Plaintiffs have agreed to voluntarily dismiss Credit Suisse Group AG ("CSGAG"), Dkt. 226 (Feb. 19, 2019), and thus CSGAG does not join this Reply.

Plaintiffs tacitly concede they have not alleged general jurisdiction over Foreign Defendants (Mem. 25).

*Nypl*—the "specific claims at issue" arise from purported transactions between the named Plaintiffs and the unidentified RFEDs with which they allegedly traded, following prior alleged (but unidentified) transactions or other interactions between the RFEDs and Foreign Defendants. Moreover, Plaintiffs here bring claims solely under state law, which, unlike the Clayton Act, does not provide for a "nationwide contacts" analysis supporting personal jurisdiction. *See* Order, Dkt. 166 at 7–8 (denying leave to replead Sherman Act claim).

## ARGUMENT

### A. Plaintiffs Fail To Meet Their Burden To Allege Specific Jurisdiction

#### 1. The Foreign Holding Company Should Be Dismissed From The Case

This Court has previously dismissed all claims for lack of specific jurisdiction against foreign parent holding companies lacking FX operations in the United States. *FOREX*, 2016 WL 1268267, at *7 (S.D.N.Y. Mar. 31, 2016); *Nypl v. JPMorgan Chase & Co.*, 2018 WL 1472506, at *6–7 (S.D.N.Y. Mar. 22, 2018). Likewise here, UBS Group AG is a foreign parent holding company that should be dismissed following the same rationale: It is not an FX dealers, it does not engage in FX trading in the United States, and it does not maintain any offices in the United States that engage in FX activity. *See* UBS Group AG / UBS AG, SEC Form 20-F at 18 (Mar. 13, 2015) (UBS Group AG was established "as the holding company of UBS Group" in 2014, after the principal misconduct alleged in *FOREX*). Plaintiffs do not attempt to show otherwise.

#### 2. *FOREX* And *Nypl* Do Not Control Because They Did Not Address Purported "Indirect" Purchaser Claims Under State Law

Specific jurisdiction focuses on the causal "connection between the forum and the specific claims at issue" *in this action*—not the claims asserted in other actions, including *FOREX* and *Nypl*. *See BMS*, 137 S. Ct. at 1781; *Schwab*, 883 F.3d at 84; Mem. 12.[2] And any

---

[2] *See Walden v. Fiore*, 571 U.S. 277, 287–88 (2014) ("reputational injury caused by the defendants" in *Calder v. Jones*, 465 U.S. 783 (1984), "would not have occurred *but for* the fact

2

jurisdictional inquiry must focus on the claims of the named Plaintiffs, not putative class members.  Plaintiffs fail those requirements.

Plaintiffs rely heavily on *FOREX* and *Nypl* (Opp. 17–22) but fail to address Foreign Defendants' explanation for why those prior rulings show that Plaintiffs in *this* action have not met their burden.  Mem. 3–5, 18–21.  Again, the episodes-in-suit in *FOREX* involved the *FOREX* Plaintiffs' FX "spot and outright forward transactions," *directly* undertaken, at least by inference, with Defendants in the relevant forum.  *FOREX*, 74 F. Supp. 3d 581, 586 (S.D.N.Y. 2015).  The operative *FOREX* complaint, this Court concluded, connected the alleged injuries from those direct transactions with two foreign banks that, among other things, had allegedly entered into FX spot trading transactions in New York.  *See FOREX*, 2016 WL 1268267, at *5–6.  Similarly, the episodes-in-suit in *Nypl* were those plaintiffs' "alleged[] purchase[s of] foreign currency from Defendants in the consumer retail market" in the relevant forum at defined benchmark rates defendants purportedly manipulated and then applied in pricing those retail transactions.  2018 WL 1472506, at *1.  This Court twice quoted the *Nypl* Plaintiffs' allegation that they "purchased price-fixed foreign currency *from Defendants* at the FX Benchmark exchange rates derived from FX spot trading plus a small commission."  *Id.* at *5, 6 (emphasis added).  And because the *FOREX* and *Nypl* Plaintiffs were direct purchasers, they could bring Clayton Act claims arguably permitting inquiry into Foreign Defendants' "aggregate contacts" with the whole United States, not exclusively contacts with New York.  *Id.* at *3 n.4.

Plaintiffs' contention that the nationwide contacts approach was "not a basis" for the *FOREX* and *Nypl* Rule 12(b)(2) decisions (Opp. 17–18) is simply incorrect:  Reliance on nationwide contacts was part-and-parcel of those rulings.  *See FOREX*, 2016 WL 1268267, at *3

---

that the defendants wrote an article for publication in California" (emphasis added)).

n.2, 4, 6 (examining activities "within the United States" after noting availability of nationwide contacts approach); *Nypl*, 2018 WL 1472506, at *3 n.4, 5-6; Mem. 4.  Also mistaken is Plaintiffs' contention (Opp. 24 n.16) that the "absence of a federal claim" in the Complaint "does not alter the personal jurisdiction analysis" that pertained in *FOREX* and *Nypl*.  To the contrary, the Rule 12(b)(2) inquiry hinges on whether the asserted state law claims "arise from the defendants' purposeful contacts *with the forum*."  *Schwab*, 883 F.3d at 84 (emphasis added).  Because the Complaint lacks a federal antitrust claim, the forum here is *New York*, not the United States as a whole.  Contacts between Foreign Defendants and RFEDs in other forums (whether Arizona or Zurich) will not suffice to confer specific jurisdiction, because those are not contacts with *New York*.  And the question is not whether the Foreign Defendants' New York contacts have a "causal relationship" to the episodes-in-suit in *FOREX* or in *Nypl*, but, rather, whether the Foreign Defendants' New York contacts have a "causal relationship" to the episodes-in-suit *in this action*: Plaintiffs' injuries purportedly derived from transactions between the named Plaintiffs' RFEDs and the Foreign Defendants.  "Specific" jurisdiction would be meaningless if it could be established by invoking *FOREX* and *Nypl* without accounting for the differences between the direct-purchaser federal claims asserted there and the indirect-purchaser state-law claims asserted here.

### 3. Plaintiffs Fail The "Purposeful Availment" And "Effects" Tests

Plaintiffs still refuse to identify the named Plaintiffs' RFED counterparties, let alone describe their locations or contacts with Foreign Defendants.  Plaintiffs have therefore failed to show that the named Plaintiffs' injuries (the episodes-in-suit) have a "causal relationship" to the Foreign Defendants' contacts with this New York forum.  Mem. 13–18.

Plaintiffs err in contending (Opp. 19) that Foreign Defendants have "effectively admit[ted]" that "the physical locations of the RFEDs . . . are irrelevant."  Quite the opposite:

Foreign Defendants have repeatedly urged Plaintiffs to disclose the identities of the named Plaintiffs' RFEDs precisely because *location could matter*. If those RFEDs were located in New York or transacted with Foreign Defendants in New York, those New York occurrences (and only those) could be causally related to Foreign Defendants' forum contacts. Plaintiffs' mischaracterization of Foreign Defendants' position is predicated on a selective account of the Opening Memorandum (Mem. 2). Again, even if a named Plaintiff interacted with an RFED in New York, that would not suffice to confer specific jurisdiction unless that RFED also was harmed by a Foreign Defendant's purposeful acts in New York: The "unilateral activity of another party or a third person," whether RFED or Plaintiff, "is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." Mem. 17; *Walden*, 571 U.S. at 284.[3]

Plaintiffs also err in relying on allegations copied from government enforcement actions and other proceedings, including settlement-related statements by the NYDFS. Opp. 4–7, 13; Dkt. 221 (Jan. 31, 2019). The Complaint echoes the *FOREX* Plaintiffs' allegation that traders in London perpetrated the FX spot market conspiracy (*see* Mem. 7 n.5), and Plaintiffs' bid to shift the center of gravity to New York now is unavailing. Even where the NYDFS and other government statements refer to conduct of Foreign Defendants in New York, they do *not*

---

[3] The allegation that unidentified RFEDs are "members of the Direct Settlement Class in *FOREX*" (SAC ¶ 148, quoted at Opp. 19) is also unavailing. It does not mean that the named Plaintiffs' RFEDs and each Foreign Defendant interacted *in New York*. An RFED "domiciled in the United States" that transacted with a Foreign Defendant could assert membership in the "Direct Settlement Class" without having transacted "in the United States" at all. Mem. 6–7 n.4. Moreover, Plaintiffs make no effort to distinguish *Daniel v. Tootsie Roll Indus., LLC*, and on that basis the Court should dismiss all claims under the laws of states *other than* New York, because "the claims of the [non-New York] plaintiffs as alleged remain unrelated to anything that transpired in New York." 2018 WL 3650015, at *8 (S.D.N.Y. Aug. 1, 2018) (cited at Mem. 21).

5

describe even a *single* FX transaction, or a single communication concerning such a transaction, within New York or elsewhere in the United States, between *any Foreign Defendant* and *any named Plaintiff's RFED*.  Nor do Plaintiffs describe statements by the Federal Reserve, the NYDFS, or other agencies about collusive acts of benchmark or spread manipulation by a Foreign Defendant in New York that had any concrete effect on any named Plaintiff's RFED—other than through sheer conjecture.[4]  So the statements by NYDFS or other regulators do not show a "causal relationship" between Foreign Defendants' forum contacts and named Plaintiffs' asserted injuries as indirect purchasers, which are the episodes-in-suit in *this action*.  *Schwab*, 883 F.3d at 84.  After all, the RFEDs are not parties here.  Plaintiffs have no authority to assert injury in the RFEDs' stead, or otherwise use the RFEDs as pawns.

Notably, Plaintiffs frequently reiterate the SAC's allegations without attempting to substantiate a connection to New York, much less to the claims of the named Plaintiffs.  They concede, as they must (Opp. 5), that certain Foreign Defendants entered into plea agreements with the U.S. Department of Justice in the District of Connecticut, which does not implicate New

---

[4] For example:  Plaintiffs stress (Opp. 5–6, 12–13) that NYDFS described a Barclays Bank PLC employee in New York as discussing "cheating" as to "markup[s]," but Plaintiffs fail to allege that any named Plaintiff's RFED paid that customer "markup," or otherwise connect geographically-unspecified purported "[m]anipulative [c]onduct" (Dkt. 220-4 at 6) with harm to any named Plaintiff's RFED.  They rely on a consent decree as to BNP Paribas S.A. asserting that an FX trader in New York sought "to manipulate prices and spreads in several [Central and Eastern European, Middle Eastern, and African] currencies, including the South African rand, Hungarian forint and Turkish lira" (Dkt. 220-6 at 4 (¶ 13)), but none of the named Plaintiffs alleges transacting in FX instruments in those emerging market currencies (SAC ¶¶ 10–20).  Similarly, Plaintiffs rely on snippets from the consent decree as to Standard Chartered Bank (Dkt. 221), but never address how those isolated instances of alleged misconduct affected them; nor do Plaintiffs allege that the "stop loss order" manipulation described harmed any named Plaintiff's RFED.  Likewise, they rely on HSBC Holdings PLC's deferred federal prosecution agreement (Dkt. 220-9), which contains statements about certain unilateral misconduct in two particular FX transactions that harmed an oil and gas exploration company and a financial services company, but neither customer is identified as any named Plaintiff's RFED.

York.  And they provide no explanation for how the CFTC resolutions involve conduct in New York.  To the contrary, many of those resolutions explicitly focus on London conduct.  Mem. 10 & n.9.  Elsewhere, the Opposition repeats inaccurate allegations from the Complaint that have been refuted by Foreign Defendants' contrary, sworn evidence.  For example, Plaintiffs repeat the bare assertion that The Royal Bank of Scotland plc ("RBS") has a "major New York office[]" and conducts a "substantial portion of [its] FX trading in New York" (Opp. 3)—their *only* allegation that purports to connect RBS to New York—while ignoring RBS's sworn statement that it neither has offices in New York, nor has had any FX trading operations based in New York during the putative Class Period or subsequently.  Mem. 17; Gougherty Decl. ¶¶ 4–5.

Separately, as to the "effects" test:  Plaintiffs offer nothing to show a causal connection between harm to any named Plaintiff (through an RFED) and any Foreign Defendants' "*intentional*, and allegedly tortious, actions . . . expressly aimed" at the forum.  *Calder*, 465 U.S. at 789 (emphasis added).  Even if it were "foreseeable" that some RFEDs would make sales downstream into New York, such foreseeability would be "insufficient" to establish jurisdiction of this kind, as "general allegations of price manipulation abroad alone do not establish that a foreign defendant expressly aimed its conduct at" the United States, much less at New York.  *See In re Platinum & Palladium Fix Antitrust Litig.*, 2017 WL 1169626, at *42, 45 (S.D.N.Y. Mar. 28, 2017); *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 339 (2d Cir. 2016).

### B. The Conspiracy Allegations Do Not Sustain Personal Jurisdiction

Plaintiffs are also wrong to contend (Opp. 11–15) that recitation of allegations concerning the conspiracy for liability purposes in the FX spot market establishes jurisdiction vicariously through a conspiracy jurisdiction theory.  Their central error here is to presuppose that whenever there is an alleged conspiracy, there must be conspiracy jurisdiction.  But Second Circuit precedent distinguishes a conspirator's liability for the acts of its co-conspirator from a

conspirator's authority to subject its co-conspirator to jurisdiction consistent with Due Process. Thus, even if the allegations describe a conspiracy in the FX spot market, that does not establish that personal jurisdiction can be exercised over Foreign Defendants on the claims of these particular indirect purchaser Plaintiffs.  Mem. 22–24.

Plaintiffs mischaracterize Foreign Defendants' argument by asserting (Opp. 2) that it is not "dispute[d] that the Court has specific jurisdiction over the non-Foreign Defendants based on the non-Foreign Defendants' acts in furtherance of the Conspiracy that took place in New York and/or were directed at New York."  Foreign Defendants plainly asserted (Mem. 23) that Plaintiffs have *not* met the minimum requirements for conspiracy jurisdiction because "[t]here is no nonconclusory allegation that a transaction in this forum between one of the named Plaintiffs' RFEDs and *any Defendant* was 'in furtherance of' the alleged benchmark and spread manipulation conspiracy" (emphasis added).  This point is manifestly disputed.

Indeed, Plaintiffs mistakenly presume that *any* act they label conspiratorial is sufficiently "in furtherance of" the alleged conspiracy to sustain conspiracy jurisdiction.  But even if Foreign Defendants and non-Foreign Defendants entered into an agreement to manipulate benchmark rates and spreads, there is no nonconclusory allegation that a non-Foreign Defendant transacted with or otherwise harmed one of the *named Plaintiffs'* RFEDs in New York as part of that agreement—without which there is no in-forum act "in furtherance of" the conspiracy about which the named Plaintiffs in this action have grounds to complain.  An alleged hypothetical interaction between a non-Foreign Defendant and an absent class member in New York is not sufficient:  The named Plaintiffs must at this stage establish personal jurisdiction "with respect to each claim asserted" by those named Plaintiffs.  *Schwab*, 883 F.3d at 83 (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)); *see also Beach v. Citigroup Alt. Invs.*

*LLC*, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014) (citing *Selman v. Harvard Med. Sch.*, 494 F. Supp. 603, 613 n.6 (S.D.N.Y. 1980)).  And as purported indirect purchasers whose claims are predicated on the occurrence of transactions between the RFEDs and Defendants, if the named Plaintiffs are to resort to a conspiracy theory to secure personal jurisdiction over Foreign Defendants, they must at least allege that interactions in New York between a non-Foreign Defendant and an RFED resulting in injury to the named Plaintiffs themselves were within the scope of the alleged agreement.  Nowhere in the Complaint is such an interaction depicted; nor do Plaintiffs provide any justification for imputing any such interaction to Foreign Defendants.[5]

### C. The Rule 12(b)(2) Defense Is Preserved As To All Foreign Defendants

Plaintiffs also err in contending (Opp. 23–25) that BNP Paribas Group ("BNPPG") forfeited the jurisdictional defense by not previously filing a Rule 12(b)(2) motion.  Plaintiffs invoke Rule 12(g), but that rule has been "interpreted . . . permissively." *LaCourte v. JPMorgan Chase & Co.*, 2013 WL 4830935, at *8 (S.D.N.Y. Sept. 4, 2013).  As in *LaCourte*, BNPPG did not "act[] with dilatory intent" (*id.*), but instead raised the defense in a diligent and timely manner with no effect on discovery or on any court conference.[6]  Tellingly, Plaintiffs do not even

---

[5] Plaintiffs mischaracterize (Mem. 16) *Leasco Data Processing Equipment Corp. v. Maxwell*, under which the "mere presence of one conspirator . . . does not confer personal jurisdiction over another alleged conspirator," at least absent allegations (missing here) of a partnership with a "general supervision" relationship between them.  468 F.2d 1326, 1343 (2d Cir. 1972) (Friendly, C.J.), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010); *Bertha Bldg. Corp. v. Nat'l Theatres Corp.*, 248 F.2d 833, 836 (2d Cir. 1957); *see* Mem. 21; *see also Platinum Fix*, 2017 WL 1169626, at *48.  *Leasco* requires that, for a co-conspirator's conduct to be imputed to a defendant for jurisdictional purposes, plaintiffs must allege that the defendant directed and controlled the agent's in-forum tortious conduct, knew of those contacts, and benefited from them.  Without the direction and control inherent in a traditional agency relationship, an alleged co-conspirator's actions in the forum are the mere "unilateral activity of . . . a third person," which has long been held insufficient to confer personal jurisdiction.  *Schwab*, 883 F.3d at 85.  There is no agency alleged between a non-Foreign Defendant and a Foreign Defendant.

[6] No Foreign Defendant created any "reasonable expectation that [it would] defend" this action

9

attempt to show any prejudice from BNPPG now raising the defense.  To the contrary, the Court denied the prior Rule 12(b)(2) motion as moot.  Order, Dkt. 136 at 19 (Mar. 15, 2018).  There is no reason to suppose that events would have turned out otherwise had any additional defendants joined that prior motion.  *See Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 145 (1967) (lack of prejudice or effect on outcome justified allowing new defense).

Moreover, the earlier pleading did not give BNPPG a basis for raising a Rule 12(b)(2) defense, because it described the episodes-in-suit and Plaintiffs' asserted injuries in a manner dramatically different from the instant Complaint.  BNPPG "cannot be deemed to have waived objections or defenses which were not known to be available at the time they could first have been made."  *Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir. 2009).[7]

---

"on the merits" without maintaining any Rule 12 defense, nor "cause[d]" this Court "to go to some effort that would be wasted if personal jurisdiction is later found lacking" as to this action. *See Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción*, 832 F.3d 92, 102 (2d Cir. 2016); *Hack v. Stang*, 2014 WL 4652596, at *2–3 (S.D.N.Y. Sept. 18, 2014).  In contrast, *Allgaier v. Peterson*, 2015 WL 5459808, at *3 (S.D.N.Y. Aug. 13, 2015) (cited at Opp. 24), is unavailing.  It involved forfeiture of a Rule 12(b)(2) defense where "defendants [had] engaged in '[c]onsiderable pretrial activity,'" which included "four conferences before the Court, seven conferences before [the] Magistrate [], and a mediation session," and they "also completed discovery on the merits."

[7] In particular, the prior complaint alleged that Defendants' FX spot market trading generated prices RFEDs used to quote prices to retail customers (*see* Dkt. 136 at 3), so BNPPG's FX spot market trading precluded it from joining the Rule 12(b)(2) motion.  But Plaintiffs changed tack after the Rule 12(b)(6) dismissal, and now allege that "every FX instrument Plaintiffs purchased from a Retail Dealer is traceable back to a Defendant liquidity provider" (Order, Dkt. 166 at 11), with each Defendant-to-RFED trade purportedly "matching" an RFED-to-Plaintiff trade (SAC ¶¶ 159, 161–62, 168).  That new account of the episodes-in-suit and alleged injuries raises the serious prospect that BNPPG's interactions with the RFEDs occurred outside New York, supporting a Rule 12(b)(2) defense unavailable against the prior complaint.

Dated: New York, New York  
February 19, 2019

Respectfully submitted,

SULLIVAN & CROMWELL LLP

By: /s/ Matthew A. Schwartz  
Matthew A. Schwartz  
David H. Braff  
125 Broad Street  
New York, New York 10004  
Telephone: (212) 558-4000  
schwartzmatthew@sullcrom.com  
braffd@sullcrom.com

*Attorneys for Foreign Defendant*  
*Barclays Bank PLC*


DAVIS POLK & WARDWELL LLP

By: /s/ Paul S. Mishkin  
Paul S. Mishkin  
Melissa C. King  
Maude Paquin  
450 Lexington Avenue  
New York, New York 10017  
Telephone: (212) 450-4000  
paul.mishkin@davispolk.com  
melissa.king@davispolk.com  
maude.paquin@davispolk.com

*Attorneys for Foreign Defendant*  
*The Royal Bank of Scotland plc*

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Eric J. Stock  
Eric J. Stock  
Indraneel Sur  
200 Park Avenue  
New York, New York 10166  
Telephone: (212) 351-4000  
estock@gibsondunn.com  
isur@gibsondunn.com

D. Jarrett Arp  
Melanie L. Katsur  
1050 Connecticut Avenue, N.W.  
Washington, D.C. 20036  
Telephone: (202) 955-8500  
jarp@gibsondunn.com  
mkatsur@gibsondunn.com

*Attorneys for Foreign Defendants*  
*UBS AG and UBS Group AG*

| | |
|---|---|
| LINKLATERS LLP | LOCKE LORD LLP |
| By: /s/ James R. Warnot, Jr.<br>James R. Warnot, Jr.<br>Adam S. Lurie<br>Patrick C. Ashby<br>1345 Avenue of the Americas<br>New York, New York  10105<br>Telephone:  (212) 903-9000<br>james.warnot@linklaters.com<br>adam.lurie@linklaters.com<br>patrick.ashby@linklaters.com<br><br>*Attorneys for Foreign Defendant*<br>*Société Générale* | By: /s/ Gregory T. Casamento<br>Gregory T. Casamento<br>3 World Financial Center<br>New York, New York  10281<br>Telephone:  (212) 812-8325<br>gcasamento@lockelord.com<br><br>Roger B. Cowie<br>2200 Ross Avenue, Suite 2800<br>Dallas, Texas  75201<br>Telephone:  (214) 740-8000<br>rcowie@lockelord.com<br><br>J. Matthew Goodin<br>Julia C. Webb<br>111 S. Wacker Drive<br>Chicago, Illinois  60606<br>Telephone:  (312) 443-0472<br>jmgoodin@lockelord.com<br>jwebb@lockelord.com<br><br>*Attorneys for Foreign Defendant*<br>*HSBC Bank plc* |
| ALLEN & OVERY LLP | |
| By: /s/ David C. Esseks<br>David C. Esseks<br>Laura R. Hall<br>Rebecca Delfiner<br>1221 Avenue of the Americas<br>New York, New York  10020<br>Telephone:  (212) 610-6300<br>david.esseks@allenovery.com<br>laura.hall@allenovery.com<br>rebecca.delfiner@allenovery.com<br><br>*Attorneys for Foreign Defendant*<br>*BNP Paribas Group* | SIDLEY AUSTIN LLP<br><br>By:  /s/ Andrew W. Stern<br>Andrew W. Stern<br>Alan M. Unger<br>Nicholas P. Crowell<br>787 Seventh Avenue<br>New York, New York  10019<br>Telephone:  (212) 839-5300<br>astern@sidley.com<br>aunger@sidley.com<br>ncrowell@sidley.com<br><br>*Attorneys for Foreign Defendant*<br>*Standard Chartered Bank* |