March 15, 2019

<u>VIA ECF</u>
Honorable Lorna G. Schofield
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

RE:   *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, 13-cv-07789 ("*FOREX*"); *Nypl, et al. v. JPMorgan Chase & Co., et al.*, 15-cv-09300 ("*Nypl*"); *Contant, et al. v. Bank of America Corporation, et al.*, 17-cv-3139 ("*Contant*"); and *Allianz Global Investors GMBH, et al. v. Bank of Am. Corp., et al.*, 18-cv-10364 ("*Allianz*").

Dear Judge Schofield:

Pursuant to this Court's Order (*Allianz*, ECF No. 170), the parties in the above-captioned actions write to submit a revised Proposed Deposition Protocol ("Protocol"), attached hereto as Exhibit A, and to address the one remaining dispute with respect to the Protocol.

**I.      The Burden in *Allianz* of Moving for or Against "Duplicate" Depositions**

     **(a)      *Allianz* Plaintiffs' Position**

The *FOREX* and *Contant* parties have agreed to the Protocol.  The *Allianz* plaintiffs also were willing to join the Protocol, including by proposing the language seen in Section 6 putting a special "good cause" burden on plaintiffs for certain depositions.  However, the parties dispute whether that created-for this-case process should be subject to the following exception:

In light of the timing of their receipt of discovery in their action, the *Allianz* plaintiffs do not bear the burden of demonstrating good cause with respect to any deposition taken in another Action prior to December 31, 2019.  For such depositions, the burden shall instead be on the party opposing the deposition to demonstrate that the deposition would be unreasonably cumulative or duplicative under the standards of the Federal Rules of Civil Procedure.

We filed this opt-out action in November 2018, well after most of the discovery in the *FOREX* class action had been completed.[1]  We received the first discovery in our case—the "chat" materials produced in *FOREX* by a subset of Defendants—just one month ago.  That production consists of *over 20 million pages*, which will obviously take considerable time to

---

[1]   The right to monitor a related class action before deciding to opt-out is a key safeguard—one that would be seriously undermined if opt-outs were denied discovery rights provided under the Rules.  *See generally Gordon v. Hunt*, 117 F.R.D. 58, 61 (S.D.N.Y. 1987) ("the requirements of due process and Rule 23 oblige the court to protect the interests of absent class members who may wish to . . . appear through separate counsel"); Fed. R. Civ. P. 23(c)(2) comment (the "individual interest" in "pursuing [its] own litigation[]" must be "respected").

digest.[2]  But there will be much more.  We need the non-chat documents produced in the class action and elsewhere.  We need client-specific documents.  We need documents regarding claims that were dismissed in *FOREX*.  And we need documents from many Defendants who moved on jurisdictional grounds.  Notably, on these last two examples, we expect Defendants will refuse to produce until after their motions to dismiss are decided, but briefing on those motions will not be complete until July 2019.

Defendants nonetheless suggest we should be expected to start taking depositions immediately.  Worse, they suggest we should be stuck with a deposition record developed before our action even existed, even though the transcripts have not even been provided.  But the Rules allow parties to take their own depositions "without leave of court" unless the deponent was already deposed *in the exact same case*.  Fed. R. Civ. P. 30.  Having provided testimony in a related action is insufficient.  *See, e.g.*, *Bey v. City of N.Y.*, 2007 WL 1893723, at *4 (S.D.N.Y. Jun. 28, 2007) ("The fact that Caruso was deposed . . . in a related case is not a basis for denying the deposition in the instant case").[3]  This ensures fairness because no two cases are the same, regardless of "[w]hatever degree of identity exists between the parties and claims."  *Seah Chee Wei v. Rocky Point Int'l*, 2017 WL 7053821, at *1 (E.D. Wis. June 13, 2017).

In an attempt to compromise, we proposed the language that now appears as Section 6.  Defendants argue adopting our proposal in full, including the challenged text, would "effectively exempt" us from the Court's order.  But the Court's so-ordered approval—of language drafted by Defendants with no prior notice to *Allianz* plaintiffs[4]—does not require any particular approach.  And the two-part compromise seen in Section 6 does, in fact, provide a mechanism for reducing duplicative depositions.  We would be subject to a burden of showing "good cause" to depose a witness who testifies in a related action after December 31, 2019.  In exchange, and in light of the unfairness of expecting us to blindly accept as frozen a testimonial record taken before our case even existed, and then further expecting us to be ready to take depositions before the scope of the case is set or we have had a chance to scratch the surface of the documentary record, it should be incumbent on Defendants to move to quash a subpoena for witnesses deposed prior to December 31, 2019, by showing it to be "unreasonably cumulative or duplicative" under Rules 26(b)(2)(C)(i) and 45(d)(3).  This is a more than fair balance.  Defendants should not be allowed to have their cake and eat it too by extending our proposed burden-shifting compromise into a time period it was never intended to cover.

Defendants bury the crux of their position otherwise in a footnote.  Specifically, they posit that we should be content for other counsel to take the "laboring oar," supposedly reducing

---

[2]  Lead Counsel used a team of up to 90 attorneys to review 1.6 million documents, including 36,000 audio files. *See FOREX*, ECF No. 939 at 34-35.  It can be inferred such a review required well over a year to complete.

[3]  *See also Dennis v. Progressive Northern Ins.*, 2017 WL 10379584, at *1 n.1 (W.D. Okla. Dec. 1. 2017); *Collins v. Progressive Mich. Ins.*, 2017 WL 1177684, at *2 (E.D. Mich. Mar. 30, 2017); *Lee v. U.S.*, 2016 WL 4521675, at *2 (D. Nev. Aug. 26, 2016); *Opperman v. Path, Inc.*, 2015 WL 5852962, at *2 (N.D. Cal. Oct. 8, 2015); *Am. Airlines v. Travelport Ltd.*, 2012 WL 12884824, at *2 (N.D. Tex. Sept. 19, 2012).

[4]  Despite apparently conferring beforehand with *Contant* and *FOREX* plaintiffs, *Allianz* plaintiffs learned of Defendants' request when it appeared on the dockets.  That suggests that even Defendants understood that it made no sense to include a just-filed case in a protocol for cases that have been going on for years.

our need to review the record because we "only" need to be prepared to "ask questions on topics not adequately covered." But it is already known that our case has diverged from *FOREX*, and so will have different focal points. For example, we are pursuing damages for conduct that predates the *FOREX* class period. And our damages claims include benchmark trades, which are not included in the *FOREX* plaintiffs' class damages model. Defendants do not explain how we can be reasonably expected to be prepared to cover such large and important topics anytime soon. And even where the actions do still overlap, without a mastery of the documentary record, we would have no basis to know whether other counsel "adequately covered" a topic or not as to know what additional questions to ask before the deposition ended.[5] This is over and above the fact that the Rules recognize merely sharing the same generalized interest is an insufficient basis to deprive litigants of their rights to have their own counsel develop their own record.

Defendants next argue that our requested addition would allow us to "freely" subject witnesses to multiple depositions. This again elides that we have agreed to take on the burden to show good cause for later depositions. And with respect to earlier depositions, Defendants would retain their right to move to quash as "unreasonably cumulative or duplicative." Having to make such a motion is not some Rube Goldberg device invented by counsel—it is the *default process under the Rules*. *See, e.g.*, *Brown v. Astoria Fed. Sav. & Loan*, 444 Fed. Appx. 504, 505 (2d Cir. 2011) (the party seeking to quash or for a protective order "ha[s] the burden of showing that good cause exist[s] for the issuance of that order"). Defendants will be well-equipped to bring such motions, being informed as in all discovery matters by the opposing party's obligation to meet and confer in good faith. Defendants offer no authority supporting their position that the Rules should nonetheless be flipped entirely on their head, with the burden being put on us, always, to seek leave for our own depositions. Rather, Defendants' own cases confirm that it is the party seeking to restrict the taking of depositions that bears the burden.[6]

Defendants rely heavily on the acquiescence of *Contant* plaintiffs, but that case has been on file since April 2017, and the motions to dismiss have already been decided. In any event, the Rules recognize that different parties will have different litigation strategies. This includes here the fact that *Allianz* plaintiffs made individualized decisions to opt-out and wish to develop their own testimonial record, after having their opportunity to obtain and review the full documentary record. That *Contant* plaintiffs have made a different strategic decision is of no moment.

Finally, Defendants propose the divide between our two-part compromise proposal be shifted all the way back to June 1, 2019. But Defendants' motions to dismiss will not even be fully briefed by then, and thus it is very likely we will have no discovery from most of the

---

[5]   Nor should other plaintiffs be expected to slow down on our account. Understandably, counsel for *FOREX* plaintiffs support our position so that they may continue to move their case to trial without additional delay.

[6]   *See Vale v. Great Neck Water Pollution Control Dist.*, 2016 WL 11269253 (E.D.N.Y. May 31, 2016) (quashing deposition because defendant established that it would unduly burden a non-party); *Martinez-Hernandez v. Butterball, LLC*, 2010 WL 2089251, at *8-9 (E.D.N.C. May 21, 2010) (limiting depositions of non-parties after defendant moved to quash). The remaining cases cited by Defendants merely confirm that Rule 30(b)(6) depositions may be limited by subject matter, *In re Zyprexa Prod. Liab. Litig.*, 2009 WL 10695150, at *4 (E.D.N.Y. May 4, 2009), and that reasonable limits may also be set where a witness was already deposed by the exact same plaintiff, using the same lawyers, in a case against the same defendant, *N.J. Media Grp. v. Fox News Network, LLC*, 2015 WL 7444822, at *4 (S.D.N.Y. Nov. 23, 2015). They are thus irrelevant to this dispute.

jurisdictional defendants, and no discovery from any defendant focused on the early-years period dismissed in *FOREX*. Even that aside, three months is not nearly enough time to review even the 20 million pages received to date, let alone the unknown amount still to come.

In sum, the Rules recognize a party's right to develop their own testimonial record, which the *Allianz* plaintiffs cannot be reasonably expected to do until after the motions to dismiss have been decided, and after they have had a fair opportunity to review the voluminous documentary record. Defendants' efforts to curtail those rights ring particularly hollow here, considering that the *Allianz* plaintiffs are major pension funds, central banks, investment management firms, and other institutions that combined represent many *trillions* in notional in FX transactions. The mere inconvenience to counsel or even some witnesses cannot sensibly outweigh the *Allianz* plaintiffs' rights to pursue such incredibly large claims in accordance with the Rules. The fact the *Allianz* Plaintiffs proposed a compromise solution shifting the burden *at all* in a case with such high stakes was already a huge concession—one that would be incredibly unfair to stick them with if the carve-out regarding the early depositions is taken away.

### (b)   *Allianz* Defendants' Position

Defendants object to the provision *Allianz* plaintiffs propose to add, for the following reasons. <u>First</u>, the provision effectively exempts *Allianz* plaintiffs from coordinating depositions with other parties until December 31, 2019—by which time most, if not all, depositions will be complete—thereby frustrating this Court's direction "to minimize the likelihood that any individual (other than experts) and Rule 30(b)(6) designees will be deposed multiple times." *Allianz*, ECF No. 105, at 2. The Federal Rules of Civil Procedure require that limitations be placed on the frequency or extent of discovery if a court determines that the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i); *see also Vale v. Great Neck Water Pollution Control Dist.*, No. 14-CV-4229, 2016 WL 11269253, at *2 (Shields, M.J.) (citing the same). Courts have the "discretion to circumscribe discovery even of relevant evidence by making any order which justice requires 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Vale*, 2016 WL 11269253, at *2 (quoting Fed. R. Civ. P. 26(c)(1)). In entering the December 20, 2018 Order (*Allianz*, ECF No. 105), this Court acknowledged the need for such limitations and its discretion to exercise such authority. This Court is not alone in that regard. Other courts have similarly followed this rule and limited a party's ability to seek duplicative testimony on topics the witness has already testified to in related actions. *See In re Zyprexa Prod. Liab. Litig.*, No. 04-MD-1596, 2009 WL 10695150, at *4 (E.D.N.Y. May 4, 2009) (denying motion to compel deposition of a witness previously deposed in related actions on the same subjects, ruling that "if the transcripts are sufficiently responsive to the State's Rule 30(b)(6) notice, the State will not be permitted to conduct duplicative depositions and retread ground already covered").[7] That is precisely what

---

[7]   *See also N. Jersey Media Grp. Inc. v. Fox News Network, LLC*, No. 14 Civ. 7630, 2015 WL 7444822, at *4 (S.D.N.Y. Nov. 23, 2015) (affirming order limiting the deposition of a person previously deposed in a related action to topics "which he previously was not questioned about" because those topics related to a presentation the witness gave *after* the earlier deposition, and further limiting that deposition to two hours); *Martinez-Hernandez v. Butterball, LLC*, No. 5:07-CV-174, 2010 WL 2089251, at *8–9 (E.D.N.C. May 21, 2010), *aff'd in part, vacated in part*, No. 5:07-CV-174, 2011 WL 4549101 (E.D.N.C. Sept. 29, 2011) ("[C]onsidering their

*(cont'd)*

this Court ordered the parties to seek to avoid here, and is what the *Allianz* plaintiffs' proposed insertion would effectively exempt them from.

*Allianz* plaintiffs' assertion—that it is unfair for them to be content with other counsel taking the "laboring oar" on depositions and "stuck" with a testimonial record when their case involves distinct allegations—misrepresents the Protocol, which expressly provides for a process to re-depose witnesses in certain circumstances. *See* Section 6. If *Allianz* plaintiffs see the need to re-depose a previously deposed witness on topics unique to their case or on documents produced later in discovery (*e.g.*, pre-2007 claims in the event they survive a motion to dismiss), the Protocol allows them to seek such depositions simply by identifying specific reasons why such additional deposition is, in fairness, needed, allowing the parties to confer in good faith on the specific need for such deposition. Given the similarities in the underlying claims, the parallel timing for discovery, and the other coordination contemplated under the Protocol, defendants only take issue with *Allianz* plaintiffs' position that the Protocol should allow them to freely subject witnesses to multiple depositions without demonstrating any need to do so.

<u>Second</u>, there is no reason the *Allianz* plaintiffs cannot meaningfully participate in depositions that may be noticed by other parties in the coming months.[8] Non-Foreign Defendants (all defendants except for those seeking to move to dismiss the *Allianz* complaint pursuant to Federal Rule of Civil Procedure 12(b)(2), against whom discovery is stayed, *Allianz*, ECF No. 144, at 3) have begun early discovery with *Allianz* plaintiffs. For example, on January 29, 2019, defendants produced to *Allianz* plaintiffs the unredacted complaint in *FOREX*, which *Allianz* plaintiffs then used to file an amended complaint on March 1, 2019. *Allianz*, ECF No. 166. On February 15, 2019, Non-Foreign Defendants produced to *Allianz* plaintiffs chat transcripts they had produced in the *FOREX* action.[9] (Notably, this production occurred only about five weeks after *Contant* plaintiffs received a similar production from the non-settling defendants in that action.) On February 15, 2019, *Allianz* plaintiffs served their First Set of Requests for Production of Documents to defendants, to which Non-Foreign Defendants will be responding by March 18, 2019. Despite being on a similar footing as *Contant* plaintiffs with respect to receipt of defendants' documents, *Allianz* plaintiffs propose that they be exempt from participating in depositions for another <u>ten months</u> (until December 31, 2019), with the right to depose individuals deposed in other Actions a second time, unless defendants demonstrate that such depositions would be unreasonably cumulative or duplicative.[10]

---

*(cont'd from previous page)*

    extensive depositions already given [in a related action] . . . on other matters relevant to this action, the court finds good cause to narrowly limit the scope of the . . . depositions").

[8]    The issue here is not whether the *Allianz* plaintiffs should be ready to notice and take depositions on their own. Rather, it is merely whether they should be able to participate in depositions noticed by other plaintiffs. As to those depositions, the other plaintiff presumably is ready and able to take the laboring oar and the *Allianz* plaintiffs only need to be prepared to ask questions on topics not adequately covered.

[9]    UBS Securities LLC made its production to *Allianz* plaintiffs on February 22, 2019.

[10]    *Allianz* plaintiffs cite *Gordon v. Hunt* as authority for the proposition that their "right to closely monitor a related class action before deciding to pursue their own claims" would be "seriously undermined if opt-outs were denied discovery rights provided under the Rules." *Gordon* provides no such support. *Gordon* concerned the adequacy of notice to class members, *see Gordon*, 117 F.R.D. at 61, not the "requirements of due process and Rule 23" generally, and certainly not the right of discovery by plaintiffs in an opt-out action.

Third, given the access to prior deposition transcripts and future depositions provided to all plaintiffs under the Protocol, it is not at all contrary to the Federal Rules for the Court to exercise its discretion to place upon *Allianz* plaintiffs the burden of demonstrating good cause as to why the prior testimony did not cover the topics relevant to their case.

Nevertheless, in an attempt to compromise, defendants offered to give *Allianz* plaintiffs the benefit of being excused from demonstrating good cause with respect to repeating any deposition taken in another Action prior to June 1, 2019 (as opposed to December 31, 2019), thereby giving *Allianz* plaintiffs nearly three more months to review defendants' productions. *Allianz* plaintiffs rejected that proposal. Accordingly, defendants object to effectively exempting *Allianz* plaintiffs from deposition coordination for the next ten months and respectfully submit that the Protocol be ordered by the Court without the provision *Allianz* plaintiffs request.

## II.   *Nypl* Stipulation

### (a)   *Nypl* Defendants' Statement

*Nypl* plaintiffs propose a framework to be exempt from and proceed outside the Protocol. In support of their request to proceed on a separate track, *Nypl* plaintiffs have assured all parties in the Actions that they only seek a limited set of depositions, to include only two categories: (1) the signatories to the May 20, 2015 plea agreements between the United States Department of Justice and Barclays PLC, Citicorp, JPMorgan Chase & Co., Royal Bank of Scotland PLC, and UBS AG, and the December 11, 2012 and January 18, 2018 deferred prosecution agreements between the United States Department of Justice and HSBC Holdings PLC and/or a corporate representative designated under Rule 30(b)(6) that is knowledgeable about said corporations' May 20, 2015 plea agreements and the December 11, 2012 and January 18, 2018 deferred prosecution agreements, on topics limited to those agreements; and (2) the deposition of Matthew Gardiner, who was a cooperating witness for the Department of Justice in the trial of *United States v. Usher et al.*, No. 1:17-cr-00019-RMB (S.D.N.Y.). *Nypl* plaintiffs represent that they will not seek to depose any other of defendants' current or former employees. Although *Nypl* defendants would have preferred to include *Nypl* plaintiffs in the Protocol, they have acceded to *Nypl* plaintiffs' request to proceed by a separate *Nypl*-specific stipulation, while still allowing the *Nypl* parties to use the transcripts from depositions taken by any party in any of the Actions. Defendants have reserved their rights to object to any depositions *Nypl* plaintiffs notice pursuant to the stipulation. That stipulation and proposed order is attached hereto for the Court's consideration as Exhibit B.

### (b)   *Nypl* Plaintiffs' Statement

*Nypl* Plaintiffs object to defendants' statement. Enclosed is the separate deposition protocol stipulation in the *Nypl* case. Anything else, especially a description or interpretation of the content of the stipulation must be excluded. The stipulation and nothing else, says what the parties agreed to. No side statements to the Judge should be allowed.

Respectfully submitted,

SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP

By: /s/ Boris Bershteyn
Boris Bershteyn
Tansy Woan
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
boris.bershteyn@skadden.com
tansy.woan@skadden.com

Gretchen M. Wolf (admitted pro hac vice)
155 N. Wacker Dr., Suite 2700
Chicago, Illinois 60606
Telephone: (312) 407-0956
gretchen.wolf@skadden.com

*Attorneys for Defendants JPMorgan Chase
& Co., JPMorgan Chase Bank, N.A., and
J.P. Morgan Securities LLC*[11]

---

[11] Skadden, Arps, Slate, Meagher & Flom LLP does not represent JPMorgan Chase & Co., JPMorgan Chase Bank, N.A. and J.P. Morgan Securities LLC with respect to claims by BlackRock, Inc. or BlackRock-related entities listed in Appendix C of the complaint in *Allianz Global Investors GMBH, et al. v. Bank of Am. Corp., et al.*, 18-cv-10364.