**BERGER | MONTAGUE**

---

**MICHAEL C. DELL'ANGELO** / *MANAGING SHAREHOLDER*
d 215.875.3080  m 610.608.8766 | mdellangelo@bm.net

April 16, 2019

**VIA ECF**
The Honorable Lorna G. Schofield
U.S. District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

**Re:** *Contant, et al. v. Bank of Am. Corp., et al.*, No. 17–cv-3139-LGS (S.D.N.Y.)

Dear Judge Schofield:

    Pursuant to this Court's April 12, 2019 Order (ECF No. 252), Plaintiffs respectfully submit this letter in response to FXDirectDealer, LLC's ("FXDD") Motion to Quash Subpoena (ECF No. 251) (the "Motion"). FXDD is a retail foreign exchange dealer ("RFED") that engaged in transactions with named Plaintiffs Ugnius Matkus and Charles G. Hitchcock, III, as well as other members of the proposed Classes during the Class Period.[1] Plaintiffs' subpoena directed to FXDD is one of 60 subpoenas that Plaintiffs have issued to RFEDs seeking transactional data and other information pertaining to Class-member retail FX transactions. The information requested in the FXDD subpoena is central to this case and unavailable from any source other than FXDD. Notably, Defendants have also served subpoenas seeking substantially similar documents and data from some of the same RFEDs served by Plaintiffs. The requested Class-member transactional data and related RFED pricing information is unquestionably relevant to the estimation of damages and impact and necessary to identify Class members.

    FXDD filed its motion to quash without a phone call to Plaintiffs' counsel, much less meeting and conferring as required by S.D.N.Y. Local Civil Rule 37.2 and Rule III.C.3 of the Court's Individual Rules and Procedures.[2] Regardless, all of the issues presented by FXDD's Motion are either easily resolved or lack merit. FXDD fails to meet the burden of persuasion required to sustain a motion to quash, and its Motion should therefore be denied.[3]

    First, FXDD claims the subpoena is invalid because it seeks production of responsive materials more than 100 miles from its primary place of business. *See* Motion at 3; Fed. R. Civ. P. 45(c)(2)(A). This issue is easily resolved. Plaintiffs consent to modification of the subpoena to require production of the requested information at Berger Montague PC's office located 1818 Market St., Ste. 3600, Philadelphia, PA 19103, which is within 100 miles of FXDD's principal place of business in Jersey City, New Jersey. Alternatively, should FXDD wish, Plaintiffs will

---

[1] *See* Plaintiffs' Response to Defendants BNP Paribas US Wholesale Holdings Corp.'s and BNP Paribas Securities Corp.'s First Interrogatory to Plaintiffs (listing the RFEDs with which Plaintiffs transacted) (attached as Exhibit 1).
[2] In addition to not contacting Plaintiffs' counsel in an effort to resolve the issues, as the Court has noted, FXDD also failed to file a pre-motion letter in accordance with the Court's Individual Rule III.A.1. *See* ECF No. 252.
[3] *See Strike 3 Holdings, LLC v. Doe*, No. 18-cv-2648-VEC, 2019 WL 78987, at *2 (S.D.N.Y. Jan. 2, 2019) ("[T]he burden of persuasion in a motion to quash a subpoena . . . is borne by the movant." (citation omitted)).

designate a place of production in Jersey City, New Jersey, or another mutually convenient location.

FXDD next argues that the subpoena runs afoul of Rule 45 because it "requests production of trade secret and confidential information that is not relevant to any parties' claims." Motion at 4. The Motion lists certain requests from the subpoena and, without any explanation, states that those requests call for materials that are either "trade secrets" or "confidential or privileged."[4] *Id.* at 4-5. Even assuming that is so, the issue is also easily resolved as the Court previously entered a Stipulation and Order of Confidentiality ("Protective Order") that directly addresses FXDD's concerns. *See* ECF No. 185 (Protective Order).[5] The Court-ordered Protective Order provides broad coverage for information produced in this action and governs the disclosure and use of "all documents, including but not limited to electronically stored information, testimony, exhibits, interrogatory answers, responses to requests to admit, and any other materials and information produced or provided." *Id.* at 1. The Protective Order clearly applies to any materials produced by FXDD, as it defines a Disclosing Party as a party *or non-party* that produces discovery material in this action, and expressly enables non-parties to designate discovery material as "Confidential" or "Highly Confidential." *Id.* at 3-4 (emphasis added).[6] These designations explicitly allow FXDD to preserve the confidentiality of any materials that it deems to contain trade secrets or other confidential information.

FXDD also argues that the subpoena is unduly burdensome. Again, FXDD is wrong. In assessing whether a subpoena imposes an undue burden, courts weigh "the burden to the subpoenaed party against the value of the information to the serving party" by considering factors such as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."[7] "Once relevance has been shown, it is up to the responding party to justify curtailing discovery."[8] "Because the burden is on the party seeking to quash a subpoena,

---

[4] Though FXDD uses the term "privileged," it appears that, at most, the information could be confidential. *See* Motion at 5 (describing "confidential or privileged" information as location of customers, quotes given to customers, contracts with customers, how much certain groups of customers trade, programs used, and FXDD's exposure in certain trades). FXDD invokes no specific privilege, statutory or otherwise, and none can be gleaned from its barebones Motion.

[5] *See In re Kleimar N.V.*, 220 F. Supp. 3d 517, 522 (S.D.N.Y. 2016) (denying motion to quash a subpoena where confidentiality issues were addressed by a protective order); *BSN Med., Inc. v. Parker Med. Assocs., LLC*, 2011 WL 197217, at *4 (S.D.N.Y. Jan. 19, 2011) (denying motion to quash a subpoena and noting that "to the extent these requests seek trade secrets, the protective order will prevent their disclosure"); *Gomez v. J.R. Hycee Conyeor Co.*, No. 06-cv-2827-NGG, 2008 WL 64675, at *1 (E.D.N.Y. Jan. 4, 2008) (rejecting non-party motion to quash and holding that "a protective order limiting the use of the documents produced to this litigation . . . adequately addresses [the non-party's] interest in keeping its proprietary information confidential").

[6] In another section, the Protective Order reiterates that as part of third-party discovery, a non-party may designate discovery material as "Confidential" or "Highly Confidential." *Id.* at 25. "Confidential" includes information that "contains or would disclose non-public, confidential, personal, proprietary, financial, ***customer, client or commercially sensitive information, confidential trade secrets or non-public research.***" *Id.* at 2 (emphasis added). "Highly Confidential" includes information that contains "material regarding trading and investment strategies, ***pricing and cost information***, ***customer lists***, business strategy, ***trade secrets and other commercial or financial information***, the disclosure of which to another Party or non-party would create a substantial risk of causing the Disclosing Party to suffer significant competitive or commercial disadvantage . . ." *Id.* (emphasis added). The Protective Order also provides limits the use of discovery information to this action and further delineates to whom "Confidential" or "Highly Confidential" information may be disclosed within this action in order to safeguard against unauthorized or inadvertent disclosure of such material. *Id.* at 5, 13-17, 23.

[7] *Citizens Union of N.Y. v. AG of N.Y.*, 269 F. Supp. 3d 124, 138-39 (S.D.N.Y. 2017) (citations omitted).

[8] *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) (citation omitted).

that party cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance."[9] Here, FXDD has made no attempt to explain the specific burdens imposed or why those burdens outweigh the value of the information to Plaintiffs. To the extent that Plaintiffs' requests call for any documents that "cannot be compiled in an efficient manner," *see* Motion at 6, Plaintiffs' counsel will attempt to work with counsel for FXDD to develop search terms and other methods to enable FXDD to efficiently respond to Plaintiffs' requests. However, FXDD's unsubstantiated conclusory assertions of burden cannot sustain its Motion here, *see* Motion at 5-7, particularly given the importance of the requested materials.

FXDD's bald assertion that "[t]here is no relevance in any of FXDD's documents," Motion at 6, is wrong. To the contrary, the requested documents and data—including transactional data for Class-member retail FX transactions with FXDD, as well as information sufficient to determine how FXDD's retail FX prices were determined during the Class period—are unquestionably relevant to proving impact and damages and necessary to identify Class members.[10] Only FXDD has transactional and identifying information for FX transactions with its clients, and without that information, Plaintiffs and their experts may be unable to identify members of the proposed Classes that transacted with FXDD, estimate damages, or determine classwide impact. The relevance of the requested information is confirmed by the Defendants' issuance of subpoenas to other RFEDs seeking substantially similar information.[11]

FXDD's complaint about the time period for the requested information fares no better. The time period closely tracks the alleged Class Period, which is driven by the duration of the conspiracy amongst Defendants. Plaintiffs' requests seek limited information post-Class Period to analyze pricing in a presumably conspiracy-free period, which is critical to establishing pricing but for the alleged anticompetitive conduct.[12] The documents and data requested are likely all stored electronically, which substantially reduces FXDD's burden.[13]

For the above reasons, FXDD's Motion should be denied. Plaintiffs respectfully request that the Court enter an order (1) providing that the subpoena shall be modified to require production of the requested materials in Jersey City, New Jersey or at a mutually convenient location to be agreed upon by Plaintiffs and FXDD; and (2) denying FXDD's Motion to Quash.

---

[9] *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 299 (S.D.N.Y. 2009); *see also In re Namenda Direct Purchaser Antitrust Litig.*, No. 15-cv-7488-CM, 2017 WL 3822883, at *9 (S.D.N.Y. Aug. 30, 2017) (rejecting non-party motion to quash because the non-party "failed to establish with any specificity the burden which compliance with the [subpoena] will impose").

[10] ECF No. 251-1 (FXDD Subpoena), at 6-7; *see also BSN Med., Inc.*, 2011 WL 197217, at *3 (rejecting motion to quash subpoena that requested confidential customer information from the non-party, where the requesting party stated that the information was necessary for purposes of calculating damages).

[11] As of the date of this Letter, Defendants have served subpoenas on 36 RFEDs, requesting largely the same information that Plaintiffs request here from FXDD. An example of one of the RFED subpoenas served by Defendants, served on the RFED OANDA Corporation by the Goldman Sachs Defendants, is attached as Exhibit 2.

[12] Pursuant to this Court's November 16, 2018 Order (ECF No. 176), non-Foreign Defendants produced to Plaintiffs documents and recordings produced in discovery in *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-cv-7789-LGS, as well as transactional data for spot FX Instrument transactions with entities identified as RFEDs by Plaintiffs. This production of transactional data covered the period from December 1, 2005, through December 31, 2015, a longer period than the one in the FXDD subpoena.

[13] *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003) ("Electronic evidence is frequently cheaper and easier to produce than paper evidence because it can be searched automatically, key words can be run for privilege checks, and the production can be made in electronic form obviating the need for mass photocopying.").

April 16, 2019                                               Respectfully submitted,

                                                            BERGER MONTAGUE PC

By: /s/ Michael Dell'Angelo
Michael Dell'Angelo
Michael Kane
Joshua T. Ripley
1818 Market Street, Suite 3600
Philadelphia, PA 18103
Telephone: (215) 875-3000
mdellangelo@bm.net
mkane@bm.net
jripley@bm.net

SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
Garrett W. Wotkyns
8501 North Scottsdale Road, Suite 270
Scottsdale, AZ 85253
Telephone: (480) 428-0142
gwotkyns@schneiderwallace.com

PEIFFER WOLF CARR & KANE, APLC
Joseph C. Peiffer
201 St. Charles Avenue, Suite 4610
New Orleans, LA 70170
Telephone: (504) 523-2434
jpeiffer@pwcklegal.com

MCCULLEY MCCLUER PLLC
R. Bryant McCulley
Stuart McCluer
1022 Carolina Boulevard, Suite 300
Charleston, SC 29451
Telephone (855) 467-0451
bmcculley@mcculleymccluer.com
smccluer@mcculleymccluer.com

*Attorneys for Plaintiffs and the Proposed Classes*