UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES CONTANT, *et al.*, <br><br> Plaintiffs, <br><br> -against- <br><br> BANK OF AMERICA CORPORATION, *et al.*, <br><br> Defendants. | 1:17-Civ-03139-LGS |

**NOTICE OF SUBPOENA TO NON-PARTY OANDA CORPORATION**

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants The Goldman Sachs Group, Inc. and Goldman Sachs & Co. LLC, by and through its undersigned attorneys, will serve a subpoena for the production of documents, a copy of which is attached hereto, on non-party, OANDA Corporation. The documents are to be produced on or before May 10, 2019, or on another mutually agreeable date.

Dated: April 9, 2019

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: /s/
Thomas J. Moloney
George S. Cary
Victor Hou
Rishi Zutshi
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
tmoloney@cgsh.com
gcary@cgsh.com
vhou@cgsh.com
rzutshi@cgsh.com

*Attorneys for Defendants The Goldman Sachs Group, Inc. and Goldman Sachs & Co. LLC*

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

| | |
|---|---|
| JAMES CONTANT, et al. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 17 CIV. 3139 (LGS) |
| Bank of America Corporation, et al. | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: OANDA CORPORATION, c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
　　See Attachment A

| Place: United States District Court for the District of Delaware, 844 North King St, Wilmington, DE 19801* | Date and Time: 05/10/2019 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

　　The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 04/09/2019

　　　　　　　*CLERK OF COURT*
　　　　　　　　　　　　　　　　　　　　　　　　　OR　　　　　　　　　　[signature]
　　　　　　　_____　　　　　　　　_____
　　　　　　　*Signature of Clerk or Deputy Clerk*　　　　　　　　　　　*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
The Goldman Sachs Group, Inc. and Goldman Sachs & Co. LLC , who issues or requests this subpoena, are:
Rishi Zutshi, CGSH, One Liberty Plaza, New York, NY 10006 - rzutshi@cgsh.com - 212-225-2085

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

　　*Please contact Rishi Zutshi (212-225-2085 - rzutshi@cgsh.com) to discuss an alternative address for delivery of responsive documents via Federal Express at Goldman Sachs' expense.

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 17 CIV. 3139 (LGS)

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**Attachment A**

**DEFINITIONS**

The following Definitions apply throughout these Requests without regard to capitalization.  In addition, the Definitions and rules of construction set forth in Rule 34 of the Federal Rules of Civil Procedure and Rule 26.3 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules") are incorporated by reference and apply throughout this Attachment A as if fully set out herein, except to the extent that the local rules of the forum in which the subpoena is issued provide otherwise.

1. The term "Action" refers to the action pending in the United States District Court for the Southern District of New York, captioned *Contant, et al.* v. *Bank of America Corporation, et al.*, No. 17 Civ. 3139 (LGS), and all cases consolidated with it.  The publicly-filed version of the operative complaint, the Second Consolidated Class Action Complaint, dated November 28, 2018, Dkt. 183 ("Complaint"), is attached as Appendix A.

2. The term "Associated Person" refers to an individual who solicits orders, customers, or customer funds (or who supervises persons so engaged) on behalf of a CFTC registrant.

3. The term "CFTC" refers to the United States Commodity Futures Trading Commission.

4. The term "Counterparty" refers to any person or entity that you transacted FX Instruments with, including completed Transactions and Orders that You placed with or received from, whether such Orders were filled, partially filled, or unfilled.

5. The term "Defendants" refers to Bank of America Corporation; Bank of America, N.A.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; MUFG Bank, Ltd., previously

1

known as The Bank Of Tokyo Mitsubishi UFJ Ltd.; Barclays Bank plc; Barclays Capital Inc.; BNP Paribas Group; BNP Paribas US Wholesale Holdings Corp., previously known as BNP Paribas North America, Inc.; BNP Paribas Securities Corp., which now includes BNP Paribas Prime Brokerage, Inc.; Citigroup Inc.; Citibank, N.A.; Citicorp; Citigroup Global Markets Inc.; Credit Suisse AG; Credit Suisse Securities (USA) LLC; Deutsche Bank AG; Deutsche Bank Securities Inc.; The Goldman Sachs Group, Inc.; Goldman Sachs & Co. LLC; HSBC Bank Plc; HSBC North America Holdings, Inc.; HSBC Bank USA, N.A.; HSBC Securities (USA) Inc.; JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A.; Morgan Stanley; Morgan Stanley & Co., LLC; Morgan Stanley & Co. International plc; RBC Capital Markets LLC; The Royal Bank of Scotland plc, now known as NatWest Markets Plc; RBS Securities Inc., now known as NatWest Markets Securities Inc.; Société Générale; Standard Chartered Bank; UBS AG; UBS Group AG; and UBS Securities LLC.

6. The term "Document," "Communication," "Concerning," and "Person" have the meanings set forth in Local Civil Rule 26.3.

7. The term "FX" refers to foreign exchange.

8. The terms "FX Instrument" or "FX Instruments" refer to any FX spot, rolling spot, forward, swap, future, option, or any other Transaction or instrument of which the trading or settlement value is related in any way to FX rates.

9. The term "Introducing Broker" refers to an individual or organization that solicits or accepts orders to transact in various products, including FX Instruments, but does not accept money or other assets from customers to support these orders and where such transactions are executed and risk managed by a separate entity such as an RFED.

10. The term "Liquidity Provider" shall include any non-customer counterparty with which You transacted, including institutions that act as market makers in FX Instruments in that the institutions act as both buyers and sellers of FX Instruments, and dealer banks as referenced in paragraph 152 of the Complaint.

11. The term "Named Plaintiffs" refers to James Contant, Sandra Lavender, Victor Hernandez, Martin-Han Tran, FX Primus Ltd., Carlos Gonzalez, Ugnius Matkus, Charles G. Hitchcock III, Jerry Jacobson, Tina Porter, and Paul Vermillion.

12. The term "NFA" refers to the National Futures Association.

13. The term "Order Data" refers to, for any request to execute a trade, contract, assignment, novation, settlement, expiration, exercise, termination, or any other agreement to exchange things of value (an "Order"), regardless of form or structure, including limit order, stop loss order, trailing stop order, market order, fixing order, or other type of Order, the data, information, Documents, or records showing the terms and specifications of such Order, including:

    (a) any identifying number for the Order and any associated or linked Order;

    (b) any identifying number for any resulting, associated or linked Transaction;

    (c) the instrument type (e.g., spot, forward, swap, future, option, etc.);

    (d) the Order type (e.g., limit, stop-loss, market, fixing, etc.);

    (e) terms of the Order, including price, tenor, currency pair, and notional value;

    (f) the date and time the Order was placed;

    (g) the date(s) on which the Order was to expire;

(h) any instructions related to the Order, including fill instructions (e.g., all-or-nothing);

(i) the identity of the party and person who placed the Order including any unique identifying numbers that You or any other person assigned, the true name, address, domicile, phone number, and other identifying information;

(j) the names of any assignee, fund, beneficiary, or beneficial holder or owner for which the Order was entered;

(k) Order entry timestamps, including all data showing rejected Orders or Order confirmations;

(l) if the Order was rejected, reason for rejection;

(m) records of Order modifications, cancellations, or any other Order life-cycle events, including confirmations, modifications, rejections, cancellations, partial fills, total fills, etc.;

(n) any broker or other intermediary who played any role in the Order;

(o) the means, method, or mechanism by which the Order was placed (e.g., phone, chat, email, text, Web site, trading platform, etc.), including the branded or trade name for any electronic order book platform; and

(p) The location of the person that placed the Order at the time the Order was placed.

14. The term "Position(s)" refers to any stake in or economic exposure to an FX Instrument, security, market, or other financial product.

15. The terms "Retail Foreign Exchange Dealers" or "RFEDs" refers to any entity registered (with the CFTC, NFA or other regulator or self-regulatory organization) as a retail foreign exchange dealer or otherwise operating as a retail foreign exchange dealer or an entity that provides trading services in FX Instruments to retail customers.

16. The term "Transaction Data" refers to, for any contract, assignment, novation, settlement, expiration, exercise, termination, or any other agreement to exchange things of value regardless of form or structure (each, a "Transaction"), the data, information, Documents, or records showing the terms and specifications for such Transaction, including:

(a) any identifying number for the Transaction and any associated or linked Transactions;

(b) any identifying number for an Order associated with or linked to the Transaction;

(c) the type (e.g., spot, forward, swap, future, option, etc.) and terms of the Transaction, including price, tenor, currency pair, and notional value;

(d) the identity of the Counterparty to the Transaction including any unique identifying number that You or any other person assigned, the true name, address, domicile, phone number, and other identifying information;

(e) the date and time the Transaction was executed, and the effective date of the Transaction;

(f) the date(s) on which the Transaction was to expire, terminate, or settle, and the date(s) on which the Transaction in fact expired, terminated, or settled;

(g)  the names of any assignee, fund, beneficiary, or beneficial holder or owner for which the Transaction was executed;

(h)  any broker or other intermediary who played any role in the Transaction;

(i)  the identity of any salesperson, trader, risk manager, assistant, broker, investment manager, agent, or representative of each party to the Transaction, who played any role in the Transaction;

(j)  the amount of any fee paid or received (including clearing, execution, and broker fees) on the Transaction;

(k)  the amount of any commission paid or received on the Transaction;

(l)  the direction You held in the Transaction;

(m)  the terms and date of any correction, amendment, novation or cancellation of the terms of the Transaction;

(n)  the date, time and type of Order that led to the Transaction, including limit order, stop loss order, trailing stop order, market order, fixing order, or other type of order;

(o)  the means, method, or mechanism by which You placed any Order that led to the Transaction and/or by which a Transaction was executed (e.g., phone, chat, email, text, Web site, trading platform, etc.), including the brand or trade name for any commercially available electronic trading platform;

(p)  the location of the person who placed the Order at the time the Order was placed and/or the Transaction was executed;

6

  (q)  the location of the desk or trader of the Counterparty that executed the Transaction;

  (r)  any mark-to-market valuations of the Transaction;

  (s)  the amount and direction of any payments or cash flows associated with, arising out of, or resulting from the Transaction, including any supporting credit Documents/agreements as well as collateral or margin arrangements;

  (t)  clearing arrangement(s) for the Transaction;

  (u)  bid and ask quotes received by You in connection with each Transaction;

  (v)  Your profit or loss and cost of trading for each Transaction; and

  (w)  all other data elements or data fields, including all versions of data for each Transaction, You maintain or have access to regarding such Transactions.

17.  The terms "You," and "Your" refer to OANDA Corporation and any of its predecessors, successors, divisions, parent, subsidiaries, and affiliates, including without limitation, IBFX, Inc., Interbank FX, LLC, TradeStation FOREX, Inc., and TradeStation Securities, Inc.; each person directly or indirectly, wholly or in part, owned or controlled by it; and all present and former principals, directors, officers, employees, agents, attorneys, advisors, or other persons acting or purporting to act on its behalf.

18.  To bring within the scope of these Requests all information that might otherwise be construed to be outside of their scope, the following rules of construction apply:  (i) the word "including" shall be read to mean including without limitation; (ii) the present tense shall be construed to include the past tense and vice versa; (iii) references to employees, officers,

directors, or agents shall include both current and former employees, officers, directors, agents, and representatives; (iv) the terms "and" and "or," and "all," "any," and "each" shall be construed in accordance with Local Civil Rule 26.3; and (v) in accordance with Local Civil Rule 26.3, the use of the singular form of any word includes the plural and vice versa.

## **INSTRUCTIONS**

1.      In producing Documents, You are to produce all Documents described below that are in Your possession, custody, or control, including those Documents in the possession, custody, or control of Your employees, agents, investigators, accountants, or other persons acting or purporting to act on your behalf, regardless of location.

2.      Electronically stored information should be produced in compliance with the formats, procedures, and protocols set forth in the Stipulation and Order Establishing the Protocol for the Production of Documents and Electronically Stored Information ("ESI"), which is attached as Appendix B.

3.      If Documents produced in response to these requests contain confidential information, You may designate the material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" pursuant to the Stipulation and Order of Confidentiality, which is attached as Appendix C.

4.      Unless otherwise instructed or clear from the context of the request, these requests seek responsive Documents and Communications authored, generated, disseminated, drafted, produced, reproduced, received, obtained, or otherwise created or distributed, concerning, or in effect during the period from December 1, 2007, to December 31, 2013.

**REQUESTS FOR PRODUCTION**

1. All Transaction Data for Transactions in FX Instruments You executed either for Your own account or on behalf of Your customer.

2. All Order Data related to Transactions in FX Instruments You executed either for Your own account or on behalf of Your customer.

3. Data definitions for each field produced for all Transaction Data and Order Data.

4. All end-of-day and intra-day reports, and Documents related to such reports, reflecting Your Position in FX Instruments, by currency pair.

5. All end-of-day and intra-day reports, and Documents related to such reports, reflecting each of Your customers' Positions in FX Instruments, by currency pair.

6. Documents related to Your corporate structure (and any changes thereto) during the relevant period, including organization charts sufficient to identify departmental organization and related management and personnel, including any affiliate operating as an RFED.

7. Documents sufficient to identify the time period during which You or any of Your affiliates operated as an RFED or were registered as an RFED with the CFTC or any other regulator, or were a member of the NFA or any other self-regulatory organization or association related to trading in FX Instruments.

8. All Documents prepared or submitted in connection with any and all applications by You to register, or maintain registration, with the CFTC as an RFED or the NFA as a FOREX Dealer member, including any NFA Form 7-R, NFA Form 8-R, NFA Annual Questionnaire, or Documents related to your NFA FOREX Dealer membership.

9. All Documents reflecting any decision by You to withdraw, amend or modify an application to or registration with the CFTC as an RFED or NFA as a FOREX Dealer member.

10. Documents sufficient to identify all of Your employees or Associated Persons with any role or responsibility for Your Transactions in FX Instruments, Your relationships with Liquidity Providers for FX Instruments, and Your relationships with customers for FX Instruments, including such employees' or Associated Persons' titles, supervisors, and dates of employment or association.

11. Documents related to Your operation as an RFED sufficient to describe Your acquisition of or agreement to receive any FX customer accounts from IBFX, Inc. and any due diligence materials provided in such acquisition.

12. Documents related to Your operation as an RFED sufficient to describe Your acquisition of or agreement to receive any FX customer accounts from TradeStation FOREX, Inc. and any due diligence materials provided in such acquisition or transfer.

13. Documents sufficient to identify whether any of Your customers entered into Transactions in FX Instruments with You through Introducing Brokers and Documents sufficient to show how the involvement of any Introducing Broker in Transactions between You and Your customers impacted bid-ask spreads, pricing, or customer rebates.

14. All Documents governing or related to Your Transactions in FX Instruments with any and all Liquidity Providers, including but not limited to, master agreements, ISDA agreements, electronic trading agreements, credit agreements, prime brokerage agreements, exclusivity agreements, trade confirmations, account statements, revenue-sharing agreements, profit and loss statements, and settlement records.

15. All Documents governing or related to Your Transactions in FX Instruments with any and all of Your customers, including but not limited to account application materials, customer agreements (including amendments, addenda, or modifications), account statements,

trade confirmations, credit agreements, electronic trading agreements, terms and conditions of service, account statements, rebate programs, profit and loss statements, and settlement records.

16. Documents sufficient to identify all application program interfaces ("API") used to connect to and transfer data with Your Liquidity Providers and customers, and all order management, trading, and execution software and/or other similar information systems You used to conduct FX Transactions with Liquidity Providers and customers.

17. Documents sufficient to describe and depict the operation of Your trading operations in FX Instruments and any limitations or instructions provided to Your FX traders or Your Associated Persons about when, how and with whom to trade, including but not limited to organizational charts, seating charts, trading policies and procedures, risk management policies, training materials, and standard protocols.

18. Documents regarding the methodology, policies, practices, procedures, and calculations (including computer algorithms, models, and information systems) used by You to set the bid-ask spread, mid-quote average spread, or other pricing quotes published or otherwise provided to Your customers with respect to Transaction in FX Instruments, including but not limited to Documents related to:

> (a) the method by which You developed, aggregated, processed, or published FX Instrument pricing information from Liquidity Providers for Your customers or for any use related to Your Transactions in FX Instruments with Your customers;
>
> (b) the method by which You monitored, analyzed, and forecasted FX transaction prices, including for the construction of a forward price curve or price estimate;

12

   (c)  Your efforts to gather information, research, market color, or other data about Your customers;

   (d)  pricing mark-ups or other pricing premiums You applied to customer transactions and policies, procedures, practices, and discussions regarding such mark-ups; and

   (e)  Your policies, practices, and procedures for employing any differential pricing by customer.

19. Documents sufficient to show the commissions, fees, or other costs charged by You to Your customers for or relating to Transactions in FX Instruments.

20. All Documents related to Your risk management policies, practices, and procedures that relate or apply to Your Transactions in FX Instruments, including but not limited to Documents or data reflecting Your internalization, aggregation, hedging, or matching off of Your customers' Orders or Transactions in FX Instruments.

21. Documents or data sufficient to show which, if any Transactions in FX Instruments between You and any of Your customers had a matching, corresponding or concurrent trade between You and any of Your Liquidity Providers, as alleged in Paragraphs 159, 161, and 162 in the Complaint (attached as Appendix A), and Documents or data sufficient to show the terms of such Transactions.

22. All Documents and data related to any regulatory, law enforcement, or civil investigation of or action (including prosecutions, lawsuits and arbitrations) against You or Your Associated Persons regarding sales practices, promotional materials, or trading to the extent related to trading in FX Instruments or Your operation as an RFED, including but not limited to Documents and data produced or received by You in such matters.

13

23. All Documents and data produced to, or received from, the NFA in connection with its decision to accept IBFX's permanent withdrawal and any related investigation.

24. All promotional or informational materials or other disclosures relating in any way, directly or indirectly, to trading in FX Instruments that You or Your Associated Persons published or otherwise communicated or sent to Your customers or potential customers during the relevant period, including but not limited to any Documents showing the price, bid-ask spread, or mid-quote average spread of an FX Instrument, the manner in which such pricing was calculated, or the manner in which trading platforms provided by You to customers functioned.

25. Documents sufficient to identify the FX Instruments You offered to your customers during the relevant period and their specifications, including but not limited to settlement procedures.

26. Documents sufficient to show the types of Orders that Your customers were able to place with You for FX Instruments (e.g., fix, stop-loss, limit, etc.).

27. Documents sufficient to show how You manage Your customers' open risk positions with respect to each customer's credit limits, including but not limited to Documents reflecting or explaining how you monitor Your customers' open risk positions and manage or liquidate such risk, including procedures for monitoring and liquidating margin accounts.

28. All communications between You and Named Plaintiffs or Plaintiffs' Counsel in this Action and any Documents or data You provided to or received from Named Plaintiffs or Plaintiffs' Counsel in this Action, including all such communications or Documents exchanged through the conclusion of this Action.