```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
JAMES CONTANT, et al.,                                       :
                                         Plaintiffs,         :
                                                             :
                 -against-                                   :
                                                             :
BANK OF AMERICA CORPORATION, et al.,                         :
                                         Defendants.         :
------------------------------------------------------------ X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/17/2019
```

17 Civ. 3139 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

      This case concerns an alleged conspiracy among the world's largest banks to fix prices in the foreign exchange ("FX") market. Plaintiffs allege that they purchased FX instruments from retail FX dealers ("Retail Dealers") at prices that were artificially inflated on account of Defendants' manipulation of the FX market. Plaintiffs' Second Consolidated Class Action Complaint (the "Complaint") alleges violations of state antitrust and consumer protection laws. Defendants Barclays Bank PLC ("Barclays"), BNP Paribas Group ("BNP Paribas"), HSBC Bank plc ("HSBC"), MUFG Bank, Ltd. ("MUFG"), The Royal Bank of Scotland plc ("RBS"), Société Générale ("SocGen"), Standard Chartered Bank ("Standard Chartered"), UBS AG and UBS Group AG (collectively, the "Foreign Defendants")[1] move to dismiss the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons discussed herein, the motion is granted as to MUFG, RBS, SocGen and UBS Group AG, and is denied as to the other Foreign Defendants.

## I. BACKGROUND

      Familiarity with the underlying facts and procedural history is assumed. *See Contant v. Bank of Am. Corp.*, No. 17 Civ. 3139, 2018 WL 1353290 (S.D.N.Y. Mar. 15, 2018); *Contant v.*

---

[1] Credit Suisse Group AG was voluntarily dismissed as a Defendant on February 19, 2019.

*Bank of Am. Corp.*, No. 17 Civ. 3139, 2018 WL 5292126 (S.D.N.Y. Oct. 25, 2018).  Except as otherwise stated, the following alleged facts are taken from the Complaint and the parties' submissions on this motion.  *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012); *accord GlaxoSmithKline LLC v. Laclede, Inc.*, No. 18 Civ. 4945, 2019 WL 293329, at *3 (S.D.N.Y. Jan. 23, 2019).  The allegations in the Complaint are taken as true to the extent they are uncontroverted by the Foreign Defendants' affidavits.  *See MacDermid*, 702 F.3d at 727; *accord GlaxoSmithKline*, 2019 WL 293329, at *3.

From approximately 2007 to 2013, Defendants conspired with each other to fix prices in the FX market.  Defendants exchanged confidential customer information and coordinated their trading strategies in order to manipulate FX benchmark rates.  As a result of the conspiracy, the Retail Dealers purchased FX instruments at artificially inflated prices, and passed on the anticompetitive overcharges to retail customers, including Plaintiffs.  All of the Foreign Defendants are incorporated and have their principal places of business overseas.  Plaintiffs are ten individuals and one entity domiciled in, and engaged in FX transactions in, various states of the United States, including New York.

## II.   STANDARD

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing personal jurisdiction over the defendant."  *MacDermid*, 702 F.3d at 727; *accord GlaxoSmithKline*, 2019 WL 293329, at *3.  "[W]hen a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing" of jurisdiction.  *MacDermid*, 702 F.3d at 727; *see also Charles Schwab Corp. v Bank of Am. Corp.*, 883 F3d 68, 81 (2d Cir 2018).  "[T]he pleadings and affidavits [are to be construed] in the light most favorable to plaintiffs, resolving all doubts in

2

their favor." *Dorchester Fin. Sec., Inc. v Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir 2013). "[A] prima facie showing suffices, *notwithstanding any controverting presentation by the moving party*, to defeat the motion." *Id.* at 86 (emphasis in original) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).

Courts will not, however, resolve "argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted); *accord E. Mishan & Sons, Inc. v. Smart & Eazy Corp.*, No. 18 Civ. 3217, 2018 WL 6528496, at *3 (S.D.N.Y. Dec. 12, 2018). The allegations or evidence of activity constituting the basis of jurisdiction must be non-conclusory and fact-specific. *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998); *accord Madison Capital Mkts., LLC v. Starneth Europe B.V.*, No. 15 Civ. 7213, 2016 WL 4484251, at *3 (S.D.N.Y. Aug. 23, 2016). A plaintiff that initially establishes jurisdiction by a prima facie showing eventually must establish jurisdiction by a preponderance of the evidence, based on the presentation of evidence. *See Dorchester*, 722 F.3d at 85.

**III.    DISCUSSION**

A prima facie showing of personal jurisdiction requires: (1) procedurally proper service of process, (2) "a statutory basis for personal jurisdiction that renders such service of process effective" and (3) that "the exercise of personal jurisdiction . . . comport with constitutional due process principles." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012)). The Foreign Defendants have not contested procedurally proper service of process or a

3

statutory basis for personal jurisdiction.  The parties' dispute on this motion concerns whether the exercise of personal jurisdiction comports with due process.

For the exercise of personal jurisdiction to comport with due process, a court must determine (1) "whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant" (the "minimum contacts" inquiry), and (2) "whether the assertion of personal jurisdiction over the defendant comports with 'traditional notions of fair play and substantial justice'" (the "reasonableness" inquiry). *Waldman*, 835 F.3d 317, 331 (2d Cir. 2016) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)); *accord Schwab*, 883 F.3d at 82.  Based on the Complaint and the papers submitted by the parties on this motion, Plaintiffs have made a prima facie showing of jurisdiction as to Defendants Barclays, BNP Paribas, HSBC, Standard Chartered and UBS AG.  Plaintiffs have not made a prima facie showing of jurisdiction as to Defendants MUFG, RBS, SocGen and UBS Group AG.

### A. Minimum Contacts

#### 1. General Jurisdiction

The Court does not have general jurisdiction over any of the Foreign Defendants.  A court has jurisdiction over a foreign corporation when "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler*, 571 U.S. at 127; *accord SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018).  "Aside from the truly exceptional case, a corporation is at home and subject to general jurisdiction only in its place of incorporation or principal place of business." *SPV Osus*, 882 F.3d at 343 (alterations omitted) (quoting *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir.

2016)). None of the Foreign Defendants are alleged to have been incorporated or have their principal place of business in New York.

### 2. Specific Jurisdiction

Specific jurisdiction depends on "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum state and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlap Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919); *see also Waldman*, 835 F.3d at 335 ("The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation.") (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). In other words, "to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum." *Walden*, 571 U.S. at 284.

Courts have recognized "independent, if conceptually overlapping, methods of demonstrating minimum contacts." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 243 (2d Cir. 2007). Minimum contacts to support specific jurisdiction may exist when a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *accord Schwab*, 883 F.3d at 85 (2d Cir. 2018). Specific jurisdiction may be premised on a defendant's actions that are "expressly aimed" at the forum state. *See Calder v. Jones*, 465 U.S. 783, 790 (1984); *accord Schwab*, 883 F.3d at 87 (referring to the "effects test" theory of personal jurisdiction). Specific jurisdiction may exist where a defendant's connection to the forum state arises from their participation in a conspiracy connected to the forum state by a co-conspirator's acts in furtherance of the conspiracy, *see Schwab*, 883 F.3d at 86–87, -- sometimes termed

"conspiracy jurisdiction," *see Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 197 n.396 (S.D.N.Y. 2018). Under any of these theories, the exercise of jurisdiction comports with due process only if the defendant's conduct and connection with the forum is "such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *accord U.S. Bank Nat'l Assoc. v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019).

Plaintiffs assert that minimum contacts exist in this case based on a theory of conspiracy jurisdiction. To allege conspiracy jurisdiction, a plaintiff must allege "that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." *Schwab*, 883 F.3d at 87. Each element is discussed in turn below.

### a. Existence of a Conspiracy

The Complaint alleges the existence of a conspiracy among banks to fix prices in the FX market. Specifically, the Complaint alleges that Defendants' top-level FX traders held secret online meetings in chat rooms, where they coordinated FX trades and exchanged sensitive information. According to the Complaint, this alleged manipulation of the FX market impacted the prices for the FX instruments purchased by Plaintiffs.

Foreign Defendants incorrectly argue that Plaintiffs must also plead an agency relationship between the co-conspirators. In *Schwab* -- also an antitrust case -- the Second Circuit articulated the test for conspiracy jurisdiction and said nothing about any necessary agency relationship. *See Schwab*, 883 F.3d at 86–87. By requiring of the defendant only that they "participated in the conspiracy," the court implicitly held that a co-conspirator relationship

is the only relationship necessary between co-conspirators to establish personal jurisdiction. *Schwab*, 883 F.3d at 87.

Foreign Defendants cite *In re North Sea Brent Crude Oil Futures Litigation*, No. 13 Md. 2475, 2017 WL 2535731 (S.D.N.Y. June 8, 2017), and *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326 (1972), in support of their argument.  The court in *North Sea* held that "an agency relationship is required to uphold jurisdiction based on a conspiracy theory," in light of the New York jurisdictional rule that the "activities of a co-conspirator may . . . be imputed to an out-of-state tortfeasor for jurisdictional purposes under an agency rationale." *North Sea*, 2017 WL 2535731, at *9.  This requirement is inapplicable to the analysis here because the New York jurisdictional rule addresses the reach of conspiracy jurisdiction under New York law, not whether the exercise of jurisdiction comports with constitutional due process. *See Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 446–47 (S.D.N.Y. 2008) (citing CPLR § 302, Practice Commentaries C302:4, Commission of Act "Through an Agent").[2]

The court in *North Sea* also cited the statement in *In re LIBOR-Based Financial Instruments Antitrust Litigation*, No. 11 Md. 2262, 2015 WL 6243526 (S.D.N.Y. 2015), that "[t]he underlying rationale for exercising personal jurisdiction on the basis of conspiracy is that, because co-conspirators are deemed to be each other's agents, the contacts that one co-conspirator made with a forum while acting in furtherance of the conspiracy may be attributed for jurisdictional purposes to the other co-conspirators." *Id.* at *29.  But the court in *LIBOR* was

---

[2] Practice Commentary C302:4 has since been revised to account for the Appellate Division's 2013 holding that an out-of-state defendant can be subject to personal jurisdiction in New York even without the traditional indicia of an agency relationship when that defendant "has knowledge of the New York acts of his co-conspirators."  CPLR § 302 Practice Commentary C302:4 (2013) (citing *Lawati v Montague Morgan Slade Ltd.*, 961 N.Y.S.2d 5, 8 (1st Dep't 2013)) (quotation marks omitted).

7

not saying that a formal agency relationship must exist between co-conspirators in order for a court to exercise conspiracy jurisdiction.  Rather, the court was explaining the rationale for conspiracy jurisdiction -- *because* the law deems co-conspirators to be each other's agents, jurisdiction may be premised on a co-conspirator's in-forum overt acts.

*Leasco* also does not support the argument that, for conspiracy jurisdiction, an agency relationship is necessary between the defendant and co-conspirators acting in the forum.  The court in *Leasco* held that the acts of a lawyer in the forum state could not be imputed to his law firm partner basely solely on their partnership relationship.  *Leasco*, 468 F.2d at 1343.  The court commented in dictum that "the matter could be viewed differently when the relationship was the closer one between a senior partner, especially one who is a director of the client, and a younger partner to whom he has delegated the duty of carrying out an assignment over which the senior retains general supervision."  *Id*.  In other words, delegation and supervision might be relevant to establishing an agency relationship sufficient to confer personal jurisdiction, but they are not required.  *Leasco* does not support the Foreign Defendants' position that an agency relationship is a prerequisite for conspiracy jurisdiction.

Finally, the Foreign Defendants argue that an agency relationship between co-conspirators is necessary because personal jurisdiction cannot be based on the unilateral activity of a third party.  *See Walden*, 571 U.S. at 286 (2014) ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.").  But this argument misapprehends both the nature of a conspiracy and the nature of conspiracy jurisdiction.  First, a co-conspirator is no mere third party.  Rather, "[i]n any conspiracy, two or more entities that previously pursued their own interests separately are combining to act as one for their common benefit."  *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984).

Second, the exercise of conspiracy jurisdiction in the absence of a formal agency relationship does not offend due process, because a plaintiff still must demonstrate that the defendant's conduct and connection with the forum is "such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.*, 444 U.S. at 297. That is, conspiracy jurisdiction is best conceived of as an example of the well-established principle that "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with . . . other parties." *Walden*, 571 U.S. at 286.

### b. Participation in the Conspiracy

The Complaint sufficiently alleges the participation of all of the Foreign Defendants except for UBS Group AG. The Complaint alleges that each Foreign Defendant participated in chat rooms in which traders coordinated trades and exchanged information about orders, spreads, exchange rates and fixes. But the Complaint lacks any "non-conclusory and fact-specific" allegations regarding UBS Group AG's participation in the alleged conspiracy. *See Jazini*, 148 F.3d at 185. The Complaint lumps together UBS AG and UBS Group AG (as well as the U.S. entity UBS Securities LLC) under the name "UBS." The fact-specific allegations in the Complaint regarding "UBS" -- including a "UBS" trader's participation in the "Cartel" chat group and the Commodity Futures Trading Commission ("CFTC") and Department of Justice's ("DOJ") enforcement actions against "UBS" for its FX-related conduct -- all concern UBS AG, not UBS Group AG, as is evident from the CFTC Order finding that "UBS AG" violated the Commodity Exchange Act and the DOJ plea agreement with "UBS AG" related to a conspiracy to manipulate benchmark interest rates.[3] Because the Complaint lacks non-conclusory, fact-

---

[3] The Court may take judicial notice of the CFTC Order, DOJ plea agreement and similar public documents such as consent orders. Federal Rule of Evidence 201 authorizes a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately

specific allegations regarding UBS Group AG's participation in the alleged conspiracy, Plaintiffs have not made a prima facie showing of jurisdiction. The motion to dismiss for lack of jurisdiction is granted as to UBS Group AG.

### c. Co-Conspirator's Overt Acts

The Complaint sufficiently alleges that "a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with [New York] to subject that co-conspirator to jurisdiction." *Schwab*, 883 F.3d at 87. The Complaint cites several New York Department of Financial Services ("NYDFS") and DOJ enforcement actions against certain Defendants relating to their manipulation of the FX market in New York. For example, the Complaint cites BNP Paribas's plea agreement with DOJ, in which BNP Paribas admitted to engaging in communications within the Southern District of New York in furtherance of the conspiracy. Likewise, the Complaint cites Barclays' consent order with NYDFS, in which Barclays admitted that its New York branch participated in a conspiracy to manipulate benchmark FX rates.

There is no warrant for the Foreign Defendants' contention that the sale of an FX instrument to an RFED must itself constitute the overt act for purposes of establishing conspiracy jurisdiction. The argument makes little sense in light of the nature of the alleged conspiracy. The Complaint alleges a conspiracy to fix prices in the FX market. The overt acts *in furtherance* of the conspiracy are the actions undertaken to *accomplish* the price fixing (i.e., the manipulation of the FX market), not the sale of FX instruments at prices *affected by* the price fixing. *Cf. Schwab*, 883 F.3d at 87 (distinguishing actions taken to profit from a conspiracy from actions

---

and readily determined from sources whose accuracy cannot reasonably be questioned . . . at any stage in the proceeding," including on a motion to dismiss. *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581, 588 n.4 (S.D.N.Y. 2015).

taken in furtherance of one).  *Schwab* requires only that "the in-forum acts must have been 'in furtherance of the conspiracy,'" *id.* at 86, an element which is satisfied here.

### d. Defendants' Conspiracy-Related Conduct

For the exercise of personal jurisdiction to comport with due process, the Foreign Defendants' conspiracy-related conduct must be "such that [they] should reasonably anticipate being haled into court" in New York.  *World-Wide Volkswagen Corp.*, 444 U.S. at 297; *accord Schwab*, 883 F.3d at 82 ("Where the claim arises out of, or relates to, the defendant's contacts with the forum -- *i.e.*, specific jurisdiction is asserted -- minimum contacts necessary to support such jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there.").  Some, but not all, of the Foreign Defendants satisfy this requirement.

Barclays, BNP Paribas and Standard Chartered could reasonably anticipate being haled into court in New York for their conspiracy-related conduct.  Plaintiffs cite NYDFS consent orders in which these three defendants each admitted that their New York branches participated in a conspiracy to manipulate benchmark rates in violation of New York law.[4]  Likewise, HSBC and UBS AG could reasonably foresee being haled into court in New York for their conspiracy-related conduct.  The Complaint alleges that HSBC executives encouraged FX traders in New York to execute front-running trades in anticipation of a client's market-moving transaction.  The

---

[4] The Barclays and BNP Paribas consent orders are attached as exhibits to the Declaration of Michael Dell'Angelo, which was submitted in opposition to this motion.  These materials may be considered in deciding a motion to dismiss under Rule 12(b)(2).  *See MacDermid*, 702 F.3d at 727 (stating that a motion to dismiss for lack of jurisdiction may be decided "on the basis of affidavits and other written materials").  The Court may take judicial notice of the Standard Chartered consent decree, which is available at https://www.dfs.ny.gov/system/files/documents/2019/01/ea190129_standard_ chartered_bank.pdf.  *See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d at 588 n.4.

Complaint also alleges that a UBS AG trader participated in a chat room with traders from Citigroup and JPMorgan in which a participant discussed coordinating trades with Citigroup's New York office.  *See United Healthcare Servs., Inc. v. Cephalon, Inc.*, No. 17 Civ. 555, 2018 WL 878766, at *3 (E.D. Pa. Feb. 13, 2018) (premising conspiracy jurisdiction on defendant's awareness of in-forum acts taken in furtherance of the conspiracy); *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 91 (D.D.C. 2017) (same).

Plaintiffs have not made a prima facie showing that MUFG, RBS or SocGen could reasonably foresee being haled into court in New York for their conspiracy-related conduct.  The conclusory allegation that "[a]ll Defendants communicated regularly with Defendant traders in New York for purposes of carrying out the unlawful conspiracy" is insufficient.  The Complaint does not specifically allege that MUFG, RBS or SocGen engaged in suit-related conduct aimed at or taking place in New York.  *Cf. Nypl v. JPMorgan Chase & Co.*, No. 15 Civ. 9300, 2018 WL 1472506, at *6 (S.D.N.Y. Mar. 22, 2018); *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789, 2016 WL 1268267, at *7 (S.D.N.Y. Mar. 31, 2016).  Nor does the Complaint  connect these defendants' participation in the conspiracy to New York in some other way -- for example, by alleging facts to show that they were aware of their co-conspirators' in-forum overt acts.  In the absence of such allegations, the Court cannot conclude that MUFG, RBS and SocGen "should reasonably anticipate being haled into court" in New York for their conspiracy-related conduct.  *See World-Wide Volkswagen Corp.*, 444 U.S. at 297.  Accordingly, the motion to dismiss for lack of personal jurisdiction is granted as to these three defendants.

  **B. Reasonableness**

"If minimum contacts exist, the defendant has to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  *Eades v.*

*Kennedy, PC Law Offices*, 799 F.3d 161, 169 (2d Cir. 2015) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).  Under this "reasonableness" inquiry, a court may consider "(1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the 'interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and (5) 'the shared interest of the several States in furthering fundamental substantive social policies.'"  *U.S. Bank*, 916 F.3d at 151 n.5 (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987)).  Although all factors are considered, "the primary concern is the burden on the defendant."  *U.S. Bank*, 916 F.3d at 151 n.5 (citation and quotation marks omitted).

None of these five factors renders the exercise of jurisdiction over the Foreign Defendants unreasonable.  First, the Foreign Defendants offer no reasons why litigating in New York would be unduly burdensome.  Notably, the Foreign Defendants do not contest Plaintiffs' assertions that the Foreign Defendants have substantial FX trading operations in New York, that most discovery in this action will take place in New York and that the Foreign Defendants are already litigating similar claims in related actions pending in this Court.

The "interests of the forum State" and "the plaintiff's interest in obtaining relief in the forum State" militate in favor of exercising jurisdiction.  *Daimler*, 571 U.S. at 145.  Lead Plaintiff James Contant and members of the putative New York Class are residents of New York.  "New York has a 'manifest interest in providing effective means of redress for its residents'; and the Plaintiffs have an interest in adjudicating their case in the state where they reside."  *Eades*, 799 F.3d at 169 (quoting *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 173 (2d. Cir. 2010)).

The judicial system's interest "in obtaining the most efficient resolution of controversies" also weighs in favor of exercising jurisdiction. *Asahi*, 480 U.S. at 113. This case has been pending for two years and has entailed significant motion practice. Moreover, maintaining the action in New York has allowed for the efficient coordination of discovery with the related FX cases pending in this district. This suit provides the most efficient path to resolution of Plaintiffs' claims.

Finally, the Foreign Defendants "have not suggested or shown that any [state's] substantive social policies would be . . . undermined by permitting the case . . . to go forward in New York," rather than in another state. *See Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 245 (2d Cir. 1999); *accord Retail Pipeline, LLC v. JDA Software Grp., Inc.*, No. 17 Civ. 67, 2018 WL 1621508, at *15 (D. Vt. Mar. 30, 2018). The Foreign Defendants have not "present[ed] a compelling case" why interstate comity concerns would render the exercise of jurisdiction unreasonable. *See Eades*, 799 F.3d at 169.

## IV.   CONCLUSION

For the foregoing reasons, the Foreign Defendants' motion to dismiss the Complaint pursuant to Rule 12(b)(2) is GRANTED as to MUFG, RBS, SocGen and UBS Group AG, and is DENIED as to the other Foreign Defendants. The Clerk of Court is respectfully directed to close the motion at Docket No. 197.

Dated: May 17, 2019
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

14