**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMES CONTANT, *et al.*,<br><br>　　　　　　　*Plaintiffs*,<br>v.<br><br>BANK OF AMERICA<br>CORPORATION, *et al*.,<br><br>　　　　　　　*Defendants*. | No. 17-cv-3139-LGS<br><br>(related to No. 13-cv-7789-LGS) |

**DECLARATION OF MICHAEL DELL'ANGELO IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS, FOR
CERTIFICATIONS OF THE PROPOSED SETTLEMENT CLASSES FOR
SETTLEMENT PURPOSES, FOR APPOINTMENT OF SETTLEMENT CLASS
REPRESENTATIVES, AND FOR APPOINTMENT OF
SETTLEMENT CLASS COUNSEL**

Pursuant to 28 U.S.C. § 1746, I, Michael Dell'Angelo, declare as follows:

1. I am a Managing Shareholder in the law firm of Berger Montague PC. My firm serves as attorneys of record for Plaintiffs in this matter.

2. I have been actively involved in prosecuting this action, am familiar with its proceedings, and have personal knowledge of the matters set forth herein. If called upon and sworn as a witness, I could competently testify thereto.

3. I submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Settlements, for Certifications of the Proposed Settlement Classes for Settlement Purposes, for Appointment of Settlement Class Representatives, and for Appointment of Settlement Class Counsel.

4. Attached as Exhibit A is a true and correct copy of the proposed Stipulation and Agreement of Settlement with Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc. (the "Citigroup Settlement").

5. Attached as Exhibit B is a true and correct copy of the proposed Stipulation and Agreement of Settlement with MUFG Bank Ltd. (the "MUFG Settlement").

6. Attached as Exhibit C is a true and correct copy of the Declaration of Dr. Janet S. Netz ("Netz Decl.") concerning Plaintiffs' proposed method of allocating the Net Settlement Fund.

7. Attached as Exhibit D is a true and correct copy of the Declaration of James Bibbings ("Bibbings Decl.") concerning the estimated total number of members of the Settlement Classes.

8. Attached as Exhibit E is a proposed Short-Form Notice to be disseminated to the members of the Settlement Classes.

9. Attached as Exhibit F is a proposed Long-Form Notice to be disseminated to the members of the Settlement Classes.

10. Attached as Exhibit G is a true and correct copy of a draft proposed escrow agreement to be signed by proposed Settlement Class Counsel Berger Montague PC and proposed Escrow Agent Huntington National Bank.

11. Attached as Exhibit H is a true and correct copy of the Company Profile of proposed Settlement Administrator Heffler Claims Group.

12. Attached as Exhibit I is a true and correct copy of the court-approved notice of settlements in the related Canadian action *Mancinelli et al. v. Royal Bank of Canada et al.*, No. CV-15-536174 (Ontario S.C.J.). A substantially similar notice in the French language was approved by the court in the parallel action *Béland v. Banque Royale du Canada et al.*, No. 200-06-000189-152 (Quebec S.C.J.). *See generally* Canadian FX Price-Fixing Class Action Settlement Website, *available at* http://www.canadianfxnationalclassaction.ca (last visited May 29, 2019).

13. Attached as Exhibit J is a true and correct copy of the firm resume of proposed Settlement Class Counsel Berger Montague PC.

14. As attorney of record for the Plaintiffs, and with all additional counsel representing Plaintiffs in this Action (collectively, "Class Counsel"), I have undertaken extensive settlement discussions with counsel for Defendants Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc. (collectively, "Citigroup"). Those settlement discussions began on December 22, 2017, and culminated in the proposed Settlement signed on August 2, 2018, after more than seven months of vigorous, arm's-length negotiations by the parties that included frank discussions of the relative strengths and weaknesses of the parties' claims and defenses.

Plaintiffs were informed throughout the settlement discussions by the expert analyses described below, as well as Class Counsel's investigation of the alleged conspiracy and its effects, including publicly available news articles, press releases and other reports, and researching the applicable law.

15.     During Plaintiffs' settlement negotiations with Citigroup, the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by all Defendants, including Citigroup, was pending before the Court. On March 15, 2018, less than a month after Plaintiffs and Citigroup entered into a binding Memorandum of Understanding outlining the terms of the Citigroup Settlement, the Court granted the Defendants' motion to dismiss the Consolidated Class Action Complaint ("CCAC"), while also granting leave for Plaintiffs to file a motion for leave to amend accompanied by a proposed Second Consolidated Class Action Complaint ("SCCAC") with an accompanying memorandum in support. ECF No. 136. Although the Court ultimately granted Plaintiffs leave to file the SCCAC, that result was not certain when Plaintiffs were negotiating the Citigroup Settlement.

16.     I, along with Class Counsel, have also undertaken extensive settlement discussions with counsel for Defendant MUFG Bank, Ltd. (formerly known as The Bank of Tokyo-Mitsubishi UFJ, Ltd.) ("MUFG Bank"" or "MUFG"). Those settlement discussions began on December 21, 2018, and spanned more than three months of arm's-length negotiations and exchanges of draft settlement agreements. The parties had serious settlement discussions and communications on approximately nine days during January and early February 2019. An agreement in principle to settle the claims against MUFG was reached on February 8, 2019, but the parties continued to exchange draft settlement agreements throughout the following weeks before culminating in a signed settlement agreement on March 1, 2019.

4

17.     During Plaintiffs' settlement negotiations with MUFG, the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) filed by MUFG and certain other Defendants was pending before the Court. On May 20, 2019, the Court granted the Rule 12(b)(2) motion in an order that would have dismissed MUFG from the Action absent the Settlement proposed here. Thus, if Plaintiffs had not reached the MUFG Settlement prior to the Court's Rule 12(b)(2) Order, the likelihood of any recovery from MUFG may have been significantly diminished if not impossible, and the litigation with respect to MUFG would be delayed by months if not years pending Plaintiffs' motion for leave to amend the SCCAC and possible appeals.

18.     Similarly, although discovery had commenced with respect to many of the Non-Settling Defendants at the time the MUFG negotiations began, MUFG was exempt from all discovery productions until the date on which the Court issued a decision on the Rule 12(b)(2) motion. *See* ECF No. 176 (Civil Case Management Plan and Scheduling Order), ¶ 8(b). Accordingly, many of the same risks that were present during Plaintiffs' Citigroup Settlement negotiations—during which Citigroup's Rule 12(b)(6) motion to dismiss was pending before the Court—were also present throughout the MUFG Settlement discussions. Further, because MUFG is located in Japan, if MUFG had been dismissed, without the cooperation afforded by the MUFG Settlement, Plaintiffs' counsel may have been unable to obtain discovery from MUFG. And, without a settlement, taking discovery of a Defendant located in Japan would have resulted in substantial expense.

19.     During the settlement discussions with Citigroup, Class Counsel consulted industry expert Dr. Carol Osler to evaluate the volume of retail FX transactions relative to the volume of spot FX transactions as a whole. I, along with Class Counsel, took into consideration the substance of the consultations with Dr. Osler, the complexities of this Action, and the relative

strengths and weaknesses of each side's litigation position in reaching the terms of both Settlements proposed here. Class Counsel and Dr. Osler considered a number of sources in estimating the size of the Classes at issue here as compared to the *FOREX* class, including retail estimates from the Triennial Bank Survey of the Bank for International Settlements ("BIS"), the Federal Reserve Bank of Cleveland, Dr. Osler's own academic research, and other industry data and sources. These sources indicated that the daily average volume of retail FX trading relative to the overall direct purchaser FX Instrument market at issue in *FOREX* is likely between 10 and 30 percent. Additionally, because the proposed Settlement Classes at issue here are limited to the eight States of New York, Arizona, California, Florida, Illinois, Massachusetts, Minnesota, and North Carolina, the estimate was further reduced to account for the size of these Classes. According to the U.S. Census Bureau's Population Estimates, the populations of the eight states at issue in this Action account for 37.7 percent of the overall U.S. population.

20.     Plaintiffs' negotiations with respect to the MUFG Settlement were guided by largely the same considerations described above with respect to the Citigroup Settlement.

21.     Applying the market share estimates prepared by Dr. Osler, Class Counsel took into consideration the amounts of the Citigroup and MUFG settlements approved by the Court in the related action *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13-cv-07789-LGS ("*FOREX*").

22.     The *FOREX* plaintiffs settled with Citigroup for $402 million, of which $394 million was allocated to the Direct Settlement Class. *FOREX* ECF No. 481-3 at 6.[1] Applying the

---

[1] The remaining $8 million was allocated to the "Exchange-Only Settlement Class." *Id*. Because the Settlement Class definitions here are limited to persons who indirectly purchased an FX Instrument from a Defendant or co-conspirator by entering into an FX Instrument with a member of the Direct Settlement Class, the settlement amount allocated to the Exchange-Only Settlement Class is not relevant to Plaintiffs' pro-rata comparisons. However, the Court's finding that an $8 million settlement with Citigroup to resolve the Exchange-Only Settlement Class claims is instructive. While Plaintiffs here have not identified publicly available information regarding the size of the Exchange-Only

6

more conservative retail FX market share estimate of 10 percent to the Citigroup *FOREX* settlement resulted in a *pro-rata* indirect amount of $39.4 million. That amount was then reduced by 62.3 percent to reflect the percentage of the population represented by the proposed Settlement Class members, leaving an estimate of $14.85 million. The $9.95 million Citibank Settlement is on par with that settlement considering the different stages at which the settlements were reached.

23.     The MUFG settlement in *FOREX* and the Court's orders approving that settlement provided the primary basis for determining a reasonable settlement amount for MUFG here. In *FOREX*, the MUFG settlement provided for a payment of $10.5 million for both the Direct and the Exchange-Only Settlement Classes. *See FOREX* ECF No. 822-1. Applying the same state population and retail FX market share estimates described above, the retail FX market share portion of the $10.5 million *FOREX* MUFG settlement is between $395,850 (using the 10% estimate) and $1,187,550 (using the 30% estimate). Therefore, the MUFG Settlement amount of $985,000 here is at the upper end of the range of reasonableness when compared to the *FOREX* settlement.

24.     Plaintiffs' settlement negotiations with Settling Defendants were also informed by the Citigroup and MUFG settlements in the related Canadian action. *See Mancinelli et al. v. Royal Bank of Canada et al.*, No. CV-15-536174 (Ontario S.C.J.); *Béland v. Banque Royale du Canada et al.*, No. 200-06-000189-152 (Quebec S.C.J.). As detailed in the analysis set forth in Section IV.B.7 of Plaintiffs' Memorandum, even after accounting for the fact that the total population of the Settlement Class states is larger than the population of Canada, the MUFG Settlement here far exceeds the estimated reasonable settlement range based on the Canadian

---

Class's claims, the cash recovery provided by the Citigroup Settlement here is 24.4% larger than the Exchange-Only Settlement approved by the Court in *FOREX*. *Id.*

7

MUFG settlement. The Citigroup Settlement here is within the estimated reasonable settlement range based on the Canadian Citigroup settlement, particularly considering that the Canadian settlements were all reached at approximately the same time, whereas the Citigroup Settlement here was an "icebreaker" that preceded the MUFG Settlement.

25. With respect to the Citigroup Settlement negotiations, Class Counsel were also mindful that Citigroup Settlement was the first settlement in this Action, often referred to as an "icebreaker settlement." Such settlements add value for the Settlement Class Members because they can "break the ice" and incentivize other defendants to begin negotiations for additional settlements. Applying the more conservative 10 percent retail FX market share estimate and Settlement Class size population estimate to the *FOREX* JPMorgan settlement, a *pro-rata* icebreaker settlement with Citibank in this case would have been comparatively reasonable at less than $4 million. Specifically, applying the 10% retail FX market share estimate to the JPMorgan *FOREX* settlement and the 62.3% population adjustment results in an estimate of $3.73 million here, and applying the estimated maximum 30% retail FX market share estimate results in an estimate of $11.2 million. Therefore, the Citibank Settlement is at the upper end of the estimated comparative range of reasonableness. The value of the Citigroup icebreaker settlement has already been demonstrated here – the settlement discussions between Plaintiffs and MUFG did not begin until Plaintiffs had already filed their initial motion for preliminary approval of the Citigroup Settlement.

26. The MUFG Settlement was also reached at a relatively early stage in the case, rendering the cooperation provisions of both Settlements particularly valuable to the Settlement Classes.

27. After diligent investigation and careful consideration of all relevant circumstances, I, along with Class Counsel, recommended to the Plaintiffs that it was in the best interests of the Classes to enter into the proposed Settlements. Plaintiffs concurred with the recommendations of counsel, allowing for the finalization of the proposed Citigroup Settlement on August 2, 2018, and the finalization of the proposed MUFG Settlement on March 1, 2019.

28. While discovery had not yet commenced at the times the Settlements were reached, Class Counsel had attended depositions conducted in the related *FOREX* action, and had also reviewed all public and governmental reports related to or exchanged during the *FOREX* litigation as part of our extensive factual and legal analysis of this Action. As of the date of this Declaration, Plaintiffs have received all documents and substantial amounts of transactional data that Defendants produced in *FOREX*, and have issued third-party subpoenas requesting transactional data from approximately 60 retail foreign exchange dealers ("RFEDs"). Several RFEDs have already produced or are preparing to produce data responsive to those requests. The information gleaned from this discovery, as well as from the pleadings, motions, and court orders in *FOREX*, have helped Class Counsel to assess the potential damages, as well as the risks and likely defenses going forward.

29. During the November 15, 2018, hearing regarding Plaintiffs' prior motion for preliminary approval of the Citigroup Settlement, the Court requested information pertaining to the number of class members and total potential damages to determine whether the Citigroup Settlement is fair, reasonable, and adequate. *See* ECF No. 181 (Transcript of Nov. 28, 2018 Hearing). Class Counsel worked diligently to provide the Court with the requested information pertaining to both Settlements, as well as additional information supporting preliminary approval as required by Rule III.C.5 of the Court's Individual Rules and Procedures for Civil Cases and

recent amendments to Fed. R. Civ. P. 23(e). That work has included retaining multiple experts to analyze the volume of retail FX transactions relative to the volume of spot FX transactions as a whole; estimating the total size of the Settlement Classes, and proposing a methodology of allocating the Net Settlement Fund to the Settlement Class members here, consistent with the Court's approval of the *FOREX* plaintiffs' plan for allocating settlement funds to the direct-purchaser settlement class members in that action.

30. Class Counsel have also prepared proposed Short-Form and Long-Form Notices, attached hereto as Exhibits E and F, to be disseminated to members of the Settlement Classes following Court approval of Plaintiffs' formal Motion for Approval of Notice and Plan of Allocation, pursuant to the Settlement Schedule set forth in the [PROPOSED] Order submitted with Plaintiffs' Motion for Preliminary Approval of Settlements. The proposed Notice forms each include a description of the case, the terms of the Settlements, and the Settlement Class definitions sufficient for Class Members to intelligently and meaningfully participate, object, opt out, or otherwise comment on the Settlements. The Short-Form Notice directs Class members to a settlement website where additional details will be provided, and the Long-Form Notice includes additional information, including the plan of allocation and all relevant dates. Plaintiffs seek approval of (1) a postcard Short-Form Notice which provides a much more cost-effective means of proving direct mail notice to the Settlement Class Members; and (2) a Long-Form Notice to be posted on the settlement website and mailed or emailed to Settlement Class Members who request a copy. Plaintiffs respectfully request that the Court direct that notice be issued to the Class in substantially the same forms as the proposed Short-Form and Long-Form Notices, within 60 days from the entry of the Court's Order directing Notice and approving Plaintiffs' Plan of Allocation, pursuant to the Settlement Schedule set forth in the [PROPOSED]

Order, to allow for additional time to obtain Class member and merchant identifying information and trade data from non-party RFEDs.

31. Plaintiffs' expert James Bibbings has prepared an analysis estimating of the total number of Settlement Class members. Although Plaintiffs will likely refine these estimates as they receive more detailed data and information through discovery, Class Counsel and Mr. Bibbings believe that these estimates are reliable. Based on the Bibbings analysis, Plaintiffs estimate that the total number of Settlement Class members is 99,138. *See* Bibbings Decl. ¶ 19. Therefore, the numerosity requirements are easily met.

32. Class Counsel also obtained preliminary estimates of claims administration costs from five well-respected potential claims administrators based on the Class size estimates set forth in the Bibbings Declaration. After carefully comparing bids and notice plan proposals from those five claims administrators, Plaintiffs selected Heffler Claims Group ("Heffler") as the proposed Claims Administrator. Heffler estimates that claims administration costs will range from $136,089 for a total Class size of 50,000 to $355,278 for 200,000 Class members. Actual notice and administration costs will vary based on a variety of factors in addition to the total number of Class members, including the claims rate, the methods of publication and internet advertising notices, and other related factors. For a total Class size of 100,000, Heffler estimates that the total costs of publication notice, direct-mail postcard and email notice, internet notice including advertising the Settlement on social media and websites, and administering the claims, will be $209,902. Heffler's estimates reflect that using postcard notice results in a cost savings of between $17,600 and $75,500, depending on the total number of Class members.

33. The claims administration estimates prepared by Heffler and set forth above assume that Plaintiffs will be able to carry out a consolidated notice and claims administration

11

process in the likely event that additional settlements are reached in the near future. If the Court were to require Plaintiffs to allocate and distribute settlement funds multiple times in the event of additional settlements in the future, the aggregate costs of issuing notice, administering claims, and distributing settlement awards to claimants would necessarily be greater. Therefore, the economies of scale associated with consolidated claims administration further support Plaintiffs' request for the Court to grant preliminary approval of the Settlements while temporarily deferring distribution of the Settlement Fund to enable the Settlement Administrator to distribute the Citigroup and MUFG Settlement Funds along with funds from other settlements that may be reached in the upcoming months.

34. Plaintiffs propose that the Court appoint Huntington National Bank as Escrow Agent. A draft proposed Escrow Agreement for the Settlements is attached hereto as Exhibit G.

35. Plaintiffs' expert Dr. Janet Netz has prepared a proposed method of allocating the Settlement Funds. As set forth in the Netz Declaration, and like the allocation plan that the Court approved in *FOREX*, the Netz Declaration proposes that the Net Settlement Fund be distributed amongst the Class members *pro rata* according to each claimant's trading volume, adjusted for certain factors that potentially affected the amount by which the claimant's transactions were affected by the Defendants' alleged manipulation of FX prices ("relative damages factors"). Netz Decl. at 2-6. Although Plaintiffs may refine these proposed relative damages factors as they receive more detailed data and information through discovery, Class Counsel and Dr. Netz believe that these figures are reliable.

36. Plaintiffs anticipate that they will obtain transactional data for many of the Settlement Class members sufficient for the Claims Administrator and Plaintiffs' experts to calculate *pro rata* claim amounts, thereby limiting the need for Settlement Class members to

submit detailed documentation in conjunction with their claim forms. However, Plaintiffs also propose to provide claimants with the option to submit transactional records supporting their claim in lieu of accepting the Claims Administrator's estimates. This "documented claim option" was also included in the plan of allocation that the Court approved in *FOREX*. The documented claim option will provide claimants with the option of having their claims amount calculated based on their own transactional records, which will be particularly useful for claimants with particularly large transactional volumes and for claimants for which Plaintiffs may be unable to obtain detailed transactional records.

37. Plaintiffs also propose that the Plan of Allocation provide for a minimum payment amount—i.e., a "*de minimis* award"—for claimants whose *pro rata* claim award would otherwise fall under a certain threshold. The *FOREX* plan of allocation provided that claimants with estimated claim values of $15.00 or less receive a *de minimis* award of $15.00. ECF No. 877-7 at 18. Plaintiffs will work with their experts to determine and propose an appropriate *de minimis* award level here and will include additional details regarding the *de minimis* award option in conjunction with Plaintiffs' formal Plan of Allocation to be submitted for Court approval within 120 days of the Court's order granting preliminary approval, pursuant to the Settlement Schedule set forth in the [PROPOSED] Order submitted with Plaintiffs' Motion for Preliminary Approval.

38. Other than the Settlement Agreements themselves, there are no additional agreements required to be identified under Rule 23(e)(3). Counsel for Plaintiffs do not have any fee-sharing agreements subject to disclosure pursuant to S.D.N.Y. Local Civil Rule 23.1.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 29, 2019, in Philadelphia, PA.

<u>/s/ Michael Dell'Angelo</u>
Michael Dell'Angelo
**BERGER MONTAGUE PC**
1818 Market St, Suite 3600
Philadelphia, Pennsylvania 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
mdellangelo@bm.net
