UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES CONTANT, *et al.*,<br><br>            *Plaintiffs*,<br>v.<br><br>BANK OF AMERICA CORPORATION, *et al.*,<br><br>            *Defendants*. | No. 17-cv-3139-LGS<br><br>(related to No. 13-cv-7789-LGS) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S RULE 12(B)(2) OPINION AND ORDER**

**PRELIMINARY STATEMENT**

Plaintiffs respectfully request that the Court reconsider its May 17, 2019, Opinion and Order ("Order") granting dismissal under Rule 12(b)(2) as to Foreign Defendants The Royal Bank of Scotland plc ("RBS") and Société Générale ("SocGen") (together, the "Foreign Defendants").[1] Plaintiffs seek reconsideration[2] because the Order does not recognize the similarity of the Court's prior Rule 12(b)(2) decisions in the related *FOREX* and *Nypl* cases that reached the opposite conclusion and held that the Court does have personal jurisdiction over SocGen and RBS. *See In re Foreign Exch. Benchmark Rates Antitrust Litig.* ("*FOREX*"), No. 13-cv-7789-LGS, 2016 WL 1268267, at *1 (S.D.N.Y. Mar. 31, 2016) (rejecting 12(b)(2) motion filed by SocGen); *Nypl v. JPMorgan Chase & Co.*, No. 15-cv-9300-LGS, 2018 WL 1472506, at *1 (S.D.N.Y. Mar. 22, 2018) (rejecting 12(b)(2) motion filed by RBS).[3] Additionally, although the Court recognized the applicability of the doctrine of conspiracy jurisdiction, the Order did not properly apply the test for conspiracy jurisdiction set forth by the Second Circuit in *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018). *See Contant v. Bank of Am. Corp.*, No. 17-cv-3139-LGS, 2019 WL 2174233, at *3 (S.D.N.Y. May 17, 2019). Establishing

---

[1] In what appears to be a clerical error, the ECF description entry for the Order directed that Defendants Standard Chartered Bank and UBS AG be "terminated" from the docket in addition to RBS and SocGen. *See* PACER ECF No. 263 Description ("Standard Chartered Bank, UBS AG, Royal Bank of Scotland Group PLC and Societe Generale S.A. terminated"). Plaintiffs respectfully request that the Court correct that entry.

[2] Plaintiffs move for reconsideration with respect to RBS and SocGen only. As such, Plaintiffs' motion for reconsideration is not, presently, as to Settling Defendant MUFG Bank Ltd. ("MUFG Bank"), in light of the pending motion for preliminary approval of MUFG Bank's settlement. *See* ECF No. 272. As required by Section 5(a)(vii) of the MUFG Settlement Agreement, paragraph 37 of the proposed Preliminary Approval Order for the Settlement provides that all proceedings as to MUFG shall be stayed if the Court grants preliminary approval of the MUFG Settlement. *See* ECF Nos. 272-1, 274-2. As the Court is aware, Plaintiffs filed their motion for preliminary approval of the MUFG Settlement on May 29, 2019. *See* ECF No. 272. In furtherance of the parties' settlement agreement, the parties have agreed that Plaintiffs will not move for reconsideration of the Court's Rule 12(b)(2) Order as to MUFG Bank and MUFG Bank has agreed not to oppose as untimely a potential future motion for reconsideration of the Court's Order (ECF No. 263) if the MUFG Settlement is not approved by the Court. Plaintiffs do not seek reconsideration of the Court's dismissal of UBS Group AG.

[3] SocGen was not a party in *Nypl*, and RBS conceded personal jurisdiction in *FOREX*. *See Nypl,* 2018 WL 1472506, at *1; *FOREX*, 2016 WL 1268267, at *1.

personal jurisdiction over a defendant under the theory of conspiracy jurisdiction only requires Plaintiffs to allege that "(1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." *See Charles Schwab Corp.*, 883 F.3d at 87; *Nypl*, 2018 WL 1472506, at *7. The Court found that Plaintiffs adequately pleaded all three elements, *Contant*, 2019 WL 2174233, at *3-6, but the Order does not follow *Schwab* to the conclusion that if the *Schwab* elements are satisfied as to RBS and SocGen, personal jurisdiction over RBS and SocGen is also established. Accordingly, Plaintiffs respectfully request that the Court reconsider its Order and align its personal jurisdiction decision here with Second Circuit precedent and the decisions previously issued by the Court in *FOREX* and *Nypl*.[4]

## LEGAL STANDARD

"Motions for reconsideration are . . . committed to the sound discretion of the district court." *RCC Ventures, LLC v. Brandtone Holdings, Ltd.*, 322 F.R.D. 442, 445 (S.D.N.Y. 2017) (citation omitted). Such motions in the Southern District of New York are governed by Local Civil Rule 6.3, which provides that the moving party shall set forth "the matters or controlling decisions which counsel believes the Court has overlooked." *Id.* To prevail on a motion for reconsideration, the moving party must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the Court." *Stagg P.C. v. United States Dep't of State*, No. 15-cv-8468-KPF, 2019 WL 1863418, at *1 (S.D.N.Y. Apr. 25, 2019) (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). "Compelling reasons for granting a motion for reconsideration are limited to 'an intervening change of controlling law, the availability of new evidence, or the need to correct

---

[4] Pursuant to Fed. R. App. P. 4(a)(4) and Fed. R. Civ. P. 60, the time for Plaintiffs to file a notice of appeal of the Order runs from the date of the Court order resolving this Motion for Reconsideration.

a clear error or prevent manifest injustice.'" *Id.* (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking 'a second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

## ARGUMENT

### I. THE COURT'S *FOREX* AND *NYPL* RULE 12(B)(2) DECISIONS COMPEL THE SAME RESULT HERE

The Court previously held that it had personal jurisdiction over RBS and SocGen based on the same alleged conspiracy and substantially similar allegations. *See FOREX*, 2016 WL 1268267, at *1 (S.D.N.Y. Mar. 31, 2016) (finding personal jurisdiction over SocGen); *Nypl*, 2018 WL 1472506, at *1 (S.D.N.Y. Mar. 22, 2018) (finding personal jurisdiction over RBS). Although the Order cites the Court's prior *FOREX* and *Nypl* decisions denying Foreign Defendants' Rule 12(b)(2) motions, it does not distinguish those decisions or otherwise explain why they are inapplicable here. 2019 WL 2174233, at *6. And although the Order states that the SCCAC "does not specifically allege that . . . RBS or SocGen engaged in suit-related conduct aimed at or taking place in New York," 2019 WL 2174233, at *6—something that, as detailed below, is not required to confer conspiracy jurisdiction—the SCCAC does in fact contain such allegations. The SCCAC's allegations are at least as fulsome as those the Court found sufficient to deny the same Defendants' Rule 12(b)(2) motions in *FOREX* and *Nypl*. Indeed, neither the Order nor Defendants' 12(b)(2) brief, ECF No. 198, point to any factual allegations relevant to jurisdiction that were present in the *FOREX* and *Nypl* complaints but absent from the SCCAC.

3

In *FOREX*, this Court held:

> Plaintiffs have made a prima facie showing of specific jurisdiction over [SocGen] because the allegations in the [complaint], together with evidence of the extent of . . . Defendants' FX operations in the United States, give rise to the reasonable inference that they participated in the alleged conspiracy in the United States or participated elsewhere with the aim to cause harm in the United States.

*FOREX*, 2016 WL 1268267, at *4. The Court found that the *FOREX* plaintiffs' core allegation was that "Defendants conspired to fix [FX] benchmark rates for their own profit." *Id.* at *5 (citing *FOREX*, 74 F. Supp. 3d at 587). The Court then concluded that *FOREX* plaintiffs had tied Defendants' unlawful conduct to the forum through allegations in their complaint regarding collusive conduct taking place in or directed at New York, and the United States in general, and through additional information regarding Defendants' extensive FX activity in the United States:

> Here, Plaintiffs plead collusive conduct within the United States, give examples of each [Foreign] Defendants' participation in the alleged conspiracy (albeit in chatrooms whose participants' locations are presently unknown), and provide undisputed averments concerning the [Foreign] Defendants' extensive U.S.-based FX operations. Taken as a whole, the [complaint] plausibly alleges suit-related conduct that either took place in the United States, or had effects expressly aimed inside the country due to the [Foreign] Defendants' substantial FX businesses here.

*Id*. at *6. If the *FOREX* complaint's allegations were sufficient to establish that SocGen participated in the alleged conspiracy "with the aim to cause harm" in New York, the allegations in the SCCAC are similarly sufficient.

Similarly, in *Nypl*, the Court held:

> Plaintiffs have made a prima facie showing of specific jurisdiction over [RBS] because the allegations in the [complaint] give rise to the reasonable inference that they participated in the alleged conspiracy in the United States or participated elsewhere with the aim to cause harm in the United States.

*Nypl*, 2018 WL 1472506, at *4. The Court noted that personal jurisdiction over RBS "turns on whether Plaintiffs sufficiently alleged conspiratorial communication or unlawful manipulation of the Fixes either taking place in, or direct into, the United States." *Id.* at *5. Citing allegations

4

similar to those in this case, as well as RBS's plea agreement that Plaintiffs here also cited, the Court denied RBS's motion and held that the complaint contained allegations that sufficiently "tied" the alleged conspiracy to the forum, including allegations that "a substantial part of the events giving rise to plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce described herein was carried out in this District," and that "[t]he conspiracy to set, fix and establish foreign currency Benchmark exchange rates and impose Trade Restraints was implemented in California and New York and the Defendants have enforced their price-fixing conspiracy and Trade Restraints in California and New York . . ." *Id.* at *5.[5]

Here, the SCCAC includes allegations substantially similar to and at least as fulsome as those the Court found sufficient for purposes of establishing specific jurisdiction in *FOREX* and *Nypl*. The SCCAC contains numerous allegations of both Foreign and non-Foreign Defendants participating in the conspiracy in New York and through communications with New York-based co-conspirators. *See, e.g.*, SCCAC ¶ 8 ("Defendants' collusive and manipulative acts took place, in substantial part, in New York"); ¶ 12 (alleging that most Defendants are headquartered in, maintain their principal place of business in, or maintain substantial offices in New York and conduct FX trading activities from those offices and that "Defendant traders located outside of the United States communicated directly with Defendant traders located in New York to carry out and facilitate the conspiracy."); ¶ 113 (three Defendant traders discuss inviting a New York trader into their secret "Cartel" group). In addition, Plaintiffs allege that "[e]ach Defendant has continuously and systematically transacted FX in this District and throughout the United States," and that "Defendants' conspiracy was directed at, and had the intended effect of, causing injury

---

[5] Just as the Court did in the Order here, the Court denied UBS AG's Rule 12(b)(2) motion in *Nypl*.

5

to persons residing in, located in, or doing business in this District and throughout the United States [and] Defendants' conduct was within the flow of, and had substantial effect on, the interstate commerce of the United States, including this District." SCCAC ¶ 8.

Like the pleadings in *FOREX* and *Nypl*, the SCCAC contains extensive allegations about the alleged conspiracy, including that each of the Foreign Defendants participated in chat rooms with their co-conspirator Defendants in which they exchanged information regarding FX Instrument pricing and FX benchmark rates. *Id.* at 108. In fact, the SCCAC alleges specific acts undertaken in furtherance of the conspiracy by both RBS and SocGen. *See, e.g.*, SCCAC ¶ 108 (alleging that all Foreign Defendants participated in chat rooms discussing FX Instrument prices with other Defendants); ¶ 109 (FX traders at RBS participated in secret chat groups in which traders coordinated trades in furtherance of the conspiracy); ¶ 110 (FX traders at RBS told other traders to participate in their "fixing" of FX Instrument prices); ¶ 117 (a SocGen trader coordinated with a Barclays trader to fix bid-ask spreads in furtherance of the conspiracy); ¶ 243 (a Standard Chartered trader invited a Morgan Stanley trader to exploit confidential SocGen customer information in furtherance of the conspiracy, and "SocGen encouraged traders to gain market intelligence by sharing information with traders at other banks.").

Moreover, the SCCAC and Dell'Angelo Declaration ("Dell'Angelo Decl.") submitted by Plaintiffs in opposition to Foreign Defendants' Rule 12(b)(2) motion contain the following allegations regarding collusive acts and FX activity in New York by RBS and SocGen:

- "Defendants' collusive and manipulative acts took place, in substantial part, in New York specifically and in the United States generally. . . . Each Defendant has continuously and systematically transacted FX in this District and throughout the United States. . . . Defendants' conspiracy was directed at, and had the intended effect of, causing injury to persons residing in, located in, or doing business in this District and throughout the United States. Defendants' conduct was within the flow of, and had substantial effect on, the interstate commerce of the United States, including this District." SCCAC ¶ 8.

6

- "Defendants all conduct significant business in New York, including business relating to FX trading. . . . Defendants . . . Société Générale S.A.; . . . and [The] Royal Bank of Scotland PLC all have major New York offices and conduct a substantial portion of their FX trading in New York." *Id*. ¶ 263(c).

- RBS pled guilty to felony charges brought by the U.S. Department of Justice and admitted to conspiring to manipulate the prices of U.S. dollars and euros traded in the FX spot market. *Id*. ¶ 188; Dell'Angelo Decl., ECF No. 220, Ex. 2 (RBS Plea Agreement). RBS specifically admitted in the plea agreement to "agreeing to eliminate competition in the purchase and sale of the EUR/USD currency pair *in the United States and elsewhere,*" and that "[t]he conspiracy had a direct effect on trade and commerce within the United States, as well as on U.S. import trade and commerce, *and was carried out, in part, within the United States.*" *Id.* ¶¶ 2, 4 (emphasis added).

- At year-end 2013, SocGen reported for its New York branch gross notional outstanding spot FX contracts of approximately $13 million and FX derivatives of $21.6 billion. *Id*. ¶ 34.

- Former JPMorgan, Citigroup, and Barclays traders Richard Usher, Rohan Ramchandani, and Chris Ashton were indicted on charges for their alleged roles in a conspiracy to manipulate the price of U.S. dollars and euros. These three former traders were members of the chat group that dubbed themselves the "Cartel." A fourth member of the "Cartel," Matt Gardiner, a former trader at UBS, Barclays, and Standard Chartered, has been cooperating with the DOJ in their ongoing criminal investigation. Usher also worked for RBS during the Class Period. SCCAC ¶ 197.

- RBS entered into a settlement with the CFTC in which it admitted that it conspired with other FX dealers to manipulate currency pairs involving the U.S. Dollar. *See* Dell'Angelo Decl., ECF No. 220, Ex. 11 (RBS CFTC Settlement), at 2; *see also* SCCAC ¶ 186 (overviewing the CFTC settlements).

The Court has twice found these alleged contacts sufficient to establish personal jurisdiction. *See FOREX*, 2016 WL 1268267, at *4; *Nypl*, 2018 WL 1472506, at *5. In both cases, the Court found that specific jurisdiction was established based on Foreign Defendants' alleged acts in furtherance of the conspiracy that occurred within or were directed at New York. *See Nypl*, 2018 WL 1472506, at *5; *FOREX*, 2016 WL 1268267, at *5-6. Plaintiffs here specifically allege numerous examples of Foreign Defendants' actions in furtherance of the conspiracy in New York, collusion with other Defendant traders based in New York, and guilty pleas and consent decrees in which several Defendants—including RBS—admit to New York-based conduct in

7

furtherance of the conspiracy. *See, e.g.*, *supra* p. 7. The Court Order does not identify any meaningful difference between the allegations deemed sufficient to support personal jurisdiction over RBS and SocGen in *FOREX* and *Nypl* and those deemed insufficient here.

In short, all three related actions arise out of the same antitrust conspiracy, and this Court's personal jurisdiction rulings in *FOREX* and *Nypl* compel the same result here.

## II. THE ORDER'S FINDING THAT CONSPIRACY JURISDICTION IS SATISFIED IS INCONSISTENT WITH ITS DISMISSAL OF FOREIGN DEFENDANTS

Where plaintiffs plausibly allege that defendants entered into an unlawful conspiracy, the acts of co-conspirators are attributed to all defendants for purposes of specific jurisdiction under the doctrine of "conspiracy jurisdiction." *See Schwab*, 883 F.3d at 87; *Nypl*, 2018 WL 1472506, at *7. "The Supreme Court has specifically upheld the exercise of jurisdiction over conspirators who have never entered the United States, where the conspiracy 'was directed to violation of the United States law within the United States.'" *United States v. Manuel*, 371 F. Supp. 2d 404, 409 (S.D.N.Y. 2005) (quoting *Ford v. United States*, 273 U.S. 593, 620 (1927)). "To allege a conspiracy theory of personal jurisdiction: 'the plaintiff must allege that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state.'" *Nypl*, 2018 WL 1472506, at *7 (quoting *Schwab*, 883 F.3d at 87);[6] *see Fire & Police Pension Ass'n v. Bank of Montreal*, 368 F. Supp. 3d 681, 700 (S.D.N.Y. 2019) (citing *Schwab* and listing above three elements required for conspiracy jurisdiction); *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11-MDL-2262-NRB, 2019 WL 1331830, at

---

[6] In the Order, the Court cites to *Schwab* for the three elements of conspiracy jurisdiction discussed above, just as it did in *Nypl*. 2019 WL 2174233, at *6

\*3 (S.D.N.Y. Mar. 25, 2019) (confirming that Second Circuit adopted the above "three-factor test for alleging a conspiracy theory of jurisdiction").

In the Order, the Court found that Plaintiffs had adequately alleged the existence of the FX price-fixing conspiracy, the participation of the Foreign Defendants in the conspiracy, and that Foreign Defendants' co-conspirators' over acts in furtherance of the conspiracy had sufficient contacts with New York to subject Foreign Defendants to jurisdiction.[7] 2019 WL 2174233, at \*4 (holding that the SCCAC sufficiently alleges: (1) "the existence of a conspiracy among banks to fix prices in the FX market;" (2) "the participation of [RBS and SocGen]" in the conspiracy; and (3) that "a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with [New York] to subject [RBS and SocGen] to jurisdiction"). This is all that is required under Second Circuit precedent to establish conspiracy jurisdiction. *See Schwab*, 883 F.3d at 87. However, the Order declines to exercise jurisdiction over the Foreign Defendants, stating that the SCCAC does not specifically allege that they "engaged in suit-related conduct aimed at or taking place in New York" or otherwise connect Foreign Defendants' participation in the conspiracy to New York. 2019 WL 2174233, at \*6. Even Plaintiffs did not make such allegations as described above—which they did—*Schwab* makes clear that participating in a conspiracy with New York-based Defendants that engaged in New York-directed conspiratorial conduct constitutes "suit-related conduct" aimed at New York. *See, e.g.*, *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013) (holding that under conspiracy jurisdiction, the foreign defendants "are imputed with constitutionally sufficient contacts with [the forum state] through the actions of their alleged co-conspirators [in the forum state]"); *Schwab*, 883 F.3d 68, 87 ("We agree *that Unspam* sets forth the appropriate test for

---

[7] The Court also found that exercising jurisdiction over the Foreign Defendants would be reasonable. 2019 WL 2174233, at \*6.

9

alleging a conspiracy theory of jurisdiction."). *Schwab* requires that regardless of whether Foreign Defendants "aimed" their individual conduct at New York, conspiracy jurisdiction applies if the complaint "permit[s] an inference that *certain* [co-conspirator] Defendants' sales in [the forum state] were in furtherance of the conspiracy." *Id.* at 87. Additionally, as detailed above, Court has twice held that Foreign Defendants' forum-related acts in furtherance of the conspiracy as alleged here are sufficient to establish personal jurisdiction, and the SCCAC alleges at least as many New York-related acts in furtherance of the conspiracy as the Court found sufficient in *FOREX* and *Nypl*. Taken as a whole, the SCCAC plausibly alleges suit-related conduct that took place in New York and had effects expressly aimed at New York. Construing the pleadings and declarations in the light most favorable to Plaintiffs, *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013), the Foreign Defendants' suit-related conduct—and the suit-related conduct of their co-conspirators—created a substantial connection with this forum. Accordingly, Plaintiffs have made a *prima facie* showing of specific jurisdiction and respectfully request that the Court reconsider its Order finding otherwise.

## CONCLUSION

For the reasons set forth above, the Court should reconsider the Order and, like it did in *FOREX* and *Nypl*, find that it has personal jurisdiction over RBS and SocGen.

Dated:  May 31, 2019  Respectfully submitted,

/s/ Michael Dell'Angelo
Michael Dell'Angelo
Michael Kane
Joshua T. Ripley
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
Tel: (215) 875-3000
Fax: (215) 875-4604

10

mdellangelo@bm.net
mkane@bm.net
mkane@bm.net
jripley@bm.net

Garrett W. Wotkyns
**SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP**
8501 North Scottsdale Rd., Ste. 270
Scottsdale, AZ 85253
Tel: (480) 428-0142
Fax: (866) 505-8036
gwotkyns@schneiderwallace.com

Joseph C. Peiffer
**PEIFFER WOLF CARR & KANE, APLC**
201 St. Charles Ave., Ste. 4610
New Orleans, LA 70170
Tel: (504) 523-2434
Fax: (504)523-2464
jpeiffer@pwcklegal.com

R. Bryant McCulley
Stuart H. McCluer
Frank B. Ulmer
**MCCULLEY MCCLUER PLLC**
1022 Carolina Blvd., Ste. 300
Charleston, SC 29451
Tel: (855) 467-0451
Fax: (662) 368-1506
bmcculley@mcculleymccluer.com
smccluer@mcculleymccluer.com
fulmer@mcculleymccluer.com

***Counsel for Plaintiffs and the Proposed Classes***