**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- X
JAMES CONTANT, *et al.*,                                   :
                                                           :
                                Plaintiffs,   :       17 Civ. 3139 (LGS)
                                                           :
    — against —                                        :       [Rel. 13 Civ. 7789 (LGS)]
                                                           :
BANK OF AMERICA CORPORATION, *et al.*,                     :
                                                           :
                             Defendants.    :
---------------------------------------------------------- X


# THE ROYAL BANK OF SCOTLAND PLC AND SOCIÉTÉ GÉNÉRALE'S MEMORANDUM IN OPPOSITION TO THE PLAINTIFFS' MOTION FOR RECONSIDERATION

**TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    Plaintiffs' Motion Fails to Meet the Strict Standard for Reconsideration ...........................2

    II.   This Court Neither Overlooked Nor Misapplied Its Own Prior Opinions in *FOREX* and *Nypl*. ..................................................................................................................3

    III.  The Court Properly Applied Second Circuit Precedent to Plaintiffs' Claims Against RBS and SG .....................................................................................................................7

CONCLUSION..................................................................................................................................9

# **TABLE OF AUTHORITIES**

Cases

PAGE(S)

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
   684 F.3d 36 (2d Cir. 2012) ................................................................................................. 3, 7

*Charles Schwab Corp. v. Bank of Am. Corp.*,
   883 F.3d 68 (2d Cir. 2018) ......................................................................................... 2, 6, 7, 8

*Contant v. Bank of Am. Corp.*,
   2019 WL 2174233 (S.D.N.Y. May 17, 2019) ....................................................... 1, 4, 5, 6, 7, 9

*Convolve, Inc. v. Compaq Computer Corp.*,
   2005 WL 3358483 (S.D.N.Y. Dec. 7, 2005) ............................................................................ 3

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   43 F. Supp. 3d 369 (S.D.N.Y. 2014) ....................................................................................... 7

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
   2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016) ..................................................................... 1, 4

*Kassman v. KPMG LLP*,
   2015 WL 5775866 (S.D.N.Y. Oct. 2, 2015) ............................................................................ 3

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
   729 F.3d 99 (2d Cir. 2013) ...................................................................................................... 3

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) .......................................................................... 4

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   2019 WL 1331830 (S.D.N.Y. Mar. 25, 2019) .......................................................................... 9

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013) ................................................................................................ 2, 8

*Nypl v. JPMorgan Chase & Co.*,
   2018 WL 1472506 (S.D.N.Y. Mar. 22, 2018) ............................................................ 1, 4, 5, 6

*Sea Trade Mar. Corp. v. Coutsodontis*,
   2013 WL 3820625 (S.D.N.Y. July 23, 2013) .......................................................................... 3

*SEC v. Morton*,
   2011 WL 1344259 (S.D.N.Y. Mar. 31, 2011) ......................................................................... 4

*Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. High Performance Floors Inc.*,

    2016 WL 3911978 (S.D.N.Y. July 15, 2016) ............................................................................ 3

*Unspam Techs., Inc. v. Chernuk*,
    716 F.3d 322 (4th Cir. 2013) ................................................................................................. 7

*Walden v. Fiore*,
    571 U.S. 277 (2014) ........................................................................................................... 4, 9

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ...................................................................................................... 2, 8, 9

## STATUTES & RULES

Local Civil Rule 6.3 ....................................................................................................................... 2

The Royal Bank of Scotland plc ("RBS") and Société Générale ("SG") submit this memorandum of law in opposition to Plaintiffs' Motion for Reconsideration (the "Motion") of this Court's May 17, 2019 Rule 12(b)(2) Opinion and Order (the "Opinion") dismissing RBS and SG for lack of personal jurisdiction in *Contant et al. v. Bank of America Corporation et al.* (the "Action").[1]

## PRELIMINARY STATEMENT

A motion for reconsideration is an extraordinary remedy, and Plaintiffs fail to satisfy the strict standard for such relief. In its Opinion, this Court correctly held that Plaintiffs' allegations fail to "connect [RBS and SG's] participation in the conspiracy to New York," and that they failed to make a prima facie showing of personal jurisdiction over RBS and SG in this state as a result. *Contant v. Bank of Am. Corp.*, 2019 WL 2174233, at *6 (S.D.N.Y. May 17, 2019). Plaintiffs' Motion fails to identify any controlling decision or factual matter that has been overlooked or any clear error by the Court in reaching that decision. Instead, Plaintiffs merely seek to re-litigate the same issues previously raised in the parties' briefings and addressed in this Court's Opinion, which is insufficient to satisfy the standard on a motion for reconsideration. Their Motion should therefore be denied.

Plaintiffs offer two arguments for reconsideration, both of which are meritless. First, while Plaintiffs contend that this Court's Opinion is inconsistent with its prior decisions in *FOREX* and *Nypl*, they do not and cannot dispute that the Court considered and applied those prior decisions in reaching its conclusion here. Moreover, while *FOREX* and *Nypl* involved *federal claims* subject

---

[1] Certain Foreign Defendants joining this motion joined the Rule 12(b)(2) motions decided in *In re Foreign Exch. Benchmark Rates Antitrust Litig.* ("*FOREX*"), 2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016), and *Nypl v. JPMorgan Chase & Co.* ("*Nypl*"), 2018 WL 1472506 (S.D.N.Y. Mar. 22, 2018). Nothing herein is, or should be construed as, a waiver by any Foreign Defendant of any arguments that they may raise in further proceedings in *FOREX* and *Nypl*, or in any other action.

1

to a *nationwide* contacts analysis, *Contant* involves *state-law* claims subject to a *New York* contacts analysis. Thus, neither *FOREX* nor *Nypl* had occasion to consider whether the plaintiffs there, let alone the *Contant* Plaintiffs here, had adequately connected RBS and SG to any alleged New York-based conduct, and accordingly, they provide no basis for reconsideration.

Second, while Plaintiffs cannot assert that the Court overlooked *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68 (2d Cir. 2018)—which the Court cited *twelve times* in its Opinion—they instead seek to argue that the Court misinterpreted *Schwab*. But Plaintiffs' argument ignores the plain language of *Schwab*, which followed well-settled Supreme Court precedent in holding that a defendant is not subject to personal jurisdiction in a state unless they "could foresee being haled into court there." *Id.* at 82 (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013)); *see also, e.g.*, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (due process requires "foreseeability . . . that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there"). Because this Court faithfully applied that standard to determine that Plaintiffs had not adequately alleged a connection between RBS and SG and any New York-based conspiratorial conduct, Plaintiffs' Motion should be denied.

## ARGUMENT

### I.   Plaintiffs' Motion Fails to Meet the Strict Standard for Reconsideration

Under the Southern District of New York's Local Civil Rule 6.3, when making a motion for reconsideration, the moving party must specify "concisely the matters or controlling decisions which counsel believes the Court has overlooked." Reconsideration is only granted when the moving party identifies "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Trs. of the N.Y. City Dist. Council*

*of Carpenters Pension Fund v. High Performance Floors Inc.*, 2016 WL 3911978, at *1 (S.D.N.Y. July 15, 2016) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)). A motion for reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Convolve, Inc. v. Compaq Computer Corp.*, 2005 WL 3358483, at *2 (S.D.N.Y. Dec. 7, 2005) (citation omitted). It is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Kassman v. KPMG LLP*, 2015 WL 5775866, at *1 (S.D.N.Y. Oct. 2, 2015) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)); *see also Sea Trade Mar. Corp. v. Coutsodontis*, 2013 WL 3820625, at *1 (S.D.N.Y. July 23, 2013) ("The Court will not grant a motion for reconsideration where the moving party seeks only to further develop arguments that already have been considered and rejected by the Court.").

Plaintiffs' Motion fails to identify any controlling decision or factual matter that has been overlooked or any clear error by the Court. Instead, Plaintiffs merely seek to improperly "reargu[e] . . . issues already considered" because they "do[] not like the way the original motion was resolved." *Convolve, Inc.*, 2005 WL 3358483, at *2 (citation omitted). This alone should be dispositive, and accordingly, their Motion should be denied.

## II. This Court Neither Overlooked Nor Misapplied Its Own Prior Opinions in *FOREX* and *Nypl*

Plaintiffs' primary argument is that the Opinion overlooked the Court's prior rulings in *FOREX* and *Nypl*. But Plaintiffs do not dispute that the Court expressly considered and applied both opinions. *FOREX* and *Nypl* were a focus of the parties' briefing on Defendants' motion to dismiss in *Contant* and were specifically cited in the Court's opinion dismissing Plaintiffs' claims against RBS and SG for lack of personal jurisdiction. *See Contant*, 2019 WL 2174233, at *6; (Pls.'

3

Opp. to Foreign Defs. Mot. to Dismiss, ECF No. 219, at 17-22; Foreign Defs.' Mem. of Law in Supp. of their Mot. to Dismiss, ECF No. 198, at 3). Plaintiffs merely assert that this Court somehow failed to appreciate the import of its own prior opinions on personal jurisdiction. (Pls.' Mem. of Law in Supp. of Mot. for Recons. ("Recons. Mem."), ECF No. 277, at 1.) That contention is baseless.

Plaintiffs' argument that this Court's denial of the foreign defendants' motion to dismiss for lack of personal jurisdiction in *FOREX* and *Nypl* compels the same result in *Contant* ignores a crucial difference in the actions: Whereas *FOREX* and *Nypl* involved *federal* claims subject to a *nationwide* contacts analysis,[2] *Contant* involves *state-law* claims subject to a *New York* contacts analysis.[3] In *FOREX*, this Court held the plaintiffs sufficiently pled "collusive conduct within the **United States**" to establish personal jurisdiction over certain Foreign Defendants. *FOREX*, 2016 WL 1268267, at *6 (emphasis added).[4] Similarly, in *Nypl*, this Court evaluated the plaintiffs' arguments regarding nationwide, rather than New York-specific, contacts.[5] *Nypl*, 2018 WL 1472506, at *5. By contrast, here, as Plaintiffs only allege state-based claims, the inquiry is narrower and focuses only on contacts with New York. *See Contant*, 2019 WL 2174233, at *6. And as the Court explained, Plaintiffs have insufficiently alleged New York contacts as to RBS

---

[2] *See, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 6243526, at *23 (S.D.N.Y. Oct. 20, 2015) (quoting *SEC v. Morton*, 2011 WL 1344259, at *12 (S.D.N.Y. Mar. 31, 2011)) ("When the jurisdictional issue flows from a federal statutory grant that authorizes suit under federal-question jurisdiction and nationwide service of process . . . the Second Circuit has consistently held that the minimum-contacts test in such circumstances looks to contacts with the entire United States rather than with the forum state.").

[3] *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State").

[4] RBS was not a party to the motion or subject to the Court's opinion, as it had already settled with *FOREX* plaintiffs by the time the Foreign Defendants filed their motion.

[5] SG has never been a party in *Nypl* and therefore was not subject to the Court's opinion in that case.

4

and SG because the complaint nowhere alleges that either RBS or SG "engaged in suit-related conducted aimed at or taking place in New York." *Id.*

To support their claim of jurisdiction, Plaintiffs cite certain general statements from *FOREX* and *Nypl* that "a substantial part of the events" that allegedly gave rise to those plaintiffs' claims occurred "in this District." Recons. Mem. at 5 (quoting *Nypl*, 2018 WL 1472506, at *5). But this Court's decision in *Contant* recognized as much, and indeed found jurisdiction in New York over several other Defendants. *Contant*, 2019 WL 2174233, at *7. The reason the Court dismissed Plaintiffs' claims against RBS and SG is not because Plaintiffs do not allege any New York-based conduct by any Defendant, but because they do not "connect [RBS and SG's] participation in the conspiracy to New York . . . for example, by alleging facts to show that they were aware of their co-conspirators' in-forum overt acts." *Id*. at *6. *FOREX* or *Nypl* did not need to reach that question because they involved a nationwide contacts analysis, and nothing in those opinions is to the contrary.

Tellingly, even on reconsideration, Plaintiffs' brief fails to point to any well-pleaded allegations connecting RBS or SG to alleged conspiratorial conduct in New York. Instead, Plaintiffs merely cite conclusory allegations that involve improper group pleading, *see, e.g.*, Recons. Mem. at 5, 6 ("Defendants' collusive and manipulative acts took place, in substantial part, in New York" (quoting SCCAC ¶ 8)), generic allegations of FX transactions unconnected to the alleged conspiracy, *see, e.g.*, Recons. Mem. at 7 ("At year-end 2013, [SG] reported for its New York branch gross notional outstanding spot FX contracts of approximately $13 million and FX derivatives of $21.6 billion." (quoting SCCAC ¶ 34)), and allegations that RBS or SG "participated in chat rooms" or "coordinated" with other Defendants that conspicuously contain *no* reference to such conduct occurring in New York, Recons. Mem. at 6. These allegations were already

5

considered by the Court in Plaintiffs' Opposition to Foreign Defendants' Motion to Dismiss (ECF No. 219, at 3, 14 & n.10), and rejected as insufficient in the Opinion, *see Contant*, 2019 WL 2174233, at *6 ("Plaintiffs have not made a prima facie showing that MUFG, RBS or [SG] could reasonably foresee being haled into court in New York for their conspiracy-related conduct.").

Unable to point to any allegations connecting any New York-based conspiratorial conduct to RBS or SG, Plaintiffs attempt to infer that because "RBS specifically admitted in the plea agreement to 'agreeing to eliminate competition in the purchase and sale of the EUR/USD currency pair in the United States and elsewhere,' and that '[t]he conspiracy had a direct effect on trade and commerce within the United States, as well as on U.S. import trade and commerce, and was carried out, in part, within the United States," this conduct somehow must have occurred in New York. Recons. Mem. at 7 (emphasis omitted) (quoting SCCAC ¶¶ 2, 4). But RBS had no FX trading operations based in New York (Decl. of William Gougherty ¶5, ECF No. 199-8), and indeed the very plea agreement that Plaintiffs cite was filed by the Department of Justice in the *District of Connecticut*, not in New York. (Dell'Angelo Decl., ECF No. 220, Ex. 2 (RBS Plea Agreement).) Plaintiffs' citation to RBS's plea agreement thus undermines, rather than supports, Plaintiffs' argument.

Finally, Plaintiffs contend that "RBS conceded personal jurisdiction in *FOREX*" after having settled that action. Recons. Mem. at 1, n.3. But this Court already rejected the same argument in its *Nypl* decision, holding that RBS's acknowledgement of the Court's jurisdiction over the *FOREX* settlement agreement does not translate to personal jurisdiction in a separate case: "[A] party's consent to jurisdiction in one case . . . extends to that case alone and in no way opens that party up to other lawsuits in the same jurisdiction in which consent was given." *Nypl*, 2018 WL 1472506, at *2 (quoting *Schwab*, 883 F.3d at 88). Indeed, RBS's consent to personal

6

jurisdiction over the *FOREX* settlement is doubly irrelevant here because, as discussed above, *FOREX* involved a federal claim subject to a nationwide contacts analysis, whereas this case does not.

In short, this Court got it right the first time, and Plaintiffs' attempt to re-litigate the Court's decision should be rejected.

### III. The Court Properly Applied Second Circuit Precedent to Plaintiffs' Claims Against RBS and SG

Plaintiffs' argument that the Court improperly applied Second Circuit precedent in *Schwab* fares no better. Plainly, the Court did not "overlook" *Schwab*, as the Court cited *Schwab* twelve times in its Opinion. *See Contant,* 2019 WL 2174233, at *1-3, 5. Rather, Plaintiffs merely take issue with this Court's *interpretation* of the Second Circuit's decision in *Schwab*, which constitutes an improper "second bite at the apple," and Plaintiffs' Motion should be denied on that basis alone. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 377 (S.D.N.Y. 2014) ("That the Opinion rejected Plaintiff's interpretation of those cases illustrates that Plaintiff seeks 'a second bite at the apple,' an impermissible basis for reconsideration." (quoting *Analytical Surveys, Inc.*, 684 F.3d at 52)).

Regardless, contrary to Plaintiffs' assertions, this Court properly applied *Schwab* and other controlling precedent in dismissing Plaintiffs' claims against SG and RBS. In arguing that *Schwab* compels a different result, Plaintiffs advance an overly narrow reading of that case to support their claim that attributing "the acts of co-conspirators . . . to all defendants for purposes of specific jurisdiction under the doctrine of 'conspiracy jurisdiction'" is *per se* consistent with constitutional due process. Recons. Mem. at 8. That is not what *Schwab* held. In *Schwab*, the Second Circuit examined the minimum requirements for conspiracy jurisdiction articulated by other courts, and adopted the three-pronged analysis set forth in *Unspam Techs., Inc. v. Chernuk*. *See Schwab*, 883

7

F.3d at 86-87 (citing 716 F.3d 322, 329 (4th Cir. 2013)). However, the Second Circuit *declined* to find specific personal jurisdiction over the foreign defendants in *Schwab*, despite the plaintiff's plausible allegations of the existence of a LIBOR-fixing conspiracy, because the pleadings "[did] not permit an inference" that certain co-conspirators' contacts in the forum "were in furtherance of the conspiracy." *Id*. Because the Second Circuit found that the third prong of the conspiracy jurisdiction test was not met, it did not reach the issue of whether the foreign defendants' connection with the forum was "such that [the defendants] should reasonably anticipate being haled into court there." *Volkswagen*, 444 U.S. at 297.

Indeed, in *Schwab* the Second Circuit affirmed the longstanding constitutional due process requirements for specific personal jurisdiction, which, among other things, require courts to "evaluate the quality and nature of the defendant's contacts with the forum under a totality of the circumstances test. Where the claim arises out of, or relates to, the defendant's contacts with the forum—i.e., specific jurisdiction is asserted—minimum contacts necessary to support such jurisdiction exist *where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there*." *Schwab*, 883 F.3d at 82 (emphasis added) (quoting *Licci*, 732 F.3d at 170); *see also Volkswagen*, 444 U.S. at 297 (due process requires "foreseeability . . . *that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there*" (emphasis added)); *Walden*, 571 U.S. at 286 ("Due process requires that a defendant be haled into court in a forum State *based on his own affiliation with the State*, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." (emphasis added)). In short, the Second Circuit's decision in *Schwab* did not disturb the fundamental requirement that specific personal jurisdiction arises out of the contacts that each

8

defendant *itself* creates. *See, e.g.*, *Walden*, 571 U.S. at 285 ("[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.").

As this Court has recognized, these longstanding constitutional due process requirements, which focus on the defendant's affiliation with the forum, must be satisfied regardless of Plaintiffs' theory of jurisdiction, including conspiracy jurisdiction. *See Contant*, 2019 WL 2174233, at *3 ("Under any of these theories, the exercise of jurisdiction comports with due process only if the defendant's conduct and connection with the forum is 'such that [the defendant] should reasonably anticipate being haled into court there.'") (alteration in original) (quoting *Volkswagen*, 444 U.S. at 297).[6] The Second Circuit did not (and could not) abrogate this controlling Supreme Court precedent in *Schwab*.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for reconsideration should be denied.

Dated: New York, New York
June 24, 2019

---

[6] Moreover, as another Court in this District has recognized, "a cautious assessment of allegations of conspiracy jurisdiction seems particularly appropriate" where, as here, "moving plaintiffs are relying on random acts taken mainly by domestic banks to establish jurisdiction over foreign defendants who had no direct contacts with plaintiffs whatsoever." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2019 WL 1331830, at *11 (S.D.N.Y. Mar. 25, 2019). Otherwise, "[a]n expansive exercise of extraterritorial jurisdiction would not only create comity issues; it would contravene the central dictate of the Supreme Court's ruling in *Walden* that, under the due process analysis, we must look to the contacts that each defendant himself or herself created with the forum." *Id.*

| DAVIS POLK & WARDWELL LLP | LINKLATERS LLP |
|---|---|
| By: /s/ Paul S. Mishkin<br>Paul S. Mishkin<br>Adam G. Mehes<br>Maude Paquin<br>450 Lexington Avenue<br>New York, NY 10017<br>Telephone: 212-450-4000<br>paul.mishkin@davispolk.com<br>adam.mehes@davispolk.com<br>maude.paquin@davispolk.com<br><br>*Attorneys for Defendant The Royal Bank of Scotland plc, now known as NatWest Markets Plc* | By: /s/ James R. Warnot, Jr.<br>James R. Warnot, Jr.<br>Patrick C. Ashby<br>Nicole E. Jerry<br>1345 Avenue of the Americas<br>New York, New York 10105<br>Telephone: (212) 903-9000<br>james.warnot@linklaters.com<br>patrick.ashby@linklaters.com<br>nicole.jerry@linklaters.com<br><br>Adam S. Lurie<br>601 13th St. NW<br>Suite 400<br>Washington, DC 20005<br>Telephone: (202) 654-9227<br>adam.lurie@linklaters.com<br><br>*Attorneys for Defendant Société Générale* |