| New York | Paris |
|---|---|
| Northern California | Madrid |
| Washington DC | Hong Kong |
| São Paulo | Beijing |
| London | Tokyo |

# Davis Polk

**Paul S. Mishkin**

Davis Polk & Wardwell LLP      212 450 4292 tel
450 Lexington Avenue             paul.mishkin@davispolk.com
New York, NY 10017

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/14/2019
```

August 9, 2019

Re:    *Contant, et al. v. Bank of Am. Corp., et al.*, No. 17-cv-3139-LGS (S.D.N.Y.)

**VIA ECF**
The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

*IT IS ORDERED that Plaintiffs shall file a letter reply not to exceed three pages by August 21, 2019.  The Court is likely to rule based on the letters in lieu of a formal motion to amend.*

*Dated: August 14, 2019*
*New York, New York*

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

Dear Judge Schofield:

Pursuant to the Court's July 26, 2019 Order, (ECF No. 295), Defendant The Royal Bank of Scotland plc, now known as NatWest Markets Plc ("RBS"), respectfully submits this letter in opposition to Plaintiffs' pre-motion letter seeking leave to file a Proposed Third Consolidated Class Action Complaint ("PTAC") in the above-referenced matter.[1]  As explained below, the PTAC—Plaintiffs' *fifth* attempt at pleading their claims—fails to adequately allege personal jurisdiction as to RBS.[2]  The Court should therefore deny Plaintiffs' motion for leave to amend.

Under Federal Rule of Civil Procedure 15(a)(2), "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).[3]  Here, the Court should deny leave to file the PTAC both because it is an improper fifth attempt to plead Plaintiffs' claims and because the proposed amendments are futile.

1.   Leave to Amend Should Be Denied Because It Is an Improper Fifth Bite at the Apple

Plaintiffs' request to file the PTAC should be denied because of their "repeated failure to cure deficiencies by amendments previously allowed."  *Burch*, 551 F.3d at 126.  Plaintiffs are "not entitled

---

[1] On August 5, 2019, the Court instructed Plaintiffs to file "their proposed [amended complaint] in redacted form on ECF."  (ECF No. 303.)  On August 6, 2019, Plaintiffs filed a "Third Consolidated Class Action Complaint," but failed to indicate that it was a proposed, rather than an operative, complaint.  (ECF No. 304.)  To avoid any confusion, counsel for RBS asked Plaintiffs to re-file their complaint as a proposed complaint.  Plaintiffs refused to correct the complaint or admit that it is only a proposed complaint, but have agreed that "Defendants are not obligated to respond to Plaintiffs' filing under Rule 15(a)(3), at this time."  To the extent that Plaintiffs contend that this Court granted leave to amend, RBS disagrees and reserves all rights.

[2] RBS reserves its right to challenge the PTAC on other grounds if the Court were to grant leave to amend.

[3] All internal quotation marks and citations are omitted unless stated otherwise.

The Honorable Lorna G. Schofield                    2                    August 9, 2019

to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies."  *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007).  Plaintiffs have already had at least four chances to plead their case,[4] and each time they have come up short.  They should not get a fifth.  *See id.* (affirming dismissal where plaintiffs had "two previous opportunities to amend . . . [and sought] yet another bite at the proverbial apple").

Moreover, the parties have already litigated issues of personal jurisdiction *three times* in the *Contant* case alone.  The adequacy of Plaintiffs' personal jurisdiction allegations was first fully briefed nearly two years ago when foreign defendants filed a Rule 12(b)(2) motion to dismiss against Plaintiffs' Consolidated Class Action Complaint ("AC").  (ECF No. 105.)  After dismissing the AC on alternative grounds, the Court permitted Plaintiffs to file a Second Consolidated Class Action Complaint ("SAC").  (ECF No. 166.)  The parties then fully briefed personal jurisdiction again, and the Court dismissed Plaintiffs' claims against RBS on those grounds, without suggesting Plaintiffs could replead.  (ECF No. 263.)  Plaintiffs then moved for reconsideration of that dismissal, and that motion was denied.  (ECF No. 288.)

For Plaintiffs to move for leave to amend yet again would permit an "unchecked volley of re-pleading and motion practice."  *Sullivan v. Barclays PLC*, 13-cv-2811 (PKC), 2017 U.S. Dist. LEXIS 71668, at *10 (S.D.N.Y. Apr. 18, 2017).[5]  Particularly in a sprawling litigation such as this that has been ongoing for years, it is time to move on.  The Court should deny Plaintiffs' motion for leave to amend under Rule 15(a)(2).[6]

 2.   Leave to Amend Should Be Denied Because the Proposed Amendments Are Futile

Leave to amend should also be denied because the amendments in the PTAC fail to cure the deficiencies identified in the Court's May 17, 2019 Opinion and Order.  (ECF No. 263.)  In that Opinion, the Court held that "Plaintiffs have not made a prima facie showing that . . . RBS . . . could reasonably foresee being haled into court in New York for their conspiracy-related conduct," such as "by alleging facts to show that they were aware of their co-conspirators' in-forum overt acts."  (*Id.* at 12.)  None of the new allegations in the PTAC make such a showing.

Plaintiffs purport to link RBS's "conspiracy-related conduct to New York," (ECF No. 293), but even with the benefit of millions of pages of documents from Defendants' voluminous document productions, Plaintiffs have still failed to muster a single, non-conclusory allegation that supports personal jurisdiction over RBS in New York.

---

 [4] To date, Plaintiffs' counsel have filed (1) the original complaint in *Baker* on September 26, 2016; (2) the amended *Baker* complaint on March 24, 2017; (3) the original *Contant* complaint on April 28, 2017 (ECF No. 1); (4) the Consolidated Class Action Complaint on June 30, 2017 (ECF No. 84); and (5) the Second Consolidated Class Action Complaint on November 21, 2018 (ECF No. 178).

 [5] *See also Duckett v. Williams*, 86 F. Supp. 3d 268, 276 (S.D.N.Y. 2015) (pleading is not "an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges"); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 626-27 (S.D.N.Y. 2013) (denying leave to amend to avoid "turning defense counsel and the Court into plaintiffs' counsel's co-counsel, with plaintiffs waiting to see what objections defendants raise and how the Court rules on those objections and then amending their complaint as necessary based on what they learned in the process")..

 [6] That Plaintiffs did not yet have access to Defendants' document productions when they filed their prior complaints is no answer.  *See, e.g.*, *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004) (Lynch, J.) ("Except in certain limited circumstances [such as perpetuating vital testimony], discovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim, and still less to salvage a lawsuit that has already been dismissed . . . .").

The Honorable Lorna G. Schofield                    3                    August 9, 2019

As an initial matter, Plaintiffs' allegations that RBS "maintained a major FX trading office in New York City from the beginning of the Class Period . . . through 2009," (PTAC ¶¶ 205 and 114-115) are incorrect.  As stated in the accompanying Declaration of Richard G. McCarty, as well as the unrebutted December 20, 2018 Declaration of William Gougherty (ECF No. 199-8), RBS did not have any FX trading office or FX traders based in New York during the Class Period.  McCarty Decl. ¶ 5; Gougherty Decl. ¶ 5.  RBS's New York-based FX traders were relocated to Greenwich, Connecticut in June 2005, more than a year before the Class Period began.  McCarty Decl. ¶ 5. Moreover, while it is true that in 2009 these traders were relocated again, (PTAC ¶¶ 117, 205), they were relocated from Greenwich, Connecticut to Stamford, Connecticut, not from New York to Stamford.  And this includes John Munley, who the PTAC incorrectly asserts operated out of New York during the Class Period.  McCarty Decl. ¶ 5; (*contra* PTAC ¶ 115).  Plaintiffs' incorrect and unsupported allegations do not provide a basis to exercise personal jurisdiction over RBS in New York.[7]

Plaintiffs' other allegations fare no better.  Plaintiffs cite various chats for the proposition that RBS traders "collude[d] with New York-based Defendant traders to manipulate FX Instrument prices." (PTAC ¶ 117).  However, none of those chats reflect collusion to manipulate FX instrument prices.[8] And in any event, Plaintiffs notably nowhere allege (nor could they) that these chats reflect "aware[ness] of their co-conspirators' in-forum overt acts."  (ECF No. 263.)  None so much as mentions the location of any of the chat participants, let alone indicates that RBS FX traders knew that a particular chat participant was located in New York.  (*See generally* PTAC ¶¶ 114-125.)[9] Plaintiffs allege that they are "aware of thousands of electronic communications made between traders employed by dozens of banks, including each Defendant," (PTAC ¶ 107), yet tellingly Plaintiffs cannot point to a single one that indicates that any RBS trader was aware of any alleged conspiratorial conduct occurring in New York.  Plaintiffs' failure to do so speaks volumes.

Lastly, Plaintiffs mischaracterize the 2015 plea agreement between the Department of Justice and RBS.  (*Id.* ¶ 205.)  Nowhere does the plea agreement say that RBS had a New York office or New York-based traders, contrary to Plaintiffs' allegations.[10]  Indeed, the words "New York" do not appear *once* in the text of the plea agreement, which, notably, was filed in the District of Connecticut.

In sum, for the reasons discussed above, RBS respectfully requests that this Court deny Plaintiffs' request for leave to file the Third Consolidated Class Action Complaint under Federal Rule of Civil Procedure 15(a)(2).

---

[7] In deciding a motion to dismiss for lack of personal jurisdiction, courts may look outside the pleadings to "all pertinent documentation submitted by the parties."  *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 463 (S.D.N.Y. 2008).  Courts assess futility on a motion for leave to amend under the same standard as a motion to dismiss.  *See Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 92 (2d Cir. 2016).

[8] Plaintiffs stretch to characterize as manipulation unremarkable commentary about where the market might go, generic market terminology, and jokes.  Indeed, some of the chats simply reflect participants trading *with each other* as counterparties. (*See, e.g.*, PTAC ¶ 124.)

[9] The conclusory references in the PTAC to each chat participant's purported location were added by Plaintiffs; the underlying chats do not include any location information.  (*See, e.g.*, PTAC ¶ 115.)  Moreover, at least in the case of John Munley, Plaintiffs' added information is incorrect.  As explained above, Munley was not at "RBS NY" during the Class Period.

[10] *See* Plea Agreement, *United States v. The Royal Bank of Scotland plc*, 3:15-cr-80-SRU (D. Conn. May 2, 2015), ECF. No. 9.

The Honorable Lorna G. Schofield                    4                                    August 9, 2019

Respectfully submitted,

/s/ Paul S. Mishkin
Paul S. Mishkin

cc:  Counsel for all parties via ECF