August 21, 2019

**VIA ECF**

The Honorable Lorna G. Schofield
U.S. District Court, Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

  Re: *Contant, et al. v. Bank of Am. Corp., et al.*, No. 17-cv-3139-LGS (S.D.N.Y.)

Dear Judge Schofield:

  Pursuant to the Court's August 14, 2019, Order (ECF No. 310), Plaintiffs respectfully submit this letter in response to The Royal Bank of Scotland plc's ("RBS") opposition ("R. Opp.") to Plaintiffs' pre-motion letter seeking leave to file a Third Consolidated Class Action Complaint ("TCCAC").

  "When a motion to dismiss is granted, 'the usual practice is to grant leave to amend the complaint.'" *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) (citation omitted). Denial of leave to amend requires "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "A proposed amendment to a complaint is futile when it could not withstand a motion to dismiss." *Contant v. Bank of Am. Corp.*, No. 17-cv-3139-LGS, 2018 WL 5292126, at *2 (S.D.N.Y. Oct. 25, 2018) (citation omitted). "In reviewing a motion for leave to amend, a court accepts as true all factual allegations and draws all reasonable inferences in the plaintiff's favor." *Id.* at *3 (citation omitted). RBS argues that the motion should be denied because Plaintiffs have repeatedly failed to allege the Court has personal jurisdiction over RBS, and that the motion is futile as the new allegations in the TCCAC fail to remedy the jurisdictional deficiencies identified in the Court's May 17, 2019, Order. Both arguments are wrong and provide no basis to deny Plaintiffs' motion.

**I.  The TCCAC Is Plaintiffs' Second Substantive Amendment**

  Plaintiffs' TCCAC is not a "fifth bite at the apple." *C.f.* R. Opp. at 1-2. It is Plaintiffs' *first* attempt to address the specific deficiencies identified in the Court's order granting RBS's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2). *Contant v. Bank of Am. Corp.*, 385 F. Supp. 3d 284, 295 (S.D.N.Y. 2019). At Defendants' request, the amended complaint in *Baker* that included the claims of many of the *Contant* Plaintiffs was withdrawn and re-filed as a new action (*Contant*). Subsequently, the *Lavender* action was filed, bringing similar claims as the *Contant* complaint, but with different Plaintiffs and state-law causes of action. Defendants insisted that Plaintiffs consolidate the two actions in a single Consolidated Class Action Complaint ("CCAC"), which they did rather than litigate the issue. On March 15, 2018, the Court granted Defendants' motion to dismiss the CCAC pursuant to Fed. R. Civ. P. 12(b)(6), holding that Plaintiffs failed to adequately allege antitrust injury and proximate cause. *Contant v. Bank of Am. Corp.*, No. 17-cv-

3139-LGS, 2018 WL 1353290, at *9 (S.D.N.Y. Mar. 15, 2018). Plaintiffs subsequently filed their *first* motion to amend the CCAC, submitting a proposed Second Consolidated Class Action Complaint ("SCCAC") to fix those pleading deficiencies. ECF No. 138. The Court granted Plaintiffs' motion in substantial part on October 25, 2018. *Contant v. Bank of Am. Corp.*, No. 17-cv-3139-LGS, 2018 WL 5292126, at *1 (S.D.N.Y. Oct. 25, 2018). RBS subsequently filed a motion to dismiss for lack of personal jurisdiction, which the Court granted, finding that the SCCAC "does not specifically allege that . . . RBS . . . engaged in suit-related conduct aimed at or taking place in New York . . . [n]or does the Complaint connect [RBS's] participation in the conspiracy to New York in some other way - for example, by alleging facts to show that they were aware of their co-conspirators' in-forum overt acts." *Contant*, 385 F. Supp. 3d at 295. The TCCAC adds specific allegations demonstrating that RBS engaged in suit-related conduct aimed at New York *and* that it was aware of its co-conspirators' in-forum acts in furtherance of the conspiracy.

When the SCCAC was filed, discovery was stayed. *See* ECF No. 102. The chat transcripts that are quoted in the TCCAC therefore could not have been included in an earlier complaint. Unlike in the *Bellikoff* and *Sullivan* cases cited by RBS, R. Opp. at 2-3, the TCCAC is Plaintiffs' first amended complaint that adds allegations based on information obtained through discovery.[1]

## II.   The New TCCAC Allegations Support a Finding of Personal Jurisdiction over RBS

Based on multibank chat room transcripts, the TCCAC adds detailed allegations linking RBS's conspiracy-related conduct to New York, including discussions of FX price manipulation. RBS traders directly participated in the alleged conspiracy through chat groups with other Defendants' traders based in New York.[2] The allegations tying RBS's conspiratorial conduct to New York in the TCCAC are more detailed than those that this Court found sufficient to establish personal jurisdiction over BTMU and Société Générale in *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13-cv-7789-LGS, 2016 WL 1268267, at *1 (S.D.N.Y. Mar. 31, 2016).

---

[1] Contrary to RBS's suggestions otherwise, leave to amend cannot be denied solely because the plaintiff has filed a prior amended complaint. In *Bellikoff v. Eaton Vance Corp.*, the court recognized the well-established rule that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint," but found that the appellants' proposed amendments would be futile and noted that the proposed amendments could have been included in an earlier complaint. 481 F.3d 110, 118 (2d Cir. 2007). Similarly, in *Sullivan v. Barclays PLC,* the proposed amendments were "long-available facts and theories" that the court found should have been included in a prior complaint. No. 13-cv-2811-PKC, 2017 U.S. Dist. LEXIS 71668, at *11 (S.D.N.Y. Apr. 17, 2017). Here, the new chat allegations in the TCCAC are all based on discovery that was unavailable to Plaintiffs when the SCCAC was filed. In *Burch v. Pioneer Credit Recovery, Inc.*, the court found that amendment would be futile but did not address whether the appellant previously attempted to amend his complaint. 551 F.3d 122, 126 (2d Cir. 2008). Finally, *Podany v. Robertson Stephens, Inc*., 350 F. Supp. 2d 375, 379–80 (S.D.N.Y. 2004), cited at R. Opp. at 2 n.6, supports Plaintiffs' motion here. The *Podany* court found that the plaintiffs' proposed amendments did not cure the defects identified in the dismissal order, but noted that "[i]f plaintiffs can state a cause of action [following dismissal] based on information that has recently come to light, . . . the Court would permit amendment." *Id.* at 379. The provision quoted by RBS addresses the *Podany* plaintiffs' separate request for jurisdictional discovery, which Plaintiffs are not seeking here. *Id.* at 378; R. Opp. at 2 n.6.

[2] Contrary to RBS's suggestion, R. Opp. at 3 n.9, the locations of the traders identified in the new TCCAC allegations can generally be determined from the chat documents. As RBS knows, the locations of the participants in the chat transcripts are contained in produced documents that have separate Bates numbers from the chat transcripts. Plaintiffs have not attached those documents to this letter in light of Rule III.A.1, of the Court's Individual Rules, limiting pre-motion conference letters and exhibits to three pages total. If it would convenience the Court, Plaintiffs will submit copies of the documents identifying the locations of the traders upon request.

2

RBS claims that "none of th[e] chats [in the new TCCAC allegations] reflect collusion to manipulate FX instrument prices," and that "Plaintiffs stretch to characterize as manipulation unremarkable commentary about where the market might go, generic market terminology, and jokes." R. Opp. at 3. RBS's false explanations of the chats are improper at this stage, where the TCCAC's allegations must be accepted as true and all inferences made in favor Plaintiffs. *Contant*, 2018 WL 5292126, at *3. Further, RBS does not dispute the accuracy of the chat transcript allegations detailing conversations between RBS traders and New York based traders at other alleged Defendant banks. RBS claims that RBS trader John Munley was located at RBS's Greenwich, Connecticut office, not in New York, at the time of the chat room conversation quoted in paragraph 115 of the TCCAC. Declaration of Richard G. McCarty ("McCarty Decl.") ¶ 5.[3] Nevertheless, neither the RBS letter nor the McCarty Decl. disputes that the chat quoted in TCCAC paragraph 115 shows ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████. This allegation alone is sufficient to demonstrate that RBS engaged in suit-related conduct aimed at New York, and that RBS was aware of their co-conspirators' in-forum overt acts.

RBS attempts to raise a factual question, arguing that the RBS traders quoted in the TCCAC did not know the locations of their fellow chat participants. As noted, the locations of traders were generally available to participants through the Bloomberg chat application. The TCCAC alleges that "[t]he FX traders employed by Defendants were part of a geographically and socially concentrated group." *Id.* ¶ 61. Except for UBS and RBS, all of the Defendants' U.S. FX trading floors were located in New York during the Class Period. *See* TCCAC ¶¶ 21-35. Here, where all reasonable inferences must be drawn in favor of Plaintiffs, *Contant*, 2018 WL 5292126, at *2, the Court should reject RBS's supposition, contradicted by the chat transcripts themselves, that its traders had no idea that their fellow chat participants were located in New York.

Contrary to RBS's assertion, the TCCAC's new allegations regarding RBS's guilty plea (TCCAC ¶ 205) supports a connection between RBS and New York. R. Opp. at 3. In the plea agreement, RBS admitted that it entered into a conspiracy with other dealer banks in which RBS "agree[d] to eliminate competition in the purchase and sale of the EUR/USD currency pair in the United States and elsewhere," and that RBS's conduct in furtherance of the conspiracy involved the purchase and sale of FX Instruments "in a continuous and uninterrupted flow of interstate and U.S. import trade and commerce to customers and counterparties located in U.S. states other than the U.S. states or foreign countries in which [RBS] agreed to purchase or sell these currencies." TCCAC ¶ 205. RBS could not have directed its conspiratorial conduct throughout the U.S. over a seven-year period without touching New York City. Thus, the plea agreement allegations further support a reasonable inference that RBS directed its conspiratorial conduct at New York.

For the reasons above and in Plaintiffs' Letter Motion for Pre-Motion Conference (ECF No. 293), Plaintiffs respectfully request that the Court grant Plaintiffs leave to file the TCCAC.

---

[3] After leaving RBS in 2009, ████████████████████████████████████████████████████ ████████████████████████████. In light of paragraph 5 of the McCarty Declaration, if granted leave, Plaintiffs will amend paragraph 115 of the TCCAC to reflect that Munley was located in Greenwich, Connecticut, rather than New York, at the time of ███████████████████████████████████████████████████████████████████ ████████████████████████. However, Plaintiffs have confirmed that the location designations for all other traders included in the new TCCAC allegations are correct, as alleged.

Dated: August 21, 2019                    Respectfully submitted,

/s/ Michael Dell'Angelo
Michael Dell'Angelo
Michael J. Kane
Joshua T. Ripley
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
mdellangelo@bm.net
mkane@bm.net
jripley@bm.net

Garrett W. Wotkyns
**SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP**
8501 North Scottsdale Road, Suite 270
Scottsdale, AZ 85253
Tel: (480) 428-0142
Fax: (866) 505-8036
gwotkyns@schneiderwallace.com

Joseph C. Peiffer
**PEIFFER WOLF CARR & KANE, APLC**
201 St. Charles Ave. Suite 4610
New Orleans, LA 70170
Tel: (504) 523-2434
Fax: (504) 523-2464
jpeiffer@pwcklegal.com

R. Bryant McCulley
Stuart McCluer
**MCCULLEY MCCLUER PLLC**
701 East Bay Street, Suite 411
Charleston, SC 29403
Tel: (855) 467-0451
Fax: (662) 368-1506
bmcculley@mcculleymccluer.com
smccluer@mcculleymccluer.com

*Counsel for Plaintiffs and the Proposed Classes*