UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES CONTANT, *et al.*,<br><br>    *Plaintiffs*,<br>v.<br><br>BANK OF AMERICA<br>CORPORATION, *et al*.,<br><br>    *Defendants*. | No. 17-cv-3139-LGS<br><br>(related to No. 13-cv-7789-LGS) |

**DECLARATION OF MICHAEL DELL'ANGELO IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS AND
CERTIFICATIONS OF THE PROPOSED SETTLEMENT CLASSES FOR
SETTLEMENT PURPOSES**

Pursuant to 28 U.S.C. § 1746, I, Michael Dell'Angelo, declare as follows:

1. I am a Managing Shareholder in the law firm of Berger Montague PC. My firm serves as attorneys of record for Plaintiffs in this matter and was previously designated as Settlement Class Counsel with respect to the Citigroup and MUFG Settlements. *See* ECF No. 297 (the "Citigroup/MUFG Preliminary Approval Order").

2. I have been actively involved in prosecuting this action, am familiar with its proceedings, and have personal knowledge of the matters set forth herein. If called upon and sworn as a witness, I could competently testify thereto.

3. I submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of the Standard Chartered Bank ("SC") Settlement (the "SC Settlement") and the Société Générale ("SG") Settlement (the "SG Settlement").

4. Attached as Exhibit A is a true and correct copy of the proposed Stipulation and Agreement of Settlement with SC.

5. Attached as Exhibit B is a true and correct copy of the proposed Stipulation and Agreement of Settlement with SG.

6. Attached as Exhibit C is a proposed Short-Form Notice to be disseminated to the members of the Settlement Classes.

7. Attached as Exhibit D is a proposed Long-Form Notice to be disseminated to the members of the Settlement Classes.

8. As attorney of record for the Plaintiffs, and with additional counsel representing Plaintiffs in this Action (collectively, "Class Counsel"), we have undertaken extensive settlement discussions with counsel for SC. Those settlement discussions began in May 2019, and culminated in the SC Settlement signed on November 4, 2019, after six months of vigorous, arm's-length

negotiations by the parties that included frank discussions of the relative strengths and weaknesses of the parties' claims and defenses. Plaintiffs were informed throughout the settlement discussions by the expert analyses described below, as well as Class Counsel's investigation of the alleged conspiracy and its effects, including discovery obtained from Defendants, publicly available news articles, press releases and other reports, and researching the applicable law.

9. I, along with Class Counsel, also undertook extensive settlement discussions with counsel for Defendant SG. Those settlement discussions began on May 15, 2019, and spanned three months of arm's-length negotiations and exchanges of draft settlement agreements. The parties reached a settlement agreement in principle on August 13, 2019, but continued to exchange draft settlement agreements throughout the following weeks before culminating in a signed settlement agreement on September 10, 2019.

10. For a substantial period of Plaintiffs' settlement negotiations with SG, and critically at the time the SG Settlement was finalized, SG was dismissed from the case. Although Plaintiffs could have sought to appeal that order or filed a motion for leave to file an amended complaint adding jurisdictional allegations regarding SG, the success of such efforts would have been far from certain. Thus, absent the SG Settlement, there is no guarantee that Plaintiffs would have been able to recover any funds—or obtain any discovery materials—from SG.

11. During the settlement discussions with SC and SG, Class Counsel considered the analyses of industry expert Dr. Carol Osler to evaluate the volume of retail FX transactions relative to the volume of spot FX transactions as a whole. I, along with Class Counsel and the Plaintiffs, took into consideration the substance of Dr. Osler's analyses, the complexities of this Action, and the relative strengths and weaknesses of each side's litigation position in reaching the terms of both Settlements proposed here. Class Counsel and Dr. Osler considered a number of sources in

estimating the size of the Classes at issue here as compared to the direct purchaser class in the related action *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13-cv-7789-LGS ("*FOREX*"), including retail estimates from the Triennial Bank Survey of the Bank for International Settlements ("BIS"), the Federal Reserve Bank of Cleveland, Dr. Osler's own academic research, and other industry data and sources. These sources indicated that the daily average volume of retail FX trading relative to the overall direct purchaser FX Instrument market at issue in *FOREX* is likely between 10 and 30 percent. Additionally, because the proposed Settlement Classes at issue here are limited to the eight states of New York, Arizona, California, Florida, Illinois, Massachusetts, Minnesota, and North Carolina, the estimate was further reduced to account for the total size of these Classes. According to the U.S. Census Bureau's Population Estimates, the populations of the eight states at issue in this Action account for 37.7 percent of the overall U.S. population.

12. Applying the market share estimates prepared by Dr. Osler, Class Counsel took into consideration the amounts of the SC and SG settlements approved by the Court in *FOREX*.

13. The *FOREX* plaintiffs settled with SC for $17,200,000. *FOREX* ECF No. 822-5. Applying the more conservative retail FX market share estimate of 10 percent and the 37.7 percent population estimate to the SC *FOREX* settlement results in a *pro-rata* indirect amount of $648,440. Applying the high-end 30 percent retail FX market share estimate and the 37.7 percent population estimate to the SC $17.2 million *FOREX* settlement results in a *pro-rata* indirect amount of $1,945,320. The $1,720,000 SC Settlement here is therefore at the high end of the *pro-rata* range of reasonableness based on the Court-approved direct-purchaser settlements in *FOREX*.

14. In *FOREX*, the SG settlement provided for a payment of $18 million for both the Direct and the Exchange-Only Settlement Classes. *See FOREX* ECF No. 822-4. Applying the same

state population and retail FX market share estimates described above, the retail FX market share portion of the of $18 million *FOREX* SG settlement is between $678,600 (using the 10% estimate) and $2,035,800 (using the 30% estimate). Therefore, even though SG was dismissed from the action when the Settlement was reached here, the SG Settlement amount of $975,000 is still well within the *pro-rata* range of reasonableness based on the *FOREX* settlement where SG was not dismissed when it settled with the plaintiffs in that action.

15. Plaintiffs' settlement negotiations with Settling Defendants were also informed by the SC and SG settlements in the related Canadian action. *See Mancinelli et al. v. Royal Bank of Canada et al.*, No. CV-15-536174 (Ontario S.C.J.); *Béland v. Banque Royale du Canada et al.*, No. 200-06-000189-152 (Quebec S.C.J.). The Canadian SC and SG settlement amounts were, respectively, $900,000 CAD and $1,800,000 CAD. The Canadian plaintiffs' settlements allocated 20 percent of the settlement proceeds to the indirect purchaser Canadian class members. Therefore, the Canadian indirect purchasers recovered $180,000 CAD from the SC settlement (20% of $900,000) and $360,000 CAD from the SG settlement (20% of $1,800,000). The exchange rate in July 2018 when the Canadian plaintiffs' proposed plan of allocation was approved was 0.768 CAD to 1 U.S. dollar ("USD").[1] Therefore, the Canadian indirect purchaser settlement amounts are approximately $138,240 USD for SC, and $276,480 USD for SG. Applying a population adjustment factor of 3.44 to those amounts to account for the larger population of the proposed Settlement Class states relative to the Canadian population,[2] a *pro-rata* estimate of a reasonable

---

[1] *See* Federal Reserve Bank of St. Louis, US Dollar to National Currency Spot Exchange Rate for Canada, *available at* https://fred.stlouisfed.org/series/CCUSSP01CAM650N#0 (last visited Nov. 22, 2019).

[2] The U.S. Census estimates that in 2013, the total population of Canada was 34.57 million, and the total population of the eight Settlement Class states was 118.98 million. *See* U.S. Census, Annual Estimates of the Resident Population for the United States, Regions, States, and Puerto Rico: April 1, 2010 to July 1, 2018, available at https://www.census.gov/data/tables/time-series/demo/popest/ 2010s-state-total.html (last visited Nov. 22, 2019); U.S. Census, Demographic Overview – Canada, *available at* https://www.census.gov/data-tools/demo/idb/region.php?N=%20Results%20&T=13&A=separate&RT=0&Y=2013&R=-1&C=CA (last visited Nov. 22, 2019). Thus, the total population of the Settlement Class states is approximately 344.2% of the population of Canada.

settlement amount in this matter based on the Canadian indirect purchaser settlement amounts is approximately $475,546 for SC, and $951,091 for SG. Therefore, the $1,720,000 million SC Settlement here is more than three times greater than a *pro-rata* estimate based on the court-approved Canadian SC settlement, and the $975,000 SG Settlement is slightly greater than the *pro-rata* estimate based on the court-approved Canadian SG settlement where SG was not dismissed when it settled with the plaintiffs in that action. Thus, the Canadian SC and SG settlements further confirm the reasonableness of the Settlements here.

16.     After diligent investigation and careful consideration of all relevant circumstances, I, along with Class Counsel, recommended to the Plaintiffs that it was in the best interests of the Classes to enter into the proposed Settlements. Plaintiffs concurred with the recommendations of counsel, allowing for the finalization of the proposed SC and SG Settlements. Each of the proposed Settlement Class Representatives supports approval of the Settlements.

17.     At the times the Settlements were reached, Plaintiffs had received all documents and substantial amounts of transactional data that a majority of the Defendants produced in *FOREX*, and had issued third-party subpoenas requesting transactional data from a number of retail foreign exchange dealers ("RFEDs"). Several RFEDs have already produced or are preparing to produce data responsive to those requests. *See* ECF No. 325 (Pre-Motion Letter to Compel Production of Forex Capital Markets, LLC); ECF No. 333 (Letter Motion to Stay Citigroup/MUFG Settlement Schedule Deadlines) (noting that Plaintiffs have already received documents and data from RFEDs including FXDirectDealer, LLC and Peregrine Financial Group). The information gleaned from this discovery, as well as from the pleadings, motions, and court orders in *FOREX*, have helped Class Counsel to assess the potential damages, as well as the risks and likely defenses going forward. Class Counsel have also attended depositions conducted in the related *FOREX*

action, and had reviewed all public and governmental reports related to or exchanged during the *FOREX* litigation as part of our extensive factual and legal analysis of this Action.

18. Plaintiffs' expert James Bibbings prepared an analysis estimating the total number of Settlement Class members. *See* Declaration of James Bibbings, ECF No. 274-4. Although Plaintiffs will likely refine these estimates as they receive more detailed data and information through discovery, Class Counsel and Mr. Bibbings believe that these estimates are reliable. Based on the Bibbings analysis, Plaintiffs estimate that the total number of Settlement Class members is 99,138. *Id.* ¶ 19. Therefore, the numerosity requirements are easily met.

19. In connection with the Citigroup/MUFG Preliminary Approval Motion, Class Counsel obtained preliminary estimates of claims administration costs from five well-respected potential claims administrators based on the Class size estimates set forth in the Bibbings Declaration. After carefully comparing bids and notice plan proposals from those five claims administrators, Plaintiffs selected Heffler Claims Group ("Heffler") as the proposed Claims Administrator. The Court approved that selection in the Citigroup/MUFG Preliminary Approval Order. *Id.* ¶ 27. For a total Class size of 100,000, Heffler estimates that the total costs of publication notice, direct-mail postcard and email notice, internet notice including advertising the Settlements on social media and websites, and administering the claims, will be $209,902. These cost estimates are based on a single consolidated notice and claims administration process for all Settlements to date, but would be multiplied if the process is done multiple times. Heffler's estimates reflect that using postcard notice results in a cost savings of between $17,600 and $75,500, depending on the total number of Class members.

20. As of November 22, 2019, Plaintiffs' litigation costs and expenses total $1,256,183.

21. Other than the Settlement Agreements themselves, there are no additional agreements required to be identified under Rule 23(e)(3). Counsel for Plaintiffs do not have any fee-sharing agreements subject to disclosure pursuant to S.D.N.Y. Local Civil Rule 23.1.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 22, 2019, in Philadelphia, PA.

/s/ Michael Dell'Angelo
Michael Dell'Angelo
**BERGER MONTAGUE PC**
1818 Market St, Suite 3600
Philadelphia, Pennsylvania 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
mdellangelo@bm.net
