UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

# If you purchased from or sold to a retail foreign exchange dealer ("RFED") a foreign currency instrument, a $13,630,000 class action settlement may affect you.

*A federal court directed this Notice. This is not a solicitation from a lawyer.*

- There is a class action lawsuit *Contant, et al v. Bank of America Corp., et al*, No. 17-cv-3139-LGS pending in the United States District Court for the Southern District of New York ("Action" or "Lawsuit"). The Court has granted preliminary approval of two cash settlements totaling $13.36 million with Settling Defendants Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc. (collectively, "Citigroup"); MUFG Bank, Ltd. (formerly known as The Bank of Tokyo-Mitsubishi UFJ, Ltd.) ("MUFG Bank"); Standard Chartered Bank ("SC"), and Société Générale ("SG"). Citigroup has agreed to pay $9,950,000 ("Citigroup Settlement") and MUFG Bank has agreed to pay $985,000 ("MUFG Bank Settlement"), SC has agreed to pay $1,720,000 ("SC Settlement"), and SG has agreed to pay $975,000 ("SG Settlement"), for a total of $13,630,000, to resolve and release all claims that were alleged or could have been alleged against them in the Action. Collectively, the Citigroup, MUFG Bank, SC, and SG Settlements are referred to as the "Settlements." Citigroup, MUFG Bank, SC, and SG are referred to as "Settling Defendants."

- The Lawsuit alleges that Settling Defendants and Non-Settling Defendants Bank of America Corporation; Bank of America, N.A.; Merrill Lynch, Pierce, Fenner & Smith Inc.; Barclays Bank PLC; Barclays Capital Inc.; BNP Paribas Group; BNP Paribas North America, Inc.; BNP Paribas Securities Corp.; BNP Paribas Prime Brokerage, Inc.; Credit Suisse AG; Credit Suisse Securities (USA) LLC; Deutsche Bank AG; Deutsche Bank Securities Inc.; The Goldman Sachs Group, Inc.; Goldman, Sachs & Co.; HSBC Bank PLC; HSBC North America Holdings, Inc.; HSBC Bank USA, N.A.; HSBC Securities (USA) Inc.; JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A.; Morgan Stanley; Morgan Stanley & Co., LLC; Morgan Stanley & Co. International PLC; RBC Capital Markets LLC; RBS Securities Inc.; UBS AG; and UBS Securities LLC (collectively, "Defendants") conspired to fix the prices of foreign currency ("FX") instruments causing settlement class members to be overcharged when directly purchasing from or directly selling to a retail foreign exchange dealer ("RFED") an FX instrument, where that RFED transacted in an FX instrument directly with a Defendant. The Settling Defendants believe that Class Plaintiffs' claims lack merit, and that those claims would have been rejected prior to trial, at trial, or on appeal. The Lawsuit will continue against Non-Settling Defendants who are identified in Question 1.

- For those people and entities who purchased from or sold to an RFED an FX Instrument, as applicable, in or while residing in New York, Arizona, California, Florida, Illinois, Massachusetts, Minnesota, or North Carolina, and that RFED transacted in an FX instrument with a Defendant during the period December 1, 2007 through [DATE OF PRELIMINARY APPROVAL ORDER], the Settlements create separate Settlement Classes for each of those states. If you fall into one of the State Settlement Classes, you are a Settlement Class Member.

- The Settlements offer cash payments to members of the Settlement Classes who file valid timely Claims.

- This Notice has important information. It explains the Settlements in this class action lawsuit. It also explains your rights and options in this case.

QUESTIONS? CALL [1-XXX-XXX-X] OR VISIT [WWW.WEBSITENAME.COM]

1

## **Legal Rights and Options**

**Your legal rights and options are described in this section. You may:**

**File a Claim**: This is the only way to get money from the Settlements. You must timely file a valid claim. See Question 9 for more information.

**Exclude Yourself**: You may request to be excluded from the Settlement Classes. This is the only way you can be part of another lawsuit that asks for money for claims in this case against the Settling Defendants. You will *not* get a payment from these Settlements. You must mail your exclusion request by [60 DAYS AFTER NOTICE DATE]. See Question 11 for more information.

**Object**: If you do not agree with any part of the Settlements or you do not agree with the requested award of attorneys' fees and expenses, you may write to the Court to say why and mail your objection by [60 DAYS AFTER NOTICE DATE]. See Question 16 for more information. You may also request to speak at the Court hearing about either the fairness of these Settlements or about the requested attorneys' fees and expenses. See Questions 22 for more information.

**Do Nothing:** You will not get money. You give up your rights to sue for relief about the claims in this Lawsuit. See Question 23 for more information.

2

BASIC INFORMATION ................................................................................................................... 4
    1.       Why did I get this Notice? ............................................................................................. 4
    2.       What is this Lawsuit about? ........................................................................................... 4
    3.       Why is this Lawsuit a class action? .............................................................................. 5
    4.       Why are there Settlements? .......................................................................................... 5
    5.       How do the Settlements affect the claims against Non-Settling Defendants? .................... 5
    6.       Am I part of these Settlements? .................................................................................... 5

SETTLEMENT BENEFITS ................................................................................................................. 8
    7.       What do these Settlements Provide? ............................................................................. 8
    8.       How do I ask for money from these Settlements? ........................................................ 8

HOW TO FILE A CLAIM ................................................................................................................. 9
    9.       How do I file a claim? ................................................................................................... 9
    10.     Am I giving up anything by filing a claim or not filing a claim? ..................................... 9
    11.     How do I opt-out of the Settlement Classes? .............................................................. 11
    12.     If I don't exclude myself, can I sue Settling Defendants and the Oteer Relased Parties for the same thing later? ...................................................................................................... 11
    13.     If I exclude myself from these Settlements, can I get money from the Settlements? ....... 11
    14.     If I exclude myself from these Settlements, can I still object? ........................................ 11

OBJECTING TO THE SETTLEMENTS .............................................................................................. 11
    15.     How do I tell the Curt if I don't like the Settlements? .................................................. 11
    16.     What is the difference between objecting and excluding? ................................................

THE LAWYERS REPRESENTING YOU .......................................................................................... 13
    17.     Do I have a lawyer in this Lawsuit? ...................................................................... 12-13
    18.     How will the lawyers be paid? ..................................................................................... 13

THE COURT'S FAIRNESS HEARING ............................................................................................. 14
    19.     When and where will the Court decide whether to approve these Settlements? .............. 13
    20.     Do I have to come to the Fairness Hearing to get my money? ..................................... 13
    21.     What if I want to speak at the Fariness Hearing? .................................................. 13-14

IF YOU DO NOTHING .................................................................................................................. 14
    22.     What happens if I do nothing? ..................................................................................... 14

GETTING MORE INFORMATION .................................................................................................... 14
    23.     How do I get more information? ................................................................................. 14

**1.  Why did I get this Notice?**

You received this notice because you have a right to know about the proposed Settlements in a class action which is called *Contant, et al v. Bank of America Corp., et al*, No. 17-cv-3139-LGS, and about your legal rights and options to participate in it, or not, before the Court decides whether to give final approval of the Settlements. This Notice explains the Lawsuit, the proposed Settlements, your legal rights, the benefits available, eligibility for those benefits, and how to get them. The Honorable Lorna G. Schofield of the U.S. District Court for the Southern District of New York is overseeing this Lawsuit.

The persons or entities who started this case are called the "Plaintiffs." The Plaintiffs are James Contant, Sandra Lavender, Victor Hernandez, Martin-Han Tran, FX Primus Ltd., Carlos Gonzalez, Ugnius Matkus, Charles G. Hitchcock III, Jerry Jacobson, Tina Porter, and Paul Vermillion.

The companies they are suing are the "Defendants." The Settling Defendants are Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc. (collectively, "Citigroup"); MUFG Bank, Ltd. (formerly known as The Bank of Tokyo-Mitsubishi UFJ, Ltd.) ("MUFG Bank"); Standard Chartered Bank ("SC"); and Société Générale ("SG"). The Non-Settling Defendants are Bank of America Corporation; Bank of America, N.A.; Merrill Lynch, Pierce, Fenner & Smith Inc.; Barclays Bank PLC; Barclays Capital Inc.; BNP Paribas Group; BNP Paribas North America, Inc.; BNP Paribas Securities Corp.; BNP Paribas Prime Brokerage, Inc.; Credit Suisse AG; Credit Suisse Securities (USA) LLC; Deutsche Bank AG; Deutsche Bank Securities Inc.; The Goldman Sachs Group, Inc.; Goldman, Sachs & Co.; HSBC Bank PLC; HSBC North America Holdings, Inc.; HSBC Bank USA, N.A.; HSBC Securities (USA) Inc.; JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A.; Morgan Stanley; Morgan Stanley & Co., LLC; Morgan Stanley & Co. International PLC; RBC Capital Markets LLC; RBS Securities Inc.; UBS AG; and UBS Securities LLC. Collectively, the Settling Defendants and Non-Settling Defendants are referred to as the Defendants.

**2.  What is this Lawsuit about?**

Generally, Plaintiffs allege that Defendants fixed the prices of foreign currency instruments ("FX Instruments") in violation of the following state laws: Arizona Revised Statutes, §§ 44-1401, *et seq*. (the Arizona Antitrust Act); California Business and Professions Code, § 16700, *et seq.* (the California Cartwright Act); California Business and Professions Code § 17200, *et seq.* (California's Unfair Competition Law); Fla. Stat. § 501.201, *et seq*. (the Florida Deceptive and Unfair Trade Practices Act); 740 Ill. Comp. Stat. 10/1, *et seq*. (the Illinois Antitrust Act); Mass. Gen. Laws ch. 93A, §1 *et seq*. (the Massachusetts Consumer Protection Law); Minn. Stat. §§ 325D.49 to 325D.66 (the Minnesota Antitrust Law of 1971); New York General Business Laws § 340, *et seq*. (the New York Donnelly Act); and N.C. Gen. Stat. § 75-1, *et seq*. (the North Carolina Unfair Trade Practice Act). FX Instruments are any FX spot transaction, forward, swap, future, option, or any other FX transaction or instrument the trading or settlement value of which is related in any way to FX rates.

Plaintiffs claim that beginning on or around December 1, 2007, Defendants conspired to fix prices in the FX market on a daily basis. Plaintiffs allege that Defendants' conspiracy involved, among other things: (1) the fixing of FX bid-ask spreads; and (2) the fixing of benchmark FX rates, including, but not limited to, the WM/Reuters Fixes and the ECB Fixes. Plaintiffs further allege that Defendants: (1) created and participated in chat rooms and other forms of electronic communication; (2) shared confidential client and proprietary trading information with other Defendants involved in the conspiracy; (3) coordinated trades with other Defendants in order to illegally manipulate FX benchmark rates and spot rates; (4) monitored the trades placed by traders employed by co-conspirator Defendants in order to ensure compliance with the conspiracy; and (5) used code names, code words, and deliberate misspellings in efforts to evade detection. As a result of the alleged conspiracy, Plaintiffs and the members of the proposed Settlement Classes were injured in the form of overcharges on FX Instruments directly purchased from or sold to an RFED where that RFED purchased from or sold the FX instrument to one or more Defendants or co-conspirators during the litigation Class Period December 1, 2007 through December 31, 2013. The Class Period for purposes

of the Settlements is December 1, 2007 through [DATE OF PRELIMINARY APPROVAL ORDER]. Settling Defendants deny the allegations made against them.

You may obtain more information regarding the specific allegations of the Action by reviewing the Second Consolidated Class Action Complaint ("SCCAC"), which is available at [WWW.WEBSITENAME.COM].

### 3. Why is this Lawsuit a class action?

In a class action, the Plaintiffs (or Class Plaintiffs) sue not only for themselves, but also on behalf of other people or businesses with similar legal claims and interests. Together all of these people or businesses with similar claims and interests form classes, and are class members.

When a court decides a case or approves a settlement, it is applicable to all members of the classes (except class members who exclude themselves). In this case, the Court has given its preliminary approval to the settlement and the classes defined below in Question 6, and approved this Notice.

### 4. Why are there Settlements?

Class Plaintiffs and Class Counsel believe that the members of the Settlement Classes have been damaged by Defendants' conduct, as described in the SCCAC. The Settling Defendants believe that Class Plaintiffs' claims lack merit, and that those claims would have been rejected prior to trial, at trial, or on appeal. Nothing in the Settlements constitutes an admission as to the merits of the allegations made in the Action as to the Settling Defendants or the validity of any defenses that could be asserted by the Settling Defendants. The Settlements are not evidence of any liability or wrongdoing by the Settling Defendants.

The Court has not decided on the merits in favor of Class Plaintiffs or Settling Defendants. However, on May 20, 2019 the Court granted a motion to dismiss for lack of personal jurisdiction filed by MUFG Bank and SG, and dismissed MUFG Bank and SG from the Lawsuit. Class Counsel negotiated separately with Citigroup, MUFG Bank, SC, and SG to resolve this Action. The Settlements allow both sides to avoid the costs and risks of lengthy litigation, trial and any appeals. The Settlements allow members of the Settlement Classes who submit valid claims to receive some compensation, rather than risk ultimately receiving nothing. Class Counsel and Class Plaintiffs believe that the Settlements are in the best interests of all members of the Settlement Classes.

If the Settlements are approved, Settling Defendants will no longer be defendants in the Action, but the Action will continue against the Non-Settling Defendants.

### 5. How do the Settlements affect the claims against the Non-Settling Defendants?

Class Plaintiffs' claims against Non-Settling Defendants will continue to be litigated and prepared for trial, whether or not the Settlements are approved.

### 6. Am I part of these Settlements?

In the Court's Preliminary Approval Order, dated [DATE OF PRELIMINARY APPROVAL ORDER], the Court defined the following statewide Settlement Classes:

**New York Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in New York and/or while domiciled in New York, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the New York Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the New York Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

**Arizona Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in Arizona and/or while domiciled in Arizona, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the Arizona Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the Arizona Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

**California Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator and were thereby injured in California by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the California Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the California Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

**Florida Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in Florida and/or while domiciled in Florida, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the Florida Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the Florida Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

**Illinois Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in Illinois and/or while domiciled in Illinois, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the Illinois Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the Illinois Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

**Massachusetts Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in Massachusetts and/or while domiciled in Massachusetts, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the Massachusetts Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the Massachusetts Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

**Minnesota Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in Minnesota and/or while domiciled in Minnesota, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the Minnesota Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the Minnesota Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

**North Carolina Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator and were thereby injured in North Carolina, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the North Carolina Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the North Carolina Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

The "Class Period" for the Settlements is defined as the period of December 1, 2007 through [DATE OF PRELIMINARY APPROVAL ORDER].

The "Direct Settlement Class" is:

> All Persons who, between January 1, 2003 and December 15, 2015, entered into an FX Instrument directly with a Defendant, a direct or indirect parent, subsidiary, or division of a Defendant, a Released Defendant Party, or co-conspirator where such Persons were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted FX Instruments in the United States or its territories. Specifically excluded from the Direct Settlement Class are Defendants; Released Defendant Parties; co-conspirators; the officers, directors, or employees of any Defendant, Released Defendant Party, or co-conspirator; any entity in which any Defendant, Released Defendant Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released Defendant Party, or co-

conspirator and any person acting on their behalf; provided, however, that Investment Vehicles shall not be excluded from the definition of the Direct Settlement Class. Also excluded from the Direct Settlement Class are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this Action.

If you are not sure whether you are part of these Settlements, contact the Settlement Administrator at:

Call the toll-free number, [1-xxx-xxx-xxxx].
Visit [WEBSITENAME.COM]
Write to: Heffler Claims Group, PO Box [XXXX], Philadelphia, PA [ZIP CODE]
Email: _____.

## SETTLEMENT BENEFITS

### 7. What do these Settlements Provide?

Settling Defendants have collectively paid $13,630,000 of Settlements into a fund (the "Settlement Fund") to be held for disbursement to the members of the Settlement Classes, if the Court grants final approval of the Settlement Agreements. The Settlement Fund, plus interest earned from the date it was established, less the costs of settlement administration and notice, applicable taxes on the settlement fund, attorneys' fees and expenses, and service awards for the class representatives, all as approved by the Court (the "Net-Settlement Fund") will be divided among the members of the Settlement Classes, who send in valid Claim Forms by [120 DAYS AFTER FAIRNESS HEARING DATE] ("Authorized Claimants") according to the Plan of Allocation.

The Settling Defendants have also agreed to provide reasonable cooperation for the benefit of Class Plaintiffs and members of the Settlement Classes, including attorney proffers, production of documents and data, authentication of documents, and providing witnesses to testify at trial. Class Counsel believe this cooperation will aid in the continued prosecution of the Lawsuit against the Non-Settling Defendants.

### 8. How do I ask for money from these Settlements?

You must file a valid and timely claim to get money from the Settlements. If the Court finally approves the Settlement, you are a member of one or more of the Settlement Classes and you do not exclude yourself from the Settlement Classes, you will receive a Claim Form in the mail or by email. You may also get a Claim Form by visiting [WEBSITENAME.COM] or by contacting the Settlement Administrator toll-free number: [1-xxx-xxx-xxxx].

**How much money will I get?**

At this time, it is not known precisely how much each member of the Settlement Classes will receive from the Net Settlement Fund or when payments will be made. The amount of your payment, if any, will be determined by the Plan of Allocation. The Settlement Administrator will first determine the Settlement Class Member's eligible transaction volume on FX Instruments. The Plan of Allocation is based on a model that will estimate the Class Member's claim relative to the claims of the other Class Members. The model will apply a uniform overcharge percentage rate across all currency pairs to a Class Member's eligible FX instrument transactions. The overcharge rate is then weighted based on the currency pair's trading liquidity to generate the amount of each Claimant's potential claim. There are four categories of weightings: 1) most liquid; 2) liquid; 3) illiquid; and 4) pegged. Currency pairs in the most liquid category will have the lowest weightings while illiquid pairs will have the highest weightings to reflect that the illiquid currency pairs have larger spreads. The Net Settlement Fund will be distributed to all Authorized Claimants on a *pro rata* basis. Specifically, the distribution of the Net Settlement Fund will be based on the percentage of each Authorized Claimant's allowed claim as compared to the sum of all valid, allowed claims that are filed. A discount of 90% will be applied for FX instruments purchased or sold after December 31, 2013. The

complete Plan of Allocation is available on the settlement website, [WWW.WEBSITENAME.COM]. No monies will revert to Settling Defendants if the Settlements are granted final approval.

## HOW TO FILE A CLAIM

### 9. How do I file a claim?

If the Court approves the Settlements (see "The Court's Fairness Hearing" below), the Court will approve a Claim Form and set a deadline for members of the Settlement Classes to submit claims. In order to receive a payment, you must submit a Claim Form. A Claim Form will be mailed or emailed to you automatically. The Claim Form will also be posted on the website and available by calling the toll free number shown below. Settlement Class members will be able to submit claims electronically using this website or by email or by returning a paper Claim Form.

Read the instructions carefully. The Claim Form will provide two options for submitting your claim. Option 1 is the Estimated Claim Option. Under Option 1, the Settlement Administrator will estimate your eligible transaction volume using data received from RFEDs. Option 2 is the Document Claim Option. Under Option 2, you will submit data and documentation of your eligible transactions using the electronic data template available on the settlement website, and the Settlement Administrator will review it. For more details on these two options, you can review the Plan of Allocation available at [WWW.WEBSITENAME.COM] or by contacting the Settlement Administrator at [1-xxx-xxx-xxxx].

Once the Settlement Administrator receives your timely-filed Claim Form, the Settlement Administrator will estimate your volume and eligible participation amount for the relevant time period and will provide you with an explanation of how the estimate was determined (e.g., analysis of your documentation, analysis of RFED transaction data, extrapolation from documentation or RFED's transaction data, or any combination thereof).

**Please keep all documentation related to your transactions in FX Instruments during the period January 1, 2007 to [DATE OF PRELIMINARY APPROVAL ORDER] for using in filing your Claim Form. Having documentation may be important to filing and substantiating a successful claim**.

**Can anyone else file a claim for me?**

Some companies may offer to help you file your Claim Form in exchange for a portion of your recovery from the Settlements. While you may choose to use such companies, you should know that you can file with the Settlement Administrator on your own, free of charge. Additionally, you are entitled to contact the Settlement Administrator or Class Counsel for assistance with understanding and filing your Claim Form—again, at no cost to you.

### 10. Am I giving anything up by filing a claim or not filing a claim?

Unless you exclude yourself, you remain a Settlement Class Member. That means you can't sue, continue to sue, or be part of any other lawsuit related to the conduct and legal issues alleged in the SCCAC against any of the Settling Defendants or Released Parties, even if you do not file a Claim Form. More specifically, staying in the Settlements means you have agreed to be bound by the Settlement Agreements and all of their terms including the release of claims contained therein. Both Settlement Agreements are available on the settlement website, [WWW.WEBSITENAME.COM]. The claims released in these settlements are described below.

Pursuant to the Settlement Agreements, the "Released Claims" means any and all manner of claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and

damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, arising from or relating in any way to any conduct alleged or that could have been alleged in and arising from the factual predicate of the Action, or any amended complaint or pleading therein, from the beginning of time until the Effective Date, which shall be deemed to include but not be limited to all claims relating to: (i) communications related to FX Instruments, FX Trading, or FX Benchmark Rates, between a Released Party and any other FX dealer or any other participant in the conspiracy alleged in the Action through chat rooms, instant messages, email, or other means; (ii) agreements, arrangements, or understandings related to FX Instruments, FX Trading, or FX Benchmark Rates, between a Released Party and any other FX dealer or any other participant in the conspiracy alleged in the Action through chat rooms, instant messages, email, or other means; (iii) the sharing or exchange of customer information between a Released Party and any other FX dealer or any other participant in the conspiracy alleged in the Action—including but not limited to customer identity, trading patterns, transactions, net positions or orders, stop losses or barrier options, pricing, or spreads related to FX Instruments, FX Trading, or FX Benchmark Rates; (iv) the establishment, calculation, manipulation, or use of the WM/Reuters fixing rates, including the 4:00 p.m. London closing spot rates, and trading that may impact such rates; (v) the establishment, calculation, manipulation, or use of the European Central Bank FX reference rates, including the ECB rate set at 1:15 p.m. London time; (vi) the establishment, calculation, manipulation, or use of the CME daily settlement rates; (vii) the establishment, calculation, or use of any other FX benchmarks, including benchmark fixing rates, benchmark settlement rates, or benchmark reference rates; (viii) the establishment, calculation, communication, manipulation, or use of the price, spread, or rate of any FX Instrument; and (ix) the exchange of customer information or confidential information in the possession of Citigroup, MUFG Bank, SC, or SG. With respect to any and all Released Claims, the Parties stipulate and agree that, by operation of the Final Judgment and Order of Dismissal, upon the Effective Date, Releasing Parties shall have expressly waived and Class Members shall be deemed to have waived the provisions, rights, and benefits of Cal. Civ. Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Releasing Parties shall have also waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542.

"Released Party" or "Released Parties" means Citigroup, MUFG Bank, SC, SG, and each of their past, present, and future, direct and indirect parents (including holding companies), subsidiaries, affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), divisions, predecessors, successors, and each of their respective officers, directors, employees, agents, attorneys, legal or other representatives, trustees, heirs, executors, administrators, advisors, and assigns. Released Parties do not include any of the other Non-Settling Defendants.

**The Scope and Effect of the Release**: Upon the Effective Date of the Settlements, each of the Releasing Parties: (1) shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal, shall have, fully, finally, and forever waived, released, relinquished, and discharged (a) all Released Claims against the Released Parties, regardless of whether such Releasing Party executes and delivers a proof of claim and release from, and (b) any rights to the protections afforded under California Civil Code § 1542 and/or any other similar, comparable, or equivalent laws; (2) shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties; and (3) agrees and covenants not to sue any of the Released Parties on the basis of any Released Claims or to assist any third party in commencing or maintaining any suit against any Released Party related in any way to any Released Claims.

By remaining a Settlement Class Member, you do not give up any of your rights against Non-Settling Defendants.

### 11.  How do I opt out of from the Settlement Classes?

If you are a member of one of the Settlement Classes, do not want to remain in that Settlement Class, and do not want a payment from the Settlements, then you must take steps to exclude yourself from the Settlements. This is sometimes referred to as "opting out" of a class. The Court will exclude from the Settlements all Settlement Class Members who submit valid and timely requests for exclusion. If you choose to exclude yourself from the Settlement Classes, you will not be excluded from this Action with respect to the continuing claims against the Non-Settling Defendants.

If you exclude yourself, you will not be able to receive any payments from these Settlements. However, this is the only way you will retain your rights to sue the Settling Defendants on your own based on the claims asserted in this Action.

You cannot exclude yourself by telephone or email. You must do so in writing. To be valid, your Request for Exclusion must be postmarked by [60 DAYS AFTER NOTICE DATE] and be mailed to the Settlement Administrator: *Contant v. Bank of America Corp.* Settlement, c/o Heffler Claims Group, PO Box [XXX], Philadelphia, PA [ZIP CODE].

Your request for exclusion must: (i) be in writing; (ii) be signed by the person holding the claim or his, her or its authorized representative; (iii) state the name, address, and phone number of the Person; (iv) include proof of membership in a Settlement Class; and (v) include a signed statement that "I/we hereby request I/we be excluded from the Settlements in *Contant v. Bank of America Corp.*, No. 17-cv-3139-LGS."

### 12.  If I don't exclude myself, can I sue Settling Defendants and the other Released Parties for the same thing later?

No. Unless you exclude yourself, you give up any right to sue Settling Defendants and the Released Parties for the claims that the Settlements resolve. If you decide to exclude yourself, your decision will apply only to Settling Defendants and the other Released parties. It will not apply to any other class that might be certified by the Court, with respect to Non-Settling Defendants, or any other settlement class that may be approved the Court.

### 13.  If I exclude myself from these Settlements, can I get money from the Settlements?

No. You will not get any money from the Settlements if you exclude yourself.

### 14.  If I exclude myself from these Settlements, can I still object?

No. If you exclude yourself, you are no longer a member of a Settlement Class and may not object to any aspect of the Settlements.

## OBJECTING TO THE SETTLEMENTS

### 15.  How do I tell the Court if I don't like the Settlements?

If you are a member of one of the Settlement Classes (and don't exclude yourself from one of the Settlement Classes), you can object to any part of the Settlements, the Plan of Allocation, and/or the request for attorneys' fees and litigation costs and expenses.

To object, you must timely submit a letter that includes the following: (1) the name of the case (*Contant v. Bank of America Corp.*, No. 17-cv-3139-LGS); (2) your name and address and if represented by counsel,

the name, address, and telephone number of your counsel; (3) proof that you are a member of one of the Settlement Classes; (4) a statement detailing all your objections to the Settlements with specificity and including your legal and factual bases for each objection; and (5) a statement of whether you intend to appear at the Fairness Hearing, either with or without counsel, and if with counsel, the name of your counsel who will attend.

You cannot make an objection by telephone or email. You must do so in writing and file your objection with the Clerk of Court and mail your objection to each of the following addresses postmarked by [60 DAYS AFTER NOTICE DATE].

**Court**

United States District Court for the Southern District of New York
Clerk of Court
Daniel Patrick Moynihan Courthouse
500 Pearl St.
New York, New York 10007

You must also send a copy of your Statement of Objections to Class Counsel and Counsel for the Settling Defendants at the following addresses:

**Class Counsel**

Michael Dell'Angelo
Berger Montague PC
1818 Market St., Suite 3600
Philadelphia, PA 19103

**Settling Defendant Citigroup**

Andrew Lazerow
Covington & Burling LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-3743.

**Settling Defendant MUFG Bank**

Kenneth A. Gallo
Paul, Weiss, Rifkind, Wharton & Garrison LLP
2001 K Street, NW
Washington, D.C. 20001-4956

**Settling Defendant SC**

Andrew W. Stern
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019

**Settling Defendant SG**

Patrick Ashby
Linklaters LLP
1345 Avenue of the Americas
New York, NY 10105

If you don't timely and validly submit your objection, your view will not be considered by the Court or any

court on appeal.

### 16.  What is the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the Settlements. You can object to the Settlements only if you don't exclude yourself from one of the Settlement Classes.  Objecting does not change your ability to claim money from the Settlement Fund if the Court approves the Settlements. If you exclude yourself, you cannot object because the Settlements no longer affect your rights and you cannot claim money from the Settlement Fund.

## THE LAWYERS REPRESENTING YOU

### 17.  Do I have a lawyer in this Lawsuit?

The Court has appointed the law firm of Berger Montague PC to represent you and the other members of the Settlement Classes:

> Michael Dell'Angelo
> Michael J. Kane
> Berger Montague PC
> 1818 Market St., Suite 3600
> Philadelphia, PA 19103
> mdellangelo@bm.net
> mkane@bm.net
> (215) 875-3000

Berger Montague PC has been appointed Settlement Class Counsel by the Court. If you have any questions about the notice or the Lawsuit, you can contact the above-listed law firm. Class Counsel may apply to the Court for payment of attorneys' fees and litigation costs and expenses from the Settlement Fund. You will not otherwise be charged for the services of Settlement Class Counsel or any other attorneys representing the Plaintiffs in this Action (collectively, "Class Counsel"). If you want to be represented by your own lawyer, you may hire one at your own cost.

### 18.  How will the lawyers be paid?

To date, Class Counsel have not been paid any attorneys' fees or reimbursed for any out-of-pocket costs or expenses. Any attorneys' fees and costs and expenses will be awarded only as approved by the Court in amounts determined to be fair and reasonable. The Settlement Agreements provide that Class Counsel may apply to the Court for an award of attorneys' fees and reimbursement of costs and expenses out of the Settlement Fund. By [60 DAYS AFTER NOTICE DATE], Class Counsel will move for an award of attorneys' fees not to exceed $2,860,750, reimbursement of litigation costs and expenses, and service awards for the class representatives.

Any motions in support of the requests will be available on the Settlement Website after they are filed. After that time, if you wish to review the motion papers, you may do so by viewing them at [WWW.WEBSITENAME.COM].

The Court will consider the motion for attorneys' fees and litigation costs and expenses at or after the Fairness Hearing.

## THE COURT'S FAIRNESS HEARING

**19.  When and where will the Court decide whether to approve these Settlements?**

There will be a Fairness Hearing at **[TIME]** on **[MONTH, DAY, YEAR (on a date to be determined by the Court)].** The hearing will take place at the United States District Court for the Southern District of New York, Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007

*Important!* The time and date of the Fairness Hearing may change without additional mailed or published notice. For updated information on the hearing, visit: WWW.WEBSITENAME.COM.

At the Fairness Hearing the Court will consider whether the Settlements are fair, adequate, and reasonable and should be approved. The Court will consider any objections and listen to members of the Settlement Classes who have asked to speak at the Fairness Hearing. The Court will also decide whether it should give its final approval of the Plaintiffs' requests for attorneys' fees and expenses, and other costs.

**20.  Do I have to come to the Fairness Hearing to get my money?**

No.  You do not have to go to the Fairness Hearing, even if you sent the Court an objection. But, you can go to the hearing or hire a lawyer to go the Fairness Hearing if you want to, at your own expense.

**21.  What if I want to speak at the Fairness Hearing?**

You must file a Notice of Intention to Appear with the Court at this address:

>   United States District Court for the Southern District of New York
>   Clerk of Court
>   Daniel Patrick Moynihan Courthouse
>   500 Pearl St.
>   New York, New York 10007

Your Notice of Intention to Appear must be filed by [60 DAYS AFTER NOTICE DATE]. You must also mail a copy of your letter to Class Counsel and Counsel for the Settling Defendants at the addresses listed in question 15.

Your Notice of Intention to Appear must be signed and: (i) state the name, address, and phone number of the person and if applicable, the name, address, and telephone number of you attorney (who must file a Notice of Appearance with the Court); and (ii) state that you (or if applicable, your lawyer) intends to appear at the Fairness Hearing for the Settlements in *Contant v. Bank of America Corp.*, No. 17-cv-3139-LGS.

## IF YOU DO NOTHING

**22.  What happens if I do nothing?**

If you do nothing, you will be automatically a member of one or more of the Settlement Classes if you fit one or more of the Settlement Class descriptions. However, if you do not timely file a Claim Form, you will not receive any payment from the Settlements. You will be bound by past and future rulings, including rulings on the Settlements and Settlement releases.

## GETTING MORE INFORMATION

**23.  How do I get more information?**

This Notice summarizes the Lawsuit, the terms of the Settlements, and your rights and options in connection with the Settlements. More details are in the Settlement Agreements, which are available for your review at WWW.WEBSITENAME.COM. The Settlement Website also has the operative Complaint and other

documents relating to the Settlements. You may also call toll free [1-xxx-xxx-xxxx] or write the Claim Administrator at: *Contant v. Bank of America Corp.* Settlement, c/o Heffler Claims Group, PO Box [XXXX], Philadelphia, PA [ZIP CODE].

**Please Do Not Attempt to Contact Judge Schofield or the Clerk of Court with Any Questions**