# MOUND COTTON WOLLAN & GREENGRASS LLP

COUNSELLORS AT LAW
ONE NEW YORK PLAZA
NEW YORK, NY 10004-1901

(212) 804-4200
FAX: (212) 344-8066
WWW.MOUNDCOTTON.COM

NEW YORK, NY
FLORHAM PARK, NJ
GARDEN CITY, NY
SAN FRANCISCO, CA
FORT LAUDERDALE, FL
HOUSTON, TX

BARRY R TEMKIN
PARTNER
212-804-4221
BTemkin@moundcotton.com

November 27, 2019

**VIA E MAIL**
The Honorable Lorna Schofield
United States District Judge
United States Courthouse
40 Foley Square
New York, NY 10007
Aaron_NYSDChambers@nysd.uscourts.gov

      Re:    James Contant v. Bank of America Corporation
      <u>Civil Action No.: 17 Civ. 3139</u>

Dear Judge Schofield:

    The undersigned is counsel for non-party Forex Capital Markets, LLC ("FXCM"), a retail foreign exchange dealer which has been served with a subpoena from the Defendants. We submit this pre-motion letter in response to Defendants' November 19, 2019 pre-motion letter to compel.

    In violation of the mandate of Rule 45 to reduce burden and expense on non-parties, both the Plaintiffs and the Defendants have seen fit to serve redundant, overlapping and burdensome subpoenas on FXCM and other non-parties. Specifically, Defendants' subpoena seeks 26 categories of documents, many of which seek irrelevant documentation regarding FXCM's internal workings and regulatory history. By way of example, the majority of the subpoena requests seek documents concerning FXCM's corporate structure and internal trading policies and procedures (Request Nos. 6-10, 15, 26), trade secret information regarding FXCM's hedging and pricing software, algorithms, and custom Application Programming Interfaces (APIs) with banks (Requests Nos. 11, 14, 16, 18, 19, 24), confidential customer information, including FXCM customers that are not also customers of the defendants (Request Nos. 6,13), and civil, regulatory, and law enforcement proceedings against FXCM or its associated persons for sales practice violations (Request No. 20). Further, Request No. 4 seeks end of day reports, which would be in the possession of the Defendants and not FXCM. Finally, the requests do not limit production of documents relevant to the Defendants only; rather they seek documents related to FXCM's transactions in FX instruments with "any and all Liquidity Providers" and "any and all of Your customers." (Request Nos. 5, 12).

1

These requests are overbroad and unduly burdensome given that responsive documents from non-party FXCM, who has not been accused of any wrongdoing and has no stake in the outcome of this litigation, would not in fact provide any evidence concerning the allegations of antitrust violations allegedly committed by the defendants in this action, as asserted in the Complaint. See Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 51, 53 (S.D.N.Y. 1996) (finding a number of the requests amounted to nothing more than a fishing expedition as they had little relevance to the subject matter of the litigation; considering Merill's status as a non-party who has no stake in the litigation as a factor in finding that compliance with the subpoena would be unduly burdensome and declining to modify subpoena).

Notwithstanding the irrelevant nature of the majority of the subpoena requests when viewed in light of the allegations of the Complaint, counsel for FXCM have met and conferred with Defendants' counsel in good faith on a number of occasions over a period of several months. During these meet and confer conferences, we advised Defendants' counsel that an agreement in principle was reached with Plaintiffs' counsel as to the scope of FXCM's production under Plaintiffs' subpoena, and agreed to identify for Defendants' counsel the requests for which FXCM had agreed to produce responsive documents. Incredibly, Defendants' counsel represents in their November 19 letter that they repeatedly requested this list of documents or categories of documents over a four month period to no avail. This representation, however, is inaccurate. Indeed, on June 21, 2019 at 12:21 p.m., FXCM's counsel transmitted to counsel for the Defendants the letter that was sent to Plaintiffs' counsel identifying the categories for which FXCM had agreed to produce responsive documents. Additionally, FXCM's counsel provided an exemplar of the fields of transactional data that it would be producing so that Defendants' counsel could identify any additional fields that they may need from FXCM in order to comply with Defendants' separate subpoena. Essentially, production of these documents would satisfy Request No. 1 in Defendants' subpoena.

Further, on August 25, 2019, counsel for FXCM produced to Defendants' counsel the 17 page draft Declaration provided to Plaintiffs' counsel, which addresses a number of the requests for confidential and proprietary information contained in both subpoenas, including documents related to FXCM's hedging, trading and pricing software, algorithms, and custom APIs with banks. Again, while this information is irrelevant to whether the Defendants in this case committed antitrust violations, FXCM has nevertheless willingly agreed to provide information in response to these requests.

Throughout this meet and confer process, counsel for FXCM have requested that the Defendants contribute to FXCM's production costs, and to work out a cost sharing agreement with Plaintiffs' counsel in light of the fact that many of the documents that FXCM have agreed to produce are responsive to both subpoenas. We have advised Defendants' counsel that it will cost $60,000 to produce the documents, and that Plaintiffs have agreed to pay $30,000 of the costs. We requested that the Defendants, who will inevitably be reading, analyzing and using this material in connection with their case, reimburse us the remaining $30,000. Defendants' counsel have refused to reimburse FXCM for any of the remaining $30,000 in production expenses, maintaining that before they can evaluate our request, FXCM must provide a full list of the categories of documents it plans to produce to Plaintiffs (including, but not limited to, a description of the scope of the transaction data pull). Again, FXCM identified the categories of

documents it agreed to produce in response to Plaintiffs' subpoena and provided the fields for the transactional documents months ago. We also requested that Defendants' counsel identify if additional documents were needed in connection with Defendants' subpoena after reviewing the categories of documents and data that we agreed to produce to the Plaintiffs. Defendants' counsel, however, never advised as to whether the categories of documents were sufficient to comply with Defendants' subpoena before filing their November 19 letter with the Court.

In addition to reimbursement of production costs, counsel for FXCM requested that the Defendants pay a portion of FXCM's attorneys' fees, which have by now exceeded $50,000. In this case, we explained to Defendants' counsel that we have been separately meeting and conferring with them in connection with the Defendants' subpoena over a period of months while simultaneously conducting these very same conversations with Plaintiffs' counsel in connection with Plaintiffs' subpoena. Additionally, we explained that the 21 follow-up general and paragraph specific questions that Defendants posed in connection with the draft Declaration were not only excessive and took the form of interrogatories, but that the Plaintiffs had not requested this additional information. Even if FXCM were a party, twenty one interrogatories would not be permissible under this Court's Local Rules. Accordingly, we asked that the Defendants reimburse FXCM for its attorneys' fees in connection with the time and expense that will be incurred in answering these additional questions, as well as for our numerous meet and confers in connection with complying with Defendants' subpoena. In response, Defendants' counsel advised, <u>inter alia</u>, that these questions were "pretty basic," and that FXCM could instead produce documents responsive to these questions, which we note are not included in the scope of documents that FXCM agreed to produce in response to Plaintiffs' subpoena.

The Court should take appropriate measures to ease the burden on non-party FXCM. The law is clear that that a non-party's legal fees, especially where the work benefits the requesting party, have been considered a cost of compliance under Rule 45(c)(2)(B). *See First Am. Corp. v. Price Waterhouse Ltd. Liab. P'ship*, 184 F.R.D. 234, 240-241 (S.D.N.Y. 1998); *In re Aggrenox Antitrust Litigation, 2017* U.S. Dist. Lexis 172231 (S.D.N.Y 2017) (Allocating $20,000 of legal fees incurred by non-party to party issuing subpoena); *Sonoma Cnty. Ass'n of Retired Emples. v. Sonoma Cnty.*, No. 15 Misc. 191, 2015 U.S. Dist. LEXIS 177919, at *4 (S.D.N.Y. 2015) (finding that the plaintiff, as the issuing party, failed to fulfill its "Rule 45 duty to 'avoid imposing undue burden or reasonable expense upon a person subject to the subpoena' when it initially refused to pay the reasonable cost of legal review…to protect the confidentiality of third-party information.").

For these reasons, FXCM respectfully requests a conference with the Court in order to discuss the inability of counsel to reach a mutual agreement with each other with respect to the scope of their respective subpoenas, the inability of Defendants' counsel to advise whether the categories of documents that FXCM has agreed to produce in response to Plaintiffs' subpoena satisfies Defendants' subpoena, and to discuss the Defendants' unwillingness to pay <u>any</u> portion of FXCM's $60,000 production costs or its legal fees.

Respectfully submitted,

s/Barry R Temkin

3

cc:  All counsel via ECF