December 6, 2019

<u>VIA ECF</u>
The Honorable Stewart D. Aaron
United States Magistrate Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

**RE:**  *Contant, et al. v. Bank of Am. Corp., et al.*, **No. 17-cv-3139-LGS (S.D.N.Y.)**

Dear Judge Aaron:

Pursuant to Your Honor's November 15, 2019, Order (ECF No. 332) establishing a briefing schedule for Plaintiffs' and HSBC's motions to compel non-party Forex Capital Markets, LLC ("FXCM") to comply with the parties' subpoenas (respectively, "Plaintiffs' FXCM Subpoena" and "HSBC's FXCM Subpoena"), Plaintiffs respectfully submit this letter reply in support of Plaintiffs' November 12, 2019, motion to compel (ECF No. 325).[1]

The dispute here is limited. Significantly, months ago, Plaintiffs and FXCM agreed upon the materials that FXCM will produce in response to Plaintiffs' FXCM Subpoena. *See* ECF No. 325.[2] However, FXCM has refused to produce the materials until it is paid its unsubstantiated production costs of $60,000 and its entire legal fees which it claims, without any supporting documentation, "have exceeded $50,000." *See* FXCM Opposition Letter (ECF No. 342).[3] For the

---

[1] Plaintiffs will serve FXCM with a copy of this letter via email immediately upon filing.

[2] Because the parties have agreed upon the scope of documents and information that FXCM will produce responsive to the subpoena, FXCM's view that Plaintiffs' FXCM Subpoena seeks discovery largely irrelevant to Plaintiffs' claims is not relevant to the issue before this Court. *Id.* at 1. Regardless, FXCM's view is wrong for two primary reasons. First, the requested documents and information—including transactional data for Class-member retail FX transactions with FXCM, as well as information sufficient to determine how FXCM's retail FX prices were determined during the Class period—are relevant to proving impact and damages and necessary to identify Class members. *See, e.g.*, April 18, 2019, Order Denying Motion to Quash (ECF No. 254) (denying a motion to quash Plaintiffs' subpoena requesting the same categories of materials from FXDirectDealer, LLC). Second, the requested FXCM customer contact information and transactional data is also crucial to Plaintiffs' plan to issue notice to the Settlement Class members and allocate settlement proceeds amongst those members pursuant to the Court's July 29, 2019, Order granting preliminary approval of the Citigroup and MUFG Bank Settlements and to the two subsequent settlements for which Plaintiffs' motion for preliminary approval is pending. *See* Order Granting Preliminary Approval of Citigroup and MUFG Bank Settlements (ECF No. 297); Plaintiffs' Motion for Preliminary Approval of Standard Chartered Bank and Société Générale Settlements (ECF No. 337).

[3] FXCM also suggests in the final sentence of its Opposition Letter—without explanation or supporting argument—that the Court should require "Plaintiffs and [HSBC] to reach a mutual agreement with each other with respect to the scope of their respective subpoenas." *Id.* at 3. As Plaintiffs noted in their motion to compel (ECF No. 325), HSBC will not confirm whether it will seek additional materials responsive to HSBC's FXCM Subpoena until it receives certain information regarding the materials that FXCM intends to produce responsive to Plaintiffs' FXCM Subpoena. *Id.* at 2 nn.2-3. HSBC stated in its motion to compel that FXCM has refused to provide that requested information to HSBC. *See* HSBC Motion to Compel (ECF No. 335), at 2. Regardless, because the materials requested by Plaintiffs' FXCM Subpoena are crucial to Plaintiffs' ability to develop a plan to issue notice of the preliminarily approved Citigroup and MUFG Settlements, *see* Order Granting Preliminary Approval of Citigroup and MUFG Bank Settlements (ECF No. 297), and to prove impact and damages, the interests of Plaintiffs and HSBC are not aligned. Therefore, the Court should not permit FXCM's dispute with HSBC regarding the scope of

reasons stated below, FXCM should be required to produce the agreed-upon materials, Plaintiffs should only have to pay their fair share of the production costs, and Plaintiffs should not have to pay any of FXCM's attorneys' fees incurred to date.[4]

*First*, in an effort to avoid a dispute and to expedite the production, Plaintiffs offered to pay FXCM a total of $30,000, representing one-half of FXCM's estimated production costs, despite FXCM's failure to substantiate the reasonableness of its cost estimate.[5] FXCM rejected Plaintiffs' offer. However, Plaintiffs should not be required to pay more than their fair share of the reasonable costs of production, and certainly HSBC should be required to pay its fair share of the production costs because Plaintiffs' and HSBC's FXCM subpoenas request substantially similar categories of documents.[6] Accordingly, there is no justification for requiring Plaintiffs to pay FXCM's entire $60,000 estimated production cost. *See generally In re World Trade Ctr. Disaster Site Litig.*, No. 21-MC-100-AKH, 2010 WL 3582921, at *1 (S.D.N.Y. Sept. 14, 2010) ("Under Federal Rule of Civil Procedure 45, a party issuing a subpoena is not required to bear the subpoenaed nonparty's cost of compliance.").

*Second*, FXCM's attorneys' fee request should be rejected because only fees incurred in complying with the subpoena are compensable. To date, the vast majority of FXCM's attorneys' fees result from resisting and negotiating limitations on Plaintiffs' FXCM Subpoena. FXCM relies on *In re First Am. Corp.*, 184 F.R.D. 234, 240-41 (S.D.N.Y. 1998) and *In re Aggrenox Antitrust Litig.*, No. 14-md-02516, 2017 WL 4679228, at *9 (D. Conn. Oct. 18, 2017) to support its claim for attorneys' fees. However, both cases make clear that the only legal fees subject to cost-shifting under Rule 45 are those resulting from compliance with the subpoena, not fees resulting from resisting the subpoena. *See Aggrenox*, 2017 WL 4679228, at *9 (noting that only expenses resulting from compliance are compensable under Rule 45 and holding that "[i]t is a tenuous proposition, at best, that attorneys' fees incurred resisting a subpoena are expenses

---

HSBC's subpoena to delay the production of the materials that FXCM has agreed to provide in response to Plaintiffs' FXCM Subpoena.

[4] FXCM's reference to Rule II.A.1 of Judge Schofield's Individual Rules for Civil Cases is irrelevant because FXCM already agreed that two of its employees will dedicate two months of their time to collecting the materials that Plaintiffs and FXCM have agreed will be produced, and that FXCM will produce documents for the relevant period of December 1, 2007, to December 31, 2015. *See* ECF No. 325, at 1. Additionally, the default ESI limitations set forth in Rule II.A.1 are inapplicable "upon a showing of good cause." *Id.* Plaintiffs have good cause to request materials dating to December 1, 2007, because Class period alleged in this Action—and therefore the alleged damages of the proposed Class members—begins on that date. *See* ECF No. 183 (Complaint), ¶ 40.

[5] As noted in Plaintiffs' motion to compel, because Plaintiffs' and HSBC's subpoenas request substantially similar materials, Plaintiffs initially suggested that Plaintiffs, HSBC, and FXCM split equally the $60,000 estimated costs of producing materials responsive to both subpoenas. ECF No. 325, at 2 n.2. Because HSBC would not agree to any coordinated cost sharing proposal, Plaintiffs offered to pay one-half of FXCM's cost estimate. *Id.*

[6] HSBC claims that it does not know what types of documents FXCM agreed to produce in response to Plaintiffs' FXCM Subpoena. However, the June 17, 2019, letter agreement provided to HSBC identifies the requests that Plaintiffs agreed to withdraw, the requests for which FXCM agreed to produce responsive documents, and the requests for which FXCM agreed to respond via declaration. The details of the transactional data to be produced are all specified in Plaintiffs' FXCM Subpoena. ECF No. 325-1. Additionally, FXCM incorrectly claims that Plaintiffs "have yet to advise FXCM as to the sufficiency of the information contained" in the draft declaration that FXCM provided to Plaintiffs. ECF No. 342, at 2. Plaintiffs submitted a list of questions and requests regarding the draft declaration to FXCM's counsel on October 11, 2019, requesting a response from FXCM by the following week. FXCM has yet to respond.

resulting from compliance." (citation omitted));[7] *In re First Am. Corp.*, 184 F.R.D. at 241 (noting that fees are only reimbursable where the attorney "work benefit[ed] the requesting party," and citing *United States v. CBS, Inc.,* 103 F.R.D. 365, 374-75 (C.D. Cal. 1984) as an example of a case where the court denied the third party's fee request because the fees were incurred for work that "solely benefitted the producing party"). FXCM's attorney time spent negotiating limitations on the scope of the subpoena is therefore not compensable.[8]

Even if FXCM had established that it incurred any legal fees complying with the subpoena, its request should be denied because it has failed to provide any documentation to support the reasonableness of its request. It is well-established that "[a] non-party who moves for costs and fees bears the burden of demonstrating that those costs and fees are reasonable." *See Blum v. Stenson*, 465 U.S. 886, 897 (1984). As the court held in *Aggrenox*:

> [W]hen claiming attorneys' expenses, the movant must provide contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done. The court may deduct from the requested amount [h]ours that are excessive, redundant, or otherwise unnecessary. Moreover, the movant also has the burden of showing by satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are those prevailing . . . for comparable attorneys of comparable skill and standing in the pertinent legal community.

2017 WL 4679228, at *2 (internal citations and quotation marks omitted). Because FXCM has not even attempted to satisfy this burden, its request for attorneys' fees must be denied.

For the reasons stated herein and in Plaintiffs' November 12, 2019, motion to compel (ECF No. 325), Plaintiffs respectfully request that the Court grant Plaintiffs' motion, deny FXCM's request for fee shifting, and deny as moot FXCM's request for a conference to discuss the issues raised in the FXCM Opposition Letter. *Id.* at 3.

Respectfully submitted,

---

[7] FXCM's Opposition Letter incorrectly states that the *Aggrenox* decision was issued in the Southern District of New York. *Id.* at 3. The Lexis Reporter citation "2017 U.S. Dist. Lexis 172231" included for *Aggrenox* in FXCM's Opposition Letter (ECF No. 342 at 3) corresponds to the same District of Connecticut case cited by Plaintiffs in their motion to compel (ECF No. 325 at 3): *In re Aggrenox Antitrust Litig.*, No. 14-md-02516, 2017 WL 4679228, at *9 (D. Conn. Oct. 18, 2017).

[8] To reduce FXCM's burden in responding to the subpoena, Plaintiffs engaged in numerous meet and confer sessions with FXCM's counsel. As a result, Plaintiffs withdrew several requests, narrowed the information sought by other requests, and agreed to accept declarations in response to other requests instead of documents. FXCM does not claim that Plaintiffs' FXCM Subpoena *as narrowed by Plaintiffs' and FXCM's agreed-upon limitations* imposes an undue burden on FXCM. A third party's attorneys' fees associated with production are only compensable pursuant to Fed. R. Civ. P. 45 where the requesting party "fails to comply" with Rule 45's mandate to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Aggrenox*, 2017 WL 4679228, at *3 (quoting Fed. R. Civ. P. 45(d)(1)). FXCM concedes that Plaintiffs made substantial efforts to avoid imposing undue burden or expense on FXCM. *See* ECF No. 342, at 1-2. FXCM similarly does not dispute that as a multinational corporation worth hundreds of millions of dollars, its costs of production will not be an unduly burdensome expense. *C.f.* ECF No. 325, at 3 n.7. Nor does FXCM dispute that the strong public importance of large-scale financial antitrust cases such as this Action further weighs against cost shifting here. *C.f. id.* at 3.

/s/ Michael Dell'Angelo
Michael Dell'Angelo
**BERGER MONTAGUE PC**
1818 Market St, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
mdellangelo@bm.net