```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
  CONTANT, et al.,                                          :
                                        Plaintiffs,         :
                                                            :    17 Civ. 3139 (LGS)
                    -against-                               :
                                                            :         ORDER
  BANK OF AMERICA CORPORATION, et al.,                      :
                                        Defendants.         :
                                                            :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/9/2019____

LORNA G. SCHOFIELD, District Judge:

WHEREAS, several Defendants, including The Royal Bank of Scotland plc ("RBS"), moved to dismiss Plaintiffs' Second Consolidated Class Action Complaint ("SCCAC") for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2);

WHEREAS, the motion to dismiss was granted as to RBS. The SCCAC "allege[d] the existence of a conspiracy among banks to fix prices in the FX market" and the participation of RBS in that conspiracy. *Contant v. Bank of Am. Corp.*, 385 F. Supp. 3d 284, 292 (S.D.N.Y. 2019) (hereinafter "*Contant I*"). But the SCCAC failed to make a prima facie showing that RBS:

> could reasonably foresee being haled into court in New York for their conspiracy-related conduct. The conclusory allegation that all Defendants communicated regularly with Defendant traders in New York for purposes of carrying out the unlawful conspiracy is insufficient. The Complaint does not specifically allege that . . . RBS . . . engaged in suit-related conduct aimed at or taking place in New York. Nor does the Complaint connect these defendants' participation in the conspiracy to New York in some other way -- for example, by alleging facts to show that they were aware of their co-conspirators' in-forum overt acts. In the absence of such allegations, the Court cannot conclude that . . . RBS . . . should reasonably anticipate being haled into court in New York for their conspiracy-related conduct.

*Id.* at 295 (citations and internal quotation marks omitted);

WHEREAS, Plaintiffs now seek leave to file a Third Consolidated Class Action Complaint ("TCCAC") to "cure the narrow pleading deficiency that the Court identified" in the

order granting the motion to dismiss as to RBS;

WHEREAS, "[t]he court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). "[W]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (quotation marks and alterations omitted); *accord Miller v. Metro. Life Ins. Co.*, No. 17 Civ. 7284, 2018 WL 5993477, at *4 (S.D.N.Y. Nov. 15, 2018);

WHEREAS, RBS opposes Plaintiffs' request to amend on the grounds that the amendment is "an improper fifth bite at the apple." Courts decline to grant leave to amend on grounds "such as undue delay, bad faith, dilatory motive, and futility." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). "When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment [even if] the proposed second amended complaint in fact cures the defects of the first." *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257 (2d Cir. 2018) (quotation marks omitted) (alteration in original); *accord St. Christopher's, Inc. v. Forgione*, No. 17 Civ. 4757, 2019 WL 3035375, at *10 (S.D.N.Y. July 11, 2019) ("In general, a claimant's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend.");

WHEREAS, Plaintiffs were not on notice of the deficiencies in the complaint with regard to the Court's personal jurisdiction over RBS until the Order of May 17, 2019.[1] "The proper time

---

[1] Although the parties briefed the issue of personal jurisdiction in 2017 when Defendants first moved to dismiss Plaintiffs' Consolidated Class Action Complaint, the Court ruled on other grounds. *See Contant v. Bank of Am. Corp.*, No. 17 Civ. 3139, 2018 WL 1353290, at *9 (S.D.N.Y. Mar. 15, 2018) (denying RBS's separate motion to dismiss the claims against it for lack of personal jurisdiction as moot).

2

for a plaintiff to move to amend the complaint is when the plaintiff learns from the District Court in what respect the complaint is deficient." *Miller*, 2018 WL 5993477, at *4 (quoting *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 25 (2d Cir. 2017) (summary opinion)); *see also Loreley Fin.*, 797 F.3d at 190 ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.");

WHEREAS, RBS opposes Plaintiffs' request to amend on the grounds that the proposed amendments are futile. "A proposed amendment to a complaint is futile when it could not withstand a motion to dismiss." *Contant v. Bank of Am. Corp.*, No. 17 Civ. 3139, 2018 WL 5292126, at *2 (S.D.N.Y. Oct. 25, 2018) (hereinafter "*Contant II*") (quotation marks omitted) (quoting *F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017)). "To withstand dismissal, a pleading 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion." *Nypl v. JPMorgan Chase & Co.*, No. 15 Civ. 9300, 2018 WL 1472506, at *2 (S.D.N.Y. Mar. 22, 2018) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981));

WHEREAS, "[s]pecific jurisdiction may exist where a defendant's connection to the forum state arises from their participation in a conspiracy connected to the forum state by a co-conspirator's acts in furtherance of the conspiracy." *Contant I*, 385 F. Supp. 3d at 291-92 (citing *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 84, 86-87 (2d Cir. 2018)) (premising conspiracy jurisdiction on defendant's "suit-related conduct aimed at or taking place in New

York."). Under this theory, "the exercise of jurisdiction comports with due process only if the defendant's conduct and connection with the forum is 'such that [the defendant] should reasonably anticipate being haled into court there.'" *Id.* at 292 (alteration in original) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980));

WHEREAS, the proposed TCCAC alleges that RBS traders participated in chat room conversations with traders at other banks located in New York in furtherance of the conspiracy, sharing details of confidential price and order information with the intention to use the shared information to place orders and manipulate the market. The proposed TCCAC provides specific examples of such chat room conversations, including portions of chat room transcripts from June 2007, August 2010, June 2011, and November 2011, which are allegedly "just some of many examples of Defendants . . . exchanging nonpublic information with other Defendant traders located in this District and elsewhere, in furtherance of the conspiracy alleged herein." *See* Proposed TCCAC at ¶ 125[2];

WHEREAS, RBS argues that nothing in the excerpted chats "indicates that RBS FX traders knew that a particular chat participant was located in New York" and therefore they do not reflect awareness of their co-conspirators' in-form overt acts. But the proposed TCCAC alleges a community among FX traders, and particularly those participating in these chat rooms, sufficiently close to withstand dismissal on these grounds. "[C]onstrued in the light most favorable to plaintiffs [and] resolving all doubts in their favor," it strains credulity that

---

[2] RBS argues that the chat room transcripts excerpts included in the proposed TCCAC fail to reflect collusion to manipulate FX instrument prices. Factual argument as to why the participants of these chat rooms were sharing the trading data at issue and whether some of the transcripts may reflect more innocent communications is not appropriate for the motion to dismiss stage, where the Court accepts Plaintiff's allegations as true. *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("[T]his Court must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party.")

participants of invitation-only chatrooms made up of traders who frequently communicate and socialize would not know the cities in which their co-participants were located. *Contant I*, 385 F. Supp. 3d at 290 (alteration omitted) (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013)). *See* Proposed TCCAC at ¶ 61 ("The FX traders employed by Defendants were part of a geographically and socially concentrated group. They lived in close proximity, attended the same social gatherings, and communicated frequently."); *id.* at ¶ 93 ("Many [FX traders] have worked with one another in prior trading jobs, and traders frequently communicate and socialize with traders at other Defendant banks."); *id.* at ¶ 101 ("The FX traders employed by Defendants are a small, highly interconnected group. Even at the largest banks, FX trading desks are typically staffed with less than ten traders, many of whom have worked previously with their counterparts in other banks."); *id.* at ¶ 112 ("Only a select group of traders were allowed into the secret [chat room] groups, and traders were highly protective of their membership.");

WHEREAS, Plaintiffs have adequately alleged that RBS was aware of their co-conspirators' in-forum overt acts, such that RBS should reasonably anticipate being haled into court in New York;

WHEREAS, "[i]f minimum contacts exist, the defendant has to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Contant I*, 385 F. Supp. 3d at 296 (quoting *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 169 (2d Cir. 2015)). Personal jurisdiction over RBS is not unreasonable for the same reasons this Court found personal jurisdiction over the Foreign Defendants not unreasonable in *Contant I*. *See id.* at 296. It is hereby

    **ORDERED** that Plaintiffs have leave to amend the complaint. The parties shall meet and

confer and, by **December 20, 2019**, Plaintiffs shall file the final TCCAC or email the Court the TCCAC with any proposed redactions pursuant to the Court's Individual Rules.

The Clerk of Court is respectfully requested to close the motion at Dkt. No. 293. Dated:

December 9, 2019
    New York, New York

                                    **LORNA G. SCHOFIELD**
                                **UNITED STATES DISTRICT JUDGE**