USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/13/2019

November 12, 2019

**VIA ECF**
The Honorable Lorna G. Schofield
U.S. District Court, Southern District of New York
40 Foley Square
New York, New York 10007

**RE:** *Contant, et al. v. Bank of Am. Corp., et al.*, No. 17-cv-3139-LGS (S.D.N.Y.)

Dear Judge Schofield:

Pursuant to Fed. R. Civ. P. 45(d) and Rules II.B, III.A.1, and III.C.3 of the Court's Individual Rules and Procedures for Civil Cases, Plaintiffs respectfully submit this pre-motion letter to request that the Court compel non-party Forex Capital Markets, LLC ("FXCM") to comply with Plaintiffs' subpoena for production of documents (the "FXCM Subpoena") (attached as Ex. A).[1]

FXCM is a retail foreign exchange dealer ("RFED") that transacted FX Instruments directly with the Defendants and resold those FX Instruments to members of the proposed Classes during the Class Period, including several of the named Plaintiffs. The FXCM Subpoena seeks transactional data and other information pertaining to Class-member retail FX transactions, all of which is central to this case and unavailable from any source other than FXCM. The FXCM customer contact information and transactional data is also crucial to Plaintiffs' plan to issue notice to the members of the Settlement Class members and allocate settlement proceeds amongst those members pursuant to the Court's July 29, 2019, Order granting preliminary approval of the Citigroup and MUFG Bank Settlements. ECF No. 297 (the "Preliminary Approval Order").

The FXCM subpoena was served on March 22, 2019. *See* Ex. A. Since then, FXCM's counsel served various objections and engaged in numerous meet and confer sessions with Plaintiffs' counsel to narrow the scope of the subpoena. In response, Plaintiffs have withdrawn several subpoena requests, limited the information sought by certain requests, and agreed to accept declarations in response to other requests in lieu of document production. Each of these concessions was designed to limit the burden placed on FXCM. Plaintiffs and FXCM have reached an agreement in principle regarding which materials FXCM will produce.

In response to FXCM's demands, Plaintiffs told FXCM that they would reimburse FXCM for a reasonable portion of FXCM's actual costs of production. FXCM estimated its costs will be $60,000, which is purportedly based on the full annual salaries of two FXCM employees for the two months that FXCM intends to dedicate to this task. FXCM has not substantiated its estimate. FXCM refuses to produce any materials unless Plaintiffs pay the entire estimated production costs as well as three-quarters of FXCM's claimed legal fees. FXCM's counsel has asserted that FXCM has incurred $40,000 in legal fees, and thus demands that Plaintiffs pay $30,000 in fees in addition to its estimated costs. Plaintiffs repeatedly requested that FXCM permit Plaintiffs obtain competitive quotes from one or more third-party vendors to ensure that FXCM's cost

---

[1] Plaintiffs informed FXCM on November 4, 2019, that they would file this motion. Plaintiffs will serve FXCM with a copy of this letter via email immediately upon filing of this motion.

1

estimate is reasonable, but FXCM refused. To resolve the dispute and expedite the production, Plaintiffs offered to pay FXCM a total of $30,000, representing one-half of FXCM's estimated non-legal costs.[2] FXCM refused and maintains that Plaintiffs must pay 100 percent of FXCM's estimated (but unsubstantiated) costs as well as 75 percent of FXCM's legal fees before it will commence production.[3]

Under Rule 45, a party issuing a subpoena to a non-party is subject to cost-shifting only when the nonparty incurs "significant expense from compliance with a subpoena."[4] "Typically, a non-party is required to absorb the costs of complying with a subpoena *duces tecum*. Generally, reimbursement only occurs where the costs are great or the document demand unreasonably broad." *Honda Lease Tr. v. Middlesex Mut. Assur. Co.*, No. 05-cv-1426, 2008 WL 349239, at *5 (D. Conn. Feb. 6, 2008). Here, the requests have been narrowed by agreement of the parties so they cannot be unreasonably broad. Where courts do require the requesting party to bear some of the non-party's subpoena expenses, the factors relevant to that determination include "(1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear the costs; and (3) whether the litigation is of public importance."[5] Here, all three factors favor apportioning most, if not all, of the costs to FXCM.

First, courts view a non-party as having an interest in the outcome of the case when it "should have reasonably anticipated being drawn into subsequent litigation" resulting from its involvement in the underlying transaction.[6] Here, FXCM is a class member entitled to receive its share of the more than $2.3 billion settlement fund in the related direct-purchaser action, *In Re Foreign Exchange Benchmark Antitrust Litig.*, No. 1:13-cv-07789 ("*FOREX*"), which was based

---

[2] On April 5, 2019, counsel for HSBC Bank PLC; HSBC Bank USA, N.A.; HSBC North America Holdings, Inc.; and HSBC Securities (USA) Inc. ("HSBC") served a subpoena on FXCM requesting similar materials as Plaintiffs' FXCM Subpoena. Plaintiffs initially suggested that because Plaintiffs' and HSBC's subpoenas requested substantially similar materials, Plaintiffs, HSBC, and FXCM should split the $60,000 cost estimate evenly ($20,000 each). Because HSBC would not agree to any coordinated cost sharing proposal, Plaintiffs offered to pay one-half of FXCM's cost estimate.

[3] In addition to its cost shifting demands, FXCM also insisted that Plaintiffs coordinate with HSBC regarding both FXCM subpoenas. Plaintiffs contacted counsel for HSBC numerous times to attempt to coordinate on the timing of production and cost sharing with respect to both subpoenas. However, counsel for HSBC maintained that HSBC is waiting for information that it requested from FXCM regarding the scope of data that FXCM intends to produce in response to Plaintiffs' subpoena, and that HSBC will not agree to any coordinated cost sharing proposal until it receives that information. Counsel for HSBC have also taken the position that HSBC will not be able to confirm whether it will seek additional materials responsive to its subpoena until it reviews the materials that are produced by FXCM responsive to Plaintiffs' subpoena. In short, although Plaintiffs have repeatedly attempted to coordinate with HSBC on cost sharing and the timing of production with respect to their subpoenas, HSBC has declined to do so. Because FXCM will not proceed without agreement from HSBC and HSBC will not proceed without reviewing FXCM's production to Plaintiffs, Plaintiffs and FXCM are at an impasse that cannot be resolved without Court intervention.

[4] *See In re First Am. Corp.*, 184 F.R.D. 234, 243 (S.D.N.Y. 1998) (granting $75,000 of the non-party's $210,990.67 requested costs, considering the equities, the role played by the non-party, and the public importance of the action).

[5] *In re World Trade Ctr. Disaster Site Litig.*, No. 21-MC-100, 2010 WL 3582921, at *1 (S.D.N.Y. Sept. 14, 2010).

[6] *First Am. Corp.,* 184 F.R.D. at 242; *Chevron Corp. v. Donziger*, No. 11-cv-0691-LAK, 2013 WL 1087236, at *33 (S.D.N.Y. Mar. 15, 2013) ("Where a nonparty was substantially involved in the underlying transaction and could have anticipated that [it] would reasonably spawn some litigation, expenses should not be awarded." (citation omitted)), *affirmed on reconsideration*, 2013 WL 1975439 (S.D.N.Y. May 14, 2013); *Dow Chem. Co. v. Reinhard*, No. M8-85, 2008 WL 1968302, at *2 (S.D.N.Y. Apr. 29, 2008) (apportioning costs 50/50 based on non-party's reasonable expectation of being drawn into litigation).

2

on the same alleged conspiracy at issue in this action. *See FOREX* ECF No. 1307. FXCM's business model involves purchasing FX Instruments from dealer banks and then reselling those FX Instruments at a markup to retail customers including members of the Classes here. *See* ECF No. 183 (Second Consolidated Class Action Complaint), ¶ 149. FXCM should not bill their customers and other members of the Classes for the materials requested by the subpoena.

Second, FXCM can bear the costs of production. Plaintiffs are ten individuals and a small business that transacted FX Instruments with RFEDs including FXCM during the Class Period. FXCM is a multinational corporation worth hundreds of millions of dollars,[7] and has not represented to Plaintiffs that its $60,000 in estimated production costs would be a significant burden. Further, FXCM has repeatedly refused to allow Plaintiffs to independently verify the reasonableness of its $60,000 cost estimate, and has not provided any documentation of its purported $40,000 in legal fees.[8] FXCM can bear the costs of production more readily than Plaintiffs here. Further, the only legal fees that are even potentially subject to cost-shifting under Rule 45 are those resulting ***from compliance with the subpoena***, not fees resulting from resisting or negotiating limitations on the subpoena.[9] Because FXCM's document productions have not yet commenced, any legal fees incurred by FXCM's counsel to date cannot have been incurred in connection with tasks that are subject to cost-shifting under Rule 45.

Finally, there is a strong public importance to large-scale financial antitrust cases, particularly where the outcome may offer the non-party certain benefits.[10] That is certainly the case here, as this case is aimed directly at compensating retail FX purchasers—including FXCM's customers—for the Defendants' alleged price fixing conspiracy. Because all three factors weigh against an award of costs to FXCM, Plaintiffs should not be required to fund all of FXCM's estimated production costs and three-fourths of its *pre-production* legal fees.

For the reasons stated herein, Plaintiffs respectfully request an order compelling FXCM to produce documents and information as agreed upon by the parties within 60 days of the date of the Court's Order.

Respectfully submitted,

---

[7] One of FXCM's investors, Jeffries Financial Group Inc.—which has a 50% voting interest in FXCM—reported that as of November 30, 2018, its investment in FXCM was valued at $148.2 million. *See* Jeffries Financial Group Inc., Form 10-K (Jan, 29, 2018), *available at* http://ir.jefferies.com/Cache/396523773.PDF?O=PDF&T=&Y=&D=&FID=396523773&iid=103464, at 18 (last visited Nov. 12, 2019).
[8] *See Blum v. Stenson,* 465 U.S. 886, 897 (1984) (holding that a non-party that moves for costs and fees bears the burden of demonstrating that those costs and fees are reasonable).
[9] *See, e.g.*, *In re Aggrenox Antitrust Litig*., No. 14-md-02516, 2017 WL 4679228, at *9 (D. Conn. Oct. 18, 2017) ("The plain language of Rule 45 provides that non-parties must be protected from significant expenses resulting from compliance [with a court order or subpoena]. It is a tenuous proposition, at best, that attorneys' fees incurred resisting a subpoena are expenses resulting from compliance." (citation omitted)); *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc*., No. 09-cv-3855, 2018 WL 1701944, at *7 (E.D.N.Y. Mar. 31, 2018) (holding that non-party attorneys' fees "unrelated to document production, such as attempting to research privilege issues to resist the subpoena, and researching cost-shifting . . ." are not compensable); *G & E Real Estate, Inc. v. Avison Young-Washington, D.C., LLC*, 317 F.R.D. 313, 316 (D.D.C. 2016) ("It is critical . . . that only expenses that result from, and therefore, are caused by, the order of compliance are potentially compensable.").
[10] *First Am. Corp.,* 184 F.R.D. at 242.

3

/s/ Michael Dell'Angelo
Michael Dell'Angelo
**BERGER MONTAGUE PC**
1818 Market St, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
mdellangelo@bm.net

ENDORSEMENT: No later than 11/18/19, non-party FXCM shall respond to Plaintiffs' Letter-Motion (ECF No. 325). FXCM shall send its response to the Court's email address (Aaron_NYSDChambers@nysd.uscourts.gov) and the Court shall post it on ECF. Plaintiffs shall submit their reply no later than 11/21/19. Plaintiffs shall forward a copy of this Order to FXCM no later than 5pm today (11/13/19). SO ORDERED.
Dated: 11/13/19

*[signature: Stewart D. Aaron]*