June 12, 2020

<u>**Via ECF**</u>
The Honorable Stewart D. Aaron
United States Magistrate Judge
Daniel Patrick Moynihan U.S. Courthouse
New York, New York 10007

**RE:** ***Contant, et al. v. Bank of Am. Corp., et al.*, No. 17-cv-3139-LGS (S.D.N.Y.)**

Dear Judge Aaron:

Plaintiffs respectfully submit this response to Forex Capital Markets, LLC's ("FXCM") June 5, 2020, letter seeking attorney's fees incurred in connection with Plaintiffs' subpoena. ECF No. 424. The Court should deny nearly all requested fees because FXCM failed to engage in the Court's mandatory meet and confer process, at least 50% of the requested fees were incurred resisting Plaintiffs' subpoena and negotiating FXCM's costs and fees, and much of the remainder is not specified or is otherwise not reimbursable. *See Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.*, No. 09-CV-3855, 2018 WL 1701944, at *7 (E.D.N.Y. Mar. 31, 2018).

Plaintiffs served the subpoena in March 2019 and reached an agreement on scope in June 2019.[1] However, FXCM refused to produce the agreed-upon data to Plaintiffs while it negotiated Defendants' separate subpoena. Plaintiffs meanwhile reached settlements in principle with all Defendants in January 2020 and, to reduce FXCM's burden, Plaintiffs proactively narrowed the June 2019 agreement to only the data needed for settlement notice and claims. Still, FXCM did not produce until May 2020 after needlessly and inefficiently protracting the process. *See* Ex. A (Plaintiffs' Feb. 12, 2020, Email). Had FXCM timely honored the June 2019 agreement, most of the fees it seeks would not have been incurred. In March 2020, the parties agreed that Plaintiffs would reimburse FXCM 100% of its claimed $31,490 of production costs, and Plaintiffs offered to pay FXCM $6,700 in legal fees. *See* Ex. B (Plaintiffs' Mar. 26, 2020, Letter). FXCM insisted upon 100% of its legal fees, but acknowledged it was entitled to less in conceding it had "block billed" some entries. FXCM spent more time negotiating its fees and costs than the scope of the subpoena. *See infra* n.6 (FXCM block billing examples). FXCM should not be awarded fees for time spent seeking payments of its own fees or time unrelated to negotiating the subpoena scope.

**<u>FXCM failed to satisfy this Court's Individual Rules II.A. and II.B.</u>**

FXCM improperly seeks attorneys' fees for myriad time entries that it *never* provided or even disclosed that it would seek reimbursement for until about an hour before filing its motion. *Compare* ECF No. 424-2 (exhibit to FXCM letter with time records through **April 30, 2020**) *with* Ex. C (FXCM's February 28, 2020 email to Plaintiffs with time records through **November 22, 2019**) and Ex. D. Until FXCM filed its motion, Plaintiff understood that FXCM was only seeking fees through November 22, 2019. The motion should be denied on that basis alone. Further, FXCM's request comes months after its last substantive communication on these issues. FXCM has therefore failed to comply with this Court's Individual Practice Rules II.A and II.B requiring parties to confer in good faith to attempt to resolve discovery disputes and to certify that they have complied with this requirement. Regardless, Plaintiffs agreed to reimburse 100% of FXCM's then stated production costs. *See* Ex. B. Following a careful analysis of *every* FXCM time record

---

[1] FXCM notes that "an agreement was reached as to scope and confirmed in writing by FXCM" on June 17, 2019. ECF No. 424-2. FXCM nevertheless seeks a year's worth of attorney fees for time incurred after this agreement.

provided to Plaintiffs before FXCM filed its motion, *see* Ex. C, Plaintiffs also offered $6,750 for attorney's fees related to negotiating the scope of the subpoena and explained why FXCM's blanket demand for 100% of its fees was improper. Ex. B. FXCM never responded substantively to that letter. Instead, in a brief call, FXCM agreed that certain of its time entries (i.e., block billing), warranted further scrutiny but claimed others should be reimbursed without specification.[2]

### FXCM is an "interested party" as to its claims against Defendants in *FOREX*.

FXCM had its own interest in the related direct-purchaser *FOREX* litigation, and data that Plaintiffs requested from FXCM in this case is the same type of data that FXCM collected to make a settlement claim in *FOREX*.[3] *See In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992) (factors courts consider in awarding Rule 45 attorneys' fees include whether the non-party has an interest in the litigation and whether it can more readily bear its costs). Importantly, because Plaintiffs have settled this action with all Defendants, and the data produced by FXCM is required for the administration of those settlements, any fees awarded to FXCM here will reduce the settlement funds available to the members of the settlement classes (which include tens of thousands of FXCM's former customers).

### FXCM improperly seeks fees for seeking legal fees and resisting the subpoena.

FXCM seeks reimbursement for efforts to resist Plaintiffs' subpoena rather than complying with it. Resistance-related efforts are not recoverable under Rule 45, which provides that a non-parties should be protected from "significant expense *resulting from compliance*." Fed. R. Civ. P. 45(d)(2)(B)(ii) (emphasis added); *see Sands Harbor*, 2018 WL 1701944, at *7 (denying fee shifting where "the submitted records establish that [the non-party's] attorneys were engaged in tasks wholly unrelated to document production, such as attempting to research privilege issues to resist the subpoena, and researching cost-shifting and 'fees-for-fees' law").

FXCM seeks at least $20,000 for "time it spent arguing with [Plaintiffs'] counsel about costs," not review of the subpoena or negotiation of its scope. *See In re Aggrenox Antitrust Litig.*, No. 14-MD-02516, 2017 WL 4679228, at *10 (D. Conn. Oct. 18, 2017). FXCM previously disclaimed to this Court that it was seeking cost-shifting or other fees unrelated to compliance. ECF No. 394 (Transcript of Dec. 16, 2019, Hearing), at 14:16-24. Yet FXCM now seeks to recover for negotiating attorneys' fees and litigating its fees and costs demands: nearly $10,000 for creating a record for compliance costs or its purported burden; approximately $5,000 to study the law about "a third party's entitlement and costs"; and over $5,000 to litigate "production costs and attorneys' fees." ECF No. 424 at 2. FXCM also seeks nearly $10,000 for a declaration drafted to quash the subpoena. ECF No. 424 at 3n.2. "Rule 45 does not cut a blank check to non-parties—unnecessary or unduly expensive services do not 'result from compliance' and, therefore, do not count as 'expenses.'" *United States v. McGraw-Hill Cos.*, 302 F.R.D. 532, 536 (C.D. Cal. 2014).

Requiring Plaintiffs to pay over $40,000 in attorneys' fees for "meeting and conferring" is improper because much of that time was intertwined with FXCM resisting compliance, including a contemplated motion to quash. Indeed, FXCM has identified resistance efforts under the guise of "meeting and conferring" or drafting declarations. For example, FXCM seeks reimbursement

---

[2] In its current request, FXCM has withdrawn some of the challenged entries.

[3] FXCM made a substantial settlement claim in *In Re Foreign Exch. Benchmark Antitrust Litig.*, No. 13-cv-7789 (S.D.N.Y.) ("*FOREX*"), where the defendants settled claims that they overcharged their customers, including FXCM, on FX transactions – the same conduct underlying this action. Plaintiffs and the Class members here include customers of FXCM to whom FXCM passed on Defendants' alleged overcharges, which FXCM recovered in *FOREX*.

for time entries explicitly referring to a contemplated motion to quash.[4] Even after the Court denied a motion to quash filed by FXDirectDealer, LLC, a retail FX dealer like FXCM, ECF No. 254, FXCM claims time for examining case law regarding whether "customer information is discoverable from third party under a protective order" and performing "[l]egal research into Judge Lorna G Schofield decisions and Rule 45 subpoenas." ECF No. 424-2 (5/31/19 "JST" and 11/7/19 "AJS" time entries). Given this background, and that Plaintiffs were forced to move to compel FXCM, ECF No. 325, it cannot be determined whether FXCM's vague time entries referring to "strategy" and "response" were in furtherance of FXCM's resistance efforts and unrelated to complying with Plaintiffs' subpoena.[5] The Court should reduce the over $12,000 FXCM spent in reviewing the subpoena and negotiating its scope with Plaintiffs, as well as the more than $7,000 in fees related to "the scope of the subpoena and reimbursement of production costs and attorneys' fees," as these entries do not separate resistance efforts from compliance.

FXCM's request for any fees incurred after June 2019 is particularly troubling given an agreement had been reached on the scope of responsive material. Nearly all time incurred after the June 2019 agreement relates to FXCM's attempts to negotiate its own fees and costs. Similarly, FXCM is not entitled to fees to prepare its fee request motion. Rule 45 does not provide for fees spent preparing a fee motion, and "special circumstances" such as a third party's delay and inflated request for fees warrant denial for fees spent preparing a motion. *Aggrenox*, 2017 WL 4679228, at *13; *see also In re Subpoenas Served on the Am. Kidney Fund, Inc*., No. 17-CV-1787, 2019 WL 1894248, at *4 (D. Md. Apr. 29, 2019) ("attorney's fees incurred for other purposes—such as drafting a motion to obtain reimbursement of attorney's fees—are not eligible for fee shifting"). This is especially true here because FXCM has failed to meet and confer on virtually all its entries.

### FXCM improperly seeks fees related to defendants' subpoena.

Plaintiffs are not responsible for FXCM's legal costs of responding to and resisting *Defendants'* separate subpoena. Many time entries describe work pertaining to "subpoenas" from both Defendants and Plaintiffs without specification.[6] And many time entries refer to "subpoena" generically or otherwise provide no way to discern which subpoena the work was for, and FXCM has never clarified. Plaintiffs should not be required to pay nearly $12,000 in fees for work not clearly related to responding to Plaintiffs' subpoena due only to FXCM's failure to maintain precise time records when their records reflect an intent to seek fees all along.

### FXCM's block-billed entries should be discounted.

FXCM block-billed many time entries which should be discounted, if credited at all.[7] *See Sands Harbor*, 2018 WL 1701944, at *6 ("Block-billing make[s] it difficult to determine the reasonableness of the time spent on particular tasks and warrant[s] a reduction in attorney's fees."). FXCM did meet and confer in response to Plaintiffs' March 27 letter on this issue and agreed that an adjustment needed to be made for block billing, but never did so. FXCM fails to show the attorneys' fees it seeks are related to legitimate compliance efforts. Because FXCM used the data at issue for its own claims in *FOREX*, the Court should deny its motion in its entirety. Alternatively, the Court should award FXCM the $6,700 in fees that Plaintiffs offered in good faith.

---

[4] *See, e.g.*, ECF No. 424-2, 3/29/2019, 4/1/2019, 4/8/2019, 4/11/2019, and 4/15/2019 motion to quash entries.
[5] *See, e.g.*, ECF No. 424-2, 4/1/19, 4/15/19, 4/22/19, 4/29/19, 5/16/19, 5/20-21/19, 5/24/19, 6/4/19, 6/10/19, 6/20/19, 6/24/19, 10/16/19, 10/18/19, 11/13/19, and 12/16/19 time entries.
[6] *See, e.g.*, ECF No. 424-2, 5/24/19, 6/4/19, 10/1/19, 10/4/19, 10/16/19, and 11/14/19 time entries.
[7] *See, e.g.*, ECF No. 424-2, 4/16/19, 4/19/19, 5/9/19, 5/10/19, 5/24/19, 6/21/19, 10/1/19 "BT" time entries.

Respectfully submitted,

/s/ Michael Dell'Angelo
Michael Dell'Angelo
**BERGER MONTAGUE PC**
1818 Market St, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
mdellangelo@bm.net