

**MICHAEL DELL'ANGELO** / *MANAGING SHAREHOLDER*
d 215.875.3080  m 610.608.8766 | mdellangelo@bm.net

March 26, 2020

**VIA EMAIL**
Jodi Tesser
Mount Cotton Wollan & Greengrass LLP
One New York Plaza 44th Floor
New York, NY  10004
jtesser@moundcotton.com

Re: *Contant, et al. v. Bank of America Corporation, et al.*,
No. 17-cv-3139-LGS (S.D.N.Y.) – Plaintiffs' Subpoena to FXCM

Dear Ms. Tesser:

Plaintiffs in the above-referenced matter write in an effort to amicably resolve the sole remaining dispute relating to Forex Capital Markets, LLC ("FXCM"), claimed attorneys' fees associated with responding to Plaintiffs' Rule 45 subpoena issued to FXCM. We also write to set forth in writing the terms of Plaintiffs' agreement to pay FXCM's estimated cost to produce information responsive to Plaintiffs' subpoena.

Plaintiffs have reviewed FXCM's March 11, 2020 Milazzo Declaration which estimates that FXCM will incur $31,490 in professional time to process and produce responsive information as well as FXCM's attorney time entries and fees for which it seeks reimbursement. For the reasons explained below, Plaintiffs agree to pay (i) not more than $31,490 to reimburse FXCM for the professional time incurred to process and produce responsive data necessary to effectuate a notice to the proposed settlement classes and to effectuate the claims process, as detailed below; and (ii) $6,750 in attorneys' fees.

**Plaintiffs Agree to Pay the Production Costs Sought by FXCM**

Following the parties' agreement on the scope of Plaintiffs' subpoena, Plaintiffs' further narrowed the scope of the agreed upon production given the proposed confidential settlement of the *Contant* matter. We understand that, as a result of Plaintiffs' further narrowing, the estimated cost of production was reduced by approximately one-half of FXCM's original estimate, but that the time to gather the production increased slightly. As discussed, solely for purposes of resolving the parties' dispute about data production costs, Plaintiffs agree to pay FXCM's requested production costs in an amount not to exceed $31,490. Plaintiffs' agreement is contingent upon FXCM's provision of an

Jodi Tesser
March 26, 2020
Page 2 of 7



updated version of the March 11, 2020 Milazzo Declaration that sets forth the actual amount of time taken to complete the production. Plaintiffs agree to pay FXCM the value of FXCM's professional time incurred to process and produce responsive data in an amount not to exceed $31,490, as set forth in the updated Milazzo Declaration. If the parties cannot reach an agreement, we reserve our rights to challenge this amount, including on the basis that the hourly rates to produce the data are too high and FXCM have unreasonably delayed production of the responsive data.

**Most of FXCM's Request for Attorneys' Fees is Unreasonable**

Thank you for providing attorney time entries and fees for which FXCM is seeking reimbursement from Plaintiffs. Having reviewed the entries, and as explained in detail below, we believe Plaintiffs have no responsibility for paying the majority of the requested attorneys' fees, if any.

First, many of the legal tasks performed related to efforts to resist the subpoena, rather than comply with it. *See Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or.*, 2018 U.S. Dist. LEXIS 58729, *21 (E.D.N.Y. March 31, 2018) ("Many of the submitted records establish that DLG's attorneys were engaged in tasks wholly unrelated to document production, such as attempting to research privilege issues to resist the subpoena, and researching cost-shifting and 'fees-for-fees' law"); *see also Aggrenox*, 2017 U.S. Dist. LEXIS 172231, *39 ("Many of the submitted records establish that [third party's] attorneys were engaged in tasks wholly unrelated to document production, such as attempting to 'show burden' to resist the subpoena"). That FXCM has made no production to date, and FXCM has delayed the settlement administration timeline of the *Contant* matter by not producing the data necessary to identify proposed settlement class members cuts against the entirety of the fee request. *Id.* at *41 (declining to award fees nearly all fees "incurred before it agreed on search terms with the DPPs or provided the DPPs with a reasonable estimate of costs"); *see also id.* at *44 ("the need for the letters and the phone conference only arose at all because of [third-party's] own determination to 'expend significant resources on the document review effort' and 'litigate issues related to the subpoena zealously'").

FXCM's position as a claimant and service provider to class members here makes its prior resistance unreasonable. Notably, as discussed, the proposed settlement class members in *Contant* include FXCM's own customers. The defendant banks in the *FOREX* litigation paid billions of dollars to settle claims that they overcharged FXCM and their other customers on foreign currency transactions. FXCM, as we understand it, was eligible to make a substantial claim in the *Forex* litigation. Yet, FXCM passed on the illegal overcharges to its customers, the settlement class members in *Contant*. The



Jodi Tesser
March 26, 2020
Page 3 of 7

data that the Plaintiffs in *Contant* requested from FXCM and that FXCM is now producing – and requiring Plaintiffs to retrieve for in full – is not only the same type of data that FXCM would have collected to make a claim to recover in the *FOREX* litigation for its own benefit, but the data that its customer now need to recover the same illegal overcharges that FXCM passed along to them. Simply put, FXCM seemingly had no difficulty or hesitation retrieving data to recover for illegal overcharges that it passed along to its customers, but has, in turn, fought its customers to withhold and now seeks to impose legal fees on its customers to cover the cost of its attempt to refuse to provide that data.

Plaintiffs will not pay for FXCM's resistance efforts, particularly because a substantial part of the work appears to be based on arguments the data sought was "confidential" or a "trade secret," or otherwise undiscoverable. Here, the Court had already found that similar data requested from another subpoenaed entity was relevant to this litigation and should be produced, FXCM's assertions that the data was not discoverable were untenable.

Examples of resistance include the following:

•	11/13/2019 through 11/22/2019 time entries concerning IPPs' motion to compel compliance with subpoenas

•	5/31/2019 "JST" entry: "Review and analysis of case law provided by IPPs in support of their argument that customer information is discoverable from third party under a protective order in preparation for meet and confer with plaintiffs' counsel"

•	May 2019 time entries that entwine compliance and resistance efforts, including positioning FXCM to quash subpoena.

•	4/26/19 "BT" entry: "Draft and revise memorandum of law in support of motion to partially quash subpoena"

•	4/12/19 "JST" entry: "Legal research re case law on motions to quash based upon the fact subpoenas seeks confidential business information and trade secrets"

•	4/11/2019 "JST" entry: "Preparation of (begin) motion to quash"

•	4/8/2019 "BT" entry: "Draft/revise declarations in support of motion to quash subpoena"

Jodi Tesser
March 26, 2020
Page 4 of 7



• 4/1/2019 "BT" entry: "Review and revise draft affidavit of Alex Dick in suppmt of motion to quash subpoena"

• 3/29/2019 "BT" entry: "Draft/revise affidavit of Alex Dick in support of motion to quash subpoena in SDNY"

Regardless, FXCM's current position that is should be reimbursed for legal fees associated with resistance because it would have been reimbursed had it prevailed on its motion to quash is not well founded. Any suggestion that FXCM would have prevailed in a motion to quash is contradicted by the record. We note that on April 18, 2019, the Court in *Contant* denied a motion to quash (Dkt. No. 254) as filed by FXDirectDealer, LLC ("FXDD"), an RFED like FXCM, on April 11, 2019. Dkt. No. 251. Plaintiffs' subpoena to FXDD was virtually identical to Plaintiffs' subpoena to FXCM. Further, the Court denied FXDD's motion to quash "[f]or substantially the reasons stated in Plaintiffs' [April 16, 2019] letter" (Dkt. No. 253) which specifically addressed the very issues FXCM was apparently researching after FXDD's motion to quash on the same issues was already pending -- and for which FXCM now seeks to charge Plaintiffs. (*See* FXCM attorney entry dated 4/12/19 "quash based upon the fact subpoenas seeks confidential business information and trade secrets".)

Second, Plaintiffs are not responsible for FXCM's legal costs responding to and/or resisting the separate subpoena issued by Defendants, which related to unique issues regarding defenses to Plaintiffs' claims. We appreciate that FXCM segregated the Defendant-specific time billed. However, FXCM appears to be asking Plaintiffs to pay for work that overlaps responding to the subpoenas issued by both Plaintiffs and Defendants.  Numerous entries explicitly describe the work as pertaining to "subpoenas" from both Defendants and Plaintiffs:

• 11/14/2019 "JST" entry: "Email to all counsel re proposed briefing schedule for pre-motion letters .concerning parties' motions to compel in connection with subpoenas"

• 10/16/2019 "BT" entry: email to FXCM re "subpoenas"

• 10/16/2019 "BT" entry: "Telephone Alex Dick, FXCM, re strategy in responding to subpoenas"

• 10/1/2019 "BT" entry: "revise letter to judge requesting conference and seeking to reconcile two subpoenas, one from plaintiffs and one from defendants"



Jodi Tesser
March 26, 2020
Page 5 of 7

• 6/4/2019 "BT" entry: discuss with client subpoena strategy with "plaintiffs and with defendants"

• 5/24/2019 "JST" entry: "Conference out of office with Alex Dick and Evan Milazzo in connection with subpoenas"

Plaintiffs cannot reasonably disaggregate the portion of work attributable to Plaintiffs and will not pay for overlapping work. We will in no event pay for more than one-half of overlapping time as Defendants should be responsible for the other half of that overlapping time, if any. We note in this respect that some overlapping time is spent in resistance efforts and negotiating fees. (*See* 4/12/19, 10/01/19, 10/16/19, 11/13/19, 11/14/19 entries.) For the avoidance of doubt, Plaintiffs will not pay for any portion of overlapping time attributable to resistance of a subpoena or fee shifting. Conversely, we have included in fees that are allowable for certain overlapping entries that appear to relate to compliance.[1]

Third, many FXCM time entries explicitly reflect time negotiating fee shifting. This time is non-compensable as a "resistance" effort because it has nothing to do with complying with the subpoena to produce responsive data. *See Aggrenox*, 2017 U.S. Dist. LEXIS 172231, *43 (time "spent negotiating with the DPPs about costs and deadlines" not compensable).

• 10/18/2019 "BT" entries relate to negotiation of cost shifting measures

• 10/1/2019 "BT" entry largely seeks to recovery fees related to efforts to shift costs on Plaintiffs.

• 7/9/2019 "BT" entry: "Telephone call with Josh Ripley counsel for plaintiffs re resolving discovery dispute and amount of costs and fees sought by FXCM."

• 7/9/2019 "JST" entry: "Telephone conversation with plaintiff's counsel re compliance with plaintiffs' subpoena and cost-sharing issues"

• 7/9/2019 "BT" entry: "Preparation for call with plaintiff's counsel; strategy re

• obtaining costs and attorneys fees"

• 7/2/2019 "BT" entry: "Email to plaintiffs' counsel transmitting draft Milazzo

---

[1] Plaintiffs included what they would pay for one-half of time entries for 5/20/19 and 5/24/19 that concerned discussions with FXCM concerning the "subpoenas."



Jodi Tesser
March 26, 2020
Page 6 of 7

- Declaration and requesting payment of our attorneys' fees."

- 7/1/2019 "BT" entry: "Draft letter to Judge Schoefeld requesting conference to discuss payment of FXCM's costs and fees, including attorneys' fees, in connection with production of documents."

- 7/1/2019 "BT" entry: "Draft letter to plaintiffs counsel transmitting Milazzo Declaration and requesting them to reconsider their objections to paying FXCM's attorneys' fees"

- 6/28/2019 "BT" entry: "telephone plaintiffs' counsel re cost and fee sharing"

Fourth, FXCM block-billed some of their entries. In *Sands Harbor*, the court discounted entries that were "block billed" *Id.* at *17-18 ("Block-billing make it difficult to determine the reasonableness of the time spent on particular tasks and warrant a reduction in attorney's fees."). For example:

- 10/1/2019 "BT" entry: "Review and analyze email from Josh Ripley, plaintiffs' counsel re negotiating scope of subpoena and payment of FXCM's fees, forward to client with explanatory email; draft response to plaintiffs and send to client for approval, revise letter to judge requesting conference and seeking to reconcile two subpoenas, one from plaintiffs and one from defendants."

- 6/21/2019 "BT" entry: "Review draft declaration from Evan Milazzo regarding pricing and algos, and email Alex Dick with my questions regarding same."

- 5/24/2019 "BT" entry: "Revise draft letter to TT/c; review notes before client meeting"

- 5/10/2019 "BT" entry: "Confer with CTO Evan Milazzo re response to subpoena, re amount of work necessary to retrieve bid/ask quotes, review exemplar of bid/ask quotes furnished by Milazzo, and email Alex Dick with summary of proposed strategy."

- 5/9/2019 "BT" entry: "Email Alex Dick re proposed revisions to Milazzo Declaration, make requested revisions and transmit to Milazzo with explanatory email."

- 4/19/2019 "BT" entry: "Revise pre-motion letter to Judge Schoefield to address A. Dick's questions and revisions; review BSA/ AML and Gramm Leach Bliley laws"

Jodi Tesser
March 26, 2020
Page 7 of 7



- 4/16/2019 "BT" entry: "Draft affidavit of Evan Milazzo based on information provided by A. Dick; revise and edit Dick Declaration based on new information" Block billing makes it difficult for Plaintiffs to segregate tasks that may be compensable.

**Plaintiffs' Offer to Pay $6,750 in Legal Fees**

To resolve the parties' dispute as to attorneys' fees, Plaintiffs agree to pay $6,750 to FXCM for its attorneys' fees for compliance with Plaintiffs' subpoena, subject to global resolution on all fee and cost requests. Plaintiffs believe that this offer is consistent with the guiding principle that "attorney's fees are to be awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees." *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1139 (2d Cir. 1983). If the parties are unable to resolve their dispute, Plaintiffs reserve their rights to challenge FXCM's requests for attorneys' fees in its entirety.

* * *

I look forward to discussing these issues in further detail with you at your convenience.

Very truly yours,

Michael Dell'Angelo