# MOUND COTTON WOLLAN & GREENGRASS LLP

COUNSELLORS AT LAW
ONE NEW YORK PLAZA
NEW YORK, NY 10004-1901

(212) 804-4200
FAX: (212) 344-8066
WWW.MOUNDCOTTON.COM

NEW YORK, NY
FLORHAM PARK, NJ
GARDEN CITY, NY
SAN FRANCISCO, CA
FORT LAUDERDALE, FL
HOUSTON, TX

JODI S. TESSER
(212) 804-4525
jtesser@moundcotton.com

June 16, 2020

The Honorable Stewart D. Aaron
United States Magistrate Judge
Daniel Patrick Moynihan U.S. Courthouse
New York, New York 10007

>    RE:   *Contant, et al. v. Bank of Am. Corp., et al.*, **No. 17-cv-3139-LGS (S.D.N.Y.)**

Dear Judge Aaron:

      We represent non-party Forex Capital Markets, LLC ("FXCM") in connection with the subpoena served by the Plaintiff. FXCM respectfully submits this letter reply in further support of its June 5, 2020 motion seeking reimbursement of its attorneys' fees in complying with Plaintiffs' subpoena. As an initial matter, Plaintiffs' assertion that had FXCM "timely honored" the June 2019 agreement, the majority of the fees would not have been incurred is inaccurate. While an agreement as to the scope of Plaintiffs' subpoena was agreed to by counsel in June 2019 after three months of negotiations, the Plaintiffs' counsel was reluctant to pay any of FXCM's costs and fees incurred in complying with the subpoena. Plaintiffs' counsel has done little to minimize the cost and expense to FXCM, which has fully complied with the subpoena, at considerable burden and expense. In fact, initially, Plaintiffs' counsel did not even broach the subject. Rather, FXCM's counsel raised the issue after an agreement as to the subpoena scope was reached and after the seventeen pages Declaration of Evan Milazzo was sent to Plaintiffs' counsel in July of 2019. Only after raising the issue did Plaintiffs' counsel agree to speak to counsel for HSBC and come up with a proposal with respect to the reimbursement of FXCM's costs and fees. On August 8, 2019, after not hearing from Plaintiffs' counsel for over a month, FXCM's counsel reached out to inquire as to the status of a cost sharing arrangement. In response, Plaintiffs' counsel stated that he thought it best to "hold off on our formal cost sharing proposal" until FXCM's negotiations with HSBC's counsel were concluded. (Exhibit 1). It wasn't until October of 2018 that Plaintiffs' counsel finally agreed to entertain negotiations regarding reimbursement of only FXCM's production costs.

      While counsel negotiated for months with respect to reimbursement of production costs, as Plaintiffs' counsel acknowledges in its June 12, 2020 letter, it wasn't until March of 2020 -- nine months after the parties reached an agreement as to the scope of the subpoena -- which Plaintiffs' counsel finally agreed to reimburse FXCM for its production costs in the amount of $31,490. Plaintiffs' counsel, however, continuously maintained that Plaintiffs were not required to pay a single dollar of FXCM's attorneys' fees "absent a Court order." (Exhibit 2). As a result, FXCM raised the issue of Plaintiffs' unwillingness to reimburse FXCM any portion of its

Mound Cotton Wollan & Greengrass, LLP

June 16, 2020
Page 2

attorneys' fees with the Court in its November 27, 2019 letter. (ECF No. 342). On December 16, 2019, the parties had a conference with Your Honor, in which Your Honor advised that FXCM was in fact entitled to reimbursement of legal fees, and requested that the parties, inter alia, report on the disputes, including an "estimate of the additional cost as to the Plaintiffs-only portion" of the subpoena (ECF No. 367). In compliance with Your Honor's Order, and contrary to Plaintiffs' false assertions, counsel for FXCM did in fact engage in meet and confers over the last six months in an attempt to resolve this matter.

**FXCM Satisfied this Court's Individual Rules Regarding Meeting and Conferring**

Notwithstanding the representations of Plaintiffs' counsel, counsel for FXCM did in fact comply with Rule II.A. and II.B. In accordance with Your Honor's Rules, and after the issuance of the December 16, 2019 Order, in February of 2020, FXCM's counsel sent Plaintiffs' counsel FXCM's legal invoices through December 20, 2019. Contrary to Plaintiffs' surprising assertions, as clearly evidenced by the invoices, FXCM engaged in numerous telephonic meet and confer sessions in an attempt to negotiate a reasonable settlement with respect to reimbursement of FXCM's attorneys' fees. Further, while FXCM did not provide a written response to Plaintiffs' March 26, 2020 letter, nor was it required to, FXCM did in fact engage in more than "a brief call." In fact, FXCM conducted a number of telephonic meet and confers after it received the March 26 letter, including on April 8, 2020 and April 16, 2020 pursuant to the invoices submitted to the Court. FXCM continued to engage in meet and confers with Plaintiffs' counsel during the month of May as well, explaining to counsel the reasons that their offer of $6,750 was unreasonable.[1] In fact, on one of the calls that occurred in May, counsel for FXCM read the line item entries from the first two invoices that were in furtherance of complying with the subpoena in order to demonstrate to counsel that those line items alone totaled well in excess of Plaintiffs' $6,750 settlement offer. In order to continue the good faith negotiations, and contrary to Plaintiffs' ascertain that FXCM demanded 100% of its fees, FXCM lowered its demand from approximately $38,000 to $30,000. In response, Plaintiffs' counsel represented that he would go back through the invoices and reconsider Plaintiffs' offer. In a subsequent conversation, however, Plaintiffs' counsel advised that the Plaintiffs would not budge from the $6,750 offer.

Finally, we note that while Plaintiffs' counsel was provided invoices from April 2019 through December of 2019, FXCM submitted to the Court, along with these invoices, additional invoices dated January 2020 through May of 2020. The amount FXCM is seeking in connection with these invoices is $13,000. These fees were incurred in continued negotiations with respect to attorneys' fees, discussing with Plaintiffs' counsel the revised scope of the subpoena in light of the class settlement, finalizing the Declarations, including preparing a second Declaration of Evan Milazzo at the request of Plaintiffs' counsel outlining the costs of production, and drafting the instant application. FXCM's counsel notified Plaintiffs' counsel of its intent to seek reimbursement of FXCM's fees incurred through May 2020 during the June 12 teleconference. FXCM respectfully submits that it is entitled to seek reimbursement for these fees as well.[2]

---

[1] We note that at the time of the filing of the pre-motion letter, the June invoice outlining the tasks conducted during the month of May was not yet available.

[2] Notwithstanding Plaintiffs' contentions, FXCM does not have an interest in the outcome of this case. FXCM is not accused of any wrongdoing and has no stake in its outcome as it does not stand to benefit from its

Mound Cotton Wollan & Greengrass, LLP

June 16, 2020
Page 3

**FXCM Seeks Fees for Complying with the Subpoena**

It is respectfully submitted that the costs for which FXCM seeks reimbursement are for complying with and not resisting Plaintiffs' subpoena. Incredibly, Plaintiffs assert that this Court should discount all line item entries that state "negotiating the scope of the subpoena" as it is unclear whether these entries are in resisting or complying with the subpoena. The Plaintiffs can hardly dispute the fact that the parties negotiated the scope of the subpoena for three months until an agreement was reached in June of 2019. The parties again had to renegotiate the scope of the subpoena at the beginning of this year in light of the class settlement. Thus, these entries are self-explanatory and clearly memorialize efforts made to comply with Plaintiffs' subpoena. Further, Plaintiff asks this Court to discount the fees incurred by FXCM in generating the seventeen pages Milazzo Declaration because some of its content was initially prepared in connection with a possible motion to quash. To begin with, Plaintiffs' counsel specifically agreed to accept a Declaration in lieu of producing documents for certain subpoena requests; thus, FXCM was required to draft a Declaration in order to comply with the subpoena. (Exhibit 3). Plaintiffs should not now be permitted to ask the Court to discount the fees incurred in generating the Declaration that they requested. Second, while some of the information that was included in the Declaration was originally drafted in connection with a possible motion to quash, it would have nevertheless been included and was in fact included in the Declaration that was requested by Plaintiffs' counsel in order to address the numerous subpoena requests that sought confidential and proprietary information. Thus, FXCM respectfully requests the Court award FXCM all of its attorneys' fees incurred in generating the Declaration.

Plaintiffs' argument that FXCM is improperly seeking fees related to Defendants' subpoena is also without merit. Indeed, all line item entries referring to Defendants' subpoena have been redacted, and FXCM is not seeking reimbursement of fees related to that subpoena. While Plaintiffs accuse FXCM of improperly seeking these fees, they have not identified one line item entry concerning Defendants' subpoena in any of the invoices. In fact, FXCM has been able to amicably resolve the issue of reimbursement of attorneys' fees in connection with complying with Defendants' subpoena <u>only</u>, and Defendants did not pay any portion of the costs incurred by FXCM in responding to Plaintiffs' subpoena.[3] Moreover, case law is clear that FXCM is entitled to its attorneys' fees incurred in complying with the subpoena. It is respectfully submitted that FXCM should not have to pay the attorneys' fees generated in meeting and conferring in good faith since October of 2019 with Plaintiffs' counsel, who, for over six months continuously argued that FXCM was not entitled to reimbursement of any of its attorneys' fees, and first presented its one and only $6,750 offer in March of 2020. Finally, case law is clear that FXCM is entitled to the fees generated in making this application.

---

resolution. Indeed, the documents being requested pursuant to the subpoena are personal contact information about FXCM account holders and trades entered into between FXCM and FXCM account holders. None of these documents were collected or produced for a settlement claim in the Direct Purchaser Action.

[3] With respect to block billing, while counsel for FXCM did acknowledge in a teleconference that a handful of line items were block-billed, in no way did counsel concede that those items should be discounted. In fact, counsel advised Plaintiffs' counsel that notwithstanding the block billing, the items identified in those entries were reimbursable as fees incurred in complying with the subpoena.

Mound Cotton Wollan & Greengrass, LLP

June 16, 2020
Page 4

      For the foregoing reasons, FXCM respectfully requests the Court to award its attorneys' fees in the amount of $51,737 incurred in connection with its efforts in complying with Plaintiffs' subpoena.

      Respectfully submitted,

      s/*Jodi S. Tesser*