USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/17/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Contant, et al.,

                Plaintiffs,

-against-

Bank of America Corporation, et al.,

                Defendants.

1:17-cv-03139 (LGS) (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

      Pending before the Court is a Letter Motion by non-party Forex Capital Markets, LLC ("FXCM") for an Order directing Plaintiffs to reimburse FXCM for the legal fees incurred in complying with Plaintiffs' subpoena for production of documents. (*See* FXCM 6/5/20 Ltr. Mot., ECF No. 424.) This Letter Motion was referred to me for decision by District Judge Schofield. (6/15/20 Am. Order of Ref., ECF No. 430.)[1]

      For the reasons set forth below, FXCM's Letter Motion is GRANTED IN PART and DENIED IN PART and Plaintiffs are directed to pay the sum of $17,500 to FXCM within fourteen (14) days.

**BACKGROUND**

      Plaintiffs, a group of ten individuals and a small business that purchased foreign exchange ("FX") instruments from retail foreign exchange dealers, filed this putative class action against certain banks and their affiliates seeking injunctive relief under the Sherman Antitrust Act, 15

---

[1] On December 5, 2019, Judge Schofield had referred to me two prior Letter Motions — *i.e.*, Plaintiffs' motion to compel FXCM to comply with their subpoena (Pls.' 11/12/19 Ltr. Mot., ECF No. 325) and a motion by Defendant HSBC North America Holdings, Inc. ("HSBC") to compel FXCM to comply with a related subpoena issued by HSBC (HSBC 11/19/19 Ltr. Mot., ECF No. 335). (*See* 12/5/19 Am. Order of Ref., ECF No. 352.) These two Letter Motions, which (as discussed below) have been rendered moot, also are part of the current referral. (*See* 6/15/20 Am. Order of Ref.)

U.S.C. § 1, *et seq.*, and damages under certain state antitrust and consumer protection laws. (*See* Third Am. Compl., ECF No. 304.)[2] Plaintiffs allege that they paid inflated prices for various financial instruments because of Defendants' alleged conspiracy to fix prices in the FX spot market. *See id*. FXCM, which is not a party to this case, is one of the retail foreign exchange dealers from which Plaintiffs purchased the FX instruments. (*See* Third Am. Compl. ¶ 181.)

On March 22, 2019, Plaintiffs served a subpoena upon FXCM for the production of documents seeking FX transaction-related documents and data. (*See* Pl. Subpoena, ECF No. 325-1.) Plaintiffs and FXCM met and conferred and agreed in principle to the scope of FXCM's production in response to Plaintiffs' subpoena. (*See* Pls.' 11/12/19 Ltr. Mot. at 1; FXCM Response to Pls.' 11/12/19 Letter Motion, ECF No. 342, at 2.) However, Plaintiffs and FXCM were unable to agree "on the extent of Plaintiffs' responsibility in reimbursing FXCM its costs of production and attorneys' fees resulting from FXCM's compliance with the subpoena." (FXCM Response to Pls.' 11/12/19 Letter Motion at 2.) FXCM refused to produce materials responsive to Plaintiffs' subpoena unless Plaintiffs paid FXCM the sum of $60,000, which represented FXCM's entire estimated production costs, in addition to $30,000 in legal fees, which represented three-quarters of FXCM's then-claimed legal fees. (Pls.' 11/12/19 Ltr. Mot. at 1.) Plaintiffs had offered to pay $30,000, representing one-half of FXCM's estimated production costs, in view of the fact that HSBC had served its own subpoena on FXCM seeking similar materials, but had refused to pay FXCM's legal fees. (*See id*. at 2 & n.2.)

On April 6, 2019, HSBC, on behalf of the Defendants in this case, served its own subpoena upon FXCM for the production of documents that sought much of the same FX transaction-

---

[2] *See also Contant v. Bank of Am. Corp.*, No. 17-CV-03139, 2018 WL 5292126, at *1 (S.D.N.Y. Oct. 25, 2018).

related documents and data. (*See* HSBC 11/19/19 Ltr. Mot. at 1; HSBC Subpoena, ECF No. 360.) HSBC and FXCM failed to reach agreement either as to the scope of HSBC's subpoena or FXCM's requested reimbursement from HSBC of the attorneys' fees and expenses incurred in complying with HSBC's subpoena. (*See* HSBC 11/19/19 Ltr. Mot. at 2-3; FXCM Response to HSBC 11/19/19 Ltr. Mot., ECF No. 343, at 2-3.)

On November 12, 2019, Plaintiffs filed a Letter Motion to compel FXCM to comply with their subpoena and on November 19, 2019, HSBC filed a Letter Motion to compel FXCM to comply with its subpoena. (*See* Pls.' 11/12/19 Ltr. Mot; HSBC 11/19/19 Ltr. Mot.) In response to the HSBC Letter Motion, FXCM noted that it had requested that Defendants "work out a cost sharing agreement with Plaintiffs' counsel in light of the fact that many of the documents that FXCM have agreed to produce are responsive to both subpoenas." (FXCM Response to HSBC 11/19/19 Ltr. Mot. at 2.)

On December 16, 2019, oral argument was held before me on the two then-pending Letter Motions. Following oral argument, I ordered the parties and FXCM to "meet and confer regarding the scope of data to be produced by FXCM in response to the parties' subpoenas," and to file no later than January 15, 2020 a joint letter regarding any remaining disputes as to the scope of the production by FXCM. (12/16/19 Order, ECF No. 367.) At the request of the parties, the deadline for submission of the joint letter was extended to February 5, 2020. (1/14/20 Order, ECF No. 379.) In a letter, dated February 5, 2020, FXCM advised the Court that the parties had reached agreement with FXCM regarding the scope of production by FXCM, that there were continuing discussions concerning the reimbursement of production costs and attorneys' fees incurred by FXCM in complying with the subpoenas, and that the parties were "optimistic" that

3

they would be able "to work out an appropriate apportionment on their own." (FXCM 2/5/20 Ltr., ECF No. 386.) At the parties request, the Court gave the parties until March 5, 2020 to report back to the Court regarding the resolution of the remaining issues. (2/5/20 Mem. End., ECF No. 387.)

In a letter, dated March 5, 2020, FXCM advised the Court that it had "furnished counsel for Plaintiffs and Defendants with copies of [its] partially-redacted legal invoices reflecting the amounts" to which FXCM believed it was entitled as reimbursement for complying with the subpoenas and that the parties "continued to meet and confer concerning an appropriate apportionment of fees and costs." (FXCM 3/5/20 Ltr., ECF No. 389, at 1-2.) FXCM further advised that, if the parties were unable to reach agreement, FXCM would seek judicial intervention in 30 days. (*See id*. at 2.)

In a letter, dated April 6, 2020, FXCM advised the Court that the parties had reached an agreement in principle regarding the costs of production and that FXCM had reached an agreement in principle with Defendants regarding reimbursement of FXCM's attorneys' fees,[3] but that FXCM "continued to discuss the issue of attorneys' fees with Plaintiffs' counsel." (FXCM 4/6/20 Ltr., ECF No. 408, at 1-2.) FXCM further advised that, if the parties are unable to reach an agreement, FXCM would seek judicial intervention in 30 days. (*See id*. at 2.)

In a letter, dated May 6, 2020, FXCM advised the Court that it was "continuing to discuss the issue of attorneys' fees with Plaintiffs' counsel, but have yet to come to an agreement on the amount Plaintiffs will reimburse FXCM for its fees in complying with the subpoena." (FXCM

---

[3] In this regard, the Court has been advised by FXCM's counsel that Defendants reimbursed FXCM $5,500 in attorneys' fees incurred in connection with the HSBC subpoena.

4

5/6/20 Ltr., ECF No. 412.) At the parties request, the Court gave the parties an additional 30 days to seek to resolve the remaining issues. (5/6/20 Mem. End., ECF No. 413.)

On June 5, 2020, FXCM filed the Letter Motion that is now before the Court. (*See* FXCM 6/5/20 Ltr. Mot.) In its Letter Motion, FXCM explains that it "was not required to produce any documents in response to the HSBC subpoena" and that such subpoena "has since been withdrawn."[4] (FXCM 6/5/20 Ltr. Mot. at 1.) FXCM also states that it "has reached an agreement with counsel for HSBC regarding Defendants' reimbursement of attorneys' fees in connection with the HSBC subpoena." (*Id*.)

FXCM states in its Letter Motion that, on May 20, 2020, FXCM produced documents responsive to Plaintiffs' subpoena.[5] (FXCM 6/5/20 Ltr. Mot. at 1.) In addition, Plaintiffs agreed to reimburse FXCM for $31,000 of FXCM's "internal costs incurred in retrieving the documents" responsive to Plaintiffs' subpoena.[6] (*Id*.) However, a dispute remains regarding amounts to be paid by Plaintiffs to FXCM to reimburse for the legal fees incurred in complying with Plaintiffs' subpoena. (*See id*. at 1-4) FXCM seeks $51,737 in legal fees (*id*. at 4), but Plaintiffs seek to pay only $6,750.[7] (Pls.' Response to FXCM 6/5/20 Ltr. Mot., ECF No. 428, at 1.)

---

[4] Since the HSBC subpoena has been withdrawn, the HSBC 11/19/19 Letter Motion to compel (ECF No. 335) is denied as moot.

[5] By reason of this production, and the prior agreement as to the scope of FXCM's production, Plaintiffs' 11/12/19 Letter Motion to compel (ECF No. 325) is denied as moot.

[6] The Court notes that the Defendants did not pay any of FXCM's internal costs in complying with Plaintiffs' subpoena. (*See* FXCM 6/16/20 Reply, ECF No. 432, at 3.)

[7] Although Plaintiffs' Letter Motion says they offered $6,700 in legal fees to FXCM, their March 26, 2020 letter to FXCM contains an offer of $6,750. (Pls.' Response to FXCM 6/5/20 Ltr. Mot., Ex. B, ECF No. 428-2, at 7.)

## LEGAL STANDARDS

Rule 45(d) of the Federal Rules of Civil Procedure provides, in relevant part, that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). In addition, Rule 45(d) authorizes a court to impose conditions to "ensure[] that the subpoenaed person will be reasonably compensated." Fed. R. Civ. P. 45(d)(3)(C)(ii). Cost-shifting "is particularly appropriate in the context of subpoenas, since Rule 45 directs courts to minimize the burden on non-parties." *US Bank Nat. Ass'n v. PHL Variable Ins. Co.*, No. 12-CV-06811 (CM) (JCF), 2012 WL 5395249, at *4 (S.D.N.Y. Nov. 5, 2012) (citations omitted). "The factors to be considered in determining whether cost-shifting is warranted include '(1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear the costs; and (3) whether the litigation is of public importance.'" *Id*. (citing *In re World Trade Center Disaster Site Litigation*, No. 21-MISC-00100, 2010 WL 3582921, at *1 (S.D.N.Y. Sep. 14, 2010)). However, the requesting party does not necessarily "bear the entire cost of compliance . . .. A non-party can be required to bear some or all of its expenses where the equities of a particular case demand it." *In re Law Firms of McCourts & McGrigor Donald*, No. 19-MISC-00096 (JSM), 2001 WL 345233, at *1 (S.D.N.Y. Apr. 9, 2001) (citations omitted).

Under Rule 45, "only reasonable expenses are compensable." *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.*, No. 09-CV-03855 (AYS), 2018 WL 1701944, at *4 (E.D.N.Y. Mar. 31, 2018) (citation omitted); *see also In re Aggrenox Antitrust Litig.*, No. 14-MD-02516, 2017 WL 4679228, at *2 (D. Conn. Oct. 18, 2017) ("A non-party who moves for costs and fees bears the burden of demonstrating that those costs and fees are reasonable.").

"The determination of . . . reasonableness is committed to the sound discretion of the trial court." *Sands Harbor Marina Corp.*, 2018 WL 1701944, at *4 (citation omitted). "[W]ith regard to professional expenses, federal appellate courts have outlined factors that the district judge should consider when setting a reasonable fee." *Id*. "For an attorney, '[t]he reasonable hourly rate is the rate a paying client would be willing to pay.'" *Id*. (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). "The 'lodestar' amount for attorneys' fees—what the Second Circuit has called the 'presumptively reasonable fee,' . . . 'is the product of reasonable hours times a reasonable rate.'" *In re Aggrenox Antitrust Litig.*, 2017 WL 4679228, at *7 (citations omitted). In calculating the reasonable number of hours expended "the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'" *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

In determining reasonable legal fees, "trial courts need not, and indeed should not, become green-eyeshade accountants," rather the goal "is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "Courts in this Circuit have recognized a district court's authority to make across-the-board percentage cuts in hours, as opposed to an item-by-item approach, to arrive at the reasonable hours expended." *Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 656-57 (S.D.N.Y. 2019).

## **DISCUSSION**

The Court, in its discretion, finds that, under the relevant factors, cost-shifting some of the reasonable legal fees incurred by FXCM in complying with Plaintiffs' subpoena is warranted. First, although the case will benefit FXCM's customers (*see* Pl. 11/12/19 Letter Motion at 3),

FXCM itself has no interest in the outcome of this case. (*See* FXCM Response to Pl. 11/12/19 Letter Motion at 3; FXCM 6/16/20 Reply. at 1-2 n.2.) Second, while FXCM can more readily bear the legal fees incurred in responding to Plaintiffs' subpoena than any single Plaintiff, the Plaintiffs collectively have the ability to bear at least some of FXCM's legal fees. Third, while this case has importance to retail FX purchasers, it does not have a larger public importance, as was the case, for example, in the *World Trade Center Disaster Site Litigation*.

With respect to the amount of FXCM's reasonable legal fees, the Court determines based upon its "own familiarity with the rates prevailing in the district," *see Farbotko v. Clinton Cty.*, 433 F.3d 204, 209 (2d Cir. 2005), that the hourly rates sought by FXCM are reasonable.[8] However, the Court finds that many of the hours for which FXCM seeks reimbursement were not reasonably incurred in connection with complying with Plaintiffs' subpoena.

Plaintiffs' counsel billed time in this matter from late March 2019 to June 2019 before coming to an agreement with Plaintiffs regarding the scope of production. (*See* Billing Records, ECF No. 424-2, at 3-29; FXCM 6/16/20 Reply at 1 ("an agreement as to the scope of Plaintiffs' subpoena was agreed to by counsel in June 2019").) Certain of the time billed during this period, for which FXCM seeks reimbursement, is not reasonably charged to Plaintiffs since such time was not spent in connection with subpoena compliance,[9] but rather was spent seeking to avoid compliance or seeking to obtain fees for FXCM. For example, FXCM's counsel billed over 15 hours

---

[8] The Court notes that Plaintiffs do not object to FXCM's hourly rates.

[9] Rule 45 contemplates reimbursement of expenses resulting from subpoena compliance. *See* Fed. R. Civ. P. 45(d)(2)(B)(ii) (court order compelling compliance "order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance"); *see also United States v. McGraw-Hill Companies*, Inc., 302 F.R.D. 532, 536 (C.D. Cal. 2014) ("The touchstone [for cost-shifting under Rule 45] is whether the expense 'result[s] from compliance' with the court's order compelling production.").

8

in late March and April 2019 preparing documents to be used in an effort to quash Plaintiffs' subpoena. (*See* Billing Records at 3, 6-12.) The fact that one of those documents, *i.e.*, the Evan Milazzo Declaration, later was morphed into a document provided to Plaintiffs in response to the subpoena,[10] does not make the time spent in preparation for challenging the subpoena reimbursable. In addition, in June 2019, FXCM's attorneys billed over three hours researching and analyzing case law regarding the recovery of attorneys' fees in responding to a third-party subpoena. Again, this was not time spent in connection with subpoena compliance.

After agreement was reached as to the scope of the subpoena, and after the Court held oral argument in December 2019 related to FXCM's efforts to recoup its legal fees, there are many time entries for FXCM's attorneys that relate to FXCM's attempt to collect those fees. (*See*, *e.g.*, Billing Records at 25, 28, 29, 51, 57, 59, 69, 72, 74.) The fees attributable to these time entries are not reimbursable under Rule 45. *See In re Am. Nurses Ass'n*, 643 F. App'x 310, 314 (4th Cir. 2016) ("attorney's fees incurred in pursuit of attorney's fees were not subject to shifting under Fed.R.Civ.P. 45(d)(2)(B)(ii)").

Similarly, other time billed throughout the course of this matter represented work done to further and protect FXCM's interests, rather than to comply with Plaintiffs' subpoena. (*See*, *e.g.*, Billing Records at 3 ("Confer with Alex Dick of FXCM re strategy going forward on antitrust subpoena"), 7 ("Confer with Alex Dick of FXCM re case strategy"), 17 ("Review and analysis of case law on the Graham Leach Blilely Act and review of emails to client re same"), 20 ("Analysis re strategy concerning when to send letter to plaintiffs' counsel concerning meet and confer and

---

[10] *See* Billing Records at 28 (Temkin 5/25/19 entry: "Review Evan Milazzo Declaration and adapt it for production to Plaintiffs"); *see also* FXCM 6/5/20 Ltr. Mot. at 3.

9

exemplar to ensure ongoing discussions"), 24 ("Telephone Alex Dick re negotiation strategy with plaintiffs and with defendants"), 43 ("Legal research into Judge Lorna G[.] Schofield decisions and Rule 45 subpoenas"), 61 ("Analysis and strategy re . . . risks of potential additional disclosure should court disapprove settlement").) The fees billed for these time entries do not "result[] from compliance" with Plaintiffs' subpoena and are not reimbursable. *See McGraw-Hill Companies, Inc.*, 302 F.R.D. at 536.

The categories above show that the hours for which FXCM seeks to be reimbursed are in excess of what is reasonable. Thus, the Court, in its discretion, finds that an across-the-board cut is justified. Having carefully reviewed the parties submissions, including FXCM's time records, and considering all the relevant factors, including the equities of this particular case, the Court finds, in its discretion, that $17,500 is a reasonable amount for Plaintiffs to pay to FXCM as reimbursement for attorneys' fees in complying with Plaintiffs' subpoena. In the Court's view, this amount, which represents about a 66% across-the-board reduction in the hours billed by FXCM's counsel, but which is almost three times more than what Plaintiffs offered to pay, achieves rough justice.

## CONCLUSION

For the foregoing reasons, FXCM's Letter Motion (ECF No. 424) is GRANTED IN PART and DENIED IN PART. Plaintiffs shall pay $17,500 to FXCM within fourteen (14) days of the date of this Opinion and Order.

The Letter Motions filed at ECF Nos. 325 and 335 are denied as moot.

**SO ORDERED.**

DATED:   New York, New York
         June 17, 2020

_____
STEWART D. AARON
United States Magistrate Judge