UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES CONTANT, *et al.*,<br><br>          *Plaintiffs*,<br>v.<br><br>BANK OF AMERICA<br>CORPORATION, *et al*.,<br><br>          *Defendants*. | No. 17-cv-3139-LGS<br><br>(related to No. 13-cv-7789-LGS) |

# DECLARATION OF JEANNE C. FINEGAN, APR CONCERNING CLASS MEMBER NOTIFICATION

## INTRODUCTION

1.      I am President and Chief Media Officer of HF Media, LLC ("HF Media"), a division of Heffler Claims Group LLC ("Heffler"). This Declaration is based upon my personal knowledge as well as information provided to me by my associates and staff, including information reasonably relied upon in the fields of advertising media and communications.

2.      Pursuant to the Order Preliminarily Approving Settlements and Certifying the Proposed Settlement Classes for Settlement Purposes, dated July 17, 2020 ("Order") and the Order Preliminary Approving Settlements, Preliminarily Certifying of the Settlement Classes, and Appointing Class Counsel Class Representatives and Settlement Class Counsel, dated July 29, 2019, Heffler was appointed Claims Administrator to develop and implement a legal notice and claims administration program as part of the proposed class action settlements.

3.      The purpose for this Declaration is to provide a final status update concerning the successful implementation of the notice program for these Settlements, which commenced on August 10, 2020, and completed on August 31, 2020, pursuant to the Court's Order. The Notice Program employed best-in-class tools and technology to reach approximately 95% of the Settlement Classes in eight states on average of 3.9 times, which exceeds our originally estimated

1

reach of 80-86%.  This is due in part, to the greater than anticipated number of mailing addresses that were not returned as undeliverable. As previously described, notice was accomplished through direct mail outreach, publication media notice through print, online display and social impressions with cross-device targeting on desktop and mobile, a press release, a settlement website and a toll-free number.

## QUALIFICATIONS

4.      A comprehensive description of my credentials and experience that qualify me to provide expert opinions on the adequacy of the class action notice program was previously filed with this Court on May 26, 2020. In summary, I have served as an expert directly responsible for the design and implementation of over 1,000 legal notice programs, some of which are the largest and most complex programs ever implemented in both the United States and Canada.

## NOTICE PROGRAM

5.      Heffler was engaged by Plaintiffs' Counsel, and appointed by the Court, to design and implement a notice program to reach members of the Settlement Classes in this matter and also engaged to handle other administrative duties for the implementation of certain aspects of the settlement agreements such as claims review and validation, calculation of awards based upon the approved Plan of Allocation, and distribution of funds to approved valid claims.

## CLASS DEFINITION

6.      Pursuant to Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3), for settlement purposes only, the Court preliminarily certified the following classes for settlement purposes (ECF 441 (¶11), ECF 297 (¶12)):

(i)     **New York Class:** All Persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in New York and/or while domiciled in New York, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the New York Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; and any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff. Also excluded from the New York Class are all indirect purchases of FX

Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

(ii) **Arizona Class**: All Persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in Arizona and/or while domiciled in Arizona, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the Arizona Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; and any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff. Also excluded from the Arizona Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

(iii) **California Class**: All Persons and entities who, during the Class Period indirectly purchased an FX Instrument from a Defendant or co-conspirator and were thereby injured in California by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the California Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; and any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff. Also excluded from the California Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

(iv) **Florida Class**: All Persons and entities who, during the Class Period indirectly purchased an FX Instrument from a Defendant or co-conspirator in Florida and/or while domiciled in Florida, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the Florida Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co- conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; and any judicial officer presiding over this

Action and the members of his/her immediate family and judicial staff. Also excluded from the Florida Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

(v) **Illinois Class**: All Persons and entities who, during the Class Period indirectly purchased an FX Instrument from a Defendant or co-conspirator in Illinois and/or while domiciled in Illinois, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the Illinois Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co- conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; and any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff. Also excluded from the Illinois Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

(vi) **Massachusetts Class**: All Persons and entities who, during the Class Period indirectly purchased an FX Instrument from a Defendant or co-conspirator in Massachusetts and/or while domiciled in Massachusetts, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the Massachusetts Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co- conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; and any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff. Also excluded from the Massachusetts Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

(vii) **Minnesota Class**: All Persons and entities who, during the Class Period indirectly purchased an FX Instrument from a Defendant or co-conspirator in Minnesota and/or while domiciled in Minnesota, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the Minnesota Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal

representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; and any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff. Also excluded from the Minnesota Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

(viii) **North Carolina Class**: All Persons and entities who, during the Class Period indirectly purchased an FX Instrument from a Defendant or co-conspirator and were thereby injured in North Carolina, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the North Carolina Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; and any judicial officer presiding over this Action and the members of his/her immediate family and judicial staff. Also excluded from the North Carolina Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

7.    The Class Periods for all Settlements commences on December 1, 2007. The end dates for the Class Periods are (1) December 15, 2015, for the Group Settlement; (2) July 29, 2019, for the Citigroup and MUFG Settlements; and (3) July 17, 2020, for the SC and SG Settlements.

## NOTICE PROGRAM

8.    I was informed by Plaintiffs' Counsel that they have name and address records for most of the members of the Settlement Classes. Based on Heffler's analysis and experience with direct notice programs and the availability of updating contact information for members of the Settlement Classes through advanced address search mechanisms, we believe that, over 91% of the Settlement Classes were reached through direct notice alone; however we took the extra step to provide additional supplemental notice via the media channels described below and were able to reach more than 95% of the members of the Settlement Classes.

9.      The proposed notice program included the following components:

- Direct notice was sent to all members of the Settlement Classes for whom Plaintiffs' Counsel had contact information via U.S. First Class Mail;

- Social media notice;

- A whitelist of online investment sites;

- Google Search terms;

- A press release;

- An informational website was established where notices and other important Court documents were posted; and

- A toll-free information line will be established by which Class Members can call 24/7 for more information about the Settlement, including, but not limited to, requesting copies of the Long Form Notice or Claim Form.

## **DIRECT NOTICE**

10.     The primary method for outreach in this matter was through direct mail. Heffler received contact information for a substantial majority of the members of the Settlement Classes including name, email, and physical mailing addresses, along with a large population of the classes' transactional purchase information of FX Instruments.

11.     Heffler's understanding from Plaintiffs' Counsel is that there are approximately 100,000 class members. In July 2020, Plaintiffs' Counsel provided nine data files containing a total of 98,159 customer records to provide direct notice. After performing de-duplication and prior to sending out the Direct Notice, Heffler utilized skip-tracing services to locate current contact information for 94,867 unique class members.

12.     On August 12, 2020, Heffler mailed 94,867 Postcard Notices. The Postcard Notice provided information on the Settlement and requested that Settlement Class Members register at the settlement website to be sent a Claim Form when the appropriate time came. As of September 25, 2020, Heffler had received 16,862 of the mailed postcards returned as undeliverable and 615 were returned with a forwarding address by the United States Postal Service (USPS). Heffler updated the addresses in our database and remailed the Notices with the forwarding address received from the USPS. Heffler has also conducted additional advanced address searches on the 16,862 returned as undeliverable and was able to remail 13,964 to a new more current address.  As of October 28, 2020, 809 of the 13,964 remailed notices have been returned without additional

forwarding information.  Accordingly, over 95% of the direct mail for class members was not returned as undeliverable.

13.     On August 12, 2020, Heffler also emailed 43,309 notices. Of these, 2,450 emails bounced and were not delivered.

14.     Additionally, at the request of Plaintiffs' Counsel, Heffler sent a reminder email on October 27, 2020 to those Settlement Class Members with an email address who had not yet registered.  Of the 39,788 emails sent, 2,920 bounced and were returned undeliverable.

## METHODOLOGY FOR PUBLICATION/INTERNET NOTICE

15.     To appropriately design and target the publication component of the notice program, described in detail below, Heffler's media team utilized a methodology accepted by the advertising industry and embraced by courts.

16.     Accordingly, we are guided by well-established principles of communication and utilize best-in-class nationally syndicated media research data provided by GfK Mediamark Research and Intelligence, LLC,[1] ("MRI") and online measurement currency comScore[2], among others, to provide media consumption habits and audience delivery verification of the potentially affected population. Based on this research, our cutting-edge approach to notice focuses on the quality of media exposure, engagement, and appropriate media environment. These data resources are used by advertising agencies nationwide as the basis to select the most appropriate media to reach specific target audiences[3]

17.     The resulting key findings are instrumental in our selection of media channels and outlets to determine the estimated net audience reached through this legal notice program. Specifically, this research identifies which media channels are favored by the target audience (*i.e.*,

---

[1] GfK MRI's *Survey of the American Consumer*® ("MRI") is the industry standard for magazine audience ratings in the U.S. and is used in the majority of media and marketing agencies in the country. MRI provides comprehensive reports on demographic, lifestyle, product usage and media exposure.
[2] comScore is a global Internet information provider on which leading companies and advertising agencies rely for consumer behavior insight and Internet usage data.
[3] *See* Finegan Declaration, [ECF 420-7] dated May 26, 2020, paragraphs 26-27. ("While our media research does not specifically report on those who own FX Instruments, the closest proxy target audience definition for the purpose of selecting media for this proposed notice program would be adults with investment transactions in the affected states. While this is a  broader group of individuals, known Settlement Class members demographic profiles are within this larger target audience.")

7

the Class Members). For example, browsing behaviors on the Internet, social media channels that are used, and which magazines Class Members are reading.

18.     For the program in the *Contant* case, Heffler employed the best-in-class tools and technology in order to appropriately target members of the Settlement Classes and appropriately measure and validate audience delivery.  The calculation of audience delivery used third-party validation of all media. By utilizing these media research tools, we can create target audience characteristics or segments, and then select the most appropriate media and communication methods to best reach them.

19.     This media research technology enables us to fuse data and accurately report to the Court the percentage of the target audience that will be reached by the notice component and how many times the target audience will have the opportunity to see the message. In advertising, this is commonly referred to as a "Reach and Frequency" analysis, where "Reach" refers to the estimated percentage of the unduplicated audience exposed to the campaign, and "Frequency" refers to how many times, on average, the target audience had the opportunity to see the message. The calculations are used by advertising and communications firms worldwide and have become a critical element to help provide the basis for determining adequacy of notice in class actions.

## ONLINE AND SOCIAL MEDIA NOTICE

20.     Based on the methodology for calculating target audience reach described above, through the combination of the Direct Mail and supplemental online and social media notice this program reached approximately 95 percent of the target audience on average, 3.9 times. This exceeded our original projections of 80-86 percent.

21.     Internet and social media advertising commenced on August 10, 2020 and concluded on August 31, 2020. All online advertisements were geographically targeted to users who live within the eight states for the members of the Settlement Classes. In total, more than 17,755,000 online, social and search impressions were served to targeted Settlement Class members.

22.     Online display banner ads were served across a whitelist[4] of over 130 contextually relevant, top investment websites, which included, among others: Morningstar, Investopedia, MarketWatch and Motley Fool.   Our proprietary whitelist of websites was developed from comScore's top ranked financial and investing websites and further refined by our team to reflect only sites that pass our in-advertisement, log, and site-level fraud security measures. This ensures that ads are served on quality websites. Example whitelist sites include, among others: Morningstar, Investopedia, MarketWatch and Motley Fool. To increase visibility, multiple sizes of the banner ads were employed: 300x250, 160x600, 300x600, and 728x90.

23.     On the social media channels Facebook and Instagram,  contact information (email addresses, phone numbers) for members of the Settlement Classes was matched to user profiles to create a custom audience of known members of the Settlement Classes. By using a matched list, social ads are served specifically to these individuals in their feeds and stories. Additionally, the outreach included a custom audience of users who have liked or followed investment pages such as *The Motley Fool, Investing.com, MarketWatch, Morningstar, Seeking Alpha, TheStreet, The Wall Street Journal, Yahoo Finance, Bloomberg, Financial Times* and others. Finally, the outreach retargeted users who visited the Settlement website, providing them with reminders to file a claim. A screenshot of the display banner ad, Facebook ad and Instagram ad are attached as **Exhibit A**.

24.     Importantly, the Banner ads provided information for visitors to self-identify as potential members of the Settlement Classes by clicking on the ad and link directly to the official website for more information and where they could file a claim, review frequently asked questions, and find important court deadlines and documents. Further, Heffler's media team ads included  the AdChoices icon, where available, as an additional layer of choice and privacy.

25.     The notice program employed Google search engine advertising. We targeted keywords and topics within the eight states for the members of the Settlement Classes related to the settlement including Bank of America settlement, Bank of America class action, BOA litigation, as well as stock and investment keywords. A full list of keywords is attached as **Exhibit B**.

---

[4] A whitelist is a custom list of acceptable websites where ad content may be served. Creating a whitelist helps to mitigate ad fraud, ensure ads will be served in relevant digital environments to the target audience, and helps to ensure that ads will not appear next to offensive or objectionable content.

## PRESS RELEASE AND MEDIA MONITORING

26.     On August 10, 2020, a press release was issued over PR Newswire's National Newsline with additional targeting to 1,777 influencers who cover finance. In total, 98 news mentions resulted from the press release. Attached as **Exhibit C** are copies of the press releases and pickup report.

## OFFICIAL SETTLEMENT WEBSITE AND REGISTRATIONS

27.     An informational website was established and is currently being maintained by Heffler at www.fxindirectantitrustsettlement.com. The website went live on August 8, 2020. The Settlement website served as the "landing page for the banner advertising," where members of the Settlement Classes could get information about the Settlements and submit a Registration Form, along with other information including information about the class action, Class Member rights, the Long Form Notice and Postcard Notice, attached hereto as **Exhibit D**, and related information, including the Settlement Agreements, Court Orders, and Plaintiffs' Motion for Approval of Fees, Expenses, and Class Representative Service Awards once it was filed with the Court. The website is available 24 hours a day and 7 days a week. It will be updated with current information and status as appropriate with direction from Counsel or the Court.

28.     As of October 27, 2020, the Settlement website has been visited by over 6,500 users and received over 15,400 page views.

## TOLL FREE INFORMATION LINE

29.     On August 10, 2020, Heffler established and maintained a 24-hour toll-free Interactive Voice Response ("IVR") telephone line, on which callers may obtain information about the Settlements. Heffler also has live operator support to answer questions during normal business hours. These operators were trained to answer questions on the settlement and help people with any questions on filing a claim.

## DEDICATED POST OFFICE BOX

30.     Heffler secured and monitored a dedicated post office box for all mail and written communications from members of the Settlement Classes. Mail was scanned and uploaded into Heffler's dedicated database for these Settlements for tracking. All written correspondence was monitored and responded to promptly.

## EXCLUSIONS

31.     The notice sent to members of the Settlement Classes advised them of their right to opt-out or exclude themselves from the Settlements. The process to validly exclude oneself from the Settlements was detailed in the long form notice and on the settlement website, which stated that to be valid, a Request for Exclusion must be postmarked by October 15, 2020 and mailed to the Settlement Administrator at Contant v. Bank of America Corp. Settlement, c/o Heffler Claims Group, PO Box 7907, Philadelphia, PA 19101-7907.

32.     All requests for exclusion must: (i) be in writing; (ii) be signed by the person holding the claim or his, her or its authorized representative; (iii) state the name, address, and phone number of the Person; (iv) include proof of membership in a Settlement Class; and (v) include a signed statement that "I/we hereby request I/we be excluded from the Settlements in Contant v. Bank of America Corp., No. 17-cv-3139-LGS." Members of the Settlement Classes were not able to validly opt-out via the telephone or email.

33.     As of October 27, 2020, Heffler has not received any valid opt outs or request for exclusion.

## CONCLUSION

34.     In my opinion, the outreach efforts described above reflect a particularly appropriate, highly targeted, and contemporary way to employ notice that reached approximately 95 percent of the Settlement Classes.  In my opinion, the efforts utilized in this notice program are of the highest modern communication standards to provide notice and are consistent with best practicable court-approved notice programs in similar matters and the Federal Judicial Center's guidelines concerning appropriate reach.

35.     I declare under the penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.


Executed on October 30, 2020 in Tigard, Oregon.



_Jeanne C Finegan_

Jeanne C. Finegan

# Exhibit A

*Facebook/Instagram*





# Exhibit B

KEYWORDS

| Ad group | Keyword |
|---|---|
| Contant v BofA | bank of america antitrust |
| Contant v BofA | Bank of America class action |
| Contant v BofA | Bank of America settlement |
| Contant v BofA | BOA settlement |
| Contant v BofA | currency exchange dealers near me |
| Contant v BofA | currency lawsuit |
| Contant v BofA | currency market |
| Contant v BofA | currency trading |
| Contant v BofA | financial investment |
| Contant v BofA | financial lawsuit |
| Contant v BofA | financial trader |
| Contant v BofA | foreign currency |
| Contant v BofA | foreign currency dealers |
| Contant v BofA | foreign currency exchange |
| Contant v BofA | foreign currency exchange rates |
| Contant v BofA | foreign currency rates |
| Contant v BofA | foreign currency settlement |
| Contant v BofA | foreign currency trading |
| Contant v BofA | foreign exchange |
| Contant v BofA | foreign exchange dealer |
| Contant v BofA | foreign exchange dealers near me |
| Contant v BofA | foreign exchange rates |
| Contant v BofA | foreign exchange trading |
| Contant v BofA | foreign money exchange |
| Contant v BofA | forex brokers |
| Contant v BofA | forex currency |
| Contant v BofA | forex currency trading |
| Contant v BofA | forex dealer |
| Contant v BofA | forex exchange |
| Contant v BofA | forex exchange rates |
| Contant v BofA | forex rates |
| Contant v BofA | forex rates today |
| Contant v BofA | forex settlement |
| Contant v BofA | forex trading |
| Contant v BofA | fx antitrust settlement |
| Contant v BofA | FX Indirect Antitrust settlement |
| Contant v BofA | fx trade settlement |
| Contant v BofA | fx trader |
| Contant v BofA | fxindirectantitrustsettlement com |
| Contant v BofA | international currency exchange |
| Contant v BofA | investment lawsuit |
| Contant v BofA | money exchange rates |
| Contant v BofA | online currency exchange |
| Contant v BofA | online currency trading |
| Contant v BofA | online forex trading |

# Exhibit C

# If You Purchased A Foreign Currency Instrument From Certain Individuals And Entities, A $23.63 Million Class Action Settlement May Affect You

NEWS PROVIDED BY
**Berger Montague PC →**
Aug 10, 2020, 09:17 ET

PHILADELPHIA, Aug. 10, 2020 /PRNewswire/ -- The following statement is being issued by Berger Montague PC regarding the *Contant v. Bank of America* settlement.

## What is this About?

This lawsuit alleges Citigroup, MUFG Bank, Standard Chartered, Société Générale, Bank of America, Barclays, BNP Paribas, Credit Suisse, Deutsche Bank, Goldman Sachs, HSBC, JPMorgan, Morgan Stanley, RBC, RBS, and UBS (the "Defendants") conspired to fix foreign currency ("FX") instrument prices, causing people to be overcharged when purchasing an FX Instrument from an individual or entity and that individual or entity transacted in an FX Instrument directly with a Defendant or one of Defendants' alleged co-conspirators. Defendants maintain that these claims lack merit. The settlements are not evidence of liability or wrongdoing. The Court has not decided who is right.

## Who's Included?

You are if: (1) you purchased an FX Instrument from an individual or entity from December 1, 2007 through **July 17, 2020**, and that individual or entity in turn transacted in an FX Instrument directly with a Defendant or alleged co conspirator; and (2) you lived in NY, AZ, CA, FL, IL, MA, MN, or NC at the time of the transaction.

**What do the Settlements provide?**

The $23,630,000 Settlement Fund, less court-approved fees and costs, will be distributed based on the greater of (1) a *pro rata* award based on transaction volume of FX Instrument purchases with a discount applied for purchases after December 31, 2013, or (2) a *de minimis* award.

See the Plan of Allocation at **FXIndirectAntitrustSettlement.com** for detailed payout information.

**How can I get payment?**

You can register to participate in the Settlement by submitting an online registration form at **FXIndirectAntitrustSettlement.com** or by submitting a claim form via mail or email. If the Settlements are granted final approval, you will receive a claim form in the mail or by email explaining the calculation of Settlement awards for eligible claimants. Claim forms will also be available on the settlement website. If you would like to register online to participate in the Settlement, you can do so now by visiting **FXIndirectAntitrustSettlement.com**, clicking "Register," and completing the registration form. You can also submit documents showing your FX Instrument purchases to the Settlement Administrator, Heffler Claims Group, to substantiate your claim. The deadline to file a claim will be 120 days after the Court grants final approval of the Settlements.

**What are my Rights?**

<u>**Do nothing**</u> - If you do nothing, you will get no settlement proceeds but will be legally bound by all Court judgments and you won't be able to sue, or continue to sue, Defendants for the same claims in this action.

<u>**Object**</u> - If you want to remain in the Settlements but wish to object to the Settlements or any aspect of them, you must submit your objection by **October 15, 2020**.

<u>**Exclude**</u> - If you want to maintain your right to sue the Defendants, you must exclude yourself from the Settlements by **October 15, 2020**. If you exclude yourself, you will not get a payment from these Settlements. If you do not exclude yourself, you will remain a member of a Settlement Class and your legal claims will be released even if you do not submit a claim.

**When will the Court decide?**

A Fairness Hearing will be held on **November 19, 2020** at **11:30 a.m.** at the Thurgood Marshall US Courthouse, 40 Foley Square, NY, NY 10007, in Courtroom 1106 to consider whether to approve the Settlements and fee application. You may, at your own expense, appear at the hearing, but you do not have to. Class Counsel will ask the Court to approve an award of attorneys' fees of up to 26.21% of the Settlement Fund, plus service awards for the class representatives and reimbursement of costs and expenses. The fee application will be available on the settlement website when filed.

***This is only a summary***. For more information, including Settlement Agreements and release of claims, instructions on filing a claim (when available), and details on how to exclude or object to the Settlements, visit **FXIndirectAntitrustSettlement.com** or call **1-844-245-3777**.

SOURCE Berger Montague PC

**Release Clear Time**    **Aug 10, 2020 9:17 AM ET**
*Total Pickup*      98
*Total Potential Audience*   95,293,518

| Outlet Name | Media Type | Source Type | Potential Audience | Format |
|---|---|---|---|---|
| Yahoo! Finance | Online | Online News Sites & Other Influencers | 42,215,793 | visitors/month |
| WRDE-TV CBS [Milton, DE] | Online | Broadcast Media | 31,219 | visitors/month |
| WRCB-TV NBC-3 [Chattanooga, TN] | Online | Broadcast Media | 655,465 | visitors/month |
| WRAL-TV CBS-5 [Raleigh, NC] | Online | Broadcast Media | 125,260 | visitors/month |
| Winslow, Evans & Crocker | Online | Online News Sites & Other Influencers | 971 | visitors/month |
| WICU-TV NBC-12 / WSEE-TV CBS-35 [Erie, PA] | Online | Broadcast Media | 350,064 | visitors/month |
| WFMZ-TV IND-69 [Allentown, PA] | Online | Broadcast Media | 1,088,987 | visitors/month |
| WFMJ-TV NBC-21 [Youngstown, OH] | Online | Broadcast Media | 547,732 | visitors/month |
| WENY-TV [Horseheads, NY] | Online | Broadcast Media | 177,967 | visitors/month |
| WBOC-TV CBS-16 [Salisbury, MD] | Online | Broadcast Media | 391,122 | visitors/month |
| Wapakoneta Daily News [Wapakoneta, OH] | Online | Newspaper | 422 | visitors/month |
| Value Investing News | Online | Financial News Service | 125,260 | visitors/month |
| Valley City Times-Record [Valley City, ND] | Online | Newspaper | 2,464 | visitors/month |
| Townhall Finance | Online | Financial News Service | 125,260 | visitors/month |
| Tioga Publishing | Online | Newspaper | 21,521 | visitors/month |
| The SPIRIT | Online | Newspaper | 1,986 | visitors/month |
| The Saline Courier [Benton, AR] | Online | Newspaper | 1,253 | visitors/month |
| The Punxsutawney Spirit [Punxsutawney, PA] | Online | Newspaper | 573 | visitors/month |
| The Progress News [Clearfield, PA] | Online | Newspaper | 17,295 | visitors/month |
| The Post and Mail [Columbia City, IN] | Online | Newspaper | 352 | visitors/month |
| The Pilot News [Plymouth, IN] | Online | Newspaper | 765 | visitors/month |
| The Observer News Enterprise [Newton, NC] | Online | Newspaper | 480 | visitors/month |
| The Newport Daily Express [Newport, VT] | Online | Newspaper | 586 | visitors/month |
| The Morning News [Blackfoot, ID] | Online | Newspaper | 1,124 | visitors/month |
| The Kane Republican [Kane, PA] | Online | Newspaper | 591 | visitors/month |
| The Evening Leader [St. Marys, OH] | Online | Newspaper | 620 | visitors/month |
| The Deer Park Tribune [Deer Park, WA] | Online | Newspaper | 538 | visitors/month |
| The Daily Press [St. Marys, PA] | Online | Newspaper | 6,526 | visitors/month |
| The Courier Express [DuBois, PA] | Online | Newspaper | 46,928 | visitors/month |
| The Chronicle Journal [Thunder Bay, ON] | Online | Newspaper | 1,300 | visitors/month |
| The Antlers American [Antlers, OK] | Online | Newspaper | 554 | visitors/month |
| Tamar Securities | Online | Online News Sites & Other Influencers | 125,260 | visitors/month |
| Sweetwater Reporter [Sweetwater, TX] | Online | Newspaper | 685 | visitors/month |
| Suncoast News Network [Sarasota, FL] | Online | Broadcast Media | 53,273 | visitors/month |
| StockHouse.com | Online | Trade Publications | 367,465 | visitors/month |
| Starkville Daily News [Starkville, MS] | Online | Newspaper | 797 | visitors/month |
| Spoke | Online | News & Information Service | 56,457 | visitors/month |
| Rockford Register Star [Rockford, IL] | Online | Newspaper | 125,260 | visitors/month |
| Ridgway Record [Ridgway, PA] | Online | Newspaper | 901 | visitors/month |
| PR Newswire | Online | PR Newswire | 6,569,762 | visitors/month |
| Poteau Daily News [Poteau, OK] | Online | Newspaper | 778 | visitors/month |
| Pittsburgh Post-Gazette [Pittsburgh, PA] | Online | Newspaper | 1,583 | visitors/month |
| Phoenix Reporter&Item | Online | Newspaper | 8,088 | visitors/month |
| One News Page Unites States Edition | Online | Online News Sites & Other Influencers | 3,565 | visitors/month |
| One News Page Global Edition | Online | Online News Sites & Other Influencers | 87,267 | visitors/month |
| Oldies 97.7 FM  [Lubbock, TX] | Online | Broadcast Media | 768 | visitors/month |
| Oklahoman [Oklahoma City, OK] | Online | Newspaper | 2,791 | visitors/month |
| NewsBlaze US | Online | Online News Sites & Other Influencers | 115,967 | visitors/month |
| myMotherLode.com [Sonora, CA] | Online | Newspaper | 2,560 | visitors/month |
| My Silly Little Gang | Online | Blog-Parental Influencers | 333 | visitors/month |
| Morningstar | Online | Financial Data, Research & Analytics | 2,795,798 | visitors/month |
| Minyanville | Online | Online News Sites & Other Influencers | 2,436 | visitors/month |
| Minster Community Post [Minster, OH] | Online | Newspaper | 997 | visitors/month |
| MarketWatch | Online | Financial News Service | 31,693,494 | visitors/month |
| Marietta Daily Journal [Marietta, GA] | Online | Newspaper | 398,911 | visitors/month |
| Manhattanweek | Online | Online News Sites & Other Influencers | 226 | visitors/month |
| Mammoth Times [Mammoth Lakes, CA] | Online | Newspaper | 477 | visitors/month |
| Malvern Daily Record [Malvern, AR] | Online | Newspaper | 521 | visitors/month |
| Mainline Media News | Online | Newspaper | 21,682 | visitors/month |
| Latin Business Today | Online | Online News Sites & Other Influencers | 2,380 | visitors/month |
| KXTQ-FM 106.5 Magic  [Lubbock, TX] | Online | Broadcast Media | 7,038 | visitors/month |
| KTVN-TV CBS-2 [Reno, NV] | Online | Broadcast Media | 358,182 | visitors/month |
| KTTU-FM 97.3 Double T  [Lubbock, TX] | Online | Broadcast Media | 1,493 | visitors/month |
| KMYL-TV MyLubbock-TV  [Lubbock, TX] | Online | Broadcast Media | 667 | visitors/month |

**Release Clear Time**          **Aug 10, 2020 9:17 AM ET**
*Total Pickup*              **98**
*Total Potential Audience*    **95,293,518**

| Outlet Name | Media Type | Source Type | Potential Audience | Format |
|---|---|---|---|---|
| KLZK-FM 107.7 YES FM  [Lubbock, TX] | Online | Broadcast Media | 2,259 | visitors/month |
| KLBB-FM 93.7 The Eagle  [Lubbock, TX] | Online | Broadcast Media | 1,596 | visitors/month |
| KJTV-TV FOX-34  [Lubbock, TX] | Online | Broadcast Media | 52,522 | visitors/month |
| Inyo Register [Bishop, CA] | Online | Newspaper | 637 | visitors/month |
| Invertir USA | Online | Online News Sites & Other Influencers | 75 | visitors/month |
| IBTimes | Online | Newspaper | 125,260 | visitors/month |
| Great American Financial Resources | Online | News & Information Service | 125,260 | visitors/month |
| Franklin Credit Management | Online | Online News Sites & Other Influencers | 125,260 | visitors/month |
| FinancialContent - PR Newswire | Online | Financial News Service | 125,260 | visitors/month |
| Fat Pitch Financials | Online | Online News Sites & Other Influencers | 1,306 | visitors/month |
| Dow Theory Letters | Online | Banking & Financial Institutions | 125,260 | visitors/month |
| Delaware County News Network | Online | Newspaper | 5,831 | visitors/month |
| Decatur Daily Democrat [Decatur, IN] | Online | Newspaper | 503 | visitors/month |
| Daily Times Leader [West Point, MS] | Online | Newspaper | 926 | visitors/month |
| Daily Penny Alerts | Online | Online News Sites & Other Influencers | 125,260 | visitors/month |
| Daily Local News | Online | Newspaper | 172,535 | visitors/month |
| Daily Herald [Chicago, IL] | Online | Newspaper | 20,382 | visitors/month |
| Daily American [Somerset, PA] | Online | Newspaper | 44,114 | visitors/month |
| Buffalo News [Buffalo, NY] | Online | Newspaper | 2,592 | visitors/month |
| Bucks Local News | Online | Newspaper | 20,121 | visitors/month |
| Bradford Era | Online | Newspaper | 32,314 | visitors/month |
| Borger News Herald [Borger, TX] | Online | Newspaper | 864 | visitors/month |
| Big Spring Herald [Big Spring, TX] | Online | Newspaper | 750 | visitors/month |
| Benzinga | Online | Online News Sites & Other Influencers | 3,818,785 | visitors/month |
| Benefit Plans Administrative Services | Online | Online News Sites & Other Influencers | 125,260 | visitors/month |
| Barchart.com | Online | News & Information Service | 1,230,891 | visitors/month |
| Axcess News | Online | Online News Sites & Other Influencers | 760 | visitors/month |
| Ask.com | Online | Online News Sites & Other Influencers | 4,390 | visitors/month |
| Ascensus | Online | Online News Sites & Other Influencers | 125,260 | visitors/month |
| ArlingtonWatches | Online | Online News Sites & Other Influencers | 1,067 | visitors/month |
| 96.9-FM The Bull [Lubbock, TX] | Online | Broadcast Media | 1,049 | visitors/month |
| 1stCounsel | Online | Online News Sites & Other Influencers | 63 | visitors/month |
| 1st Discount Brokerage | Online | Financial News Service | 125,260 | visitors/month |
| 100.7-FM The Score [Lubbock, TX] | Online | Broadcast Media | 1,006 | visitors/month |

Exhibit D

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

# If you purchased a foreign currency instrument from certain individuals or entities, a $23,630,000 class action settlement may affect you.

*A federal court directed this Notice. This is not a solicitation from a lawyer.*

- There is a class action lawsuit *Contant, et al v. Bank of America Corp., et al*, No. 17-cv-3139-LGS pending in the United States District Court for the Southern District of New York ("Action" or "Lawsuit"). The Court has granted preliminary approval of cash settlements totaling $23.63 million with Defendants Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc. (collectively, "Citigroup"); MUFG Bank, Ltd. (formerly known as The Bank of Tokyo-Mitsubishi UFJ, Ltd.) ("MUFG Bank"); Standard Chartered Bank ("SC"), Société Générale ("SG"); Bank of America Corporation, Bank of America, N.A., and Merrill Lynch, Pierce, Fenner & Smith Inc. ("Bank of America"); Barclays Bank PLC and Barclays Capital Inc. ("Barclays"); BNP Paribas (identified in the Complaint as BNP Paribas Group), BNP Paribas US Wholesale Holdings Corp., previously known as BNP Paribas North America, Inc., and BNP Paribas Securities Corp., which now includes BNP Paribas Prime Brokerage, Inc. ("BNP Paribas"); Credit Suisse AG and Credit Suisse Securities (USA) LLC ("Credit Suisse"); Deutsche Bank AG ("Deutsche Bank"); The Goldman Sachs Group, Inc. and Goldman, Sachs & Co. (now known as Goldman Sachs & Co. LLC) ("Goldman Sachs"); HSBC Bank PLC, HSBC North America Holdings Inc., HSBC Bank USA, N.A., and HSBC Securities (USA) Inc. ("HSBC"); JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. ("JPMorgan"); Morgan Stanley, Morgan Stanley & Co. LLC, and Morgan Stanley & Co. International plc ("Morgan Stanley"); RBC Capital Markets, LLC ("RBC"); The Royal Bank of Scotland PLC (now known as NatWest Markets PLC) and RBS Securities Inc. (now known as NatWest Markets Securities Inc.) ("RBS"); UBS AG, UBS Group AG, and UBS Securities LLC ("UBS") (collectively, ("Settling Defendants"). Citigroup has agreed to pay $9,950,000 ("Citigroup Settlement"); MUFG Bank has agreed to pay $985,000 ("MUFG Bank Settlement"); SC has agreed to pay $1,720,000 ("SC Settlement"). SG has agreed to pay $975,000 ("SG Settlement"); and the remaining twelve Defendant groups have agreed to pay $10,000,000 ("Group Settlement") for a total of $23,630,000, to resolve and release all claims that were alleged or could have been alleged against them in the Action. Collectively, the Citigroup, MUFG Bank, SC, SG, and Group Settlements are referred to as the "Settlements."

- The Lawsuit alleges that Defendants conspired to fix the prices of foreign currency ("FX") instruments causing settlement class members to be overcharged when directly purchasing from or directly selling to a retail foreign exchange dealer ("RFED") an FX instrument, where that RFED transacted in an FX instrument directly with a Defendant. Defendants believe that Class Plaintiffs' claims lack merit, and that those claims would have been rejected prior to trial, at trial, or on appeal.

- For those people and entities who purchased from or sold to an RFED an FX Instrument, as applicable, in or while residing in New York, Arizona, California, Florida, Illinois, Massachusetts, Minnesota, or North Carolina, and that RFED transacted in an FX instrument with a Defendant during the period December 1, 2007 through July 17, 2020, the Settlements create separate Settlement Classes for each of those states. If you fall into one of the State Settlement Classes, you are a Settlement Class Member.

- The Settlements offer cash payments to members of the Settlement Classes who file valid timely Claims.

- This Notice has important information. It explains the Settlements in this class action lawsuit. It also explains your rights and options in this case.

**<u>Legal Rights and Options</u>**

**<u>Your legal rights and options are described in this section. You may:</u>**

**File a Claim**: This is the only way to get money from the Settlements. You must timely file a valid claim. See Question 8 for more information.

**Exclude Yourself**: You may request to be excluded from the Settlement Classes. This is the only way you can be part of another lawsuit that asks for money for claims in this case against the Settling Defendants. You will *not* get a payment from these Settlements. You must mail your exclusion request by October 15, 2020. See Question 10 for more information.

**Object**: If you do not agree with any part of the Settlements or you do not agree with the requested award of attorneys' fees, expenses and/or service awards, you may write to the Court to say why and mail your objection by October 15, 2020. See Question 14 for more information. You may also request to speak at the Court hearing about either the fairness of these Settlements or about the requested attorneys' fees and expenses. See Question 20 for more information.

**Do Nothing:** You will not get money. You give up your rights to sue for relief about the claims in this Lawsuit. See Question 21 for more information.

BASIC INFORMATION ................................................................................................................ 4

    1.    Purpose of this Notice? ............................................................................................. 4

    2.    What is this Lawsuit about? ....................................................................................... 4

    3.    Why is this Lawsuit a class action? .......................................................................... 5

    4.    Why are there Settlements? ...................................................................................... 5

    5.    Am I part of these Settlements? ............................................................................... 5

SETTLEMENT BENEFITS ........................................................................................................... 8

    6.    What do these Settlements Provide? ........................................................................ 8

    7.    How do I ask for money from these Settlements? .................................................... 8

HOW TO FILE A CLAIM ............................................................................................................ 8

    8.    How do I file a claim? .............................................................................................. 8

    9.    Am I giving up anything by filing a claim or not filing a claim? ............................ 9

    10.    How do I exclude myself from the Settlement Classes? ........................................ 11

    11.    If I don't exclude myself, can I sue Settling Defendants and the Other Released Parties for the same thing later? .............................................................................. 11

    12.    If I exclude myself from these Settlements, can I get money from the Settlements? ....... 11

    13.    If I exclude myself from these Settlements, can I still object? ............................... 11

OBJECTING TO THE SETTLEMENTS .......................................................................................... 11

    14.    How do I tell the Court if I don't like the Settlements? ......................................... 11

    15.    What is the difference between objecting and excluding? ...................................... 13

THE LAWYERS REPRESENTING YOU ........................................................................................ 13

    16.    Do I have a lawyer in this Lawsuit? ....................................................................... 13

    17.    How will the lawyers be paid? ............................................................................... 13

THE COURT'S FAIRNESS HEARING ........................................................................................... 13

    18.    When and where will the Court decide whether to approve these Settlements? ............. 13

    19.    Do I have to come to the Fairness Hearing to get my money? .............................. 14

    20.    What if I want to speak at the Fariness Hearing? .................................................. 14

IF YOU DO NOTHING .............................................................................................................. 14

    21.    What happens if I do nothing? ................................................................................ 14

GETTING MORE INFORMATION ............................................................................................... 14

    22.    How do I get more information? ............................................................................. 14

# BASIC INFORMATION

## 1. Purpose of this Notice?

This notice explains the proposed Settlements in a class action which is called *Contant, et al v. Bank of America Corp., et al*, No. 17-cv-3139-LGS, and members of the Settlement Classes legal rights and options to participate in it, or not, before the Court decides whether to give final approval of the Settlements. This Notice explains the Lawsuit, the proposed Settlements, your legal rights, the benefits available, eligibility for those benefits, and how to get them. The Honorable Lorna G. Schofield of the U.S. District Court for the Southern District of New York is overseeing this Lawsuit.

The persons or entities who started this case are called the "Plaintiffs." The Plaintiffs are James Contant, Sandra Lavender, Victor Hernandez, Martin-Han Tran, FX Primus Ltd., Carlos Gonzalez, Ugnius Matkus, Charles G. Hitchcock III, Jerry Jacobson, Tina Porter, and Paul Vermillion.

The companies they sued and settled with are the "Defendants." Defendants are Citigroup, MUFG Bank, SC, SG, Bank of America, Barclays, BNP Paribas, Credit Suisse, Deutsche Bank, Goldman Sachs, HSBC, JPMorgan, Morgan Stanley, RBC, RBS, and UBS.

## 2. What is this Lawsuit about?

Generally, Plaintiffs allege that Defendants fixed the prices of foreign currency instruments ("FX Instruments") in violation of the following state laws: Arizona Revised Statutes, §§ 44-1401, *et seq.* (the Arizona Antitrust Act); California Business and Professions Code, § 16700, *et seq.* (the California Cartwright Act); California Business and Professions Code § 17200, *et seq.* (California's Unfair Competition Law); Fla. Stat. § 501.201, *et seq.* (the Florida Deceptive and Unfair Trade Practices Act); 740 Ill. Comp. Stat. 10/1, *et seq.* (the Illinois Antitrust Act); Mass. Gen. Laws ch. 93A, §1 *et seq.* (the Massachusetts Consumer Protection Law); Minn. Stat. §§ 325D.49 to 325D.66 (the Minnesota Antitrust Law of 1971); New York General Business Laws § 340, *et seq.* (the New York Donnelly Act); and N.C. Gen. Stat. § 75-1, *et seq.* (the North Carolina Unfair Trade Practice Act). FX Instruments are any FX spot transaction, forward, swap, future, option, or any other FX transaction or instrument the trading or settlement value of which is related to FX rates.

Plaintiffs claim that beginning on or around December 1, 2007, Defendants conspired to fix prices in the FX market on a daily basis. Plaintiffs allege that Defendants' conspiracy involved, among other things: (1) the fixing of FX bid-ask spreads; and (2) the fixing of benchmark FX rates, including, but not limited to, the WM/Reuters Fixes and the ECB Fixes. Plaintiffs further allege that Defendants: (1) created and participated in chat rooms and other forms of electronic communication; (2) shared confidential client and proprietary trading information with other Defendants involved in the conspiracy; (3) coordinated trades with other Defendants in order to illegally manipulate FX benchmark rates and spot rates; (4) monitored the trades placed by traders employed by co-conspirator Defendants in order to ensure compliance with the conspiracy; and (5) used code names, code words, and deliberate misspellings in efforts to evade detection. As a result of the alleged conspiracy, Plaintiffs allege that they and the members of the proposed Settlement Classes were injured in the form of overcharges on FX Instruments directly purchased from or sold to an RFED where that RFED purchased from or sold the FX instrument to one or more Settling Defendants or co-conspirators during the litigation Class Period December 1, 2007 through December 31, 2013. The cumulative Class Period for all Settlements is December 1, 2007 through July 17, 2020. Settling Defendants deny the allegations made against them.

You may obtain more information regarding the specific allegations of the Action by reviewing the Second Consolidated Class Action Complaint ("SCCAC"), which is available at www.FXIndirectAntitrustSettlement.com.

### 3.  Why is this Lawsuit a class action?

In a class action, the Plaintiffs (or Class Plaintiffs) sue not only for themselves, but also on behalf of other people or businesses with similar legal claims and interests. Together all of these people or businesses with similar claims and interests form classes, and are class members.

When a court decides a case or approves a settlement, it is applicable to all members of the classes (except class members who exclude themselves). In this case, the Court has preliminary approved the settlement and the classes defined below in Question 5, and approved this Notice.

### 4.  Why are there Settlements?

Class Plaintiffs and Class Counsel believe that the members of the Settlement Classes have been damaged by Defendants' conduct, as described in the SCCAC. Defendants believe that Class Plaintiffs' claims lack merit, and that those claims would have been rejected prior to trial, at trial, or on appeal. Nothing in the Settlements constitutes an admission as to the merits of the allegations made in the Action as to the Defendants or the validity of any defenses that could be asserted by Defendants. The Settlements are not evidence of any liability or wrongdoing by the Defendants.

The Court has not decided on the merits in favor of Class Plaintiffs or Defendants. However, on May 20, 2019 the Court granted a motion to dismiss for lack of personal jurisdiction filed by MUFG Bank and SG, and dismissed MUFG Bank and SG from the Lawsuit. The Settlements allow both sides to avoid the costs and risks of lengthy litigation, trial and any appeals. The Settlements allow members of the Settlement Classes who submit valid claims to receive some compensation, rather than risk ultimately receiving nothing. Class Counsel and Class Plaintiffs believe that the Settlements are in the best interests of all members of the Settlement Classes.

If the Settlements are approved, Plaintiffs and the Settlement Classes will dismiss and release their claims against Defendants.

### 5.  Am I part of these Settlements?

In the Court's Preliminary Approval Order, dated July 17, 2020, the Court defined the following statewide Settlement Classes:

**New York Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in New York and/or while domiciled in New York, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the New York Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the New York Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

**Arizona Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in Arizona and/or while domiciled in Arizona, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the Arizona Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the Arizona Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser

were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

**California Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator and were thereby injured in California by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the California Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the California Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

**Florida Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in Florida and/or while domiciled in Florida, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the Florida Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the Florida Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

**Illinois Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in Illinois and/or while domiciled in Illinois, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the Illinois Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the Illinois Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

**Massachusetts Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in Massachusetts and/or while domiciled in Massachusetts, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the Massachusetts Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the Massachusetts Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

**Minnesota Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator in Minnesota and/or while domiciled in Minnesota, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the Minnesota Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the Minnesota Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

**North Carolina Class:** All persons and entities who, during the Class Period, indirectly purchased an FX Instrument from a Defendant or co-conspirator and were thereby injured in North Carolina, by entering into an FX Instrument with a member of the Direct Settlement Class, where the Direct Settlement Class Member entered into the FX Instrument directly with a Defendant or co-conspirator. Excluded from the North Carolina Class are Defendants and their co-conspirators; the officers, directors, and employees of any Defendant or co-conspirator; any entity in which any Defendant or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator; federal, state, and municipal government entities and agencies; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; and any juror assigned to this action. Also excluded from the North Carolina Class are all indirect purchases of FX Instruments where the direct purchaser and indirect purchaser were operating outside of the U.S. at the time the direct purchase was made and the purchase was made with the foreign desk of a Defendant.

The "Class Period" is the period of December 1, 2007, through December 15, 2015, for purposes of the Group Settlement; December 1, 2007, through July 29, 2019, for purposes of the Citigroup and MUFG Bank Settlements; and December 1, 2007, through July 17, 2020 for purposes of the SC and SG Settlements.

The "Direct Settlement Class" is:

> All Persons who, between January 1, 2003 and December 15, 2015, entered into an FX Instrument directly with a Defendant, a direct or indirect parent, subsidiary, or division of a Defendant, a Released Defendant Party, or co-conspirator where such Persons were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted FX Instruments in the United States or its territories. Specifically excluded from the Direct Settlement Class are Defendants; Released Defendant Parties; co-conspirators; the officers, directors, or employees of any Defendant, Released Defendant Party, or co-conspirator; any entity in which any Defendant, Released Defendant Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released Defendant Party, or co-conspirator and any person acting on their behalf; provided, however, that Investment Vehicles shall not be excluded from the definition of the Direct Settlement Class. Also excluded from the Direct Settlement Class are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this Action.

If you are not sure whether you are part of these Settlements, contact the Settlement Administrator at:

> Call the toll-free number, 1-844-245-3777.
> Visit www.FXIndirectAntitrustSettlement.com
> Write to: *Contant v. Bank of America Corp. Settlement,* Heffler Claims Group, PO Box 7907, Philadelphia, PA 19101-7907
> Email: info@FXIndirectAntitrustSettlement.com.

# SETTLEMENT BENEFITS

### 6.  What do these Settlements Provide?

Settling Defendants have collectively paid $23,630,000 of Settlements into a fund (the "Settlement Fund") to be held for disbursement to the members of the Settlement Classes, if the Court grants final approval of the Settlement Agreements. The Settlement Fund, plus interest earned from the date it was established, less the costs of settlement administration and notice, applicable taxes on the settlement fund, attorneys' fees and expenses, and service awards for the class representatives, all as approved by the Court (the "Net-Settlement Fund") will be divided among the members of the Settlement Classes, who send in valid Claim Forms by [120 DAYS AFTER ORDER GRANTING FINAL APPROVAL] ("Authorized Claimants") according to the Plan of Allocation.

### 7.  How do I ask for money from these Settlements?

You must file a valid and timely claim to get money from the Settlements. If the Court finally approves the Settlement, you are a member of one or more of the Settlement Classes and you do not exclude yourself from the Settlement Classes, you will receive a Claim Form in the mail or by email. You may also get a Claim Form by visiting www.FXIndirectAntitrustSettlement.com or by contacting the Settlement Administrator toll-free number: 1-844-245-3777.

### How much money will I get?

At this time, it is not known precisely how much each member of the Settlement Classes will receive from the Net Settlement Fund or when payments will be made. The amount of your payment, if any, will be determined by the Plan of Allocation. The Settlement Administrator will first determine the Settlement Class Member's eligible transaction volume on FX Instruments. The Plan of Allocation includes two claim amount options: a "Pro Rata Award" and a "De Minimis Award." For the **Pro Rata Award**, award calculations are based on a model that will estimate the Class Member's claim relative to the claims of the other Class Members. The Pro Rata Award model will apply a uniform overcharge percentage rate across all currency pairs to a Class Member's eligible FX instrument transactions. The overcharge rate is then weighted based on the currency pair's trading liquidity to generate the amount of each Claimant's potential claim. There are four categories of weightings: 1) most liquid; 2) liquid; 3) illiquid; and 4) pegged. Currency pairs in the most liquid category will have the lowest weightings while illiquid pairs will have the highest weightings to reflect that the illiquid currency pairs have larger spreads. The Net Settlement Fund will be distributed to all Authorized Claimants that qualify for the Pro Rata Award on a *pro rata* basis. Specifically, the Pro Rata Award distribution of the Net Settlement Fund will be based on the percentage of each Authorized Claimant's allowed claim as compared to the sum of all valid, allowed claims that are filed. A discount of 90% will be applied for FX instruments purchased or sold after December 31, 2013. Eligible Class Members whose Pro Rata Award would otherwise fall under a certain threshold—and Class Members who provide documentation sufficient to demonstrate that they transacted FX Instruments with an RFED during the Class Period but do not have transactional data sufficient for the Claims Administrator to calculate a *pro rata* award—are eligible to receive a **De Minimis Award** in a fixed amount to be determined pursuant to the Plan Allocation. The complete Plan of Allocation is available on the settlement website, www.FXIndirectAntitrustSettlement.com. No monies will revert to Settling Defendants if the Settlements are granted final approval.

# HOW TO FILE A CLAIM

### 8.  How do I file a claim?

If the Court approves the Settlements (see "The Court's Fairness Hearing" below), the Court will approve a Claim Form and set a deadline for members of the Settlement Classes to submit claims. In order to receive a payment, you must submit a Claim Form. A Claim Form will be mailed or emailed to you automatically. The Claim Form will also be posted on the website and available by calling the toll-free number shown

below. Members of the Settlement Classes will be able to submit claims electronically using this website or by email or by returning a paper Claim Form.

Read the instructions carefully. The Claim Form will provide two options for submitting your claim. Option 1 is the Estimated Claim Option. Under Option 1, the Settlement Administrator will estimate your eligible transaction volume using data received from RFEDs. If you select Option 1 and the Settlement Administrator does not have data for your transactions sufficient to calculate a Pro Rata Award, you will be eligible to receive a De Minimis Award. Option 2 is the Document Claim Option. Under Option 2, you will submit data and documentation of your eligible transactions using the electronic data template available on the settlement website, and the Settlement Administrator will review it. For more details on these two options, you can review the Plan of Allocation available at www.FXIndirectAntitrustSettlement.com or by contacting the Settlement Administrator at 1-844-245-3777.

Once the Settlement Administrator receives your timely-filed Claim Form, the Settlement Administrator will estimate your volume and eligible participation amount for the relevant time period and will provide you with an explanation of how the estimate was determined (e.g., analysis of your documentation, analysis of RFED transaction data, extrapolation from documentation or RFED's transaction data, or any combination thereof). As provided in the Plan of Allocation, if your eligible participation amount falls below a certain threshold, you will be eligible to receive a De Minimis Award.

**Please keep all documentation related to your transactions in FX Instruments during the period December 1, 2007 to July 17, 2020 for using in filing your Claim Form. Having documentation may be important to filing and substantiating a successful claim.**

Some companies may offer to help you file your Claim Form in exchange for a portion of your recovery from the Settlements. While you may choose to use such companies, you should know that you can file with the Settlement Administrator on your own, free of charge. Additionally, you are entitled to contact the Settlement Administrator or Class Counsel for assistance with understanding and filing your Claim Form – again, at no cost to you.

### 9. Am I giving up anything by filing a claim or not filing a claim?

If you are a member of any of the Settlement Classes and do not exclude yourself, you can't sue, continue to sue, or be part of any other lawsuit related to the conduct and legal issues alleged in the SCCAC against any of the Defendants or Released Parties, even if you do not file a Claim Form. More specifically, staying in the Settlement Classes means you have agreed to be bound by the Settlement Agreements and all of their terms including the release of claims contained therein. The Settlement Agreements are available on the settlement website, www.FXIndirectAntitrustSettlement.com. The claims released in these settlements are described below.

The "Released Claims" for purposes of the Citigroup, MUFG Bank, SC, and SG Settlements means any and all manner of claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, arising from or relating in any way to any conduct alleged or that could have been alleged in and arising from the factual predicate of the Action, or any amended complaint or pleading therein, from the beginning of time until the Effective Date, which shall be deemed to include but not be limited to all claims relating to: (i) communications related to FX Instruments, FX Trading, or FX Benchmark Rates, between a Released Party and any other FX dealer or any other participant in the conspiracy alleged in the Action through chat rooms, instant messages, email, or other means; (ii) agreements, arrangements, or understandings related to FX Instruments, FX Trading, or FX Benchmark Rates, between a Released Party and any other FX dealer or any other participant in the conspiracy alleged in the Action through chat rooms, instant messages, email, or other means; (iii) the sharing or exchange of customer information between a Released Party and any

other FX dealer or any other participant in the conspiracy alleged in the Action—including but not limited to customer identity, trading patterns, transactions, net positions or orders, stop losses or barrier options, pricing, or spreads related to FX Instruments, FX Trading, or FX Benchmark Rates; (iv) the establishment, calculation, manipulation, or use of the WM/Reuters fixing rates, including the 4:00 p.m. London closing spot rates, and trading that may impact such rates; (v) the establishment, calculation, manipulation, or use of the European Central Bank FX reference rates, including the ECB rate set at 1:15 p.m. London time; (vi) the establishment, calculation, manipulation, or use of the CME daily settlement rates; (vii) the establishment, calculation, or use of any other FX benchmarks, including benchmark fixing rates, benchmark settlement rates, or benchmark reference rates; (viii) the establishment, calculation, communication, manipulation, or use of the price, spread, or rate of any FX Instrument; and (ix) the exchange of customer information or confidential information in the possession of Settling Defendants.

The "Released Claims" for purposes of the Group Settlement means any and all manner of claims, including Unknown Claims as defined below, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, choate or inchoate, which Class Plaintiffs and the Settlement Classes ever had, now have, or hereafter can, shall, or may have, individually, representatively, derivatively, or in any capacity against the Released Parties that arise from or relate to a factual predicate of the Action, including any conduct alleged or that could have been alleged in any amended complaint or pleading therein, from the beginning of time through the Effective Date.

With respect all Released Claims, upon the Effective Date, members of the Settlement Classes shall have expressly waived the provisions, rights, and benefits of Cal. Civ. Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Settlement Class members shall have also waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542.

"Released Party" or "Released Parties" means Defendants along with Credit Suisse Group AG, Deutsche Bank Securities Inc., and each of their past, present, and future, direct and indirect parents (including holding companies), subsidiaries, affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), divisions, predecessors, successors, and each of their respective officers, directors, employees, agents, attorneys, legal or other representatives, trustees, heirs, executors, administrators, advisors, and assigns.

**The Scope and Effect of the Release**: Upon the Effective Date of the Settlements, Settlement Class members who do not exclude themselves from the Settlements: (1) shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal, shall have, fully, finally, and forever waived, released, relinquished, and discharged (a) all Released Claims against the Released Parties, regardless of whether such Releasing Party executes and delivers a proof of claim and release from, and (b) any rights to the protections afforded under California Civil Code § 1542 and/or any other similar, comparable, or equivalent laws; (2) shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties; and (3) agrees and covenants not to sue any of the Released Parties on the basis

of any Released Claims or to assist any third party in commencing or maintaining any suit against any Released Party related in any way to any Released Claims.

### 10.  How do I exclude myself from the Settlement Classes?

If you are a member of one of the Settlement Classes, do not want to remain in that Settlement Class, and do not want a payment from the Settlements, then you must take steps to exclude yourself from the Settlements. This is sometimes referred to as "opting out" of a class. The Court will exclude from the Settlements all Settlement Class Members who submit valid and timely requests for exclusion.

If you exclude yourself, you will not be able to receive any payments from these Settlements. However, this is the only way you will retain your rights to sue the Defendants and the Released Parties on your own based on the claims asserted in this Action.

You cannot exclude yourself by telephone or email. You must do so in writing. To be valid, your Request for Exclusion must be postmarked by October 15, 2020 and be mailed to the Settlement Administrator: *Contant v. Bank of America Corp. Settlement*, c/o Heffler Claims Group, PO Box 7907, Philadelphia, PA 19101-7907.

Your request for exclusion must: (i) be in writing; (ii) be signed by the person holding the claim or his, her or its authorized representative; (iii) state the name, address, and phone number of the Person; (iv) include proof of membership in a Settlement Class; and (v) include a signed statement that "I/we hereby request I/we be excluded from the Settlements in *Contant v. Bank of America Corp.*, No. 17-cv-3139-LGS."

### 11.  If I don't exclude myself, can I sue Settling Defendants and the Other Released Parties for the same thing later?

No. Unless you exclude yourself, you give up any right to sue Defendants and the Released Parties for the claims that the Settlements resolve. If you decide to exclude yourself, your decision will apply only to Defendants and the other Released parties.

### 12.  If I exclude myself from these Settlements, can I get money from the Settlements?

No. You will not get any money from the Settlements if you exclude yourself.

### 13.  If I exclude myself from these Settlements, can I still object?

No. If you exclude yourself, you are no longer a member of a Settlement Class and may not object to any aspect of the Settlements.

## OBJECTING TO THE SETTLEMENTS

### 14.  How do I tell the Court if I don't like the Settlements?

If you are a member of one of the Settlement Classes (and don't exclude yourself from one of the Settlement Classes), you can object to any part of the Settlements, the Plan of Allocation, and/or the request for attorneys' fees and litigation costs and expenses and/or the service awards request.

To object, you must timely submit a letter that includes the following: (1) the name of the case (*Contant v. Bank of America Corp.*, No. 17-cv-3139-LGS); (2) your name and address and if represented by counsel, the name, address, and telephone number of your counsel; (3) proof that you are a member of one of the Settlement Classes; (4) a statement detailing all your objections to the Settlements with specificity and including your legal and factual bases for each objection; and (5) a statement of whether you intend to appear at the Fairness Hearing, either with or without counsel, and if with counsel, the name of your counsel who will attend.

You cannot make an objection by telephone or email. You must do so in writing and file your objection with the Clerk of Court and mail your objection to each of the following addresses postmarked by October 15, 2020.

**Court**

United States District Court for the Southern District of New York
Clerk of Court
Daniel Patrick Moynihan Courthouse
500 Pearl St.
New York, New York 10007

You must also send a copy of your Statement of Objections to Class Counsel and Counsel for the Settling Defendants at the following addresses:

**Class Counsel**

Michael Dell'Angelo
Berger Montague PC
1818 Market St., Suite 3600
Philadelphia, PA 19103

**Defendant Citigroup**

Andrew Lazerow
Covington & Burling LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-3743

**Defendant MUFG Bank**

Andrew C. Finch
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY  10019-6064

**Defendant SC**

Marc Gottridge
Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017

**Defendant SG**

Patrick Ashby
Linklaters LLP
1345 Avenue of the Americas
New York, NY 10105

**Settling Group Defendants**

Jeffrey J. Resetarits
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY  10022

If you don't timely and validly submit your objection, your view will not be considered by the Court or any court on appeal.

### 15.  What is the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the Settlements. You can object to the Settlements only if you don't exclude yourself from one of the Settlement Classes.  Objecting does not change your ability to claim money from the Settlement Fund if the Court approves the Settlements. If you exclude yourself, you cannot object because the Settlements no longer affect your rights and you cannot claim money from the Settlement Fund.

## THE LAWYERS REPRESENTING YOU

### 16.  Do I have a lawyer in this Lawsuit?

The Court has appointed the law firm of Berger Montague PC to represent you and the other members of the Settlement Classes:

> Michael Dell'Angelo
> Michael J. Kane
> Berger Montague PC
> 1818 Market St., Suite 3600
> Philadelphia, PA 19103
> mdellangelo@bm.net
> mkane@bm.net
> (215) 875-3000

Berger Montague PC has been appointed Settlement Class Counsel by the Court. If you have any questions about the notice or the Lawsuit, you can contact the above-listed law firm. Class Counsel will apply to the Court for payment of attorneys' fees and litigation costs and expenses from the Settlement Fund. You will not otherwise be charged for the services of Settlement Class Counsel or any other attorneys representing the Plaintiffs in this Action (collectively, "Class Counsel"). If you want to be represented by your own lawyer, you may hire one at your own cost.

### 17.  How will the lawyers be paid?

To date, Class Counsel have not been paid any attorneys' fees or reimbursed for any out-of-pocket costs or expenses. Any attorneys' fees and costs and expenses will be awarded only as approved by the Court in amounts determined to be fair and reasonable. By September 2, 2020, Class Counsel will move for an award of attorneys' fees not to exceed $6,194,083.33 (26.21% of the Settlement Fund), reimbursement of litigation costs and expenses not to exceed $1,825,000 and service awards of $5,000 for each of the eleven Settlement Class Representatives ($55,000 total) to be paid out of the Settlement Fund.

Any motions in support of the requests will be available on the Settlement Website after they are filed. After that time, if you wish to review the motion papers, you may do so by viewing them at www.FXIndirectAntitrustSettlement.com.

The Court will consider the motion for attorneys' fees and litigation costs and expenses at or after the Fairness Hearing.

## THE COURT'S FAIRNESS HEARING

### 18.  When and where will the Court decide whether to approve these Settlements?

There will be a Fairness Hearing at 11:30 a.m. on November 19, 2020. The hearing will take place at the United States District Court for the Southern District of New York, Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007.

13

*Important!* The time and date of the Fairness Hearing may change without additional mailed or published notice. For updated information on the hearing, visit: www.FXIndirectAntitrustSettlement.com.

At the Fairness Hearing the Court will consider whether the Settlements are fair, adequate, and reasonable and should be approved. The Court will also decide whether it should give its final approval of the Plaintiffs' requests for attorneys' fees and expenses, service awards to the Class Plaintiffs and other costs. The Court will consider any objections and listen to members of the Settlement Classes who have asked to speak at the Fairness Hearing.

### 19.  Do I have to come to the Fairness Hearing to get my money?

No. You do not have to go to the Fairness Hearing, even if you sent the Court an objection. But, you can go to the hearing or hire a lawyer to go the Fairness Hearing if you want to, at your own expense.

### 20.  What if I want to speak at the Fairness Hearing?

You must file a Notice of Intention to Appear with the Court at this address:

> United States District Court for the Southern District of New York
> Clerk of Court
> Daniel Patrick Moynihan Courthouse
> 500 Pearl St.
> New York, New York 10007

Your Notice of Intention to Appear must be filed by October 15, 2020. You must also mail a copy of your letter to Class Counsel and Counsel for the Settling Defendants at the addresses listed in question 14.

Your Notice of Intention to Appear must be signed and: (i) state the name, address, and phone number of the person and if applicable, the name, address, and telephone number of you attorney (who must file a Notice of Appearance with the Court); and (ii) state that you (or if applicable, your lawyer) intends to appear at the Fairness Hearing for the Settlements in *Contant v. Bank of America Corp.*, No. 17-cv-3139-LGS.

## IF YOU DO NOTHING

### 21.  What happens if I do nothing?

If you do nothing, you will be automatically a member of one or more of the Settlement Classes if you fit one or more of the Settlement Class descriptions. However, if you do not timely file a Claim Form, you will not receive any payment from the Settlements. You will be bound by past and future rulings, including rulings on the Settlements and Settlement releases.

## GETTING MORE INFORMATION

### 22.  How do I get more information?

This Notice summarizes the Lawsuit, the terms of the Settlements, and your rights and options in connection with the Settlements. More details are in the Settlement Agreements, which are available for your review at www.FXIndirectAntitrustSettlement.com. The Settlement Website also has the operative Complaint and other documents relating to the Settlements. You may also call toll free 1-844-245-3777 or write the Claim Administrator at: *Contant v. Bank of America Corp.* Settlement, c/o Heffler Claims Group, PO Box 7907, Philadelphia, PA 19101-7907.

**Please Do Not Attempt to Contact Judge Schofield or the Clerk of Court with Any Questions**

Contant v. Bank of America Settlement
(FX Indirect Antitrust Settlement)
P.O. Box 7907
Philadelphia, PA 19101-7907

FIRST CLASS MAIL
U.S. POSTAGE PAID
CITY, ST
PERMIT NO. XXXX

**If You Purchased A Foreign Currency Instrument From Certain Individuals Or Entities A $23.63 Million Class Action Settlement May Affect You.**

————————————

**Register to Receive a Claim Form at FXIndirectAntitrustSettlement.com**

<<Barcode>>

Class Member ID: <<Refnum>>

<<FirstName>> <<LastName>>
<<BusinessName>>
<<Address>>
<<Address2>>
<<City>>, <<ST>> <<Zip>>-<<zip4>>

## What is this About?

This lawsuit alleges Citigroup, MUFG Bank, Standard Chartered, Société Générale, Bank of America, Barclays, BNP Paribas, Credit Suisse, Deutsche Bank, Goldman Sachs, HSBC, JPMorgan, Morgan Stanley, RBC, RBS, and UBS (the "Defendants") conspired to fix foreign currency ("FX") instrument prices causing people to be overcharged when purchasing an FX Instrument from an individual or entity and that individual or entity transacted in an FX Instrument directly with a Defendant or one of Defendants' alleged co-conspirators. Defendants maintain that these claims lack merit. The settlements are not evidence of liability or wrongdoing. The Court has not decided who is right.

## Who's Included?

You are if: (1) you purchased an FX Instrument from an individual or entity from December 1, 2007 through July 17, 2020, and that individual or entity in turn transacted in an FX Instrument directly with a Defendant or alleged co-conspirator; and (2) you lived in NY, AZ, CA, FL, IL, MA, MN, or NC at the time of the transaction.

## What do the Settlements provide?

The $23,630,000 Settlement Fund, less court-approved fees and costs, will be distributed based on the greater of (1) a *pro rata* award based on transaction volume of FX Instrument purchases with a discount applied for purchases after December 31, 2013, or (2) a *de minimis* award. See the Plan of Allocation at FXIndirectAntitrustSettlement.com for detailed payout information.

## How can I get payment?

If the Settlements are approved, you will receive a claim form in the mail or by email explaining the calculation of Settlement awards for eligible claimants. Claim forms will also be available on the settlement website. You can also submit documents showing your FX Instrument purchases to the Settlement Administrator, Heffler Claims Group, to substantiate your claim. The deadline to file a claim will be at least 120 days after the Court grants final approval of the Settlements.

## What are my Rights?

**Do nothing** - If you do nothing, you will get no settlement proceeds but will be legally bound by all Court judgments and you won't be able to sue, or continue to sue, Defendants for the same claims in this action.

**Object** - If you want to remain in the Settlements but wish to object to the Settlements or any aspect of them, you must submit your objection by October 15, 2020.

**Exclude** - If you want to maintain your right to sue the Defendants, you must exclude yourself from the Settlements by October 15, 2020. If you exclude yourself, you will not get a payment from these Settlements. If you do not exclude yourself, you will remain a member of a Settlement Class and your legal claims will be released even if you do not submit a claim.

## When will the Court decide?

A Fairness Hearing will be held on November 19, 2020 at 11:30 a.m. at the Thurgood Marshall US Courthouse, 40 Foley Square, NY, NY 10007, in Courtroom 1106 to consider whether to approve the Settlements and fee application. You may, at your own expense, appear at the hearing, but you do not have to. Class Counsel will ask the Court to approve an award of attorneys' fees of up to 26.21% of the Settlement Fund, plus service awards for the class representatives and reimbursement of costs and expenses. The fee application will be available on the settlement website when filed.

*This is only a summary.* For more information, including Settlement Agreements and release of claims, instructions on filing a claim (when available), and details on how to exclude or object to the Settlements, visit **FXIndirectAntitrustSettlement.com** or call **1-844-245-3777.**

---

**FXIndirectAntitrustSettlement.com**          **1-844-245-3777**