```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
JAMES CONTANT, et al.,

              Plaintiffs,

         v.                          17-CV-3139(LGS)

BANK OF AMERICA CORPORATION, et al.,
                                     Fairness Hearing
              Defendants.            (Via Teleconference)
------------------------------x
                                     November 19, 2020
                                     11:30 a.m.
Before:

                  HON. LORNA G. SCHOFIELD,
                                     District Judge

                       APPEARANCES

BERGER MONTAGUE PC
     Attorneys for Plaintiffs
BY:  MICHAEL C. DELL'ANGELO
     MICHAEL J. KANE
     JOSHUA RIPLEY

McCULLEY McCLUER PLLC
     Attorneys for Plaintiffs
BY:  STUART H. McCLUER
     R. BRYANT McCULLEY
     FRANK B. ULMER

SCHNEIDER WALLACE COTTRELL KONECKY
     Attorneys for Plaintiffs
BY:  KYLE G. BATES

PEIFFER WOLF CARR & KANE
     Attorneys for Plaintiffs
BY:  TRACEY COWAN

BEUS GILBERT McGRODER, PLLC
     Attorneys for Plaintiffs
BY:  GARRETT W. WOTKYNS
```

```
 1    SHEARMAN & STERLING LLP (NY)
           Attorneys for Defendants BoA, Merrill Lynch
 2    BY:  RICHARD F. SCHWED
           ADAM S. HAKKI
 3         JEFFREY J. RESETARITS

 4    PAUL WEISS (NY)
           Attorneys for Defendant Bank of Tokyo, Mitsubishi UFJ Ltd.
 5    BY:  ANAND SITHIAN
           ANDREW C. FINCH
 6         KENNETH A. GALLO
           MICHAEL E. GERTZMAN
 7
      SULLIVAN & CROMWELL, LLP
 8         Attorneys for Barclays Defendants
      BY:  MATTHEW A. SCHWARTZ
 9         DAVID H. BRAFF
           MATTHEW A. PELLER
10         JACOB B. LIEBERMAN

11    ALLEN & OVERY, LLP
           Attorneys for Defendants BNP Paribas Group, et al.
12    BY:  ANDREW R. DAVIES
           REBECCA R. DELFINER
13         DAVID C. ESSEKS
           LAURA R. HALL
14
      COVINGTON & BURLING, L.L.P.
15         Attorneys for Defendants Citigroup Inc., et al.
      BY:  ANDREW A. RUFFINO
16         ANDREW D. LAZEROW
           ALAN M. WISEMAN
17
      CAHILL GORDON & REINDEL LLP
18         Attorneys for Credit Suisse Defendants
      BY:  HERBERT S. WASHER
19         MARGARET A. BARONE
           JASON M. HALL
20         DAVID G. JANUSZEWSKI
           ELAI E. KATZ
21
      KING & SPALDING LLP (DC)
22         Attorneys for Defendants Deutsche Bank AG,
           Deutsche Bank Securities Inc.
23    BY:  GEORGE P. MONTGOMERY
           JOSEPH SERINO, JR.
24         ERIC F. LEON

25
```

```
 1   CLEARY GOTTLIEB
          Attorneys for Defendants Goldman Sachs Group, Inc., et al.
 2   BY:  THOMAS J. MOLONEY
          RISHI N. ZUTSHI
 3
     LOCKE LORD LLP
 4        Attorneys for Defendants HSBC HOLDINGS PLC, et al.
     BY:  JAMES M. GOODIN
 5        ROGER B. COWIE
          GREGORY T. CASAMENTO
 6        JULIA C. WEBB

 7   SKADDEN, ARPS
          Attorneys for Defendants JPMorgan Chase & Co., et al.
 8   BY:  PETER E. GREENE
          BORIS BERSHTEYN
 9        JOHN COGHLAN
          TANSY WOAN
10        HARRY P. KOULOS
          GRETCHEN WOLF
11
     DONTZIN NAGY & FLEISSIG LLP
12        Attorneys for Defendants JPMorgan Chase, et al.
     BY:  TIBOR L. NAGY, JR.
13
     WACHTELL, LIPTON, ROSEN & KATZ
14        Attorneys for Defendants Morgan Stanley, et al.
     BY:  JONATHAN M. MOSES
15        JUSTIN L. BROOKE

16   MOORE & VAN ALLEN, PLLC
          Attorneys for Defendants RBC Capital Markets LLC, et al.
17   BY:  JAMES P. McLOUGHLIN, JR.
          MARK A. NEBRIG
18        JOSHUA D. LANNING

19   DAVIS POLK & WARDWELL LLP (NYC)
          Attorneys for Defendants Royal Bank of Scotland, et al.
20   BY:  PAUL S. MISHKIN
          JOEL M. COHEN
21        ADAM G. MEHES
          MAUDE PAQUIN
22        ALYSSA B. GOMEZ

23   HOGAN LOVELLS US LLP
          Attorneys for Defendant Standard Chartered Bank
24   BY:  MARC J. GOTTRIDGE
          LISA J. FRIED
25        CHARLES B. MOORE
          BENJAMIN A. FLEMING
```

```
 1   GIBSON, DUNN & CRUTCHER, LLP
          Attorneys for Defendants UBS AG, et al.
 2   BY:  ERIC J. STOCK
          DAVID J. ARP
 3        MELANIE L. KATSUR
          AMY FEAGLES
 4        PHILIP O. SHAPIRO
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

         THE DEPUTY CLERK:  James Contant, et al. v. Bank of America Corporation, et al., Docket 17-CV-3139.  We are here before the Honorable Lorna G. Schofield.

         I want to remind the parties and the press that recording or rebroadcasting of this proceeding is prohibited.  Violation of this prohibition may result in sanctions.  Thank you.

         THE COURT:  Okay.  So we're here for a final fairness hearing for approval of settlement in one of the so-called Forex cases, and this one involving plaintiffs who indirectly purchased foreign exchange instruments from the defendant.

         I have your papers.  I know we're here on a variety of motions -- the motion for final approval of the settlement and related approval, as well as the fee application and application for a service fee for the named plaintiffs.

         And so as you all know, just from having participated in the preliminary fairness hearing, that is the time when I really scrutinized the settlement, because there is no point, I think, in sending a notice out for settlement that is not going to be approved.  So I have done that, and then that applied for the most part.

         If Mr. Dell'Angelo would like to make a brief statement about the settlement, and particularly about the lack of opt-out objections and the notice and etc., I'll be happy to hear that.

1          MR. DELL'ANGELO:  Thank you, your Honor.  I appreciate
2     that.  I will say that I am pleased to say I think I what you
3     are suggesting is exactly what I was going to propose to the
4     Court as a structure to keep this discussion efficient in light
5     of what Rule 23 requires for preliminary approval.  I will be
6     brief.  And then to the extent you have questions or would like
7     us to address any part of the motion, of course, we're more
8     than happy to do so.
9          So, of course, we are again pleased to present for
10    final approval five settlements, totaling $23.63 million, that
11    will fully and finally resolve the litigation.
12         When your Honor examined the settlements at the
13    preliminary approval stage, we outlined -- and I think there
14    was some discussion and of course consideration in your Honor's
15    order of the various Grinnell factors, one of which neither the
16    parties nor the Court had information about at the time was the
17    reaction of the classes to the settlement.  In order to frame
18    that, I would like to take a moment to address the notice plan.
19         Pursuant to your Honor's order, we utilized Heffler
20    Claims Group to disseminate notice.  Initially Heffler Claims
21    Group had projected that the notice program would reach between
22    80 and 86 percent of the settlement class.  We're very pleased
23    to report that largely, in light of our efforts to gather data,
24    RFEDs, retail foreign exchange dealers, with whom the absent
25    class members and class members transacted, we obtained e-mail

addresses and typical mail addresses that enabled the notice program to, based on the claim administrator's estimates, reach approximately 95 percent of the settlement class.  And what's more, the structure of the settlement, the notice program enabled us to reach each class member approximately 3.9 times, based on the estimates of the claims administrator.

We did so by mailing 94,876 postcard notices on August 12.  A percentage of those, about 16,000, came back as undeliverable.  The claims administrator then did considerable effort in terms of skip tracing and researching at those addresses, and remailed close to 14,000 of them.  And only about 890 came back as undeliverable.

At the same time, the claims administrator on August 12, 2020, e-mailed 43,309 notices to absent class members.  And a very small fraction of those, 2,450, bounced back as undeliverable.  And just to reaffirm, we engaged the claims administrator to send a reminder on October 27, which had no undeliverables as a result of weeding out the first set of undeliverables.

The mail and e-mail notice that we effected with the addresses that we obtained through the RFEDs was reinforced in a number of ways, through a publication notice and Internet advertising notice.

On August 10 a press release issued that was targeted to 1,770 influencers who cover finance.  That press release

picked up in the news and received almost 100 mentions.

Then separately, all of that work was bolstered with banner ads, Google search ads, and social media ads on Facebook and Instagram that were targeted both from the eight states where the plaintiffs and the absent class members reside, and which covers scope of the settlement.

And then further focused on financial institutions and other financial advertising and news outlets such as The Wall Street Journal, Seeking Alpha, Morningstar, etc.

And all of that was then backed up with a settlement website that has been active since August 8, 2020. That alone has had over 15,000 page views and is backed by a 24-hour toll-free line and a dedicated post office address.

As a result of those efforts, having reached at least 95 percent of the settlement class members directly, and then through various publication notice, we're extremely pleased to report not a single class member has objected or opted out of the settlement. And as Judge Rakoff has recently found in the GSE Bonds Antitrust Litigation case, a favorable reception from the class constitutes strong evidence that proposed settlement is fair.

And I'd like to emphasize, because all defendants have settled, and not a single absent class member has objected or opted out, this will in fact affirm legal fees for the defendants and achieve exactly what the parties were trying to

1    achieve, and is an indication that the class members found the
2    settlement to be fair, reasonable and adequate.  And an
3    indication as well that none believe that they could do better
4    than we were able to do for them as part of the settlement.
5              Unless your Honor has specific questions about that
6    process or anything else in our submission, I would rely on our
7    filing.
8              I guess just making one additional note to be
9    abundantly clear for the record, sometimes in these cases class
10   counsel will receive a comment or a criticism by e-mail or
11   voicemail from class members, positive or negative.  We have
12   not received -- and those don't constitute a valid
13   opt-out/objection.  Even post the October 15 opt-out/objection
14   deadline, we haven't even received a single word of criticism
15   from that.
16             THE COURT:  Okay.  Great.  I'm not sure if I've ever
17   seen where there is not a single objection or opt-out.  So
18   congratulations on that.  I don't have any other questions
19   about the settlement itself.
20             I have one request, and that is that you e-mail my
21   chambers the proposed order in Word format.
22             I did want to turn to your other motion, which is
23   application for fees and expenses as well as service fees.  I
24   would just note -- I will confess, I didn't look at the caption
25   on the proposed order.  I just started reading it.  And I was

1    fairly alarmed.  And when I did finally look at the caption,
2    you had attached the wrong proposed order.  So a lot of
3    questions that I was going to ask, I won't ask.
4             But I will ask for a new proposed order for this case
5    for the fee application and service fee.  I had a few questions
6    in that regard.
7             For the fee application, how will it be allocated
8    among the plaintiffs' firms?
9             MR. DELL'ANGELO:  First, thank you.  Your Honor, let
10   me apologize for the inadvertent error in the proposed order.
11   I think as we indicated in your Honor's form pursuant to
12   Individual Rule III.C.5, the fees will be allocated to class
13   counsel on a straight lodestar basis.  Meaning, there is no
14   sort of differentiation between what multiple counsel may
15   receive or the like.  The understanding among --
16            THE COURT:  Just so I have it, so it's pro rata based
17   on lodestar; is that right?
18            MR. DELL'ANGELO:  That's correct.  With the
19   understanding that the fee award, at least as requested,
20   represents a negative lodestar of about .94.  But, yes, it
21   would be pro rata.
22            THE COURT:  Okay.  All right.  I presume, but I want
23   confirmation, that there is no other fee sharing?
24            MR. DELL'ANGELO:  Well, there is.  As we indicated in
25   your Honor's form III.C.5, there is one referral agreement.  I

KBJZZCONHRT

1   think your Honor has a fee sharing disclosure requirement
2   and --
3              THE COURT:  I didn't find that in your papers.
4              MR. DELL'ANGELO:  Oh, okay.
5              THE COURT:  Do you have a docket number of that
6   particular piece of paper?
7              MR. DELL'ANGELO:  Sure, let me take a look at it.  I
8   have to confess, this version does not have the docket number
9   on it.  While I'm trying to identify the docket number, maybe
10  Mr. Ripley or Mr. Kane have it handy and they can identify it
11  for us.
12             What that disclosure provides, your Honor, is that the
13  Kehoe Law Firm, who represents FXPRIMUS, a Florida-based
14  plaintiff in the case, that the agreement among counsel is that
15  the Kehoe firm would receive 10 percent of the attorney's fees
16  that were attributable to the settlement amounts that went to
17  Florida plaintiffs.
18             So the idea being, if Florida plaintiffs made claims
19  in the amount of whatever percentage they would be, if they
20  have 10 percent of the total, we would take that 10 percent and
21  say, in effect, 10 percent of the attorney's fees were
22  attributable to Florida, and the Kehoe firm would receive
23  10 percent of those fees.
24             The disclosure itself appears at docket 419-1, page
25  eight of nine.  That's the first place that I spotted.  I think

1  we submitted it a few times, your Honor.  That was attached to
2  plaintiff's memorandum in support of plaintiff's motion for
3  preliminary approval.
4           THE COURT:  Okay.  What else is there?  It sounds like
5  there are nine pages in this document.  What else is disclosed
6  in the document?
7           MR. DELL'ANGELO:  That particular document is the full
8  submission pursuant to your Honor's individual practice, or
9  Individual Rule III.C.5.  That just provides a brief
10 introduction of the settlements, a discussion of the total
11 settlement fund, the claims administration fees, cost and
12 expenses.  Just on the ninth page -- sorry.  And the last page,
13 your Honor, has subpart VIII as what Rule III.C.5 requires, the
14 summary of information.  And the summary of information, your
15 Honor, has the table that asks for the settlement amount, the
16 estimated notice of administration costs, expert fees,
17 anticipated fee, etc.
18          THE COURT:  Right.
19          MR. DELL'ANGELO:  So the last is that rule,
20 disclosure, it begins on page seven of nine.
21          THE COURT:  So my question is, maybe can I ask my law
22 clerk, who I know is on the phone, if she can send me that --
23          MR. DELL'ANGELO:  I'm sorry to interrupt.
24          THE COURT:  That's okay.  You found the other one at?
25          MR. DELL'ANGELO:  Docket 420, discussed in paragraph

1           33.
2                   THE COURT:  So my question is, is there anything else
3      about fees and where the fees are going?  I understand that
4      there is one referral agreement, as you described it, and I
5      understand the allocation of plaintiff's firm.  Is there any
6      other arrangement with respect to fee?
7                   MR. DELL'ANGELO:  None whatsoever, your Honor.
8                   THE COURT:  Okay.  And nothing has been paid to any
9      putative objectors; is that right?
10                  MR. DELL'ANGELO:  Nothing.  And, again, just to be
11     clear, we haven't even heard from them.  I haven't heard from
12     an objector.  Nothing has been paid to anybody or promised or
13     even discussed; haven't heard from any.
14                  THE COURT:  Could you tell me what the settlement
15     agreement says about the timing of the payment of fees and
16     expenses, as provided in the settlement agreement.  Remind me
17     what that says.
18                  MR. DELL'ANGELO:  It becomes effective after the order
19     on fees becomes final.  So we interpret that to be 30-plus-one
20     days after the order is issued, provided that there is not an
21     appeal.
22                  THE COURT:  Okay.  What is the timing of the payment
23     of the claim?
24                  MR. DELL'ANGELO:  The plan of allocation, the order on
25     the plan of allocation has a schedule built into it.

1           THE COURT:  The reason I ask, while you're flipping to
2   it, I know there are good arguments for getting class counsel
3   paid sooner than later, primarily that you've been litigating
4   this case since 2017 and you haven't been paid anything, and
5   that there is considerable risk during that time of what would
6   be paid; I suppose, theoretically, there still is.  It also
7   seems a bit unseemly to me to write quite a large check to
8   class counsel, at the same time that the claimants and class
9   members aren't being paid.  And particularly when there is a
10  long period of time between the final approval of the
11  settlement and the actual payment of class members.
12          And so that's what I'm trying to get out.  I'm trying
13  to figure out when people will likely get paid.  Because it
14  affects my consideration of when class counsel will be paid.
15          Hello?
16          MR. DELL'ANGELO:  Sorry, your Honor.
17          THE COURT:  I'm glad I didn't lose you.
18          MR. DELL'ANGELO:  I was trying to be sensitive to
19  background noise, and was muted.
20          The claims deadline is within 120 days after final
21  approval is granted.  So the date to get in those claims will
22  depend a little bit on when it is your Honor enters final
23  approval.  That's the claim form, just to be clear, to get the
24  claim form in to the claims administrator.
25          Because we have fairly detailed data from all the

RFEDs as a result of the subpoena that we went through, I anticipate the claims process can be handled pretty efficiently because we already have the data to cross-check information that the plaintiffs submit.

But there is not a date certain, as is generally the case in these settlements, when checks would actually be cut. We need to get the claims in and process it.

THE COURT: Could you check with the claims administrator and get an estimate of how long it takes to pay the claims after the claims deadline. And put that in a letter and file the letter. And the sooner you file the letter, the sooner I can act on the fee application.

I know there are separate orders. I can certainly act on the final approval of the settlement -- which there is no mystery, I am approving -- I can act on that quickly. And then I can act on the fee application once I understand when plaintiffs will be paid or an estimate of when they will be paid.

MR. DELL'ANGELO: Of course, your Honor, I'll be happy to do that.

THE COURT: Okay. I won't set a deadline. It's in your interest to get that to me sooner than later. I'll look it at when I get it.

MR. DELL'ANGELO: Understood.

THE COURT: With respect to the service fees for the

1  class representatives, I understand you're seeking $5,000 for
2  class representatives, which is reasonable and it's consistent
3  and in line with what I have ordered in other cases. I won't
4  be having any trouble with that either. The reason I was a
5  little bit alarmed, in the proposed order you had given me the
6  proposed payment to each of the class representatives of
7  $40,000. I didn't even know that courts did that, but perhaps
8  in other kinds of cases they do.
9       So in any event, it seems like everything is in order
10 in terms of the substance. I'll await the filing of the letter
11 from you, then I'll act on it.
12      Is there anything else we need to address?
13      MR. DELL'ANGELO: Not from my perspective. Thank you,
14 your Honor.
15      THE COURT: Thank you. I have nothing else either.
16 We are adjourned.
17                           o0o