UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES CONTANT, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BANK OF AMERICA CORPORATION, *et al.*, <br><br> *Defendants*. | No. 17-cv-3139-LGS <br><br> (related to No. 13-cv-7789-LGS) |

### DECLARATION OF LORI L. CASTANEDA IN SUPPORT OF PLAINTIFFS' MOTION FOR DISBURSEMENT OF SETTLEMENT FUNDS

I, Lori L. Castaneda, declare as follows:

1. I am a Senior Director with Kroll Settlement Administration ("Kroll"). The following statements are based on my personal knowledge and on information provided by other Kroll employees working under my supervision.

2. The Court appointed Heffler Claims Group ("Heffler") as the Claims Administrator for purposes of all Settlements in this action. (ECF No. 297, ¶22; ECF No. 441 ¶ 19). In April 2021, Heffler changed its name to Kroll Settlement Administration ("Kroll"). The personnel responsible for administering the Settlements remain the same.

3. As Claims Administrator, Kroll has, at the direction of Class Counsel and the Court, acted to implement the terms of the Settlement Agreements by, among other things, disseminating the Court-approved Postcard Notice as described in the Declaration of Jeanne C. Finegan and Claim form as described below at ¶6. Kroll has now completed the review of the Claim Forms in

1

accordance with the provisions of the Settlement Agreements described in detail in the Notice and provides this status of that process and claim review to the Court.

### Website and Class Member Communications

4.      Kroll set up a website, www.fxindirectantitrustsettlement.com, dedicated to the Settlement. As of November 19, 2021, the Settlement Website has been visited by over 20,499 users and received over 69,416 page views. Kroll continues to update and maintain the website with new information as it becomes available. Class Members were able to submit claims on the website through a secure online portal.

5.      Kroll has handled Class Member communications received via the Call Center, mail or email. Kroll has trained representatives answering Class Member questions and an Interactive Voice Response system ("IVR") available 24 hours a day 7 days a week to provide information on the Settlement, the claims process, and important dates. To date, Kroll has received approximately 2,635 IVR calls, 1,364 live operator calls, 98 written correspondence and 708 email correspondence. As detailed below, Kroll personnel continued to receive calls and contact Claimants to answer Class Member questions for more than 30 weeks after the filing deadline of March 19, 2021.

### Dissemination of the Claim Form

6.      After the Court granted final approval of the Settlements, Plaintiffs submitted two proposed Claim Forms on November 24, 2020, ECF Nos. 466-1, 466-2 (the "Claim Forms"), which the Court approved on November 25, 2020. ECF No. 467. Kroll then conducted a mailing for all members of the Settlement Classes for whom they had a mailing address of the approved Claim Form on December 21, 2020, regardless of whether a Class Member had registered. An

email notice was also sent out on this same date informing the members of the Settlement Classes that a Claim Form was now available online and directing them to the online Claim Form on the Settlement Website, fxindirectantitrustsettlement.com. The Claim Form was mailed to 94,867 members of the Settlement Classes and also was emailed to 43,309 members of the Settlement Classes. The Claims Administrator posted fillable online versions of the Claim Forms to the Settlement Website, and members of the Settlement Classes had the option of submitting a Claim Form online or by mail.

7. Claimants had the option of (a) having the economic consulting firm calculate their *pro rata* Settlement award based on transactional data obtained from the four largest retail foreign exchange dealers ("RFEDs") that operated during the Settlement Class Period of December 1, 2007, to July 19, 2019 ("Option 1"); or (b) submitting their own transactional records for purposes of calculating their *pro rata* award ("Option 2"). Claimants who wished to receive a distribution from the Net Settlement Funds were required to submit a completed Proof of Claim form, and if electing Option 2 were required to submit detailed transactional records (*e.g.*, account statements and transaction confirmations) and fill out and submit the "Option Two Claim Form Spreadsheet" by uploading it to the Settlement website via the online claim portal. Mailed completed Claim forms had to be postmarked no later than March 19, 2021 and be sent to the Post Office Box maintained by Kroll for this Settlement or Claims could be filed online and supporting documents uploaded at the Settlement Website.

8. A press release was issued during the claims period to remind members of the Settlement Classes of the claims filing deadline, see attached **Exhibit A**.

9. In addition to mailing Claim Forms, an additional email message was sent on February 12, 2021 to members of the Settlement Classes where a valid email address existed, and

the Class Member had not yet filed a Claim Form, to remind them of the March 19, 2021 deadline to file a Claim Form. On March 12, 2021, a second email reminder was sent if the Class Member had still not filed a Claim Form and that the deadline was approaching.

10. Additionally, Kroll was provided a list of the members of the Settlement Classes comprising the top one percent estimated highest payouts based on the transaction data produced by the four RFEDs. Kroll sent a separate personalized email and letter reminder to these individuals and entities that had not filed a claim telling them an estimated payment amount that could be realized if the Class Member filed a claim. A calling campaign was also conducted to reach these members of the Settlement Classes.

## Claim Processing Procedures

11. Kroll received and processed 4,454 mailed Claim Forms via mail for this matter.

12. Upon receipt, Kroll personnel opened the envelopes containing the Claim Form, assigned each a unique Claim number and scanned the form into the system. Kroll personnel entered the following information from each Claim Form into the proprietary, computerized database dedicated to this settlement ("Settlement Database"): the name of the Claimant submitting the Claim Form, the Claimant's address, the Option selected and whether the claim was signed and the date it was signed.

13. Kroll also built and maintained an electronic Claim portal on the Settlement website. Class Members could submit claims along with required supporting documentation on the website. Step by step instructions were included to easily walk Class Members through the process. Kroll has received 6,857 electronic submissions of the Claim Form.

14. In total, Kroll has received 11,311 Claim Forms through August 27, 2021. Of these, 10,348 Proofs of Claim were postmarked or received online on or before the filing deadline of March 19, 2021, and 963 Claim Forms were postmarked or received after the filing deadline.

15. Kroll personnel have reviewed each Claim Form to verify that it was signed, that either Option 1 or Option 2 was selected and as to Option Two Claim Forms reviewed whether the Spreadsheet and required supporting documents were submitted. Of the 11,311 total claims received, 11,223 selected Option 1, 74 selected Option 2 and 14 selected both options.

16. Kroll worked closely with Class Counsel and the economic consulting firm ("applEcon") retained by Class Counsel to assist in determining payment amounts to ensure that the claim process was fair and appropriate, and the interests of valid Claimants were protected. Kroll also worked with Class Counsel and their subject matter experts and consultants to ensure that submitted claims satisfied the Definitions of the Settlement Classes and were substantiated as such.

## Late Claims

17. The deadline to file a claim was March 19, 2021. Through August 27, 2021, Kroll received 963 late but otherwise valid claims which means they would have been received online after midnight Pacific Standard Time or have a postmark date after March 19, 2021. Because Kroll personnel were still auditing Claims, contacting Claimants for additional supporting information, and answering Class Member questions for more than 30 weeks after the filing deadline of March 19, 2021, these otherwise valid Claims would not delay distribution efforts. Kroll reviewed these Claims as they did with timely claims and provided their information to applEcon to determine their potential payment amount.

18. We ask the Court to approve Kroll's and Class Counsel's recommendation that these 963 late, but otherwise valid, claims be approved. Should the Court not decide to include these late claims, the final claim calculations can be easily adjusted.

19. Kroll also received 156 deficient claims which lacked the information necessary to satisfy the Definitions of the Settlement Classes and/or the information required by the Court-approved claim-notice. As set forth below, Kroll and Class Counsel recommend that these 156 deficient claims be rejected.

## Deficient Claims

20. Kroll conducted significant outreach and worked with Claimants to validate claims. Some Claimants submitted Claim Forms that lacked a signature, the selection of Option 1 or Option 2, selected both Options, or selected Option 2 without providing any required transactional information or documentation necessary to support the Claimant's transactions during the Class Period. Kroll contacted these Claimants via telephone and/or email and informed the Claimant of their deficient claim and what was necessary to correct their Claim Form. Kroll worked with these Claimants to ensure their submissions were complete and their intent clear.

21. The Claimants with deficient Option 2 claims were given notification to cure their Claim. They were also informed that unless the deficiency was corrected, the Claim would be defaulted to Option 1 whereby it would be calculated based upon the transactional records obtained by Plaintiffs' counsel in connection with the litigation. It was also established that if no transactional records existed with Plaintiff's counsel then the claim would be rejected outright. A total of 46 Claimants submitted deficient but timely Option 2 claims and were defaulted to Option 1 because they failed to provide the information requested.

22. During this process, Kroll received 3 requests for extensions on the deadline and time for submission of documentation due to the pandemic and remote work efforts among other reasons. Those requests received a two-week extension.

23. Class Counsel and Kroll have endeavored to ensure that potentially valid Claimants had time to cure deficient submissions and to provide Kroll with adequate time to review claims, audit all completed submissions, where necessary consult with Class Counsel and their subject matter experts and consultants. Kroll has worked with applEcon, and other consultants, and Class Counsel collaboratively on the determination of adequate responses to some claims and necessary documents needed to accurately calculate the transactions provided. Class Counsel and applEcon were also included on escalations from filers where eligibility was in question.

24. Kroll personnel carefully reviewed and evaluated all responses to the deficiency notifications. Requests were made by the Claimants via email and phone to provide further assistance in resolving their claims. Deficient Claimants were provided with information to assist in curing their claims. The responses were escalated to Class Counsel and applEcon and quickly returned back to the Claimant. If the response cured the deficiency, the database was updated to reflect that the Claim was no longer deficient. Claimants that failed to cure the deficiency were notified via both mailed letters and emails and that their claim would be denied.

25. The late claim filed by AMA Capital LLC ("AMA") is addressed in detail in the Declaration of Michael Dell'Angelo in Support of Plaintiffs' Motion for Disbursement of Settlement Funds ("Dell'Angelo Decl."). Class Counsel exercised their discretion to allow AMA to submit a late claim. Because of the complexity of the millions of FX transactions submitted by AMA, Kroll requested assistance from Class Counsel and their subject matter experts and consultants to analyze the nature and character of the transactions to determine which were valid

indirect FX transactions under the Definitions of the Settlement Classes in this case and have been sufficiently substantiated as such so as to be compensable from the Settlement Funds and which submitted transactions do not qualify as valid indirect purchases and/or have not been sufficiently substantiated. On August 13, 2021, Kroll sent a claim assessment notification letter setting forth final determinations as to AMA's late-submitted claim to AMA's counsel via email and mail.

26. Kroll personnel have spent considerable time and effort in communications back and forth with Claimants to get the information or answer their questions via email and telephone to assist in curing their deficiencies.

27. To date, 156 (paper and web-filed) deficient Claims have either been unable to cure their deficiency or not responded to numerous requests to cure a deficiency.

28. We ask the Court to approve Kroll's and Class Counsel's recommendation that these 156 deficient claims be rejected.

29. Kroll has accepted all timely and valid claims and provided those claims to applEcon to calculate the payment determinations for their final payment determinations.

30. Kroll has also provided the 963 late claims to applEcon to be included in the calculation for payment determination as discussed above should the Court so approve.

### Final Claim Results

31. After a review and consolidation of claims, performed by applEcon, for Class Members with more than one account, 9,210 consolidated claims remain, including late claims through August 27, 2021.

32. Kroll has been informed by applEcon, 8,247 timely-filed consolidated unique clams and 963 of the late-filed consolidated Proofs of Claims submitted are Payable Claims.

33. The total estimated Payment Amounts of both the timely and late filed claims represented by Payable Claims is $14,967,744.24.

34. If the Court approves all the proposed payments in the motion to distribute the Net Settlement Funds (all of which are reflected in the accompanying Proposed Order), the average payment to the 9,190 Option 1 Claimants will be $966.82 (with a high of $612,472.37), and the average payment to the 29 Option 2 Claimants will be $209,746.60 (with a high of $5,728,222.20). A total of 667 claimants will receive the *de minimis* $10 for trades after January 1, 2014 as they have no trade data. For the period between December 1, 2007 and December 31, 2013 no Claimant will receive just the $25 *de minimis* payment because they receive that amount plus an additional variable amount based on the available trade data. In total, 667 Claimants will receive *de minimis* awards; 1,148 Claimant received between $10 and $25; 3,962 Claimants will receive between $25 and $100; 1,989 Claimants will receive between $100 and $500; 522 Claimants will receive between $500 and $1,000; 631 Claimants will receive between $1,000 and 5,000; 142 Claimants will receive between $5,000 and $10,000, and 149 Claimants will receive over $10,000.

35. Additionally, an Excel file containing the proposed distribution amounts to individual Claimants, will be posted on the website, www.fxindirectantitrustsettlement.com, so that Class Members can review their potential award. A copy of this Excel file is also attached as **Exhibit B (Option 1 claims); Exhibit C (Option 2 claims); and Exhibit D (Both Option 1 and 2 claims)**. Class Members can identify themselves by their claim identification number provided to them during the registration process and again in the claim process. Class Member names have not been included to protect their identity.

36. The distribution calculations in that excel file assumed the Court endorses (a) honoring the 963 late Claimants, (b) rejecting the 156 ineligible Claimants, (c) authorizing the

requested $41,600 to be reserved for anticipated future claims administration expenses; (d) authorizing payment of $500 to applEcon for finalizing the calculation and future questions; and (e) authorizing the withholding of $50,000 from the Net Settlement Funds to address any unanticipated disputes arising from the claims process, tax reporting, and any potential future taxes owed. If the Court orders or authorizes any changes to those five proposals, the proposed distribution can be easily adjusted to account for such changes.

## Fees and Disbursements

37. As noted above the Court approved Kroll as the Settlement Administrator for this matter. Kroll's duties included ensuring the Settlement Agreement was implemented as approved by the court along with noticing the Class of the Settlements, noticing the Class of the Claims process, handling Class Member questions and communications, reviewing and coordinating the Claim Form process, publishing the Summary Notice, and distributing the Net Settlement Funds to Authorized Claimants among other duties.

38. To date, Kroll's fees and expenses are $337,264.57 (which have been paid) and we anticipate that $41,600 should be held in reserve for the management of the distribution process including printing of checks, postage, the reissuance of checks, as needed, along with Class Member communications and any other duties deemed necessary to complete the distribution. In addition, applEcon has incurred fees of $252,177.19 (which have been paid) to assist with the claims process and calculating payments to authorized claimants and requests an additional $500 be held in reserve for final calculations and questions.

39. Additionally, the Qualified Settlement Fund set up for distribution will need to file tax returns and potentially pay taxes. As such we are requesting a reserve of $3,000 be held for these services as two years of returns may be required depending on when distribution occurs. The

interest earned has been offset by costs of the settlement thereby having no taxable income or tax payment due at this time.

**Proposed Process for Distributing the Net Settlement Funds**

40. Upon Court approval, Kroll will distribute the payment amounts calculated by applEcon to each Authorized Claimant. In order to encourage Authorized Claimants to cash their initial distribution checks promptly and to avoid or reduce future expenses relating to uncashed checks, the initial distribution checks will bear the notation: "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED WITHIN 90 DAYS OF ISSUE DATE."

41. For Authorized Claimants whose checks are returned as undeliverable, Kroll will attempt to locate new addresses by contacting the Authorized Claimants either by phone or by utilizing an address update service, one time, to update the addresses. If a new address is located, Kroll will update the database accordingly and re-issue the distribution check to the Authorized Claimant at the new address.

42. In the event an Authorized Claimant does not receive, misplaces or damages the distribution check or otherwise requires a new check, Kroll will issue replacements upon receiving written instructions from the Authorized Claimant, provided that the Authorized Claimant returns the first check (if possible) and a "void" or "stop payment" is issued through the bank.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on November 30, 2021 in Fair Oaks, CA.

_Lori L. Castaneda_
Lori L. Castaneda