UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONTANT, et al., <br><br>                              Plaintiffs, <br> - against - <br><br> BANK OF AMERICA CORP., et al., <br><br>                              Defendants. | Case No.: 17-cv-3139 (LGS) |

### AMA CAPITAL LLC'S OPPOSITION TO MOTION FOR DISBURSEMENT OF SETTLEMENT FUNDS

Claimant AMA respectfully requests that Your Honor deny the motion to disburse basically the entire settlement fund as premature, prejudicial to AMA's interests in currently disputed claims, and lacking transparency. AMA's opposition is not suggesting that the settlement was not properly achieved, just that the settlement should be equitably and accurately administered, and that the fund should be allocated to all claiming class members in a time and manner that comports with the plain language of the settlement agreements and due process. Disbursing the settlement funds now, as suggested by the motion, does not meet this standard and would greatly prejudice AMA.

The settlement agreement expressly prevents disbursement of any funds until all claims are resolved, including consideration by this Court and any appeals therefrom. That has not happened. AMA's claim is still under reconsideration; this Court has not yet ruled on issues material to AMA's claim, and AMA has not had the opportunity to appeal, to the extent necessary. Class Counsel admits, albeit buried in a footnote, that the "Court's determination on reconsideration could *"materially alter the calculated payment amount for AMA and other Claimants."* (Dkt 539 at 2 n 5 [emphasis added].) Yet, while ignoring the settlements' express

requirements to wait, the motion implies without support that AMA's claim can be handled within a $50,000 catchall reserve used to pay for administrative issues, taxes, and other costs. Saying this is inadequate is a massive understatement. The current value of AMA's accepted claim is ▇▇▇▇▇▇▇▇ and that portion of AMA's claim represents a miniscule fraction of the disputed trades. A fully accepted claim—which Class Counsel acknowledges will materially alter the settlement—is likely to reach into the millions, so disbursing the funds will irrevocably harm AMA. The last reason to deny the motion is a lack of transparency. From the motion and supporting declarations, it is impossible to tell anything about the standards employed to accept claims, especially for Option 2 claimants. AMA has confronted what appears to be a double standard applied to its claim, and the motion to disburse does not provide any reason to believe otherwise. This does not meet Rule 23(e)'s standard that the distribution be fair, reasonable, and adequate for all class members.

## I. The Express Terms of the Settlement Require the Motion Be Denied

The settlement agreements entered into with Defendants and approved by the Court, pursuant to which the settlement fund was established, could not have been clearer: no distribution is to be made to any class members until all claims have been determined and all disputes have been adjudicated through appeal.

The Societe Generale agreement, for example, states that "The Net Settlement Fund shall be distributed by the Claim Administrator to, or for the account of, Authorized Claimants, as the case may be, only after the Effective Date ***and after***: (i) all timely claims have been processed and evaluated by the Claims Administrator, and all claimants whose claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to be heard concerning such rejection or disallowance; (ii) **all timely objections with respect to all rejected**

***or disallowed claims have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired***…." (Dkt 420-2 § XI.(h). [emphasis added].)  The other agreements appear to have the same language.

Because the settlements have been approved, the Court cannot deviate from their express terms.  As courts have explained, "[b]ecause a district court's authority to administer a class-action settlement derives from Rule 23, the court cannot modify the bargained-for terms of the settlement agreement. That is, while the settlement agreement must gain the approval of the district judge, once approved its terms must be followed by the court and the parties alike. The district judge must abide the provisions of the settlement agreement, reading it to effectuate the goals of the litigation."  *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 475–76 (5th Cir. 2011).

This makes even more sense here, providing certainty to all class members because the settlement makes payments pro-rata.  The very notion of this type of distribution requires that both the numerator and denominator of the ratio be firmly established before payments are made.  Additional valid claims by AMA, for instance, will drastically change the payouts to all non-de minimis class members.  AMA's numerator for its claim would be substantially higher and all other class members' ratios would be substantially lower with additional trades in the denominator calculation.  While AMA, like all class members, would like to be paid expeditiously, it is necessary that the amounts be finally adjudicated.

Compliance with the plain terms of the settlement agreements, which are predicated on common-sense and designed to protect all class members, is the only fair, reasonable, and equitable approach the Court could endorse to conclude the claims administration process.

### II. The Proposed $50,000 Reserve Violates the Terms of the Settlement, Would Be Woefully Inadequate, and Would Prejudice AMA

While it should not be possible to overcome the express terms prohibiting disbursement of the settlement fund, Class Counsel nevertheless suggests that "the Court approve withholding $50,000 from the Net Settlement in the event of unanticipated disputes relating to the claims process and distribution of the Net Settlement Funds to Claimants as well as to address AMA's challenge of its claim determination which AMA had indicated it intends to appeal." (Dkt 539 at 9.) These paltry funds are also meant to cover tax reporting and potential future taxes owed. (Dkt 538 at 2.) Yet Class Counsel identifies no provision in the settlements permitting a reserve in lieu of compliance with the express restriction on payment, likely because the settlement proceeds are not to be disbursed until all claims have been adjudicated through appeal.

Even if the reserve were somehow permissible, the $50,000 lacks any tie to the amounts at issue and would prejudice AMA. AMA's accepted claim includes a total discounted volume of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Dkt 516; Dkt 541-3; Lutomirski 12-7 Decl. ¶ 4.) AMA's outstanding disputed venues, however, easily eclipse the reserve. The portion of AMA's claim that is supported by timely submissions of detailed broker-issued statements dwarfs the accepted volume and has a pro rata value that far exceeds the reserve, with a volume of more than ▓▓▓▓ ▓▓▓▓ that would likely result in a payment of several million. (Lutomirski 12-7 Decl. ¶¶ 9-12.) The suggested reserve will not even approach protecting AMA's interest, thus prejudicing AMA.

Class Counsel provides no explanation for the suggested reserve in the motion or supporting declarations. There is no calculation regarding AMA's disputed trades, their volume, or how it would affect the settlement payments to AMA and others. AMA requested this additional information in an email to Class Counsel. (Luskin 12-7 Decl. Ex. A.) But Class Counsel refused to elaborate—merely standing on the motion. (*Id.*) That leaves AMA's analysis

4

of its large claim and the admission that AMA's disputed claims will materially alter the payments—apparently something much more than just $50,000. Had Class Counsel provided such a calculation, it would have been clear that the $50,000 reserve is wholly inadequate to account for AMA's claim.

Making matters worse, the requested disbursement order seeks to bar "all members of the Settlement Classes, whether or not they are to receive payment from the Net Settlement Funds, from making any further claim against the Net Settlement Funds beyond the amount allocated to them by the Settlements as approved by the Court." (Dkt 538 at 3.) This would irrevocably prevent AMA from receiving its damage payment, even if it is successful on appeal. And if this were not in the order, it likely would be just as harmful. Once the money is paid to class members, it will be impossible to claw it back. Granting Class Counsel's motion for disbursement will prevent AMA from receiving its fair and just share of the settlement. This irrevocable injury requires denying the motion for disbursement at this time.[1]

### III. The Court Should Also Deny the Motion for Lack of Evidence that the Settlement Has Been Administered in Accordance with Rule 23

The motion to disburse provides scant detail regarding the processing of individual claims. There was no identification of the actual procedures employed to determine the validity of Option 2 claims, no calculations for the valid trades showing compliance with the specific technical requirements of the Plan of Allocation, and no declaration from the supposed subject matter experts that were crucial to the process. Indeed, the Plan of Allocation appears to have an error for the JPK/SEK currency pair (making it off by a factor of 30) and is incomplete in

---

[1] Balanced against this irrevocable injury, there is no harm to any other party. The Defendants already funded the settlement, so they cannot be harmed by waiting on disbursement. The settlement fund is receiving interest, so the class will not be harmed either. Indeed, the class has no particular entitlement to any sum of money. Plus public policy favors denying the motion. Rule 23 requires a fair and transparent process or otherwise it would be difficult to obtain public participation in class actions. To maintain the integrity of the rule, the motion to should be denied for that reason as well.

identifying its currency pair adjustments. (Lutomirski 12-7 Decl. ¶¶ 7-8.) Even just one claim is awarded almost one third of the fund without detail. Class Counsel offers only the vague statement that "Claims submitted under Option 2 were also reviewed and audited to ensure the submission included all required information and transactional records to support the claim." (Dkt 539 at 5.)

AMA has concerns, however, that a double standard for review was applied to its claim. Class Counsel's filing and other recent briefs make this clear. For example, Class Counsel used different standards to determine whether trades are within the class definition. This is readily apparent at one venue; for AMA's ▉▉▉ trades, Class Counsel refuses to accept a declaration from the Chief Executive Officer of an RFED that it backed-to-back trades with institutional clients like AMA with three Defendant banks. (Dkt 534 at 6-7; Dkt 546 at 9; Luskin 12-7 Decl. Ex. B.) Class Counsel instead contends that it and the Court should ignore this direct evidence because a brief describes the RFED as an "intermediary or broker." (Dkt 546 at 9.)

But the same issue was not a problem for the class's claims. As Class Counsel explained in opposition to the Defendants' motion to dismiss—RFEDs "are often referred to as 'FX brokers' in the financial industry, and the CCAC uses those terms interchangeably." (Dkt 117 at 16.) Indeed, for AMA alone, Class Counsel uses a subterfuge supposedly employed by Defendants. As Class Counsel explained, to defeat the complaint "Defendants attempt to confuse 'FX brokers' (which enter into principal-to-principal transactions with retail FX customers) with agent brokers (which enter into a transaction as an agent on behalf of their customers)." (Dkt 117 at 16.) That's the same argument Class Counsel is making when it asserts that AMA's trades with ▉▉▉ do not meet the class definition and the Court should ignore testimony under penalty of perjury that "Once an 'A-Book' client entered into a trade with

6

███████ would simultaneously enter into an offsetting transaction in its own name with a liquidity provider for exact same currency pair and volume." (Compare Dkt 546 at 9 and Dkt 534 at 6.) Put simply, AMA is subject to a double standard—when arguing with the Defendants for the rest of the class, Class Counsel contends that "brokers" are acceptable, but when arguing that AMA's claim should be invalidated, Class Counsel contents that "brokers" are unacceptable.

This is certainly not the only double standard that appears to be applied to AMA, requiring additional clarity. The motion to distribute shows that Class Counsel went out of its way to make sure other claimants' claims had appropriate backup documents. (*E.g.*, Dkt 541 ¶¶ 20-24.) At the same time, Class Counsel argues that Class Counsel, the claims administrator, and the Court should ignore the express requirements of AMA's claim assessment. Class Counsel contends that it can ignore the documents submitted by AMA on August 26 and September 2, instead of complying with the August 13 claim assessment stating that "If AMA desires to contest the reject of its claims, in whole or in part, AMA must, within twenty (20) days after the date of mailing of this notification serve upon the Claims Administrator a notice and statement of reasons indicating its grounds for contesting the rejection along with any supporting documentation." (Dkt 546 at 5-8; Dkt 491 Ex. A at 16.) These different standards should not exist. Class Counsel should additionally provide information showing whether it accepted documentation from any claimant other than AMA within the express window permitted by the claim assessment and the reason if it did not.

Class Counsel also refuses to identify the venues accepted for the class as a whole and what backup detail was required to show that trades at those venues meet the class definition. To determine whether AMA was singled out for documentation issues, it repeatedly asked Class Counsel for information showing what venues were acceptable, what transaction records other

claimants validly submitted, and what documentation was used to show that trades with the venue were back-to-back with Defendants. Class Counsel has consistently refused to provide this information, leaving AMA, the class, and this Court in he the dark on whether consistent standards were applied.[2] (Luskin 12-7 Decl. ¶ 2.)

These issues raise concerns under Rule 23's requirement that the fund be distributed in a fair and reasonable way. Certain claims should not receive unfair treatment. The motion to disburse should not be granted unless Class Counsel can show—transparently—the standards it applied to all class members and that all class members were treated equally. Class Counsel should provide information about the acceptable venues, why those venues were accepted, the transactional and other documents it requested and accepted as proof of claim at those venues, and the calculations used to determine the claimants' accepted volume and payments.

### IV.     Conclusion

To prevent extreme prejudice, AMA respectfully requests that the Court deny the motion for disbursement. The Court should wait until AMA's claim is fully adjudicated (by this Court on reconsideration and any necessary appeal is final) and Class Counsel provides enough information for a true assessment of fairness, reasonableness, and adequacy before considering payments to the class.

---

[2] These are just a few examples of apparent double standards employed in the claim process, there likely are many more. Another is that Class Counsel requests that all late claimants providing any backup for their claims should have their late claims accepted. (Dkt 539 at 6.) Class Counsel argued that *only AMA's late claim* be denied as untimely. (Dkt 491.) Class Counsel also has not and apparently will not provide an estimated payment analysis for AMA, even though it did so for other claims. (Luskin 12-7 Decl. Ex. A; Dkt 541 ¶ 10.) Class Counsel only provided a list of trades it included in the calculation on the day this brief was filed. (Luskin 12-7 Decl. ¶ 2.)

Dated: December 7, 2021
      New York, New York

                           Respectfully Submitted,

By: _____

Damian R. Cavaleri
Hoguet Newman Regal & Kenney, LLP
One Grand Central Place
60 East 42nd Street, 48th Floor
New York, NY 10165
Phone: 212-689-8808
Fax: 212-689-5101
Email: dcavaleri@hnrklaw.com

Scott O. Luskin
Payne & Fears LLP
200 N. Pacific Coast Highway, Suite 825
El Segundo, CA 90245
Phone: 310-689-1764
Fax: 310-689-1755
Email: SOL@paynefears.com

*Attorneys for Claimant AMA Capital LLC*

4868-4087-4501.4