**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CONTANT, et al.,

                 Plaintiffs,

  - against -

BANK OF AMERICA CORP., et al.,

              Defendants.

Case No.: 17-cv-3139 (LGS)


**DECLARATION OF ANDREW LUTOMIRSKI IN SUPPORT OF**
**CLAIMANT AMA CAPITAL LLC'S MOTION FOR RECONSIDERATION**


I, Andrew Lutomirski, declare as follows:

1.      I am member of AMA Capital Management, LLC, which is the manager of AMA Capital, LLC, a settlement class member.  I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true.  If called as a witness, I could and would competently testify to the matters stated herein.

2.      I and my companies have been trading currency for over fifteen years.  I am  intimately familiar with the trading process and currency markets.  I have reviewed in detail a significant portion of the dockets in this matter, especially those related to the settlement.  I also participated in the submission of AMA's claim herein.

3.      To provide context to the Court regarding AMA's potential interest in the settlement, I have calculated an approximate value of AMA's fully supported claim.  I also point out some inconsistencies I found in the plan of distribution.

1

4.      AMA's August 13 claim assessment notice did not provide AMA's adjusted trade volume or discounted adjusted trade volume for any accepted trades. The notice generally stated that AMA's total approved trade volume for claims other than ███████████████     For ████████   the notice stated that AMA's total submitted volume was ████████████   but that only two months of trading were approved because AMA did not submit statements for the rest by August 13. I estimate the resulting approved volume at ████████████   Together with the ████████████████████████████████████████   The accepted trades with these dealers preceded 2013, and therefore the plan of distribution does not discount the volume for these trades.  AMA's approved discounted volume (ECF 420-6 IV.G) is the same as its approved volume.

5.      Today, December 7, 2021, Class Counsel sent a 166-page PDF identifying the accepted trades, but providing no additional computed information such as adjusted or discounted volumes.  I cross-referenced every trade number in this PDF with my analysis in ¶4, and they appear to match.

6.      In order to exactly reproduce the *pro rata* claim payments in accordance with the Court-approved Plan of Allocation, I would need to know the "total discounted adjusted trade volume", ECF 420-6, IV.H.  I was unable to locate this number or anything relevant to its calculation in the Declaration of Lori Castaneda (ECF 541), its exhibits, or in any other document recently filed with the Court.  I also cannot find any indication that the proposed distribution takes into account the currency pair adjustments in the Plan of Allocation (ECF 420-6 IV.H).  I understand that AMA's attorney asked for this information from Class Counsel but did not receive it.

7.      The Plan of Allocation appears to be incomplete.  The currency pair adjustments in the Plan of Allocation are incomplete and contain at least one large error.  Dr. Netz writes "It is possible that other RFEDs traded other currency pairs with their customers for which market data are not available. In that case I would use the average spread of other illiquid currency pairs in place of the unavailable spread data." (ECF 420-6 III.B) There is no indication of the calculated average spread in the proposed settlement declarations and whether this was a factor in the settlement.

8.      I also noticed what is hopefully a typo in the spreads used for the allocation.  The average spread for JPY/SEK (ECF 420-6, Ex. 5) is nowhere near 3.8% and, in fact, the Swedish Krona vs. the Japanese Yen is traded as SEK/JPY, not JPY/SEK. I estimate that this error alone would overvalue SEK/JPY submissions by approximately a factor of 30 if the proposed distribution were to be approved.

9.      Because I do not have all the data to perform the complete calculations for the disbursement, I instead worked backward from AMA's approved claim.  AMA Capital, LLC's Option 2 claim number is ███████   and the proposed Option 2 settlement payment for AMA Capital, LLC is ██████   Based on my calculations above to determine AMA's approved volume, AMA's proposed *pro rata* payment is approximately 0.000016767 multiplied by the trade volume.[1]

---

[1] To the extent that additional accepted AMA trades change the total discounted adjusted trade volume, the pro rata payment per trade volume would decrease.  This means that the approximately $0.000016767 figure would be reduced.  Also, while the Plan of Allocation allocates based on adjusted discounted volume based on the particular currency pairs traded, I did not attempt to account for the adjustment. The adjustment would not affect the order of

10.     There are several venues that AMA still contests should be accepted, which will drastically change the payout to AMA.  First, AMA submitted additional ████████ statements (within the claim assessment deadline) that include roughly ██████████ discounted trade volume.  This would increase AMA's total discounted volume to ██████████ and, by my estimate above, AMA's settlement payment would increase to approximately ████████ by this correction alone ███████████████████████  Were the proposed distributions made, the settlement fund reserve suggested by Class Counsel would be unable to pay AMA even if the Court accepts only the ████████ statements.

11.     The ████████ trades are, however a very small part of AMA's disputed trades.  AMA's claimed ████████ trades have a discounted volume in excess of ██████████████ and this volume is documented in statements, issued by ██████ provided by AMA to Class Counsel within the claim assessment deadline.  I estimate that this would result in a settlement payment in excess of ██████████  Similarly, AMA's claimed ████████████████ trades have a discounted volume on the order of ██████████████ and this volume is documented in statements, issued by ████████████████ provided by AMA to Class Counsel by the claim assessment deadline.  I estimate that this would result in a settlement payment of approximately ████████████  The currency pair spread adjustments in the Plan of Allocation could increase or decrease these payments, but they should still be magnitudes greater than the suggested $50,000 reserve.

12.     With the addition of AMA's volume to the allocation calculation, the total discounted adjusted trade volume would increase.  Therefore, the denominator of every class

---

magnitude of my conclusions except insofar as errors of the sort apparent in JPY/SEK might cause massively erroneous results were the claims administrator to fail to correct them.

member's calculation will change, so each claim payment will be reduced.  That means AMA's claim will not actually be the approximately ▮▮▮▮ I calculated here, but it should still be several million.

13.     Attached hereto as Exhibit C is a true and correct copy of the email and pdf provided by Class Counsel with AMA's accepted trades.

14.     Of AMA's accepted trades, only ▮▮▮▮▮▮ of the items on the claim form include the name of the Defendant that provided the liquidity.  It is therefore implausible that the name of the Defendant that provided liquidity for an individual trade is a requirement for an Option 2 claim.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 7th day of December 2021 at Hillsborough, California.

_____
ANDREW LUTOMIRSKI
Manager, AMA Capital Management, LLC

4880-2337-8693.5