IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES CONTANT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA CORPORATION, *et al.*, <br><br> Defendants. | Civil Action No. 17-cv-3139-LGS <br><br> (related to No. 13-cv-7789-LGS) |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR DISBURSEMENT OF THE INTEREST INCOME EARNED ON THE
SETTLEMENT FUNDS**

Any legal claims AMA *may have had* regarding *any* claim determination have been discharged by *res judicata* under principles of issue and claim preclusion. AMA lost its litigated claim determination in this Court and the Second Circuit, which held AMA failed to preserve any other challenge to the Settlements prior to its appeal: those Orders are final. AMA appeared before this Court on October 7, 2021, well within the period to challenge final approval under Rule 60. AMA's untimely arguments rely on assumptions and ignore (or rewrite) the Settlement Class Definitions. As discussed below, AMA's argument regarding FX Primus misapprehends the geographic requirements of the Settlement Definitions; nevertheless, for independent reasons, a 3.3% reduction (equal to ▮▮▮▮▮▮ of FX Primus' approved claim would be appropriate.

## I.    BACKGROUND

This Court entered Final Judgment, Order of Dismissal with Prejudice and Order Granting Motion for Final Approval of Class Settlements (ECF 460), finding the Plan of Allocation had "a reasonable basis and is fair and adequate." *Id.* No one opposed or appealed. AMA's claim was approved in part and denied in part. ECF 490-1. After a challenge and briefing, this Court upheld the Administrator's determination of AMA's claim. ECF 516, p.2[1] AMA's motions for reconsideration (ECF 534) and intervention (ECF 537) were denied. ECF 563. Plaintiffs moved to distribute the Settlement funds (ECF 538); AMA opposed. ECF 551.

This Court approved every claim determination, but suspended distributions pending resolution of AMA's appeal (ECF 562, ¶4) and held that "Class Counsel, Heffler, applEcon and all persons who are involved in the review, verification, calculation, tabulation or any other aspect of the processing of the claims filed in this action, or who are otherwise involved in such activities, are released and discharged from any claims arising out of the administration of

---

[1] This Court directed AMA to address its submission of duplicate claims in this case and *FOREX*. ECF 516, p.3. AMA has never identified the duplicate transactions in its claims on which it seeks to be paid twice. ECF 526.

Settlement Funds, except for any claim by AMA Capital Management LLC. Class Counsel can make an application for release from AMA after AMA's claim is resolved." ECF 562, ¶10.

AMA moved for reconsideration. This Court found: "AMA points to no issues with the request for disbursement or claims administration process. AMA seeks to litigate its objection to the rejection of its claim as an issue of fairness, but points to no evidence that it was treated differently from any other similarly-situated class member." ECF 563, p. 6. And, rejected AMA's challenge to the entire distribution based on "vague[]" arguments that "Class Counsel is not distributing the funds in a fair and reasonable way" finding that "AMA points to no issues with the request for disbursement or claims administration process" (*id.*), thus declining to "transform the motion for disbursement into an opportunity for the sole objecting claimant to scrutinize and seek justification for every decision made by Class Counsel and the Claims Administrator in the administration and settlement." *Id.* at 7. Finally, this Court expressly resolved "AMA's claimant dispute and the motion for disbursement [to] allow any objections to the Court's decision on either issue to proceed in tandem on appeal." ECF 563, at p. 6.

AMA appealed its claim determination, but not the decision on any other claim, disbursement or the claims administration process. The Second Circuit affirmed this Court's orders and rejected AMA's "unpreserved due process arguments." *Contant v. AMA Cap., LLC*, 66 F.4th 59, 65 n.4 (2d Cir. 2023). AMA's claim determination and challenge to all other claim determinations is fully and finally resolved. Yet, AMA opposes the requested release and discharge of its claims seeking, for at least the fourth time, *to challenge the determination of its claim by challenging every Option 1 claim determination*, in a separate lawsuit before this Court (as it has retained jurisdiction (ECF 562, ¶13)) against the Claims Administrator, Class Counsel and applEcon, recycling arguments again looking "to scrutinize and seek justification for every

decision made by Class Counsel and the Claims Administrator in the administration of the settlement" (ECF 563, p. 7) despite this Court's denial and finding of "discretion" afforded to the Administrator and Class Counsel to determine documentation to resolve claims. ECF 516, p. 2.

## II.     AMA'S CLAIMS ARE BARRED

AMA's opposition is "solely with regard to the requested release and discharge" (ECF 591, at 4); any challenge to any other relief Plaintiffs seek is waived.[2] Any claims AMA *may* have had are now barred by *res judicata* and issue and claim preclusion. "Res judicata and collateral estoppel are related but distinct doctrines that may bar a party from litigating certain claims or issues in a subsequent proceeding." *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999). "Both doctrines have a common objective: the finality of judgments, and they often overlap in a particular case." *Parker v. Corbisiero*, 825 F. Supp. 49, 54 (S.D.N.Y. 1993). Federal law applies to determine the preclusive effect of a federal judgment. *Marvel Characters*, *Inc. v. Simon*, 301 F.3d 280, 286 (2d Cir. 2002). "'When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 577 U.S. 138, 148 (internal citation omitted). "Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action." *Marvel*, 301 F.3d at 286-87.

Citing *Wyly v. Weiss*, 697 F.3d 131, 144 (2d Cir. 2012), AMA argues it must have an opportunity to litigate issues fully and fairly against Class Counsel. ECF 591, at 4. AMA had the

---

[2] *See Contant*, 66 F.4th at 65 n.4 (argument not made below waived on appeal); *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999) (waiver is "litigant's intentional relinquishment of a known right"); *Mexico Infrastructure Fin., LLC v. Corp. of Hamilton*, 2020 WL 5646107, at *3 (S.D.N.Y. 2020) (knowing non-presentment is waiver).

3

opportunity to object to the settlements, Plan of Allocation, distribution, any claim determination, and litigated the determination of its claim *and* the fair and reasonable disbursement of the settlement funds and lost. The Second Circuit also held AMA failed to preserve any other challenge beyond those presented on appeal. *Contant*, 66 F.4th at 65 n.4. Final decisions have been rendered as to each issue AMA could raise in a separate lawsuit: AMA is not entitled to endless challenges.

*Wyly* is instructive. Wyly moved to vacate a class action settlement under Rule 60(b) after it was revealed documents were withheld from class counsel. Because the documents contained no new evidence of fraud, the motion was denied. *Id*. at 135-36. Wyly then sued class counsel for malpractice. *Id*. Applying the doctrine of issue preclusion, the Second Circuit precluded Wyly's claim because it sought to "relitigate the District Court's determination that class counsel's representation was reasonable" and found that Wyly's allegations were a collateral attack on the District Court's findings that the Settlement was 'fair, reasonable and adequate.…'" *Id.* at 142. Consequently, Class Counsel had acted with the required professional competence and thus Wyly was not permitted "to relitigate the same issue that the District Court already resolved." *Id*. (internal citations omitted).[3] The Second Circuit also recognized "The District Court's decision finds further support in a justified fear that allowing malpractice suits in state court against these Appellees might 'unleash such suits upon class counsel in fora far and wide' and thereby undermine the class action system as a whole." *Id*. Here, AMA similarly opposes a discharge of claims so that it can relitigate challenges already rejected and waived or are precluded by Orders of this Court and the Second Circuit's ruling.

---

[3] AMA cites authority on interlocutory orders to imply this Court has inherent authority to vacate the Distribution Order. ECF No. 591, n.1. That Order is final. Rule 60 governs and AMA articulated no Rule 60 basis to void the judgment. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) ("Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard."); *Buxbaum v. Deutsche Bank AG*, 216 F.R.D. 72, 81-82 (S.D.N.Y. 2003) (class member challenge to final approval challenge governed by Rule 60).

### III. AMA'S UNTIMELY "ANALYSIS" OF OPTION 1 CLAIMS IS UNRELIABLE

Based on AMA's analysis, first disclosed on June 2, 2023 (Exhibit 1), it speculates "many" Option 1 claims do not meet the Settlement Definitions because they were not *immediately* offset. Class Counsel considered AMA's analysis and extraordinary request for an informal interrogation of Dr. Netz (tantamount to pre-complaint discovery on barred claims) and concluded (even if AMA had valid claims) the analysis does not warrant further extending the two-year delay of the distribution caused by AMA's prior unsuccessful challenges or an expensive, time-consuming reevaluation of every claim to test the theory.[4] The governing Settlement Definitions do not require *immediate* trades. See ECF 420-3, at III(a)(i)-(viii). Yet, AMA seeks to rewrite them by adding that the second transaction must be "immediate," citing the Second Amended Complaint and misattributed the Second Circuit's decision (ECF 591, at 8)[5] which decision confirms the Administrator determined eligibility "pursuant to the class definition" (66 F.4th at 64) that could have only been derived from the Settlement Definitions in the Notice approved by this Court. See ECF Nos. 420-5 at 5-7 (approved at ECF No. 441). The RFED subpoenas that yielded data to determine Option 1 claims track the Settlement Class Definitions. See Exhibit 2 (Request 4: "transaction data identifying all FX transactions … between [RFED] and [the RFED's] retail customers" in affected states "including: a. the customer, b. the Defendant….."). By contrast, AMA relies on speculation based on statements in one RFED's SEC filings made between 2007-2015 – predating the productions by 4 years and

---

[4] "[A]pportionment of a settlement can never be tailored to the rights of each plaintiff with mathematical precision…principal goal of a plan of distribution must be the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *In re Credit Default Swaps Antitrust Litig.*, No. 13-md-2476-DLC, 2016 WL 2731524, at*9 (S.D.N.Y. Apr. 26, 2016) (Cote, J.).

[5] AMA's analysis cites information in Gain's 2010 Form 10-K (which Gain does not discuss after 2012) regarding "managed flow portfolio" but omits the portion of the document that states: "order flow that is initially directed into our managed flow portfolio may be subsequently reclassified as offset flow… ." Thus, offset flow that is not "immediate" can still meet the Definitions, explaining why AMA seeks to impose the "immediate" requirement.

5

the Distribution Motion by 5 years. *See* Ex. 1. AMA then applies an erroneous correlation, based on estimates of raw population data used by Class Counsel's experts Bibbings and Netz (ECF No. 593-2 at 4) who estimated that the number of retail FX *accounts* that may be in the qualifying states would roughly equal the percentage of the US population living in them. Without basis, AMA applies the *population* percentage estimate as an exact 1-for-1 proxy for the *dollar amount of transactional volume* in the accounts. AMA compounds the error by assuming only 11% of Gain's transactions can fit each year in the Settlement Class Period because it purports to have extrapolated figures for 3 years (2008-2010) of the 9 years (2007-2015) to which it then applies the 11%. AMA also omits that between 2011 and 2015, approximately 96% to 98% of Gain's "average daily retail trading volume was either naturally hedged or hedged by us with one of our liquidity providers," suggesting 11% is not a reliable uniform estimate for the nine-year period.[6] AMA's reliance on Gain's historical reporting of *its* customers' transactional volumes ignores that that information may not correlate to the data Gain produced because the reported figures do not include retail FX accounts that Gain acquired during the Class Period.[7]

## IV. FX PRIMUS' OPTION 2 CLAIM

AMA argues that plaintiff FX Primus was not registered to do business in Florida and is thus an ineligible claimant. This untimely argument misconstrues the Settlement Definitions which require only that a claimant have *transacted* in the state, i.e., "persons and entities who…

---

[6] https://www.sec.gov/Archives/edgar/data/1444363/000144436314000048/gcap2013123110-k.htm (97% in 2011, 2012, 96% in 2013); https://www.sec.gov/Archives/edgar/data/1444363/000144436315000054/gcap2014123110-k.htm (96% in 2014); https:www.sec.gov/Archives/edgar/data/1444363/000144436316000218/gcap2015123110-ka.htm (98% in 2015).

[7] Citing the Schwartz Declaration, AMA incorrectly states that Class Counsel referenced the acquisition of Gain in 2020. ECF 591, n.5. Although many such statements are incorrect, incomplete or out of context, counsel do not undertake to correct the Declarations here because they are irrelevant to resolving the issue before the Court. Accordingly, Counsel reserve the right to do so, as necessary. In fact, during the Class Period, Gain acquired the retail FX accounts of Global Futures & Forex, Ltd. in 2012 and acquired FX Solutions LLC in 2013. *See* https://www.sec.gov/Archives/edgar/data/1444363/000119312513112866/d440569d10k.htm; and https://www.sec.gov/Archives/edgar/data/1444363/000144436314000048/gcap2013123110-k.htm.

*indirectly purchased an FX Instrument from a Defendant or co-conspirator in Florida **and/or** while domiciled in Florida….*" *See*, e.g., ECF 455-1 (emphasis added). Domicile or registration to do business are not required. However, a modest reduction of FX Primus' claim amount is appropriate. FX Primus engaged in FX transactions in Florida and New York during the Class Period. Analyzing the domicile argument on Reply, Settlement Class Counsel determined FX Primus' claim included transactions after March 2, 2015 that were not made in a qualifying state which, if eliminated, would result in a ▮▮▮▮▮▮▮ reduction (equal to 3.3%) of the claim amount from ▮▮▮▮▮▮▮ to ▮▮▮▮▮▮▮ This error, which Settlement Class Counsel regret and for which they accept ultimate responsibility, appears to stem from a miscommunication about the proposed Class Period and the three operative Settlement Class Periods.[8] Although the claim determinations are final and the effect is *de minimis*, the Court may exercise its inherent powers to reduce the claim amount and direct ▮▮▮▮▮▮▮ and accrued interest be allocated *pro rata* to all other approved claims, including AMA (whose claim amount would increase by ▮▮▮▮ before interest). Courts have inherent equitable powers to approve a "change in the allocation of a settlement fund…." *Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F. Supp. 2d 440, 446 (S.D.N.Y. 2004); *see also Knuckles v. Mary Jane Elliott, PC*, No. 15-10175, 2016 U.S. Dist. LEXIS 94858, at *15 (E.D. Mich. July 20, 2016) (in a *cy press* distribution "no class member retained a live legal claim to those funds").

## V.     CONCLUSION

The Additional Disbursement Motion should be granted, including the requested release and discharge, and this litigation ended.

---

[8] The Second Amended Complaint alleges a class period of December 1, 2007 to December 31, 2013. ECF 183, at p. 25. The five settlement agreements use December 1, 2007 to December 15, 2015 (ECF 420-3); December 1, 2007 through preliminary approval (ECF 297) (July 29, 2019) and (ECF 441) (July 17, 2020). Thus, the governing Settlement Class Periods expand the proposed Class Period and include various end dates in 2015, 2019 and 2020.

Dated: June 14, 2023                    Respectfully submitted,

/s/ Michael Dell'Angelo
Michael Dell'Angelo
Michael J. Kane
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000 / Fax: (215) 875-4604
mdellangelo@bm.net
mkane@bm.net

*Settlement Class Counsel*

Todd M. Schneider
**SCHNEIDER WALLACE COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100 / Fax: (415) 421-7105
tschneider@schneiderwallace.com

*Counsel for Plaintiffs and the Settlement Classes*

Joseph C. Peiffer
**PEIFFER WOLF CARR & KANE, APLC**
201 St. Charles Ave. Suite 4610
New Orleans, LA 70170
Tel: (504) 523-2434 / Fax: (504) 523-2464
jpeiffer@pwcklegal.com

*Counsel for Plaintiffs and the Settlement Classes*

R. Bryant McCulley
Stuart McCluer
**MCCULLEY MCCLUER PLLC**
701 East Bay Street
Suite 411
Charleston, SC 29403
Tel: (843) 444-5404 / Fax: (843) 444-5408
bmcculley@mcculleymccluer.com
smccluer@mcculleymccluer.com

*Counsel for Plaintiffs and the Settlement Classes*