# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES CONTANT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA CORPORATION, *et al.*, <br><br> Defendants. | Civil Action No. 17-cv-3139-LGS <br><br> (related to No. 13-cv-7789-LGS) |

**RENEWED MOTION TO SEAL INDIVIDUAL CLAIM DETAILS IN REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR DISBURSEMENT OF THE INTEREST INCOME EARNED ON THE SETTLEMENT FUNDS**

On June 14, 2023, Plaintiffs filed a Reply Memorandum in Support of Plaintiffs' Motion for Disbursement of the Interest Income Earned on the Settlement Funds ("Reply") (ECF 595) and a Letter Motion to Seal (ECF 594). The Letter Motion to Seal requested that this Court seal only four separate dollar figures contained in the Reply which, if made public, would disclose (or may enable one to determine) the claim amounts of two individual claimants (AMA and FX Primus) where, to date, all individual claim amounts have been anonymized. Specially, the figures are (i) the approved amount of FX Primus' claim as reflected on the anonymized publicly available Claims Register filed on the ECF in this case and maintained on the Claims Administrator's website; (ii) an amount by which Settlement Class Counsel indicated FX Primus' claim amount could be reduced; (iii) the sum of (i) and (ii); and (iv) the corresponding amount by which AMA's claim would be increased, on a *pro rata* basis, if the reduction in (ii) were applied. Importantly, the Reply specified the percentage (3.3%) represented by the dollar value of the reduction in (ii). Thus, if any of the figures in (i), (ii) or (iii) were not sealed, it may be possible to determine the other figures among (i), (ii) and (iii). On June 16, 2023, this Court denied Plaintiffs' Motion to Seal without prejudice and leave to renew the Motion to Seal by June 20, 2023. For the reasons set forth herein, Plaintiffs respectfully request that this Court grant this Renewed Motion to Seal consistent with *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) and the sealing determinations in this case and this District generally.

I. **Standard Applicable to Sealing Under *Lugosch***

In *Lugosch*, the Second Circuit Court of Appeals explained that the public has a presumptive "right of public access to judicial documents." 435 F.3d at 119. "'[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access.'" *Id*. at 115 (quotation omitted). "In order to be designated a

1

judicial document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'" *Id*. (quotation omitted). Where documents are not "judicial," there is no presumption of public access. *Id.* at 119. "Once the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption. . . . 'Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.'" *Id.* (quotation omitted). Where documents "play only a negligible role in the performance of the court's Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Id.* at 121.

"Finally, after determining the weight of the presumption of access, the court must 'balance competing considerations against it.'" *Id.* at 120 (citations and quotation omitted). Even where the public right of access attaches, "'documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* (quotation omitted). Courts in the Second Circuit routinely hold that such "higher values" include protecting from disclosure proprietary, sensitive, and confidential business information. *See*, *e.g.*, *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (allowing sealing of "specific business information and strategies, which, if revealed, 'may provide valuable insights into a company's current business practices that a competitor would seek to exploit.'") (quotation omitted); *GoSMiLE, Inc. v. Levine*, 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011) (sealing documents filed in connection with motion for preliminary injunction where documents contained company's proprietary marketing strategies, product development, costs and budgeting information). *See*

*also In re Sept. 11 Litig.*, 723 F. Supp. 2d 526, 533 (S.D.N.Y. 2010) (Hellerstein, J.) (disclosing aggregate claim information in class action, but declining to unseal individual recovery amounts); *Denney v. Jenkens & Gilchrist*, No. 03-CV-5460 (SAS), 2004 WL 1197251, at *8 (S.D.N.Y. May 19, 2004) (Scheindlin, J.) (directing that individual claim amounts in class action be filed under seal).

    II.    **The Instant Request to Seal Individual Claim Information Preserves the Higher Value of Privacy and is Narrowly Tailored and Consistent with the Sealing Directions in this Case and this District**

The individual claim amounts and other figures that would enable members of the public to determine those figures should be sealed particularly where, as here, the entire anonymized Claims Register has been available to and remains available to the public. Protecting from disclosure an individual claimant's claim amount in a class action is recognized generally in this District, has been the practice in this case and preserves the privacy of individual Settlement Class Members whose interests support not publicly attaching identities to individual approved claim amounts.

Specifically, this Court and the Second Circuit Court of Appeals granted applications to redact and seal AMA's claim amount in this case. For example, Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Disbursement of Settlement Funds ("Disbursement Memorandum"), identified the amount of AMA's approved claim as set forth on the publicly available anonymized Claims Register. ECF 556. Plaintiffs filed a corresponding Motion to Seal the amount of AMA's approved claim (ECF 554) which this Court granted. ECF 563. Accordingly, the publicly available version of Plaintiffs' Disbursement Memorandum is redacted to seal the amount of AMA's approved claim amount. *Compare* ECF 555, at pp. 3-5 and 556, at pp. 3-5. Likewise, on June 8, 2022, the Second Circuit Court of Appeals granted Plaintiffs'

3

Motion to Seal portions of Appellee's Response to AMA's appeal which included the anonymized claim amount of AMA in the District Court action. Accordingly, the amount of AMA's approved claim as set forth on the anonymized Claims Register is sealed. *See* Case 21-3058, Doc. 109.

In addition to this Court's and the Second Circuit's orders sealing individual claim amounts in this case, other courts in this District have also sealed individual claim amounts in class actions. For example, in *In re Sept. 11 Litig.*, 723 F. Supp. 2d 526, 533 (S.D.N.Y. 2010) (Hellerstein, J.), the court considered a request by the New York Times to unseal certain settlement information relating to a settlement between a host of insurance companies for claims against certain airlines arising from the September 11 attacks. The court agreed to unseal the aggregate settlement amount and its allocation, but not the individual proceeds to the settling plaintiffs. The court maintained the individual settlement amounts under seal holding:

> With respect to the allocation of settlement proceeds among the settling plaintiffs, I hold that the privacy interests of the plaintiffs outweigh the presumption of access. Throughout this litigation I have disclosed only aggregate recoveries of plaintiffs settling claims against the Aviation Defendants and kept confidential the amounts of individual recoveries. I find no reason now to permit such disclosure.

*Id.* Similarly, in *Denny v. Jenkins & Gilchrist*, a class action that sought damages arising out of certain tax advice, Judge Scheindlin directed that individual claimant amounts be filed under seal. Specifically, Judge Scheindlin directed that:

> the Special Master shall file with the Clerk of the Court, under seal, a final report listing all Settlement Class Members, their Confidential identification numbers, which Settlement Class Members filed Proofs of Claim, the disposition of each Claim (whether allowed, disallowed or otherwise adjudicated), the dates and **amounts of all payments made to each Claimant**, a final reconciliation of all Settlement Funds (including earnings thereon) received and disbursed by the Special Master, and any other matter the Special Master deems necessary to a full understanding of the administration of this Settlement. Nothing in this Order and the Agreements shall prejudice any right of the Government to obtain a copy of the final report.

*Denney v. Jenkens & Gilchrist*, No. 03-CV-5460 (SAS), 2004 WL 1197251, at *8 (S.D.N.Y. May 19, 2004) (emphasis added).

Here, Class Counsel have consistently followed a similar practice. For example, Class Counsel provided a detailed anonymized Claims Register which enabled every class member with an approved claim to identify the amount of their claim by matching the Claims Register with the claimant's unique claim number. That Claims Register, which was filed on the Court's ECF system and posted on the Claims Administrator's website, likewise enables any member of the public to know both the aggregate recovery and the approved claim amount of every Settlement Class Member with an approved claim, while maintaining as confidential the identity of the corresponding individual Settlement Class Member.

For example, the Claims Administrator's Declaration in support of Plaintiffs' Motion to Distribute the Settlement Funds (ECF 538) explained, in relevant part, "an Excel file containing the proposed distribution amounts to individual Claimants, will be posted on the website, www.fxindirectantitrustsettlement.com, so that Class Members can review their potential award. A copy of this Excel file is also attached as Exhibit B (Option 1 claims); Exhibit C (Option 2 claims); and Exhibit D (Both Option 1 and 2 claims). Class Members can identify themselves by their claim identification number provided to them during the registration process and again in the claim process. Class Member names have not been included to protect their identity." ECF 541, ¶35. To this day, that anonymized Claims Register is maintained on the Claims Administrator's website. *See* https://www.fxindirectantitrustsettlement.com/home/documents/. Likewise, the Motion for Disbursement of the Interest Income Earned on The Settlement Funds (ECF 580) was supported by a declaration explaining that the updated anonymized Claims Register (ECF 582-1) which identified the proposed *pro rata* distribution amounts of interest was

5

being filed on the Court's ECF system and would also be posted on the Administrator's website. ECF 582, ¶13 (updated Claims Register posted at

https://www.fxindirectantitrustsettlement.com/home/documents/).

The instant Renewed Motion is narrowly tailored to protect the individual claimants' privacy interests -- while continuing to make available to the public the aggregate claim information, broken down by claim type (i.e., Option 1 and Option 2), and specifying the amount of each claim on an anonymized basis -- as it seeks only to seal four figures, nothing more: (i) the approved amount of FX Primus' claim as reflected on the anonymized Claims Register; (ii) an amount by which Settlement Class Counsel indicated FX Primus' claim amount could be reduced; (iii) the sum of (i) and (ii); and (iv) the corresponding amount by which AMA's claim would be increased, on a *pro rata* basis, if the reduction in (ii) were applied. Because the Reply brief identifies the percentage (3.3%) by which FX Primus' claim would be reduced, which percentage figure is not the subject of the request to seal, Settlement Class Counsel determined that if items (i), (ii) or (iii) were disclosed, the unsealed figure(s) might be used to deduce those that were not by applying the publicly available percentage amount. The same logic applies to the request to seal the figure in item (iv). Thus, out of an abundance of caution, Settlement Class Counsel sought to seal the figure in (iv) to prevent a member of the public from deducing the amount of AMA's claim from the publicly available anonymized Claims Registers. If the requested information is not sealed, then FX Primus would be the only claimant whose specific claim amount would be part of the public record in this case and there is a risk that AMA's claim amount could be deduced.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' respectfully request that the Renewed Motion to Seal should be granted.

Dated: June 20, 2023

Respectfully submitted,

*/s/ Michael Dell'Angelo*
Michael Dell'Angelo
Michael J. Kane
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000 / Fax: (215) 875-4604
mdellangelo@bm.net
mkane@bm.net

*Settlement Class Counsel*

Todd M. Schneider
**SCHNEIDER WALLACE COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100 / Fax: (415) 421-7105
tschneider@schneiderwallace.com

*Counsel for Plaintiffs and the Settlement Classes*

Joseph C. Peiffer
**PEIFFER WOLF CARR & KANE, APLC**
201 St. Charles Ave. Suite 4610
New Orleans, LA 70170
Tel: (504) 523-2434 / Fax: (504) 523-2464
jpeiffer@pwcklegal.com

*Counsel for Plaintiffs and the Settlement Classes*

7

> R. Bryant McCulley
> Stuart McCluer
> **MCCULLEY MCCLUER PLLC**
> 701 East Bay Street
> Suite 411
> Charleston, SC 29403
> Tel: (843) 444-5404 / Fax: (843) 444-5408
> bmcculley@mcculleymccluer.com
> smccluer@mcculleymccluer.com
>
> *Counsel for Plaintiffs and the Settlement Classes*