IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES CONTANT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, *et al.*,<br><br>Defendants. | Civil Action No. 17-cv-3139-LGS<br><br>(related to No. 13-cv-7789-LGS) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
TO UPDATE *PRO RATA* DISTRIBUTION AMOUNTS TO CORRECT
CERTAIN ADMINISTRATIVE MATCHING ERROR IN OPTION ONE CLAIMS,
UPDATE ESTIMATED INCOME TAX RESERVE AND FOR LEAVE TO PAY
FUTURE INCOME TAXES ON THE SETTLEMENT FUND**

Class Counsel respectfully submit this Memorandum of Law in support of their accompanying Motion seeking leave of Court to: (i) update the reserve for the payment of taxes associated with the Settlement Fund through the fourth quarter of 2023; (ii) pay future taxes that may be owed on the Settlement Fund and reasonable professional fees for the preparation and filing of the associated tax returns, without further leave of Court; and (iii) adjust the proposed *pro rata* distribution amounts that result from recently discovered corrections to the administrative matching of data in certain Option One claims. While preparing to distribute the Net Settlement Fund, the Court-appointed Claims Administrator informed Class Counsel of a potential data matching error in the original approved *pro rata* claim amounts. The potential error was promptly investigated. It was determined that certain Option One claim amounts had been understated because some transactional data were not matched to their corresponding claim when the claims were calculated. This necessarily had the effect of changing all claim amounts that are not for a fixed amount (*de minimis* claims) because they were calculated on a *pro rata* basis. Accordingly, Class Counsel directed the Claims Administrator to programmatically rematch all Option One claims and recalculate all claims pursuant to the Plan of Allocation. The Court's Orders approved distributions to each Authorized Claimant based on *pro rata* calculations pursuant to the Court approved Plan of Allocation. *See* ECF 564; ECF 608. Because the corrections to the *pro rata* amounts differ from the amounts provided to the Court with the distribution motions, Class Counsel submit this Memorandum of Law to notify the Court of the matching error and request leave to distribute the *pro rata* claim amounts based on the corrected matching. In addition, taxes have accrued and will continue to accrue on the Settlement Fund for which Class Counsel seek authorization to direct the preparation and filing of tax returns and the payment of taxes.

I.    **PROCEDURAL HISTORY**

On May 5, 2020, Class Counsel moved for preliminary approval of five separate settlements, encompassing all defendants, totaling $23,630,000, and approval of a Plan of Allocation to distribute the Net Settlement Fund on a *pro rata* basis. ECF 419. No member of the class objected to any aspect of the motion for preliminary approval or the proposed Plan of Allocation. On July 17, 2020, the Court preliminarily approved the proposed settlements and the Plan of Allocation and appointed Heffler Claims Group, n/k/a Kroll Settlement Administration LLC, as the Claims Administrator ("Claims Administrator"). ECF 441. On November 19, 2020, the Court issued final judgment (ECF 459) and granted final approval of the class settlement with final judgment dismissing the matter with prejudice. ECF 460. In doing so, the Court held that the Plan of Allocation "has a reasonable basis and is fair and adequate." ECF 460, at ¶ 7. No member of the class objected to any aspect of the motion for final approval. Thereafter, the claims process was undertaken -- although the implementation was pending finality of the Court's October 17, 2023 Order granting Class Counsel's Motion for Disbursement of Interest Income on the Settlement Funds ("Interest Distribution Order"). ECF 608.

Pursuant to the Court's Order (ECF 531), on November 30, 2021, Class Counsel timely filed a motion for distribution of the net settlement proceeds ("Distribution Motion"). ECF 538. The Court granted the Distribution Motion on January 5, 2022 ("Settlement Distribution Order," collectively with the Interest Distribution Order ("Distribution Orders")).[1] ECF 564. The Settlement Distribution Order provides that authorized Claimants shall receive their *pro rata* share of the Net Settlement Funds. ECF 562, ¶ 4. On May 18, 2023, Class Counsel filed a Motion for

---

[1] The Court's grant of the Settlement Distribution Motion was subject to the resolution of an Option Two claimant's interlocutory appeal of its claim determination. ECF 564.

2

Disbursement of Interest Income on the Settlement Funds ("Interest Distribution Motion"),[2] seeking leave to disburse, on a *pro rata* basis, the considerable interest income that had accrued on the Settlement Funds following entry of the Settlement Distribution Order, and requested a reserve for the payment of taxes associated with the Settlement Fund and professional fees for preparing tax returns through the second quarter of 2023. ECF 580. The Court granted the Interest Distribution Motion on October 17, 2023. ECF 608. The Interest Distribution Order provides that "Distribution by the Claims Administrator to each authorized Claimant of its pro rata share of the Additional Net Settlement Funds, is hereby approved." *Id.* at ¶ 2. The Interest Distribution Order also approved a $51,000 reserve for the payment of taxes associated with the Settlement Funds and the professional fees for preparing tax returns. ECF 608, at ¶ 7. The Interest Distribution Order became final on November 16, 2023. Accordingly, Lead Counsel instructed the Claims Administrator to promptly implement distribution of the Net Settlement Funds pursuant to the Court's Distribution Orders.

## II. THE SETTLMENT FUND INCOME TAX RESERVE AND FUTURE TAX PAYMENTS

The May 18, 2023 Interest Distribution Motion requested a reserve of $51,000 for the payment of taxes associated with the Settlement Funds and the professional fees for preparing tax returns through the second quarter of 2023. ECF 581, at ¶ 9. Specifically, the Claims Administrator estimated that through the second quarter of 2023, $51,000 should be held in reserve to pay $45,000 in anticipated taxes and future tax administrative fees of $6,000. ECF 583, at ¶ 7. On October 17, 2023, the Court granted the Interest Distribution Motion and approved the requested tax reserve. ECF 608, at ¶ 7. Since May 1, 2023 the Settlement Fund earned over $680,000 in

---

[2] The Interest Distribution Motion was filed promptly after the Second Circuit Court of Appeals issued its mandate sending the case back to this Court on May 14, 2023 (ECF 578) after denying the Option Two claimant's appeal. Second Cir. Document 168-1, at 4.

interest for which a tax payment will soon be due for the period through the fourth quarter of 2023. The Claims Administrator estimates that $30,000 should be held in reserve to pay anticipated taxes on the interest income earned on the Settlement Fund through the fourth quarter of 2023.

It is anticipated that it will be necessary to pay taxes on some portion of the Settlement Fund in 2024 pending final disposition of the Settlement Fund. The Claims Administrator estimates that it will take approximately three weeks from the date on which the Court were to grant this Motion to begin distributing checks to Authorized Claimants. Those checks will be mailed and require some time to be cashed. Therefore, it is anticipated that, even if the Court were to grant the instant Motion immediately, some portion of the Settlement Fund will continue to accrue interest in 2024 and that additional tax payments and the preparation of tax returns will be required for 2024. In order to eliminate the need to burden the Court with additional motions for leave to authorize payment for the preparation and filing of tax returns and for the payment of taxes on the Settlement Fund, Class Counsel seek leave to make such tax and tax preparation payments in the future without further leave of Court. Upon the final disposition of the Settlement Fund, Class Counsel will submit a final report regarding the disposition of the Settlement Fund.

## III. CORRECTED MATCHING OF APPROVED OPTION ONE CLAIMS

While preparing to distribute the Net Settlement Funds following entry of the Interest Distribution Order, the Claims Administrator identified an administrative error impacting certain Option One claims. The attached Second Supplemental Declaration of Justin R. Hughes in Connection with Plaintiffs' Motion for Disbursement of the Settlement Funds ("Second Supplemental Decl.") explains the administrative error identified by the Claims Administrator and the steps that the Claims Administrator took to correct and recompute the *pro rata* claim amounts in accordance with the Plan of Allocation.

In sum, the Claims Administrator determined that the approved claim amounts of some, but not all, Option One claims were understated because the calculations did not match all of the RFED Data applicable to an Authorized Claimant's claim. Specifically, with respect to some Option One claimants who transacted with more than one RFED, the claim computation did not match all of the RFEDs to the claimant, thereby potentially excluding compensable transactions in the RFED Data for the impacted claims. *See* Second Supplemental Decl., at ¶ 12. The impacted Option One claims, as calculated, understated the *pro rata* claim amount based on the Plan of Allocation. *Id*. The matching error did not apply to the calculation of Option Two claims because those claims were based on data submitted by the claimant. *Id*.

Upon identifying and confirming the matching error that resulted in an understatement of some approved Option One claims, the Claims Administrator worked diligently with Class Counsel and applEcon LLC (Plaintiffs' expert economic consulting firm ("applEcon")) to identify and address the issue, and immediately sought to conduct a programmatic matching of Authorized Claimants to all corresponding categories of information in the RFED Data for every Option One claim and to determine whether a *de minimis* claim should have been computed on a *pro rata* basis rather than as a *de minimis* claim. *Id*. at ¶ 15.

As a result of those efforts, the Claims Administrator and applEcon performed a *pro rata* calculation of the corrected claim amounts for all Option One and Option Two claimants as reflected on Exhibit 1 to the Second Supplemental Declaration.

## IV. IT IS WITHIN THE COURT'S INHERENT POWER TO APPROVE THE CORRECTED *PRO RATA* CLAIMS FOR DISTRIBUTION

The Distribution Orders, consistent with the Plan of Allocation, Claim Form, and Notice, require *pro rata* distribution of the Net Settlement Fund. However, the Distribution Orders do not expressly address a circumstance where, as here, corrections are required to implement the *pro*

*rata* calculations required by the Plan of Allocation as those corrected calculations differ from the amounts calculated when the Settlement Distribution Order was entered. Although the Distribution Orders are final, it is within the Court's inherent power to direct that the Claims Administrator distribute the Net Settlement Fund and accrued interest (consistent with the Court's Distribution Orders) on a *pro rata* basis, pursuant to the Court-approved Plan of Allocation, consistent with the corrected claim calculations as reflected in Exhibit 1 to the Second Supplemental Declaration.

Here, the Plan of Allocation provided that "the [net settlement] funds be distributed to members of the Settlement Classes *pro rata* based on each member's transactional volume, with adjustments to account for the dates and currency pairs corresponding to those transactions." ECF 419, at 39-40, 41. As explained in the memorandum of law in support of the Plan of Allocation:

> The transactional data obtained from the four RFEDs is sufficient for the Claims Administrator and Plaintiffs' experts to calculate pro rata claim amounts for the majority of members of the Settlement Classes, thereby limiting the need for many claimants to submit detailed documentation in conjunction with their claim forms. Plaintiffs also propose to provide claimants with the option to submit transactional records to support their claim or in lieu of accepting the Claims Administrator's estimates. The documented claim option will allow claimants to have their claim amount calculated based on their own transactional records, which will be particularly useful for claimants with large transactional volumes and those for which detailed transactional records are unavailable in the data by the RFEDs.

ECF 419, at 42 (footnote omitted).

The Court-approved Claim Form and Court-approved Notice to the Class likewise expressly provided that the final claim amounts would be calculated on a *pro rata* basis. For example, the Claim Form states:

> The Claims Administrator and Plaintiffs' counsel have obtained transactional data from the following RFEDs: (1) Forex Capital Markets ("FXCM"); (2) GAIN Capital (which operated the RFED FOREX.com); (3) Oanda Corporation; and (4) FXDirectDealer, LLC ("FXDD"). Records reflecting your FX transactions are included in this data. Claimant awards will be calculated *pro rata* based on the total transactional volume of each claimant during the Class Period.

6

ECF 467, at 3. The Claim Form explains Option One and Option Two claims will be calculated on a *pro rata* basis. *Id.* ("The amount of your payment, if any, will be determined by the Plan of Allocation. The Settlement Administrator will first determine the Settlement Class Member's eligible transaction volume on FX Instruments. The Plan of Allocation includes two claim amount options: a "Pro Rata Award" and a "De Minimis Award." For the Pro Rata Award, award calculations are based on a model that will estimate the Class Member's claim relative to the claims of the other Class Members. The Pro Rata Award model will apply a uniform overcharge percentage rate across all currency pairs to a Class Member's eligible FX instrument transactions."); *id.* at 4, 7 ("The Net Settlement Fund will be distributed to Claimants *pro rata* based on each Claimant's transaction volume, with adjustments to account for the dates and currency pairs corresponding to those transactions."); *id.* at 5 (Option One: "The Net Settlement Fund will be distributed to Claimants *pro rata* based on each Claimant's transaction volume, with adjustments to account for the dates and currency pairs corresponding to those transactions."); *id.* at 3 (Option Two clams: "You may submit your own detailed transactional records to be included for purposes of calculating your *pro rata* claimant award….").

Likewise, the Court-approved Notice to the Class explains that claims will be determined on a *pro rata* basis. *See* ECF 455-1, at p. 30 ("The Plan of Allocation includes two claim amount options: a 'Pro Rata Award' and a 'De Minimis Award.' For the Pro Rata Award, award calculations are based on a model that will estimate the Class Member's claim relative to the claims of the other Class Members."); *see also id.* at 31, 38.

Courts commonly apply their inherent powers to the allocation of class action settlement funds. In *Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F. Supp. 2d 440, 446 (S.D.N.Y. 2004), the court exercised its inherent powers to allow certain claimants to recover against a class action

7

settlement fund where the additional claims had the effect of reducing the value of all other claimants who filed timely. The core principle on which *Dahingo* rests has broad application and applies equally here. There, the court explained that:

> [W]here a change in the allocation of a settlement fund affects only the distribution among class members and not the obligations of the defendant, courts will exercise their equitable powers. In *Zients*, for example, the court permitted late claims because "allowing these five claims would result in only a minuscule reduction in recovery by timely plaintiffs." 459 F.2d at 630. Similarly, in *In re "Agent Orange" Product Liability Litigation*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y.1988), the court not only allowed late claims but also permitted class members who had previously opted-out to make claims on the settlement fund. Since the settlement agreement had established a fixed or closed-end fund, there could be no prejudice to the defendants, and the plaintiffs who had filed timely claims had no justifiable expectation in any particular pay-out.

*Id.* (internal citations omitted).

The court in *Dahingo* cited to *Zients v. LaMorte*, 459 F.2d 628, 630-31 (2d Cir. 1972) (citations omitted), which lays out the principle that a court holds power over the distribution of a settlement fund:

> Until the fund created by the settlement is actually distributed, the court retains its traditional equity powers. It is not novel law to announce that a court supervising the distribution of a trust fund has the inherent power and duty to protect unnamed, but interested persons. In the words of Professor Chafee, the dean of equity law, these individuals are akin to 'wards of the court.' Moreover, in this case, the Stipulation, approved by the court, vested the court with the authority to administer the settlement plan. In the order approving the plan, the court explicitly reserved 'jurisdiction over the effectuation of the settlement and compromise provided for herein for all purposes including the resolution of any disputes that may arise with respect to the payment of the settlement proceeds.'
>
> Thus, we have before us several claimants who did not receive notice of the settlement or deadline for filing claims for the reasons we have stated, and yet who had bona fide claims but were denied participation in the fund. Moreover, allowing these five claims would result in only a miniscule reduction in recovery by timely claimants. We conclude therefore that where, as here, all the equities are on the side of the claimants, the fund has not been distributed and the administration of the fund would be insignificantly hampered by allowing these few late claims, appellants should be permitted to participate in the fund.

Numerous courts have reached similar conclusions.[3]

To the extent that leave is required to correct the *pro rata* calculations prior to distribution by the Claims Administrator, the Court possesses equitable powers to address the very type of issue identified here with respect to a class action settlement distribution, particularly where no legal rights are impacted, *e.g.*, the liability exposure of a settling defendant (which is an issue that tends to come up where there is a reversionary interest in unclaimed settlement funds).

---

[3] *See, e.g.*, *In re Sears, Roebuck & Co. Front-Loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2018 WL 1138541, at *2 (N.D. Ill. Mar. 2, 2018) ("In addition to this explicit retention of jurisdiction, the Court's inherent powers and fiduciary duty continue 'until the [settlement fund] is actually distributed.'") (quoting another N.D. Ill. case which quotes *Zients*); *Knuckles v. Elliott*, No. CV 15-10175, 2016 WL 3912816, at *6 (E.D. Mich. July 20, 2016) (in the context of a *cy pres* issue and reviewing another court's decision, "[c]iting several cases, the court [in another case] concluded that no class member retained a live legal claim to those funds and thus the proposed modifications to the distribution of the funds did not alter the legal rights of class members"); *In re Urethane Antitrust Litig.*, No. MDL 1616, 2008 WL 5215980, at *1 (D. Kan. Dec. 12, 2008) ("In support of the motion, plaintiffs note that, until settlement funds are distributed, the court retains its traditional equitable powers concerning the settlement.") (citing *Zients*); *In re Linerboard Antitrust Litig.*, No. CIV. 98-5055, 2004 WL 966236, at *3 (E.D. Pa. May 4, 2004) ("Settlement administration in a complex class action often requires the courts to use their equitable powers under Rule 23 to manage the disparate interests competing over a finite pool of assets with which to satisfy the class. As stated in the Manual for Complex Litigation, '[t]he Court's equitable powers may be necessary to deal with other problems that commonly arise during administration of settlements but might not be covered by the terms of the agreement.' These equitable powers are retained by the court until the settlement fund is actually distributed. 'A primary use of these equitable powers is balancing the goals of expedient settlement distribution and the consideration due to late-arriving class members.'") (citations omitted); *see also Alaska Elec. Pension Fund v. Bank of Am., Corp.*, No. 14-CV-7126 (JMF), 2020 WL 916853, at *1 (S.D.N.Y. Feb. 26, 2020), *aff'd sub nom. Alaska Elec. Pension Fund v. Fortinbras Asset Mgmt. GmbH*, 835 F. App'x 647 (2d Cir. 2021) ("In carrying out that mandate, 'district court[s] ha[ve] broad supervisory powers with respect to the administration and allocation of settlement funds.' As in other contexts, courts must exercise such powers to ensure that 'the best interests of the class as a whole' are safeguarded."); *In re Citigroup Inc. Sec. Litig.*, No. 07-CV-9901 SHS, 2014 WL 7399039, at *1 (S.D.N.Y. Dec. 29, 2014) ("District courts retain 'broad supervisory powers with respect to the administration and allocation of settlement funds.' In distributing the funds, a court must act 'in the best interests of the class as a whole' by 'exercis[ing] its independent judgment to protect the interests of class absentees ... [and] the interests of more vocal members.'").

9

Here, the Distribution Orders direct that Authorized Claimants receive their *pro rata* share of the Net Settlement Funds pursuant to the Plan of Allocation. ECF 562, ¶ 4; ECF 608, ¶ 2. The Claim Form and Notice all clearly and consistently explain that the claim amounts will be paid based on a *pro rata* calculation. Although the matching error in the claim matching recently identified by the Claims Administrator is regrettable, the correction ensures that the letter and intent of the Plan of Allocation are implemented accurately and consistent with the information provided to the Class in the Claim Form and Notice. To date, no Settlement Funds have been distributed to the Authorized Claimants; therefore, there is no actual prejudice. Moreover, to date, the matching error has only delayed the distribution by a few weeks (and the Settlement Fund continues to accrue interest that will be distributed on a *pro rata* basis pursuant to the Interest Distribution Order) while Class Counsel investigated the issue with the Claims Administrator and applEcon and to ensure the application of calculations intended by the Plan of Allocation. Class Counsel, the Claims Administrator, and applEcon are satisfied that the original matching error has been corrected. Subject to Court approval, the Claims Administrator can begin the long-awaited distribution of the Net Settlement Fund to Authorized Claimants based on the corrected amounts within three weeks.

## V.     CONCLUSION

For the reasons set forth herein, Class Counsel respectfully request that the Court grant the instant Motion so that the Claims Administrator can promptly distribute the Net Settlement Funds to Authorized Claimants and pay current and future taxes due on the Settlement Fund.

Dated: December 8, 2023                                  Respectfully submitted,

/s/ Michael Dell'Angelo
Michael Dell'Angelo
Michael J. Kane
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000 / Fax: (215) 875-4604
mdellangelo@bm.net
mkane@bm.net

*Settlement Class Counsel*

Todd M. Schneider
**SCHNEIDER WALLACE COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100 / Fax: (415) 421-7105
tschneider@schneiderwallace.com

*Counsel for Plaintiffs and the Settlement Classes*

Joseph C. Peiffer
**PEIFFER WOLF CARR & KANE, APLC**
201 St. Charles Ave. Suite 4610
New Orleans, LA 70170
Tel: (504) 523-2434 / Fax: (504) 523-2464
jpeiffer@pwcklegal.com

*Counsel for Plaintiffs and the Settlement Classes*

R. Bryant McCulley
Stuart McCluer
**MCCULLEY MCCLUER PLLC**
701 East Bay Street
Suite 411
Charleston, SC 29403
Tel: (843) 444-5404 / Fax: (843) 444-5408
bmcculley@mcculleymccluer.com
smccluer@mcculleymccluer.com

*Counsel for Plaintiffs and the Settlement Classes*