UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES CONTANT, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br><br> BANK OF AMERICA CORPORATION, *et al.*, <br><br> *Defendants*. | No. 17-cv-3139-LGS <br><br> (related to No. 13-cv-7789-LGS) |

**SECOND SUPPLEMENTAL DECLARATION OF JUSTIN R. HUGHES IN CONNECTION WITH PLAINTIFFS' MOTION FOR DISBURSEMENT <u>OF THE SETTLEMENT FUNDS</u>**

I, Justin R. Hughes, declare as follows:

1. I am a Senior Director of Kroll Settlement Administration LLC f/k/a Heffler Claims Group ("Kroll"), the court-appointed Claims Administrator in this Action.[1] I submit this declaration to provide updated information to the Court regarding the proposed distribution amounts previously set forth in the *Supplemental Declaration of Justin R. Hughes in Connection with Plaintiffs' Motion for Disbursement of the Interest Income Earned on the Settlement Funds* (the "Supplemental Declaration"), filed on May 18, 2023. The following statements are based on my personal knowledge and information provided to me by other Kroll employees under my general supervision and, if called to testify, I could and would do so competently.

2. As set forth in the Supplemental Declaration, Kroll estimated that through the second quarter of 2023, $51,000 should be held in reserve to pay $45,000 in anticipated taxes and

---

[1] Capitalized terms used herein and not otherwise defined have the meanings assigned to them in the Settlement Agreements entered into in this Action.

1

future tax administrative fees of $6,000. Since the filing of my Supplemental Declaration, the Settlement Fund earned approximately $680,000 in interest for which a tax payment will soon be due for the period through the fourth quarter of 2023. Kroll estimates that an additional $30,000 should be held in reserve to pay anticipated taxes on the interest income earned on the Settlement Fund through the fourth quarter of 2023.

3. On January 5, 2022, the Court entered its *Order Granting Plaintiffs' Motion for Disbursement of Settlement Funds* (the "Settlement Distribution Order"), pending and subject to the resolution of Claimant AMA Capital Management LLC's appeal in favor of Class Counsel. The Settlement Distribution Order, among other things, approved the distribution to each Authorized Claimant of its *pro rata* share of the Net Settlement Funds, as set forth in the *Declaration of Lori L. Castaneda in Support of Plaintiffs' Motion for Disbursement of Settlement Funds* (the "Initial Declaration"), filed on November 30, 2021.

4. Following the Second Circuit Court of Appeals' denial of the appeal of Claimant AMA Capital Management on April 14, 2023, and the issuance of a mandate on May 8, 2023, Kroll submitted the Supplemental Declaration to update the Court regarding additional interest income which had accrued on the settlement fund since the Initial Declaration.

5. On October 17, 2023, the Court entered its *Order Granting Plaintiffs' Motion for Disbursement of Interest Income on the Settlement Funds* (the "Interest Distribution Order" and, together with the Settlement Distribution Order, the "Distribution Orders"). The *pro rata* allocation determinations set forth in both of Kroll's prior declarations were made in consultation with Plaintiffs' expert economic consulting firm, applEcon LLC ("applEcon"), based on the previous Court-approved "Plan of Allocation."

6. It is my understanding that, after entry of the Interest Distribution Order, Class Counsel began to prepare to implement the payment of approved claims with the intention that, promptly after the Court's Interest Distribution Order became final on or about November 16, 2023, Class Counsel would implement payments to Authorized Claimants pursuant to the Distribution Orders.

7. As described in more detail in the Initial Declaration, the Plan of Allocation provided for two types of claims: (i) *pro rata* claims and (ii) *de minimis* claims.

8. There are two types of *pro rata* claims: Option One and Option Two. *Pro rata* Claimants had the option of (a) having applEcon calculate their *pro rata* settlement award based on data obtained from the four largest retail foreign exchange dealers ("RFEDs") which detailed transactions by members of the Settlement Classes ("RFED Data") ("Option One"); or (b) submitting their own transactional records for purposes of calculating their *pro rata* award ("Option Two"). Class Members that were not eligible to submit an Option One claim or Option Two claim could be entitled to a *de minimis* claim.

9. The section of the Notice mailed to the Class (ECF 455-1) provided a detailed explanation of the difference between *pro rata* and *de minimis* claims and the methods for calculating Pro Rata Awards and De Minimis Awards.

10. Option One claims were to be calculated based on the RFED Data applicable to a claimant who requested an Option One claim, and Option One claimants were not required to provide additional documentation in support of their claims.

11. Option Two claims were also calculated on a *pro rata* basis, and Option Two claimants were required to submit detailed transactional records (e.g., account statements and

transaction confirmations) and fill out and submit the "Option Two Claim Form Spreadsheet" (the "Spreadsheet") by uploading it to the settlement website via the online claim portal.

12. After the entry of the Interest Distribution Order on October 17, 2023, Kroll was made aware of a potential discrepancy in proposed Class Member distribution amounts that was the result of an administrative oversight impacting certain approved Option One claims. Specifically, it was determined that some, but not all, awards for Option One claims where the Option One claimant transacted with more than one RFED from which RFED Data was obtained, were not computed based on all the RFED Data obtained from every RFED with whom the claimant transacted. For example, in some instances, if an Option One claimant transacted with two RFEDs, an Option One claim award may have been incorrectly calculated pursuant to the terms of the Plan of Allocation because the claimant was not matched to both RFEDs and, therefore, data from only one of the two RFEDs was used in the calculation thereby understating the *pro rata* claim amount. The matching error did not apply to the calculation of Option Two claims because those claims were based on data submitted by the claimant, however it did impact the *pro rata* award distributions to Option Two claimants.

13. Upon confirming the matching error, Kroll worked diligently with Class Counsel and applEcon to re-review all of the Option One claims, identify, and address the issue, and immediately sought to match the Authorized Claimants with *all* the corresponding RFED Data for every Option One claim and to determine whether a *de minimis* claim should have been computed on a *pro rata* basis rather than as a *de minimis* claim.

14. Below, I describe the work done to correct the administrative error and to revise and correct the *pro rata* share calculations for all Authorized Claimants.

15. Authorized Claimants had submitted claims with names, addresses, email addresses, and phone numbers. Kroll and applEcon programmatically matched Authorized Claimants to each corresponding category of information in the RFED Data (*e.g.,* email addresses, home phone numbers, work phone numbers, street addresses, unique email domains, and individual names). Kroll and applEcon separately matched the claims submitted with the corresponding transaction information in the RFED Data. Once Kroll's results were used to confirm applEcon's matches, the *pro rata* claim amounts for the impacted Option One claimants increased based on the additional RFED Data that had been inadvertently excluded from the original claim calculations. Because the distribution is to be made on a *pro rata* basis as to all Option One and Option Two claims, the increase in the *pro rata* amount of the corrected claims for the impacted Option One claims results in a reduction of other Authorized Claimants' proposed distributions. The original claim determinations of 577 claimants will not be impacted and will remain the same because they are *de minimis* claims for a fixed amount and their individual claim was not impacted by the administrative error.

16. An Excel file provided by applEcon that reflects the corrected distribution amounts is attached as Exhibit 1 and will be posted on the case settlement website, www.fxindirectantitrustsettlement.com. Class Members can identify themselves by their claim identification number provided to them during the registration process and again in the claim process. Class Member names have not been included to protect their identity.

17. The corrected distribution calculations reflected in Exhibit 1 were computed based on the balance of the Net Settlement Fund and corresponding accrued interest as of December 1, 2023, accounting for the approved payments, reserves, and adjustments approved in the Interest Distribution Order (ECF 608).

18. Subject to Court approval, Kroll is prepared to promptly begin distribution of the corrected distribution amounts set forth in Exhibit 1. Kroll will work diligently to expedite distributions to account for the delay occasioned by the identification and correction of the administrative error described above and anticipates that settlement checks can start being mailed within three weeks of Court approval of the corrected amounts.

19. Kroll will distribute the payment amounts calculated by applEcon to each Authorized Claimant. In order to encourage Authorized Claimants to cash their initial distribution checks promptly and to avoid or reduce future expenses relating to uncashed checks, the initial distribution checks will bear the notation: "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED WITHIN 90 DAYS OF ISSUE DATE."

20. For Authorized Claimants whose checks are returned as undeliverable, Kroll will attempt to locate new addresses by contacting the Authorized Claimants either by phone or by utilizing an address update service, one time, to update the addresses. If a new address is located, Kroll will update the database accordingly and re-issue the distribution check to the Authorized Claimant at the new address.

21. In the event an Authorized Claimant does not receive, misplaces, or damages the distribution check or otherwise requires a new check, Kroll will issue replacements upon receiving written instructions from the Authorized Claimant, provided that the Authorized Claimant returns the first check (if possible) and a "void" or "stop payment" is issued through the bank.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed in Oakland, California on December 7, 2023.

_____
Justin R. Hughes